UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN,<br><br>     Plaintiffs,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>     Defendants. | Case No. 2:11-cv-00746-WKW |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,<br><br>     Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>     Defendants. | Case No. 2:12-cv-00957-WKW |

**CBG'S RESPONSE TO CROWE'S STATEMENT ON INTERIM DISCOVERY ISSUES, DEFENDANTS' OBJECTION TO STIPULATION, AND PWC'S OBJECTION TO PLAINTIFFS' PROPOSED DISCOVERY PLAN**

I.     INTRODUCTION

The Colonial BancGroup, Inc. and Kevin O'Halloran, as its plan trustee (collectively referred to as "CBG") file this response to the following filings by defendants Crowe Horwath LLP ("Crowe") and PricewaterhouseCoopers LLP ("PwC"; together with Crowe, referred to as the "Defendants"): (a) the Statement of Crowe Horwath LLP as to Proposed Interim Discovery

Plan and Objections of Other Parties ("Crowe Statement"); (b) the Defendant PricewaterhouseCoopers LLP's Objection to Plaintiffs' Proposed Interim Discovery Plan ("PwC Plan Objection"); and (c) Defendants' Objection to Stipulation filed by PwC and Crowe ("Stipulation Objection").

In these pleadings, Crowe argues that its interim discovery plan, including expedited discovery and a mandatory summary judgment deadline, is the only means for progress towards mediation and potential settlement.  PwC objects to the Joint Report (as defined below) by CBG and FDIC[1] because it requires PwC to produce documents immediately that PwC has already produced or received in defense of the parallel lawsuit filed by the Taylor Bean & Whitaker Plan Trust ("TBW Trust") against PwC for negligent misrepresentation in connection with the PwC audits.[2]  Finally, PwC and Crowe jointly object to the deferral of the determination of the ownership issue in accordance with the typical discovery and summary judgment process.

CBG respectfully submits that Crowe's argument in favor of its expedited discovery/summary judgment plan on the undefined "ownership/damage" issues is neither realistic, necessary or fair to CBG or FDIC.[3]  In contrast, CBG and FDIC propose that the issue of ownership be carried with the case and addressed in the normal course of summary judgment after the full opportunity for discovery and development of expert testimony.  CBG submits that this proposal is consistent with the Court's initial direction at the status conference that the issue

---

[1]  The Federal Deposit Insurance Corporation as Receiver for Colonial Bank (the "FDIC").

[2]  *Taylor Bean & Whitaker Plan (TR) v. PricewaterhouseCoopers LLP*, Case No. 13-2013-CA-033964 (40) (Fla. Miami-Dade County Ct. 2013) (the "TBW Case").  Docket references to the TBW Case will use the designation of "TBW Dkt-__."  This state court action was filed in the Circuit Court of the 11th Judicial Circuit for Miami-Dade County, Florida on October 29, 2013.  The docket may be accessed on https://www2.miami-dadeclerk.com/civil/Search.aspx using the local case number of  "2013-33964-CA-01."

[3]  The Crowe and PwC arguments have an impact on both the above-styled case and the case styled as *FDIC v. PwC and Crowe*, Case No. 2:12-cv-00957-WKW  (M.D. Ala. 2012), and this response is applicable to both cases.  Docket references to the FDIC case will use the designation of "FDIC-R Dkt-__."

be deferred for summary judgment[4] and recognizes, as the Defendants fail to do, that resolution of the ownership issues on any basis other than a motion challenging the sufficiency of the pleadings (which motion requires accepting the allegations as true) would require full discovery and development of expert testimony that is not appropriate or feasible on a truncated basis. Finally, PwC's argument regarding the protective order in the TBW Case is at best a self-made, convenient excuse to withhold access to relevant documents that are readily available. TBW has indicated to counsel for CBG in an email (attached as Exhibit B hereto) that it does not oppose the production in this consolidated case of documents subject to the confidentiality order in the TBW Case as long as there is reciprocity, a proposal to which CBG does not object.

