**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,**<br><br>**Defendants.** | **Case No. 2:11-cv-00746-WKW** |
| **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PRICEWATERHOUSECOOPERS, LLP and CROWE HORWATH, LLP,**<br><br>**Defendants.** | **Case No. 2:12-cv-00957-WKW** |

**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S ANSWER TO THE AMENDED COMPLAINT OF THE COLONIAL BANCGROUP, INC. AND KEVIN O'HALLORAN**

Defendant PricewaterhouseCoopers LLP ("PwC") submits the following Answer, including Defenses, to the Amended Complaint (the "Complaint"), which The Colonial BancGroup, Inc. ("BancGroup"), as the debtor under its confirmed Chapter 11 Plan of Liquidation of The Colonial BancGroup, Inc. and Kevin O'Halloran, as the plan trustee acting for and on behalf of BancGroup under the Plan (together the "Plaintiffs"), have filed against Defendant PwC and Defendant Crowe Horwath LLP ("Crowe").

The Complaint contains a number of captions and headings. To the extent those captions and headings contain allegations against PwC, PwC denies them.

1. PwC denies the allegations in paragraph 1 of the Complaint, except PwC admits that the operations of BancGroup's mortgage warehouse lending division (the "MWLD") were in Orlando, Florida and elsewhere; that Taylor Bean & Whitaker Mortgage Corporation ("TBW") was the MWLD's largest customer; that subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Lee Farkas ("Farkas"), Desiree Brown ("Brown"), Catherine Kissick ("Kissick"), Teresa Kelly ("Kelly") and others (collectively the "Fraudsters"), had committed a collusive fraud that was concealed from PwC and others; that federal agents raided Colonial Bank and TBW on August 3, 2009; that Colonial Bank was closed on August 14, 2009; and that BancGroup filed for Chapter 11 bankruptcy protection in Montgomery, Alabama on August 25, 2009.

2. PwC denies the allegations in paragraph 2 of the Complaint, except PwC admits that, subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others and that the fraud involved the AOT facility; that TBW was Colonial Bank's only customer that used the AOT facility; that Colonial Bank purchased participation interests in securities backed by pools of mortgage loans; that the terms of the AOT transactions required that committed takeout investors be in place and that TBW was required, upon request by Colonial Bank, to repurchase the interest in the security if, among other things, a takeout investor did not purchase it; and that BancGroup's consolidated year-end financial statements for 2007 and 2008 showed securities purchased under agreements to resell (including AOT) to be in excess of $1.5 billion.

3. PwC denies the allegations in paragraph 3, except PwC admits that, subsequent to PwC serving as BancGroup's auditor, Farkas, TBW's chairman, was convicted of, among other things, bank, wire and securities fraud in April of 2011 and that certain TBW employees and certain employees in Colonial Bank's MWLD pleaded guilty to, among other things, bank, wire, and securities fraud.

4. PwC denies the allegations in paragraph 4, except PwC admits that, at all times relevant to the Complaint, PwC served as BancGroup's independent auditor; that, at all times relevant to the Complaint, BancGroup engaged Crowe Horwath, LLP (together with its predecessor in interest, Crowe Chizek and Company LLC, "Crowe"), to provide certain outsourced internal audit services; that in certain years PwC represented that its audits were "integrated"; that PwC represented in its audit reports that it performed its audits of BancGroup in accordance with the applicable professional auditing standards; that PwC provided an opinion in its audit reports that BancGroup's consolidated financial statements were fairly stated in all material respects in conformity with accounting principles generally accepted in the United States; and that, in certain years, PwC provided an opinion in its audit reports that BancGroup maintained, in all material respects, effective internal control over financial reporting.

5. PwC denies the allegations in paragraph 5 of the Complaint that relate to PwC. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 5 of the Complaint and therefore denies those allegations.

6. PwC denies the allegations in the first sentence in paragraph 6 of the Complaint that relate to PwC. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 6 of the Complaint and therefore denies those

allegations.

7. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 7 of the Complaint and therefore denies those allegations.

8. PwC admits the first three sentences in paragraph 8 of the Complaint. PwC further admits that the Second Amended Chapter 11 Plan of Liquidation of The Colonial BancGroup, Inc. (as amended, the "Plan") states that "[a]ll Estate Property remains vested in the Estate on and following the Effective Date and shall continue to be subject to the jurisdiction of the Bankruptcy Court following confirmation of this Plan until distributed to Holders of Allowed Claims in accordance with the provisions of this Plan and the Confirmation Order" and that Kevin O'Halloran has been appointed as the Plan Trustee. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 8 of the Complaint and therefore denies those allegations.

9. PwC denies the allegations in paragraph 9 of the Complaint, except PwC admits that Section 10.6 of the Plan provides that BancGroup retains all causes of action accruing to it and its bankruptcy estate, including all "Estate Causes of Action," subject to other provisions in the Plan, and that the Plan defines Estate Causes of Action to include all Causes of Action against any professional person (including attorneys, accountants, consultants and other professional persons identified on Exhibit D to the Plan's Disclosure Statement) who was retained by BancGroup prior to the Petition Date, for acts or omissions (including professional malpractice, negligence or other torts) that occurred prior to the Petition Date.

10. PwC admits the allegations in the first and second sentences of paragraph 10 of the Complaint, except to the extent that they suggest that PwC has partners in every state in the

United States. PwC admits that it audited the consolidated financial statements of BancGroup and its subsidiaries for the periods ended December 31, 2002 through 2008 and that those financial statements were filed with the SEC in Form 10-Ks; that for certain of those periods, PwC was engaged to audit management's assessment of the effectiveness of BancGroup's internal control over financial reporting; and that for the periods December 31, 2004 through 2008, PwC conducted integrated audits of BancGroup's consolidated financial statements and internal control over financial reporting as of year-end. Except as expressly admitted herein, PwC denies the allegations in paragraph 10 of the Complaint.

