## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN, | |
| Plaintiff, | |
| v. | Case No. 2:11-cv-00746-WKW |
| PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, | |
| Defendants. | |
| _____ | |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK, | Case No. 2:12-cv-00957-WKW |
| Plaintiff, | |
| v. | |
| PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, | |
| Defendants. | |

## MOTION TO COMPEL AND BRIEF IN SUPPORT OF THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK

On or around December 4, 2014, Plaintiff Federal Deposit Insurance Corporation as Receiver for Colonial Bank ("FDIC-R") served upon Defendant Crowe Horwath LLP ("Crowe") its First Request for Production of Documents to

Crowe Horwath LLP ("Request for Production"). (Attached hereto as Exhibit A is a true copy of the Request for Production.) On January 12, 2015, Crowe served its Objections and Responses to the Request for Production ("Crowe Response"). (Attached hereto as Exhibit B is a true and correct copy of the Crowe Response.) Crowe has refused on relevancy grounds to provide relevant discovery concerning its audit and accounting manuals, and internal policies and procedures that apply directly or otherwise relate to the internal auditing work that Crowe performed for Colonial (collectively "Crowe Manuals"). To the contrary, the Crowe Manuals are highly relevant because they (i) provide insight on how Crowe thinks its auditors should have performed their duties at Colonial, and (ii) are probative on the applicable standard of care. These types of documents have been produced without objection by co-defendant PricewaterhouseCoopers LLP ("PwC"). As a result, the FDIC-R seeks an order compelling Crowe to produce those portions of the Crowe Manuals that are relevant to the issues in this case.

## I.     Statement on Attempts to Meet and Confer

Following the exchange of detailed correspondence, counsel for the FDIC-R met and conferred with opposing counsel via phone conference on May 7, 2015. Since that date counsel for the parties have continued their discussions in numerous telephone conferences concerning the Requests for Production and the Crowe Response. Through a collaborative effort the parties have successfully

narrowed their dispute over the FDIC-R's production requests. Indeed, the parties have compromised a number of significant disputes relating to the production of Crowe's electronic work papers, personnel files, billing records and marketing materials. However, the parties remain steadfastly deadlocked over the production of the Crowe Manuals.

## II.    Background

On August 14, 2009, the Alabama State Banking Department closed Colonial Bank ("Colonial" or "Bank") and appointed the FDIC as receiver. Colonial was the victim of a massive, continuous multi-year fraud perpetrated by Taylor Bean & Whitaker Mortgage Corporation ("TBW"), its largest mortgage banking customer.   This fraud resulted in financial statements that grossly misstated Colonial's true financial condition.

TBW chairman Lee Farkas and treasurer Desiree Brown conspired with two of Colonial's Mortgage Warehouse Lending Division ("MWLD") employees, Catherine Kissick (head of the MWLD) and Teresa Kelly (operations supervisor reporting to Kissick), to defraud Colonial by obtaining large amounts of MWLD financing for TBW without providing required collateral, thereby effectively stealing money from Colonial. At all times that the fraud was ongoing, PwC served as Colonial's external, independent auditor, and Crowe served as Colonial's internal auditor. Neither Crowe nor PwC detected the fraud.

The FDIC-R asserts claims against Crowe for professional negligence, gross negligence, and negligent misrepresentation.[1] *See* FDIC-R's Second Amended Complaint, Docket #53.

### III.   Standard for Motion to Compel

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(l). Consistent with the notice-pleading system established by the Federal Rules, the discovery rules are to be construed liberally. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978). This Court "has broad discretion to ensure that parties obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense, and for good cause, may order discovery of any matter relevant to the subject matter involved in the action." *Downing v. Billy Barnes Enterprises*, CA 1:12-00435-C, 2013 WL 1857113, at *2 (S.D. Ala. May 2, 2013). When a party fails to comply with its discovery obligations, the opposing party, upon reasonable notice, may thereby apply for an order compelling discovery. Fed. R. Civ. P. 37(a)(3). In ruling on a motion to compel discovery, this Court should "consider the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in a

---

[1]  In addition to these claims, the FDIC-R asserts claims for breach of contract against PwC.

particular case before the court." *Giraldo v. Drummond Co., Inc.*, 2:09-CV-01041-RDP, 2012 WL 2358297, at *2 (N.D. Ala. June 15, 2012).   As demonstrated below, the Court should grant the FDIC-R's motion to compel.

## IV.   Motion to Compel

The FDIC-R seeks to compel production of the relevant portions of (i) Crowe's audit and accounting manuals; and (ii) other internal guidance maintained by Crowe relating to accounting, auditing, and audit procedures.

### A.   <u>Audit and Accounting Manuals</u>

The FDIC-R seeks the production of relevant portions of audit and accounting manuals, and other relevant manuals from Crowe. Specifically, the FDIC-R seeks:

**Request 1(i):** Crowe's administrative manuals in effect from 2002 through 2009;

**Request 1(j):** Crowe's manuals governing the provision of internal audit services in effect from 2002 through 2009, including, but not limited to, those relating to the development and preparation of the "Colonial BancGroup, Inc. Internal Audit Process 'Rules of Engagement' Revised December 2007";

**Request 1(k):** Crowe's industry accounting and auditing manuals for entities (including financial institutions) that specialize in the mortgage warehouse lines of credit, mortgage loans held for sale, securities purchased under agreements to resell in effect from 2002 through 2009, and origination, purchase, and servicing of mortgage loans;

**Request 18:** All documents, including work papers, internal manuals and procedures, and communications, regarding the review and

confirmation of loan collateral securing warehouse lines of credit and mortgage loans relating to the COLB (i.e., loans held for sale) and AOT (i.e., securities purchased under agreements to resell) facilities for 2005 through 2009.

1.  Audit and Accounting Manual Are Relevant to Internal Audits

Courts routinely order the production of audit and accounting manuals in accounting malpractice cases because such materials are relevant to the standard of care. *See* pages 10-12, *infra*.  Indeed, as noted above, PwC agreed to produce the relevant portions of its audit and accounting manuals without any objection. Crowe refuses to produce any of its audit and accounting manuals contending that these manuals relate to audits performed in accordance with Generally Accepted Auditing Standards ("GAAS"), and since Crowe was performing only internal audit services for Colonial, its audit and accounting manuals are irrelevant.

Crowe's argument misses the point entirely. Even though Crowe was not performing GAAS audits of Colonial, many of the procedures Crowe performed or should have performed were the same as or similar to procedures performed in connection with a GAAS audit. Moreover, accounting issues (as opposed to audit procedures) encountered by Crowe's internal audit team would be governed by Generally Accepted Accounting Principles ("GAAP"), the identical accounting principles that guide the external auditors.   Accordingly, Crowe's audit and accounting manuals are indeed relevant.

Attached hereto as Exhibit C is a true excerpt from Colonial's Audit Policy dealing with "Internal Audit Outsourcing Firm Responsibilities" ("Colonial's Internal Audit Policy"), which demonstrates the considerable overlap in the audit and accounting principles and standards that govern both the internal and external auditors.   For example, like external audits, the central objective of an internal audit was to provide "objective evaluations of the adequacy, efficiency, accuracy, and effectiveness of internal controls . . . ." (Exh. C, p. FDICR 0828782.) Clearly Crowe's audit manuals on evaluating internal controls would provide an important perspective on how Crowe viewed that process.

Similarly, Colonial's Internal Audit Policy required internal auditors, like Crowe, to follow procedures and create work papers "sufficient to provide competent evidential matter to support conclusions regarding work completed." (Exh. C, FDICR 0828783.) These same requirements are also part of GAAS. Just as GAAS requires of the external auditors, Colonial's Internal Audit Policy requires the internal auditors to maintain effective audit programs, and to staff the audit team with competent, qualified personnel who are to be adequately supervised. (*Id.*) Finally, Colonial's Internal Audit Policy mandates that internal auditors use many of the same testing procedures used by external auditors: Observation, inspection, confirmation, comparison, analysis computation and inquiry. (Exh. C, FDICR 0828785.)

The following are some examples of where GAAS provides guidance applicable to Crowe's obligation to provide professional services in accordance with Colonial's Audit Policy:

- AU SECTION 330 - THE CONFIRMATION PROCESS

- AU SECTION 210  - TRAINING AND PROFICIENCY OF THE INDEPENDENT AUDITOR

- AU SECTION 230 - DUE PROFESSIONAL CARE IN THE PERFORMANCE OF WORK

- AU SECTION 339 - AUDIT DOCUMENTATION

- AU SECTION 311 - PLANNING AND SUPERVISION

- AU SECTION 312 - AUDIT RISK AND MATERIALITY IN CONDUCTING AN AUDIT

- AU SECTION 316 - CONSIDERATION OF FRAUD IN A FINANCIAL STATEMENT AUDIT

- AU SECTION 314 - UNDERSTANDING THE ENTITY AND ITS ENVIRONMENT

- AU SECTION 318 - PERFORMING AUDIT PROCEDURES IN RESPONSE TO ASSESSED RISKS

- AU SECTION 319 - CONSIDERATION OF INTERNAL CONTROL IN A FINANCIAL STATEMENT AUDIT

- AU SECTION 325 - COMMUNICATING INTERNAL CONTROL RELATED MATTERS IDENTIFIED IN AN AUDIT

- AU SECTION 326 - AUDIT EVIDENCE

- AU SECTION 328  -AUDITING FAIR VALUE MEASUREMENTS AND DISCLOSURES

- AU SECTION 329 - ANALYTICAL PROCEDURES

- AU SECTION 350 - AUDIT SAMPLING

- AU SECTION 380 - THE AUDITOR'S COMMUNICATION WITH THOSE CHARGED WITH GOVERNANCE

- AU SECTION 336 - USING THE WORK OF A SPECIALIST

- AU SECTION 342 - AUDITING ACCOUNTING ESTIMATES

- AU SECTION 410 - ADHERENCE TO GENERALLY ACCEPTED ACCOUNTING PRINCIPLES

- AU SECTION 420 - CONSISTENCY OF APPLICATION OF GENERALLY ACCEPTED ACCOUNTING PRINCIPLES

- AU SECTION 431 ADEQUACY OF DISCLOSURE IN FINANCIAL STATEMENT

- AU SECTION 560 - SUBSEQUENT EVENTS

- AU SECTION 561 - SUBSEQUENT DISCOVERY OF FACTS EXISTING AT THE DATE OF THE AUDITOR'S REPORT

Furthermore, Crowe assisted PwC in the performance of its integrated annual audits of Colonial Bank Group's ("CBG") financial statements performed in accordance with PCAOB AS 5 - *An Audit of Internal Control Over Financial Reporting That Is Integrated with An Audit of Financial Statements*. As such, Crowe was aware that its internal audit work, as well as work performed under the direction of PwC, would be incorporated into PwC's annual audits and used and relied on by PwC to support its audit opinions in regards to CBG's financial statement compliance with GAAP. Crowe's audit and accounting manuals would also contain guidance relative to the PCAOB AS 5 work that Crowe performed in connection with PwC's integrated audits.

In addition, as a member of the American Institute of Certified Public Accountants ("AICPA"), Crowe was required to comply with the AICPA Code of Professional Conduct and the AICPA Consulting Standards with respect to its internal audit services (Exhibit D; ET Section 91, ET Section 201, and CS Section 100). Moreover, pursuant to its engagement letters, Crowe was to provide those services in accordance with the Standards of the Institute of Internal Auditors. (*See* Exhibit D.)  In this regard, Crowe's audit and accounting manuals, as well as Crowe's other professional guidance manuals relating to internal audit services, consulting services, and Crowe's system of quality control required to be maintained pursuant to AICPA Professional Standards (QC Section 10 - *Statement on Quality Control Standards*) are all relevant to the professional services provided by and the work performed by Crowe.

To be sure, the FDIC-R is not arguing that Crowe's internal audits of Colonial were the equivalent of PwC's independent audits. But the Crowe auditors were performing many of the same tests and using many of the same procedures as the independent auditors, and following the same GAAP as the external auditors, and therefore Crowe's internal audit manuals are – at a minimum – relevant to the internal audit work Crowe was performing at Colonial. Accordingly, Crowe has no basis to withhold the relevant portions of those manuals.

2. <u>Audit and Accounting Manuals Are Also Relevant to the Standard of Care</u>

Another reason why the Crowe Manuals are relevant and important here is because they relate to the standard of care. Crowe's audit and accounting manuals detail the guidance it provides to its auditors in performing various audit procedures. The FDIC-R's complaint alleges, among other things, that Crowe's internal audits of Colonial were performed negligently and amounted to professional malpractice. Crowe's internal manuals are relevant to show how Crowe thought various procedures should be performed in order for Crowe to comply with the requisite professional standards in conducting internal audits of Colonial and shed light on how Crowe thought those audits should be conducted. Accordingly, Crowe's internal manuals are probative on the issue of whether Crowe violated the standard of care and its duties to Colonial. As one district court explained it, the auditor's manuals are evidence of what the auditor believes is reasonably prudent:

> The "prudent auditor" rule … recognizes that circumstances surrounding a given audit may require procedures not specifically called for in broadly stated formal standards, but that prudent and reasonable auditing practices nonetheless require. Accountants long have recognized that generally accepted accounting principles are far from being a canonical set of rules that will ensure identical accounting treatment of identical transactions in all cases. [The auditor's] internal manual is relevant evidence of what [the auditor] believes GAAP and GAAS require and what is necessary to comply with those standards. Therefore, the internal manual is probative on the issue of whether [the auditor] violated its duties to the client.

