IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE COLONIAL BANCGROUP, INC., as post-confirmation debtor, and KEVIN O'HALLORAN, as plan trustee acting for and on behalf of the debtor, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:11-cv-00746-WKW |
| PRICEWATERHOUSECOOPERS LLP, and CROWE HORWATH LLP, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) ) | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:12-cv-00957-WKW |
| PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, | ) ) ) | |
| Defendants. | ) | |

## CROWE HORWATH LLP'S RESPONSE TO THE MOTION TO COMPEL OF THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK

The FDIC-R seeks Crowe's external audit manuals and its outsourced internal audit manuals on the ground that they will provide insight on how Crowe thinks its outsourced internal audit work should be done and will be probative on the standard of care. Motion at 2. However, the motion is without merit because the documents it seeks are either irrelevant or non-existent.

Crowe never performed an external audit here and did not render reports that expressed any assurance under the standards that governs external audits.  Accordingly, proprietary materials relating to external audits do not meet the required showing of relevant and necessary for production.   The FDIC-R was told during the meet-and-confer process, that internal proprietary manuals for outsourced internal audit did not exist, and they not.  Hence the motion to compel must be denied.

## INTRODUCTION & BACKGROUND

Crowe served its Objections and Responses to the FDIC-R's document requests in January 2015 and heard nothing from the FDIC-R until May. Declaration of Stanley J. Parzen ("Parzen Decl.") at ¶¶ 3-5. Despite the FDIC-R's waiting nearly four months to meet and confer, Crowe worked to resolve the parties' disputes, as the FDIC-R's motion recognizes (Mot. at 2-3). Indeed, Crowe believed that all discovery disputes had been resolved until it received the FDIC-R's motion requesting production of (1) Crowe's manuals for external audits of a client's financial statements under Generally Accepted Auditing Standards ("GAAS") and (2) Crowe's internally developed manuals for outsourced internal audit services. Crowe believed these two specific issues had been resolved because Crowe's counsel had explained to the FDIC-R's counsel, first, that Crowe had not done any external audits of financial statements prepared in conformity with Generally Accepted Accounting Principles ("GAAP") for Colonial BancGroup, Inc. ("CBG"), and, second, that manuals addressing outsourced internal audit services do not exist. Parzen Decl. at ¶¶ 11 & 13. The FDIC-R's motion ignores Crowe's statements and provides no basis for calling them into question.

Insofar as the FDIC-R's motion seeks to compel the production of Crowe's proprietary GAAS audit and accounting manuals, it should be denied because those manuals do not shed any

2

light onto how Crowe performed or should have performed the outsourced internal audit services that it was retained to perform at the direction of CBG. This auditing guidance was not consulted by Crowe's engagement team; they were not referenced in Crowe's workpapers; and outsourced internal audit services are not governed by GAAS, rendering Crowe's audit manuals irrelevant and unnecessary to the litigation. Declaration of Ernst Michael Thomas ("Thomas Decl.") at ¶¶ 7-11; Declaration of Michael Yates ("Yates Decl.") at ¶ 4. Put another way, the materials can not be informative on what Crowe thought it should do on this engagement and can not set the standard of care because they are not used on the work that was done here. As a result, the FDIC-R cannot meet a relevancy standard for production, let alone the more stringent standard—relevant and necessary—governing a request for proprietary material. *See* Yates Decl. at ¶¶ 5-6. Similarly, the FDIC-R's motion to compel Crowe's production of internally developed manuals governing outsourced internal audit services should be denied because Crowe cannot be ordered to produce documents that do not exist. Thomas Decl. at ¶¶ 11-12; Parzen Decl. at ¶¶ 10-11; Roen Declaration ("Roen Decl.") at ¶ 4.

## ARGUMENT

### A. Crowe's Proprietary Audit Manuals Are Irrelevant And The FDIC-R Has Made No Showing That Their Production Is Necessary.

