IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THE COLONIAL BANCGROUP, INC.,
and KEVIN O'HALLORAN,

     Plaintiff,

v.

PRICEWATERHOUSECOOPERS LLP
and CROWE HORWATH LLP,

     Defendants.

_____

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
COLONIAL BANK,

     Plaintiff,

v.

PRICEWATERHOUSECOOPERS LLP
and CROWE HORWATH LLP,

     Defendants.

Case No. 2:11-cv-00746-WKW

Case No. 2:12-cv-00957-WKW

### THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM PRICEWATERHOUSE COOPERS LLP AND BRIEF IN SUPPORT THEREOF

On December 4, 2014, the Federal Deposit Insurance Corporation as Receiver for Colonial Bank ("FDIC-R") served its First Request for Production of Documents ("Request for Production") on PricewaterhouseCoopers LLP ("PwC"). *See* Ex. A. On January 12, 2015, PwC served its Responses and Objections to the Request for Production ("PwC Response"). *See* Ex. B. Although PwC has produced documents to the FDIC-R, the vast majority of those documents

**Motion To Compel and Brief in Support**             1

were produced in other matters and to entities other than the FDIC-R. Despite repeated requests, PwC refused to provide information regarding the content of its productions until recently. Thus, it is unclear what, if any, steps PwC has taken to produce documents responsive to the FDIC-R's document requests. Instead, it appears that PwC has taken the position that its productions to other parties, in other matters, contain much of what the FDIC-R has requested, and the FDIC-R may request any additional documents after it has reviewed the productions. Despite this, the FDIC-R has identified several key types of documents that PwC has refused to produce, which are the subject of this motion.

PwC has refused to produce (1) non-privileged documents relating to inspections of PwC by the Public Company Accounting Oversight Board ("PCAOB") that involve specific allegations in this case; (2) documents from PwC's National Office addressing FAS 140, an accounting standard the FDIC-R alleges was violated at PwC's direction and one on which the National Office was consulted in connection with the audit of Colonial; (3) internal manuals, guidance, and training materials addressing specific allegations in this case; and, (4) relevant and responsive documents and ESI relating to other clients on FAS 140 and other issues relevant to this litigation. As a result, the FDIC-R seeks an order compelling PwC to produce documents responsive to these requests.

## I.       Statement on Attempts to Meet and Confer

The parties have engaged in numerous meet and confer telephone conferences regarding PwC's objections to the FDIC-R's requests for production. A lengthy telephone conference was held on April 1, 2015. Since that date, counsel for the parties have continued their discussions through numerous telephone conferences and the exchange of written correspondence. Although

**Motion To Compel and Brief in Support**                                                        2

the parties have resolved a number of issues through, this process the parties have been unable to resolve the issues addressed here.

## II.     Background

On August 14, 2009, the Alabama State Banking Department closed Colonial Bank ("Colonial" or "Bank") and appointed the FDIC as receiver. Colonial was the victim of a multi-year fraud perpetrated by Taylor Bean & Whitaker Mortgage Corporation ("TBW"), its largest mortgage banking customer.  This fraud resulted in financial statements that grossly misstated Colonial's true financial condition.

TBW chairman Lee Farkas and treasurer Desiree Brown conspired with two of Colonial's Mortgage Warehouse Lending Division ("MWLD") employees, Catherine Kissick (head of the MWLD) and Teresa Kelly (operations supervisor reporting to Kissick), to defraud Colonial by obtaining large amounts of MWLD financing for TBW without providing required collateral, thereby stealing money from Colonial. At all times that the fraud was ongoing, PwC served as Colonial's external, independent auditor, and Crowe served as Colonial's internal auditor. Neither Crowe nor PwC detected the fraud.

The FDIC-R asserts claims against PwC for professional negligence, gross negligence, negligent misrepresentation, and breach of contract. *See* FDIC-R's Second Amended Complaint, Docket #53.

