# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN, | |
| Plaintiff, | |
| v. | Case No. 2:11-cv-00746-WKW |
| PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, | |
| Defendants. | |
| | Case No. 2:12-cv-00957-WKW |
| FEDERAL DEPOSIT INSURANCE CORPORATON AS RECEIVER FOR COLONIAL BANK, | |
| Plaintiff, | |
| v. | |
| PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, | |
| Defendants. | |

## FDIC-R'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PRICEWATERHOUSECOOPERS LLP

TO: **PRICEWATERHOUSECOOPERS LLP** ("PwC"), c/o its attorneys, Elizabeth Tanis and Drew Dropkin, King & Spalding, LLP, 1180 Peachtree Street NE, Atlanta, GA 30309 and Tabor Novak, Jr., Ball Ball Matthews & Novak, PA, P.O. Box 2148, Montgomery, AL 36102-2148.

Plaintiffs First Request for Production to PwC

**FEDERAL DEPOSIT INSURANCE CORPORATION,** as Receiver for Colonial Bank of Montgomery, Alabama (the "FDIC-R") pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, requests that you produce for inspection and copying all documents as set forth in the attached Exhibit A on or before thirty days from the date of service of these requests upon you at the offices of Mullin Hoard & Brown in Amarillo, Texas, or at such other place as the parties may agree.

DATED this 4th day of December, 2014.

RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
Dennis Bailey
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3234
Facsimile:   (334) 481-0031
Email:       DRB@rsjg.com

FEDERAL DEPOSIT INSURANCE
CORPORATION
Thomas J. O'Brien
3501 Fairfax Drive, Room VS-B-7032
Arlington, Virginia 22226-3500
Telephone:  (703) 562-6414
Facsimile:   (703) 516-5067
Email:       tobrien@fdic.gov

_David Mullin_ (signature)

David Mullin (TX Bar No. 14651600)
*pro hac vice*
John M. Brown (TX Bar No. 3142500)
*pro hac vice*
John G. Turner, III (TX Bar No. 20320550)
*pro hac vice*
Robert Bell (TX Bar No. 00787062)
*pro hac vice*
Clint Latham (TX Bar No. 24013009)
*pro hac vice*
Richard Biggs (TX Bar No. 24064899)
*pro hac vice*
**MULLIN HOARD & BROWN, LLP**
500 South Taylor, Suite 800
Amarillo, Texas  79101
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086
Email:  dmullin@mhba.com
          jobrown@mhba.com
          jturner@mhba.com
          rbell@mhba.com
          clatham@mhba.com
          rbiggs@mhba.com

**ATTORNEYS FOR FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR COLONIAL BANK**

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via U.S. Mail and electronically served as set forth below on December 4, 2014:

      Drew D. Dropkin (ddropkin@kslaw.com)

      Elizabeth V. Tanis (etanis@kslaw.com)

      James H. Anderson (janderson@beersanderson.com)

      Jonathan C. Medow (jmedow@mayerbrown.com)

      Stanley J. Parzen (sparzen@mayerbrown.com)

      Tabor R. Novak, Jr. (tnovak@ball-ball.com)

      Andrew P. Campbell (Andy.Campbell@Campbellguin.com)

      Caroline Smith Gidiere (Caroline.Gidiere@Campbellguin.com)

      Nicholas J. DiCarlo (ndicarlo@dcmplaw.com)

      Christopher A. Caserta (ccaserta@dcmplaw.com)

      C. Edward Dobbs (ced@phrd.com)

      Ronald T. Coleman, Jr. (rtc@phrd.com)

      Rufus T. Dorsey, IV (rtd@phrd.com)

David Mullin

**Plaintiffs First Request for Production to PwC**

# EXHIBIT "A"

## REQUEST FOR PRODUCTION OF DOCUMENTS FROM PRICEWATERHOUSECOOPERS LLP

## I.    DEFINITIONS

The following terms and definitions shall apply to the documents being requested pursuant to this request for production of documents:

