# EXHIBIT D

# King & Spalding

King & Spalding LLP
1700 Pennsylvania Ave, NW
Washington, D.C. 20006-4707
Tel: (202) 737-0500
Fax: (202) 626-3737
www.kslaw.com

Meredith Moss
(202) 626-2916
mmoss@kslaw.com

August 10, 2015

Anthony W. Kirkwood
Mullin Hoard & Brown, LLP
Amarillo National Plaza Two, Suite 800
500 South Taylor, Lobby Box #213
Amarillo, Texas 79101-2445

      Re:    *FDIC v. PwC and Crowe Horwath*, Case No. 2:12-cv-957-WKW

Dear Mr. Kirkwood,

      I write in response to your August 5, 2015 letter (the "August 5 Letter"). As a threshold matter, the August 5 Letter demanded that PwC produce documents in eight broad categories within three business (five calendar) days. That is simply not enough time for PwC to collect, review for relevance and privilege, and produce the documents the August 5 letter requests, and your artificial deadline does not represent a good-faith attempt to meet-and-confer on the topics in the letter. Nonetheless, PwC is working diligently to collect and review the documents as discussed below, and we will do our best to produce relevant, nonprivileged documents as quickly as we can.

      As you know, PwC has produced to the Federal Deposit Insurance Company as Receiver for Colonial Bank (the "FDIC-R") approximately 3.9 million pages of documents. In its July 21, 2015 letter (the "July 21 Letter") to the FDIC-R, PwC provided a detailed, 20-page index of its production, including the custodian and search terms that were used to search PwC's ESI for the documents it produced. PwC also provided to the FDIC-R a list detailing information about timekeepers who billed time to CBG-related matters for 2002 through 2009. The FDIC-R has requested ESI searches of additional custodial data and has submitted additional search terms to PwC, which have been the subject of several discussions in recent days, and as to which the ball is in the FDIC-R's court at the moment.

      The August 5 Letter also complains that PwC was not as forthcoming as the FDIC-R wished during the negotiation of the ESI protocol in this case several months ago. PwC does not believe your complaints are valid, and, moreover, they ignore the extensive, detailed information that PwC has provided during the nearly dozen telephone conferences you and I have had in the past two months, as well as the 10 pages of written information on document retention, preservation, and production topics that I provided you in my July 21 Letter.

August 10, 2015
Page 2

In response to the specific categories of documents requested in the August 5 Letter, PwC responds as follows:

(1) <u>Documents sufficient to show invoice amounts and payments</u>: This request asks PwC to produce documents containing information that the FDIC-R already has, or should have, in its possession. During the relevant period, PwC sent those invoices *to* CBG, and I understand the FDIC-R has possession of these documents or systems containing this type of information, and CBG is the entity that paid those invoices. The FDIC-R should have preserved documents sufficient to show this information, including invoices and account/ledger information reflecting the transactions. The request that PwC produce information that should already be in the FDIC-R's possession begs the important question of whether the FDIC-R took appropriate steps to preserve documents relevant to its claim against PwC. While PwC is not averse to producing information from its billing system that is sufficient to show invoice amounts and payments, and indeed began gathering that information last week and expects to produce it later this week, PwC requests that the FDIC-R describe, in writing, the steps it took to preserve all documents related to invoices sent by and payments made to PwC, and confirm in writing that all such documents in the FDIC-R's possession, custody or control have been produced. If those documents have not yet been produced, PwC requests that the FDIC-R produce them in a reasonable timeframe. I ask that you send the written description of the preservation steps and an estimate of when we can expect to receive any additional documents not yet produced by August 17.

