IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN,<br><br>    Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>    Defendants. | Case No. 2:11-cv-00746-WKW<br>LEAD CASE |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,<br><br>    Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>    Defendants. | Case No. 2:12-cv-00957-WKW |

**RESPONSE OF PRICEWATERHOUSECOOPERS LLP TO THE FDIC'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

    PricewaterhouseCoopers LLP ("PwC") has produced millions of pages of documents to the FDIC. Throughout discovery, PwC has responded in good faith to the FDIC's requests for additional information and has timely produced responsive, non-privileged documents relating to PwC's financial statement audits of Colonial BancGroup Inc. and Colonial Bank ("Colonial").

    Notwithstanding this, the FDIC now seeks an order compelling PwC to produce three categories of documents that have nothing to do with PwC's audits of Colonial's financial

statements (PCAOB materials, audit workpapers, and "National Office" documents related to PwC's other clients).  In addition to being irrelevant, these documents are protected from disclosure by a federal statute, PwC's ethical obligations to its thousands of other clients – none of which is involved in this lawsuit in any way – and/or privileges held by those clients themselves.  Moreover, the burden on PwC to search for these irrelevant, confidential and/or privileged documents would be immense.

As for the fourth category (PwC manuals, guidance, and training materials), PwC produced thousands of pages of such documents months ago, it has responded quickly to several follow-up requests from the FDIC for more material, and it has told the FDIC it will respond to additional, targeted requests in the future.  The FDIC's Motion to Compel ("Motion") is premature in this regard.

The Court should deny the Motion in its entirety.

**ARGUMENT**

PwC has responded in good faith to the FDIC's document requests for the past nine months.  The FDIC requested that PwC produce documents falling into **70 categories**.  *See* Ex. A to FDIC's Motion (FDIC's request for production of documents, listing 37 requests containing 33 sub-parts).  PwC has produced approximately 3.9 million pages of documents in response to these requests.  The FDIC's complaint in this case alleges deficiencies in PwC's December 31, **2007** financial statement audit of Colonial and subsequent quarterly reviews; PwC has produced documents going back as far as January 1, **2002**.  PwC has produced its audit working papers from its financial statement audits of Colonial; email, other electronic documents, and desk files collected from more than 100 individual PwC professionals associated with its work for Colonial; documents from PwC's National Office related to Colonial; documents related to

2

PwC's acceptance of Colonial as a client; and time records and personnel evaluations for PwC professionals who worked on the Colonial engagements. PwC has also produced documents from its Audit Manual and other internal guidance.

Nearly all of the documents the FDIC seeks in its Motion have nothing to do with PwC's audits of Colonial's financial statements. They are irrelevant to this lawsuit, and nearly all of them are protected by one or more statutory or common law prohibitions on discovery. The FDIC's Motion should be denied in its entirety.

I. **THE PCAOB MATERIALS SOUGHT ARE PROTECTED BY STATUTE AND HAVE NO BEARING ON THE AUDITS OF COLONIAL.**

The FDIC's first request is for "all documents relating to PCAOB inspections or investigations from 2005 through present involving CBG, Colonial Bank, *FAS 140, the detection of fraud, or the obtaining of sufficient competent evidential matter to afford a reasonable basis for an opinion regarding the financial statements under an audit*." Mot. at 9 (emphasis added). The last three categories (highlighted above) seek documents that have nothing to do with PwC's financial statement audits of Colonial.

A federal statute, however, prohibits discovery of these documents in civil litigation in state or federal court. Indeed, counsel for PwC is not aware of any court that has ever ordered an audit firm to produce such documents.

