# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

```
FILED ___ LODGED
RECEIVED ___ COPY
JUN - 9 1999
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY
```

| | |
|---|---|
| CALIFORNIA PUBLIC EMPLOYEES RETIREMENT SYSTEM; DOMINION FUND III: DOMINION HOLDINGS; POMONA CAPITAL; S.P. VENTURE CAPITAL, L.P.; S.P. OFFSHORE VENTURE CAPITAL, L.P.; and SOF VENTURE CAPITAL, L.P., <br><br>Plaintiffs, <br><br>vs. <br><br>ARTHUR ANDERSEN LLP, an Illinois limited liability partnership, <br><br>Defendant. <br><br>ARTHUR ANDERSEN LLP, an Illinois general partnership registered as a limited liability partnership, <br>Third-Party Plaintiff, <br><br>vs. <br><br>NATIONAL IPF COMPANY, et al., <br><br>Third-Party Defendants. | No: CIV 97-1899 PHX-RCB(WKU) |

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF CERTAIN DOCUMENTS REQUESTED IN REQUEST
NO. 53 OF PLAINTIFFS' FIRST REQUEST FOR PRODUCTION

The object of the motion is to compel Arthur Andersen "to produce its audit files for audits it performed for Western Acceptance Corporation ("WACO") (Plaintiffs' Motion to Compel Production of Certain Documents Requested in Request No. 53 of Plaintiffs' First Request for Production, p. 1). The plaintiffs are "only seeking production of the workpapers for the audits Arthur Andersen performed for WACO for the fiscal years ending December 31, 1991, and December 31, 1992." *Id.* p. 2.

WACO, according to the assertions of the motion, was a public insurance premium finance company located in Las Vegas and operated in a similar fashion to NIPF. It employed



Arthur Andersen as its independent auditors. The motion says:

> Arthur Andersen issued audited financial statements which were qualified with a "going concern" qualification. When an auditor believes there is doubt as to the financial viability of the entity, the auditor is required to disclose those doubts, and often will include a "going concern" qualification in its auditor's opinion letter. AU § 341.02. The "going concern" qualification is intended to place the company, its board of directors, and its present and potential investors on notice as to the financial difficulties the entity faces. Id. §§ 341.12-.13. . . .

Arthur Andersen objected on the grounds that the documents are not relevant or reasonably calculated to lead to the discovery of admissible evidence in this action; the request is vague, ambiguous, unintelligible and overboard; and the requested materials are privileged under the law of Nevada, where the audit occurred.

I do not rely upon the objection of privilege. *Memorial Hospital for McHenry County v. Shadur,* 664 F. 2d 1058 (7th Cir. 1981), has an interesting analysis of the issue of the effect of a state privilege statute in a case arising under a federal statute. Also the objection that the request is vague, ambiguous, unintelligible and overbroad no longer prevails, because the original Request No. 53 has been shaved to a slimmer and more precise request. However, I do credit the first objection, because I conclude that the requested discovery is beyond the scope of Rule 26(b) of the Federal Rules of Civil Procedure, which states:

> Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> (1)    . . . Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . . [which] need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The plaintiffs' argument for relevance is stated by them as follows:

> As previously demonstrated, these documents are relevant to Arthur Andersen's knowledge, scienter, intent and (at the very least) negligence–for instance, if it employed more stringent procedures in auditing WACO than it did in auditing NIPF, which was in far worse financial condition (if not much worse) than WACO, a presumption of at least negligence would emerge.

(Plaintiffs' Reply Memorandum of Law in Support of Their Motion to Compel Production of Certain Documents Requested in Request No. 53 of Plaintiffs' First Request for Production, p. 2) That statement is unpersuasive. I adopt, rather, the position of Arthur Andersen, which it states as follows:

The issue in this case is whether Arthur Andersen's audit of NIPF complied with professional standards. Whatever might have been done or not done on an unrelated audit is completely irrelevant to the issue of the quality of Arthur Andersen's NIPF work. Plaintiffs have not cited any case, and we are aware of none, where a court ordered an accounting firm defendant to produce workpapers from an unrelated engagement. . . .

Nevertheless, plaintiffs argue that the WACO audited financial statements included a "going concern qualification" and they suggest that the WACO documents *might somehow* reveal that Arthur Andersen should have provided a "going concern qualification" on the NIPF audited financial statements. As an initial matter, the complaint does not allege that Arthur Andersen should have issued a going concern qualification. . . . Even assuming that there were allegations of the complaint alleging that a going concern qualification was necessary here, the issue is whether a going concern qualification was required for NIPF under all the facts of that audit, not whether some other company at some other time should have had or did have a going concern qualification. . . . (Italics in original.)

(Arthur Andersen LLP's Response to Plaintiffs' Motion to Compel Production of Certain Documents Requested in Request No. 53 of Plaintiffs' First Request for Production, p. 3).

Finding that Arthur Andersen employed "more stringent procedures" in auditing WACO than it did in auditing NIPF would not tend to prove that what Arthur Andersen did in auditing NIPF did not meet the applicable professional standards, nor does it appear that the information sought is reasonably calculated to lead to the discovery of admissible evidence. The plaintiffs argue that "the WACO work papers can be used as a baseline by the Court or the experts to demonstrate Arthur Andersen's divergence from GAAP and GAAS when performing the NIPF audits, as compared to the WACO audits in Nevada. I do not think that is likely. A baseline needs to be established by industry standards, not by the actions of one auditor in one audit, and the comparison of two separate audits do not establish an industry standard.

The only case cited by either side that involved the issue of discovery of details of prior audits by a party is *In Re One Bank Securities Litigation*, 134 F.R.D. 4 (D. Me. 1991). Production was denied without explanation other than that the requests for "numbers 20 and 23 . . . are overly broad and do not seek relevant evidence or information reasonably calculated to lead to admissible evidence." *Id.* at 11.

There has been considerable discussion in the briefs about whether WACO documents were or were not forwarded to NIPF by Arthur Andersen and whether Steve Comer of Arthur Andersen did or did not work on both the NIPF and the WACO audits. The plaintiffs' showing in that respect is too weak to be meaningful in support of its position. The document presented as evidence does not tend to prove that he worked on the NIPF audit. Furthermore, whether some WACO documents were or were not furnished to NIPF goes nowhere in determining the proper ruling on the pending motion.

IT IS ORDERED that:

1. Arthur Andersen LLP's Motion for Leave to File Sur-Reply to Plaintiffs' Motion to Compel Production of Certain Documents Requested in Request No. 53 of Plaintiffs' First Request for Production *Instanter,* filing 273, is denied as moot; and

2. the Plaintiffs' Motion to Compel Production of Certain Documents Requested in Request No. 53 of Plaintiffs' First Request for Production, filing 241, is denied.

Dated June 7, 1999.

BY THE COURT

_____
United States Senior District Judge