IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN, <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, <br><br> Defendants. | Case No. 2:11-cv-00746-WKW |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK, <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, <br><br> Defendants. | Case No. 2:12-cv-00957-WKW |

THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER
FOR COLONIAL BANK'S REPLY TO PWC'S RESPONSE TO THE FDIC-R'S
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM
PRICEWATERHOUSE COOPERS LLP AND BRIEF IN SUPPORT THEREOF

## I.  INTRODUCTION

PricewaterhouseCoopers LLP ("PwC") refuses to produce (1) non-privileged and relevant documents relating to inspections of PwC by the Public Company Accounting Oversight Board ("PCAOB") that involve specific allegations in this case; (2) relevant documents from PwC's National Office addressing FAS 140, an accounting standard the FDIC-R alleges was

{1198/00/01107734.DOCX / 1}                                                             1

violated at PwC's direction and one on which the National Office was consulted in connection with the audit of Colonial Bank ("Colonial"); (3) relevant internal manuals, guidance, and training materials addressing specific allegations in this case; and, (4) relevant and responsive documents and ESI relating to other clients of PwC.

PwC's response consists of little more than (1) unsupported claims of undue burden; (2) a misreading of the federal statute concerning the discoverability of PCAOB documents; (3) reliance on a Special Referee Decision and Order that was subsequently reversed, resulting in an order requiring PwC to produce documents of other audit clients; (4) incomplete and misleading citations to PwC's ethical obligations; and (5) unsubstantiated claims that the FDIC-R's request for PwC's internal guidance and training materials are premature, despite the passage of nearly a year since the documents were first requested.

In its opposition, PwC attempts to shift attention away from its failure to produce highly relevant information by portraying itself as a victim in the discovery process. As an initial matter, most of the documents produced by PwC in this case are simply a reproduction of documents produced in other matters—much of which was required by this Court's prior Order.[1] And while PwC claims the FDIC-R's requests are unreasonable, its own discovery requests belie that position. For example, PwC complains that the "FDIC requested that PwC produce documents falling into *70 categories.*" *See* Response at 2 (emphasis in original) (referring to 37 requests containing 33 sub-parts). However, PwC fails to mention that it requested documents falling into *125 categories*—**and that does not include additional categories created by PwC's definitions.** *See* Ex. A (PwC's Request for Documents, consisting of 96 requests for

---

[1] Apart from those documents, the vast majority of documents produced were only produced after repeated requests from the FDIC-R and only to the extent that the FDIC-R identified potentially responsive documents in PwC's possession. In fact, PwC resisted providing any type of index to its production for many months and to this day the FDIC-R does not know what was done by PwC to collect documents and ESI, as PwC has asserted that such information is privileged.

{1198/00/01107734.DOCX / 1}  2

production and 29 subparts). PwC also tells the Court that it has produced approximately 3.9 million pages of documents, *see* Response at 2, yet PwC has demanded, and the FDIC-R has produced, approximately 9.5 million pages of documents and is in the process of producing roughly 800,000 additional documents demanded by PwC. In any event, none of this changes the fact that PwC has been improperly refusing to produce relevant documents. As demonstrated below, PwC should be ordered to produce PCAOB documents, National Office documents, and internal manuals, guidance and training materials, regardless of whether those documents refer to clients other than Colonial.

## II. ARGUMENT

### A. PwC's offers no evidence to support its claims of undue burden.

PwC offers no competent evidence that producing responsive documents would be unduly burdensome. *See* Response at pp. 2, 8, 13-14. As such, PwC's undue burden claims fail. The law is clear that a party objecting to discovery on the basis of burden must establish that burden through competent evidence—not the unsupported assertions of counsel. As this Court and others have held, "[u]nder well-settled law, the party resisting production bears the responsibility of establishing undue burden." *Coker v. Duke & Company*, 177 F.R.D. 682, 686 (M.D. Ala. 1998) (citing *G-69 v. Degnan*, 130 F.R.D. 326, 331 (D. N.J. 1990)). "Generally, a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden." *Id.*; *see also Rosen v. Provident Life & Acc. Co.*, __ F.R.D. __, 2015 WL 4139024 at *6 (M.D. Ala. July 10, 2015); *Weber v. Finker*, 2008 WL 1771822, *5 (M.D. Fla. 2008); *FTC v. Nationwide Connections, Inc.*, 2007 WL 2462015, *2 (S.D. Fla. 2007); *Border Collie Rescue, Inc. v. Ryan*, 2005 WL 662724, *2 (M.D. Ala. 2005). "'An objection must show specifically how a [discovery request] is overly

