# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |
|---|---|
| **THE COLONIAL BANCGROUP, INC.,**<br>**and KEVIN O'HALLORAN,**<br><br>      **Plaintiffs,**<br><br>**v.**<br><br>**PRICEWATERHOUSECOOPERS LLP**<br>**and CROWE HORWATH LLP,**<br><br>      **Defendants.** | **Case No. 2:11-cv-00746-WKW** |
| **FEDERAL DEPOSIT INSURANCE**<br>**CORPORATION AS RECEIVER FOR**<br>**COLONIAL BANK,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**PRICEWATERHOUSECOOPERS, LLP**<br>**and CROWE HORWATH, LLP,**<br><br>      **Defendants.** | **Case No. 2:12-cv-00957-WKW** |

## DEFENDANT PRICEWATERHOUSECOOPERS LLP'S FIRST SET OF DOCUMENT REQUESTS TO THE COLONIAL BANCGROUP, INC. AND KEVIN O'HALLORAN

Pursuant to Federal Rule of Civil Procedure 34, Defendant PricewaterhouseCoopers LLP ("PwC") hereby requests that the documents described below (the "Requests") be produced by the Colonial BancGroup, Inc. and Kevin O'Halloran, as Plan Trustee acting for the debtor, for inspection and copying at the offices of King & Spalding, LLP, 1180 Peachtree St., N.E., Atlanta, Georgia, 30309 on or before thirty (30) days after service hereof.  The Requests are to

be responded to in accordance with Federal Rules of Civil Procedure and the following Instructions and Definitions.

## DEFINITIONS

1.     The term "PwC" means PricewaterhouseCoopers LLP, a limited liability partnership organized under the laws of the State of Delaware, and its current or former partners, principals, senior managers, managers, staff, and other employees.

2.     "You" and "your" refer to CBG.

3.     "Action" means the above-captioned consolidated case, *Colonial BancGroup, Inc., et al. v. PricewaterhouseCoopers LLP, et al.*, Case No. 2:11-cv-00746 (M.D. Ala.), as the Lead Case.

4.     The term "any" shall be construed as each and every.

5.     The term "AOT" means the AOT facility of Colonial Bank's MWLD.

6.     The term "ASBD" refers to the Alabama State Banking Department, and to any of its current or former partners, principals, directors, managers, officers, employees, agents or representatives.

7.     The term "Audits" means PwC's audits of CBG's consolidated financial statements for the years ended December 31, 2002, through 2008.

8.     "Bank of America" refers to Bank of America Corporation, including in its capacity as successor to LaSalle Bank, and to any of its current or former directors, officers or employees, agents or representatives.

9.     "BNP Paribas" refers to BNP Paribas S.A., BNP Paribas Mortgage Corporation, BNP Paribas Securities Corporation, BNP Paribas North America, and to any of their current or former directors, officers, or employees.

2

10.    "CBG" refers to The Colonial BancGroup, Inc., and to any of CBG's current or former directors, officers, or employees (either pre- or post-bankruptcy), including but not limited to Kevin O'Halloran, Lewis Beville, Bobby Lowder, Sarah Moore, Kamal Hosein and Cathie Kissick.

11.    "Complaint" means the Amended Complaint filed in *The Colonial BancGroup, Inc., et al. v. PricewaterhouseCoopers, LLP, et al.*, Case No. 2:11-cv-00746, in the Middle District of Alabama, on November 21, 2011.

12.    The term "COLB" means the COLB facility of Colonial Bank's MWLD.

13.    "Colonial" refers to CBG (either pre- or post-bankruptcy) or Colonial Bank (either pre- or post-receivership).

14.    "Colonial Bank" refers to Colonial Bank, N.A. and Colonial Bank, and to any of their current or former directors, officers, or employees, including but not limited to Catherine Kissick, Teresa Kelly, Kamal Hosein, Sarah Moore, Bobby Lowder, Rodney Lewis, and Pam Vitto.

15.    The term "Colonial Bankruptcy Proceeding" means *In re The Colonial BancGroup, Inc.*, Case No. 09-32303-DHW (Bankr. M.D. Ala.).

16.    The term "communication" means all written, oral, electronic, or recorded communications as well as any documents that reference or relate to those communications, including, without limitation, the transmittal of information in the form of facts, ideas, inquiries, or otherwise in any oral or written utterance, notation, or statement of any nature whatsoever, and any non-verbal transmission, relay or exchange of information or knowledge, by and to whomsoever made, including but not limited to correspondence, telecopied, telephonic, wire or computer transmissions, text or other instant messages, e-mail, conversations, dialogues,

3

discussions, interviews, consultations, agreements, and understandings between or among two or more persons.

17.    The terms "concerning," "regarding" and "relating to," or any derivatives thereof, mean concerning, relating to, referring to, reflecting, describing, evidencing, involving, constituting, comprising, containing, setting forth, summarizing, reflecting, stating, recording, noting, embodying, mentioning, studying, analyzing, discussing, or evaluating, whether directly or indirectly.

18.    "Crowe" refers to Crowe Horwath LLP, and to any of its predecessors (including Crowe Chizek LLP) and their current or former partners, principals, directors, managers, officers, employees, agents or representatives.

19.    "Deloitte" refers to Deloitte & Touche LLP, and to any of its current or former partners, principals, senior managers, managers, staff, and other employees.

20.    "Deutsche Bank" refers to Deutsche Bank AG and Deutsche Bank Securities, Inc., and to any of their current or former directors, officers, or employees.

21.    The term "document" or "documents" shall have the broadest meaning allowable under the Federal Rules of Civil Procedure and includes "electronically stored information" as that term is contemplated by the Federal Rules of Civil Procedure.  Examples of documents include, without limitation, all Blackberry PIN communications, documents loaded into the Universal File Transfer system, agreements, contracts, communications, correspondence, letters, telegrams, telecopies, telexes, messages, memoranda, records, reports, books, summaries, diaries, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, financial statements, work sheets, work papers, drafts, graphs, maps, charts, tables, accounts, analytical records,

consultants' reports, appraisals, bulletins, brochures, pamphlets, circulars, trade letters, press releases, notes, notices, marginal notations, notebooks, telephone bills or records, bills, statements, records of obligations and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, canceled checks, letters of credit, envelopes or folders or similar containers, vouchers, analyses, studies, surveys, transcripts of hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tape photographs, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), text or other instant messages, e-mail, and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored, or electronically-stored matter, however, and by whomever produced, prepared, reproduced, disseminated, or made.  A draft or non-identical copy is a separate document within the meaning of this term. "Document" also includes any removable "post-it" notes or other attachments or exhibits affixed to any of the foregoing.

