# EXHIBIT B

2007 WL 7113002 (N.Y.Sup.) (Trial Order)
Supreme Court of New York.
New York County

Richard A. WILLIAMSON as Successor Liquidating Trustee on Behalf of
Lipper Convertibles, L.P., and Lipper Fixed Income Fund, L.P., Plaintiff,
v.
PRICEWATERHOUSECOOPERS LLP, Defendant.

No. 602106/2004.
February 21, 2007.

**Special Referee Decision & Order**

For Plaintiff, Ms. Lisa Buckser-Schulz, Esq., Labaton Sucharow & Rudoff, LLP, 100 Park Avenue, New York, NY 10017, lbuckser@labaton.com.

For Defendant PriceWaterhouseCoopers LLP, Mr. J. Peter Coll, Jr., Esq., Orrick Herrington & Sutcliffe LLP, 666 Fifth Avenue, New York, NY 10103, Pcoll @orrick.com.

Louis Crespo, Special Referee.

**THE SUPREME COURT : NEW YORK COUNTY IAS PART 85R**

Pursuant to CPLR § 2221 (e), the plaintiff moves for an order granting renewal on the ground that there are "new facts that were not considered on the prior motion" (Plf., Notice of Motion).

The salient facts giving rise to this action and the prior motion to compel certain discovery are set out in the decision and order of the Special Referee, dated November ??, 2006 (the "November 13-Order"). For the purpose of brevity, those salient facts are herein incorporated by reference. The parties' familiarity with the facts is presumed.

## BACKGROUND

In brief, following motion practice and an appeal (*see Williamson v PriceWaterhouseCoopers,* LLP, 32 AD3d 179) the issue of supervision of discovery was referred to the Special Referee. Subsequently, the plaintiff noticed his motion to compel the defendant to produce audit work papers testing the valuation of securities held by other hedge funds audited by the defendant having no direct relationship to the funds audited by the defendant (the "Lipper Funds"). The defendant opposed the motion on various grounds and, in turn, the plaintiff replied. In the interim, the defendant served plaintiff with interrogatories with respect to the plaintiff's convertible securities brought and sold from 1995 through 2001. The plaintiff's responses to the interrogatories were limited, but some objections were noted. In turn, the defendant moved for compel responses to those interrogatories. The plaintiff opposed the motion.

On November 13, 2006, I granted in part and denied in part the parties' respective motions. I granted defendant's motion to compel responses to particular interrogatories, but denied plaintiff's motion to compel production of nonparty audits from the defendant. With regard to denial, I found that the plaintiff was not entitled to production of the nonparty hedge fund work papers as: (1) they were unrelated to the audits in issue; (2) that the audits in issue related to the Lipper Funds convertible securities before the "implosion" in March 2002; (3) that the unrelated audits had no connection to the "implosion"; (4) the fact that the

unrelated audits concerned similar convertible securities was of no moment as the protocol used to audit any and all similar convertible securities was provided in defendant's firm-wide Audit Manual.

My reasoning was based on persuasive case law suggesting that the Audit Manual was the best source of information on a protocol (citing *In re Oxford Health Plans, Inc.*, 2001 WestLaw 34780563, at * 2 [Dist Ct NY 2001] [contentions that audit manual and related materials were immune from discovery was unpersuasive as the work papers produced contained references to the firm's audit manual and materials and cited provisions of the audit materials in describing procedures performed during the audit]; *see also, Fields v Oliver's Stores, Inc.*, 1991 West Law 44845 [Dist Ct NY 1990] [defendant in securities fraud action ordered to produce audit manuals as they were the best source of information available to plaintiffs on how the firm conducted audits]).

I specifically noted that the plaintiff failed to demonstrate the relevance that work papers of unrelated audits had when the protocol for conducting any and all audits was premised on both defendant's firm-wide manuals and pursuant to financial accounting standards ("FAS") or generally accepted auditing standards ("GAAS"). I further reasoned that in the present case, the information requested as to the audits of unrelated Hedge Funds was irrelevant to the issues presented and that the plaintiff alleged that the defendant's audits were not conducted in accordance with GAAS and/or that it ignored material errors in the financial statements that it audited year after year. Whether unrelated audits of hedge funds were conducted in accordance with the same standards was found to be irrelevant to the issue of defendant's alleged material errors in the Lipper Funds' financial statements. I found, among other things, that the unrelated audits of nonparty hedge funds had little semblance to the defendant's audits of the subject Fund. Therefore, I concluded that in view of all of the above the unrelated audits would obscure, rather than sharpen the issues for trial (*Blittner v Berg & Dorf*, 138 AD2d 439).