## II.   PROCEDURAL BACKGROUND

### A.   Submission of Competing Interim Discovery Plans

Crowe made its submission to the Court on September 19, 2014, which submission included the following: (a) the Crowe Statement (Dkt 79-main ); (b) the Interim Discovery Plan proposed by Crowe Horwath LLP ("Crowe Plan"), (Dkt 79-1 ); (c) the Positions of the FDIC-R and Trustee on Interim Discovery Plan Issues (Dkt 79-2 ); and (d) the Joint Report of Plaintiffs and FDIC Receiver Regarding Intervention, Consolidation, Discovery and Related Matters ("Joint Report") (Dkt 79-3 );

On September 19, 2014, the FDIC and CBG filed their Joint Stipulation (Dkt 78) which proposed to resolve the pending Motion to Intervene filed by the FDIC on October 2, 2012 by granting permissive intervention. On September 22, 2014, PwC filed its PwC Plan Objection,

---

[4] The Court stated that "[I]'ll stop beating around the bush and say that I prefer to deal with issues between the plaintiffs at the summary judgment stage instead of at this stage." Transcript at pdf pages 8-9. The Court also posed the question as follows: "if we can maintain your position on your intervention, would you-all be able to agree or at least consider agreeing to go forward with discovery and defer the decision between the two plaintiffs to the summary judgment stage?" Transcript at pdf pages 12-13. At the status conference, the FDIC attorneys, in absence of conferring with their client, were not able to answer this question in the affirmative. The FDIC is now agreeable, and the agreement is expressed in the Joint Stipulation.

and the Defendants jointly filed the Stipulation Objection, opposing the Joint Stipulation and Joint Report.

By Order entered on September 26, 2014 (Dkt 88), the Court granted intervention to the FDIC but reserved the issue of the timing of summary judgment for later determination by the Court.  Also on the same day, the parties filed a notice (Dkt 90) with the Court proposing that certain dates in the Joint Report and Crowe Plan be moved by mutual agreement.

      B.      <u>Cross-Reference Comparison of Discovery Plans</u>

CBG has attached hereto as <u>Exhibit A</u> a table which provides the Court with cross references for purposes of comparing and contrasting the Joint Report and the Crowe Plan. Major differences include the following:

- CBG and FDIC do not propose a limited discovery period on the "ownership/damage" issue or the mandatory summary judgment deadline on January 10, 2015 as suggested by Crowe; instead, CBG and FDIC propose to allow the issue to be carried with the case subject to full discovery, development of expert testimony, and the case-wide summary judgment deadline to be determined later.

- CBG and the FDIC propose the immediate production of documents that have already been produced by Defendants in related litigation enumerated in the Joint Report.

- CBG and the FDIC provide for the submission of a Rule 26(f) report on December 1, 2014 and a conference thereafter on any differences among the parties later in the month at the Court's convenience.

### III.   ARGUMENT AND CITATION OF AUTHORITY

   A.   <u>FDIC's Claim to "Ownership" of CBG's Claims Is Not an Impediment to Mediation or Settlement</u>

Crowe's primary argument is that mediation and settlement are impossible absent early determination of the ownership issue. While no one can force Crowe to settle these claims, Crowe's view conflicts with reality.

First, the track record between the parties is not consistent with the position Crowe now asserts. The possibility of multiple claims by multiple entities did not prevent Crowe from insisting on mediation of CBG's claim prior to commencement of this lawsuit or pose any impediment to that mediation. Only now that the Court has denied Crowe's motion to dismiss does Crowe attempt to raise this new impediment to forestall full litigation of this matter. Crowe's proposal is an invitation to further preliminary jousting at CBG's expense, not preparation for mediation.

Secondly, the FDIC's ownership assertions have not posed any obstacles in the past to the successful liquidation of claims by the FDIC and CBG against third-parties. It did not prevent liquidation of competing tax claims in excess of $250 million dollars based on opposing tax returns submitted by CBG and the FDIC to the Internal Revenue Service (the "IRS"). Both returns asserted exclusive ownership to the tax refund. Nevertheless, the IRS simply remitted approximately $250 million dollars to CBG and, through an agreement between CBG and the FDIC, these funds were deposited in a segregated account pending the ultimate determination of ownership.[5]

---

[5] This tax refund ownership issue is pending in the civil action styled *The Colonial BancGroup, Inc. v. Federal Deposit Insurance Corporation, as Receiver for Colonial Bank*, No. 2:10-cv-198-MHT (M.D. Ala. filed Mar. 5, 2010).

More recently, CBG and the FDIC, as co-plaintiffs, settled a fidelity insurance claim against Federal Insurance Company for the amount of $30,000,000 based on a fidelity policy with asserted limits of $50,500,000.[6] The insurance claims were based on the same fraud by employees in Colonial Bank's mortgage warehouse lending division that is at issue in this case. The settlement was achieved despite the fact that ownership of the recovery is an undecided issue pending before the District Court in another case[7] and the fact that Federal Insurance Company took conflicting positions during the case on this issue.