11. PwC admits that Crowe is a limited liability partnership and represents itself as being one of the largest public accounting and consulting firms in the United States, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first and second sentences of paragraph 11 of the Complaint and therefore denies those allegations. PwC admits that Crowe provided certain outsourced internal audit services to BancGroup between 2002 and 2009. PwC admits that Michael Thomas is a former PwC director who later worked for Crowe in connection with certain outsourced internal audit services it provided to BancGroup, but lacks knowledge or information sufficient to form a belief as to Michael Thomas's involvement in arranging BancGroup's engagement of Crowe and therefore denies those allegations. PwC denies the remaining allegations in paragraph 11 of the Complaint.

12. PwC does not contest subject matter jurisdiction or venue in this Court with respect to the claims that Plaintiffs purport to assert against PwC in the Complaint, but denies that the Complaint states a claim against PwC as to which relief can be granted.

13. PwC denies the allegations in paragraph 13 of the Complaint.

14. PwC admits the allegations in paragraph 14 of the Complaint.

15. PwC denies the allegations in paragraph 15 of the Complaint, except PwC admits (1) the allegations in the first, third, and fourth sentences in paragraph 15 of the Complaint; and (2) that the headquarters for Colonial's MWLD was in Orlando, Florida, but states that various business activities related to the MWLD took place outside of Florida, including at Colonial's Montgomery, Alabama headquarters.

16. PwC denies the allegations in paragraph 16 of the Complaint.

17. PwC admits that Colonial Bank's MWLD provided short-term secured funding to mortgage origination companies. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 17 of the Complaint and therefore denies those allegations.

18. PwC admits that Colonial Bank's MWLD had a business relationship with TBW, a Florida based mortgage lender, which dated back to at least 2002; that TBW was controlled by Farkas who at times served as TBW's Chairman, and that, by 2008, TBW had become one of the nation's largest non-depository mortgage lenders with an annual production volume over $30 billion in 2008. Except as expressly admitted herein, PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 of the Complaint and therefore denies those allegations.

19. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19 of the Complaint and therefore denies those allegations.

20. PwC denies the allegations in paragraph 20 of the Complaint except that PwC admits that BancGroup purchased participation interests in mortgage loans and securities from TBW.

21. PwC denies the allegations in paragraph 21 of the Complaint.

22. PwC admits the allegations in paragraph 22 of the Complaint.

23. PwC admits that, subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, and that, at certain points, this collusive fraud involved Colonial Bank, through at least Kissick and Kelly, concealing overdrafts on TBW's Colonial Bank account. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 23 of the Complaint and therefore denies those allegations.

24. PwC admits that, subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, and that, at certain times, this collusive fraud involved Colonial Bank, through at least Kissick and Kelly, concealing overdrafts on TBW's Colonial Bank account. To the extent that paragraph 24's identification of Kissick (and those acting at her direction) and Farkas as the "Adverse Parties" constitutes an allegation that the Fraudsters' actions were adverse to BancGroup or TBW, PwC denies that allegation in paragraph 24 and wherever it appears in the Complaint. Except as expressly admitted herein, PwC denies the allegations in paragraph 24 of the Complaint.

25. PwC denies the allegations in paragraph 25 of the Complaint.

26. PwC admits that, subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, and that, at certain times, this collusive fraud involved Colonial Bank, through at least Kissick and Kelly, concealing overdrafts on TBW's Colonial Bank account. To the extent that paragraph 26's identification of Kissick (and those acting at her direction) and Farkas as the "Adverse Parties" constitutes an allegation that the Fraudsters' actions were adverse to BancGroup or TBW, PwC denies that allegation in paragraph 26 and wherever it appears in the Complaint. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 26 of the Complaint and therefore denies those allegations.

27. PwC admits that, subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, and that in late 2003, Colonial Bank, through at least Kissick and Kelly, moved the fraud to TBW's COLB facility and implemented what they referred to as "Plan B." To the extent that paragraph 27's identification of Kissick (and those acting at her direction) and Farkas as the "Adverse Parties" constitutes an allegation that the Fraudsters' actions were adverse to BancGroup or TBW, PwC denies that allegation in paragraph 27 and wherever it appears in the Complaint. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 27 of the Complaint and therefore denies those allegations.

28. PwC admits that, while Colonial Bank owned interests in the COLB mortgage

loans, those assets were included in the "Loans Held for Sale" line item on BancGroup's balance sheet. PwC further admits that, subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, and that in late 2003, Colonial Bank, through at least Kissick and Kelly, moved the fraud to TBW's COLB facility and implemented what they referred to as "Plan B." PwC denies the remaining allegations of the first sentence in paragraph 28 and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the other sentences in paragraph 28 of the Complaint and therefore denies those allegations.

29. PwC admits that, subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, that the fraud involved TBW's COLB facility and was referred to as Plan B, and the fraud involved loans referred to as "Crap" loans. To the extent that paragraph 29's identification of Kissick (and those acting at her direction) and Farkas as the "Adverse Parties" constitutes an allegation that the Fraudsters' actions were adverse to BancGroup or TBW, PwC denies that allegation in paragraph 29 and wherever it appears in the Complaint. PwC denies the remaining allegations in the first sentence in paragraph 29 and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the second sentence in paragraph 29 of the Complaint and therefore denies those allegations.

30. PwC admits that, subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, that the fraud involved TBW's COLB

facility and was referred to as Plan B, that the fraud involved mortgage loans referred to as "Crap" loans, and that the Fraudsters used fraudulent data to avoid the appearance that the fraudulent transactions were aging past expected sales dates. To the extent that paragraph 30's identification of Kissick (and those acting at her direction) and Farkas as the "Adverse Parties" constitutes an allegation that the Fraudsters' actions were adverse to BancGroup or TBW, PwC denies that allegation in paragraph 30 and wherever it appears in the Complaint. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 30 of the Complaint and therefore denies those allegations.

31. PwC denies the allegations in paragraph 31 of the Complaint that relate to PwC; PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 31 of the Complaint and therefore denies those allegations.

32. PwC admits that, subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, and that in late 2004, TBW and Colonial Bank moved the fraud from TBW's COLB facility to TBW's "Assignment of Trade" or "AOT" facility. To the extent that paragraph 32's identification of Kissick (and those acting at her direction) and Farkas as the "Adverse Parties" constitutes an allegation that the Fraudsters' actions were adverse to BancGroup or TBW, PwC denies that allegation in paragraph 32 and wherever it appears in the Complaint. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 32 of the Complaint and therefore denies those allegations.