*Grant Thornton, LLP v. F.D.I.C.*, 535 F. Supp. 2d 676, 709 (S.D.W. Va. 2007), *rev'd in part sub nom on other grounds, Ellis v. Grant Thornton LLP*, 530 F.3d 280 (4th Cir. 2008).

In accounting malpractice actions, the overwhelming weight of authority favors the production of audit manuals. Indeed, the practice of producing audit and accounting manuals in auditor malpractice cases has become so routine that the issue is rarely even contested, much less litigated. *See, e.g., In re Livent, Inc. Noteholders Sec. Litig*., No. 98 Civ. 7161 VMDFE, 2003 WL 23254, at *2 (S.D.N.Y. Jan. 2, 2003) ("I direct Deloitte to produce its audit manuals [within 18 days].")*; In re Mercury Fin. Co. of Illinois*, 1999 WL 495903, *2 (N.D.Ill. July 12, 1999) (compelling production of "[a]ll accounting and auditing manuals, guides, reference materials and literature that were prepared or generated by KPMG" and maintained during the relevant time period); *Sabratek Liquidating LLC v. KPMG LLP*, 01 C 9582, 2002 WL 31520993, at *2 (N.D. Ill. Nov. 13, 2002) (compelling production of audit manuals in an action "grounded in negligence, negligent misrepresentation, and breach of contract"). *Grant Thornton, LLP v. F.D.I.C.*, 535 F. Supp. 2nd 676, 709 (S.D.W. Va. 2007) (internal manual is relevant evidence of what auditor believes is necessary to comply with professional standards).

Indeed, at least one court has recognized that an "audit manual and materials are likely the best source of information available ... regarding how [the firm]

conducted [an] audit", and that "[u]nderstanding these materials could be vital to conducting meaningful depositions of the accountants." *In re Oxford Health Plans, Inc.*, 7:21-MC-76, 2001 WL 34780563, at *2 (S.D.N.Y. Apr. 30, 2001). Moreover, the audit manuals are "a necessary guide to understanding whether" the relevant standards were followed. *Id.*

Finally, information relating to Crowe's audit methodologies and controls is vital to provide a basis for Crowe's own interpretation of professional auditing standards and the manner in which Crowe "translated those required industry standards into its actual work..." *See Gohler v. Wood*, 162 F.R.D. 691, 695 (D. Utah 1995) (ordering auditor to produce its practice manuals).[2]

### B.   Internal Auditing Policies and Procedures and Other Guidance

As with the audit and accounting manuals, Crowe refuses to produce any materials regarding its internal guidance, policies, or procedures that Crowe provided to its auditors in connection with internal audits during the relevant time period. Specifically, the FDIC-R seeks:

> **Request 1(b):** Crowe's policies or procedures in regard to the auditing of, examination of, or provision of internal audit services to entities (including financial institutions) that specialize in mortgage

---

[2]   As stated above, the FDIC-R recognizes that Crowe was not engaged to conduct an independent audit of Colonial in accordance with GAAS. Nevertheless, the reasoning of the cases requiring auditors to produce their audit manuals is applicable here. Internal auditors perform many of the same detailed audit procedures performed by external auditors. Moreover, Crowe's internal manuals have specific application to internal audits. Accordingly, Crowe's internal manuals are probative on the issue of whether Crowe's internal audits of Colonial complied with professional standards.

warehouse lines of credit, mortgage loans held for sale, and securities purchased under agreements to resell, including but not limited to policies and procedures in regard to internal audits;

**Request 1(e):** Crowe's policies or procedures for the resolution of difference of professional opinion among members of the staff providing internal audit services or among other members or employees of Crowe;

**Request 1(f):** Crowe's internal procedures for identifying and resolving issues relating to appropriate professional standards, including without limitation Generally Accepted Auditing Standards or Generally Accepted Accounting Principles, the AICPA standards, or The Institute of Internal Auditors Standards for Professional Practice of Internal Auditing;

**Request 1(m):** Copies of any Crowe internal publications or bulletins, including guidance to practitioners, relating to the financial service industries issued from 2002 through 2009, including, but not limited to, the Interagency Policy Statement on the Internal Audit Function and Its Outsourcing (OCC 2003-2) and the Interagency Advisory on Mortgage Banking Activities (FIL-15-2003), and the items described in k. and l. above.

The documents sought fit into two categories: (i) documents relating to the internal audit function (Requests 1(b) and (e)); and (ii) documents relating to auditing practices and procedures (internal or otherwise) that are relevant to the issues in this case (Requests 1(f) and (m)). For the same reasons requiring the production of Crowe's audit and accounting manuals, Crowe's internal policies, procedures, and publications regarding internal audits are also properly discoverable. Both sets of documents are sought to show that Crowe failed to follow its own guidance during the internal audit of Colonial's considerable

mortgage warehouse transactions with TBW. As such, these documents are clearly discoverable. *See Sabratek Liquidating v. KPMG*, 01-C-9582, 2002 WL 31520993 at *2, 4 (N.D. Ill. Nov. 13, 2002) (ordering the production of "documents containing KPMG's audit practices, policies, procedures, and guidelines"); *In re Mercury Finance Co. of Ill*., No. 97-C-3035, 1999 WL 495903, at *5-6 (N.D. Ill. July 12, 1999) (granting plaintiffs' motion to compel KPMG to produce, among other documents, "the accounting and auditing manuals and other written materials prepared and generated by KPMG…"); *Master Palletizer Sys., Inc. v. T.S. Ragsdale Co. Inc.*, 123 F.R.D. 351, 352 (D. Colo. 1988)(compelling production of "internal audit policies and procedures").

## CONCLUSION

The documents the FDIC-R seeks from Crowe through this Motion to Compel are relevant and probative of the issues, and are also likely to lead to the discovery of admissible evidence.

## PRAYER

The FDIC-R respectfully prays that this Court enter an order compelling Crowe to produce the Crowe Manuals.

Dated:  July 31, 2015.

Respectfully submitted,

**RUSHTON, STAKELY, JOHNSTON**
   **& GARRETT, P.A.**
Dennis Bailey (4845-171D)
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3234
Facsimile:  (334) 481-0031
Email:     DRB@rsjg.com


/s/ David Mullin
David Mullin (TX Bar No. 14651600)
*pro hac vice*
John M. Brown (TX Bar No. 3142500)
*pro hac vice*
John G. Turner, III (TX Bar No. 20320550)
*pro hac vice*
Robert Bell (TX Bar No. 00787062)
*pro hac vice*
Clint Latham (TX Bar No. 24013009)
*pro hac vice*
Anthony W. Kirkwood (TX Bar No. 24032508)
*pro hac vice*
Richard Biggs (TX Bar No. 24064899)
*pro hac vice*
**MULLIN, HOARD & BROWN, LLP**
500 South Taylor, Suite 800
Amarillo, Texas  79101
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086
Email:  dmullin@mhba.com
         jobrown@mhba.com
         jturner@mhba.com
         rbell@mhba.com
         clatham@mhba.com
         tkirkwood@mhab.com
         rbiggs@mhba.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on July 31, 2015, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing as set forth below:

Drew D. Dropkin (ddropkin@kslaw.com)
Elizabeth V. Tanis (etanis@kslaw.com)
James H. Anderson (anderson@copelandfranco.com)
Jonathan C. Medow (jmedow@mayerbrown.com)
Stanley J. Parzen (sparzen@mayerbrown.com)
Tabor R. Novak, Jr. (tnovak@ball-ball.com)
Andrew P. Campbell (Andy.Campbell@Campbellguin.com)
Caroline Smith Gidiere (Caroline.Gidiere@Campbellguin.com)
Justin Glyien Williams (Justin.Williams@Campbellguin.com)
Nicholas J. DiCarlo (ndicarlo@dcmplaw.com)
Christopher A. Caserta (ccaserta@dcmplaw.com)
C. Edward Dobbs (ced@phrd.com)
Ronald T. Coleman, Jr. (rtc@phrd.com)
Rufus T. Dorsey, IV (rtd@phrd.com)
James N. Gorsline (jgorsline@kslaw.com)
Juanita Passyn Kuhner (jkuyner@kslaw.com)
Bradley J. Lingo (blingo@kslaw.com)
Geoffrey M. Ezgar (gezgar@kslaw.com)
David Tetrick, Jr. (dtetrick@kslaw.com)
Meredith Moss (mmoss@kslaw.com)
Richard T. Marooney, Jr. (rmarooney@kslaw.com)


/s/David Mullin

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN, | |
|     **Plaintiff,** | |
| **v.** | **Case No. 2:11-cv-00746-WKW** |
| **PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,** | |
|     **Defendants.** | |
| ──────────────────── | **Case No. 2:12-cv-00957-WKW** |
| **FEDERAL DEPOSIT INSURANCE CORPORATON AS RECEIVER FOR COLONIAL BANK,** | |
|     **Plaintiff,** | |
| **v.** | |
| **PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,** | |
|     **Defendants.** | |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO CROWE HORWATH LLP

TO:  **CROWE HORWATH LLP** ("Crowe"), c/o its attorneys, Stanley J. Parzen and Jonathan C. Meadow, Mayer Brown, 71 Wacker Dr., Chicago IL 60606 and James H. Anderson, Jackson Anderson & Patty, PC, 250 commerce St., Suite 100, Montgomery, AL 36102.

**Plaintiffs First Request for Production to Crowe**

EXHIBIT A

**FEDERAL DEPOSIT INSURANCE CORPORATION,** as Receiver for Colonial Bank of Montgomery, Alabama (the "FDIC-R") pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, requests that you produce for inspection and copying all documents as set forth in the attached Exhibit A on or before thirty days from the date of service of these requests upon you at the offices of Mullin Hoard & Brown in Amarillo, Texas, or at such other place as the parties may agree.

DATED this 4th day of December, 2014.

RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
Dennis Bailey
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3234
Facsimile:  (334) 481-0031
Email:       DRB@rsjg.com

FEDERAL DEPOSIT INSURANCE
CORPORATION
Thomas J. O'Brien
3501 Fairfax Drive, Room VS-B-7032
Arlington, Virginia 22226-3500
Telephone:  (703) 562-6414
Facsimile:  (703) 516-5067
Email:       tobrien@fdic.gov

Plaintiffs First Request for Production to Crowe

David Mullin (TX Bar No. 14651600)
*pro hac vice*
John M. Brown (TX Bar No. 3142500)
*pro hac vice*
John G. Turner, III (TX Bar No. 20320550)
*pro hac vice*
Robert Bell (TX Bar No. 00787062)
*pro hac vice*
Clint Latham (TX Bar No. 24013009)
*pro hac vice*
Richard Biggs (TX Bar No. 24064899)
*pro hac vice*
**MULLIN HOARD & BROWN, LLP**
500 South Taylor, Suite 800
Amarillo, Texas  79101
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086
Email:  dmullin@mhba.com
        jobrown@mhba.com
        jturner@mhba.com
        rbell@mhba.com
        clatham@mhba.com
        rbiggs@mhba.com

**ATTORNEYS FOR FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR COLONIAL BANK**

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via U.S. mail and electronically served on December 4, 2014 as set forth below.

Drew D. Dropkin (ddropkin@kslaw.com)

Elizabeth V. Tanis (etanis@kslaw.com)

James H. Anderson (janderson@beersanderson.com)

Jonathan C. Medow (jmedow@mayerbrown.com)

Stanley J. Parzen (sparzen@mayerbrown.com)

Tabor R. Novak, Jr. (tnovak@ball-ball.com)

Andrew P. Campbell (Andy.Campbell@Campbellguin.com)

Caroline Smith Gidiere (Caroline.Gidiere@Campbellguin.com)

Nicholas J. DiCarlo (ndicarlo@dcmplaw.com)

Christopher A. Caserta (ccaserta@dcmplaw.com)

C. Edward Dobbs (ced@phrd.com)

Ronald T. Coleman, Jr. (rtc@phrd.com)

Rufus T. Dorsey, IV (rtd@phrd.com)

David Mullin

David Mullin

Plaintiffs First Request for Production to Crowe

# EXHIBIT "A"

## DOCUMENTS REQUESTED FROM CROWE HORWATH LLP

## I.

## DEFINITIONS

The following terms and definitions shall apply to the documents being requested pursuant to this request for production of documents:

1.      "**Document**" is used in its broadest sense and means any attempts to record or transmit information or knowledge and includes the original and all drafts of a writing, and includes, without limitation, any and all written, printed or computer-related words, data or information, including without limitation any writing or recording of any type or description, whether written, printed or recorded (mechanically or electronically), or reproduced by hand, and whether or not produced or created by PwC, including without limitation all letters; correspondence; telegrams; memoranda; notes; records; reports; financial statements; statistical and financial records; minutes; memoranda; notice or notes of meetings; telephone or personal conversations or conferences or other communications; envelopes; interoffice, intraoffice or intracompany communications; microfilm; microfiche; tape recordings; videotapes; photographs; bulletins; studies; plans; analyses; notices; computer records; runs; programs or software and any codes necessary to comprehend such records, runs, programs or

software; books; pamphlets; illustrations; lists; forecasts; brochures; periodicals; charts; graphs; indices; bills; statements; files; data compilations; calendars; diaries; reports and notebooks; opinions or reports of consultants; and any other written, printed, typed, recorded or graphic matter, of any nature, however produced or reproduced, including copies and drafts of such documents, and any and all handwritten notes or notations thereon in whatever form.   The term "documents" also includes all data or documentation that is stored in a computer or other storage device and can be printed on paper or tape, such as electronic mail communications, drafts of documents that are stored in a computer or word processor and information that has been input into a computer or other storage device, as well as disks or other materials in which the data or documentation is found.