The FDIC-R acknowledges that Crowe was not CBG's external auditor (Mot. at 13 n.2), and does not contend that Crowe audited or reported on any financial statements of CBG which were stated to be prepared in conformity with GAAP. Yet the FDIC-R still argues that Crowe's proprietary audit manuals on GAAS and GAAP are relevant—indeed, "important"—to the FDIC-R's claims against Crowe because, it claims, the manuals are relevant to how Crowe was to do its work or the standard of care. Mot. at 2, 6 & 11. This argument—while frequently asserted to compel the production of audit manuals from ***external*** auditors that used them during

3

the course of their audit work on the financial statements of a client—makes no sense here and is without merit.

As an initial matter, Crowe's audit manuals are proprietary,[1] and as the very cases cited by the FDIC-R make clear, a party that seeks to compel the production of proprietary information must show that the materials in question are not only relevant, but "both relevant and necessary." *See Gohler v. Wood.*, 162 F.R.D. 691, 694 (D. Utah 1995) (Mot. at 13); *In the Matter of Mercury Fin. Co. of Ill.*, 1999 WL 495903 at *6 (N.D. Ill. Jul. 12, 1999) (Mot. at 12). If such proof "is not established, discovery should be denied." *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 326 (10th Cir. 1981).

Under the "relevant and necessary" standard, contrary to what the FDIC says in its motion, courts often refuse to order the production of proprietary audit manuals—even when they are sought from independent, external auditors that used them during the course of their work. *See, e.g., Tonnemacher v. Sasek*, 155 F.R.D. 193, 195 (D.Ariz. 1994);  *In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 214, 216-17 (N.D. Cal. 1992) (plaintiff seeking audit manuals failed to establish need and relevancy); *Gen. Elec. Cap. Corp. v. DirecTV, Inc.*, 184 F.R.D. 32, 37 (D. Conn. 1998) (refusing to compel production of Deloitte's audit methodology under relevant and necessary standard); *Davis v. Coopers & Lybrand*, 1992 WL 159504 at *1 (N.D. Ill. Jun. 25, 1992) (holding that proprietary audit manuals are irrelevant to accounting malpractice actions). There are several reasons for these rulings and others that reach the same conclusion, but perhaps the key insight they share is that an external audit must be tested for compliance with GAAS, not a particular firm's internal standards that may be interpreting GAAS. *See, e.g.,*

---

[1]        The FDIC-R does not dispute that Crowe's GAAS audit manuals are proprietary, and Mr. Michael Yates from Crowe's Assurance Professional Practice group has confirmed that they are. Yates Decl. at ¶¶ 5. Crowe has dedicated significant resources to maintaining its GAAS audit manuals and to keeping those materials out of the public realm. *Id.* at ¶ 6. Any isclosure of the GAAS audit manuals would be harmful to Crowe's audit business. *Id.*

*Worlds of Wonder*, 147 F.R.D. at 216; *Tonnemacher v. Sasek*, 155 F.R.D. at 195; *In re CIS Corp.*, 123 B.R. 488, 491 (S.D.N.Y. 1991).[2]

Other courts (cases cited by the FDIC) compel the production of only discrete sections of an audit manual—the specific passages that relate to the work at issue, that the defendant consulted during its work, or that are referenced in the defendant's workpapers. *See In re Crazy Eddie Sec. Litig.*, 1988 WL 127457, at *1 (E.D.N.Y. Nov. 18, 1988) (accounting firm ordered to produce only those portions of its audit manuals reviewed, applied, or consulted in conjunction with the audits being litigated); *In re One Bancorp Sec. Litig.*, 134 F.R.D. 4, 11 (D. Me. 1991) (accounting firm ordered to produce only the audit plans and procedures used in the audits subject to litigation); *In the Matter of Mercury Fin. Co. of Ill.,* 199 WL 495903 at *5 (N.D. Ill. July 12, 1999) (ordering production of "the accounting and auditing manuals and other written materials prepared and generated by KPMG on seven specific accounting procedures at issue in this case"). Portions of manuals that were neither used nor relied upon during the work at issue are irrelevant. *See Thies v. Life Ins. Co. of N.A.*, 768 F.Supp.2d 908, 914 (W.D. Kent. 2011) (denying production of internal manuals that were not used or considered by a plan administrator in denying a benefits claim).  Even the limited production authorized by these decisions has been held to be inapplicable when there is no claim against the auditor that the external audit work performed by the auditor was deficient.  *In re CIS Corp.*, 123 B.R. 488, 491 (S.D.N.Y. 1991).