## III.     Standard for Motion to Compel

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(l). Consistent with the notice-pleading system established by the Federal Rules, the discovery rules are to be construed liberally. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

350 (1978). This Court "has broad discretion to ensure that parties obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense, and for good cause, may order discovery of any matter relevant to the subject matter involved in the action." *Downing v. Billy Barnes Enterprises*, CA 1:12-00435-C, 2013 WL 1857113, at *2 (S.D. Ala. May 2, 2013). When a party fails to comply with its discovery obligations, the opposing party, upon reasonable notice, may apply for an order compelling discovery. FED. R. CIV. P. 37(a)(3). In ruling on a motion to compel discovery, this Court should "consider the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in a particular case before the court." *Giraldo v. Drummond Co., Inc.*, 2:09-CV-01041-RDP, 2012 WL 2358297, at *2 (N.D. Ala. June 15, 2012). As demonstrated below, the Court should grant the FDIC-R's motion to compel.

### IV.     Motion to Compel

Each category of documents the FDIC-R seeks to compel is addressed separately below.

### A.      PCAOB MATERIALS

Request for Production 3 seeks "all documents related to any disciplinary proceedings or inquiries undertaken by the PCAOB … with respect to the conduct of PwC or any of its partners, agents, representatives or employees in connection with services rendered to any entity in the financial services industry." *See* Ex. A at p. 17. PwC objected to this request, referring to 14 General Objections and asserting:

> In addition to the foregoing General Objections, PwC objects to this request based on the foregoing Definitional and Instructional Objections 1, 2, 9(a), 10, 11, 12, 13, 14, 15, and 16. PwC objects to this request to the extent that the phrases "disciplinary proceedings," "inquiries," and "financial services industry" are vague and ambiguous. PwC objects to this request to the extent that it seeks information that is subject to the attorney-client privilege, the work-product

doctrine, the accountant-client privilege, professional rules preventing the disclosure of confidential client information, or any other applicable privilege, immunity, or protection, including 15 U.S.C. § 7215(b)(5)(A) and 26 U.S.C. § 7216; seeks personal and confidential information about PwC personnel and PwC clients other than CBG; seeks confidential and proprietary business information; and seeks information subject to confidentiality agreements, protective orders, or statutory provisions that may bar disclosure of the information without the consent of third parties. PwC objects to this request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. PwC objects to this request to the extent that it seeks information not presently in the possession, custody, or control of PwC; information that is already in the possession, custody, or control of the FDIC-R, the FDIC-R's attorneys, or other representatives of the FDIC-R; or information that is as readily available to the FDIC-R as it is to PwC.

*See* Ex. B at p. 12. In addition, Request for Production 7 seeks all PCAOB Inspection Reports relating to PwC's audits of entities that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, or securities purchased under agreements to resell. *See* Ex. A at p. 18. PwC's objection to this request was nearly identical, although it also objected to the term "specialize" as vague and ambiguous.

In a good faith effort to avoid a motion to compel, the FDIC-R offered to narrow its request for documents relating to the PCAOB as follows:

Documents relating to PCAOB inspections from 2005 through present involving either CBG, Colonial Bank, FAS 140, the detection of fraud, or the obtaining of competent evidential matter to afford a reasonable basis for an opinion regarding the financial statements under an audit. This request does not include materials protected by 15 U.S.C. § 7215(b)(5)(A), as defined in *S.E.C. v. Goldstone*, 301 F.R.D. 593 (D. N.M. 2014).

*See* Ex. C at pp. 2-3. PwC rejected this compromise offer, stating that "**PwC will not produce documents relating to any PCAOB inspection of any client.**" *See* Ex. D at p. 3 (emphasis added). The FDIC-R seeks an order compelling the production of all documents responsive to Requests for Production 3 and 7 that fall outside the PCAOB privilege.

**Motion To Compel and Brief in Support**                                                  5

1. **The PCAOB Privilege does not protect all documents relating to any PCAOB inspection.**

The Sarbanes-Oxley Act of 2002 protects from disclosure "documents and information prepared or received by or specifically for the Board" of the PCAOB in connection with an accounting investigation ("PCAOB Privilege"). 15 U.S.C. § 7215(b)(5)(A). Thus, under the plain language of the statute, the PCAOB Privilege does not apply to documents and information that were not "prepared or received by or specifically for" the PCAOB Board. *Id.*

The PCAOB Privilege does not protect from discovery all documents relating to any PCAOB investigation. In *Silverman v. Motorola, Inc.*, No. 07C4507, 2010 WL 4659535 (N.D. Ill. June 29, 2009), the Court held that the PCAOB Privilege only extends to documents prepared specifically for the Board:

> It is a "cardinal principal [sic] of statutory construction" that a court must "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174, S.Ct. 2120, 150 L.Ed.2d 251 (2001) (internal citations omitted). . . . Here, Section 105(b)(5)(A) protects from disclosure only materials that an accounting firm "prepared . . . specifically for the Board." There is no ambiguity in this statutory provision and the Court need not look any further than the text of the statute in order to resolve the pending motion. Inclusion of the phrase "specifically for the Board" makes clear that Section 105(b)(5)(A) is applicable to only a portion of any information or documents that may derive from, refer to, or relate to a PCAOB investigation. The reading of the statute proffered by KPMG, which includes any documents "related to" or "concerning" the PCAOB inspection process, extends interpretation of the provision beyond its plain language and renders meaningless the phrase "specifically for the Board." . . . If Congress intended the privilege to protect all materials related to the inspection, the text of the statute would reflect that intention. Instead, the statute limits the protection to materials prepared "specifically for" the Board.

*Silverman*, 2012 WL 4659535 at *4.

In *Bennett v. Sprint Nextel Corp.*, No. 11-9014-MC-W-ODS, 2012 WL 4829312 (W.D. Mo. Oct. 10, 2012), the Court stated that it "follows *Silverman's* ultimate holding that the statute limits the protection of materials that are 'specifically for' the Board," but found that certain

"internal KPMG communications that discuss confidential questions or comments made by the Board or reflect KPMG's development of responses to Board inquiries are also protected." *Bennett* at *4. The Court also held that any substantive information, documents, spreadsheets, or forms that were compiled specifically for Sprint, but nevertheless used to respond to the Board's inquiries, were not privileged. *Id.*

Recently, both of these opinions were discussed in detail in *S.E.C. v. Goldstone*, 301 F.R.D. 593 (D. N.M. 2014). The court held that *Silverman's* "more narrow reading of the PCAOB Privilege is more faithful to the statutory text." *Id.* at 668. The Court concluded that "the PCAOB Privilege protects KPMG's communications with the PCAOB regarding the investigation, documents submitted to the PCAOB regarding the investigation or in response to the PCAOB's inquiries, and drafts of those two categories, but the PCAOB Privilege does not protect every document concerning or relating to the PCAOB investigation, nor does it protect every document and communication that would not exist but for the investigation." *Id.* at 668-69. As explained by the Court, "this interpretation gave meaning to the statute's words by protecting documents that are 'prepared or received by or specifically for the Board,' and is consistent with the requirement that 'any privilege limiting discovery is narrowly and strictly construed.'" *Id.* at 669 (citation omitted).

Accordingly, the PCAOB Privilege does not allow PwC to refuse to produce "documents relating to any PCAOB inspection[s]" or investigations. Instead, PwC may only withhold documents that it "prepared . . . specifically for the [PCAOB] Board." 15 U.S.C. § 7215(b)(5)(A).

**2. The FDIC-R's request seeks documents that are relevant and reasonably calculated to lead to the discovery of admissible evidence.**

The FDIC-R's narrowed request seeks PCAOB inspection reports and documents relating to those reports with respect to CBG, Colonial Bank, FAS 140, the detection of fraud, or the obtaining of competent evidential matter to afford a reasonable basis for an opinion regarding the financial statements under an audit. *See* Ex. C at pp. 2-3; *see also* Requests for Production 3, 7 (Ex. A at pp. 16, 17). The PCAOB documents sought by the FDIC-R are highly relevant to the key issues alleged in the Second Amended Complaint.[1]

The PCAOB's publicly released inspection reports faulted PwC for its performance in multiple accounting and audit areas similar or identical to those at issue in this case.[2] For example, the FDIC-R alleges that PwC failed to corroborate management's explanations and representations concerning material matters. Ex. G at p. 49. The PCAOB's inspection report states, similarly, that "the deficiencies identified by the inspection team suggest that [PwC] may be placing too much reliance on management's responses to the teams' inquiries and not sufficiently challenging or evaluating management's assumptions, and that [PwC] may not be applying an appropriate level of professional skepticism in subjective areas susceptible to management bias." Ex. H at p. 13. As described in the PCAOB inspection report, "the inspection team has identified concerns with significant elements of the audit process, such as the failure to adequately challenge management assumptions, excessive reliance on management's responses to inquiries, and the failure to respond appropriately to potential issues identified during an

---

[1] In addition to the discussion below, the FDIC-R has created a chart, attached as Ex. E, which catalogs some of the similarities between the allegations in the Second Amended Complaint and the issues identified in in the publicly released PCAOB inspection reports.