1.    **"Document"** is used in its broadest sense and means any attempts to record or transmit information or knowledge and includes the original and all drafts of a writing, and includes, without limitation, any and all written, printed or computer-related words, data or information, including without limitation any writing or recording of any type or description, whether written, printed or recorded (mechanically or electronically), or reproduced by hand, and whether or not produced or created by PwC, including without limitation all letters; correspondence; telegrams; memoranda; notes; records; reports; financial statements; statistical and financial records; minutes; memoranda; notice or notes of meetings; telephone or personal conversations or conferences or other communications; envelopes; interoffice, intraoffice or intracompany communications; microfilm; microfiche; tape recordings; videotapes; photographs; bulletins; studies; plans; analyses; notices; computer records; runs; programs or software and any codes necessary to comprehend such records, runs, programs or

software; books; pamphlets; illustrations; lists; forecasts; brochures; periodicals; charts; graphs; indices; bills; statements; files; data compilations; calendars; diaries; reports and notebooks; opinions or reports of consultants; and any other written, printed, typed, recorded or graphic matter, of any nature, however produced or reproduced, including copies and drafts of such documents, and any and all handwritten notes or notations thereon in whatever form. The term "documents" also includes all data or documentation that is stored in a computer or other storage device and can be printed on paper or tape, such as electronic mail communications, drafts of documents that are stored in a computer or word processor and information that has been input into a computer or other storage device, as well as disks or other materials in which the data or documentation is found.

2.      The words "**relate**" or "**relating**," and/or any variation or derivatives thereof, whether followed by a preposition or not, means in any way directly or indirectly, in whole or in part, relating to, regarding, constituting, concerning, about, pertaining to, referring to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

3.      "**Working papers**" or "**work papers**" means **original** documents

relating to or reflecting any work performed, or evaluations made by, any accountant or accounting firm, or any employee or agent thereof in connection with any audit or auditing activity, performance of any procedures or the rendition of any professional services by them, and includes any document prepared by the client and included in the audit documentation or work papers maintained by any accountant or accounting firm, and includes but is not limited to "working papers" as defined in Section 339 of the American Institute of Certified Public Accountants Codification of Statements on Auditing Standards (AU 339). To the extent that any "work papers" are in electronic form, the term includes native versions of such electronic documents.

4.    "**Person**" includes individuals, corporations, partnerships, groups, and organizations and associations of whatever nature, their agents, representatives, successors, assigns, subsidiaries, parents, employees and related persons or entities.

5.    "**Communication**" includes without limitation every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, mail, personal delivery or otherwise, including but not limited to letters, correspondence, electronic mail, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements

Plaintiffs First Request for Production to PwC

and other understandings.

6. **"Colonial" or "Bank"** means Colonial Bank of Montgomery, Alabama, and subsidiaries.

7. **"CBG"** means Colonial BancGroup, Inc.

8. **"PwC"** means PRICEWATERHOUSECOOPERS LLP, its predecessor firms, and its affiliates, subsidiaries, partners, employees, staff, subcontractors, agents and any other person acting on behalf of or at the request of PwC.

9. **"Crowe"** means CROWE HORWATH LLP, its predecessor firms, and its affiliates, subsidiaries, partners, employees, staff, subcontractors, agents and any other person acting on behalf of or at the request of Crowe.

10. **"TBW"** means TAYLOR, BEAN, & WHITAKER MORTGAGE CORP., its predecessor firms, and its affiliates, subsidiaries, partners, employees, staff, subcontractors, agents and any other person acting on behalf of or at the request of TBW.

11. **"MWLD"** means Colonial Bank's Mortgage Warehouse Lending Division.

12. **"COLB"** means a loan participation arrangement under which Colonial purportedly purchased a 99% interest in individual mortgage loans.

13. **"AOT"** means Colonial Bank's Assignment of Trade facility and

includes participation interests in loan pools that were to be packaged and securitized for sale in the secondary market.

14.     "**FAS**" means the Financial Accounting Standards promulgated by the Financial Accounting Standards Board.

15.     "**PCAOB**" means the Public Company Accounting Oversight Board.

16.     "**Audit**" includes professional services provided and work performed by PwC pursuant to applicable standards of the American Institute of Certified Public Accountants and integrated audits performed by PwC pursuant to PCAOB Audit Standards No. 2 and No. 5.

17.     "**Your,**" "**You,**" or "**Defendant**" refers to PwC.

18.     "**And**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

19.     "**Any,**" "**all,**" "**each**" **or** "**every**" means any and all, each and every.

20.     "**Complaint**" means the Second Amended Complaint by FDIC-R against PwC, Case No. 2:12-cv-00957-WKW, pending in the United States District Court for the Middle District of Alabama, Northern Division.

21.     "**Answer**" means PwC's Answer to the Complaint.