(2) <u>Internal manuals, guidance, and training material</u>: Your August 5 Letter complains that the FDIC-R has had to identify "for PwC" what documents it seeks on these topics. Again, your letter ignores the record. First, PwC objected to the FDIC-R's overbroad requests for these materials. Second, months ago, PwC produced the Tables of Contents for the PwC Audit Manual, which is the primary resource for the audit practice, and certain selections of those manuals. I have repeatedly offered to produce any other relevant sections of the PwC Audit Manual that you request based on your review of the Tables of Contents; the FDIC-R has not asked for a single document in response to my offer. As for the PwC Audit Tips & Tools, when you raised this issue we agreed that PwC could produce a listing of all the Tips & Tools issued in the relevant time period, and that you would then review that list, identify any relevant documents you wanted produced, and that PwC would do so. I sent you the list on August 3 and have heard nothing since. PwC remains willing to produce any relevant documents from that list that the FDIC-R requests, but because many of those documents are facially irrelevant to the FDIC-R's claims and PwC's defenses, it would be unduly burdensome for PwC to have to produce them all. I reiterate my offer to produce any relevant documents from that universe of guidance that the FDIC-R identifies.

August 10, 2015
Page 3

(3) <u>ESI from additional custodians</u>: PwC is willing to produce responsive, non-privileged ESI from the custodians for the periods set forth in your letter that is located after a reasonable search and review process. PwC had already begun the process of collecting ESI from Jason Leitner, Woody Wallace, and Thomas Pirolo in response to your earlier request for ESI from these custodians, and PwC is in the process of determining what ESI is available for the other four custodians. As I believe you know, Tim Kviz left PwC in 2005. Because there was no obligation to preserve his Colonial-related documents, if any, at the time of his separation from the firm, his ESI was not retained. I will provide an update later this week on the expected timeframe for production for the other custodians requested in your letter. PwC objects to your request that PwC produce all ESI associated with these custodians, whether or not it relates to PwC's audits of Colonial. As we have repeatedly informed you, PwC will not produce documents related to work done for other clients, both because they are irrelevant to the issues in this case and because the documents contain highly confidential, protected information, which is the subject of ethical and contractual confidentiality obligations that PwC owes to those other clients.

(4) <u>National Office documents</u>: As your letter states, PwC has produced the documents related to consultations between its Colonial engagement teams and PwC's National Office located after a reasonable search. PwC objects to producing documents related to FAS 140 consultations between the National Office and engagement teams working on the audits of *other clients*. As with Request No. 3 above, such documents are irrelevant and almost certainly include highly sensitive, confidential information about other clients, including clients currently regulated by the FDIC. Redaction of other client names, which you suggest, would be insufficient to protect this confidential information, and would not change the irrelevance of these non-Colonial consultations.

(5) <u>PCAOB Inspections</u>: PwC will not produce documents relating to any PCAOB inspection of any client.

(6) <u>Expense reports</u>: PwC is willing to produce documents sufficient to show expenses associated with the Colonial engagements incurred by the custodians listed in your letter. It has begun gathering that information. I expect to be able to produce these documents by the end of the week.

(7) <u>Correspondence relating to CBG or Colonial Bank</u>: PwC has produced literally millions of pages of correspondence responsive to this request. As the July 21 Letter and the indices attached to it make clear, PwC has searched for and produced correspondence and other documents from multiple repositories, including over 100 PwC professionals' email accounts. This new, overbroad request to produce "correspondence" for a five-year

August 10, 2015
Page 4

    period suggests the FDIC-R has done little to evaluate and review the substantial correspondence PwC has already produced. As I have told you in a number of teleconferences during the past two months, if after a review of PwC's prior productions, the FDIC-R believes that certain additional correspondence should be produced, PwC invites the FDIC-R to make specific, targeted requests for additional responsive correspondence. PwC objects to this vast, untargeted request for five years of correspondence when PwC has already produced to you an enormous amount of such correspondence.

(8) PwC is not aware of any peer reviews performed relating to its audits of The Colonial BancGroup, Inc.'s financial statements for the period 2002 through 2009.

If you would like to discuss anything in this letter, please don't hesitate to call me.

                              Sincerely,

                              Meredith Moss