By way of brief background, the Sarbanes-Oxley Act of 2002 created the Public Company Accounting Oversight Board (PCAOB), and states that "all documents and information prepared or received by or specifically for the Board" in connection with PCAOB inspections or investigations "shall be confidential and privileged as an evidentiary matter" and "*shall not be subject to civil discovery or other legal process*" in "*any proceeding in any Federal or State court* or administrative agency." 15 U.S.C. § 7215(b)(5)(A) (2015) ("Section

3

105(b)(5)(A)") (emphasis added). The PCAOB is principally charged with setting standards for auditors to follow in their audits of public company financial statements. It is empowered to conduct inspections and investigations of registered audit firms to assess compliance with auditing standards.

When Congress established the PCAOB, providing confidentiality and a specific privilege for the inspection and investigation processes was of utmost importance to "expedite and vastly improve the review, investigatory, and disciplinary processes." *See Accounting Reform and Investor Protection: Hearing on S. 2673 Before the S. Comm. On Banking, Housing, and Urban Affairs*, 107th Cong. 724 (2002) (Statement of Shaun F. O'Malley). Congress created that protection from disclosure in Section 105(b)(5)(A) of the Sarbanes-Oxley Act, which states:

> [A]ll documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection under section 7214 of this title or with an investigation under this section, ***shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency, and shall be exempt from disclosure*** . . . .

15 U.S.C. § 7215(b)(5)(A) (emphasis added).

The FDIC's request flies in the face of this statutory prohibition. Broadly speaking, the FDIC seeks documents related to: 1) PCAOB inspections or investigations of PwC's audits of the financial statements of *its other clients*; and 2) any PCAOB inspection or investigation of PwC's audits of Colonial. Neither request is proper.

First, most of what the FDIC seeks has **nothing to do with the audits of Colonial's financial statements**, the only audits at issue in this litigation. The FDIC seeks documents from *all* PCAOB inspections or investigations of *all* PwC clients, over a ten-year period, that relate to a widely applicable accounting principle (FAS 140), or to auditing standards applicable to every

4

financial statement audit that PwC performs (the auditor's consideration of the risk of fraud, and the auditor's obligation to obtain sufficient audit evidence to support its opinion).

Only three courts in the country (none in the Eleventh Circuit) have addressed this statutory prohibition since the passage of the Sarbanes-Oxley Act in 2002.[1]  All of those decisions acknowledge the statutory prohibition, and **none** supports granting the FDIC's broad request for PCAOB-related documents that have nothing to do with any inspection or investigation of PwC's Colonial audit engagements.  Indeed, none of them even mentions PCAOB-related documents that relate to audit clients whose financial statements are not at issue in the case.  *See SEC v. Goldstone*, 301 F.R.D. 593, 620-21 (D. N.M. 2014) (describing the scope of documents requested, all of which were focused only on the company at issue in the case); *Bennett v. Sprint Nextel Corp.*, No. 11-9014-MC-W-ODS, 2012 WL 4829312, at *1 (W.D. Mo. Oct. 10, 2012) (same); *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2010 WL 4659535, at *1 (N.D. Ill. June 29, 2010) (same).

Moreover, that the FDIC's allegations in this case are arguably similar to the deliberately vague statements in parts of some of public PCAOB reports (Mot. at 8) in no way makes underlying PCAOB documents related to **other clients** relevant, much less justifies violating the statutory prohibition against discovery of those documents.  As discussed below, no two audits are alike, and the views of the PCAOB's inspectors regarding PwC's actions in other clients' financial statement audits are simply irrelevant to the question for the jury in **this** case:  whether PwC complied with PCAOB standards in its audits of **Colonial's** financial statements.  The

---

[1] There have, of course, been far more than three lawsuits in which accounting firms have been sued and responded to discovery requests in the past thirteen years, and even more suits in which accounting firms have been the subject of non-party discovery (as the decisions in the three cases to have considered the Sarbanes-Oxley prohibition all were).  But it is just not common for plaintiffs to so clearly and aggressively ignore the plain language of a federal statute, as the FDIC does here.

FDIC's offer to redact client names is neither an acceptable work-around nor one permitted by the statutory prohibition.