broad, burdensome, or oppressive by submitting evidence or offering evidence which reveals the nature of the burden.'" *Id.* (citing *Chubb Integrated Sys. Ltd v. National Bank of Washington*, 103 F.R.D. 52, 59-60 (D. D.C. 1984); *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642 (7th Cir. 1995)). The resisting party must make a particular and specific demonstration of fact and cannot rely on simple conclusory assertions about the difficulty of complying with a discovery request. *Id.* (citing *Twin City Fire Ins. v. Ford Motor Co.*, 124 F.R.D. 652 (D. Nev. 1989)).

In its opposition, PwC failed to support its alleged burden with any competent evidence. PwC submits no affidavits and offers no other evidence demonstrating undue burden. Instead, PwC merely relies on the unsupported and unsubstantiated statements of its counsel. Accordingly, the Court should reject PwC's claims of undue burden.

**B. PCAOB Materials are discoverable.**

PwC does not cite a single case in support of its position that the PCAOB privilege justifies its refusal to produce **any** documents relating to PCAOB investigations that address issues directly relevant to this case. Nor does PwC claim that the audits referred to in the public versions of the PCAOB reports do not relate to those issues. Ultimately, PwC admits that the three cases cited by the FDIC-R "suggest that some very limited universe of PCAOB-related documents specifically related to Colonial might be discoverable." Response at 7. PwC, however, asks this Court—with no support other than a tortured reading of the statute that has been rejected by every court to address it—to hold that the PCAOB privilege protects all documents relating to PCAOB investigations.

The only way to reach the conclusion sought by PwC is to **ignore** the plain language of the statute. The statute clearly limits its protection to "all documents and information **prepared or received by or specifically for the Board.**" *See* 15 U.S.C. § 7215(b)(5)(A) (emphasis

{1198/00/01107734.DOCX / 1}  4

added). In fact, before claiming that its twisted interpretation of the statute is more faithful to the plain language of the statute and the interpretation of the three federal courts to address it, PwC itself cites this limitation on the privilege. *See* Response at 3. In short, PwC has offered no justification for its blanket refusal to produce documents relating to PCAOB investigations. Accordingly, the FDIC-R requests that the Court order PwC to produce PCAOB documents as set forth in its Motion to Compel.

### C. National Office Documents

PwC contends that it should not have to produce relevant National Office documents, claiming irrelevance, privilege, and undue burden. As demonstrated below, each of these contentions fails and, as such, PwC should be ordered to produce National Office documents relating to the application of sales treatment accounting to the transfer of financial assets (i.e. FAS 125 and FAS 140).

#### 1. The documents requested are relevant to the issues in this case.

PwC claims that documents from its National Office are irrelevant to this case and asserts that the only relevant documents are documents from the audit of Colonial. Yet PwC does not dispute that the National Office provides consulting services to PwC auditors during an audit, like what happened here on the sales accounting issue. Nor does PwC dispute that the National Office has a database that is searchable. A key issue in this case involves PwC's advice and guidance relating to the application of sales treatment accounting. To the extent PwC's National Office has documents addressing sales treatment accounting, they are relevant to PwC's beliefs and practice, as well as the guidance it gives its auditors on that topic.

PwC contends that "the FDIC has not pointed to a single court that has found that documents relating to audits of *other clients'* financial statements are discoverable in a lawsuit

against an auditor about a single company's financial statement audit." *See* Response at 11. PwC then claims that "on-point case law supports PwC" with respect to this issue and cites a Special Referee Decision and Order from one of its own cases, *Williamson v. PricewaterhouseCoopers LLP*, No. 602106/2004, 2006 WL 6544389 (N.Y. Sup. Nov. 13, 2006) (the *"PwC* decision"). *See* Response at 9. In describing the *PwC* decision,[2] however, PwC fails to inform the Court that this decision was later ***reversed***. Nor does PwC tell the Court that PwC was ordered to produce work papers relating to other clients' audits as a result of that reversal. *See Williamson v. PricewaterhouseCoopers LLP*, Index No. 602106/2004 (N.Y. Sup. Feb. 21, 2007) (Special Referee Decision and Order attached hereto as Ex. B). In short, PwC's statements regarding the lack of support for the FDIC-R's position are contradicted by the very case it relies upon[3] Finally, as discussed in the Motion, there are additional cases ordering the production of documents relating to other persons or clients in other contexts. *See* Motion at 12-13.