22.     "DOJ" refers to the Department of Justice, including the United States' Attorneys' Office, and to any of its current or former directors, officers, or employees.

23.     "Ernst & Young" refers to Ernst & Young LLP, and to any of its current and former partners, principals, senior managers, managers, staff, and other employees.

24.     "FBI" refers to the Federal Bureau of Investigation, and to any of its current or former directors, officers, or employees.

25.     "Fannie Mae" refers to the Federal National Mortgage Association, and to any of its current or former directors, officers, or employees.

26.     "Federal Reserve" refers to the Federal Reserve System, including the Board of Governors of the Federal Reserve System and the Federal Reserve Bank of Atlanta, and to any of its current or former directors, officers, or employees.

27.     "Federal Insurance" refers to Federal Insurance Company, the defendant in *FDIC v. Federal Ins. Co.*, Case No 2:11-cv-00610 (M.D. Ala.), and any of its current or former directors, officers, or employees.

28.     "FDIC" refers to the United States Federal Deposit Insurance Corporation in its non-receivership capacities, and to any of its current or former directors, officers, or employees.

29.     "FDIC-R" means the Federal Deposit Insurance Corporation, as Receiver for Colonial Bank, and any person who is acting on behalf of, or has acted on behalf of the Federal Deposit Insurance Corporation, as Receiver for Colonial Bank.

30.     The term "the Fraud" means those frauds or fraudulent or illegal activities that are outlined in paragraphs 22 through 49 of the Complaint.

31.     "Freddie Mac" refers to Federal Home Loan Mortgage Corporation, and to any of its current or former directors, officers, or employees.

32.     "Ginnie Mae" refers to Government National Mortgage Association, and to any of its current or former directors, officers, or employees.

33.     "GMAC" refers to GMAC Mortgage Corporation, the defendant in *Taylor, Bean & Whitaker Mort. Corp. v. GMAC Mortgage Corp.*, Case No 5:05-cv-260 (M.D. Fla.), and any of its current or former directors, officers, or employees.

34.     "HUD" refers to the United States Department of Housing and Urban Development, and to any of its current or former directors, officers, or employees.

35.    "KPMG" refers to KPMG LLP, and to any of its current and former partners, principals, senior managers, managers, staff, and other employees.

36.    "LaSalle Bank" refers to LaSalle Bank, N.A., and to any of its current or former directors, officers, or employees.

37.    "Mortgage Dynamics" refers to Mortgage Dynamics Inc. and to any of its current or former directors, officers or employees, agents or representatives.

38.    "MWLD" refers to the Mortgage Warehouse Lending Division of Colonial Bank, and to any of its current or former directors, officers, or employees.

39.    "Natixis" refers to Natixis Global Asset Management and its subsidiaries and affiliates, including but not limited to Natixis Real Estate Capital, LLC, and to any of their current or former directors, officers, managers, members, employees, agents or representatives.

40.    "Ocala Funding" refers to Ocala Funding, LLC (either pre- or post-bankruptcy), and to any of its current or former directors, managers, managing members, special members, officers, employees, agents or representative, including but not limited to Neil Luria.

41.    "OCC" refers to the Office of the Comptroller of Currency, and to any of its current or former directors, officers, or employees.

42.    The term "Other Litigation" shall include:

- *Bank of America v. Colonial Bank*, Case No. 1:09-cv-22384 (S.D. Fla.);
- *Bank of America v. FDIC*, Appeal No. 09-14844 (11th Cir. Apr. 26, 2010);
- *Bank of America v. FDIC*, Case No. 1:10-cv-1681 (D.D.C.);
- *Bank of America v. FDIC*, Case No. 2:13-mc-03657 (M.D. Ala.);
- *Bank of America, N.A. v. Taylor Bean & Whitaker Corp.*, No. 09 Civ. 22478 (S.D. Fla.);
- *BNP Paribas Mortgage Corp. v. Bank of America, N.A.*, Case No. 09 Civ. 9783 (S.D.N.Y.);

7

- *BNP Paribas Mortgage Corp. v. Bank of America, N.A.*, Case No. 10 Civ. 8630 (S.D.N.Y.);

- *Certain Underwriters at Lloyd's v. Taylor Bean & Whitaker Mortgage Corp.*, Case No. 3:10-ap-243 (Bankr. M.D. Fla.);

- *Colonial BancGroup, Inc. v. Ernst & Young LLP*, Case No. 2:11-ap-3065 (Bankr. M.D. Ala.);

- *Colonial BancGroup, Inc. v. FDIC*, Case No. 2:10-mc-3502 (M.D. Ala.);

- *Colonial BancGroup, Inc. v. FDIC*, Case No. 2:10-mc-3503 (M.D. Ala.);

- *Colonial BancGroup, Inc. v. FDIC*, Case No. 2:10-cv-198 (M.D. Ala.);

- *Colonial BancGroup, Inc. v. FDIC*, Case No. 2:09-ap-3087 (Bankr. M.D. Ala.);

- *Colonial BancGroup, Inc. v. FDIC*, Case No. 2:10-mc-133 (M.D. Ala.);

- *Colonial BancGroup, Inc. v. FDIC*, Case No. 2:10-cv-411 (M.D. Ala.);

- *Colonial BancGroup, Inc. v. FDIC*, Case No. 2:10-ap-3018 (Bankr. M.D. Ala.);

- *Colonial BancGroup, Inc. v. FDIC*, Case No. 2:10-mc-3504 (M.D. Ala.);

- *Colonial BancGroup, Inc. v. FDIC*, Case No. 2:10-cv-410 (M.D. Ala.);

- *In re Colonial BancGroup, Inc.*, Case No. 2:10-cv-409 (M.D. Ala.);

- *In re Colonial BancGroup, Inc. ERISA Litigation*, Case No. 2:09-cv-792 (M.D. Ala.);