Plaintiff moves to reargue that branch of his motion to compel the disclosure of unrelated audits of eight hedge funds. To support the motion, he submits the affidavit of his auditing and accounting expert, Laureen M. Ryan ("Ryan"), who avers that the work papers of the other unrelated hedge funds are relevant to a "significant part of the opinion testimony" she intends to offer at trial (Ryan 12/15/06 Aff., ¶ 5, p 2). Ryan avers that the defendant's Audit Manual does not provide specific guidance as to how to test the valuation of exchange-traded securities; it simply refers to "other accounting and auditing literature" (id.). Ryan reviews several of the "other accounting and auditing literature" referred in defendant's Audit Manual for determining the fair value of investments for exchange-traded securities, such as, the last quoted price of a security traded on the valuation date or quoted market prices, if available, as the best evidence of the fair value of financial instruments.

However, Ryan maintains that although the foregoing procedures are recommended in defendant's Audit Manual, defendants' experts are "taking a position that is contrary to prevailing GAAP by maintaining that it is not appropriate to value exchange-traded securities at the last sales price on the exchange on which they are listed" (id., ¶ 9, p 4). Ryan notes to the defendant's expert, Gary Watson ("Watson"), who is "being proffered by [defendant] as its expert... [who] stated... prices should be obtained from the 'OTC market' " (id., p 4).

Similarly, defendant's second expert, David P. Stowell ("Stowell"), provides an opinion that "exchanges are not considered good sources for broad-based convertible pricing information" and "there is a limited confidence associated with convertible pricing provided by exchanges" (id., ¶ 11, p 5).

Ryan avers that access to the work papers of the other unrelated hedge funds (similarly situated) will enable her to "definitively establish what [defendant's] actual interpretation of GAAP [is] ... for the accounting and auditing of the valuation of exchange-trade convertible securities during the period in issue" (id., ¶ 12, 5). It is her belief that defendant's experts' opinions are at odds with the approach defendant employs in its audits from 1995 to 20000 of the other unrelated hedge funds.

In further support of the motion, plaintiff's attorney affirms that *subsequent* to the briefing on the motion to compel, the expert reports by both Mssrs., Stowell and Watson were submitted to the *plaintiff(italics* for emphasis). It was only after the attorney and expert reviewed the reports that the plaintiff then moved to renew. Plaintiff's attorney seeks renew on the ground that based

on the subject reports, this Court's decision denying plaintiff's motion to compel was based on a factual assumption that has recently proven to be incorrect (Buckser-Schulz 12/15/06 Affirm., ¶9; Plf., Memo of Law, pp 2-3).

## *DISCUSSION*

A motion for leave to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination" and it "shall contain reasonable justification for the failure to present such facts on the prior motion" (CPLR § 2221 [e]).

A motion for leave to renew is "granted sparingly, and only in cases where there exists a valid excuse for failing to submit additional facts on the original application" (*Matter of Beiny*, 132 AD2d 190,210). In *Elder v Elder* (21 AD3d 1055), the Court instructed that "[a] motion for leave to renew is not a second chance freely given to parties who have not exercised due diligence in making their first factual presentation" (*citing Renna v Gullo*, 19 AD3d 472; *Rubinstein v Goldman*, 225 AD2d 328; *Hart v City of New York*, 5 AD3d 438).

The statutory language is specific, it provides that a motion for leave to renew shall be based on new facts "not offered on the prior motion" (CPLR 2221 [e][2] ). The movant must provide a reasonable justification for the failure to not present the new facts on the prior motion. In turn, I must find that the movant had a reasonable excuse for failing to present those facts on the prior motion (*Kaufman v Kunis*, 14 AD3d 542; *Yarde v New York City Transit Auth.*, 4 AD3d 352; *Johnson v Marquez*, 2 AD3d 786; *Riccio v Deperalta*, 274 AD2d 384, *appeal dismissed*, 95 NY2d 957).