In summary, the ownership issue is only an impediment to settlement and mediation if Crowe wishes it to be, and that election, which is within Crowe's control, is not a compelling argument for its proposal. Settlement is much more dependent on both Defendants coming to terms with the audit failures committed and seriously pursuing settlement while leaving allocation of settlement proceeds to CBG and the FDIC. This has worked in the past, and there is no reason to believe that it will not work here if the Defendants reasonably address these claims.

B.  Contrary to Crowe's Assertion, Claims By Multiple Parties Can, And Do, Co-exist and Must Be Addressed if Mediation Is To Be Successful.

Crowe's argument is also premised on an assumption that it is somehow impossible that multiple parties could have claims against Crowe or PwC arising out of these events. This is a variation on Crowe's primary position, restated in the Crowe Statement,[8] that *no one* has a valid

---

[6]  The claim is the subject of the civil action styled F*ederal Deposit Insurance Corporation, et al. v. Federal Insurance Company*, No. 2:11-CV-610-MHT-WC (M.D. Ala.) in which the FDIC and CBG are co-plaintiffs. The settlement agreement has been executed and is pending bankruptcy court approval. See *In re The Colonial BancGroup*, Case No. 09-32303 (Bankr. M.D. Ala 2009) at DKT 2101.

[7]  The insurance payment issue is pending in the case of *The Colonial BancGroup, Inc. v. Federal Deposit Insurance Corporation, as Receiver for Colonial Bank*, No. 2:10-cv-198-MHT (M.D. Ala. filed Mar. 5, 2010).

[8]  CBG Case Dkt 79 at pdf page 7. The Crowe Statement states: "[i]n response to the complaints, the defendants argued that neither plaintiff stated valid claims against them, and thus had no need or reason to

claim against Crowe -- neither CBG, the party to the Crowe engagement agreement, nor the FDIC, acting on behalf of the bank which was not a party to the agreement.

Both of these arguments have already been rejected by the Court based on the claims as alleged in the two complaints. With regard to CBG's contract and professional negligence claims against Crowe, the Court ruled that: "[t]aken as true, the allegations of the Amended Complaint state a claim for direct damages proximately caused by Crowe's alleged breach and negligence."[9] The Court also held that "[a]t this stage, the Amended Complaint adequately alleges the actions or inactions of Crowe and PwC resulted in foreseeable injuries to CBG."[10]

With regard to the FDIC's claims on behalf of Colonial Bank, the Court held in a series of orders that: (a) with regard to the contract claim against PwC, the FDIC had adequately pled that it was an intended beneficiary of the contracting parties to the PwC-CBG engagement letter and that issues of fact existed as to the parties' intent, preventing a ruling at this early juncture as a matter of law that the FDIC was not an intended beneficiary;[11] (b) that the FDIC had adequately alleged claims against PwC and Crowe for professional negligence, gross negligence and negligent misrepresentation based on the Defendants' audit activities and the reliance of Colonial Bank, subject to questions of material fact as to the Defendants' imputation and contributory negligence defenses, which, if disputed, are for the jury;[12] (c) that the FDIC has adequately alleged that PwC caused the Bank's losses,[13] including the losses relating to double and triple

---

wade into plaintiffs' intramural debate." Apparently, Crowe has now had a change of heart and sees the "intramural debate" as an all-important threshold issue.

[9] Dkt 72, at pdf 12.

[10] *Id.*

[11] FDIC Dkt 52, at pdf 12.

[12] *Id.*

[13] *Id.*

pledging;[14] and (d) the FDIC's complaint alleges that the damages claimed are the "direct" result of Crowe's alleged negligence, and the court could not conclude that the losses alleged were subject to Crowe's argued contractual exclusion.[15]

These rulings are entirely consistent with the position taken by CBG in the context of the FDIC's Motion to Intervene that "[g]iven the nature of the duties owed by the Auditor Defendants, it is likely that both BancGroup and the FDIC-R (standing in the shoes of Colonial Bank) have their own claims for their own damages. (citations omitted)" (CBG Dkt No. 53 at 31).