33. PwC admits that, per the terms of the AOT facility agreement with TBW,

committed third-party investors were to be in place and TBW was to deliver an electronic copy of a takeout commitment and a takeout commitment assignment from a takeout investor. PwC admits that Colonial Bank purchased interests in securities from TBW that were backed by pools of loans. PwC denies the remaining allegations in paragraph 33 of the Complaint.

34. PwC denies the allegations in paragraph 34 of the Complaint, except PwC admits that in certain years, AOT assets were reported on BancGroup's consolidated financial statements as "Securities Purchased Under Agreements to Resell."

35. PwC denies the allegations in paragraph 35 of the Complaint.

36. PwC admits that, subsequent to serving as BancGroup's auditor, PwC learned that, in 2009, TBW and its subsidiary, Ocala Funding, LLC ("Ocala Funding") carried out a separate fraud under the COLB facility in which Ocala Funding, LLC obtained good quality mortgage loans (not Plan B loans) from Colonial Bank, sold or pledged those loans to multiple third parties, and failed to pay Colonial Bank for them as promised. Except as expressly admitted herein, PwC denies the allegations in paragraph 36 of the Complaint.

37. PwC denies the allegations in the first and third sentences of paragraph 37 of the Complaint that relate to PwC. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 37 of the Complaint and therefore denies those allegations.

38. PwC denies the allegations in paragraph 38 of the Complaint that relate to PwC, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 38 of the Complaint and therefore denies those allegations. To the

extent that paragraph 38's identification of Kissick (and those acting at her direction) and Farkas as the "Adverse Parties" constitutes an allegation that the Fraudsters' actions were adverse to BancGroup or TBW, PwC denies that allegation in paragraph 38 and wherever it appears in the Complaint.

39. PwC denies the allegations in paragraph 39 of the Complaint insofar as they relate to PwC, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39 of the Complaint that relate to Crowe and therefore denies those allegations.

40. PwC admits that it was aware that more than half of the MWLD-related assets reported on certain of BancGroup's consolidated year-end financial statements were related to transactions with TBW that involved loans secured by mortgage loans, purchases of participation interests in mortgage loans, or purchases of securities backed by pools of mortgage loans and that the transactions had committed third-party investors. Except as expressly admitted herein, PwC denies the allegations in paragraph 40 of the Complaint that relate to PwC and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 40 of the Complaint.

41. PwC denies allegations in paragraph 41 of the Complaint that relate to PwC and Gary Westbrook, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 41 and therefore denies those allegations.

42. PwC denies the allegations in paragraph 42 of the Complaint insofar as they relate to PwC, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 42 of the Complaint and therefore denies those allegations.

43. PwC denies the allegations in paragraph 43 in the Complaint.

44. PwC denies the allegations in paragraph 44 of the Complaint that relate to PwC except PwC admits that the 2006-2007 Risk Assessment and Internal Audit Plan for BancGroup assigned a rating of “high” to the operational risk inherent to the MWLD and acknowledged the potential for customer fraud, but denies that PwC did not appropriately address these factors during its audits. PwC further admits that BancGroup’s balance on its consolidated year-end financial statements for securities purchased under agreement to resell (including AOT) increased from approximately $605 million at year-end 2006 to approximately $1.5 billion at year-end 2007. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 44 of the Complaint and therefore denies those allegations.

45. PwC admits the allegations in the first sentence in paragraph 45 of the Complaint; lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45 of the Complaint that relate to SIGTARP and Crowe and therefore denies those allegations; and denies the remaining allegations in paragraph 45 of the Complaint.

46. PwC denies the allegations in the first sentence in paragraph 46 of the Complaint; lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence in paragraph 46 of the Complaint and therefore denies those allegations; and admits the allegations in the third and fourth sentences in paragraph 46 of the Complaint.

47. PwC denies the allegations in paragraph 47 of the Complaint that relate to PwC and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 47 of the Complaint and therefore denies those allegations.

48. PwC denies the allegations in paragraph 48 of the Complaint.

49. PwC denies that its actions caused any damages to BancGroup, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 49 of the Complaint and therefore denies those allegations.

50. PwC denies the allegations in paragraph 50 of the Complaint, except PwC admits that for the periods December 31, 2004 through 2008, PwC was engaged to conduct integrated audits of BancGroup's consolidated financial statements and effectiveness of internal control over financial reporting as of year-end.

51. PwC denies the allegations in paragraph 51 of the Complaint, except PwC admits it was responsible for performing its audits in accordance with applicable auditing standards, which for certain years were the auditing standards issued or adopted by the Public Company Accounting Oversight Board (United States) (the "PCAOB Auditing Standards"), and that PwC was subject to the AICPA Code of Professional Conduct.

52. PwC denies the allegations in paragraph 52 of the Complaint, except PwC admits that its audits of BancGroup for the periods December 31, 2004 through 2008 were "integrated audits" conducted in accordance with PCAOB auditing standards; that the PCAOB required those audits to be conducted in accordance with Generally Accepted Auditing Standards ("GAAS") as they existed on April 16, 2003, subject to amendment or supplementation by the PCAOB (which amended or supplemented standards are referenced by the letters "AS"); and that the Complaint purports to use GAAS and PCAOB interchangeably when referring to the standards that governed PwC's audits of BancGroup.

53. PwC admits the allegations in the first sentence in paragraph 53 of the Complaint and that the statements in paragraph 53 of the Complaint alleged to be the 10 GAAS standards reflect some of the language of those standards, but denies the allegations in paragraph 53 of the Complaint to the extent that they do not completely and accurately reflect the 10 GAAS standards or take those standards out of context.

*General Standards*

1. PwC admits that the statement alleged to be GAAS General Standard No. 1 accurately reflects that standard.

2. PwC admits that the statement alleged to be GAAS General Standard No. 2 reflects some of the language of that standard, but denies that it completely and accurately reflects that standard.