2.     The words "**relate**" or "**relating**," and/or any variation or derivatives thereof, whether followed by a preposition or not, means in any way directly or indirectly, in whole or in part, relating to, regarding, constituting, concerning, about, pertaining to, referring to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

3.     "**Working papers**" or "**work papers**" means **original** documents

**Plaintiffs First Request for Production to Crowe**

relating to or reflecting any work performed, or evaluations made by, any accountant or accounting firm, or any employee or agent thereof in connection with any audit or auditing activity, performance of any procedures or the rendition of any professional services by them, and includes any document prepared by the client and included in the audit/engagement documentation or work papers maintained by any accountant or accounting firm, and includes but is not limited to "working papers" as defined in Section 339 of the American Institute of Certified Public Accountants Codification of Statements on Auditing Standards (AU 339). To the extent that any "work papers" are in electronic form, the term includes native versions of such electronic documents.

4.    "**Person**" includes individuals, corporations, partnerships, groups, and organizations and associations of whatever nature, their agents, representatives, successors, assigns, subsidiaries, parents, employees and related persons or entities.

5.    "**Communication**" includes without limitation every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, mail, personal delivery or otherwise, including but not limited to letters, correspondence, electronic mail, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements

and other understandings.

6.    **"Colonial"** **or** **"Bank"** means Colonial Bank of Montgomery, Alabama, and subsidiaries.

7.    **"CBG"** means Colonial BancGroup, Inc.

8.    "PwC" means PRICEWATERHOUSECOOPERS LLP, its predecessor firms, and its affiliates, subsidiaries, partners, employees, staff, subcontractors, agents and any other person acting on behalf of or at the request of PwC.

9.    "**Crowe**" means CROWE HORWATH LLP, its predecessor firms, and its affiliates, subsidiaries, partners, employees, staff, subcontractors, agents and any other person acting on behalf of or at the request of Crowe.

10.   **"TBW"** means TAYLOR, BEAN, & WHITAKER MORTGAGE CORP., its predecessor firms, and its affiliates, subsidiaries, partners, employees, staff, subcontractors, agents and any other person acting on behalf of or at the request of TBW.

11.   **"MWLD"** means Colonial Bank's Mortgage Warehouse Lending Division.

12.   **"COLB"** means a loan participation arrangement under which Colonial purportedly purchased a 99% interest in individual mortgage loans.

13.   **"AOT"** means Colonial Bank's Assignment of Trade facility and

**Plaintiffs First Request for Production to Crowe**

includes participation interests in loan pools that were to be packaged and securitized for sale in the secondary market.

14.    **"FAS"** means the Financial Accounting Standards promulgated by the Financial Accounting Standards Board.

15.    **"PCAOB"** means the Public Company Accounting Oversight Board.

16.    **"Audit"** includes professional services provided and work performed pursuant to applicable standards of the American Institute of Certified Public Accountants and integrated audits performed pursuant to PCAOB Audit Standards No. 2 and No. 5.

17.    **"Your," "You,"** or **"Defendant"** refers to Crowe.

18.    **"And"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

19.    **"Any," "all," "each" or "every"** means any and all, each and every.

20.    **"Complaint"** means the Second Amended Complaint by FDIC-R against PwC, Case No. 2:12-cv-00957-WKW, pending in the United States District Court for the Middle District of Alabama, Northern Division.

21.    **"Answer"** means Crowe's Answer to the Complaint.

22.    **"Statement"** means any written or oral pronouncement of anyone, memorialized or preserved in any manner (electronically, mechanically or

otherwise), signed or unsigned, under oath or unsworn, as well as any notes taken of the pronouncement.

23. **"Writing" or "written"** means any handwriting, typewriting, printing, photostating, photographing, electronic image, computer storage or printout, and every other means of recording, production, or reproduction upon any tangible thing, and shall include any form of representation, including letters, words, pictures, sounds, symbols, or any combination thereof.

24. **"Action"** means this consolidated lawsuit, CASE NO. 2:12-CV-957-WKV, pending in the United States District Court for the Middle District of Alabama, Northern Division.

25. **"In house auditor"** means Pam Vitto or any other Colonial employee tasked with acting as Colonial's in house auditor.

## II.

## <u>INSTRUCTIONS</u>

The following instructions apply to this document request:

1. All documents that respond, in whole or in part, to any portion of the requests in Section III below are to be produced in their entirety, including all attachments and enclosures.

2. All documents shall be produced either in the order and in the manner that they are kept in the usual course of business or shall be organized and labeled

to correspond with the categories of this request.  Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label or other means of identification of such cover or other container shall be attached to the document.

      3.     Unless otherwise specified, the discovery sought relates to the period from 2002 to the present.  All documents relating to this period, whenever prepared, are to be produced, including all documents relating to audits, consulting services or internal control issues which were not issued in final form.

      4.     If any document otherwise responsive to any request was, but is no longer, in the possession of or subject to the control of Crowe, or is no longer in existence, state whether:

        a.  it is missing or lost;
        b.  it has been destroyed;
        c.  it has been transferred voluntarily to others; or
        d.  it has been otherwise disposed of.

      5.     In each instance, explain the circumstances surrounding such disposition and identify the person or persons directing or authorizing its destruction or transfer, and the date or dates of such direction or authorization. Identify each document (*e.g.*, letter, memorandum, telegram, chart, photograph, etc.) by listing its author, author's address, date, subject matter, whether the

documents (or copies) are still in existence, and if so, their present location or locations and custodian or custodians.

6.    Electronic records and computerized information should be produced in their native format with a sufficient description of the system or program from which each was derived to permit rendering the material intelligible.    Working papers and other documents prepared, reviewed, and/or maintained electronically by Crowe should be produced in their native electronic format such that the document has the same functionality as that available to Crowe and will thus provide the same functionality in regards to accessing the documents, migrating through and between the documents, copying the files/documents, and enabling the print formatting of the documents.

7.    Any document called for herein that Crowe claims to be privileged against discovery on any ground shall be identified by giving the following:

    a.    general type of document, i.e., letter, agreement, memorandum, report, miscellaneous note, etc.;
    b.    date;
    c.    author;
    d.    organization, if any, with which the author was then connected;
    e.    addressee or recipient;
    f.    other distributees;
    g.    organization, if any, with which the addressee, recipient or distributee were then connected;
    h.    general summary of the subject matter;
    i.    grounds for refusal to produce such document, including any and all privileges alleged to apply to that document; and

j.  present location of such document and each copy thereof known to Crowe including the title, index number and location, if any, of the file in which the document is kept, or the file from which such document was removed, if removed, for the purpose of this case, and the identity of all persons responsible for the filing or other disposition of the document.

8.  The singular includes the plural and vice versa.  The masculine includes the feminine and neuter genders and vice versa.  The past tense includes the present tense and vice versa where the clear meaning is not distorted by change of tense.  In addition, references to any services provided by Crowe to either Colonial, the Bank, MWLD or CBG shall be interpreted so as to include any such services that Crowe provided to any one or more of these entities.

9.  "And" and "or" should be interpreted as "and/or," both conjunctively and disjunctively, to ensure the broadest disclosure of information.

10.  "Any," "all," "each" or "every" means any and all, each and every.

# III.

## DOCUMENTS TO BE PRODUCED BY CROWE

The FDIC-R requests that Crowe produce the documents listed below.

1.      All documents, including statements of policy, operating procedures, manuals, handbooks, checklists, programs or training guides, related to any of the following:

    a.  Crowe's policies or procedures for accepting engagements;

    b.  Crowe's policies or procedures in regard to the auditing of, examination of, or provision of internal audit services to entities (including financial institutions) that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, and securities purchased under agreements to resell, including but not limited to policies and procedures in regard to internal audits;

    c.  Crowe's policies or procedures with respect to assignment of personnel to engagements;

    d.  Crowe's policies or procedures for the review of the work papers of internal audit services and other types of engagements;

    e.  Crowe's policies or procedures for the resolution of difference of professional opinion among members of the staff providing internal audit services or among other members or employees of Crowe;

    f.  Crowe's internal procedures for identifying and resolving issues relating to appropriate professional standards, including without limitation Generally Accepted Auditing Standards or Generally Accepted Accounting Principles, the AICPA standards, or The Institute of Internal Auditors Standards for Professional Practice of Internal Auditing;

g. Crowe's policies and procedures related to the identification of key controls relating to a bank's lending division, including, but not limited to, tests of the effectiveness of such internal controls pursuant to Sarbanes-Oxley Act Section 404;

h. Crowe's policies and procedures related to testing and reconciliation of loan collateral, including collateral for mortgage loans and trade pools;

i. Crowe's administrative manuals in effect from 2002 through 2009;

j. Crowe's manuals governing the provision of internal audit services in effect from 2002 through 2009, including, but not limited to, those relating to the development and preparation of the "Colonial BancGroup, Inc. Internal Audit Process 'Rules of Engagement' Revised December 2007";

k. Crowe's industry accounting and auditing manuals for entities (including financial institutions) that specialize in the mortgage warehouse lines of credit, mortgage loans held for sale, securities purchased under agreements to resell in effect from 2002 through 2009, and origination, purchase, and servicing of mortgage loans;

l. Crowe's continuing education manuals in effect from 2002 through 2009; and

m. Copies of any Crowe internal publications or bulletins, including guidance to practitioners, relating to the financial service industries issued from 2002 through 2009, including, but not limited to, the Interagency Policy Statement on the Internal Audit Function and Its Outsourcing (OCC 2003-2) and the Interagency Advisory on Mortgage Banking Activities (FIL-15-2003), and the items described in k. and l. above.

2.    The personnel file (current to the date of these Requests) for each Crowe partner, manager, senior staff accountant or other professional auditing or accounting personnel who spent in excess of fifteen (15) hours in any year

Plaintiffs First Request for Production to Crowe

providing services to Colonial from 2005 through 2009, and all documents related to the professional qualification, experience or competency of such persons.  This request includes but is not limited to: resumes, performance evaluations, college transcripts, post-graduate education transcripts, continuing professional education courses and seminars, performance reviews, evaluations, and records relating to any disciplinary action taken against any Crowe partner, manager, senior staff accountant or any other professional who worked on the Colonial engagement.

3.    All documents related to any disciplinary proceedings or inquiries undertaken by the PCAOB, American Institute of Certified Public Accountants, U.S. Securities and Exchange Commission, and/or any state or federal agency, commission or board responsible for the professional regulation of the accounting profession with respect to the conduct of Crowe or any of its partners, agents, representatives or employees in connection with services rendered to any entity in the financial services industry.

4.    All marketing materials, including proposals to provide professional services, disseminated by Crowe relating to its experience, competence, qualifications or reliability in performing internal audit services of financial institutions that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, and securities purchased under agreements to resell from 2002 through 2009.

**Plaintiffs First Request for Production to Crowe**

5.      All data disks, electronic data, and specific Crowe-developed program disks for all computerized internal audit service applications used in the provision of internal audit service(s) to CBG and/or Colonial.

6.      All documents related to the standards Crowe applies when providing internal audit services or opining on the financial statements of entities (including financial institutions) that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, and securities purchased under agreements to resell. This should include any interpretations by Crowe of the Generally Accepted Accounting Principles as they apply to the above-mentioned institutions.

7.      All PCAOB Inspection Reports (all parts of such report, including the public and non-public portions of the Report and any comments made by Crowe on the Report and/or drafts of the Report), and all peer review reports, if any, related to Crowe's provision of internal audit services for entities (including financial institutions) that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, and securities purchased under agreements to resell, and any peer reviews related to the provision of internal audit services for CBG and/or Colonial. This request includes both internal and external review or inspection reports, including without limitation reviews and/or evaluations conducted by Crowe involving internal audits and audit procedures performed by members of Crowe's staff who worked on the CBG engagement from 2005 through 2009.

**Plaintiffs First Request for Production to Crowe**

8.    All documents related to the criteria applied by Crowe in considering the retention and/or promotion of its professional staff for the period of 2002 through 2009.

9.    All documents related to the method used by Crowe to compensate its partners and principals engaged to do work for Colonial for the period 2005 through 2009.

10.    All external communications or newsletters issued by Crowe relating to the mortgage lending industry for the period 2005 through 2009.

11.    All internal communications (excluding email) issued by Crowe relating to the mortgage lending industry for the period 2005 through 2009.

12.    All Crowe email relating to the internal audit services Crowe provided to CBG and, its subsidiaries, including without limitation Colonial in 2006 through 2007, including all email relating to Colonial's COLB and AOT facilities from 2006 forward.

13.    All Crowe email relating to the sales accounting treatment of COLB loans as set forth in Paragraphs 49 – 54 of the FDIC-R's Complaint from 2005 forward.