Here, we are one step even further removed, as there is no assertion that Crowe was retained to perform a GAAS audit of CBG's financial statements prepared pursuant to GAAP, and it was not. Thomas Decl. at ¶ 6.  Instead, it was PricewaterhouseCoopers LLP which did work pursuant to GAAS and expressed opinions with respect to GAAP in reports which it issued.

---

[2]　　It would certainly also be contrary to public policy to order the production because judging an accounting firm by its internal policies, not GAAS, would incentivize firms to set a low internal standard.  *Worlds of Wonder,* 147 F.R.D. at 217.

That being the case, Crowe's audit manuals ostensibly interpreting GAAS cannot be relevant, let alone necessary. Moreover, the FDIC-R does not—and cannot—argue that Crowe's manuals played any part in the work Crowe did perform—its provision of outsourced internal audit services to CBG. Indeed, Mike Thomas, the partner in charge of Crowe's engagements for CBG, confirmed that he is unaware of any instance in which he or any member of his team consulted or referred to the firm's GAAS manuals while performing outsourced internal audit services for CBG. Thomas Decl. at ¶ 9. Moreover, during his thirteen years as a partner at Crowe, Mr. Thomas has never performed an audit of financial statements and, as such, has never had occasion to review Crowe's GAAS audit manuals. Thomas Decl. at ¶ 4.  Given this, the FDIC's argument that it needs these materials in order to get insight into how Crowe thought its outsourced audit work should be done or to understand the standard of care can not be credited, particularly not when Mr. Yates has stated that the audit manuals do not constitute guidance for outsourced internal audit work.  Yates Decl. at 4.

The FDIC-R likewise fails to cite any references in Crowe's internal audit workpapers to the firm's manuals.   Indeed, there are no such references.  Thomas Decl.  at ¶ 10. None of this is surprising, for the outsourced internal audit work Crowe performed for CBG was not governed by GAAS. Thomas Decl. at ¶ 7.  Because Crowe's proprietary GAAS audit manuals played no role in how Crowe performed its internal audit services, even if audit manuals were ever discoverable, and they should not be, these manuals can not be relevant to how Crowe should have done its outsourced internal audit work or to the applicable standard of care. *See Thies*, 768 F.Supp.2d at 914.

The FDIC-R cites no law to the contrary. The cases cited by the FDIC-R stand only for the proposition that discrete and relevant portions of an audit manual should be produced when

they are sought from an external auditor that performed a financial statement audit that was alleged to be deficient—not in compliance with GAAP.  Many of these cases include specific findings that the portions of the audit manuals at issue were referenced in the workpapers or provided the basis for the audit work. *See In re Oxford*, 2001 WL 34780563 at *2 ("The workpapers produced by KPMG in this case contain extensive references to the firm's audit manuals and materials."); *Gohler*, 162 F.R.D. at 694-95 (manuals "extensively cross-referenced in Deloitte's workpapers" and "provided the foundation for those audits"); *Mercury Fin. Co.*, 1999 WL 495903 at *5 (plaintiffs sought "the accounting and auditing manuals and other written materials prepared and generated by KPMG on seven specific accounting procedures at issue in this case"). Here, by contrast, Crowe did not conduct an audit governed by GAAS; it neither consulted nor relied upon its GAAS audit manuals during the course of its outsourced internal audit engagement; its GAAS audit manuals do not provide guidance applicable to outsourced internal audit work; its GAAS audit manuals are not referenced in its workpapers.  Instead, Crowe worked at the direction of CBG in performing outsourced internal audit work.  The FDIC-R does not cite a single case—and we are not aware of one—in which a court has compelled the production of a proprietary external audit manual from a firm that had not performed a financial statement audit that was challenged as being deficient.