[2] While the FDIC-R has obtained publicly available versions of the PCAOB inspection reports, they are incomplete because they exclude certain findings. For example, the public versions of the reports do not include information concerning "criticisms of, or potential defects in, a firm's quality control systems" if those criticisms or defects were "addressed to the Board's satisfaction within 12 months" of the reports' issuance. *See* Ex. F (PCAOB Release No. 104-2004-001, at p. 5 (Aug. 26, 2004).

**Motion To Compel and Brief in Support**                                        8

audit." *Id.* at 14. The FDIC-R also alleges that PwC failed to require sufficiently persuasive evidence to support its conclusions and Colonial management's material accounting estimates and representations. Ex. G at p. 49. The PCAOB report stated that "[i]n some cases, the deficiencies identified were of such significance that it appeared to the inspection team that [PwC], at the time it issued its audit report, had not obtained sufficient competent evidential matter to support its opinion on the issuer's financial statements." Ex. H at p. 4.  Finally, there are no restrictions on PwC's ability to disclose complete versions of the PCAOB inspection reports.  *See* Ex. F (PCAOB Release No. 104-2004-001, at p. 4 & n.9 (Aug. 26, 2004) (PCAOB "does not view the statutory provisions … as restricting a registered public accounting firm from disclosing any portion of a report.").

Given the importance of these reports and related documents, and PwC's refusal to produce them, the FDIC-R sent a targeted demand that PwC produce those PCAOB documents relating to specific topics at issue in this lawsuit. *See* Ex. C.  The FDIC-R also agreed that, in addition to the protection provided by the Rule 502(d) Order in this case, PwC could redact client names from those documents to protect their identities. *Id.* at p. 2.  Finally, the FDIC-R limited its request to those documents not protected by the PCAOB Privilege. *Id.* at pp. 2-3. Even in the face of this narrowed proposal, PwC's response was that it would not provide any documents relating to PCAOB inspections. *See* Ex. D at p. 3. As a result of that refusal, the FDIC-R requests that the Court order PwC to produce all documents relating to PCAOB inspections or investigations from 2005 through present involving CBG, Colonial Bank, FAS 140, the detection of fraud, or the obtaining of sufficient competent evidential matter to afford a reasonable basis for an opinion regarding the financial statements under an audit.

**Motion To Compel and Brief in Support**                                             9

### B.      NATIONAL OFFICE DOCUMENTS

Request for Production 21 seeks documents relating to the proper application of sales treatment accounting for the transfer of financial assets (*i.e.*, FAS 140), or any escalation to the National Office of questions regarding accounting treatment for the transfer of financial assets from 2005 forward. *See* Ex. A at p. 21. With the exception of the substitution of a vague and ambiguous objection to the phrase "any escalation," PwC asserted a nearly identical block of objections to this request as it did with respect to the FDIC-R's requests regarding PCAOB documents. *See* Ex. B at p. 29. In an effort to obtain documents prior to depositions, the FDIC-R emphasized its need for National Office documents relating to FAS 140 and, to the extent those documents identify specific engagements in which PwC addressed FAS 140 issues, documents from those engagements addressing FAS 140. *See* Ex. C at p. 2. Given confidentiality concerns raised by PwC, the FDIC-R noted that it had no objection to PwC's redaction of client names from the documents. *Id.* Although PwC had produced documents "related to consultations between its Colonial engagement teams and PwC's National Office located after a reasonable search," *see* Ex. D at p. 3, PwC objected to producing documents related to FAS 140 consultations between the National Office and engagement teams working on the audits of other clients. PwC asserted that "such documents are irrelevant and almost certainly include highly sensitive, confidential information about other clients, including clients currently regulated by the FDIC. Redaction of other client names, which you suggest, would be insufficient to protect this confidential information, and would not change the irrelevance of these non-Colonial consultations." *Id.* at p. 3. PwC's position is untenable.  This discovery is relevant to PwC's FAS 140 advice and the protective order in this case and the redaction of client names and other information addresses any alleged confidentiality concerns.