22.     "**Statement**" means any written or oral pronouncement of anyone, memorialized or preserved in any manner (electronically, mechanically or

otherwise), signed or unsigned, under oath or unsworn, as well as any notes taken of the pronouncement.

23.    **"Writing" or "written"** means any handwriting, typewriting, printing, photostating, photographing, electronic image, computer storage or printout, and every other means of recording, production, or reproduction upon any tangible thing, and shall include any form of representation, including letters, words, pictures, sounds, symbols, or any combination thereof.

24.    **"Action"** means this consolidated lawsuit, CASE NO. 2:12-CV-957-WKV, pending in the United States District Court for the Middle District of Alabama, Northern Division.

25.    **"Florida State Court Litigation"** refers to that certain lawsuit styled *Taylor, Bean & Whitaker Plan Trust vs. PricewaterhouseCoopers, LLP*, Case No. 13-33964 CA 01 (40), pending in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida.

26.    **"Alabama Securities Litigation"** refers to that certain lawsuit styled *In re Colonial BancGroup, Inc. Securities Litigation*, Case No. 2:09-CV-00104-RDP-WC, pending in the District Court of the United States for the Middle District of Alabama.

## II.    **INSTRUCTIONS**

The following instructions apply to this document request:

Plaintiffs First Request for Production to PwC

1.     All documents that respond, in whole or in part, to any portion of the requests in Section III below are to be produced in their entirety, including all attachments and enclosures.

2.     All documents shall be produced in the order and in the manner that they are kept in the usual course of business or shall be organized and labeled to correspond with the categories of this request.  Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label or other means of identification of such cover or other container shall be attached to the document.

3.     Unless otherwise specified, the discovery sought relates to the period from 2002 to the present.  All documents relating to this period, whenever prepared, are to be produced, including all documents relating to audits, consulting services or internal control issues which were not issued in final form.

4.     If any document otherwise responsive to any request was, but is no longer, in the possession of or subject to the control of PwC, or is no longer in existence, state whether:

     a. It is missing or lost;
     b. It has been destroyed;
     c. It has been transferred voluntarily to others; or
     d. It has been otherwise disposed of.

5.     In each instance related to Instruction No. 4, explain the

circumstances surrounding such disposition and identify the person or persons directing or authorizing its destruction or transfer, and the date or dates of such direction or authorization.   Identify each document (*e.g.*, letter, memorandum, telegram, chart, photograph, etc.) by listing its author, author's address, date, subject matter, whether the documents (or copies) are still in existence, and if so their present location or locations and custodian or custodians.

6.   Electronic records and computerized information should be produced in its native format together with a sufficient description of the system or program from which each was derived to permit rendering the material intelligible. Working papers and other documents prepared, reviewed, and/or maintained electronically by PwC should be produced in their native electronic format such that the document has the same functionality as that available to PwC and will thus provide the same functionality in regards to accessing the documents migrating through and between the documents, copying the files/documents, and enabling the print formatting of the documents.

7.   Any document called for herein that PwC claims to be privileged against discovery on any ground shall be identified by giving the following:

    a. general type of document, i.e., letter, agreement, memorandum, report, miscellaneous note, etc.;
    b. date;
    c. author;
    d. organization, if any, with which the author was then connected;

    e.  addressee or recipient;
    f.  other distributees;
    g.  organization, if any, with which the addressee, recipient or distributee
        were then connected;
    h.  general summary of the subject matter;
    i.  grounds for refusal to produce such document; and
    j.  present location of such document and each copy thereof known to
        PwC including the title, index number and location, if any, of the file
        in which the document is kept, or the file from which such document
        was removed if removed for the purpose of this case, and the identity
        of all persons responsible for the filing or other disposition of the
        document.

8.      The singular includes the plural and vice versa.   The masculine
includes the feminine and neuter genders and vice versa.   The past tense includes
the present tense and vice versa where the clear meaning is not distorted by change
of tense.   In addition, references to any services provided by PwC to either
Colonial, the Bank, MWLD or CBG shall be interpreted so as to include any such
services that PwC provided to any one or more of these entities.

9.      "And" and "or" should be interpreted as "and/or," both conjunctively
and disjunctively, to ensure the broadest disclosure of information.

10.     "Any," "all," "each" or "every" means any and all, each and every.

11.     To the extent that any documents or other materials responsive to this
Request for Production are subject to a confidentiality agreement, protective order
or similar restriction on disclosure, the response should include a copy of the
restriction that prohibits disclosure in order that the FDIC-R may determine

**Plaintiffs First Request for Production to PwC**

whether it should become party to such agreement, subject itself to such order or execute an appropriate authorization to facilitate the production of protected materials.