The FDIC invites this Court to be the first in the country, so far as we are aware, to order an accounting firm to produce PCAOB-related documents that have nothing to do with the financial statements at issue in the case. The Court should not issue such an order.

Second, as to the FDIC's request for documents related to any inspection or investigation by the PCAOB of PwC's Colonial audits, the statutory prohibition on discovery of PCAOB documents prevents the FDIC from obtaining them as well. Contrary to the FDIC's Motion, the case law on this topic is far from settled in the FDIC's favor. *Silverman*, the first decision in time, permitted a limited production by the audit firm there, but did not require the audit firm to produce documents that were not "prepared specifically for" the PCAOB. *Silverman*, 2010 WL 4659535, at *2-5.

The court in *Bennett v. Sprint Nextel Corp.*, the next court to consider the statutory prohibition, declined to follow the *Silverman* court's reasoning in several respects. 2012 WL 4829312, at *3-6. In *Bennett*, the court noted that "documents from the underlying transaction or work that is the subject of the investigation" were not protected from discovery, and noted that the audit firm had already produced those documents. *Id.* at *1-2. Here, PwC has produced its audit workpapers and millions of pages of email and other documents relating to its financial statement audits of Colonial, as *Bennett* dictates. But the court held that if those documents were delivered to the PCAOB as part of an inspection, "the fact that they were delivered" is privileged, and thus, here, the FDIC is not entitled to discovery of information on that topic. *Id.* at *2. The court found that "direct communications with the PCAOB are privileged and should not be produced." *Id.* at *5. The court also held that "internal [audit firm] communications that

6

discuss confidential questions or comments made by the Board or reflect [the audit firm's] development of responses to Board inquiries are also protected," including drafts of documents that were ultimately provided to the Board's staff. *Id.* at *4. Further, the court held that "[a]ny spreadsheets including data prepared specifically for the Board, and any information revealing specific questions or inquiries from Board members and drafts and final versions of [the audit firm's] responses to those questions or inquiries are also privileged and should not be produced." *Id*. at *5. The court ordered production of only a very limited set of internal audit firm documents that did not "reveal any of the aforementioned privileged information, including, but not limited to, spreadsheets including data prepared specifically for the Board or any information revealing specific questions or inquiries from the Board and drafts and final versions of [the audit firm's] responses to those questions or inquiries." *Id.*

The court in *S.E.C. v. Goldstone* concurred with *Bennett's* reasoning in large part, holding that the "PCAOB Privilege protects [the audit firm's] communications with the PCAOB regarding the investigation, documents submitted to the PCAOB regarding the investigation or in response to the PCAOB's inquiries, and drafts of those two categories." 301 F.R.D. at 668-69. The 84-page decision in *Goldstone* was principally devoted to plaintiffs' attempt to obtain documents reflecting the SEC's communications with the PCAOB and the audit firm at issue there, which is not at issue here. *See id.* at 599-600.

Thus, while the cases cited by the FDIC suggest that some very limited universe of PCAOB-related documents specifically related to Colonial might be discoverable, the better rule – far more faithful to the language of the statute than the judicially-created ones announced by these three courts – is that all of the documents described in the statute, and sought by the FDIC in its over-broad request here, are protected from civil discovery.

7

In short, the FDIC's broad request for ten years' worth of PCAOB materials, almost all of which are unrelated to the financial statement audits of Colonial, is flatly prohibited by federal statute and seeks documents that have no bearing on the issues in this case.

## II. AUDIT WORKPAPERS AND NATIONAL OFFICE DOCUMENTS RELATED TO OTHER PwC CLIENTS ARE IRRELEVANT, CONTAIN CONFIDENTIAL CLIENT INFORMATION, AND WOULD BE UNDULY BURDENSOME TO SEARCH FOR AND PRODUCE.