## 2. Documents relating to other clients are adequately protected.

PwC objects to producing relevant documents from other clients' audits claiming that these materials may be confidential or privileged and purportedly would cause "privilege fights across the country, needlessly wasting the time and money of countless courts and companies having no involvement whatsoever in the litigation." Response at 12. PwC offers no support for these conclusory statements.

---

[2] Although PwC refers to this as a "court" decision and order, it is a Special Referee Decision and Order.

[3] In *Williamson*, the Special Referee learned that the Audit Manual did not provide specific guidance as how to test valuations and the plaintiff raised a disputed fact of whether PwC's experts' opinions were seemingly at odds with the Audit Manual. Here, while the FDIC-R has not received expert reports or deposed PwC's experts, PwC admits that its Audit Manual is general in nature. *See* Response at 15. In addition, it appears that PwC's witnesses intend to rely on their own exercise of "judgment" rather than the Audit Manual itself to support their decisions on key issues in this case. Thus, like the plaintiff in *Williamson*, the FDIC-R should be allowed to explore inconsistencies between the manner in which PwC addressed these issues in the Colonial audit and other audits. As noted in the Motion, the FDIC-R has already provided one example of another financial institution's audit that involved FAS 140 and the issues in this case.

{1198/00/01107734.DOCX / 1} 6

In fact, the case PwC relies on in support of its "other client" arguments clearly rejects PwC's confidentiality concerns. In *Williamson*, the Special Referee stated: "I reject PWC's contention of confidentiality of the requested documents as there is a confidentiality agreement between the parties, regardless of the lack of consent by the non-party Hedge Funds. I also reject PWC's ambiguous claims that the requests are over broad, burdensome and oppressive. It fails to articulate a basis for those claims." *Williamson*, 2006 WL 6544389 at p. 5. Here, as in *Williamson*, there is a Protective Order in place that protects the confidentiality of documents produced in this case. Significantly, PwC does not claim that the Protective Order is in any way insufficient to protect these documents. Accordingly, the Court should order production of responsive documents.

PwC also makes a blanket attorney-client privilege claim as to documents relating to PwC's other clients. PwC supports this claim with a reference to the fact that the FDIC-R has claimed privilege with respect to a limited subset of documents involving communications between Colonial and its lawyers. This does not in any way support PwC's blanket refusal to produce any responsive documents. To the extent responsive documents involve communications between a client and its lawyers, PwC can assert the attorney-client privilege, as the FDIC-R did, and list those documents on its privilege log.

Ultimately, PwC seeks to improperly protect all responsive documents—regardless of privilege—by claiming that there may be a privilege as to some of those documents. PwC does not, however, provide any information to support its privilege assertions. To the extent there are responsive documents that PwC believes are protected by the attorney-client privilege, there is a procedure for addressing that—Rule 26(b)(5) of the Federal Rules of Civil Procedure. PwC does not want to follow this procedure, however, because it does not want to protect potentially

{1198/00/01107734.DOCX / 1}  7

privileged documents—it wants to avoid production of all responsive documents relating to other clients. *See, e.g.*, Ex. C.

Finally, PwC attempts to justify its refusal to produce any documents by claiming that the ethical standards governing auditors require PwC to keep its clients' information confidential. In support of this proposition, PwC cites American Institute of Public Accountants Rule 301 and Rule 30-X-60.1 of the Alabama Administrative Code. PwC claims that these rules prohibit it from producing responsive production because "an accounting firm 'shall not disclose any confidential information obtained in the course of a professional engagement except with the consent of the client.'" Response at 12. PwC ignores the very next sentence in both of these rules, which provides that these rules "shall not be construed to . . . (2) affect in any way [the accounting firm's] compliance with a validly issued subpoena or summons enforceable by order of a court." In short, the ethical rules do not excuse PwC from complying with its obligations to produce documents in this case.