- *Deutsche Bank AG v. Bank of America, N.A.*, Case No. 09 Civ. 9784 (S.D.N.Y.);

- *Deutsche Bank AG v. Bank of America, N.A.*, Case No. 10 Civ. 8299 (S.D.N.Y.);

- *Deutsche Bank AG v. Deloitte & Touche, LLP*, Case No. 11-48778 CA (40) (Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida);

- *FDIC v. Banc of America Funding Corp.*, Case No. CV-2012-901035 (Circuit Court of Montgomery County, Alabama);

- *FDIC v. Banc of America Funding Corp.*, Case No. 2:12-cv-791 (M.D. Ala.);

- *FDIC v. Chase Mortgage Finance Corp.*, Case No. 1:12-cv-6166 (S.D.N.Y.);

- *FDIC v. Citigroup Mortgage Loan Trust, Inc.*, Case No. CV-2012-901036 (Circuit Court of Montgomery County, Alabama);

- *FDIC v. Citigroup Mortgage Loan Trust, Inc.*, Case No. 2:12-cv-790 (M.D. Ala.);

- *FDIC v. Colonial BancGroup, Inc.*, Case No. 2:10-cv-877 (M.D. Ala.);

- *FDIC v. Countrywide Securities Corp.*, Case No. 2:12-cv-6911 (C.D. Cal.);

- *FDIC v. Countrywide Securities Corp.*, Case No. CV-2012-901037 (Circuit Court of Montgomery County, Alabama);

- *FDIC v. Countrywide Securities Corp.*, Case No. 2:12-cv-784 (M.D. Ala.);

- *FDIC v. Federal Ins. Co.*, Case No. 2:11-cv-00610 (M.D. Ala.);

- *Federal Home Loan Mortgage Corporation v. Deloitte & Touche LLP*, Case No. 1:14-cv-23713-UU (D. Ct. Fla.);

- *Ocala Funding, LLC v. Deloitte & Touche, LLP*, Case No. 11-30957 CA (40) (Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida);

- *Neil F. Luria, Plan Trustee v. Deloitte & Touche, LLP*, Case No. 11-30967 CA (40) (Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida);

- *Securities & Exchange Commission v. Desiree E. Brown*, Case No. 1:11-cv-00192 (E.D. Va.);

- *Securities & Exchange Commission v. Lee B. Farkas*, Case No. 1:10-cv-00667 (E.D. Va.);

- *Securities & Exchange Commission v. Teresa A. Kelly*, Case No. 1:11-cv-00268 (E.D. Va.);

- *Securities & Exchange Commission v. Catherine L. Kissick*, Case No. 1:11-cv-00215 (E.D. Va.);

- *Taylor, Bean & Whitaker Mort. Corp. v. GMAC Mortgage Corp.*, Case No. 5:05-cv-260 (M.D. Fla.);

- *Taylor, Bean & Whitaker Plan Trust v. PricewaterhouseCoopers LLP*, Case No. 13-33964 CA 01 (40);

- *United States ex rel. Friddle v. Taylor, Bean & Whitaker Mort. Corp.*, Case No: 1:06-cv-3023 (N.D. Ga.);

- *United States v. Paul Allen*, Case No. 1:11-cr-00165 (E.D. Va.);

- *United States v. Raymond Edward Bowman*, Case No. 1:11-cr-00118 (E.D. Va.);

- *United States v. Desiree Elizabeth Brown*, Case No. 1:11-cr-0084 (E.D. Va.);

- *United States v. Lee Bentley Farkas*, Case No. 1:10-cr-200 (E.D. Va.);

- *United States v. Lee Bentley Farkas*, Case No. 5:10-mj-010128 (M.D. Fla.);

- *United States v. Teresa A. Kelly*, No. 1:11-cr-00119 (E.D. Va.);

- *United States v. Catherine Kissick*, Case No. 1:11-cr-00088 (E.D. Va.); and

- *United States v. Sean William Ragland*, Case No. 1:11-cr-00162 (E.D. Va.).

43.    The term "person" means any natural person or any entity, organization or association whether business, legal, governmental, or otherwise.

44.    "Platinum Bank" refers to Platinum Community Bank.

45.    The term "Quarterly Reviews" means procedures conducted by PwC with respect to CBG's quarterly financial statements.

46.    "SEC" refers to the United States Securities and Exchange Commission, and to any of its current or former directors, officers, or employees.

47.    "SIGTARP" refers to the Office of the Special Inspector General for the Troubled Asset Relief Program, and to any of its current or former directors, officers, or employees.

48.    "TARP" refers to the Troubled Asset Relief Program.

49.    "TBW" refers to (a) Taylor, Bean & Whitaker Mortgage Corporation; and to any of TBW's current or former directors, officers, or employees (either pre- or post-bankruptcy), including but not limited to Lee Farkas, Paul Allen, Delton de Armas, Melissa Henry Davis,

Desiree Brown, Brian Callahan, Kim Bush Davis, Virginia Longo, Michael Wawrzyniak, Sean Ragland, and Neil Luria; and (b) any parent, subsidiary or affiliated entity of TBW (either pre- or post-bankruptcy), including but not limited to the TBW Plan Trust; HMC-Home Mortgages Company; Second Street Insurance Corporation; CDF Tax and Flood Services, LLC; Complete Mortgage Solutions, LLC; Maslow Insurance Agency, LLC; REO Specialists, LLC; Magnolia Street Funding, Inc.; Magnolia Street Funding, II; TBALT Corp.; Ocala Funding, LLC; TBW Funding Company, LLC; and TBW Funding Company II, LLC.; and any current or former directors, officers, members, managing members, special members, or employees of any parent, subsidiary or affiliated entity of TBW.

50.    "TBW Plan Trust" refers to Taylor, Bean & Whitaker Plan Trust, as purported successor to the claims of Taylor, Bean & Whitaker Mortgage Corp.

51.    "TBW Action" means the action filed by the Taylor, Bean & Whitaker Plan Trust, as purported successor to the claims of Taylor, Bean & Whitaker Mortgage Corp., on November 20, 2013, as further amended by interlineation pursuant to the Court's November 27, 2013 Order in *Taylor, Bean & Whitaker Plan Trust v. PricewaterhouseCoopers LLP*, Case No. 13-33964 CA 01 (40), in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida.