However, the First Department has interpreted the statutory requirement to be a flexible one under particular circumstances. The court has discretion to grant renewal in the interest of justice even though the facts were known to the movant at the time the original motion was made and although the vigorous requirements for renewal are not met, when such relief is proper so as not to "defeat substantive fairness" (*Metcalfe v City of New York*, 223 AD2d 410, 411 [to the extent that rigorous requirements for renewal of summary judgment motion were not fully met, relief was properly granted so as not to defeat substantive fairness where discovery of party was necessary to determine its involvement at work site where injury occurred, and where court provided that party could renew its motion for summary judgment dismissal of complaint if, after discovery, no evidence of liability was found]; *Garner v Latimer*, 306 AD2d 209 [plaintiff's failure to submit a physician's affidavit was inadvertent and, coupled with the fact that defendant has failed to establish any prejudice as a result of the delay, we find that renewal should have been granted];see *also, Rancho Santa Fe Ass'n v King*, ___ AD3d ___, 2007 West Law 6401).

Defendant's contention that the motion be denied because the plaintiff has not offered any new or justifiably omitted fact is of no legal moment (Def., Memo of Law in Opposition, p 5-7). I find that the plaintiff's motion to renew is based on new facts that were not available at the time the plaintiff originally moved to compel production (August 23, 2006), a few weeks before receipt of the defendant's experts' September 2006-report. Moreover, the experts were deposed after the issuance of the November 13-Order. The motion follows review of the defendants' experts' reports by plaintiff's expert. The review of the reports was not possible in August 2006 and did not take place until after November 2006. The deposition of defendants' experts followed after the September 2006-submission of the plaintiff's motion and defendants' opposition. Lastly, the deposition of defendants' experts took place after November 2006. Accordingly, the interest of justice and substantive fairness warrant the granting of the motion to renew (*Metcalfe v City of New York, supra*).

The defendant argues should the plaintiff demonstrate entitlement to renew, the underlying motion should nonetheless be denied as the new facts do not justify compelling the discovery that he seeks.

I begin with my initial determination in denying plaintiff's motion. It was premised on my finding that the unrelated audits may have related to similar convertible securities, but that was of no moment as the protocol used to audit any and all similar convertible securities was provided in defendant's firm-wide Audit Manual. At that time there was nothing in the papers to suggest defendant's position was inconsistent or at odds with anything else in the record.

Here, however, the plaintiff has raised a disputed issue of whether the defendant's experts' opinions seemingly appear to be at odds with the Audit Manual. In opposition to the motion, the defendant contends the plaintiff's argument is incorrect and that any such claim that their experts' opinions are inconsistent "present issues to be tried, but they do not provide any support for plaintiff's effort to obtain documentation for other audits" (Def., Memo of Law in Opposition, p 9).

But, if their opinions are seemingly inconsistent with the defendant's Audit Manual - such inconsistency will be subject to examination at trial - then it follows work papers that may rebut the opinions - especially the work papers that reflect defendant's audit measures as to the unrelated eight hedge funds maybe in accordance with the Audit Manuals as opposed to the experts' opinions - is material and relevant (*Allen v Crowell-Collier Publishing Co.,* 21 NY2d 404).

## CONCLUSION

Accordingly, in view of the above the plaintiff's motion for leave to reargue is granted. Upon consideration of the new facts and review of the parties' respective legal arguments, that branch of the November 13-Order denying plaintiff's motion to compel the production of work papers is modified to the extent that it is hereby granted with respect to the specific hedge funds noted in the November 13-Order. Defendant shall produce said work papers (subject to the confidentiality stipulation of the parties) forthwith and no later than two (2) weeks after the service of a copy of this Order with notice of entry [1].

---

[1] In view of the above disposition, I need not address plaintiff's argument third contention (re: plaintiff has foregone the opportunity to seek review of the November 13th Order by Justice Moskowitz) (Def., Memo In Opposition, p 10). Moreover, there being no further discovery issues pending, the supervision of discovery is no longer required and a separate grey sheet will follow.

Pursuant to CPLR § 3104, this constitutes the Order of the Special Referee.

Dated: February 14, 2007

<<signature>>

LOUIS CRESPO

SPECIAL REFEREE

End of Document                                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.