The inescapable conclusion is that both CBG and the FDIC have adequately alleged claims in their respective complaints that pass muster as a matter of law, leaving at most issues of material fact which, if disputed, must be resolved by a jury. The FDIC's assertion of ownership of CBG's claim under FIRREA[16] does not alter this legal landscape. As framed by the FDIC, the issue is whether the FDIC owns CBG's claims and is entitled to assert them as owner, not whether or not the claims exist. From the FDIC's perspective, these claims do not go away by virtue of a favorable grant of its request for a declaratory judgment, and the claims certainly do not go away if the declaratory judgment request is denied. Therefore, the only potential benefit that the Defendants arguably can achieve is to reduce the number of plaintiffs at the table, not the number of claims being settled.

Even this imagined benefit of fewer plaintiffs at the settlement table is illusive at best because the FDIC receivership cases across the country have demonstrated that every FDIC ownership decision, favorable or adverse to the FDIC, results in either an appeal, a settlement

---

[14] FDIC Dkt 73, at pdf 12.

[15] FDIC Dkt 52, at pdf 17-18.

[16] The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 as amended.

between the FDIC and the holding company, or both. This would inevitably be true in this case because the position being taken here by the FDIC -- that it owns under FIRREA the holding company's breach of contract and professional negligence claims against the very auditors the holding company directly engaged -- is unprecedented.

It is also highly doubtful that these Defendants would convene any mediation of their global liability without the inclusion of CBG while such an issue is outstanding or on appeal.[17] There is no shortcut on this issue, and the Defendants would inevitably be at the table with the same plaintiffs regardless of any attempt to rush through discovery and expert witness development to reach an early, initial decision on this issue.

      C.      <u>Crowe's Expedited Discovery Plan Does not Reduce Cost</u>.

Crowe also asserts that the Crowe Plan has the virtue of avoiding massive discovery costs and thereby enhancing the chances of settlement. However, as recognized in the conference with the Court, it is unlikely that a decision regarding ownership will change the scope or extent of discovery to be taken in this case.[18] Discovery with regard to the fraud committed at the mortgage warehouse lending division and the acts and omissions of the internal and external auditors in conducting their services will undoubtedly be the same. Nor will the Defendants' discovery efforts focused on contributory negligence and *in pari delicto* issues change.

Also, any meaningful savings is questionable in light of the fact that discovery on these issues has already commenced in the TBW Case against PwC, including production of

---

[17] Indeed, PwC likely would also include the TBW Trust in any mediation given its claims against PwC for negligent misrepresentation, adding a third plaintiff and third set of claims to the mix.

[18] CBG counsel observed that discovery of the merits will not change based on the ownership issue. August 26th Transcript at 9-10. The Court observed "[i]t seems to me that the universe of at least documents to be discovered is the same no matter who owns the claim" and that even if the FDIC owned the CBG claim, CBG would be producing documents. *Id*. at 22. Counsel for PwC agreed on the court's point regarding the universe of document discovery. *Id.* at 23. FDIC counsel also agreed and noted that nothing was going to change the underlying facts relating to the fraud or audit.

documents and ESI by PwC, which is scheduled to be completed by October 3, 2014, and depositions which are ongoing. By October 3, 2014, PwC will have already been required to make a production of documents and information relating to substantially all aspects of the engagement with CBG and the audit services rendered.

At the same time, PwC has also commenced wide ranging discovery in the TBW Case by, among other things, serving a subpoena on the FDIC seeking what appears to be an enormous volume of documents.[19] PwC makes no meaningful distinction between CBG and Colonial Bank in requesting the production, defining them collectively as "Colonial" and seeking a broad range of documents relating to both. Because the FDIC possesses substantially all of the records of both Colonial Bank and CBG as a result of the FDIC seizure and retention of substantially all records relating to all Colonial entities on August 14, 2009, PwC is already fully engaged in seeking the type of discovery that Crowe seems to want to delay as to both CBG and the FDIC, and such discovery will continue in the TBW Case.

While Crowe is not a party to the TBW Case, the TBW Trust has also served a subpoena on Crowe for its documents.[20] CBG understands that Crowe has refused to produce such documents to TBW so far, but the process has commenced. All of this discovery in the TBW Case is accompanied by depositions which are currently being conducted. Thus, deferral of discovery does not seem to achieve any real cost savings but would delay addressing the merits and delving into the merits of the claims is critical to any mediation.

Finally, Crowe's suggestion to "front load" this ownership issue at the beginning of the case would have the reverse impact that the Defendants arguably seek because this issue is the one area of discovery and expert testimony that might be avoided by an early settlement on the

---

[19] A copy of PwC's extensive subpoena served on the FDIC is attached hereto as <u>Exhibit C</u>.