3. PwC admits that the statement alleged to be GAAS General Standard No. 3 accurately reflects that standard.

*Standards of Field Work*

1. PwC admits that the statement alleged to be GAAS Standard of Field Work No. 1 reflects some of the language of that standard, but denies that it completely and accurately reflects that standard.

2. PwC admits that the statement alleged to be GAAS Standard of Field Work No. 2 reflects some of the language of that standard, but denies that it completely and accurately reflects that standard.

3. PwC admits that the statement alleged to be GAAS Standard of Field Work No. 3 reflects some of the language of that standard, but denies that it completely and accurately reflects that standard.

*Standards of Reporting*

1. PwC admits that the statement alleged to be GAAS Standard of Reporting No. 1 accurately reflects that standard.

2. PwC admits that the statement alleged to be GAAS Standard of Reporting No. 2 accurately reflects that standard.

3. PwC admits that the statement alleged to be GAAS Standard of Reporting No. 3 reflects some of the language of that standard, but denies that it completely and accurately reflects that standard.

4. PwC admits that the statement alleged to be GAAS Standard of Reporting No. 4 accurately reflects that standard.

54. PwC denies the allegations in paragraph 54 of the Complaint, except PwC admits that, depending on the audit year, the standards applicable to its audits were either the PCAOB Auditing Standards or GAAS and that PwC's work performed in connection with its BancGroup audits was subject to certain ethics standards, as described in the AICPA's Code of Professional Conduct.

55. PwC denies the allegations in paragraph 55 of the Complaint in that they do not accurately set forth the PCAOB auditing standards or GAAS.

56. PwC admits that GAAS contain the language quoted in paragraph 56 of the Complaint, but denies the allegations to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS.

57. PwC admits that AS No. 5 was effective at the time PwC conducted its audit of BancGroup for the period ending December 31, 2007 and that AS No. 5 contains some of the language set forth in paragraph 57 of the Complaint, but denies the allegations in paragraph 57 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of PCAOB Audit Standards.

58. PwC denies the allegations in paragraph 58 of the Complaint, except PwC admits that the engagement letters between it and BancGroup set forth obligations of both PwC and BancGroup with respect to PwC's audits of the year-end consolidated financial statements of BancGroup.

59. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 59 of the Complaint regarding alleged reliance and therefore denies those allegations. PwC denies the remaining allegations in paragraph 59 of the Complaint.

60. PwC denies the allegations in paragraph 60 of the Complaint.

61. PwC denies the allegations in paragraph 61 of the Complaint.

62. PwC denies the allegations in paragraph 62 of the Complaint, except PwC admits that the MWLD extended credit to and purchased participation interests in mortgage loans and securities from mortgage originators, including TBW, for which there were committed third-party investors.

63. PwC denies the allegations in paragraph 63 of the Complaint, except PwC admits that, at certain times between December 31, 2003 and March 31, 2009, BancGroup's balance sheet included as MWLD-related assets: (1) mortgage warehouse loans, which consisted mainly of mortgage warehouse lines of credit, (2) mortgage loans held for sale (including COLB), and (3) securities purchased under agreements to resell (including AOT).

64. PwC admits that "Mortgage Warehouse Loan" assets related to BancGroup's warehouse lines of credit that were periodically used by mortgage companies such as TBW to finance residential home loans. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 64 of the Complaint and therefore denies those allegations.

65. PwC denies that allegations in paragraph 65 of the Complaint, except PwC admits that the COLB loans held for sale provided a source of funds for mortgage loan originators that was secondary to the warehouse line of credit; that, under the COLB facility, Colonial Bank purchased participation interests in mortgage loans from mortgage originators such as TBW; that the terms of those transactions required that committed takeout investors be in place; and that when Colonial Bank purchased participation interests in mortgage loans under the COLB facility, those transactions qualified for sales accounting treatment under Financial Accounting Standard No. 140 ("FAS 140").

66. PwC denies the allegations in paragraph 66 of the Complaint, except PwC admits that AOT stood for "Assignment of Trade" and provided a source of funds for the origination of loans; that TBW was Colonial Bank's only customer that used the AOT facility; that, under the terms of the AOT agreement with TBW, committed takeout investors were to be in place and

TBW was supposed to deliver an electronic copy of a takeout commitment and a takeout commitment assignment from a takeout investor.

67. PwC denies the allegations in paragraph 67 of the Complaint, except PwC admits that AOT transactions qualified for sales accounting treatment under Financial Accounting Standard No. 140 ("FAS 140") and that AOT assets in certain years were carried on BancGroup's balance sheet as Securities Purchased Under Agreements to Resell.

68. PwC denies the allegations in paragraph 68 of the Complaint, except PwC admits that from 2002 through 2008, the COLB balance grew and, in certain years, the AOT balance, grew.

69. PwC denies the allegations in paragraph 69 of the Complaint except PwC admits that the audit procedures it applied to the COLB and AOT balances were guided by (among other things) its professional judgment and its assessment of the risk, facts and circumstances known to PwC at the time of its audits of BancGroup's consolidated year-end financial statements.

70. PwC denies the allegations in paragraph 70 of the Complaint, except PwC admits it understood that BancGroup was a financial institution that had periods of growth between 2002 and 2008.

71. PwC denies the allegations in paragraph 71 of the Complaint.

72. PwC denies the allegations in paragraph 72 of the Complaint, except PwC admits that the 2006-2007 Risk Assessment and Internal Audit Plan for BancGroup assigned a rating of "high" to the operational risk inherent to the MWLD and acknowledged the potential for customer fraud, but denies that PwC did not appropriately address these factors during its audits.

73. PwC denies the allegations in paragraph 73 of the Complaint.

74. PwC denies the allegations in paragraph 74 of the Complaint.

75. PwC denies the allegations in paragraph 75 of the Complaint.

76. PwC denies the allegations in paragraph 76 of the Complaint except that it admits that TBW was Colonial Bank's only customer that used the AOT facility; that under the AOT facility, Colonial Bank purchased participation interests in securities; that the terms of the AOT facility agreement with TBW required committed third-party investors be in place; and that PwC knew that, in certain years, BancGroup's consolidated year-end financial statements showed balances that included participation interests in mortgage loans and securities purchased from TBW under the COLB and AOT facilities that exceeded one billion dollars.

77. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 77 of the Complaint and therefore denies those allegations.

78. PwC denies the allegations in paragraph 78 of the Complaint, except PwC admits that, in certain years, PwC had a general preliminary expectation that the MWLD volume would decrease when the volume in fact increased due to various factors.

79. PwC denies the allegations in paragraph 79 of the Complaint.

80. PwC denies the allegations in paragraph 80 of the Complaint.

81. PwC denies the allegations in paragraph 81 of the Complaint.

82. PwC admits that PwC was required to, and did, obtain an understanding of BancGroup's business but denies the remaining allegations in paragraph 82 of the Complaint.

83. PwC denies the allegations in paragraph 83 of the Complaint.

84. PwC denies the allegations in paragraph 84 of the Complaint.

85. PwC denies the allegations in paragraph 85 of the Complaint, except that PwC admits that, in certain years, PwC performed integrated audits.

86. PwC admits that GAAS and AS 3 contain some of the language set forth in paragraph 86 but denies the allegations to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS.

87. PwC admits that GAAS contain some of the language set forth in paragraph 87 of the Complaint, but denies the allegations to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS.

88. PwC admits that Kissick was a member of management, that GAAS did not allow PwC to rely solely on the representations of management, including Kissick, and that PwC did not do so, but denies the remaining allegations in paragraph 88 of the Complaint.

89. PwC admits that, under GAAS, PwC had the responsibility to plan and perform its audits to obtain reasonable, but not absolute, assurance about whether the financial statements were free from material misstatement, whether caused by error and fraud; that PwC complied with GAAS; and that GAAS further recognize that a properly planned and performed audit may not detect the existence of fraud. PwC denies the remaining allegations in paragraph 89 of the Complaint.

90. PwC admits that GAAS contain some of the language set forth in the first

sentence of paragraph 90 of the Complaint, but denies the allegations in paragraph 90 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS and denies the remaining allegations in paragraph 90 of the Complaint.

91. PwC denies the allegations in paragraph 91 of the Complaint, except PwC admits that Susan Thompson was, in certain years, a member of PwC's BancGroup audit team, and that she performed some audit procedures related to the MWLD.

92. PwC denies the allegations in paragraph 92 of the Complaint.

93. PwC admits that GAAS contain some of the language set forth in paragraph 93 of the Complaint, but denies the allegations in paragraph 93 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS.

94. PwC admits that GAAS contain some of the language set forth in paragraph 94 of the Complaint, but denies the allegations in paragraph 94 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS.

95. PwC admits that GAAS contain some of the language set forth in paragraph 95 of the Complaint, but denies the allegations in paragraph 95 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS.

96. PwC admits that GAAS contain some of the language set forth in paragraph 96 of the Complaint, but denies the allegations in paragraph 96 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS.

97. PwC denies the allegations in paragraph 97 of the Complaint.

98. PwC denies the allegations in paragraph 98 of the Complaint, except PwC admits that, subsequent to serving as BancGroup's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, that the fraud involved Plan B mortgage loans, and that the fraud was at some point shifted from the COLB facility to the AOT facility. To the extent that paragraph 98's identification of Kissick (and those acting at her direction) and Farkas as the "Adverse Parties" constitutes an allegation that the Fraudsters' actions were adverse to BancGroup or TBW, PwC denies that allegation in paragraph 98 and wherever it appears in the Complaint.

99. PwC denies the allegations in paragraph 99 of the Complaint.

100. PwC admits that GAAS contain some of the language set forth in the second sentence of paragraph 100, but denies the allegations in paragraph 100 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS and denies the remaining allegations in paragraph 100 of the Complaint.

101. PwC denies the allegations in paragraph 101 of the Complaint.

102. PwC denies the allegations in paragraph 102 of the Complaint.

103. PwC admits that GAAS contain some of the language set forth in paragraph 103, but denies the allegations in paragraph 103 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS. PwC denies the allegations in the second sentence in paragraph 103 of the Complaint.

104. PwC admits that GAAS contain some of the language set forth in paragraph 104,

but denies that GAAS refer to the auditor's belief and deny the allegations in paragraph 104 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS.

105. PwC admits that GAAS contain some of the language set forth in paragraph 105, but denies the allegations in paragraph 105 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS.

106. PwC denies the allegations in paragraph 106 of the Complaint.

107. PwC admits that, for each of BancGroup's 2002 through 2008 fiscal years, PwC was engaged to audit BancGroup's consolidated year-end financial statements and that those audits were integrated audits beginning with the audit of BancGroup's 2004 consolidated year-end financial statements. PwC denies the remaining allegations in paragraph 107 of the Complaint.

108. PwC admits that, at the conclusion of each if its audits, PwC issued a report that was addressed to BancGroup, its Board of Directors and its shareholders; that those reports contained PwC opinions regarding the consolidated year-end financial statements of BancGroup that were audited; and that those opinions appeared in PwC's audit reports on BancGroup's consolidated financial statements for the fiscal years ended December 31, 2002, 2003, 2004, 2005, 2006 and 2008. PwC denies the remaining allegations in paragraph 108 of the Complaint.

109. PwC denies the allegations in paragraph 109 of the Complaint.

110. PwC denies the allegations in paragraph 110 of the Complaint.

111. PwC denies the allegations in paragraph 111 of the Complaint.

112. PwC denies the allegations in paragraph 112 of the Complaint.

113. PwC denies the allegations in paragraph 113 of the Complaint.

114. PwC denies the allegations in paragraph 114 of the Complaint.

115. PwC denies the allegations in paragraph 115 of the Complaint that relate to PwC. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 115 and therefore denies those allegations.

116. PwC denies the allegations in paragraph 116 of the Complaint.

117. PwC denies the allegations in paragraph 117 of the Complaint that relate to PwC. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 117 of the Complaint that relate to Crowe and therefore denies those allegations.

118. PwC admits that Crowe entered into various engagement agreements with BancGroup, and that those agreements set forth Crowe's and BancGroup's duties and responsibilities. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 118 of the Complaint and therefore denies those allegations.

119. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 119 of the Complaint and therefore denies those allegations.

120. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 120 of the Complaint and therefore denies those allegations.

121. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 121 of the Complaint and therefore denies those allegations.

122. PwC admits that GAAS contain some of the language set forth in paragraph 122 of the Complaint, but denies the allegations in paragraph 122 of the Complaint to the extent they are incomplete, inconsistent with, or take out of context the relevant portions of GAAS. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 122 of the Complaint and therefore denies those allegations.

123. PwC admits that the Institute of Internal Auditors has promulgated standards for internal audit services but lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 123 of the Complaint and therefore denies those allegations.

124. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 124 of the Complaint and therefore denies those allegations.

125. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 125 of the Complaint and therefore denies those allegations.

126. PwC denies that there was an "AOT line of credit" account and thus denies the allegations about it, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 126 of the Complaint and therefore denies those allegations.

127. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 127 of the Complaint and therefore denies those allegations.

128. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 128 of the Complaint and therefore denies those allegations.

129. PwC admits that in certain years that Crowe provided outsourced internal audit services to BancGroup, certain Risk Assessment and Internal Audit Plans for BancGroup assigned risk ratings, but PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 129 of the Complaint and therefore denies those allegations.

130. PwC admits that, for certain periods, Risk Assessment and Internal Audit Plans for BancGroup assigned a rating of “high” to the operational risk inherent to the MWLD. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 130 of the Complaint and therefore denies those allegations.

131. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 131 of the Complaint and therefore denies those allegations.

132. PwC admits that the 2007-2008 Risk Assessment and Internal Audit Plan for BancGroup stated that it assessed the risk relating to incoming and outgoing wire transfers in the MWLD. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 132 of the Complaint and therefore denies those allegations.

133. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 133 of the Complaint and therefore denies those allegations.

134. PwC admits that, in the COLB facility, Colonial Bank purchased secured participation interests in mortgage loans and that those purchases required that committed

investors be in place, and admits that between 2002 and 2008, the MWLD experienced growth in its COLB and AOT lines. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 134 regarding Crowe's understanding and therefore denies those allegations. PwC denies the remaining allegations in paragraph 134 of the Complaint.

135. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 135 of the Complaint regarding Crowe's understanding and knowledge and therefore denies those allegations. PwC denies the remaining allegations in paragraph 135 of the Complaint.

136. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 136 of the Complaint and therefore denies those allegations.

137. PwC denies the allegations in paragraph 137 of the Complaint.

138. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 138 of the Complaint and therefore denies those allegations.

139. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 139 of the Complaint and therefore denies those allegations.

140. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 140 of the Complaint and therefore denies those allegations.

141. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 141 of the Complaint and therefore denies those allegations.

142. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 142 of the Complaint and therefore denies those allegations.

143. PwC admits the allegations in paragraph 143 of the Complaint.

144. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 144 of the Complaint and therefore denies those allegations.

145. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 145 of the Complaint and therefore denies those allegations.

146. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 146 of the Complaint and therefore denies those allegations.

147. PwC admits that Crowe's Internal Audit Reports for Mortgage Warehouse Lending for Crowe's 2006-07 and 2007-08 audits state that Crowe reviewed 20 collateral packages, among other tests and procedures. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 147 of the Complaint and therefore denies those allegations.

148. PwC denies the allegations in the first sentence in paragraph 148 of the Complaint and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 148 of the Complaint and therefore denies those allegations.

149. PwC denies that BancGroup's financial statements reported an AOT asset balance totaling over $2.0 billion as of year-end 2007. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 149 of the Complaint and

therefore denies those allegations.

150. PwC denies the allegations in paragraph 150 of the Complaint.

151. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 151 of the Complaint and therefore denies those allegations.

152. PwC denies the allegations in third sentence in paragraph 152 of the Complaint, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 152 of the Complaint and therefore denies those allegations.

153. PwC denies that the first sentence in paragraph 153 of the Complaint accurately characterizes the AOT facility. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 153 of the Complaint and therefore denies those allegations.

154. PwC denies the allegations in paragraph 154 of the Complaint.

155. PwC denies that there was no testing of the AOT, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 155 of the Complaint and therefore denies those allegations.

156. PwC admits that contemporaneous with Crowe's performance of certain outsourced internal audit services, Pam Vitto was employed as a full-time Senior Risk Officer in Montgomery and that her responsibilities included auditing controls in MWLD. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 156 of the Complaint and therefore denies those allegations.

157. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence in paragraph 157 of the Complaint and therefore denies those allegations. PwC denies the allegations in the second sentence in paragraph 157 of the Complaint.

158. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence in paragraph 158 and therefore denies those allegations. PwC denies the allegations in the second sentence in paragraph 158 of the Complaint, except PwC admits that at certain times it properly relied on Crowe's testing of BancGroup's internal control over financial reporting.

159. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 159 and therefore denies those allegations. To the extent that paragraph 159's identification of Kissick (and those acting at her direction) and Farkas as the "Adverse Parties" constitutes an allegation that the Fraudsters' actions were adverse to BancGroup or TBW, PwC denies that allegation in paragraph 159 and wherever it appears in the Complaint.

160. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 160 of the Complaint and therefore denies those allegations.

161. PwC hereby incorporates, as if fully set forth herein, its answers to the preceding paragraphs of the Complaint.

162. PwC denies the allegations in paragraph 162 of the Complaint, except PwC admits that, depending on the audit year, it was responsible for performing its audits of

BancGroup's consolidated year-end financial statements in accordance with either the PCAOB Auditing Standards or GAAS and that it did so.

163. PwC denies the allegations in paragraph 163 of the Complaint.

164. PwC denies the allegations in paragraph 164 of the Complaint.

165. PwC denies the allegations in paragraph 165 of the Complaint.

166. PwC hereby incorporates, as if fully set forth herein, its answers to the preceding paragraphs of the Complaint.

167. PwC denies the allegations in paragraph 167 of the Complaint, except PwC admits that it provided an engagement letter in connection with each of its audits of BancGroup, directed to BancGroup's Audit Committee, in which it agreed to perform its audits (including those audits which were integrated) in accordance with professional standards and BancGroup agreed to carry out various obligations.