14.    All Crowe email referencing or referring to Lee Farkas, Desiree Brown, Cathie Kissick and Teresa Kelly (f/k/a Teresa Carrier) from 2005 forward.

15.   All  Crowe email relating to the TBW fraud against Colonial (the TBW fraud is described in Paragraphs 13 – 21 of the Complaint) from 2005 forward.

16.   All documents, including internal publications prepared by Crowe or any of its practice groups, discussing developing problems in the financial markets in the mid-2000s, audit risks relating to such problems, the consequences to the housing, mortgage banking, and financial services industries (particularly companies providing home financing and/or operating in the secondary market), and  Crowe's response to addressing such increased risks in regards to providing internal audit services, particularly the provision of internal audit services to financial institutions dealing with mortgages and mortgage-backed securities from 2006 forward.

17.   All documents, including work papers, internal manuals and procedures, and communications, regarding Crowe's risk assessment and evaluation of the design and effectiveness of internal controls in the MWLD, as well as those relating to the Bank's secondary market lending operations from 2005 through 2009.

18.   All documents, including work papers, internal manuals and procedures, and communications, regarding the review and confirmation of loan collateral securing warehouse lines of credit  and mortgage loans relating to the

**Plaintiffs First Request for Production to Crowe**

COLB (i.e., loans held for sale) and AOT (i.e., securities purchased under agreements to resell) facilities for 2005 through 2009.

19.    All documents, including work papers, internal manuals and procedures, and communications, regarding the confirmation of account balances.

20.    All work papers (including any indices thereof) related to the preparation or conduct of any annual, quarterly, interim special or other compilation, review, agreed upon procedures or audit by Crowe related to CBG and/or Colonial, whether or not procedures were completed or an opinion or report was issued. The FDIC requests Crowe to produce both the originals or all hard copy work papers for inspection and a color copy that reproduces all hard copy work papers as they appear in Crowe's files.

21.    All correspondence related to CBG and/or Colonial from 2005 forward.

22.    All diaries, logs, expense reports or any other documents related to appointments, meetings, telephone conferences or other activities of Crowe agents, employees or personnel who billed more than 15 hours to engagements for CBG and/or Colonial or its successor thereto or any of its officers, directors or employees from 2005 forward.

23.    All notes or memoranda of meetings or telephone conferences related to CBG and/or Colonial between partners, employees or agents of Crowe and

**Plaintiffs First Request for Production to Crowe**

officers, directors, employees, attorneys or other representatives of CBG and/or Colonial.

24.   All communications between any specialist, consultant or expert that Crowe retained or contemplated retaining related to CBG and/or Colonial, and all documents related to any report or memorandum prepared by any specialist, consultant or expert that in any form regards or relates to CBG and/or Colonial.

25.   With respect to all professional services Crowe rendered to Colonial and/or CBG:

>   a.   all billing files, time budgets, budgets to actual analysis, client billing sheets, work-in-progress reports, billing adjustments, time sheets, and all similar documents having to do with the gathering, recordation, compilation or billing of fees and expenses to CBG and/or Colonial for both audit and non-audit services and management consultant services, including all disputes thereof; and
>
>   b.   all internal audit services time summaries and diaries.

26.   Each invoice, statement or bill for services submitted to CBG and/or Colonial by Crowe, and all records related to payment thereof.

27.   With respect to all professional services Crowe rendered to CBG and/or Colonial:

>   a.   all documents regarding Crowe's internal audit services plan of CBG and/or Colonial, including any special considerations given to Colonial mortgage warehouse lending division;
>
>   b.   all documents relating to the internal audit services Crowe provided to CBG and/or Colonial for the years 2006 to 2009;

**Plaintiffs First Request for Production to Crowe**

c. all documents regarding Crowe's assessment of risks and/or evaluation of the business environment in which Colonial operated relating to the effect the deteriorating credit market would have on Colonial and consequently on Crowe's provision of internal audit services to CBG and/or Colonial;

d. all documents relating to Crowe's risk assessment, identification of key controls, tests of the effectiveness of internal controls, and review of the AOT facility and COLB facility;

e. all documents relating to the identification by Crowe of any internal control deficiencies and/or recommendations for improvements in the internal controls relevant to CBG and/or Colonial's AOT facility and COLB facility;

f. all documents relating to any decision made by Crowe to not test all or any part of CBG and/or Colonial' s AOT facility's loan collateral and/or account balance;

g. all documents relating to Crowe's review and reconciliation of CBG and/or Colonial's AOT facility loan collateral and/or account balance;

h. all documents regarding Crowe's response to and assessment of risks relating to deficiencies identified by PwC, CBG and/or Colonial;

i. all documents regarding Crowe's investigation of aged TBW loans and loans shipped but not paid for in CBG and/or Colonial's COLB facility;

j. all documents related to the scope of Crowe's engagement to provide internal audit services to CBG and/or Colonial, including but not limited to whether a review of CBG and/or Colonial's AOT facility was within the scope of this engagement;

k. all documents regarding sales accounting treatment applied to the purported purchase and sale of Colonial's COLB loans;

l. all communications between PwC and the Board of Directors and/or Audit Committee of CBG and/or Colonial; and

**Plaintiffs First Request for Production to Crowe**

m. all communications between PwC and any federal or state regulatory agency, including without limitation, the Office of the Comptroller of Currency, the Federal Deposit Insurance Corporation, and the Alabama Department of Banking, relating to Colonial.

28.   With respect to the affirmative defenses asserted in your answer: All documents supporting each and every one of Crowe's affirmative defenses.

29.   A copy of your document retention policies in effect from 2005 to the present, a copy of all litigation holds or similar instructions either related to CBG or Colonial or otherwise directed to Crowe personnel who provided services to CBG or Colonial that would have altered the document retention policies in effect, and documents sufficient to identify the persons responsible for administering Crowe's document retention policies and litigation holds from 2005 to the present.

30.   All documents produced by Crowe to other parties in in any proceeding involving Colonial or CBG.

31.   All transcripts and video recordings of depositions taken by any party in any proceeding involving Colonial or CBG.

**Plaintiffs First Request for Production to Crowe**

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., as post-confirmation debtor, and KEVIN O'HALLORAN, as plan trustee acting for and on behalf of the debtor, | |
|     Plaintiffs, | |
| vs. | Case No. 2:11-cv-00746 |
| | LEAD CASE |
| PRICEWATERHOUSECOOPERS LLP, a United States limited liability partnership; CROWE HORWATH LLP, a United States limited liability partnership, | |
|     Defendants. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for COLONIAL BANK | |
|     Plaintiff, | |
| v. | Case No. 2:12-cv-00957 |
| PRICEWATERHOUSECOOPERS, LLP and CROWE HORWATH, LLP, | |
|     Defendants. | |

**CROWE HORWATH LLP'S OBJECTIONS AND RESPONSES TO THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO CROWE HORWATH LLP**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rules for the United States District Court for the Middle District of Alabama, Defendant Crowe Horwath LLP ("Crowe") hereby responds and objects to the First Request for the Production of Documents (the "Requests") issued by the Federal Deposit Insurance Corporation as receiver for Colonial Bank ("FDIC") to Crowe. Discovery in this matter is ongoing, and Crowe reserves the

**EXHIBIT B**

right to amend, modify, revise, correct, supplement, or clarify any of these objections and responses. Crowe also reserves the right to assert additional general and specific objections arising from the matters discovered during the course of this litigation.

## GENERAL OBJECTIONS AND RESPONSES

1.      Crowe objects to the Requests, including the Definitions and Instructions contained therein, to the extent that they are overly broad, unduly burdensome, and purport to impose any obligation upon Crowe beyond the obligations imposed by the Federal Rules of Civil Procedure and the applicable local rules. In responding to the Requests, Crowe will abide by any instruction or directive contained in those rules and interpret the defined terms consistent with the definitions associated with those terms in ordinary usage.

2.      Crowe objects to the Requests, including the Definitions and Instructions contained therein, to the extent that they are vague, ambiguous, or unintelligible.

3.      Crowe objects to the definition of "Document" in ¶ 1 of the Definitions contained in the Requests to the extent that it purports to impose obligations upon Crowe beyond the obligations imposed by the Federal Rules of Civil Procedure and the applicable local rules. Crowe further objects to this definition to the extent that it is unduly burdensome, prohibitively expensive, and seeks documents that are not reasonably accessible. Crowe also objects to this definition because it seeks documents "produced or created by PwC"; the FDIC should seek such documents from PwC, not Crowe.

4.      Crowe objects to the definition of "Crowe" in ¶ 9 of the Definitions contained in the Requests to the extent that the definition seeks to impose an obligation on Crowe to respond for any entity or person other than Crowe. Crowe responds to the Requests only on behalf of itself and not for any other entity or person.

2

5.      Crowe objects to the Requests, including the Definitions and Instructions contained therein, to the extent that they seek information from Crowe that is proprietary, confidential, in the nature of trade secrets, and/or not relevant to this litigation.

6.      Crowe objects to the Requests, including the Definitions and Instructions contained therein, to the extent that they seek personal, proprietary, confidential, and/or trade secret information of persons or entities other than Crowe and that was provided to Crowe based on an expectation, understanding, or obligation of confidentiality.

7.      Crowe intends no incidental or implied admissions by its responses to the Requests. Whether Crowe responds or objects to any particular Request should not be interpreted as an admission that Crowe accepts or admits the existence of any fact set out or assumed by such Request, or that such response or objection constitutes admissible evidence.

8.      Any statement herein by Crowe indicating that it will make available for review or produce documents in response to the Requests is not an admission that such documents in fact exist, but instead indicates that documents will be produced to the extent that they exist within Crowe's possession, custody, and control; are reasonably identifiable; are responsive and non-privileged; and are not subject to unresolved objections. The following responses are made solely for the purpose of this action. By responding to any Request or part thereof, Crowe does not admit any allegations set forth or assumed by such Request or that such responses contained herein are not intended to and should not be construed to waive Crowe's right to object to these Requests, the subject matter of such Requests, or information or documents produced in response to such Requests, as to their competency, relevance, materiality, privilege, and their use or admissibility as evidence for any purpose, in any proceeding in this or any other action.

9.      Any agreement by Crowe to meet and confer with Plaintiff to identify search terms for Crowe's custodial email shall not constitute an agreement by Crowe to use search terms that are not connected to CBG and/or Colonial Bank or that would otherwise unreasonably capture documents relating to other non-Colonial Crowe clients. Crowe reserves all rights with regard to the meet-and-confer discussions relating to search terms.

10.     Crowe objects to the Requests, including the Definitions and Instructions contained therein, to the extent that they seek information from persons or entities other than Crowe, on the grounds that any such requests attempt to place an obligation on Crowe to provided information that is not in its possession, custody, and control. Crowe responds only for itself based on information known to it from its own files and not from the files of any other entity.

11.     Crowe objects to the Requests to the extent that they seek information or documents protected from disclosure by the attorney-client privilege, the attorney work product doctrine, taxpayer privileges, including but not limited to 26 U.S.C. § 7216, or any other applicable privilege or protection. To the extent that the Requests may be construed as seeking such privileged or protected information, Crowe hereby claims such privilege and invokes such protection. The fact that Crowe does not specifically object to an individual Request on the grounds that it seeks privileged or protected information or documents shall not be deemed a waiver of the protection afforded by any applicable privilege or protection. In addition, the inadvertent production of documents protected by such privilege(s) or doctrine(s) shall not constitute a waiver of the applicable privilege(s) or doctrine(s) either as to those documents inadvertently produced or as to any other documents.

4

12.    Crowe objects to the Requests, including the Definitions and Instructions contained therein, to the extent that they seek production of information and documents that are a matter of public record, in the possession of a third party, in the possession of the FDIC, more properly obtained from another party, or otherwise available to the FDIC, including without limitation, documents that have been previously produced or made available in this action by any party or third party.

13.    Crowe objects to the Requests, including the Definitions and Instructions contained therein, to the extent that they seek information or documents that are not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the discovery of admissible evidence.

14.    Crowe objects to the instruction, as set forth in ¶ 3 of the Instructions, purporting to require Crowe to produce information and documents related to the period from 2002 to the present to the extent that it is overly broad and unduly burdensome in that it seeks documents that, due to age, may or may not be relevant.

15.    Crowe objects to these Requests to the extent that they violate any constitutional, statutory, or common-law rights to privacy or confidentiality of Crowe's employees and other persons, including individuals who are not parties to this litigation.

16.    Crowe objects to the Requests, including the Definitions and Instructions contained therein, to the extent that they purport to require Crowe to produce certain electronically stored information in native formats, in formats that are proprietary to Crowe, in formats that require proprietary software to access, or any format other than a reasonably usable format.

17.     Crowe objects to the Requests, including the Definitions and Instructions contained therein, as unduly burdensome to the extent that they purport to require Crowe to search for and produce the same information in more than one form.

18.     Crowe objects to the Requests to the extent that they are duplicative and unduly burdensome.

19.     Crowe objects to the Requests to the extent that they seek documents that are not reasonably related to the internal audit services Crowe provided to CBG.

20.     Crowe objects to the Requests, including the Definitions and Instructions contained therein, to the extent that they suggest that Crowe performed internal audit services for Colonial Bank ("Colonial") or other subsidiaries of CBG.