The FDIC-R also argues (Mot. at 7) that guidance relevant to GAAS and GAAP external audits is nonetheless relevant because Colonial's "Audit Policy" obligates Crowe to comply with GAAS and hence the accounting and audit manuals are relevant.   To be sure, the FDIC-R provides no affidavit or other evidence to support the argument that Crowe was to comply with GAAS and GAAP other than the Audit Policy.   Notably, that Audit Policy does not even use the word GAAS (or GAAP) when talking about the Audit Outsourcing Firm Responsibilities.  The

7

reason for this is that the terms of Crowe's engagements were spelled out in its written engagement letters with CBG and they say nothing about complying with GAAS. Thomas Decl. at ¶ 8 ("Crowe's engagement letters with CBG do not provide that Crowe's services are governed by GAAS.").   The internal audit reports that resulted from Crowe's work[3] also do not reference GAAS (or GAAP).  Accordingly, the engagement letters themselves and the reports issued make it plain that GAAS and GAAP do not set the standard of care for the  work that was done by Crowe. It is not surprising therefore that no one from CBG ever complained that the reports did not reference GAAS.   Indeed, "neither CBG's General Auditor, Young Boozer III, or CBG's Internal Audit Liaison, Tommy Tynes, ever stated that Crowe's services were governed by GAAS." Thomas Decl. at ¶ 8.[4]   In sum, the FDIC has provided no credible evidence to conclude that the internal manuals of Crowe relating to external audits are relevant to the claims made against Crowe, and it is certainly not the case that their production is "necessary."

It is telling that when Crowe first asked the FDIC-R to explain the purported relevance of Crowe's GAAS audit manuals, the FDIC said nothing about using them to test Crowe's work or to establish the standard of care governing Crowe's engagements. Rather, the FDIC-R's position at that time was that it sought Crowe's GAAS audit manuals as evidence against PwC. Parzen Decl. at ¶ 9. In other words, the FDIC-R sought to conscript Crowe as an involuntary GAAS expert against its co-defendant. That was plainly inappropriate, and the FDIC-R wisely no longer

---

[3]     The Colonial BancGroup, Inc. Internal Audit Report for Mortgage Warehouse Lending for 2007-2008 is attached hereto as Exhibit B. Since there were many reports issued between 2002 and 2009, this report is merely an example to demonstrate that the internal audit reports do not reference GAAS.  Crowe notes that copies of the engagement letters and the other reports are contained in the record at Dkt 23-1 in the FDIC case.  And, of course, there is no reference to GAAS or GAAP therein.

[4]     As we note above, the section of the  Audit Policy addressing Internal Audit Outsourcing Firm Responsibilities does *not* indicate that CBG expected or understood that Crowe's provision of outsourced internal audit services would be governed by GAAS. GAAS is never cited in this section. By contrast, the section of the same document relating to the responsibilities of Colonial's "Independent Auditor," which the FDIC-R omitted to share with the Court (but which is attached in full hereto as Exhibit A), expressly references "the auditing standards of the PCAOB" as applicable to PwC. Ex. A at FDICR-0828776.  Those PCAOB standards incorporate GAAS. PCAOB AS 1 ¶ 2, available at http://pcaobus.org/Standards/Auditing/Pages/Auditing_Standard_1.aspx (stating the PCAOB adopted GAAS as its auditing standards).

advances this argument. But its replacement theory fares no better. Because Crowe's GAAS audit manuals are irrelevant and unnecessary to this litigation, the FDIC-R's motion to compel should be denied.

**B.     As the FDIC-R Has Previously Been Told, Crowe Does Not Have Internally Developed Manuals For Outsourced Internal Audit Work.**

The FDIC-R's demand for internally developed manuals "provided to its auditors in connection with internal audits" can be dispensed with quickly.[5]  As the FDIC-R well knows, the requested documents simply do not exist[6]  And, it is both well-settled law and self-evident that "The Court cannot compel Defendants to produce more than what is shown to exist." *Calhoun v. Volusia County*, 2007 WL 1796259 at *2 (M.D. Fla. Jun. 20, 2007) (denying motion to compel based on representation of counsel); *see also Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 2014 WL 6473232 at *5 (S.D. Fla. Nov. 18, 2014) ("[T]he Court cannot compel Defendants to provide information or documents that do not exist."); *Moody v. Skaliy*, 2007 WL 1496691 at *11 (N.D. Ga. Mar. 27, 2007) (denying a motion to compel documents that "do not exist").