**Motion To Compel and Brief in Support**                                                      10

Despite PwC's position that National Office documents relating to other clients bear no relevance to its audits of Colonial, this argument is at odds with its own documents. Indeed, PwC maintains a searchable database of National Office documents to be used with respect to other client's audits. Exhibit I is a National Consultation Form relating to the Colonial audit. *See* Ex. I. PwC personnel in the National Office prepare these forms to identify National Office documents that are of value as reference materials in future audits of other clients and any such documents are included in PwC's "National Knowledge Search Database.". *Id.* The forms include a brief description of the issue involved in the consultation, as well as whether the consultation would be of ongoing research value and should be included in the database. *Id.* In sum, PwC intends that this National Office database be used to assist in other client's audits and provide guidance regarding PwC's positions on issues that arise during such audits. Thus, to the extent that the National Knowledge Search Database contains documents relating to the key issues in this case, they are not only relevant but also easily obtained from this searchable database.

Furthermore, there is no question that sales accounting issues and, more specifically, the very sales accounting issues alleged in this case, have come up in other PwC audits. For example, PwC was a defendant in a class action lawsuit filed in the United States District Court for the Southern District of New York and the allegations in that suit concerned PwC's application of FAS 140 to three different entities—R&G Financial Corporation, Doral Financial Corporation, and First BanCorp. *See* Ex. J at p. 49. As noted in the complaint, all three entities were "the subject of U.S. Federal investigations and have agreed to oversight by U.S. regulators stemming from their improper accounting for these 'sales' and 'purchases' of pooled mortgage loans." *Id.* Similarly, R&G Financial Corporation was sued by the Securities and Exchange Commission in 2008. *See* Ex. K. Even a cursory review of that complaint establishes that many

**Motion To Compel and Brief in Support**                                            11

of the same sales accounting issues alleged here were also at issue in that lawsuit—a lawsuit against another entity audited by PwC. In short, the FDIC-R's document requests are not a fishing expedition, nor do they seek irrelevant documents. The FDIC-R seeks documents that both exist and are clearly relevant to a key issue in this case—PwC's analysis and treatment of FAS 140 issues.

Numerous courts have ordered production of documents relating to other clients and have done so in a variety of contexts. For example, courts have ordered the production of documents relating to the contract provisions with other parties because they are relevant to the interpretation of the provisions at issue in the case. *See Hock Foods, Inc. v. William Blair & Co.*, No. 09-2588-KHV, 2011 WL 884446 (D. Kan. Mar. 11, 2011) (holding that the manner in which defendant interpreted terms in substantially similar agreements with ***other clients*** could be probative of defendant's intended meaning and understanding of those terms); *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 24 (D. Conn. 2008) (ordering the production of third party agreements that either involve the licensed software or that contain provisions similar to those at issue in the parties' agreement because the requests sought relevant information); *see also Sunrich, Inc. v. Pac. Foods of Oregon, Inc.*, No. CIV. 01-1108-HA, 2003 WL 21088528, at *5 (ordering the production of documents relating to contracts with other customers because such information was likely to lead to the discovery of admissible evidence bearing on industry practice).

Similarly, in insurance coverage disputes, courts often order insurance carriers to produce other policyholders' claims files to show how the insurance company interprets and applies policy provisions to similar claims.  *See, e.g., Westport Ins. Corp. v. Wilkes & McHugh, P.A.*, 264 F.R.D. 368, 372 (W.D. Tenn. 2009) (in legal malpractice coverage dispute, court orders

production of other policyholders' claims files for five-year period); *see also Parkdale Am., LLC v. Travelers Cas. & Sur. Co. of Am.*, No. C9V; 3:06CV78-R, 2007 WL 3237720, at *5 (W.D.N.C. Oct. 30, 2007) (evidence of the insurance carrier's practices concerning other similar claims could be relevant and material to the plaintiff's claims).

In the present case, PwC's interpretation of FAS 140 with respect to other clients is relevant to whether PwC's advice to Colonial was appropriate and whether PwC ignored its own guidance and practices in the National Office in relation to that question. In addition, the protective order in this case and redaction of sensitive information relating to other clients addresses any confidentiality concerns of PwC. Accordingly, PwC should be ordered to produce National Office documents relating to FAS 140 and, to the extent those documents identify specific engagements in which PwC addressed FAS 140 issues, documents from those engagements addressing FAS 140.