### III.   REQUESTS FOR PRODUCTION TO PWC

1.    All documents, including statements of policy, operating procedures, manuals, handbooks, checklists, programs or training guides, related to any of the following:

    a. PwC's policies or procedures for accepting engagements;

    b. PwC's policies or procedures in regard to the auditing or examination of entities (including financial institutions) that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, and mortgage securities purchased under agreements to resell, including without limitation PwC's policies and procedures approving sales accounting treatment under FAS 140, any predecessor Financial Accounting Standard to FAS 140 (including but not limited to FAS 125) and any other applicable Financial Accounting Standard;

    c. PwC's policies or procedures with respect to assignment of personnel to engagements;

    d. PwC's policies or procedures for the review of the work papers of audits and other types of engagements;

    e. PwC's policies or procedures for the resolution of difference of professional opinion among members of the auditing staff or among other members or employees of PwC;

    f. PwC's internal procedures for identifying and resolving issues relating to appropriate professional standards, including without limitation Auditing Standards ("AS") and related professional practice standards established by the PCAOB, Generally Accepted Auditing Standards or Generally Accepted Accounting Principles;

    g. PwC's policies and procedures related to the rendering of unqualified opinions;

h. PwC's policies and procedures related to the rendering of qualified opinions;

i. PwC's policies and procedures relating to going concern modifications in audit opinions;

j. PwC's administrative manuals in effect from 2002 through 2009;

k. PwC's audit practice manuals in effect from 2002 through 2009;

l. PwC's industry accounting and auditing manuals for entities (including financial institutions) that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, securities purchased under agreements to resell in effect from 2002 through 2009, and origination, purchase, and servicing of mortgage loans;

m. PwC's industry accounting and auditing manuals relating or referring to FAS 140 and any predecessor Financial Accounting Standard to FAS 140 (including but not limited to FAS 125) in effect from 2002 through 2009;

n. PwC's continuing education manuals in effect from 2002 through 2009; and

o. Copies of any PwC internal publications, including guidance to practitioners, or bulletins relating to the financial service industries issued from 2002 through 2009, including specifically the items described in subparagraphs k., l. and m. above.

2.      The personnel file (current to the date of these Requests) for each

PwC partner, manager, senior staff accountant or other professional auditing or

accounting personnel who spent in excess of fifteen (15) hours in any year

providing services to CBG and/or Colonial from 2005 through 2009, and all

documents related to the professional qualification, experience or competency of

such persons.  This request includes but is not limited to: resumes, performance evaluations, college transcripts, post-graduate education transcripts, continuing professional education courses and seminars, performance reviews, evaluations, and records relating to any disciplinary action taken against any PwC partner, manager, senior staff accountant or any other professional who worked on the Colonial engagement.

3.    All documents related to any disciplinary proceedings or inquiries undertaken by the PCAOB, American Institute of Certified Public Accountants, U.S. Securities and Exchange Commission, and/or any state or federal agency, commission or board responsible for the professional regulation of the accounting profession with respect to the conduct of PwC or any of its partners, agents, representatives or employees in connection with services rendered to any entity in the financial services industry.

4.    All marketing materials, including proposals to provide professional services, disseminated by PwC relating to its experience, competence, qualifications or reliability in performing audits of financial institutions that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, or securities purchased under agreements to resell from 2002 through 2009.

5.     All data disks, electronic data, and specific PwC-developed program disks for all computerized audit applications used in the audits of CBG and/or Colonial, including but not limited to the following applications:

    a. Sales accounting treatment under FAS 140 of Colonial's COLB facility; and

    b. Confirmation requests to third parties.

6.     All documents related to the standards PwC applieswhen auditing or opining on the financial statements of entities (including financial institutions) that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, or securities purchased under agreements to resell. This should include any interpretations by PwC of the Generally Accepted Accounting Principles as they apply to the above-mentioned institutions.

7.     All PCAOB Inspection Reports (all parts of such report, including the public and non-public portions of the Report and any comments made by PwC on the Report and/or drafts of the Report), peer review reports, if any, related to PwC's audits (including integrated audits performed pursuant to PCAOB AS No. 2 and AS No. 5) of entities (including financial institutions) that specialize in mortgage warehouse lines of credit, mortgage loans held for sale, or securities purchased under agreements to resell, and any peer reviews related to the audits of CBG or Colonial.  This request includes both internal and external reviews or inspection reports, including without limitation internal reviews and/or evaluations

conducted by PwC involving audits worked on by members of the CBG audit teams from 2005 through 2009.