The next two categories in the FDIC's Motion seek documents that have nothing to do with PwC's financial statement audits of Colonial. The FDIC seeks documents related to *any* financial statement audit PwC performed for *any other client* across a nine-year period if the audit involved topics that are similar to those in the FDIC's complaint. The FDIC's Motion seeks "documents and ESI relating to other clients" (Section D of the Motion)[2] and National Office documents and related audit workpapers relating to FAS 140 (Section B of the Motion).

The FDIC's Motion as to both categories should be denied because (1) the documents are irrelevant; (2) the documents are protected from disclosure; and (3) identifying and producing them would be unduly burdensome.

### A. Documents Related to Other Clients Are Irrelevant, and Would Create Confusing and Wasteful Sideshows in this Case.

The issue the jury will decide at trial in this case is whether PwC, in its audits of *Colonial's* financial statements, complied with the professional standards governing auditors. Evidence of what PwC did in connection with another company's financial statement audit has no bearing on whether PwC complied with professional standards in the Colonial audit. That

---

[2] The "request" in Section D of the FDIC's Motion is so broad lacking in particularity that it should be denied on that basis alone. *See* Fed. R. Civ. P. 34(b)(1)(A); *Sewell v. D'Allessandro & Woodyard, Inc.*, No. 2:07-cv-343-FtM-29SPC, 2011 WL 843962, at *2 (M.D. Fla. March 8, 2011). To the extent it provides *any* detail, it simply refers back to the FDIC's request that PwC produce documents from the financial statement audits of other PwC clients who had absolutely no relationship to Colonial; that evidence is irrelevant for the reasons explained in this brief.

evidence is irrelevant, would be inadmissible at trial, and, were it admitted, would risk creating a series of sideshows during discovery, pretrial briefing, and trial.

No two audits are alike.  Each audit client and each financial statement audit is different, and comparing them one to another other is worse than irrelevant – it invites confusion and distraction.  A "compare and contrast" exercise between PwC's actions in the Colonial audits and its actions in other audits that also involved a particular accounting standard (FAS 140), or a particular auditing standard (an auditor's responsibility to consider the risk of fraud, or to obtain sufficient audit evidence) would force the Court, the parties and the jury to devote significant amounts of time and resources to discussing and analyzing audits that are ***not the subject of any claim or defense in this case***.  Such evidence is irrelevant, and will be inadmissible at trial.

The FDIC does not cite a single case in which a court has ordered an auditing firm to produce documents related to other audit clients simply because those other audits involved an accounting standard (or its application) that is also at issue in the subject case.  That omission is not driven by a lack of case law on point; instead, the on-point case law supports PwC.

For example, in *Williamson v. PricewaterhouseCoopers LLP*, No. 602106/2004, 2006 WL 6544389, at *3-5 (N.Y. Sup. Nov. 13, 2006), the trustee sought documents relating to eight PwC audit clients *other* than the client at issue because those audits likewise involved an accounting standard at issue in the trustee's case.  *Id.* at *2-3.  Like the FDIC here, the trustee there argued that the documents showed PwC's "practices, policies, and procedures" for auditing clients in "similar situations," particularly with respect to the alleged accounting errors and auditing failures that it believed PwC made during its audit of the plaintiff-entity.  *Id.* at *4.

The court rejected the trustee's arguments and denied the motion to compel.  The court found that the documents sought were "totally unrelated to the audits in issue." *Id*. at *5.

9

There, as here, the allegation was that "the PWC audits were not conducted in accordance with generally accepted auditing standards and that PWC ignored material errors in the financial statements that it audited of the Fund's investments year after year. Whether unrelated audits of hedge funds were conducted in accordance with the same standards is irrelevant to the issue of whether PWC ignored material errors in the [plaintiff-entity's] financial statements." *Id.* at *6.