### D. Internal Manuals, Guidance and Training Materials

PwC claims that the FDIC-R's motion "ignores that PwC has produced thousands of pages of its internal manuals, guidance, and training materials, and, more important, ignores that PwC and the FDIC are – even now – engaged in a productive meet-and-confer process that will result in PwC producing even more documents." Response at 15. PwC's position is misleading at best.

As an initial matter, PwC's contention only addresses three types of documents responsive to the FDIC-R's request: (1) the Audit Manual; (2) PwC's Audit Tools & Tips, which PwC only produced after the FDIC-R independently determined that such documents exist; and (3) a 270-page list of training materials that PwC did not provide to the FDIC-R until 9 months

after it was served with the FDIC-R's requests for production and the filing of the FDIC-R's Motion to Compel. It does not address PwC's failure to produce other internal manuals, guidance, or training materials.

PwC justifies its failure to produce responsive documents by asserting that it produced the table of contents for the PwC Audit Manual and "repeatedly offered to produce any other relevant sections of the PwC Audit Manual," yet "the FDIC-R has not asked for a single document in response to [PwC's] offer." *Id.* While this argument has no relevance to whether PwC should produce responsive documents other than provisions from the PwC Audit Manual, it also mischaracterizes the facts surrounding the production of the PwC Audit Manual provisions.

The FDIC-R agreed that, instead of requiring production of PwC's Audit Manual in its entirety, PwC could produce the table of contents and the FDIC-R would identify those sections that it would like produced. The FDIC-R began reviewing the table of contents, which consisted of more than 300 pages, and identified those sections that appeared relevant and necessary for production. On April 1, 2015, however, counsel for the FDIC-R and PwC had a lengthy discussion regarding PwC's productions. *See* Ex. D. A key issue raised by the FDIC-R was the difficulty in determining the nature of the documents PwC had been producing, as the productions consisted of productions made by PwC in the TBW litigation and the FDIC-R was given no information regarding the content of the productions received. *See id.*; *see also* Ex. C. Thus, the FDIC-R requested some type of index or guidance as to those materials. *Id.* Another issue, of particular relevance here, was PwC's statement in the April 1st call that it had already produced portions of PwC's Audit Manual for a period of years through its TBW litigation production. *Id.*

The FDIC-R was unable to locate the referenced production of PwC Audit Manual sections and, after the call, PwC produced approximately 13,000 pages from the 2002-2008 Audit Manuals. *Id.* Because of the volume of production relating to PwC's Audit Manual, the FDIC-R requested some type of index or information as to the sections produced so it could determine if any relevant sections were missing that it needed produced. *Id.* PwC did not produce any information or index as to the contents of that production and the FDIC-R was forced to manually review the production against its list of relevant sections. Ultimately, the FDIC-R determined that the sections it needed had been produced and no additional requests were necessary. This does not, as PwC implies, indicate any lack of effort by the FDIC-R. Instead, it shows the amount of work necessitated by PwC's reliance on productions in other cases to satisfy its production obligations here.

The FDIC-R has only been able to obtain documents in this category by either identifying responsive documents for PwC through its own independent investigation or filing a motion to compel. The Audit Tools & Tips referred to by PwC is a perfect example. In reviewing PwC's documents, the FDIC-R located a document referring to PwC's Audit Tools and Tips. *See* Ex. E at p. 1. In conducting further research to identify the nature of PwC's Audit Tools and Tips, the FDIC-R located another document indicating that the Audit Tools and Tips were something well known within PwC and in relation to which PwC circulated indexes. *See* Ex. F at pp. 7-8. Thus, the FDIC-R learned about the existence of PwC's Audit Tools & Tips only because reference was made to them in a recently produced document. It was only after the FDIC-R identified these materials for PwC that PwC agreed to discuss production of those documents. PwC ultimately provided the FDIC-R with an index listing the Audit Tools and Tips so that the FDIC-R could select what it wanted produced. *See* Ex. G.

As to the index listing the PwC's Learning and Development courses, PwC did provide a list of those courses—but it was only after the FDIC-R filed this motion, which was 10 months after PwC received the FDIC-R's document requests and nearly 5 months after the FDIC-R began specifically requesting such materials, both verbally and in writing. *See* Ex. H; *see also* Exs. C, D.