## INSTRUCTIONS

1.    You shall produce legible, bates-stamped copies of the requested documents, as they are kept in the usual course of business or shall be labeled to correspond with the requests below.  The documents shall be delivered to counsel for PwC at the following address:

> Drew Dropkin
> King & Spalding LLP
> 1180 Peachtree Street, N.E.
> Atlanta, GA 30309

2.      Each requested document shall be produced in its entirety, including all attachments, appendices, exhibits, lists, schedules or other matters at any time affixed thereto. File folders, labels and indices identifying documents requested herein shall be produced intact with such documents.  Documents attached to each other shall not be separated.

3.      To the extent that a document requested by these requests is responsive to more than one specific request, you need produce the document only once.

4.      Documents that cannot be legibly copied should be made available or produced in their original form.

5.      The documents requested by PwC herein are those created, sent, or received between January 1, 2002 and December 31, 2009, except to the extent that a Request specifies a different time period, in which case the time period specified in the Request is controlling.

6.      In the event you withhold any document called for by these Requests on the basis of a claim of privilege, provide a privilege log containing:

    a.   The medium (*e.g.*, electronic or paper), type (*e.g.*, memorandum, letter, report, etc.), and the length of the document;

    b.   The existence and identity of any attachments to the document;

    c.   The author(s) and addressee(s);

    d.   The person(s) to whom any copy was furnished;

    e.   The date of the document;

    f.   The subject matter of the document;

    g.   The document request herein to which the document responds; and

    h.   The nature of the privilege (including work product) which is being claimed as the basis for your claim that such document (or any portion thereof) need

not be disclosed, and if the privilege is governed by state or foreign law, the

state's or foreign jurisdiction's privilege rule being invoked.

If an attachment to a document is also being withheld on the grounds of privilege, in addition to being identified as required by subpart (b) above, such attachment shall be identified in the privilege log as a separate document.

      7.     If any document referred to, or relied upon, in any answer to any Request was, but is no longer in your possession, custody, or control, or in existence, state whether it (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred, voluntarily or involuntarily, to others; and/or (iv) has otherwise been disposed of and, in each instance, state the following:

    a.   The type of document;

    b.   The date and author of the document;

    c.   A brief summary of the content of the document;

    d.   The date or approximate date that it was lost, destroyed, transferred, and/or otherwise disposed of;

    e.   The reasons for discarding, destroying, transferring and/or otherwise disposing of the document;

    f.   The circumstances and manner in which the document was lost, destroyed, transferred, and/or otherwise disposed of;

    g.   The identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document; and

    h.   The identity of all persons having knowledge of the contents thereof.

      8.     This set of Requests shall be deemed continuing in accordance with Federal Rule of Civil Procedure 26(e) and any applicable Local Rules for the United States District Court for

the Middle District of Alabama.  If, after producing the requested documents, you obtain or become aware of any further documents responsive to the requests, you are required to produce such additional documents.

9.    If objection is made to any of the Requests, state in your response whether documents are being withheld from inspection and production on the basis of such objection, or whether inspection and production of the responsive documents will occur notwithstanding such objection.

10.    If there are no documents responsive to any of the following document requests, please provide a written response so stating.

## REQUESTS FOR PRODUCTION

1. With the exception of those documents and communications that have previously been produced to you by PwC, all documents and communications relating to PwC, including all documents exchanged and communications between Colonial and any entity related to PwC.

2. All Colonial policies, procedures, and guidelines (including but not limited to accounting and internal control policies, procedures and guidelines) applicable to, used in connection with, or relating to any external audits and reviews of CBG's financial statements or internal controls.

3. All documents and communications relating to any Colonial regulator's review or use of any documents concerning PwC's Audits or Quarterly Reviews.

4. All documents and communications evidencing or relating to the dissemination of CBG's audited financial statements or PwC's audit reports on those financial statements to any of the following: TBW; Ocala Funding; LaSalle Bank; Bank of America; Deutsche Bank; BNP Paribas; and any Colonial regulator, including but not limited to the Federal Reserve, the FDIC, the OCC, the ASBD, or HUD.

5. All documents and communications relating to any of the following: the Fraud; any transactions related to the Fraud; any mortgage loans, securities, or mortgage loan pools used in or affected by the Fraud, including the "Plan B" mortgage loans, the "Plan B" AOT pools, and loans referred to as "crap" loans or "do not sell" loans (and loan data, loan pool data and reports for those mortgage loans and pools); and any documents or transactions fabricated or falsified in connection with the Fraud.

6. All documents and communications sent to or received from Catherine Kissick.

7. All documents and communications sent to or received from Teresa Kelly.

8. All documents and communications relating to, sent to or received from any of the following persons: Lee Farkas; Desiree Brown; Paul Allen; Delton DeArmas; Raymond Bowman; Sean Ragland; Michael Wawrzyniak; any other TBW officer; any TBW director; or any Ocala Funding officer, director, or special member.

9. All documents and communications relating to confirmations of transactions or account balances that PwC, Colonial, or Crowe requested from TBW, including but not limited to documents and communications relating to any falsification of such confirmations.

10. Without regard to the time frame specified in the Instructions above, all reports or other summaries of the results of any audit, examination, or investigation, conducted at any time through the present, relating to any aspect of the Fraud, including but not limited to any audit, examination, or investigation into the nature and extent of the Fraud, the parties responsible for the Fraud, or the damages caused by the Fraud.

11. Without regard to the time frame specified in the Instructions above, all documents and communications relating to any investigation or inquiry into the source of the

overdrafts in TBW's master account at Colonial Bank, including, but not limited to the investigations conducted by any consultants hired by TBW or Colonial, as described by Teresa Kelly in her April 5, 2011 testimony in *United States v. Lee Farkas*, No. 1:10-cr-200 (E.D. Va.). *See United States v. Lee Farkas*, No. 1:10-cr-200 at 371 (E.D. Va. April 6, 2011) [DKT # 209].