[20] A copy of TBW's subpoena to Crowe is attached hereto as <u>Exhibit D</u>.

merits of the claims. This type of costly exercise was indeed avoided by Federal Insurance Company when it settled on the merits, and it can now excuse itself from any ownership disputes. So, in a very real sense, the Crowe proposal has the cost savings approach backwards.

      D.      <u>The Cases Cited by Crowe Do Not Support Its Request.</u>

Crowe cites a series of cases in support of its position that the Crowe Plan is a reasonable exercise of case management discretion. However, the cases cited by Crowe are inapposite to the facts of this case as discussed in depth by the FDIC. CBG supports and adopts the FDIC analysis on this point.

      E.      <u>The Expedited Discovery Proposed by Crowe on Ownership Issues and Mandatory Summary Judgment Deadlines is Unworkable and Unfair to CBG and FDIC</u>.

Crowe's desire to compress all discovery with regard to the "ownership/ damages" issue into a two-month period followed by a mandatory summary judgment deadline in January 2015 is unworkable and unfair. Crowe's premise, as stated during the status conference, was that the ownership issue is a "much more compartmentalized factual dispute" that "could be set up on a plate for Your Honor to rule on a much more expedited basis."[21] Crowe did not elaborate during the conference, or in its submission, as to why this is true.

First, it is entirely unclear from the Crowe submission as to what Crowe means by the "ownership/damages" issues and what is captured in the net of a two month discovery and mandatory summary judgment deadline. Is it just the ownership issue which is the subject matter of the FDIC's proposed declaratory judgment claim? Is it all aspects of damages in the two cases apart and separate from ownership? Crowe offers no explanation.

Assuming it is really only the "ownership" issue under the FDIC's declaratory judgment claim, this issue as framed by the FDIC is not discrete or compartmentalized. The most recent submissions by CBG and the FDIC regarding the *Levin* case illustrate the range of potential

---

[21] August 26th Transcript at 14.

issues. Issues are alleged, argued and raised as to whether the bank subsidiary was insolvent or in the zone of insolvency prior to and/or during the period of time that CBG down-streamed funds to the bank, whether the bank was in a "failed state" during the period of time damages were alleged, and the level of knowledge relating to that state of affairs during that time period. These issues will not be resolved by mere Rule 26(f) disclosures or written discovery and are not compartmentalized factual disputes susceptible to being completed in a mere matter of months. This is why both CBG and FDIC believe that any attempt to determine this issue -- other than as to the sufficiency of the pleadings, which CBG submits has already been determined -- must as a practical matter await completion of all discovery and development of expert testimony which will take into consideration an array of facts relating to the financial state of Colonial Bank and CBG over the relevant period.

   F. <u>PwC's Objection to the Production of Documents Already Produced in the TBW Case is Unfounded and Calculated to Delay the Progress of these Cases</u>.

PwC objects to the Interim Discovery Plan submitted by CBG and FDIC in that it requires PwC to produce documents immediately to the CBG that have already been produced in the parallel case brought by the TBW Trust. PwC opposes this position and seeks to use the protective order entered in the TBW Case to perpetuate the types of delays in document production experienced by the TBW Trust in that case. This position is antithetical to this Court's expressed desire to "keep the pressure on this case to keep it moving with the idea towards getting it to a mediation at some point that maybe is a cost saving point that everyone could agree on."[22]

The complaint in the TBW Case is virtually identical to the FDIC's negligent misrepresentation claims in its amended complaint. After PwC's motion to dismiss was denied,

---

[22] Transcript at 29.

the TBW Trust served requests for production on PwC on January 10, 2014, to which PwC made a substantial number of objections, including assertions of accountant-client privilege with CBG -- an assertion made by PwC without even informing CBG. The TBW Trust had to file two motions to compel, one on January 30, 2014 and another one on March 13, 2014. As a part of battling through PwC's objections, TBW also obtained CBG's and FDIC's consent to allow the production which was reflected in a protective order.[23] Rejecting PwC's efforts to curtail discovery, the Florida state court entered an order on April 17, 2014,[24] requiring the following actions be taken by the following dates:

| April 30, 2014 | PwC shall produce (a) all non-privileged audit work papers from the audits of the years 2006 through 2008 of the financial statements of CBG with the electronic workpapers to be produced in native format; and (b) all non-privileged documents relating to such audits produced by PwC to the FDIC that have not been previously produced to the TBW Trust. |
|---|---|
| April 27, 2014 | Parties shall agree on search terms to be used by PwC in searching for responsive electronic documents from January 1, 2002 through December 31, 2009 for all custodians identified by PwC as potentially having responsive documents relating to request number 1 (all documents relating to the audits) and request number 4 (all documents relating to the negotiation of the engagement with CBG). |
| May 10, 2014 | PwC shall produce all non-privileged audit work papers from the audits of the years 2002 through 2005 of the financial statements of CBG, with the electronic work papers produced in native format. |
| July 16, 2014 | Using the parties' agreement on search terms, PwC shall produce all responsive non-privileged electronic documents identified from those search terms and all responsive non-privileged hard copy documents. |

---

[23]  A copy of the Protective Order attached as <u>Exhibit E</u>.

[24]  A copy Court's Order  attached as <u>Exhibit F</u>.  CBG understands that by agreement between the TBW Trust and PwC, PwC has until October 3, 2014 to finish producing the final components of the ESI.

Simply put, PwC has already been required to make a production of documents and information relating to substantially all aspects of the engagement with CBG and the audit services rendered. CBG wishes to cut through the red tape and get the same documents produced in this case. The TBW Trust has no objection to this production proposal, as reflected on the document attached hereto as Exhibit B.

## IV.   CONCLUSION.

For the reasons set out above, CBG respectfully requests the Court to: (a) decline to approve the Crowe Plan; (b) deny the Defendants' Stipulation Objection and the PwC Plan Objection; and (c) enter an order adopting the discovery proposal contained in the Joint Report subject to the notice of modifications reflected in the parties' notice (Dkt 90).

Dated:  September 26, 2014                              Respectfully submitted,

| **THE COLONIAL BANCGROUP, INC. and KEVIN O'HALLORAN, AS PLAN TRUSTEE** | Nicholas DiCarlo<br>Christopher Caserta<br>DiCarlo Caserta & McKeighan PLC<br>6900 E. Camelback Road, Suite 250 |
|---|---|
| By Its Attorneys: | Scottsdale, AZ 85251<br>(480) 892-2488 |
|   /s/ Andrew P. Campbell<br>Andrew P. Campbell<br>Caroline Smith Gidiere<br>Campbell, Guin, Williams, Guy & Gidiere LLC<br>505 N. 20th Street, Suite 1600<br>Birmingham, AL 35203<br>(205) 224-0751<br>Andy.campbell@campbellguin.com | Rufus T. Dorsey, IV<br>C. Edward Dobbs<br>Parker, Hudson, Rainer & Dobbs LLP<br>1500 Marquis Two Tower<br>285 Peachtree Center Avenue, N.E.<br>Atlanta, GA 30303<br>T: (404) 523-5300<br>F: (404) 522-8409<br>rtd@phrd.com<br>ced@phrd.com |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on September 26, 2014, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing as set forth below:

David Mullin (dmullin@mhba.com)
Clint R. Latham  (clatham@mhba.com)
John G. Turner III (jturner@mhba.com)
Drew D. Dropkin  (ddropkin@kslaw.com)
Elizabeth V. Tanis  (etanis@kslaw.com)
James H. Anderson  (janderson@beersanderson.com)
John M Brown  (jmb@mhba.com)
Jonathan C. Medow  (jmedow@mayerbrown.com)
Richard E. Biggs  (rbiggs@mhba.com)
Stanley J. Parzen  (sparzen@mayerbrown.com)
Tabor R. Novak, Jr.  (tnovak@ball-ball.com)
Thomas J. O'Brien  (tobrien@fdic.gov)
Dennis Ray Smith Bailey (DRB@rushtonstakely.com)
Andrew P. Campbell (Andy.Campbell@Campbellguin.com)
Caroline Smith Gidiere (Caroline.Gidiere@Campbellguin.com)
Nicholas J. DiCarlo (ndicarlo@dcmplaw.com)
Christopher A. Caserta (ccaserta@dcmplaw.com)
C. Edward Dobbs (ced@phrd.com)
Rufus Dorsey (rtd@phrd.com)
Ronald T. Coleman, JR. (rtc@phrd.com)

Dated:  September 26, 2014              /s/ Andrew P. Campbell
                                        Andrew P. Campbell