168. PwC denies the allegations in paragraph 168 of the Complaint.

169. PwC denies the allegations in paragraph 169 of the Complaint.

170. PwC denies the allegations in paragraph 170 of the Complaint.

171. PwC incorporates by reference its answers to paragraphs 1 through 170 as if fully set forth herein.

172. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 172 of the Complaint and therefore denies those allegations.

173. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 173 of the Complaint and therefore denies those allegations.

174. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 174 of the Complaint and therefore denies those allegations.

175. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 175 of the Complaint and therefore denies those allegations.

176. PwC incorporates by reference its answers to paragraphs 1 through 175 as if fully set forth herein.

177. PwC admits that the engagement letters between Crowe and BancGroup contained provisions regarding what Crowe and BancGroup would do in connection with the engagements. Because paragraph 177 of the Complaint lacks a specified time period, PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 177 of the Complaint and therefore denies those allegations.

178. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 178 of the Complaint and therefore denies those allegations.

179. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 179 of the Complaint and therefore denies those allegations.

180. PwC denies that BancGroup performed, or substantially performed, its material obligations under the engagement letters with Crowe, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 180 of the

Complaint and therefore denies those allegations.

181. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 181 of the Complaint and therefore denies those allegations.

With respect to the unnumbered paragraph beginning with "WHEREFORE" on page 47 of the Complaint, PwC denies that Plaintiffs are entitled to the relief requested in the Complaint, or to any relief, including the relief sought in subparagraphs A through F of that paragraph.

Each specific allegation in the Complaint, including but not limited to any allegations that may be made in, or implied by, the headings and captions used in the Complaint, that PwC has not specifically admitted or otherwise responded to herein is hereby denied.

WHEREFORE, PwC prays that the Plaintiffs take and be awarded nothing from or against PwC by way of Plaintiffs' Complaint, that judgment be entered against Plaintiffs and in favor of PwC, that PwC be awarded its costs and attorneys' fees, and that PwC be awarded all other relief just and proper in the premises.

## AFFIRMATIVE DEFENSES

PwC will rely upon all defenses lawfully available to it (whether under the law of the state of Alabama or the law of the state of Florida, if the Court determines Florida law were to apply) at the time of trial and reserves the right to amend its Answer and Affirmative Defenses, if necessary, as additional facts become known. PwC asserts the defenses below without assuming the burden of proof where it otherwise rests with Plaintiffs.

In setting forth its defenses, PwC does not admit any of the allegations drawn from the Complaint or that Plaintiffs can carry their burden of proving the claim they assert against PwC.

PwC pleads the following affirmative defenses.

FIRST DEFENSE

Plaintiffs have failed, in whole or in part, to state a claim upon which relief can be granted against PwC.

SECOND DEFENSE

Plaintiffs are not the real parties in interest to claims against PwC.

THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the claims are owned by other persons or entities.

FOURTH DEFENSE

Plaintiffs lack standing to bring the claims they assert against PwC.

FIFTH DEFENSE

Plaintiffs lack the capacity to bring suit on the claims they assert against PwC.

SIXTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by doctrines of estoppel.

SEVENTH DEFENSE

Plaintiffs' claims against PwC are barred, in whole or in part, by the doctrine of waiver.

EIGHTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

NINTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by laches.

TENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate any alleged damages.

ELEVENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of ratification.

TWELFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the statute of limitations.

THIRTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

FOURTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs must rely in whole or in part on the illegal or immoral acts or transactions to which BancGroup was a party. *See Hinkle*

*v. Railway Express Agency*, 242 So. 2d 417, 421 (Ala. 1942); *see also Kaminer v. Eckerd Corp. of Fla., Inc.*, 966 So. 2d 452 (Fla. 4th DCA 2007).

FIFTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of judicial estoppel.

SIXTEENTH DEFENSE

The damages complained of by Plaintiffs were the result of superseding and/or intervening actions of others and, thus, were not proximately caused by the actions or omissions of PwC.

SEVENTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent they are or become barred by the doctrine of collateral estoppel (issue preclusion).

EIGHTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of contributory negligence.

NINETEENTH DEFENSE

If Florida law governs Plaintiffs' claims, then Plaintiffs' claims are barred, in whole or in part, by the doctrine of comparative negligence.

TWENTIETH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs fraudulently induced PwC to PwC's detriment.

TWENTY-FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, by fraud.

TWENTY-SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, because BancGroup assumed the risk of its injuries.

TWENTY-THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent they are or become barred by the doctrine of res judicata (claim preclusion).

TWENTY-FOURTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent they have been or become released.

TWENTY-FIFTH DEFENSE

Plaintiffs are not entitled to have their claims tried to a jury to the extent that the right to a jury trial has been waived in the PwC-BancGroup engagement letters.

TWENTY-SIXTH DEFENSE

If Florida law governs Plaintiffs' claims, then under § 768.81(3), Fla. Stat., and the *Fabre* doctrine (as set forth in *Fabre v. Martin*, 623 So. 2d 1182 (Fla. 1993), and its progeny), any liability of PwC must be reduced, in whole or in part, by the negligence attributable to persons or entities not a party to this action who caused or contributed to the damages purportedly suffered by Plaintiffs (the "*Fabre* Defendants").[1] The *Fabre* Defendants identified by PwC at this time include, on information and belief:

(a) Akerman Senterfitt

(b) Capell & Howard

(c) Bank of America (including successor-in-interest to La Salle Bank)

(d) Deutsche Bank, Ag, BNP Paribas, and BNP Paribas Mortgage Corporation

(e) Deutsche Bank Securities, Inc. and BNP Paribas Securities Corporation

(f) Natixis Real Estate Capital, Inc. and Natixis Financial Products LLC

(g) RLI Corporation

(h) Mortgage Dynamics, Inc.

(i) Robbins Gioia

(j) Deloitte & Touche LLP

(k) The Alabama State Banking Department

(l) The Federal Deposit Insurance Corporation

(m) The Office of the Comptroller of the Currency

(n) The Federal Reserve Bank

[1] PwC does not believe that it is at fault and, accordingly, does not believe that there is any fault to apportion. Federal Rule of Civil Procedure 8(d)(3), however, expressly permits a defendant to raise any claim or defense in the alternative, regardless of consistency, which is what PwC is doing here.