21.     Crowe objects to the Requests to the extent that they call for legal conclusions.

22.     Crowe objects to the Requests, including the Definitions and Instructions contained therein, to the extent that they purport to require Crowe to produce originals of documents as unduly burdensome and as imposing obligations upon Crowe beyond the obligations under Rules 26 and 34 of the Federal Rules of Civil Procedure.

23.     Crowe objects to the characterization of Pam Vitto in paragraph 25 of the Definitions as "in house auditor" and states, upon information and belief, that Pam Vitto's was employed at CBG as internal auditor working under, first, the General Auditor and, later, the Internal Audit Liaison.

24.     Crowe objects to the instructions contained in ¶¶ 4-5 of the instructions as unreasonable and unduly burdensome in that they purport to require Crowe to undertake the impossible task of identifying, describing, and provide other detailed information concerning all

documents otherwise responsive to the Requests that have been "lost," "destroyed," "transferred," or "otherwise disposed of."

25.     Crowe has already produced to the FDIC over 200,000 pages of documents from certain Crowe databases, identified on Exhibit A. Exhibit A also identifies additional databases that Crowe believes may contain responsive documents (the "Additional Databases") as well as several databases that, although they relate to work Crowe performed for CBG, Crowe does not believe that they contain responsive documents. The Additional Databases shall constitute electronically stored information as referred to below.

26.     Crowe reserves the right to request entry of an ESI Protocol to deal with the searches and identification of electronically stored information.

27.     Each of the foregoing General Objections and Responses is incorporated by reference in each of the following Specific Objections and Responses whether or not repeated therein. The assertion of the same or similar objection in an individual response does not waive any of the General Objections. Crowe expressly reserves the right to supplement and/or amend its objections and responses to the Requests.

## SPECIFIC OBJECTIONS AND RESPONSES

1.     All documents, including statements of policy, operating procedures, manuals, handbooks, checklists, programs or training guides, related to any of the following:

   a.  Crowe's policies or procedures for accepting engagements;

**RESPONSE TO DOCUMENT REQUEST NO. 1(a):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services

provided to CBG, and without regard to the time period relevant to Crowe's acceptance. Crowe further objects to the extent that this Request seeks proprietary Crowe documents. Subject to these objections Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

    b.  Crowe's policies or procedures in regard to the auditing of, examination of, or provision of internal audit services to entities (including financial institutions) that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, and securities purchased under agreements to resell, including but not limited to policies and procedures in regard to internal audits;

**RESPONSE TO DOCUMENT REQUEST NO. 1(b):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe also objects to the extent that this Request seeks proprietary Crowe documents or documents related to non-CBG clients of Crowe because such documents are confidential and not relevant. Crowe objects to this Request to the extent it requests policies and procedures relating to auditing, as Crowe did not provide audit services to CBG. Subject to these objections Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

    c.  Crowe's policies or procedures with respect to assignment of personnel to engagements;

**RESPONSE TO DOCUMENT REQUEST NO. 1(c):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds

that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to

lead to the discovery of admissible evidence because it seeks documents without regard to their

relevance to the issues in this litigation, without regard to their relation to internal audit services

provided to CBG, and without regard to the time period relevant to this litigation and how the

staff was assigned in this case. Crowe further objects to the extent that this Request seeks

proprietary Crowe documents.

    d.   Crowe's policies or procedures for the review of the work papers of internal audit
        services and other types of engagements;

**RESPONSE TO DOCUMENT REQUEST NO. 1(d):**  See Crowe's General Objections. In

addition to the General Objections set forth above, Crowe objects to this Request on the grounds

that it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents not

reasonably calculated to lead to the discovery of admissible evidence because it seeks documents

without regard to their relevance to the issues in this litigation, without regard to their relation to

internal audit services provided to CBG, and without regard to the time period relevant to this

litigation. Crowe further objects to the extent that this Request seeks proprietary Crowe

documents.

    e.   Crowe's policies or procedures for the resolution of difference of professional opinion
        among members of the staff providing internal audit services or among other members or
        employees of Crowe;

**RESPONSE TO DOCUMENT REQUEST NO. 1(e):**  See Crowe's General Objections. In

addition to the General Objections set forth above, Crowe objects to this Request on the grounds

that it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents not

reasonably calculated to lead to the discovery of admissible evidence because it seeks documents

without regard to their relevance to the issues in this litigation, without regard to their relation to

internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe also objects to the extent that this Request seeks proprietary Crowe documents.

    f.   Crowe's internal procedures for identifying and resolving issues relating to appropriate professional standards, including without limitation Generally Accepted Auditing Standards or Generally Accepted Accounting Principles, the AICPA standards, or The Institute of Internal Auditors Standards for Professional Practice of Internal Auditing;

**RESPONSE TO DOCUMENT REQUEST NO. 1(f):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe also objects to the extent that this Request seeks proprietary Crowe documents. Subject to these objections, Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

    g.   Crowe's policies and procedures related to the identification of key controls relating to a bank's lending division, including, but not limited to, tests of the effectiveness of such internal controls pursuant to Sarbanes-Oxley Act Section 404;

**RESPONSE TO DOCUMENT REQUEST NO. 1(g):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe also objects to the extent that this Request seeks proprietary Crowe documents. Subject to these

objections Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

   h. Crowe's policies and procedures related to testing and reconciliation of loan collateral, including collateral for mortgage loans and trade pools;

**RESPONSE TO DOCUMENT REQUEST NO. 1(h):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe further objects to the extent that this Request seeks proprietary Crowe documents.

   i. Crowe's administrative manuals in effect from 2002 through 2009;

**RESPONSE TO DOCUMENT REQUEST NO. 1(i):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe also objects to the extent that this Request seeks proprietary Crowe documents.

   j. Crowe's manuals governing the provision of internal audit services in effect from 2002 through 2009, including, but not limited to, those relating to the development and preparation of the "Colonial BancGroup, Inc. Internal Audit Process 'Rules of Engagement' Revised December 2007";

**RESPONSE TO DOCUMENT REQUEST NO. 1(j):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds

that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to

lead to the discovery of admissible evidence because it seeks documents without regard to their

relevance to the issues in this litigation, without regard to their relation to internal audit services

provided to CBG, and without regard to the time period relevant to this litigation. Crowe also

objects to the extent that this Request seeks proprietary Crowe documents. Subject to these

objections, Crowe refers to the documents previously produced in this action and electronically

stored information to be identified through meet-and-confer discussions, as discussed in Crowe's

responses to these Requests. Further, after meeting and conferring with counsel for the FDIC,

Crowe will conduct searches of electronically stored information for specific custodians, for a

specific time period, and based on narrowly tailored search criteria; Crowe will then produce

responsive non-privileged documents to the extent such documents exist and are identifiable by

the process described. Crowe further states that it has certain hard copy documents that relate to

CBG and Colonial that it believes may contain relevant information. Subject to these objections,

Crowe will provide an index of these documents to the FDIC for inspection and will then meet

and confer.

    k.    Crowe's industry accounting and auditing manuals for entities (including financial institutions) that specialize in the mortgage warehouse lines of credit, mortgage loans held for sale, securities purchased under agreements to resell in effect from 2002 through 2009, and origination, purchase, and servicing of mortgage loans;

**RESPONSE TO DOCUMENT REQUEST NO. 1(k):**  See Crowe's General Objections. In

addition to the General Objections set forth above, Crowe objects to this Request on the grounds

that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to

lead to the discovery of admissible evidence because it seeks documents without regard to their

relevance to the issues in this litigation, without regard to their relation to internal audit services

provided to CBG, and without regard to the time period relevant to this litigation. Crowe also

objects to the extent that this Request seeks proprietary Crowe documents or documents related to non-CBG clients of Crowe because such documents are confidential, privileged, and not relevant. Crowe states that it was not CBG's auditor and, as such, the documents requested are irrelevant.

l.   Crowe's continuing education manuals in effect from 2002 through 2009; and

**RESPONSE TO DOCUMENT REQUEST NO. 1(l):**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe also objects to the extent that this Request seeks proprietary Crowe documents or documents related to non-CBG clients of Crowe because such documents are confidential, privileged, and not relevant.

m.   Copies of any Crowe internal publications or bulletins, including guidance to practitioners, relating to the financial service industries issued from 2002 through 2009, including, but not limited to, the Interagency Policy Statement on the Internal Audit Function and Its Outsourcing (OCC 2003-2) and the Interagency Advisory on Mortgage Banking Activities (FIL-15-2003), and the items described in k. and 1. above.

**RESPONSE TO DOCUMENT REQUEST NO. 1(m):**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe also objects to the extent that this Request seeks proprietary Crowe documents or documents related

to non-CBG clients of Crowe because such documents are confidential, privileged, and not relevant. Crowe further objects to this Request on the grounds that it is duplicative of other Requests. Subject to these objections and after meeting and conferring with counsel for the FDIC, Crowe will conduct searches of electronically stored information for specific custodians, for a specific time period, and based on narrowly tailored search criteria related to Colonial; Crowe will then produce responsive non-privileged documents to the extent such documents exist and are identifiable by the process described above.

2.      The personnel file (current to the date of these Requests) for each Crowe partner, manager, senior staff accountant or other professional auditing or accounting personnel who spent in excess of fifteen (15) hours in any year providing services to Colonial from 2005 through 2009, and all documents related to the professional qualification, experience or competency of such persons. This request includes but is not limited to: resumes, performance evaluations, college transcripts, post-graduate education transcripts, continuing professional education courses and seminars, performance reviews, evaluations, and records relating to any disciplinary action taken against any Crowe partner, manager, senior staff accountant or any other professional who worked on the Colonial engagement.

**RESPONSE TO DOCUMENT REQUEST NO. 2:** See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request because Crowe did not provide any services to Colonial and, thus, no responsive documents exist. To the extent that the FDIC intended to refer to the services that Crowe rendered to CBG, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe further objects to the extent it requests documents that are confidential, personal, or private. Crowe also objects that this Request seeks extensive documentation for many personnel, both current and former.  Requiring the collection and production of such materials is both unreasonable and harassing.

3.      All documents related to any disciplinary proceedings or inquiries undertaken by the PCAOB, American Institute of Certified Public Accountants, U.S. Securities and Exchange Commission, and/or any state or federal agency, commission or board responsible for the professional regulation of the accounting profession with respect to the conduct of Crowe or any of its partners, agents, representatives or employees in connection with services rendered to any entity in the financial services industry.

**RESPONSE TO REQUEST NO. 3:**   See Crowe's General Objections. In addition to the

General Objections set forth above, Crowe objects to this Request on the grounds that it is overly

broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to

the issues in this litigation, without regard to their relation to internal audit services provided to

CBG, and without regard to the time period relevant to this litigation. Crowe further objects to

the extent that this Request seeks documents related to non-CBG clients of Crowe because such

documents are confidential, privileged, and not relevant. Crowe states it is unaware of any

disciplinary proceedings or inquiries undertaken by the PCAOB, AICIPA, US SEC, or any state

or federal agency, commission, or board with respect to the conduct of Crowe or any of its

partners, agents, representatives or employees in connection with the services Crowe rendered to

CBG.

4.      All marketing materials, including proposals to provide professional services, disseminated by Crowe relating to its experience, competence, qualifications or reliability in performing internal audit services of financial institutions that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, and securities purchased under agreements to resell from 2002 through 2009.

**RESPONSE TO REQUEST NO. 4:**   See Crowe's General Objections. In addition to the

General Objections set forth above, Crowe objects to this Request on the grounds that it is overly

broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to

the issues in this litigation, without regard to their relation to internal audit services provided to

15

CBG, and without regard to the time period relevant to this litigation. Crowe further objects to

the extent that this Request seeks documents related to non-CBG clients of Crowe because such

documents are confidential, privileged, and not relevant. Crowe further objects to this Request to

the extent it seeks proprietary Crowe documents.

5.     All data disks, electronic data, and specific Crowe-developed program disks for all
computerized internal audit service applications used in the provision of internal audit service(s)
to CBG and/or Colonial.

**RESPONSE TO REQUEST NO. 5:**   See Crowe's General Objections. In addition to the

General Objections set forth above, Crowe objects to this Request on the grounds that it is overly

broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to

the issues in this litigation and without regard to the time period relevant to this litigation. Crowe

further objects to this Request as vague, ambiguous, and generally incomprehensible. Crowe also

objects to this Request because it appears to seek proprietary Crowe documents. Crowe states

that it did not provide services to Colonial. Subject to these objections Crowe refers to the

documents previously produced in this action and electronically stored information to be

identified through meet-and-confer discussions, as discussed in Crowe's responses to these

Requests.

6.     All documents related to the standards Crowe applies when providing internal audit
services or opining on the financial statements of entities (including financial institutions) that
specialize in mortgage warehouse lines of credit, mortgage loans held for sale, and securities
purchased under agreements to resell. This should include any interpretations by Crowe of the
Generally Accepted Accounting Principles as they apply to the above-mentioned institutions.

**RESPONSE TO REQUEST NO. 6:**   See Crowe's General Objections. In addition to the

General Objections set forth above, Crowe objects to this Request on the grounds that it is overly

broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to

the issues in this litigation, without regard to their relation to internal audit services provided to

CBG, and without regard to the time period relevant to this litigation. Crowe further objects to

the Request to the extent it seeks documents about opining on financial statements or

interpretations of GAAP, as Crowe was not CBG's auditor and did not opine on CBG's financial

statements. Crowe also objects to this Request because it seeks proprietary Crowe documents.