During two meet-and-confer calls, and after the motion to compel was filed as a confirmation, Crowe's counsel, Stanley Parzen, told the FDIC-R that Crowe did not have internal manuals for outsourced internal audit services from the 2002-2009 time period. Parzen

---

[5]   It is unclear whether Requests 1(f) and 1(m) relate to internal audit work.  However, the only issues addressed in the meet and confer meetings were materials relating to external audits under GAAS or to outsourced internal audit work.  To the extent that these requests relate to outsourced internal audit work, the discussion in text above addresses the request for production—the documents do not exist.   To the extent that the request seeks information that relates to auditing and auditing work, the discussion in Section A addresses why the documents are not discoverable.

[6]   To be sure, if Crowe had such manuals their production would not be relevant and necessary to this litigation. Initially, as the affidavit of Mr. Thomas establishes, the work performed here, in contrast to the work performed by an external auditor, was work performed at the direction and approval of CBG.  The workpapers produced by Crowe contain the programs setting forth the work that was done pursuant to that direction and approval, and do not refer to any Crowe manuals.  Given the work that was done, and the workpapers produced, the FDIC can argue as it will as to Crowe's conduct, but any internal manuals not referenced or considered during that work are certainly not germane.

Decl. at ¶¶ 10-11. The FDIC-R's motion neither acknowledges these statements nor attempts to refute them.

To remove any doubt, Crowe has submitted a declaration from Mr. Thomas, who headed Crowe's CBG engagement.  Mr. Thomas states that during the period Crowe provided services to CBG, that he was not aware of Crowe "generated internal manuals or internal written pronouncements that governed outsourced internal audit work." Thomas Decl. at ¶ 11; *see also* Yates Decl. at ¶ 4 ("Crowe's GAAS audit manuals and programs are not intended for, or used by Crowe in the performance of, outsourced internal audit services").  Further, Crowe's Learning and Talent Development Leader has confirmed that she could not after a diligent search find such materials.  Roen Dec at ¶ 4.  Moreover, the procedures that Crowe performed during its engagements for CBG were developed in conjunction with, and subject to the overall direction and approval of, CBG's General Auditor or Internal Audit Liaison. Thomas Decl. at ¶ 12; *see also* Ex. A (Colonial's Audit Policy) at FDICR-0828778 (CBG's Audit Liaison is responsible for "[p]erform[ing] a preliminary audit risk assessment, audit plan, and recommended audit priorities"; for "[d]etermining the scope, risk and frequency of audit activities"; and for "[e]valuat[ing] the adequacy of the audit procedures performed").

The FDIC-R cites nothing—in Crowe's workpapers or otherwise— to contradict these many statements. Courts in this District have held that "the mere hope that relevant documents might exist is insufficient to compel discovery." *Auburn Univ. v. Int'l Bus. Machines, Corp.*, 2011 WL 5190821 at *3 (M.D. Ala. Nov. 1, 2011). The FDIC-R's motion is based on nothing more than the "mere hope" that the documents it wants may exist, even in the face of repeated statements that they do not. The FDIC-R's motion is without merit. .

**CONCLUSION**

For the reasons stated, the FDIC-R's motion to compel should be denied in its entirety,

August 17, 2015                                 Respectfully submitted,


                                                _/s/ Stanley J. Parzen_____
                                                Stanley J. Parzen (*pro hac vice*)
                                                MAYER BROWN LLP
                                                71 S. Wacker Drive
                                                Chicago, Illinois 60606
                                                (312) 701-7326

                                                James H. Anderson (ANDE4440)
                                                COPELAND FRANCO
                                                P.O. Box 347
                                                Montgomery, AL 36104
                                                (334) 834-1180

                                                *Counsel for Crowe Horwath LLP*

717333207 14464158

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2015, I caused a true and correct copy of the foregoing Crowe Horwath LLP's Response to the Motion to Compel of the Federal Deposit Insurance Corporation as Receiver for Colonial Bank to be served on all counsel of record via the Court's ECF notification system.


*/s/ Stanley Parzen*
*An Attorney for Crowe Horwath LLP*

717333207 14464158