### C.    INTERNAL MANUALS, GUIDANCE AND TRAINING MATERIALS

The FDIC-R seeks the production of PwC internal manuals, guidance and training materials concerning the key issues in this case. *See* Ex. A at Request Nos. 1(j)-(o). As a result of discussions with PwC, the FDIC-R agreed to narrow its requests to PwC internal manuals, guidance and training materials concerning FAS 140, sufficient competent evidential matter to afford a reasonable basis for an opinion regarding the financial statements under an audit, and the detection of fraud. *See* Ex. C at p. 2. In response to these requests, PwC repeated its boilerplate objections noted above and specifically objected to several terms used in these requests as vague and ambiguous. *See* Ex. B at p. 10; Ex. D at p. 2. PwC's primary objection, however, appears to be that the FDIC-R's request is overbroad.

The FDIC-R's request for internal manuals, guidance, and training materials relating to FAS 140, sufficient competent evidential matter to afford a reasonable basis for an opinion regarding the financial statements under an audit, and the detection of fraud is not "overbroad." Indeed, the FDIC-R narrowed its requests to the key issues in this accounting malpractice case. In any event, courts have routinely compelled production of accounting manuals and training materials that are far broader than the requests here. For example, in *In re Oxford Health Plans, Inc.*, No. 7:21-MC-76, 2001 WL 34780563 (S.D.N.Y. 2001), the court ordered the production of "[a]ll audit guides and/or training materials, including, but not limited to, electronic data processing training materials, and statistical sampling policies and procedures utilized by KPMG employees who were assigned to KPMG's audit of Oxford." *Id.* at *1. The court noted that these materials were "necessary and relevant to Plaintiff's claims" and "could be vital to conducting meaningful depositions of the accountants who worked on the Oxford audit and might aid in learning whether KPMG's auditors acted recklessly or with scienter by conducting the audit in an irregular fashion."[3]

In the present case, PwC's internal manuals, guidance, and training materials are relevant to show that PwC failed to follow its own guidance during the audit of Colonial. *See Sabratek Liquidating v. KPMG*, 01-C-9582, 2002 WL 31520993 at *2, 4 (N.D. Ill. Nov. 13, 2002) (ordering the production of "documents containing KPMG's audit practices, policies, procedures, and guidelines"); *In re Mercury Finance Co. of Ill.*, No. 97-C-3035, 1999 WL 495903, at *5-6 (N.D. Ill. July 12, 1999) (granting plaintiffs' motion to compel KPMG to

---

[3] *See also Fields v. Oliver's Stores*, No. 87 CIV. 0894 (WK), 1991 WL 44845, at *1 (S.D.N.Y. Mar. 2, 1990)(noting that "the [audit] manuals are the single best source of information available to plaintiffs on how Touche conducted audits" and that "[e]ven if Touche's internal procedures for auditing prove irrelevant to the proof at trial, understanding them could be vital to conducting meaningful depositions."); *In re Crazy Eddie Sec. Litig.*, No. 87 C 0033, 1988 WL 127457, at *1 (E.D.N.Y. Nov. 18, 1988)(holding that the magistrate judge did not err in deciding that the audit manuals were relevant because they may show whether the applicable auditing standards were followed and may provide an understanding of how the audit work was conducted).

**Motion To Compel and Brief in Support** 14

produce, among other documents, "the accounting and auditing manuals and other written materials prepared and generated by KPMG…"); *Master Palletizer Sys., Inc. v. T.S. Ragsdale Co. Inc.*, 123 F.R.D. 351, 352 (D. Colo. 1988) (compelling production of "internal audit policies and procedures").

Accordingly, the FDIC-R requests that the Court order PwC to produce documents responsive to its requests for internal manuals, guidance, and training materials.

### D.      DOCUMENTS AND ESI RELATING TO OTHER CLIENTS

PwC refuses to produce documents and ESI concerning its other clients, even when such documents are responsive to the FDIC-R's document requests. *See* Ex. D at p. 3. PwC broadly contends that such information is irrelevant and contains highly confidential, protected information, which is the subject of confidentiality obligations that PwC owes to those other clients. *Id.*