8.    All documents related to the criteria applied by PwC in considering for the retention and/or promotion of its professional staff for the period of 2002 through 2009.

9.    All documents related to the method used by PwC to compensate its partners and principals engaged to work for Colonial for the period 2005 through 2009.

10.    All external communications or newsletters issued by PwC relating to the mortgage lending industry for the period of 2005 through 2009.

11.    All internal communications (excluding email) issued by PwC relating to the mortgage lending industry for the period 2005 through 2009.

12.    All PwC email relating to its audit of the financial statements of CBG, and its subsidiaries, including without limitation Colonial for the year ended December 31, 2007 and its review of the financial statements of CBG and/or Colonial for the quarter ending March 31, 2008, including all email relating to Colonial's COLB and AOT facilities, accounting for hedging activities (FAS 133), sales treatment accounting (FAS 125 and FAS 140), application and measurement of the fair value of mortgage assets (FAS 65), and consulting or other professional

services provided in regards to assisting CBG and/or Colonial in responding to inquiries and/or examination reports from state and/or federal regulators.

13.     All PwC email relating the sales accounting treatment of COLB loans as set forth in Paragraphs 49 – 54 of the FDIC-R's Complaint from 2005 forward.

14.     All PwC email referencing or referring to Lee Farkas, Desiree Brown, Cathie Kissick and Teresa Kelly (f/k/a Teresa Carrier) from 2005 forward.

15.     All PwC emails relating to the TBW fraud against Colonial (the TBW fraud is described in Paragraphs 13 – 21 of the Complaint) from 2005 forward.

16.     All documents, including internal publications prepared by PwC or any of its practice groups, discussing developing problems in the financial markets in the mid-2000s, audit risks relating to such problems, the consequences to the housing, mortgage banking, and financial services industries (particularly companies providing home financing and/or operating in the secondary market), and PwC's response to addressing such increased risks in regards to providing audit services, particularly audits of financial institutions dealing with mortgages and mortgage-backed securities from 2006 forward.

17.     All documents, including work papers (to the extent not already produced), internal manuals and procedures, and communications, regarding the review of internal controls (including integrated audits performed pursuant to PCAOB AS No. 2 and AS No. 5) and the review of work done by internal auditors

Plaintiffs First Request for Production to PwC

(including Crowe in connection with its provision of internal audit services to CBS and/or Colonial) on behalf of CBG and/or Colonial from 2005 through 2009.

18.    All documents, including work papers (to the extent not already produced), internal manuals and procedures, and communications, regarding the review and confirmation of mortgage loans held for sale (i.e., the COLB facility) and securities purchased under agreements to resell and held as trade pools (i.e., the AOT facility) from 2005 forward.

19.    All documents, including work papers, internal manuals and procedures, and communications, regarding the confirmation of account balances.

20.    All documents, including work papers (to the extent not already produced), internal manuals and procedures, and communications, regarding material confirmation discrepancies discovered during an audit, and any documents or communications regarding an escalation to the national office of any questions regarding material confirmation discrepancies.

21.    All documents, including work papers (to the extent not already produced), internal manuals and procedures, and communications, detailing the proper procedure for the application of sales treatment accounting applied to the transfer of financial assets (i.e. FAS 125 and FAS 140), or any escalation to the national office of questions regarding accounting applied to the transfer of financial assets from 2005 forward.

Plaintiffs First Request for Production to PwC

22.    All work papers (including any indices thereof) (to the extent not already produced), related to the preparation or conduct of any annual, quarterly, interim special or other compilation, review, agreed upon procedures or audit by PwC related to CBG and/or Colonial, whether or not procedures were completed or an opinion or report was issued.    The FDIC requests PwC to produce both the originals or all hard copy work papers for inspection and a color copy that reproduces all hard copy work papers as they appear in PwC's.

23.    All correspondence related to CBG and/or Colonial from 2005 forward.

24.    All diaries, logs, expense reports or any other documents related to appointments, meetings, telephone conferences or other activities of PwC agents, employees or personnel who billed more than 15 hours to engagements for CBG and/or Colonial or any of their officers, directors or employees from 2005 forward.