The court explained that "audits are unique and no two are alike," and that the audits of the unrelated clients thus "would have little semblance to the PWC audits of the [plaintiff entity]." *Id.* (internal quotations and citations omitted). The court further pointed out that, "if anything, the unrelated audits will tend to obscure, rather than sharpen the issues for trial." *Id.*; *see also Cal. Pub. Employees Retirement Sys. v. Arthur Andersen LLP*, Case No. 2:97-cv-1899 PHX-RCB(WKU), Doc. No. 302, at 2-4 (D. Ariz. June 9, 2009) (denying motion to compel production of irrelevant audit files of unrelated client and explaining that a "baseline needs to be established by industry standards, not by the actions of one auditor in one audit, and the comparison of two separate audits"), attached as Ex. A.

By contrast, the cases on which the FDIC relies do not involve auditors or accounting, and are also distinguishable on other grounds. The FDIC's cases involve standard contracts or insurance policies where terms were uniform across counterparties or policyholders.[3]

---

[3] *See Hock Foods, Inc. v. William Blair & Co.*, L.L.C., No. 09-2588-KHV, 2011 WL 884446, at *5-6 (D. Kan. Mar. 11, 2011) (relevance of extrinsic evidence of substantially similar agreements with uniform terms regarding calculation of consideration); *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 24-25 (D. Conn. 2008) (relevance of extrinsic evidence in contracts containing the same provisions to determine meaning of provision in parties' contract); *Sunrich, Inc. v. Pac. Foods of Oregon, Inc.*, No. Civ. 01-1108-HA, 2003 WL 21088528, at *5 (D. Or. Mar. 4, 2003) (contracts with uniform pricing provisions); *Westport Ins. Corp. v. Wilkes & McHugh, P.A.*, 264 F.R.D. 368, 371-73 (W.D. Tenn. 2009) (relevance of uniform policies of insurance coverage); *Parkdale Am., LLC v. Travelers Cas. & Sur. Co. of Am.*, Civil No. 3:06CV78-R, 2007 WL 3237720, at *4-5 (W.D.N.C. Oct. 30, 2007) (ordering production of other documents related to insurance contracts with uniform, boilerplate provisions and claims).

Moreover, the FDIC is wrong in presenting as uniform the case law involving similar requests to non-auditor defendants. Courts have rejected requests for documents that relate to situations "similar" to the issues in a lawsuit, finding those requests to be over-reaching. *See, e.g., Slate v. ABC, Inc.,* 274 F.R.D. 350 (D. D.C. 2011) (holding that a request for all documents relating to all allegations of copyright infringement against the defendant broadcasting network, which the plaintiff accused of copyright infringement, was outside the scope of proper discovery); *Lykes v. Yates*, 77 A.3d 27, 32 (Pa. Super. Ct. 2013), *appeal denied*, 92 A.3d 812 (Pa. 2014) (in a medical malpractice case, denying request for documents reflecting the doctor-defendant's treatment of other patients because actions in prior medical cases involving different patients with different risks were not relevant).

The FDIC has not pointed to a single court that has found that documents relating to audits of *other clients'* financial statements are discoverable in a lawsuit against an auditor about a single company's financial statement audit. The Court should reject the FDIC's invitation to so find.

### B. Documents Related to Other Clients are Protected from Disclosure by PwC's Ethical Obligations, and by Some States' Laws on Privilege.

Documents relating to PwC's work for its other clients are likely to contain confidential information about those other clients. Other clients' confidential information is protected from disclosure in discovery by several restrictions.

First, while Alabama does not have a statutory or common law accountant-client privilege, many, many other states do, including Florida, Georgia, and Tennessee. PwC serves clients in all of these states, and PwC's clients are the holders of the accountant-client privilege; if their protected communications with PwC are to be disclosed in this lawsuit, those clients could seek relief from this Court to protect their privileged information. Redaction of client

11

names again would be insufficient to protect the confidential information about those clients' businesses and transactions contained in the documents and, if ordered, would require a vast undertaking.