It is inconceivable that PwC was not aware of its Audit Tools & Tips and its Learning and Development Courses when it received the FDIC-R's requests for production, and there is no excuse for PwC's failure to produce indexes or documents prior to the filing of the FDIC-R's motion to compel. Furthermore, it is not the FDIC-R's duty to identify responsive documents in PwC's possession before production. To the contrary, *Wright & Miller's Federal Practice and Procedure* states that "[e]ven a generalized designation [of information sought] should be sufficient when the party seeking discovery cannot give a more particular description and the party from whom discovery is sought will have no difficulty in understanding what is wanted." § 2211 Designation of Requested Materials, 8B Fed. Prac. & Proc. Civ. § 2211 (3d ed.).

PwC's lack of transparency begs the question of what other responsive materials have not been produced by PwC. Accordingly, the FDIC-R requests that the Court order PwC to produce documents responsive to its requests for internal manuals, guidance, and training materials, or confirm in writing that all such materials have been produced.

### III. PRAYER

The documents the FDIC-R seeks from PwC through this Motion to Compel are relevant and probative of the issues, and are also likely to lead to the discovery of admissible evidence. The FDIC-R respectfully prays that this Court enter an order compelling PwC to produce the documents addressed therein within 20 days of that Order.

Dated:  September 30, 2015.

                Respectfully submitted,

                **RUSHTON, STAKELY, JOHNSTON**
                     **& GARRETT, P.A.**
                Dennis Bailey (4845-171D)
                184 Commerce Street
                Post Office Box 270
                Montgomery, Alabama 36101-0270
                Telephone:   (334) 206-3234
                Facsimile:    (334) 481-0031
                Email:           DRB@rsjg.com

                /s/ John G. Turner, III
                David Mullin (TX Bar No. 14651600)
                *pro hac vice*
                John M. Brown (TX Bar No. 3142500)
                *pro hac vice*
                John G. Turner, III (TX Bar No. 20320550)
                *pro hac vice*
                Robert Bell (TX Bar No. 00787062)
                *pro hac vice*
                Clint Latham (TX Bar No. 24013009)
                *pro hac vice*
                Anthony W. Kirkwood (TX Bar No. 24032508)
                *pro hac vice*
                Richard Biggs (TX Bar No. 24064899)
                *pro hac vice*


                **MULLIN, HOARD & BROWN, LLP**
                500 South Taylor, Suite 800
                Amarillo, Texas  79101
                Telephone:  (806) 372-5050
                Facsimile:   (806) 372-5086
                Email:   dmullin@mhba.com
                          jobrown@mhba.com
                          jturner@mhba.com
                          rbell@mhba.com
                          clatham@mhba.com
                          tkirkwood@mhba.com
                          rbiggs@mhba.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on September 30, 2015, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing as set forth below:

Drew D. Dropkin (ddropkin@kslaw.com)
Elizabeth V. Tanis (etanis@kslaw.com)
James H. Anderson (anderson@copelandfranco.com)
Jonathan C. Medow (jmedow@mayerbrown.com)
Stanley J. Parzen (sparzen@mayerbrown.com)
Tabor R. Novak, Jr. (tnovak@ball-ball.com)
Andrew P. Campbell (Andy.Campbell@Campbellguin.com)
Caroline Smith Gidiere (Caroline.Gidiere@Campbellguin.com)
Justin Glyien Williams (Justin.Williams@Campbellguin.com)
Nicholas J. DiCarlo (ndicarlo@dcmplaw.com)
Christopher A. Caserta (ccaserta@dcmplaw.com)
C. Edward Dobbs (ced@phrd.com)
Ronald T. Coleman, Jr. (rtc@phrd.com)
Rufus T. Dorsey, IV (rtd@phrd.com)
James N. Gorsline (jgorsline@kslaw.com)
Juanita Passyn Kuhner (jkuyner@kslaw.com)
Bradley J. Lingo (blingo@kslaw.com)
Geoffrey M. Ezgar (gezgar@kslaw.com)
David Tetrick, Jr. (dtetrick@kslaw.com)
Meredith Moss (mmoss@kslaw.com)
Richard T. Marooney, Jr. (rmarooney@kslaw.com)

/s/ John G. Turner, III