12.     Without regard to the time period specified in the Instructions above, all documents and communications relating to the database Teresa Kelly maintained to track the mortgage loans from TBW that were improperly included on the books and records of Colonial, as described by Teresa Kelly in her April 6, 2011 testimony in *United States v. Lee Farkas*, No. 1:10-cr-200 (E.D. Va.).  *See United States v. Lee Farkas*, No. 1:10-cr-200 at 499-501 (E.D. Va. April 7, 2011) [DKT # 213].

13.     All documents and communications relating to any of the following: Colonial's application for TARP funds; Colonial's capital-raising efforts, through TBW or otherwise, in connection with the receipt of TARP funds; "Project Patriot;" the SIGTARP investigation into Colonial's efforts to obtain TARP funds; and "Project Squirrel."

14.     All contracts or agreements between Colonial and TBW entered into between January 1, 1998, and August 25, 2009, including any agreements governing TBW's mortgage warehouse line of credit, working capital line of credit, overline facility, COLB facility, or AOT facility.

15.     All contracts or agreements between Colonial and any person or entity related to TBW or Ocala Funding entered into between January 1, 1998, and August 25, 2009, including but not limited to any custodial agreement between Colonial and Freddie Mac.

16.     All documents and communications provided to TBW relating to Colonial's financial condition or internal controls.

17.     All documents and communications provided to Colonial relating to TBW's financial condition or internal controls, including all documents and communications reflecting Colonial's receipt of TBW's quarterly and annual financial statements.

18.     Without regard to the time frame specified in the Instructions above, all documents and communications relating to when and how TBW became a customer of Colonial Bank.

19.     All documents and communications relating to whether and why TBW was the only MWLD customer with which Colonial conducted AOT transactions.

20.     All documents and communications relating to the litigation between GMAC and TBW, *TBW v. GMAC Mortgage Corp.*, No. 5:05-cv-260 (M.D. Fla.), including but not limited to transcripts of testimony provided by Catherine Kissick or any Colonial director, officer or employee.

21.     Without regard to the time frame specified in the Instructions above, all documents and communications relating to Fannie Mae's evaluation and termination of its relationship with TBW.

16

22.    All documents and communications relating to any audit, review, business evaluation, risk assessment, or due diligence performed with respect to TBW's operations, financial condition, or credit worthiness (regardless of whether such audit, review, business evaluation, risk assessment, or due diligence was performed by or on behalf of Colonial), including but not limited to any such undertaking conducted by Mortgage Dynamics, Inc.

23.    All documents and communications relating to TBW's credit file with Colonial, including any credit limits and sublimits and any applicable committee approvals of such limits.

24.    All documents and communications relating to Deloitte's audits or reviews of the financial statements of TBW or Ocala Funding, including all documents and communications sent to or received from Deloitte in connection with those audits or reviews.

25.    All documents identifying any income earned, accrued or received, including any fees and interest, by Colonial from or on behalf of TBW or Ocala Funding, with those documents including but not limited to the General Ledger, the Trial Balance, the U503 Yield Reports, the U134 Breakdowns of Lender Interest, the U513 GL Summaries, the U530 CitiGroup Securitization Reports, the U110 Trial Balance Details, the U523 TM1 Extracts, the U527 Fee Summaries, the U536 Daily Interest Accrual Extracts, the U227 Daily Payment Reports, the U100 Account Usage Reports, the U101 Loan Activity Reports, the U106 Trial Balance Summaries, the U107 Shipping Schedules, the U509 Participated Account Usage reports, the U510 Lender Commitment Summaries, and the U516 Consolidated Statements.

26.    All documents identifying any payments made by Colonial to or on behalf of TBW or Ocala Funding as a result of the Fraud, with those documents including but not limited to the General Ledger, the Trial Balance, the U503 Yield Reports, the U134 Breakdowns of Lender Interest, the U513 GL Summaries, the U530 CitiGroup Securitization Reports, the U110 Trial Balance Details, the U523 TM1 Extracts, the U527 Fee Summaries, the U536 Daily Interest Accrual Extracts, the U227 Daily Payment Reports, the U100 Account Usage Reports, the U101 Loan Activity Reports, the U106 Trial Balance Summaries, the U107 Shipping Schedules, the U509 Participated Account Usage reports, the U510 Lender Commitment Summaries, and the U516 Consolidated Statements.

27.    All documents and communications relating to any transfer or request for the transfer of cash, assets, or consideration of any kind from CBG to Colonial Bank, or vice versa, including but not limited to documents and communications relating to funds purportedly "downstreamed" by CBG to Colonial Bank or dividend payments made by Colonial Bank to CBG.

28.    All documents exchanged and communications about TBW between Colonial and any of the following entities:  Freddie Mac, Fannie Mae, Ginnie Mae, BNP Paribas, Deutsche Bank, LaSalle Bank, Bank of America, Natixis, and Mortgage Dynamics.

29.    All documents exchanged and communications about the MWLD, Catherine Kissick, Teresa Kelly, AOT, COLB, the Fraud, TBW, or Ocala Funding between Colonial and any of the following entities:  the FBI, the United States Attorney's Office, the DOJ, and SIGTARP.

30.    To the extent not privileged or otherwise protected from disclosure, all documents exchanged and communications between Colonial and any of the following entities about the MWLD; AOT; COLB; the Fraud; TBW; Ocala Funding; Colonial's application for TARP funds; Colonial's capital-raising efforts, through TBW or otherwise, in connection with the receipt of TARP funds; or the SIGTARP investigation into Colonial's efforts to obtain TARP funds: Ackerman Senterfitt LLP; Alston & Bird, LLP; Arnold & Porter LLP;  Balch & Bingham LLP; Capell and Howard PC; Jones Walker LLP; Latham & Watkins LLP; Mayer Brown LLP; Miller Hamilton Snider and Odom LLC; and Waller Lansden Dortch and Davis LLP.

31.    All organizational charts for Colonial, setting forth any of the following: Colonial's management structure; ownership structure; Board of Directors structure; Board committee structure; corporate department, segment or division structure; Treasury department structure; and MWLD structure.

32.    All Colonial Articles of Incorporation, bylaws, charters, and any state- or federal-mandated corporate filings.

33.    All documents and communications relating to the professional experience, background, employment history, or qualifications of Colonial's directors.