(o) The United States Department of Housing and Urban Development

(p) The Federal Housing Finance Agency

(q) The Federal National Mortgage Association

(r) The Colonial BancGroup, Inc.

(s) Home America Mortgage, Inc. and various of its officers, directors, employees, and shareholders, and other individuals working on Home America's behalf, including but not limited to Gregory Hicks, Dennis Mosley, and Carl Wright

(t) Colonial Bank

(u) Various officers, directors, and employees of BancGroup or Colonial Bank including, without limitation, the following individuals:

- Arthur Barksdale;
- Mary Lou Bathen;
- Lewis Beville;
- Young Boozer;
- William Britton;
- Terry Bryant;
- David Byrne;
- Michelle Carroll;
- Jerry J. Chesser;
- Caryn Cope;
- Hubert Harris;
- Brent Hicks;
- Patti Hill;
- Kamal Hosein;

- Sandra Jansky;
- Teresa Carrier Kelly;
- Catherine Kissick;
- Rodney Lewis;
- Robert Lowder;
- Sarah Moore;
- Amy Nunnelly;
- Flake Oakley;
- Hans Petit;
- William Powell;
- Frances Roper;
- Joyce Schultz;
- Simuel Sippial;
- Tamara Stidham;
- Lynette Tischer;
- Thomas Tynes;
- Pamela Vitto; and
- Edward V. Welch

(v) Ocala Funding, including its managing member, TBW, and its special member, Colleen A. De Vries

(w) Various officers, directors, employees and members of TBW or Ocala Funding including, without limitation, the following individuals:

- Paul Allen;
- Delton de Armas;

- Raymond Bowman;
- Desiree Brown;
- Brian Callahan;
- Jeffrey Cavender;
- Colleen A. De Vries;
- Sherry Dickinson;
- Lee Farkas;
- Digjivay "Danny" Gaekwad;
- Aaron Jacoby;
- Sean Ragland;
- Stuart Scott;
- Donna Skuhrovec;
- Mike Wawrzyniak

## TWENTY-SEVENTH DEFENSE

Any amounts otherwise recoverable in favor of Plaintiffs must be reduced on account of any consideration received by Plaintiffs (including but not limited to any consideration received in prior or future settlements with or judgments against third parties) as compensation for the damages alleged in the Complaint.

## TWENTY-EIGHTH DEFENSE

Pursuant to the doctrine of recoupment, any amounts otherwise recoverable in favor of Plaintiffs must be reduced by the amount of damages PwC suffered as a result of negligent or fraudulent representations made by BancGroup, on which PwC relied in the course of its audits,

which audits are being challenged by Plaintiffs in this action.

TWENTY-NINTH DEFENSE

At all times, PwC acted in good faith and without any of the requisite negligence, gross negligence, or recklessness, as applicable, for any of the Plaintiffs' claims.

THIRTIETH DEFENSE

Discovery has not yet started and PwC cannot reasonably be expected to know whether any additional defense or defenses may be applicable at this time. Accordingly, PwC reserves the right to amend its answer and defenses during the pendency of this action..

RESERVATION OF RIGHTS TO BRING COUNTERCLAIMS AND THIRD-PARTY CLAIMS

PwC hereby reserves all rights to bring in any amended pleading or otherwise, any and all counterclaims against Plaintiffs, and any or all third-party claims that it may elect to pursue in the future. Failure to include such claims in this answer shall not serve to waive any right to bring such claims in future pleadings.

Respectfully submitted, this 10th day of October, 2014.

*/s/ Elizabeth V. Tanis*
Elizabeth V. Tanis (PHV No. 97203)
etanis@kslaw.com
Drew D. Dropkin (PHV No. 107990)
ddropkin@kslaw.com
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4660
Facsimile: (404) 572-5140

*Counsel for Defendant*
*PricewaterhouseCoopers LLP (except as to the Fabre Defendant identified in subsection (j) of the Twenty-Sixth Defense)*

Tabor Robert Novak, Jr. (NOV001)
BALL BALL MATTHEWS & NOVAK PA
P.O. Box 2148
Montgomery, Alabama 36102-2148

*Counsel for Defendant*
*PricewaterhouseCoopers LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2014, a true and exact copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all counsel of record:

C Edward Dobbs
Rufus T. Dorsey, IV
Ronald T. Coleman, Jr.
PARKER, HUDSON, RAINER & DOBBS, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
***Attorneys for Plaintiffs***

Jonathan C. Medow
Stanley J. Parzen
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
***Attorneys for Defendant Crowe Horwath, LLP***

Christopher A. Caserta
Nicholas J. DiCarlo
DICARLO CASERTA MCKEIGHAN & PHELPS PLC
6900 E. Camelback Road, Suite 250
Scottsdale, AZ 85251
***Attorneys for Plaintiffs***

James Harold Anderson
BEERS ANDERSON JACKSON PATTY & FAWAL PC
P.O. Box 1988
Montgomery, AL 36102
***Attorney for Defendant Crowe Horwath, LLP***

Andrew P. Campbell
Caroline Smith Gidiere
LIETMAN SIEGAL PAYNE & CAMPBELL PC
520 N. 20th Street, Suite 2000
Birmingham, AL 35203
***Attorneys for Plaintiffs***

Dennis Bailey
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
P.O. Box 270
Montgomery, AL 36101-0270
***Attorney for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank***

David Mullin
John M. Brown
John G. Turner, III
Robert Bell
Clint R. Latham
MULLIN, HOARD & BROWN, LLP
500 South Taylor, Suite 800
Amarillo, TX 79101
***Attorneys for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank***

Thomas J. O'Brien
FEDERAL DEPOSIT INSURANCE CORPORATION
3501 Fairfax Drive, Room VS-B-7032
Arlington, VA 22226-3500
***Attorney for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank***

*s/Elizabeth V. Tanis*
Elizabeth V. Tanis (Ga. Bar No. 697415)
*admitted pro hac vice*