Crowe further objects to the extent that this Request seeks documents related to non-CBG clients

of Crowe because such documents are confidential, privileged, and not relevant. Moreover,

Crowe objects to this Request to the extent that it seeks documents that are protected from

discovery by the attorney-client privilege, the attorney work product doctrine, or any other

applicable privilege or protection. Subject to these objections, Crowe refers to the documents

previously produced in this action and electronically stored information to be identified through

meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

7.     All PCAOB Inspection Reports (all parts of such report, including the public and non-public portions of the Report and any comments made by Crowe on the Report and/or drafts of the Report), and all peer review reports, if any, related to Crowe's provision of internal audit services for entities (including financial institutions) that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, and securities purchased under agreements to resell, and any peer reviews related to the provision of internal audit services for CBG and/or Colonial. This request includes both internal and external review or inspection reports, including without limitation reviews and/or evaluations conducted by Crowe involving internal audits and audit procedures performed by members of Crowe's staff who worked on the CBG engagement from 2005 through 2009.

**RESPONSE TO REQUEST NO. 7:**   See Crowe's General Objections. In addition to the

General Objections set forth above, Crowe objects to this Request on the grounds that it is overly

broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to

the issues in this litigation, without regard to their relation to internal audit services provided to

CBG, and without regard to the time period relevant to this litigation. Crowe further objects to

the extent that this Request seeks documents related to non-CBG clients of Crowe because such documents are confidential, privileged, and not relevant. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe states that there were no PCAOB Inspection Reports, or peer reviews, relating to Crowe's engagement by CBG.

8.      All documents related to the criteria applied by Crowe in considering the retention and/or promotion of its professional staff for the period of 2002 through 2009.

**RESPONSE TO REQUEST NO. 8:**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe further objects to this Request to the extent it requests documents that are confidential, personal, or private.

9.      All documents related to the method used by Crowe to compensate its partners and principals engaged to do work for Colonial for the period 2005 through 2009.

**RESPONSE TO REQUEST NO. 9:**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe states that it did not provide services to Colonial.  To the extent this Request seeks documents relating to Crowe's provision of outsourced internal audit services to CBG, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation. Crowe further objects to the extent that this Request seeks documents related to non-CBG clients of Crowe because such documents are confidential, privileged, and not relevant. Crowe also objects to this Request to the extent it requests documents that are confidential, personal, or private.

18

10.     All external communications or newsletters issued by Crowe relating to the mortgage lending industry for the period 2005 through 2009.

**RESPONSE TO REQUEST NO. 10:**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to their relation to internal audit services provided to CBG. Crowe further objects to the extent that this Request seeks documents related to non-CBG clients of Crowe because such documents are confidential, privileged, and not relevant.

11.     All internal communications (excluding email) issued by Crowe relating to the mortgage lending industry for the period 2005 through 2009.

**RESPONSE TO REQUEST NO. 11:**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to their relation to internal audit services provided to CBG. Crowe further objects to the extent that this Request seeks documents related to non-CBG clients of Crowe because such documents are confidential, privileged, and not relevant. Crowe also objects to this Request as vague and ambiguous in its use of the term "internal communications."

12.     All Crowe email relating to the internal audit services Crowe provided to CBG and, its subsidiaries, including without limitation Colonial in 2006 through 2007, including all email relating to Colonial's COLB and AOT facilities from 2006 forward.

**RESPONSE TO REQUEST NO. 12:**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation. Crowe further states that it provided internal audit services only to CBG, not its subsidiaries, and objects to the statement that Crowe provided internal audit services to CBG subsidiaries, including Colonial, in 2006 through 2007. Subject to these objections, Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests. Further, after meeting and conferring with counsel for the FDIC, Crowe will conduct searches of emails for specific custodians, for a specific time period, and based on narrowly tailored search criteria; Crowe will then produce responsive non-privileged emails to the extent such emails exist and are identifiable by the process described above.

13.     All Crowe email relating to the sales accounting treatment of COLB loans as set forth in Paragraphs 49 – 54 of the FDIC-R's Complaint from 2005 forward.

**RESPONSE TO REQUEST NO. 13:**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation. Crowe also objects to this Request to the extent that it seeks documents that are protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Crowe states that it did not analyze the sales accounting treatment of COLB loans, and notes that Paragraphs 49 – 54 of the FDIC-R's Complaint are specifically directed at PwC and not Crowe.

14.     All Crowe email referencing or referring to Lee Farkas, Desiree Brown, Cathie Kissick and Teresa Kelly (f/k/a Teresa Carrier) from 2005 forward.

**RESPONSE TO REQUEST NO. 14:**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly

broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation. Crowe also objects to this Request to the extent that it seeks documents that are protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Subject to these objections and after meeting and conferring with counsel for the FDIC, Crowe will conduct searches of emails for specific custodians, for a specific time period, and based on narrowly tailored search criteria; Crowe will then produce responsive non-privileged emails to the extent such emails exist and are identifiable by the process described above.

15.     All Crowe email relating to the TBW fraud against Colonial (the TBW fraud is described in Paragraphs 13 – 21 of the Complaint) from 2005 forward.

**RESPONSE TO REQUEST NO. 15:**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation. Crowe further objects to this Request as vague and ambiguous in its use of the phrase "the TBW fraud against Colonial." Crowe also objects to this Request to the extent that it seeks documents that are protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Crowe further states that it was not aware of the fraud prior to the FDIC-R's appointment as receiver for Colonial Bank.

16.     All documents, including internal publications prepared by Crowe or any of its practice groups, discussing developing problems in the financial markets in the mid-2000s, audit risks relating to such problems, the consequences to the housing, mortgage banking, and financial services industries (particularly companies providing home financing and/or operating in the secondary market), and Crowe's response to addressing such increased risks in regards to

providing internal audit services, particularly the provision of internal audit services to financial institutions dealing with mortgages and mortgage-backed securities from 2006 forward.

**RESPONSE TO REQUEST NO. 16:**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation. Crowe also objects to this Request because it is vague, ambiguous, and unintelligible. Crowe further objects to the extent that this Request seeks documents related to non-CBG clients of Crowe because such documents are confidential, privileged, and not relevant.

17.    All documents, including work papers, internal manuals and procedures, and communications, regarding Crowe's risk assessment and evaluation of the design and effectiveness of internal controls in the MWLD, as well as those relating to the Bank's secondary market lending operations from 2005 through 2009.

**RESPONSE TO REQUEST NO. 17:**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Crowe objects further that the risk assessment was CBG's, not Crowe's. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests. Further, after meeting and conferring with counsel for the FDIC, Crowe will conduct searches of electronically stored information for specific custodians, for a specific time period, and based on narrowly tailored search criteria; Crowe will then produce responsive non-privileged documents to the extent such documents exist and are identifiable by the process described. Crowe further states that it has certain hard copy documents that relate to

CBG and Colonial that it believes may contain relevant information. Subject to these objections, Crowe will provide an index of these documents to the FDIC for inspection and will then meet and confer.

18.     All documents, including work papers, internal manuals and procedures, and communications, regarding the review and confirmation of loan collateral securing warehouse lines of credit and mortgage loans relating to the COLB (i.e., loans held for sale) and AOT (i.e., securities purchased under agreements to resell) facilities for 2005 through 2009.

**RESPONSE TO REQUEST NO. 18:**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation. Subject to these objections, Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests. Further, after meeting and conferring with counsel for the FDIC, Crowe will conduct searches of electronically stored information for specific custodians, for a specific time period, and based on narrowly tailored search criteria; Crowe will then produce responsive non-privileged documents to the extent such documents exist and are identifiable by the process described. Crowe further states that it has certain hard copy documents that relate to CBG and Colonial that it believes may contain relevant information. Subject to these objections, Crowe will provide an index of these documents to the FDIC for inspection and will then meet and confer.

19.     All documents, including work papers, internal manuals and procedures, and communications, regarding the confirmation of account balances.

**RESPONSE TO REQUEST NO. 19:**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe further objects to the extent that this Request seeks documents related to non-CBG clients of Crowe because such documents are confidential, privileged, and not relevant. Subject to these objections, Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests. Further, after meeting and conferring with counsel for the FDIC, Crowe will conduct searches of electronically stored information for specific custodians, for a specific time period, and based on narrowly tailored search criteria; Crowe will then produce responsive non-privileged documents to the extent such documents exist and are identifiable by the process described. Crowe further states that it has certain hard copy documents that relate to CBG and Colonial that it believes may contain relevant information. Subject to these objections, Crowe will provide an index of these documents to the FDIC for inspection and will then meet and confer.

20.     All work papers (including any indices thereof) related to the preparation or conduct of any annual, quarterly, interim special or other compilation, review, agreed upon procedures or audit by Crowe related to CBG and/or Colonial, whether or not procedures were completed or an opinion or report was issued. The FDIC requests Crowe to produce both the originals or all hard copy work papers for inspection and a color copy that reproduces all hard copy work papers as they appear in Crowe's files.

**RESPONSE TO REQUEST NO. 20:**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe

further objects to this Request on the grounds that it is unduly burdensome and purports to impose obligations upon Crowe beyond the obligations imposed by the Federal Rules of Civil Procedure in that it requests Crowe to produce both the originals or all hard copy work papers for inspection and a color copy that reproduces all hard copy work papers as they appear in Crowe's files. Crowe states that it did not perform any "compilation, review, agreed upon procedures, or audit" for CBG. Crowe further states that it did not provide services to Colonial. To the extent the FDIC intended for this Request to include the outsourced internal audit services that Crowe provided to CBG, Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

21.    All correspondence related to CBG and/or Colonial from 2005 forward.

**RESPONSE TO REQUEST NO. 21:**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, lacks categorization, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation. Crowe further objects to this Request to the extent that it is duplicative of other Requests. Crowe also objects to this Request to the extent that it seeks documents that are protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Subject to these objections, Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

22.    All diaries, logs, expense reports or any other documents related to appointments, meetings, telephone conferences or other activities of Crowe agents, employees or personnel

who billed more than 15 hours to engagements for CBG and/or Colonial or its successor thereto or any of its officers, directors or employees from 2005 forward.

**RESPONSE TO REQUEST NO. 22:**  See Crowe's General Objections. In addition to the

General Objections set forth above, Crowe objects to this Request on the grounds that it is overly

broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to

the issues in this litigation. Crowe further objects to the extent that this Request seeks documents

related to non-CBG clients of Crowe because such documents are confidential, privileged, and

not relevant. Crowe also objects to this Request to the extent it requests documents that are

confidential, personal, or private. Moreover, Crowe objects to this Request to the extent that it

seeks documents that are protected from discovery by the attorney-client privilege, the attorney

work product doctrine, or any other applicable privilege or protection. Crowe states that it did

not provide services to Colonial. Subject to these objections, Crowe will meet and confer with

the FDIC to agree upon the search for calendars of a limited number of Crowe personnel

involved on the CBG engagement.

23.     All notes or memoranda of meetings or telephone conferences related to CBG and/or Colonial between partners, employees or agents of Crowe and officers, directors, employees, attorneys or other representatives of CBG and/or Colonial.

**RESPONSE TO REQUEST NO. 23:**  See Crowe's General Objections. In addition to the

General Objections set forth above, Crowe objects to this Request on the grounds that it is overly

broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to

the issues in this litigation and without regard to the time period relevant to this litigation. Crowe

further objects to this Request to the extent it seeks information that is already in the FDIC's

possession. Subject to these objections, Crowe refers to the documents previously produced in

this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests. Further, after meeting and conferring with counsel for the FDIC, Crowe will conduct searches of electronically stored information for specific custodians, for a specific time period, and based on narrowly tailored search criteria; Crowe will then produce responsive non-privileged documents to the extent such documents exist and are identifiable by the process described. Crowe further states that it has certain hard copy documents that relate to CBG and Colonial that it believes may contain relevant information. Subject to these objections, Crowe will provide an index of these documents to the FDIC for inspection and will then meet and confer.

24.     All communications between any specialist, consultant or expert that Crowe retained or contemplated retaining related to CBG and/or Colonial, and all documents related to any report or memorandum prepared by any specialist, consultant or expert that in any form regards or relates to CBG and/or Colonial.

**RESPONSE TO REQUEST NO. 24:**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe further objects to this Request because it is vague, ambiguous, and unintelligible as it does not identify the parties between whom it seeks communications. Moreover, Crowe objects to this Request to the extent that it seeks documents that are protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Subject to these objections, Crowe states that it is not aware of any third party specialist, consultant, or expert that Crowe retained or contemplated retaining relating to CBG and/or Colonial.

25. With respect to all professional services Crowe rendered to Colonial and/or CBG:

   a. all billing files, time budgets, budgets to actual analysis, client billing sheets, work-in-progress reports, billing adjustments, time sheets, and all similar documents having to do with the gathering, recordation, compilation or billing of fees and expenses to CBG and/or Colonial for both audit and non-audit services and management consultant services, including all disputes thereof; and

**RESPONSE TO REQUEST NO. 25(a):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe also objects that this Request seeks extensive documentation for hundreds of personnel, both current and former.   Requiring the collection and production of such materials is both unreasonable and harassing. Crowe also objects to this Request to the extent it seeks information that is already in the FDIC's possession. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests. Further, Crowe states that it will meet and confer with the FDIC to provide reasonable information responsive to this Request.

   b. all internal audit services time summaries and diaries.