As discussed in Section B above, documents involving other clients are relevant in this case. In fact, in Section B, the FDIC-R identified several audits of PwC clients involving identical FAS 140 issues as those alleged here—some of which led to restatements by PwC's clients and lawsuits against both PwC's clients and PwC itself. Indeed, PwC completed the restatement of R&G Financial Corporation's financial statements to address the misapplication of FAS 140 just months before it provided advice to Colonial on nearly identical issues—advice that is the subject of this lawsuit.  Furthermore, as discussed in Section A, PCAOB inspection reports of multiple PwC clients show that many of those audits involved the same issues alleged by the FDIC-R in its Second Amended Complaint. Thus, documents relating to those clients are clearly relevant and reasonably calculated to lead to the discovery of admissible evidence.  For example, if the key PwC audit personnel who provided advice to Colonial were aware of or

**Motion To Compel and Brief in Support**                                                                                    15

participated in the audits and restatements of R&G Financial Corporation's financial statements, it would bear directly on their knowledge and experience with a similarly situated client—experience that they would have brought to bear and considered in providing (deficient) advice to Colonial.   Moreover, a blanket claim that any such document is "confidential and protected" from discovery does not allow the FDIC-R or the Court to address such claims in the context of specific responsive documents being withheld—nor does it address the fact that any such documents are protected by the Rule 502(d) Order in this case and PwC's ability to redact client names. Accordingly, the FDIC-R requests that the Court order PwC to produce responsive documents regardless of whether they relate to other clients. To the extent PwC has a good faith belief that certain documents are privileged, the FDIC-R requests that PwC address such documents in a privilege log that complies with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure.

**PRAYER**

The documents the FDIC-R seeks from PwC through this Motion to Compel are relevant and probative of the issues, and are also likely to lead to the discovery of admissible evidence. The FDIC-R respectfully prays that this Court enter an order compelling PwC to produce the documents addressed herein within 20 days of that Order.

Dated:  August 27, 2015.

**Motion To Compel and Brief in Support**                                                                       16

Respectfully submitted,

**RUSHTON, STAKELY, JOHNSTON
    & GARRETT, P.A.**
Dennis Bailey (4845-171D)
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:    (334) 206-3234
Facsimile:    (334) 481-0031
Email:        DRB@rsjg.com

/s/ David Mullin
David Mullin (TX Bar No. 14651600)
*pro hac vice*
John M. Brown (TX Bar No. 3142500)
*pro hac vice*
John G. Turner, III (TX Bar No. 20320550)
*pro hac vice*
Robert Bell (TX Bar No. 00787062)
*pro hac vice*
Clint Latham (TX Bar No. 24013009)
*pro hac vice*
Anthony W. Kirkwood (TX Bar No. 24032508)
*pro hac vice*
Richard Biggs (TX Bar No. 24064899)
*pro hac vice*


**MULLIN, HOARD & BROWN, LLP**
500 South Taylor, Suite 800
Amarillo, Texas  79101
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086
Email:    dmullin@mhba.com
          jobrown@mhba.com
          jturner@mhba.com
          rbell@mhba.com
          clatham@mhba.com
          tkirkwood@mhba.com
          rbiggs@mhba.com

**Motion To Compel and Brief in Support**                                    17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on August 27, 2015, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing as set forth below:

Drew D. Dropkin (ddropkin@kslaw.com)
Elizabeth V. Tanis (etanis@kslaw.com)
James H. Anderson (anderson@copelandfranco.com)
Jonathan C. Medow (jmedow@mayerbrown.com)
Stanley J. Parzen (sparzen@mayerbrown.com)
Tabor R. Novak, Jr. (tnovak@ball-ball.com)
Andrew P. Campbell (Andy.Campbell@Campbellguin.com)
Caroline Smith Gidiere (Caroline.Gidiere@Campbellguin.com)
Justin Glyien Williams (Justin.Williams@Campbellguin.com)
Nicholas J. DiCarlo (ndicarlo@dcmplaw.com)
Christopher A. Caserta (ccaserta@dcmplaw.com)
C. Edward Dobbs (ced@phrd.com)
Ronald T. Coleman, Jr. (rtc@phrd.com)
Rufus T. Dorsey, IV (rtd@phrd.com)
James N. Gorsline (jgorsline@kslaw.com)
Juanita Passyn Kuhner (jkuyner@kslaw.com)
Bradley J. Lingo (blingo@kslaw.com)
Geoffrey M. Ezgar (gezgar@kslaw.com)
David Tetrick, Jr. (dtetrick@kslaw.com)
Meredith Moss (mmoss@kslaw.com)
Richard T. Marooney, Jr. (rmarooney@kslaw.com)

/s/David Mullin

**Motion To Compel and Brief in Support**                                    18