25.    All notes or memoranda of meetings or telephone conferences related to CBG and/or Colonial between partners, employees or agents of PwC or Crowe and officers, directors, employees, attorneys or other representatives of CBG and/or Colonial.

26.    All communications between any specialist, consultant or expert that PwC retained or contemplated retaining related to CBG and/or Colonial, and all

documents related to any report or memorandum prepared by any specialist, consultant or expert that in any form relates to CBG and/or Colonial.

27.    With respect to all professional services PwC rendered to CBG and/or Colonial:

    a. All billing files, time budgets, budgets to actual analysis, client billing sheets, work-in-progress reports, billing adjustments, time sheets, and all similar documents having to do with the gathering, recordation, compilation or billing of fees and expenses to CBG and/or Colonial for both audit and non-audit services and management consultant services, including all disputes thereof; and

    b. All audit time summaries and diaries.

28.    Each invoice, statement or bill for services submitted to CBG and/or Colonial by PwC, and all records related to payment thereof.

29.    With respect to all professional services PwC rendered to CBG and/or Colonial:

    a. All documents regarding PwC's audit plan of CBG or Colonial, including any special considerations given to Colonial's mortgage warehouse lending division;

    b. All documents relating to PwC's audit of the financial statements of CBG and/or Colonial for the year ending December 31, 2007;

    c. All documents relating to PwC's review of the financial statement of CBG and/or Colonial for the quarter ending March 31, 2008;

    d. All documents regarding PwC's assessment of risks and/or evaluation of the business environment in which Colonial operated relating to the effect the deteriorating credit market would have on Colonial and

consequently on PwC's audits and/or reviews of CBG and/or Colonial's financial statements;

e. All documents relating to PwC's review of Crowe's work product, including but not limited to Crowe's review of the AOT facility and COLB facility and Crowe's identification and evaluation of the effectiveness of internal controls relating to the AOT facility and COLB facility;

f. All documents regarding PwC's investigation of the material confirmation discrepancy between TBW's and CBG and/or Colonial's books, as set forth in Paragraph 45 of the Complaint;

g. All documents relating to any decision made by Crowe and/or PwC to not test all or any part of CBG and/or Colonial' s AOT facility's loan collateral and/or account balance;

h. All documents relating to Crowe's review and reconciliation of CBG and/or Colonial's AOT facility loan collateral and/or account balance;

i. All documents regarding Crowe's response and assessment of risks and deficiencies that they observed and/or were identified by CBG and/or Colonial;

j. All documents regarding PwC's review of aged TBW loans and loans shipped but not paid for in CBG and/or Colonial's COLB facility;

k. All documents regarding PwC's sales accounting treatment applied to the purported purchase and sale of Colonial's COLB loans;

l. All documents related to the reliance by PwC (during its audits and or reviews of CBG and/or Colonial's financial statements) on the work performed by Crowe, the scope of Crowe's engagement to provide internal audit services to CBG and/or Colonial, including but not limited to whether a review of CBG and/or Colonial's AOT facility was within the scope of this engagement;

m. All communications between PwC and the Board of Directors and/or Audit ommittee of CBG and/or Colonial; and

n. All communications between PwC and any federal or state regulatory agency, including without limitation, the Office of the Comptroller of Currency, the Federal Deposit Insurance Corporation, and the Alabama Department of Banking, relating to Colonial.

30.   With respect to the affirmative defenses asserted in your answer: All documents supporting each and every one of PwC's affirmative defenses.

31.   A copy of your document retention policies in effect from 2005 to the present, a copy of all litigation holds or similar instructions either related to CBG or Colonial or otherwise directed to PwC personnel who provided services to CBG or Colonial that would have altered the document retention policies in effect, and documents sufficient to identify the persons responsible for administering PwC's document retention policies and litigation holds from 2005 to the present.

32.   All documents produced by PwC to other parties in the Florida State Court Litigation.

33.   All transcripts and video recordings of depositions taken by any party in the Florida State Court Litigation.

34.   Any documents obtained from or produced by TBW or any other entity in response to requests for production, request for admission, interrogatories, or subpoenas issued by PwC in the Florida State Court Litigation.

35.   All documents produced by PwC to other parties in the Alabama Securities Litigation.

36.     All transcripts and video recordings of depositions taken by any party in the Alabama Securities Litigation.

37.     Any documents obtained from or produced by any party or any non-party in response to requests or subpoenas from PwC in the Alabama Securities Litigation.