Second, the FDIC's request implicates the attorney-client privilege held by PwC's other audit clients. The main topic of the FDIC's "other client" requests is FAS 140. FAS 140 accounting can sometimes involve an audit client getting a legal opinion from a lawyer, which is then often given to the client's outside accounting firm. The FDIC itself has asserted attorney-client privilege with respect to legal advice given to Colonial by its lawyers regarding FAS 140. PwC has respected the FDIC's privilege claim by not producing the documents as to which the FDIC has claimed privilege in other litigation regarding Colonial in which PwC is involved. PwC would likewise respect privilege claims asserted by its other audit clients whose documents the FDIC is seeking here. The result will be privilege fights across the country, needlessly wasting the time and money of countless courts and companies having no involvement whatsoever in this litigation.

Third, the ethical standards governing auditors require PwC to keep its client's information confidential. PwC, like virtually all audit firms, is a member of the American Institute of Certified Public Accountants, which sets ethical standards for its members. Ethical Rule 301 states that "A member in public practice shall not disclose any confidential client information without the specific consent of the client." Alabama adopted this rule in Chapter 30-X-6.01 of the Administrative Code: an accounting firm "shall not disclose any confidential information obtained in the course of a professional engagement except with consent of the client." Practically speaking, obtaining consent from other audit clients, who are in no way involved in this lawsuit, for PwC to produce their documents to the FDIC is highly unlikely.

### C. Documents Related to Other Clients Would Be Unduly Burdensome to Search for and Produce.

For the period 2002 through 2009, the time period for which the FDIC is seeking documents, PwC maintains on its servers approximately 139,449 separate, distinct audit workpaper databases, containing 8.69 terabytes of data, which works out to billions pages of audit working papers. PwC maintains the vast majority of its documents, including audit workpapers, in records systems that are driven by client names and numerical client codes. It does not sort and index its documents according to accounting standard, or audit standard, or topical issue. There is no way to search across the databases in the archived state in which they are maintained.

To determine whether those workpaper databases contain information related to FAS 140, or any of the other "topics" on which the FDIC seeks information about non-Colonial audits, each and every one of those approximately 139,449 databases would have to be copied off a server, opened, and searched and reviewed for documents within it relating to that topic.

This does not even begin to consider other forms of electronic data, such as email. During the same period, PwC employed over 88,000 people. Only a tiny, tiny fraction of them (approximately 537 people) worked on engagements for Colonial (audit and tax engagements) in the period 2002-2009, and documents maintained by the most relevant of those custodians, identified after a reasonable search, have already been produced.

Further, the FDIC's argument the documents sought can be "easily obtained from" a National Office database maintained by PwC is wrong – and mischaracterizes what the FDIC is actually asking for. PwC's "National Office" refers a group of several hundred PwC professionals who serve as a resource to PwC's auditors on accounting and auditing issues. The FDIC's request encompasses documents from all of the audits in which a PwC audit professional

13

consulted with PwC's National Office – the FDIC essentially wants to use the National Office database as a place to identify *other* hugely burdensome searches it wants PwC to conduct. But the FDIC fundamentally misstates the purpose and functionality of the National Office database (indeed, its description of the search functionality of the National Office database contains not a single evidentiary basis or citation). The FDIC's request for "National Office documents" is really a request for audit documents, workpapers and the like, from audits in which the PwC professionals working on those other audits consulted with the National Office. Searching for broad topics as the FDIC suggests, such as "proper application of sales treatment accounting for the transfer of financial assets" (Mot. at 10), would require searching some unidentified subset of that universe of approximately 139,449 databases containing audit workpapers from the relevant time period.

No court of which we are aware has ever ordered an accounting firm to conduct a search for documents (see above) that is anything close to what the FDIC seeks here.