34.    All documents and communications relating to the professional experience, background, employment history (including reasons for hiring or terminating), compensation paid to, or qualifications of the following Colonial personnel:  Arthur Barksdale; Mary Lou Bathen; Wayne Beahler; Young Boozer; Terry Bryant; David Byrne; Michelle Carroll; Caryn Cope; Laura Dawkins; Cherie Fite; Kristine Finger; Patty Franklin; Brent Hicks; Teresa Hawkins; Patti Hill; Kamal Hosein; Sandra Jansky; Teresa Carrier Kelly; Catherine Kissick; Rodney Lewis; Robert Lowder; Sheila Moody; Sarah Moore; Amy Nunnelly; Flake Oakley; Hans Petit; Sandra Pogue; Sara Roland; Joyce Schultz; Tamara Stidham; Lynette Tischer; Thomas Tynes; and Pamela Vitto.

35.    All documents and communications relating to the compensation paid to any member of a Colonial Board of Directors in connection with his or her service on a Colonial Board, including but not limited to any compensation paid to any such director for service on a Colonial Board committee.

36.    The minutes, board packages, presentations, agendas and any other documents relating to any meeting of a Colonial Board of Directors.

37.    All documents and communications setting forth the responsibilities of the Colonial Boards of Directors, including but not limited to any corporate governance policies or Board committee charters.

38.    All documents and communications sent, received, or prepared by any Colonial Board of Directors, or any member thereof, related to PwC, Crowe, the MWLD, Catherine Kissick, Teresa Kelly, COLB, AOT, TBW or Ocala Funding.

39.    The minutes, packages, presentations, agendas and any other documents relating to any meeting of the following Colonial committees:

 a.  Audit Committee;

 b.  Executive Committee;

 c.  Asset Liability Committee;

 d.  Risk Committee;

 e.  Nominating and Corporate Governance Committee;

 f.  Asset Liability Management Committee;

 g.  Disclosure Committee;

 h.  Asset Purchase Committee;

 i.  Mortgage Warehouse Lending Committee;

 j.  Senior Loan Committee;

 k.  To the extent not listed above, any committee of Colonial's Board of Directors or any committee whose responsibilities related to the MWLD.

 40.  All documents and communications setting forth the responsibilities of the following Colonial committees, including but not limited to any committee policies or charters:

 a.  Audit Committee;

 b.  Executive Committee;

 c.  Asset Liability Committee;

 d.  Risk Committee;

 e.  Nominating and Corporate Governance Committee;

 f.  Asset Liability Management Committee;

 g.  Disclosure Committee;

 h.  Asset Purchase Committee;

 i.  Mortgage Warehouse Lending Committee;

 j.  Senior Loan Committee;

 k.  To the extent not listed above, any committee of Colonial's Board of Directors or any committee whose responsibilities related to the MWLD.

41.     All documents and communications sent, received, or prepared for or by any Colonial officer or director relating to the financial condition or operations of Colonial's MWLD, TBW, or Ocala Funding.

42.     All documents and communications sent to or received from any Colonial director or officer between January 1, 2006, and August 14, 2009, relating to any economic downturn or slowdown affecting the mortgage industry.

43.     All documents and communications relating to any compensation packages, annual performance reviews, or assessments of employee conduct for Catherine Kissick and Teresa Kelly.

44.     All documents exchanged and communications between you and any Colonial bank regulator, including but not limited to the Federal Reserve, the FDIC, the OCC, the ASBD, or HUD.

45.     All documents, including but not limited to examination reports, supervisory letters, recommendations, correspondence, memoranda, and reports, relating to any Colonial regulator and any of the following:  PwC's Audits; PwC's Quarterly Reviews; Colonial's corporate governance; fraud detection and prevention; changes in Colonial's supervisory or risk ratings; Colonial's Treasury department; Colonial's MWLD; COLB; AOT; TBW; Ocala Funding; Colonial's internal audit function; or Crowe.

46.     All documents and communications relating to any change in Colonial regulators, including but not limited to the June 2008 change in primary federal regulators from the OCC to the FDIC.

47.     All documents and communications relating to any action taken by Colonial to identify, detect, or protect against fraudulent activity in Colonial's Treasury department or MWLD, including but not limited to, internal controls, internal audits, ethics policies, and whistleblower hotlines.

48.     All documents and communications relating to any action taken by Colonial as a result of any findings by PwC, Crowe, Pamela Vitto, Young Boozer, Tommy Tynes, or Colonial's internal audit function related to the MWLD.

49.     All documents and communications relating to any whistleblower (internal or external) assertions of wrongdoing by TBW, any Colonial officer or director, Colonial's MWLD, or any employee who worked in or for Colonial's MWLD.

50.     All reports and communications made through Colonial's Ethicspoint hotline and any documents and communications regarding the evaluation of any such reports.

51.     All documents and communications relating to any Colonial Compliance and Security Reports, Compliance and Security Quarterly Monitoring Summaries, Suspicious Activity Reports, OFAC Reports, Information Security Reports, and Bank Secrecy Act Reports to the extent those reports contain information relating to the MWLD, Catherine Kissick, Teresa Kelly, COLB, AOT, TBW or Ocala Funding.

52.     All policies, procedures, and guidelines (including but not limited to accounting and internal control policies, procedures and guidelines) applicable to, used in connection with, or relating to Colonial's Treasury department, the MWLD, COLB, AOT or TBW.

53.     All documents and communications relating to the oversight of Colonial's MWLD, including but not limited to documents and communications relating to the oversight of the MWLD by Colonial's Treasury or Credit departments.

54.     All documents and communications relating to the internal controls or control environment of Colonial's Treasury department or MWLD, including but not limited to any documents and communications related to the evaluation or testing of internal controls by Pamela Vitto, Young Boozer, or Crowe.

55.     All policies, procedures, and guidelines (including but not limited to accounting and internal control policies, procedures and guidelines) applicable to, used in connection with, or relating to internal audits and reviews of CBG's financial statements or internal controls, including but not limited to audits and reviews performed by or at the direction of Pamela Vitto, Young Boozer, or Crowe.

56.     All documents and communications relating to Crowe and any of the following: fraud detection and prevention; Colonial's Treasury department; Colonial's MWLD; Catherine Kissick; Teresa Kelly; COLB; AOT; TBW; Ocala Funding; Pamela Vitto; or Kamal Hosein.