**RESPONSE TO REQUEST NO. 25(b):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe further objects that this Request is vague and ambiguous in its use of the term "diaries." Crowe

also objects that this Request seeks extensive documentation for hundreds of personnel, both current and former. Requiring the collection and production of such materials is both unreasonable and harassing. Crowe also objects to this Request to the extent it seeks information that is already in the FDIC's possession. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe refers to the documents previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests. Further, Crowe states that it will meet and confer with the FDIC to provide reasonable information responsive to this Request.

26.     Each invoice, statement or bill for services submitted to CBG and/or Colonial by Crowe, and all records related to payment thereof.

**RESPONSE TO REQUEST NO. 26:** See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe objects to this Request to the extent it seeks documents that are already in the FDIC's possession. Crowe further objects to this Request as unreasonable because it seeks billing records going back nearly ten years. Crowe states that it did not provide services to Colonial. Subject to thee objections, Crowe states that it will meet and confer with the FDIC to provide reasonable information responsive to this Request.

27.     With respect to all professional services Crowe rendered to CBG and/or Colonial:

    a.  all documents regarding Crowe's internal audit services plan of CBG and/or Colonial, including any special considerations given to Colonial mortgage warehouse lending division;

**RESPONSE TO REQUEST NO. 27(a):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe states that the internal audit services plan was CBG's, not Crowe's. To the extent this Request seeks documents related to CBG's internal audit services plan, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe also objects to this Request to the extent that the documents requested are already in the FDIC's possession. Crowe states further that it did not provide services to Colonial. Subject to these objections, Crowe refers to the materials previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

    b. all documents relating to the internal audit services Crowe provided to CBG and/or Colonial for the years 2006 to 2009;

**RESPONSE TO REQUEST NO. 27(b):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, lacks proper categorization, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation. Crowe further objects to this Request on the grounds that it is duplicative of other Requests. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe refers to the materials previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

    c. all documents regarding Crowe's assessment of risks and/or evaluation of the business environment in which Colonial operated relating to the effect the deteriorating credit

market would have on Colonial and consequently on Crowe's provision of internal audit services to CBG and/or Colonial;

**RESPONSE TO REQUEST NO. 27(c):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe also objects to this Request to the extent that the documents requested are already in the FDIC's possession. Crowe further objects to this Request on the grounds that it is duplicative of other Requests. Crowe also objects to this Request because it is vague, ambiguous, and unintelligible. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe refers to the materials previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

    d.   all documents relating to Crowe's risk assessment, identification of key controls, tests of the effectiveness of internal controls, and review of the AOT facility and COLB facility;

**RESPONSE TO REQUEST NO. 27(d):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe also objects to this Request to the extent that the documents requested are already in the FDIC's possession. Crowe further objects to this Request on the grounds that it is duplicative of other Requests. Crowe states that it did not provide services to Colonial. Crowe further states that the risk assessment was CBG's, not Crowe's. Subject to these objections, Crowe refers to the

31

materials previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

    e.   all documents relating to the identification by Crowe of any internal control deficiencies and/or recommendations for improvements in the internal controls relevant to CBG and/or Colonial's AOT facility and COLB facility;

**RESPONSE TO REQUEST NO. 27(e):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Crowe also objects to this Request to the extent that the documents requested are already in the FDIC's possession. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe refers to the materials previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

    f.   all documents relating to any decision made by Crowe to not test all or any part of CBG and/or Colonial' s AOT facility's loan collateral and/or account balance;

**RESPONSE TO REQUEST NO. 27(f):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe also states that the decision as to whether Crowe did work related to Colonial's AOT facility was CBG's, not Crowe's. To the extent the Request seeks documents relating to CBG's decision, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence and documents. Crowe further objects to this Request to the extent that the documents requested are already in the FDIC's possession. Crowe further objects to this Request on the grounds that it is duplicative of other Requests. Crowe further states that it did not provide services to Colonial. Crowe refers to the materials previously produced in this

action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

    g.  all documents relating to Crowe's review and reconciliation of CBG and/or Colonial's AOT facility loan collateral and/or account balance;

**RESPONSE TO REQUEST NO. 27(g):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence and documents. Crowe further objects to this Request to the extent that the documents requested are already in the FDIC's possession. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe refers to the materials previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

    h.  all documents regarding Crowe's response to and assessment of risks relating to deficiencies identified by PwC, CBG and/or Colonial;

**RESPONSE TO REQUEST NO. 27(h):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe also objects to this Request to the extent that the documents requested are already in the FDIC's possession. Crowe further objects to this Request on the grounds that it is duplicative of other Requests. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe refers to the materials previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

33

i.  all documents regarding Crowe's investigation of aged TBW loans and loans shipped but not paid for in CBG and/or Colonial's COLB facility;

**RESPONSE TO REQUEST NO. 27(i):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence and documents beyond the time period relevant to this litigation. Crowe further objects to this Request on the grounds that it is duplicative of other Requests. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe refers to the materials previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

j.  all documents related to the scope of Crowe's engagement to provide internal audit services to CBG and/or Colonial, including but not limited to whether a review of CBG and/or Colonial's AOT facility was within the scope of this engagement;

**RESPONSE TO REQUEST NO. 27(j):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents without regard to the time period relevant to this litigation. Crowe also objects to this Request to the extent that the documents requested are already in the FDIC's possession. Crowe further objects to this Request on the grounds that it is duplicative of other Requests. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe refers to the materials previously produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

k.  all documents regarding sales accounting treatment applied to the purported purchase and sale of Colonial's COLB loans;

**RESPONSE TO REQUEST NO. 27(k):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe states that it did not provide services to Colonial. Subject to these objections, Crowe states that it did not analyze the sales accounting treatment of COLB loans.

l.   all communications between PwC and the Board of Directors and/or Audit Committee of CBG and/or Colonial; and

**RESPONSE TO REQUEST NO. 27(l):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe states that it did not provide services to Colonial. Crowe also objects to this Request because it seeks communications between PwC and the Board of Directors and Audit Committee of CBG and Colonial; to the extent that these documents are not already in the FDIC's possession, the FDIC should seek such documents from PwC, CBG, or Colonial, not Crowe.

m.   all communications between PwC and any federal or state regulatory agency, including without limitation, the Office of the Comptroller of Currency, the Federal Deposit Insurance Corporation, and the Alabama Department of Banking, relating to Colonial.

**RESPONSE TO REQUEST NO. 27 (m):**  See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe states that it did not provide services to Colonial. Crowe also objects to this Request because it seeks communications between PwC and federal and state regulatory agencies; the FDIC should seek such documents from PwC or the agencies, not Crowe.

28.     With respect to the affirmative defenses asserted in your answer: All documents supporting each and every one of Crowe's affirmative defenses.

**RESPONSE TO REQUEST NO. 28:**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad and unduly burdensome. Crowe further objects to this Request on the grounds that it is premature as discovery has just started in this matter. Crowe also objects to this Request on the grounds that it is duplicative of other Requests. Moreover, Crowe objects to this Request to the extent that it seeks documents that are protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Subject to these objections, Crowe refers to the documents Crowe has already produced in this action and electronically stored information to be identified through meet-and-confer discussions, as discussed in Crowe's responses to these Requests.

29.     A copy of your document retention policies in effect from 2005 to the present, a copy of all litigation holds or similar instructions either related to CBG or Colonial or otherwise directed to Crowe personnel who provided services to CBG or Colonial that would have altered the document retention policies in effect, and documents sufficient to identify the persons responsible for administering Crowe's document retention policies and litigation holds from 2005 to the present.

**RESPONSE TO REQUEST NO. 29:**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the

discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation. Crowe further objects to the extent that this Request seeks documents related to non-CBG clients of Crowe because such documents are confidential, privileged, and not relevant. Moreover, Crowe objects to this Request to the extent that it seeks documents that are protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection.

30.     All documents produced by Crowe to other parties in in [sic] any proceeding involving Colonial or CBG.

**RESPONSE TO REQUEST NO. 30:**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to the issues in this litigation and without regard to the time period relevant to this litigation. Crowe further objects to this Request to the extent that it seeks production of documents that are subject to protective orders entered in other cases. Crowe also objects to this Request on the grounds that it is duplicative of other Requests. Crowe also objects to this Request to the extent that the documents requested are already in the FDIC's possession or can more easily be obtained from third-parties. Subject to these objections, Crowe states that it has already produced to the FDIC all such documents.

31.     All transcripts and video recordings of depositions taken by any party in any proceeding involving Colonial or CBG.

**RESPONSE TO REQUEST NO. 31:**   See Crowe's General Objections. In addition to the General Objections set forth above, Crowe objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents without regard to their relevance to

the issues in this litigation, without regard to their relation to internal audit services provided to CBG, and without regard to the time period relevant to this litigation. Crowe further objects to this Request to the extent that it seeks production of documents that are subject to protective orders entered in other cases. Crowe also objects to this Request to the extent that the documents requested are already in the FDIC's possession or can more easily be obtained from third-parties. Subject to these objections, Crowe agrees to produce the transcript of the deposition of E. Michael Thomas, Partner at Crowe Horwath LLP, in Atlanta, Georgia on August 19, 2011 in the federal bankruptcy case styled *In re Colonial BancGroup, Inc.*, No. 09-32303-DHW in the Middle District of Alabama.

Respectfully submitted,

/s/ Stanley Parzen_____
Stanley J. Parzen
*Attorney for Crowe Horwath LLP*

**OF COUNSEL:**
Stanley J. Parzen
Jonathan C. Medow
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 701-7326
Telecopier:  (312) 706-8668

James H. Anderson (ANDE4440)
JACKSON, ANDERSON & PATTY, P.C.
Post Office Box 1988
250 Commerce Street, Suite 100
Montgomery, Alabama 36102-1988
Telephone:  (334) 834-5311
Telecopier:  (334) 834-5362

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2015, I caused a true and correct copy of the foregoing **CROWE HORWATH LLP'S OBJECTIONS AND RESPONSES TO THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO CROWE HORWATH LLP** to be served by email on the counsel identified below:

C Edward Dobbs
Ronald T. Coleman, Jr.
Rufus T. Dorsey, IV
PARKER, HUDSON, RAINER & DOBBS, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
*Attorneys for Plaintiffs*

Nicholas J. DiCarlo
Christopher A. Caserta
DICARLO CASERTA MCKEIGHAN & PHELPS PLC
6900 E. Camelback Road, Suite 250
Scottsdale, AZ 85251
*Attorneys for Plaintiffs*

Andrew P. Campbell
Caroline Smith Guidiere
Justin G. Williams
CAMPBELL, GUIN, WILLIAMS, GUY & GIDIERE, LLC
520 N. 20th Street, Suite 2000
Birmingham, AL 35203
*Attorneys for Plaintiffs*

David Mullin
John M. Brown
John G. Turner, III
Clint R. Latham
Richard Everett Biggs
Robert R. Bell
MULLIN, HOARD & BROWN, LLP
500 South Taylor, Suite 800
Amarillo, TX 79101
*Attorneys for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*

Dennis Bailey
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
P.O. Box 270
Montgomery, AL 36101-0270
*Attorney for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*

James Bruce Perrine
Matthew Jason Ford
BAILEY & GLASSER, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
*Attorneys for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*

Thomas J. O'Brien
FEDERAL DEPOSIT INSURANCE CORPORATION
3501 Fairfax Drive, Room VS-B-7032
Arlington, VA 22226-3500
*Attorney for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*

Elizabeth V. Tanis
Drew Dropkin
KING & SPALDING LLP
1180 Peachtree St., NE
Atlanta, GA 30309
*Attorneys for Defendant PricewaterhouseCoopers LLP*

Tabor R. Novak, Jr.
BALL, BALL, MATTHEWS & NOVAK P.A.
RSA Dexter Avenue Building
445 Dexter Ave., Suite 9045
Montgomery, AL 36104
Post Office Box 2148
Montgomery, AL 36102
**Attorney for Defendant**
**PricewaterhouseCoopers LLP**

/s/ Justin A. McCarty_____
*An Attorney for Defendant Crowe Horwath LLP*



# *Audit Committee*

January 15, 2008

**EXHIBIT C**

FDICR-0828736

# Internal Audit Outsourcing Firm Responsibilities

## Audit Objective

The objective of Internal Audit (and therefore the outsourcing firm) is to assist the Audit Liaison, management and the Committee in the discharge of their responsibilities by furnishing them with objective evaluations of the adequacy, efficiency, accuracy, and effectiveness of internal controls, audit trails, operational procedures, compliance with Bank policy, laws, regulations, and the quality of ongoing operations. Internal Audit will also assist in the Sarbanes-Oxley internal controls documentation and testing.

## Internal Audit Standards

### Independence

The outsourcing firm will report to the Audit Committee and assist the Audit Liaison in the Report to the Audit Committee. The firm will not engage in any activity that they would be expected to review and appraise. The firm will not at any time make management decisions or perform the corrective actions required by the internal audit recommendations or by Sarbanes-Oxley findings.