### D. PwC Has Already Produced Relevant Colonial Documents from its National Office.

PwC has already produced National Office documents that relate to its audits of Colonial's financial statements. The PwC professionals who worked on the Colonial audits consulted with professionals in the National Office on several issues during the period 2002-2009. PwC produced to the FDIC approximately 171 National Office documents reflecting consultations between PwC's National Office and the PwC professionals working on the Colonial engagements. PwC has also produced dozens of emails reflecting or relating to consultations between the Colonial engagement team and National Office professionals.

That is all that the FDIC is entitled to in discovery in this case. Nonetheless, the FDIC now asks the Court to order PwC to produce National Office documents relating to *any* FAS 140

issue that arose at any *other audit client* – not Colonial – across the firm over a nine-year period. Mot. at 13. And to the extent those documents exist at the National Office, the FDIC goes further and seeks production of all documents from those audit engagements (*i.e.*, documents maintained by the audit engagement team, rather than by PwC's National Office) for *other clients* addressing FAS 140. *Id*. All of the above points apply: such documents are irrelevant, protected from disclosure, and searching for, reviewing, and producing them would be hugely burdensome.

**III.   AS TO PwC'S INTERNAL MANUALS, GUIDANCE, AND TRAINING MATERIALS, THE FDIC'S MOTION IS UNNECESSARY AND PREMATURE.**

The FDIC's Motion to compel the production of "internal manuals, guidance and training materials" (Mot. at 13-15) ignores that PwC has produced thousands of pages of its internal manuals, guidance, and training materials, and, more important, ignores that PwC and the FDIC are – even now – engaged in a productive meet-and-confer process that will result in PwC producing even more documents.

On December 9, 2014, less than a week after the FDIC served its document requests on PwC, PwC produced the complete Tables of Contents to its Audit Manual for every year in the period 2002 through 2008. The Audit Manual is the primary internally-prepared resource for PwC's audit professionals. It is general in nature, of course, and many sections are wholly irrelevant to the FDIC's claims in this case (*e.g.*, sections relating to manufacturing or technology clients). In the interest of efficiency and relevance, PwC offered that if the FDIC would identify relevant sections of the Audit Manuals it would like, PwC would produce them. Four months passed, and in early April 2015, PwC produced to the FDIC over 13,000 pages of sections of these Audit Manuals that were requested by the plaintiff in another lawsuit related to PwC's audits of Colonial. During telephone calls and in writing this summer, PwC again offered

15

to produce additional relevant sections of the Audit Manual if the FDIC would identify which ones it wanted.  *See, e.g.,* Ex. D to FDIC's Mot. at 2.

The FDIC has never asked PwC to produce a single page from any of the Audit Manuals whose Tables of Contents the FDIC has had for nine months.  Instead, it filed this Motion.

More recently, the FDIC asked PwC to produce documents referred to as "Tools & Tips," which contain PwC-prepared guidance on specific topics.  Consistent with its approach to the Audit Manuals, PwC produced an index of the available documents.  In contrast to its approach to the Audit Manuals, the FDIC did select certain selections that it wanted PwC to produce, and PwC promptly did so.  Before the FDIC filed its Motion, PwC informed the FDIC that it was working to identify additional materials, and on September 3, PwC produced an index listing 3,438 items related to its Learning and Development courses, and again offered that if the FDIC would identify a reasonable number of items it wanted, PwC would conduct a search for documents associated with those items and produce the documents it located as a result of that search.  *See* Sept. 3, 2015 Bassett letter, attached as Ex. B.  Simply put, the fact discovery process – which has nearly six months left in which to develop evidence – is working.  The FDIC's Motion is premature.

## CONCLUSION

The FDIC's Motion should be denied in its entirety.

Respectfully submitted, this 10th day of September, 2015.