57.     All documents and communications relating to the preparation or dissemination of any report prepared by Pamela Vitto, or any person acting at her direction, regarding the MWLD, COLB, AOT, TBW or Ocala Funding, including but not limited to any MWLD analysis or any semi-annual, quarterly, or monthly risk management audit or report.

58.     All documents and communications sent, received, or prepared by Pamela Vitto or at her direction.

59.     All documents and communications relating to Colonial's decision to hire an employee to serve as an internal auditor in the MWLD, including but not limited to the hiring of Pamela Vitto.

60.     All documents and communications regarding RJW Consulting.

61.     All documents and communications sent, received, or prepared by any employee who worked in the MWLD assessing or evaluating, whether informally or formally, Catherine Kissick's and Teresa Kelly's performance, including but not limited to documents and communications assessing or evaluating Catherine Kissick's or Teresa Kelly's relationship with TBW or Ocala Funding.

62.     All documents and communications relating to the accounting in the financial statements of CBG or TBW for COLB and AOT transactions, including but not limited to documents and communications relating to the application of Statement of Financial Accounting Standards No. 140 to those transactions, the classification of those assets on the balance sheet as

21

loans held for sale or securities purchased under agreements to resell, and any regulatory inquiries about the accounting or classification of these transactions.

63.    Without regard to the time frame set forth in the Instructions above, all documents and communications from January 1, 2002, through the present relating to any inquiries, investigations, or forensic examinations, whether formal or informal, conducted by any person or entity regarding Colonial's MWLD or TBW, including but not limited to inquiries, investigations, or forensic examinations conducted or directed by Colonial, Colonial's Audit Committee, KPMG, Arnold & Porter, Waller Lansden Dortch & Davis LLP, or Ernst & Young LLP.

64.    Without regard to the time frame set forth in the Instructions above, all claims, proofs of loss or other documents that Colonial has submitted to any insurer in connection with a claim relating to negligent, improper, fraudulent, dishonest, or criminal acts of any Colonial director, officer, or employee.

65.    Without regard to the time frame set forth in the Instructions above, all documents produced or received, all deposition and hearing transcripts and exhibits, all written discovery, and all expert disclosures and reports exchanged in connection with *FDIC v. Federal Insurance Company*, No. 2:11-cv-610 (M.D. Ala.).

66.    Without regard to the time frame set forth in the Instructions above, all documents and communications relating to the Proof of Loss dated February 1, 2010 submitted by CBG or the FDIC-R to the Federal Insurance, and the Federal Insurance's investigation of the Proof of Loss.

67.    Without regard to the time frame set forth in the Instructions above, all witness statements, deposition and hearing transcripts and exhibits, all written discovery, and all expert disclosures and reports exchanged in the Other Litigation.

68.    Without regard to the time frame set forth in the Instructions above, all documents produced or received in the Other Litigation to the extent such documents relate to any of the following: PwC; Deloitte; Crowe; regulators; correspondence or other communications with regulators; regulatory examinations of TBW or Colonial; internal audits of TBW or Colonial; the Fraud; any transactions related to the Fraud; any mortgage loans, securities or mortgage loan pools used in or affected by the Fraud, including the "Plan B" mortgage loans, the "Plan B" AOT pools and loans referred to as "crap" loans or "do not sell" loans  (and loan data, loan pool data, and reports for these mortgage loans and pools); any documents or transactions fabricated or falsified in connection with the Fraud; or the damages sought by CBG or the FDIC-R.

69.    Without regard to the time frame set forth in the Instructions above, all documents produced by you in the TBW Action.

70.    Without regard to the time frame specified in the Instructions above, the materials contained in the approximately 21 banker boxes referred to as the "'R-Boxes," as described in Section II.A.1.a of your Initial Disclosures served in this Action on October 24, 2014.

71.     Without regard to the time frame specified in the Instructions above, the materials contained in the approximately 20 bankers boxes of documents related to "legal holds" put in place by CBG's general counsel and that are referred to as the "Legal Hold Boxes" in Section II.A.1.b of your Initial Disclosures served in this Action on October 24, 2014.

72.     Without regard to the time frame specified in the Instructions above, the materials contained in the approximately 20 bankers boxes that came from the offices of Sarah Moore and Lisa Free and that are referred to as the "Moore & Free Boxes" in Section II.A.1.c of your Initial Disclosures served in this Action on October 24, 2014.

73.     Without regard to the time frame specified in the Instructions above, the documents and materials contained the approximately 18 bankers boxes of documents containing miscellaneous information related to CBG, as described in Section II.A.1.d of your Initial Disclosures served in this Action on October 24, 2014, including but not limited to the documents and materials contained in boxes U-3 through U-13 as described in the "Index of Uninventoried Documents."

74.     Without regard to the time frame specified in the Instructions above and to the extent not privileged or protected attorney work product, any index or summary you may have of the documents contained in the approximately 35 bankers boxes referred to as the "Benefit Plan Boxes" in Section II.A.1.e of your Initial Disclosures served in this Action on October 24, 2014.

75.     Without regard to the time frame specified in the Instructions above, the materials contained on the 24 CDs/DVDs described by you in Section II.A.2 of your Initial Disclosures served in this Action on October 24, 2014.

76.     Without regard to the time frame specified in the Instructions above, any documents produced by you or to you by other parties in this Action regardless of whether the production was made in this Action, including but not limited to the documents produced to you by Crowe as described in Section II.B of your Initial Disclosures served in this Action on October 24, 2014.

77.     Without regard to the time frame specified in the Instructions above, all documents provided to you by BB&T, including but not limited to the documents and information described in Section II.D of your Initial Disclosures served in this Action on October 24, 2014.

78.     Without regard to the time frame specified in the Instructions above, the documents provided or produced to you by Waller Lansden Dortch & Davis, LLP on August 3, 2011, as described in paragraphs 33 and 34 of your adversary complaint against Ernst & Young LLP, *Colonial BancGroup, Inc. v. Ernst & Young LLP*, Case No. 11-ap-3065 (M.D. Ala. Aug. 24, 2011) [DKT # 1].