### Authority

The function of the outsourcing firm is that of a consultant or advisor, rather than line operation function. The outsourcing firm does not exercise direct authority over other persons whose work it reviews. The outsourcing firm will be free to review and appraise policies, procedures, plans, and records for their adequacy. The outsourcing firm has full authority to review all areas of BancGroup or its subsidiaries at any time with access to all records, property, and personnel, with the approval of the Audit Liaison.

### Personal Conduct

The outsourcing firm staff shall always strive for the highest standards of integrity. They shall make every effort to attain high levels of technical training and proficiency, and have specific knowledge of Bank policies, procedures, laws, and regulations. They shall make every effort to develop general knowledge of each area and application for which they will be performing audits.

FDICR-0828782

The outsourcing firm's staff must be respectful and courteous to all employees and officers in the areas being audited. They must avoid premature disclosures of audit comments. Criticism should be given in an impersonal and constructive manner and should not be discussed with unaffected personnel or outsiders.

### Continuing Education

In order to assure the necessary knowledge, skills, and discipline and to promote the quality of work desired, the outsourcing firm's partners and managers will have a generally recognized designation such as Certified Public Accountant, Chartered Bank Auditor, Certified Internal Auditor, or a graduate degree, and all staff will be involved in continuing education activities.

### Evidential Matter

Audit standards will cover procedures and workpapers sufficient to provide competent evidential matter to support conclusions regarding work completed.

### Audit Programs and Supervision

The outsourcing firm is to maintain an effective audit program that has been developed in conjunction with the Audit Liaison and meets the Committee's approval. It is to be staffed by competent, qualified personnel who are to be adequately supervised. The audit program is to be directed toward the highest exposures to risk while employing resources efficiently and effectively based upon BancGroup and Bank objectives.

### Reporting

On an ongoing basis and at appropriate levels of management, the outsourcing firm will furnish to the Audit Liaison formal reports of audits completed to include, at a minimum, objective analysis of operations, recommendations for corrective action, and a general assessment of each activity reviewed. Follow-up will be provided to determine whether adequate corrective steps have been taken.

The Audit Liaison with the assistance of the outsourcing firm will report to the Audit Committee at least four times a year on the results of its activities.

FDICR-0828783

*Audit Responsibilities*

Internal audit is responsible for achieving the Audit Objective. The following is a breakdown of detailed responsibilities needed to accomplish the overall goal:

1. Provide assistance to the Board of Directors, examines financial reporting, operational, and regulatory compliance controls at appropriate intervals to determine the existence of and adherence to desired controls.

2. Evaluate whether operations of BancGroup and its subsidiaries are efficiently and effectively carried out in accordance with BancGroup policies, individual Bank policies, and sound business practices.

3. Work jointly with BancGroup's independent auditors and with the supervisory authorities so that their work is done in the most efficient manner possible and with the least amount of disruption to operations.

4. When requested by management, is involved in pre-acquisition audits to assist management in the evaluation of the prospective acquisitions.

5. Promote understanding and appreciation of internal controls and their application to all operations through written or oral, formal and informal, communications with management.

6. When internal control considerations are involved, the outsourcing firm may be consulted by all major committees of BancGroup for its input to the necessary controls and procedures required by the situation.

7. Review loan files on a test basis for proper documentation and compliance with applicable laws, regulations, and Bank policies.

8. Conduct special audits as necessary and as requested by management.

9. Receive a copy of regulatory examination reports and management responses that will be used to ensure corrective action has been initiated.

**NOTE:** The Security Department of the Bank is to conduct investigations into suspected or known employee involvement with dishonest or breach of trust activities. This department is also to be the liaison with the FBI regarding all employee and customer fraud/embezzlement cases.

FDICR-0828784

*Audit Procedures*

Audit procedures will include the use of the following techniques:

1. **Observation** of the operation of a department's accounting procedures, system of internal control and activities of personnel.

2. **Inspection** of securities and other assets for the purpose of determining their physical existence, of supporting data for asset cost, of liability obligations, of operating income and expense, etc.

3. **Confirmation** of account balances and transactions with outside parties.

4. **Comparison** of account balances for operating data with similar information for prior or subsequent periods to disclose and determine the reasons for significant changes.

5. **Analysis** of accounts and accounting and operating data to determine the credibility of reported financial information.

6. **Computation** of clerical determinations.

7. **Inquiry** of personnel with respect to established procedures and of management with respect to Bank policies and procedures in matters that may not be disclosed in the records, such as contingent liabilities, future plans and prospects, etc.

*Audit Frequencies*

Audit frequencies will be reviewed and approved first by the Audit Liaison and then by the Audit Committee at least annually. The following factors will be used to determine the annual audit schedule and its priorities:

1. The proportion of a branch or department's total assets, liabilities, income, expense, and owners equity, when applicable, to the consolidated group.

2. Assessment of risk and exposure associated with the function.

3. Established internal controls.

4. Time and cost of conducting audit.

5. Past internal and external audit findings.

6. State or regulatory audit requirements.

7. Date of last regulatory examination.

FDICR-0828785

<u>**AICPA Code of Professional Conduct and the AICPA Consulting Standards**</u>

<u>Article II – The Public Interest (ET Section 53)</u>

Those who rely on certified public accountants expect them to discharge their responsibilities with integrity, objectivity, due professional care, and a genuine interest in serving the public.  They are expected to provide quality services, enter into fee arrangements, and offer a range of services—all in a manner that demonstrates a level of professionalism consistent with these Principles of the Code of Professional Conduct. (ET §53.03)

<u>Article V – Due Care (ET Section 56)</u>

Members should be diligent in discharging responsibilities to clients, employers, and the public.  Diligence imposes the responsibility to render services promptly and carefully, to be thorough, and to observe applicable technical and ethical standards.  (ET §56.04)

Due care requires a member to <u>plan and supervise adequately any professional activity for which he or she is responsible.</u>  (ET §56.05 emphasis added)

<u>Article VI – Scope and Nature of Services (ET Section 57)</u>

A member in public practice should observe the Principles of the Code of Professional Conduct in determining the scope and nature of services to be provided. (ET 57)

<u>General Standards (ET Section 201)</u>

**Rule 201—General standards** A member shall comply with the following standards and with any interpretations thereof by bodies designated by Council.

> A.   *Professional Competence.*  Undertake only those professional services that the member or the member's firm can reasonably expect to be completed with professional competence.

> B.   *Due Professional Care.*  Exercise due professional care in the performance of professional services.

**EXHIBIT D**

C.   *Planning and Supervision.*  Adequately plan and supervise the performance of professional services.

D.   *Sufficient Relevant Data.*  Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed.

(ET §201.01)

Consulting Services: Definitions and Standards (CS Section 100)

The following additional general standards for all Consulting Services are promulgated to address the distinctive nature of Consulting Services in which the understanding with the client may establish valid limitations on the practitioner's performance of services.  These Standards are established under Rule 202 of the AICPA Code of Professional Conduct.

*Client interest*.  Serve the client interest by seeking to accomplish the objectives established by the understanding with the client while maintaining integrity and objectivity.

*Understanding with client*.  Establish with the client a written or oral understanding about the responsibilities of the parties and the nature, scope, and limitations of services to be performed, and modify the understanding if circumstances require a significant change during the engagement.

(CS §100.07)

## Standards of the Institute of Internal Auditors

1210 - Proficiency

Internal auditors should possess the knowledge, skills, and other competencies needed to perform their individual responsibilities.  The internal audit activity collectively should possess or obtain the knowledge, skills, and other competencies needed to perform its responsibilities.

**1210.A1** - The chief audit executive should obtain competent advice and assistance if the internal audit staff lacks the knowledge, skills, or other competencies needed to perform all or part of the engagement.

**1210.A2** – The internal auditor should have sufficient knowledge to identify the indicators of fraud but is not expected to have the expertise of a person whose primary responsibility is detecting and investigating fraud.

1220 – Due Professional Care

Internal auditors should apply the care and skill expected of a reasonably prudent and competent internal auditor.  Due professional care does not imply infallibility.

**1220.A1** - The internal auditor should exercise due professional care by considering the:

- Extent of work needed to achieve the engagement's objectives.

- Relative complexity, materiality, or significance of matters to which assurance procedures are applied.

- Adequacy and effectiveness of risk management, control, and governance processes.

- Probability of significant errors, irregularities, or noncompliance.

- Cost of assurance in relation to potential benefits.

**1220.A2** – The internal auditor should be alert to the significant risks that might affect objectives, operations, or resources.  However, assurance procedures alone, even when performed with due professional care, do not guarantee that all significant risks will be identified.

2000 – Managing the Internal Audit Activity

The chief audit executive should effectively manage the internal audit activity to ensure it adds value to the organization.

**2010 – Planning:**  The chief audit executive should establish risk-based plans to determine the priorities of the internal audit activity, consistent with the organization's goals.

**2010.A1** - The internal audit activity's plan of engagements should be based on a risk assessment, undertaken at least annually. The input of senior management and the board should be considered in this process.

**2020 – Communication and Approval:**  The chief audit executive should communicate the internal audit activity's plans and resource requirements, including significant interim changes, to senior management and to the board for review and approval.  The chief audit executive should also communicate the impact of resource limitations.

2100 – Nature of Work

The internal audit activity evaluates and contributes to the improvement of risk management, control and governance systems.

**2110 – Risk Management:**  The internal audit activity should assist the organization by identifying and evaluating significant exposures to risk and contributing to the improvement of risk management and control systems.

**2110.A1** - The internal audit activity should monitor and evaluate the effectiveness of the organization's risk management system.

**2110.A2** - The internal audit activity should evaluate risk exposures relating to the organization's governance, operations, and information systems regarding the

- Reliability and integrity of financial and operational information.

- Effectiveness and efficiency of operations.

- Safeguarding of assets.

- Compliance with laws, regulations, and contracts.

**2120 – Control:**  The internal audit activity should assist the organization in maintaining effective controls by evaluating their effectiveness and efficiency and by promoting continuous improvement.

**2120.A1** - Based on the results of the risk assessment, the internal audit activity should evaluate the adequacy and effectiveness of controls encompassing the organization's governance, operations, and information systems. This should include:

- Reliability and integrity of financial and operational information.

- Effectiveness and efficiency of operations.

- Safeguarding of assets.

- Compliance with laws, regulations, and contracts.

**2120.A2** - Internal auditors should ascertain the extent to which operating and program goals and objectives have been established and conform to those of the organization.

**2120.A3** - Internal auditors should review operations and programs to ascertain the extent to which results are consistent with established goals and objectives to determine whether operations and programs are being implemented or performed as intended.

**2120.A4** - Adequate criteria are needed to evaluate controls.  Internal auditors should ascertain the extent to which management has established adequate criteria to determine whether objectives and goals have been accomplished.  If adequate, internal auditors should use such criteria in their evaluation.  If inadequate, internal auditors should work with management to develop appropriate evaluation criteria.

**2130 – Governance:**  The internal audit activity should contribute to the organization's governance process by evaluating and improving the process through which (1) values and goals are established and communicated, (2) the accomplishment of goals is monitored, (3) accountability is ensured, and (4) values are preserved.

**2130.A1 -** Internal auditors should review operations and programs to ensure consistency with organizational values.

<u>2200 - Engagement Planning</u>

Internal auditors should develop and record a plan for each engagement.

**2201 - Planning Considerations:**  In planning the engagement, internal auditors should consider:

- The objectives of the activity being reviewed and the means by which the activity controls its performance.

- The significant risks to the activity, its objectives, resources, and operations and the means by which the potential impact of risk is kept to an acceptable level.

- The adequacy and effectiveness of the activity's risk management and control systems compared to a relevant control framework or model.

- The opportunities for making significant improvements to the activity's risk management and control systems.

**2210 - Engagement Objectives:**  The engagement's objectives should address the risks, controls, and governance processes associated with the activities under review.

**2210.A1** - When planning the engagement, the internal auditor should identify and assess risks relevant to the activity under review.  The engagement objectives should reflect the results of the risk assessment.

**2210.A2** - The internal auditor should consider the probability of significant errors, irregularities, noncompliance, and other exposures when developing the engagement objectives.

**2220 - Engagement Scope:**  The established scope should be sufficient to satisfy the objectives of the engagement.

**2220.A1** - The scope of the engagement should include consideration of relevant systems, records, personnel, and physical properties, including those under the control of third parties.

<u>2300 - Performing the Engagement</u>

Internal auditors should identify, analyze, evaluate, and record sufficient information to achieve the engagement's objectives.

**2310 - Identifying Information:**  Internal auditors should identify sufficient, reliable, relevant, and useful information to achieve the engagement's objectives.

**2320 - Analysis and Evaluation:**  Internal auditors should base conclusions and engagement results on appropriate analyses and evaluations.

**2340 - Engagement Supervision:**  Engagements should be properly supervised to ensure objectives are achieved, quality is assured, and staff is developed.

<u>2400 - Communicating Results</u>

Internal auditors should communicate the engagement results promptly.

**2420 - Quality of Communications:** Communications should be accurate, objective, clear, concise, constructive, complete, and timely.

**2421 - Errors and Omissions:**  If a final communication contains a significant error or omission, the chief audit executive should communicate corrected information to all individuals who received the original communication.