/s/ Meredith Moss
Meredith Moss
(Washington, DC Bar No. 484108)
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Washington, DC  20006-4707
Telephone:  (202) 626-2916

16

Facsimile:   (202) 626-3737
Email:       mmoss@kslaw.com
   -and-
Tabor Robert Novak, Jr.
tnovak@ball-ball.com
**BALL BALL MATTHEWS & NOVAK PA**
P.O. Box 2148
Montgomery, AL  36102-2148
   -and-
Elizabeth V. Tanis
etanis@kslaw.com
Drew D. Dropkin
ddropkin@kslaw.com
James N. Gorsline
jgorsline@kslaw.com
Juanita Passyn Kuhner
jkuhner@kslaw.com
David Tetrick, Jr.
dtetrick@kslaw.com
KING & SPALDING, LLP
1180 Peachtree Street, NE
Atlanta, GA  30309
   -and-
Geoffrey Michael Ezgar
gezgar@kslaw.com
KING & SPALDING LLP
601 South California Avenue
Palo Alto, CA  94304
   -and-
James P. Cusick
jcusick@kslaw.com
Richard T. Marooney, Jr.
rmarooney@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY  10036-2601
   -and-
Bradley J. Lingo
blingo@kslaw.com
KING & SPALDING LLP
100 N. Tryon Street, Suite 3900
Charlotte, NC  28202

**ATTORNEYS FOR DEFENDANT
PRICEWATERHOUSECOOPERS LLP**

17

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 10, 2015, a true and exact copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all counsel of record:

Rufus T. Dorsey, IV
Ronald T. Coleman, Jr.
C Edward Dobbs
PARKER, HUDSON, RAINER & DOBBS, LLP
285 Peachtree Center Avenue, NE
1500 Marquis Two Tower
Atlanta, GA 30303
rtd@phrd.com
rtc@phrd.com
ced@phrd.com
*Attorneys for Plaintiffs*

Jonathan C. Medow
Stanley J. Parzen
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
jmedow@mayerbrown.com
sparzen@mayerbrown.com
*Attorneys for Defendant Crowe Horwath, LLP*

Christopher A. Caserta
Nicholas J. DiCarlo
DICARLO CASERTA MCKEIGHAN PLC
6900 E. Camelback Road, Suite 250
Scottsdale, AZ 85251
ccaserta@dcmplaw.com
ndicarlo@dcmplaw.com
*Attorneys for Plaintiffs*

James Harold Anderson
COPELAND, FRANCO, SCREWS & GILL, P.A.
P.O. Box 347
Montgomery, AL 36101-0347
anderson@copelandfranco.com
*Attorney for Defendant Crowe Horwath, LLP*

Andrew P. Campbell
Justin G. Williams
Caroline Smith Gidiere
CAMPBELL GUIN WILLIAMS GUY & GIDIERE
520 N. 20th Street, Suite 2000
Birmingham, AL 35203
Andy.Campbell@Campbellguin.com
Justin.Williams@Campbellguin.com
Caroline.Gidiere@Campbellguin.com
*Attorneys for Plaintiffs*

Dennis Bailey
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
P.O. Box 270
Montgomery, AL 36101-0270
drb@rushtonstakely.com
*Attorney for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*

| | |
|---|---|
| David Mullin<br>John M. Brown<br>John G. Turner, III<br>Robert Bell<br>Clint R. Latham<br>Richard Biggs<br>Anthony W. Kirkwood<br>MULLIN, HOARD & BROWN, LLP<br>500 South Taylor, Suite 800<br>Amarillo, TX 79101<br>dmullin@mhba.com<br>jmb@mhba.com<br>jturner@mhba.com<br>rbell@mhba.com<br>clatham@mhba.com<br>rbiggs@mhba.com<br>tkirkwood@mhba.com<br>***Attorneys for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*** | Matthew Jason Ford<br>BAILEY & GLASSER, LLP<br>3000 Riverchase Galleria, Suite 905<br>Birmingham, AL  35244<br>mford@baileyglasser.com<br>***Attorney for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank***<br><br><br><br><br><br><br>*s/Meredith Moss*<br>Meredith Moss (NY Bar No. 4076246;<br>DC Bar No. 484108)<br>*admitted pro hac vice* |