79.     Without regard to the time frame specified in the Instructions above, all documents provided or produced to you by Ernst & Young LLP in connection with *Colonial BancGroup, Inc. v. Ernst & Young LLP*, Case No. 11-ap-3065 (M.D. Ala.).

80.     All engagement letters between Waller Lansden Dortch & Davis, LLP, Ernst & Young LLP and the Colonial Audit Committee, including but not limited to the engagement letter dated April 21, 2009.

81.     Without regard to the time frame specified in the Instructions above, all documents exchanged and communications between you and Robert Hutchins, a director with Navigant Consulting who provided a declaration in *Colonial BancGroup, Inc. v. FDIC-R*, No. 2:10-cv-198 (M.D. Ala*.). See Colonial BancGroup, Inc. v. FDIC-R*, No. 2:10-cv-198 (M.D. Ala. Oct. 6, 2011) [DKT # 138-1].

82.     Without regard to the time frame specified in the Instructions above, all documents exchanged and communications between you and the TBW Plan Trust relating to PwC, Colonial, TBW, or Ocala Funding.

83.     Without regard to the time frame specified in the Instructions above, all documents produced to or by Colonial and all transcripts of testimony (and exhibits used during that testimony) taken, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure or otherwise, in the Colonial Bankruptcy Proceeding.

84.     Without regard to the time frame specified in the Instructions above and to the extent not privileged or protected attorney work product, all indices, summaries, or lists of the documents and communications that you have relating to the events or transactions alleged in the Complaint, including but not limited to all indices and summaries described in your Initial Disclosures served in this Action on October 24, 2014.

85.     Without regard to the time frame specified in the Instructions above, all demands, claims, and settlement agreements to which you are or were a party relating to the events and transactions alleged in the Complaint.

86.     Without regard to the time frame specified in the Instructions above, all documents and communications relating to any agreements by any person or entity to cooperate with you, or by you to cooperate with any person or entity, in the prosecution of any claims arising from the events and transactions alleged in this Action or the TBW Action.

87.     Without regard to the time frame specified in the Instructions above, all documents and communications relating to "the reliance that CBG and its Board of Directors placed upon PwC and Crowe to properly discharge their professional duties in auditing CBG's financial statements and implementing controls that would properly safeguard CBG's assets."

88.     Without regard to the time frame specified in the Instructions above, all documents and communications related to the alleged damages claimed by you in this Action, including but not limited to the damages computed by you in Section III of your Initial Disclosures served in this Action on October 24, 2014.

89.     Documents sufficient to show the solvency or insolvency of Colonial Bank on all dates from January 1, 2007, through August 31, 2009.

90.    Documents sufficient to show the amount and source of all recoveries (including, but not limited to, voluntary payments, settlements, restitution payments, and final judgments) by you of the damages sought by you in this Action.

91.    Without regard to the time frame specified above, all documents and communications relating to your ownership of or standing to bring the claims alleged by you in this Action, including documents relating to the solvency or insolvency of Colonial Bank.

92.    Without regard to the time frame specified in the Instructions above, all documents and communications supporting your claims in this Action.

93.    Without regard to the time frame specified in the Instructions above, all documents and communications relating to the failure of Colonial, including without limitation any assessment or analysis as to the causes of Colonial's failure.

94.    Without regard to the time frame specified in the Instructions above, all documents and communications relating to any efforts taken by you, BB&T, or the FDIC-R to preserve documents or information related to Colonial.

95.    Without regard to the time frame specified in the Instructions above, all documents produced to you pursuant to any third-party subpoena issued in this Action.

DATED this 6th day of January, 2015.

KING & SPALDING LLP
Elizabeth V. Tanis
Drew David Dropkin
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5140
Email:  ddropkin@kslaw.com
            etanis@kslaw.com


BALL BALL MATTHEWS & NOVAK PA
Tabor Robert Novak, Jr.
PO Box 2148
Montgomery, AL 36102-2148
Telephone:  (334) 387-7680
Facsimile:  (334) 387-3222
Email:  tnovak@ball-ball.com


ATTORNEYS FOR
PRICEWATERHOUSECOOPERS LLP

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2015, a true and exact copy of the foregoing **DEFENDANT PRICEWATERHOUSECOOPERS LLP'S FIRST SET OF DOCUMENT REQUESTS TO THE COLONIAL BANCGROUP, INC. AND KEVIN O'HALLORAN** was served on the following counsel of record via U.S. mail:

Rufus T. Dorsey, IV
Ronald T. Coleman, Jr.
C Edward Dobbs
PARKER, HUDSON, RAINER & DOBBS, LLP
285 Peachtree Center Avenue, NE
1500 Marquis Two Tower
Atlanta, GA 30303
***Attorneys for Plaintiffs***

Jonathan C. Medow
Stanley J. Parzen
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
***Attorneys for Defendant Crowe Horwath, LLP***

Christopher A. Caserta
Nicholas J. DiCarlo
DICARLO CASERTA MCKEIGHAN PLC
6900 E. Camelback Road, Suite 250
Scottsdale, AZ 85251
***Attorneys for Plaintiffs***

James Harold Anderson
BEERS ANDERSON JACKSON PATTY & FAWAL
PC
P.O. Box 1988
Montgomery, AL 36102
***Attorney for Defendant Crowe Horwath, LLP***

Andrew P. Campbell
Justin G. Williams
Caroline Smith Gidiere
CAMPBELL GUIN WILLIAMS GUY & GIDIERE
520 N. 20th Street, Suite 2000
Birmingham, AL 35203
***Attorneys for Plaintiffs***

Dennis Bailey
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
P.O. Box 270
Montgomery, AL 36101-0270
***Attorney for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank***

David Mullin
John M. Brown
John G. Turner, III
Robert Bell
Clint R. Latham
Richard Biggs
MULLIN, HOARD & BROWN, LLP
500 South Taylor, Suite 800
Amarillo, TX 79101
***Attorneys for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank***

Thomas J. O'Brien
FEDERAL DEPOSIT INSURANCE CORPORATION
3501 Fairfax Drive, Room VS-B-7032
Arlington, VA 22226-3500
***Attorney for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank***

Drew D. Dropkin (Ga. Bar No. 231031)
*admitted pro hac vice*