IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN, <br><br>  Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, <br><br> Defendants. | Case No. 2:11-cv-00746-WKW |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK, <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, <br><br> Defendants. | Case No. 2:12-cv-00957-WKW |

**THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER
FOR COLONIAL BANK'S MOTION TO COMPEL THE PRODUCTION OF
DOCUMENTS FROM PRICEWATERHOUSE COOPERS LLP AND BRIEF IN
<u>SUPPORT THEREOF</u>**

On December 4, 2014, the Federal Deposit Insurance Corporation as Receiver for Colonial Bank ("FDIC-R") served its First Request for Production of Documents ("Request for Production") on PricewaterhouseCoopers LLP ("PwC"). *See* Ex. A. On January 12, 2015, PwC served its Responses and Objections to the Request for Production ("PwC Response"), which only contained dozens of pages of boilerplate objections. *See* Ex. B. The FDIC-R resorted to the

requests for production only after it attempted to reach agreement with PwC regarding a protocol that would govern PwC's production of electronically stored information in this matter and PwC refused to provide the information needed to do so. *See* Ex. C. After months of negotiations, the FDIC-R was forced to take a Rule 30(b)(6) deposition of PwC regarding its efforts to preserve, collect and produce relevant documents. As discussed in Section IV.B., the witness, however, was instructed not answer numerous questions relating to document preservation, collection, and production. Thus, more than a year later, basic questions—such as which PwC custodians were placed on litigation hold—remain unanswered.[1]

Despite PwC's refusal to provide information relating to its preservation, collection, and production of documents in this case, the FDIC-R has identified and requested several key types of documents and information that PwC has refused to produce. PwC has refused to (1) produce deposition transcripts of its experts in *Taylor, Bean & Whitaker Plan Trust vs. PricewaterhouseCoopers, LLP*, Case No. 13-33964 CA 01 (40), pending in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida ("TBW case"), a case involving many of the very same issues that are at issue here regarding PwC's negligence in providing professional accounting services to Colonial Bank; (2) provide information regarding the steps taken by PwC to preserve documents in *this* case, including the identity of PwC personnel that received litigation hold notices (and who thus may have information relevant to Colonial); (3) identify and produce documents from any Colonial Bank specific e-mail folders created by key custodians in this case; and (4) produce documents resulting from search terms that are clearly relevant to key

---

[1] Although PwC has produced documents to the FDIC-R, the vast majority of those documents were produced in other matters and to entities other than the FDIC-R. Furthermore, despite repeated requests, PwC refused to provide information regarding the content of its productions until recently. Instead, it appears that PwC has taken the position that its productions to other parties, in other matters, contain much of what the FDIC-R has requested, and the FDIC-R may request any additional documents after it has reviewed the productions.

**Motion To Compel and Brief in Support**                                                                 2

issues in this case. Accordingly, the FDIC-R seeks an order compelling PwC to produce documents and information responsive to these requests.

## I.  Statement on Attempts to Meet and Confer

The parties have engaged in numerous meet and confer telephone conferences and exchanged numerous letters and e-mails regarding PwC's boilerplate objections to the Requests for Production and information regarding electronically stored information ("ESI"). The FDIC-R has been asking for information since October 2014 and basic questions remain unanswered, due in large part to unwarranted assertions of "work product." After PwC's initial refusals to provide information, the FDIC-R attempted to expedite access to that information through a Rule 30(b)(6) deposition held on September 2, 2015, but PwC's counsel instructed that witness not to answer a variety of questions. In a final attempt to address the basic information sought and come to a reasonable arrangement for producing documents relevant to *this* case, the FDIC-R exchanged letters and had a final meet and confer conference. *See* Exs. D, E. It is now clear that PwC will not provide basic information concerning its efforts to respond to the Requests for Production, including the identity of custodians who may have relevant information. It is also now clear that PwC will not produce relevant documents beyond those identified by incomplete search terms used in the TBW case. While PwC touts the fact that it dumped millions of pages of documents from other cases on the FDIC-R with no guide or index as to the content of those productions, relevant documents remain unproduced and the FDIC-R has been forced to seek the Court's intervention.

## II.  Background

On August 14, 2009, the Alabama State Banking Department closed Colonial Bank ("Colonial" or "Bank") and appointed the FDIC as receiver. Colonial was the victim of a multi-

year fraud perpetrated by Taylor Bean & Whitaker Mortgage Corporation ("TBW"), its largest mortgage banking customer. This fraud resulted in financial statements that grossly misstated Colonial's true financial condition.

TBW chairman Lee Farkas and treasurer Desiree Brown conspired with two of Colonial's Mortgage Warehouse Lending Division ("MWLD") employees, Catherine Kissick (head of the MWLD) and Teresa Kelly (operations supervisor reporting to Kissick), to defraud Colonial by obtaining large amounts of MWLD financing for TBW without providing required collateral, thereby stealing money from Colonial. At all times that the fraud was ongoing, PwC served as Colonial's external, independent auditor, and Crowe served as the Bank's internal auditor. Neither Crowe nor PwC detected the fraud.

The FDIC-R asserts claims against PwC for professional negligence, gross negligence, negligent misrepresentation, and breach of contract. *See* FDIC-R's Second Amended Complaint, Docket #53.

### III. Standard for Motion to Compel

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). Consistent with the notice-pleading system established by the Federal Rules, the discovery rules are to be construed liberally. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978). This Court "has broad discretion to ensure that parties obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense, and for good cause, may order discovery of any matter relevant to the subject matter involved in the action." *Downing v. Billy Barnes Enterprises*, CA 1:12-00435-C, 2013 WL 1857113, at *2 (S.D. Ala. May 2, 2013). When a party fails to comply with its discovery obligations, the opposing party,

upon reasonable notice, may apply for an order compelling discovery. FED. R. CIV. P. 37(a)(3). In ruling on a motion to compel discovery, this Court should "consider the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in a particular case before the court." *Giraldo v. Drummond Co., Inc.*, 2:09-CV-01041-RDP, 2012 WL 2358297, at *2 (N.D. Ala. June 15, 2012). As demonstrated below, the Court should grant the FDIC-R's motion to compel.

## IV.   Motion to Compel

The documents and information the FDIC-R seeks to compel in this motion fall into two categories: deposition transcripts and ESI-related documents and information. As a result of communications between the parties, the only issue remaining with respect to deposition transcripts is whether PwC must produce the deposition transcripts of experts in the TBW case. With respect to ESI-related documents and information, the parties have been unable to resolve their disputes over information regarding litigation holds and preservation, collection and production efforts, reviewing and producing Colonial specific e-mail folders, and producing documents identified through search terms requested by the FDIC-R.

### A.   DEPOSITION TRANSCRIPTS

Request for Production 33 seeks "transcripts and video recordings of depositions taken by any party in the [TBW case]." *See* Ex. A at p. 25. This discovery is relevant and should be produced by PwC.

On October 16, 2014, this Court issued its Order on Interim Discovery Plan. *See* Doc. 103. In that Order, the Court noted that the FDIC-R and CBG had requested that the Court order PwC to produce deposition transcripts in the TBW case. *Id.* at p.5, fn.2. Crowe Horwath filed an

objection to that request, arguing that PwC's production would violate a protective order in place in that case. *Id.* The Court held that, "[b]ecause there is no argument by the FDIC-R and CBG that the protective order, without modification, would not be violated if the requested documents were produced, the court declines at this juncture, to order disclosure." *Id.*

The confidentiality issue was later resolved and PwC began producing deposition transcripts from the TBW case in February 2015. PwC continued producing transcripts, on a rolling basis, until June 2015. In early September 2015, however, while preparing for depositions, the FDIC-R learned that two depositions were taken in the TBW case that PwC had not produced. On September 9 and 10, 2015, the FDIC-R contacted PwC and requested those transcripts as well as any other transcripts that had not already been produced. *See* Exs. F, G. On September 15, 2015, PwC agreed to produce the two transcripts requested, but did not respond to the FDIC-R's inquiry as to whether there were any other depositions transcripts that it had not produced. *See* Ex. H. It was only at this point that the FDIC-R learned that PwC was "evaluating" whether it would produce additional transcripts responsive to the FDIC-R's request for production. *See* Ex. I.

The FDIC-R subsequently learned, through filings in the TBW case, that there were at least two other deposition transcripts that PwC had not produced to the FDIC-R. On October 5, 2015, the FDIC-R requested that PwC produce those transcripts, produce any other transcripts that it had not produced to the FDIC-R, and agree to provide future deposition transcripts by electronic mail within two days of receipt of such transcripts by PwC. *See* Ex. D. On October 16, 2015, PwC advised that it *would not produce* deposition transcripts of experts it had proffered in the TBW case, claiming that "any such disclosure of expert opinions that PwC may or may not offer in this case is premature." *See* Ex. E.

Contrary to PwC's position, the deadline for expert disclosure in this case is irrelevant to whether PwC must produce deposition transcripts of its experts in *other* cases. In *Frischhertz v. Smithkline Beecham Corporation*, No. 10-2125, 2012 WL 32649 (E.D. La. 2012), the plaintiff requested "a copy of all depositions of all experts who have testified on your behalf in cases involving allegations that Paxil caused birth defects." *Frischhertz*, 2012 WL 32649 at *2. One of the defendant's arguments in resisting this discovery was that it was not required to identify its expert witnesses or the opinions of its experts in the pending matter until the Court's deadline for written reports of experts, and that it should not be required to do so before the deadline. *Id.* The court ordered production, however, holding that the expert transcripts from *other cases* may lead to the discovery of admissible evidence in the pending case.

Ultimately, the positions taken by PwC's experts in the TBW case, and facts on which the experts relied, on similar issues to those involved in this case, are relevant and reasonably likely to lead to the discovery of admissible evidence. As such, PwC must produce those depositions pursuant to Rule 34 of the Federal Rules of Civil Procedure regardless of any expert deadline involved in *this* case. Thus, the FDIC-R requests that the Court order PwC to produce all transcripts from the TBW case to the FDIC-R.

**B.    ISSUES RELATING TO ELECTRONICALLY STORED INFORMATION**

The FDIC-R seeks information regarding litigation holds, such as the identity of persons receiving such litigation holds, as well as related information regarding PwC's efforts to preserve, collect and produce ESI and documents. In addition, the FDIC-R seeks to compel production of documents in Colonial specific e-mail folders created by key PwC personnel as well as documents responsive to the FDIC-R's proposed search terms. In order to understand why this information is needed, it is important to first understand that the parties were unable to

enter into an agreement with respect to the preservation, collection, and production of PwC's ESI because PwC refused to provide basic information needed to do so.

### 1. Background Regarding ESI Negotiations

In September 2014, the FDIC-R proposed a joint ESI Protocol that would govern the collection and production of ESI in this matter. The FDIC-R made available technical personnel to discuss in great detail the sources and availability of ESI inherited from Colonial by the FDIC-R. The FDIC-R requested similar information from PwC. Specifically, on October 7, 2014, the FDIC-R requested information concerning various topics, such as legal holds, document retention and destruction policies, custodians, data systems, policies concerning the storage of ESI, current state of PwC's ESI, identification, collection and processing of ESI, the use of search terms, and hard copy document imaging. *See* Ex. C. PwC refused to provide this information in the context of an ESI Protocol. In refusing to provide information, PwC claimed that it could not formulate responses to these basic questions without knowing the specific types of documents that the FDIC-R wanted produced in this case.

Eventually, the FDIC-R concluded that PwC was not interested in negotiating an ESI Protocol and served document requests on PwC. *See* Ex. A. These requests were met by more than 40 pages of boilerplate objections, *see* Ex. B, coupled with a dump of millions of pages of documents produced in other cases and investigations relating to PwC's audits of the Bank, without any index or explanation of what was being produced. In fact, it was only after the FDIC-R made repeated requests for information regarding the documents produced that PwC provided information regarding the location of the audit work papers in the production. *See* Exs. J, K. Only after repeated requests did PwC produce what it described as a "high-level" index—telling the FDIC-R for the first time that the majority of PwC's production was a reproduction of

productions PwC had made to other parties in other matters—much of which was duplicative. *See* Ex. L. In short, the FDIC-R was given very little information regarding PwC's productions or clarity regarding what PwC was or was not producing in response to the Requests for Production. Instead, the FDIC-R was forced to send letter after letter and have call after call in order to obtain basic information regarding the productions.

In an attempt to determine what was actually done by PwC to preserve, locate, and produce responsive documents, the FDIC-R served a Rule 30(b)(6) notice on those topics on June 9, 2015. *See* Ex. M. In response, on July 21, 2015, the FDIC-R received a long letter finally providing some basic information regarding the various questions that the FDIC-R had first asked more than 8 months before, but PwC had refused to answer, during the FDIC-R's attempts to enter into an agreement regarding PwC's preservation, collection and production of ESI. *See* Ex. N. Yet the letter remained vague, stating PwC's position that "reasonable" efforts to collect and produce documents had been taken. Rather than continue the months long back and forth, the FDIC-R moved forward with the deposition, serving an amended notice on July 31, 2015, and hoping to obtain greater clarity as to what PwC had done to preserve, collect, and produce documents related to its audits of the Bank. *See* Ex. O. The deposition was taken on September 2, 2015, and counsel for PwC directed the witness not to answer questions relating to the scope of the litigation holds put in place by PwC, as well as the actual collection and production efforts taken by PwC, claiming that such information was protected from disclosure by the attorney work product doctrine and the attorney client privilege. In short, PwC asks the FDIC-R to "trust but *not* verify," despite PwC's failures to identify and produce relevant documents. As a result, the FDIC-R requests that the Court order PwC to disclose information regarding its litigation holds, as well as its document preservation, collection, and production efforts.

2.  **Litigation Holds and Document Preservation, Collection, and Production Information**

The FDIC-R sought information regarding PwC's litigation hold notices and efforts to preserve, collect, and produce documents through a Rule 30(b)(6) deposition. Topic 8 of the Rule 30(b)(6) deposition notice sought testimony regarding "[a]ll 'litigation holds' or notices to preserve Documents, ESI, or any other information relating to Colonial Bank, CBG, TBW or Crowe issued by PwC, including, but not limited to, the following: (a) the identity of all individuals and/or departments who received such notices, (b) the steps that were to be taken in response to the notice, and (c) the individuals listed as the contact for questions regarding the notice." *See* Ex. O at 11. During the deposition, however, counsel for PwC improperly instructed the witness to not answer numerous questions relating to the litigation holds, including the following:

- Whether the litigation hold requires a person who receives it to respond. *See* Ex. P at 42:21-42:7.

- The identity of the persons receiving the litigation holds. *See* Ex. P at 44:5-44:23; 199:22-200:12.

- The categories of information subject to the litigation hold. *See* Ex. P at 44:24-45:19.

- Whether the litigation hold instructed its recipients to do anything specific with respect to any documents, information or ESI. *See* Ex. P at 45:20-46:3.

- Whether anyone identified as a custodian did not bill time to the Colonial engagements. *See* Ex. P at 159:23-160:5.

- The identity of any specific individuals that assisted with the preservation, collection, or production of documents. *See* Ex. P at 194:23-196:5.

Other topics in the deposition notice addressed PwC's efforts to preserve, collect, and produce documents. *See, for example,* Ex. O at pp. 11, 13-14 (topics 7-9, 16-17). Ultimately, PwC appeared to take the position that any information regarding the litigation holds in this case, as

Motion To Compel and Brief in Support 10

well as the preservation, collection, or production of documents specific to this case, as opposed to generally, was privileged because counsel directed those activities. In fact, the witness had never even seen the Requests for Production, despite being designated to testify regarding PwC's efforts to produce documents in response to those requests. *See* Ex. P at 200:13-21.

At the conclusion of the Rule 30(b)(6) deposition, the FDIC-R requested certain information that PwC agreed to provide, but has thus far failed to do so. Notably, the FDIC-R first requested this same information on October 7, 2014, more than a year ago.

   a.   The FDIC-R requested that PwC identify those persons who received litigation holds relating to Colonial that were not on the list of personnel who billed time to Colonial engagements so that the FDIC-R may determine whether there are additional custodians that should be addressed with respect to ESI.

   b.   The FDIC-R requested that PwC identify any personnel who billed time to the Colonial engagements, but who left PwC prior to receiving a litigation hold related to the Colonial matters and for any such individuals, to determine whether they were subject to any other litigation hold such that their ESI would have been preserved.[2]

The FDIC-R again requested the information above in its October 5, 2015 letter to counsel for PwC. *See* Ex. D at p.3. On October 16, 2015, PwC responded by stating that "PwC will not provide the names of the individuals who received the hold notices, as PwC has asserted (in this litigation and other litigation) that such information is protected from disclosure by attorney client privilege and work product protection." *See* Ex. E at p.2.

PwC's position is not supported by law. While some courts have held that a litigation hold itself may be protected from disclosure, to the extent that "defendants seek 'to foreclose *any* inquiry into the contents of those notices at deposition or through other means, such a position is not tenable.'" *Cannata v. Wyndham Worldwide Corp.*, No. 2:10-cv-00068-PMP-LRL (D. Nev. Aug. 10, 2011)(citing *In re Ebay Seller Antitrust Litig.*, 2007 WL 2852364, at *2 (N.D. Cal. Oct.

---

[2] PwC agreed to confirm that any documents subject to a litigation hold, as described herein in "b," were included in the collection of ESI in this case. Thus, this request is not currently at issue in this motion.

Motion To Compel and Brief in Support                                                                                       11

2, 2007)). "Plaintiffs are entitled to know 'what kinds and categories of ESI [defendant's] employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end.'" *Id.*; *see also Major Tours, Inc. v. Colorel*, Civ. No. 05-3091 (JBS/JS), 2009 WL 2413631 (D. N.J. Aug. 4, 2009) ("Despite the fact that plaintiffs typically do not have the automatic right to obtain copies of a defendants' litigation hold letters, plaintiffs are entitled to know which categories of electronic storage information employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end."). In fact, Magistrate Putnam of the United States District Court for the Northern District of Alabama recently held that litigation holds themselves are not protected by broad assertions of privilege or work product, let alone the information sought by the FDIC-R. *See In re Blue Cross Blue Shield Antitrust Litig.*, NO. 2:13-CV-20000-RDP (N.D. Ala. Sept. 2, 2015), attached hereto as Ex. Q; *see also In re: Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP (N.D. Ala. Nov. 4, 2015) (reaffirming position regarding privilege and work product but allowing limited redactions), attached hereto as Ex. R.

In *Cohen v. Trump*, No. 13-CV-2519-GPC (WVG), 2015 WL 36117124 (S.D. Cal. 2015), the Court noted that it had previously recognized that discovery regarding the circumstances of a company's litigation hold is not privileged, even if the hold memorandum itself is privileged. *Cohen*, 2015 WL 36117124 at *7. In that case, plaintiffs sought the production of all documents relevant to the litigation hold, including documents sufficient to show: (1) the names and titles of the persons notified of the litigation hold and the dates of such notifications; (2) the types of documents and files (including ESI) subject to the litigation hold; and (3) any efforts to enforce the litigation hold. *Id.* (citing *Makaeff*, Doc. No. 188 at 11-12). The court stated that (1) the basic details surrounding the litigation hold are not privileged; (2) that a

party may not foreclose any inquiry into the contents of those notices at deposition or through other means; and (3) that plaintiffs were entitled to know what kinds and categories of ESI the defendants' employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end. *Id.* The court ordered defendants to provide plaintiffs and the Court with a sworn declaration detailing their litigation hold efforts and directly addressing plaintiffs' requests for production. *Id.* (citing *Makaeff*, Doc. No. 188 at 12-13). The FDIC-R requests that this Court do the same.

PwC has refused to provide information regarding the litigation hold notices issued with respect to Colonial—even when questioned on this topic at deposition. Thus, the FDIC-R requests that the Court order PwC to provide a sworn affidavit detailing its litigation hold efforts and directly addressing (1) the names and titles of the persons notified of the litigation holds and the dates of such notifications; (2) the types of documents and files (including ESI) subject to the litigation holds; (3) the specific actions the recipients of the litigation hold were instructed to undertake; and (4) any efforts to enforce the litigation holds. In addition, the FDIC-R requests that the Court order PwC to include in that declaration information regarding its efforts to preserve, collect and produce ESI and hard-copy documents in this case, paying particular attention to those questions set forth in Appendix II to the Guidelines to Civil Discovery Practice in the Middle District of Alabama relating to those topics.

### 3. Specific E-Mail Folders from Key Custodians of PwC

On October 5, 2015, the FDIC-R requested that PwC confirm that the e-mail folder structures of key custodians from which ESI was collected were reviewed to determine whether any folders or subfolders relating to the Bank were created by the custodians. *See* Ex. D at 4. The FDIC-R limited this request to 16 key custodians in order to avoid any claims of undue burden

by PwC.[3] *Id.* The FDIC-R requested that any such folders be produced by October 20, 2015, so that the documents could be reviewed and used in upcoming depositions. *Id.*

PwC responded on October 16, 2015 and advised that the manual review of folder structure would have been "duplicative of, and perhaps less inclusive than, relying on search terms." *See* Ex. E at p.3. While the FDIC-R believes that search terms are an appropriate vehicle for locating responsive documents, it is not the only means of locating documents. Search terms will not necessarily locate all relevant documents. This is shown by the FDIC-R's recent request that PwC produce ESI from key custodians during a narrow, but important, time-frame separate and apart from search terms. That search resulted in PwC producing what it described as responsive non-duplicative documents—in other words, documents that the search terms used by PwC did not locate.

Here, the FDIC-R's request is narrow. It first asks that PwC simply check whether 16 custodians had a specific Colonial folder in their e-mail boxes. Then, for those that do have such a folder, it asked that PwC produce that folder. This is not burdensome and the FDIC-R requests that the Court order PwC to produce any such folders.

4. **Documents Identified As a Result of Search Terms Proposed By the FDIC-R**

On July 6, 2015, the FDIC-R provided PwC with a list of search terms to run against its ESI. *See* Ex. S. PwC advised that the search terms resulted in 80,889 hits, which would require a production of 231,753 documents when families of those documents are included. *See* Ex. T. PwC further advised that it objected to having to review and produce that volume of documents and sought to narrow the universe of documents by adding a search modifier of "(Colonial* OR CBG OR CNB OR CSB)." *Id.* The FDIC-R rejected this unreasonable limitation and again

---

[3] The key custodians are as follows: James Wesley Kelly, Gary Westbrook, Woody Wallace, Jeffrey Naumann, Frank Gaetano, Russell Mallett, Thomas Pirolo, Kim Jackson, Philip Rivers, Jason Roos, Luke Wegner, Kevin Young, Jeff Brown, Patrick Cox, Justin Clark, and Christopher Gerdau.

requested production of responsive documents on October 5, 2015. *See* Ex. D. PwC again refused. *See* Ex. E.

As an initial matter, the FDIC-R cannot agree to the limitations PwC seeks to apply to the search terms. The search terms provided were intended to capture ESI relating to specific issues in this case, such as FAS 140. By limiting the search to those documents that specifically include a reference to Colonial or its holding company, numerous key documents addressing the issues involved would likely be lost. This is illustrated by PwC's September 14, 2015 production of responsive documents relating to Frank Gaetano and others, none of which had been captured by prior searches.[4]

In any event, PwC bases its complaint on the volume of production required. *See* Ex. E. Given the importance of this case and the amount of damages involved, this is not a large universe of documents. Although PwC states that it has already produced a substantial volume of documents (the vast majority of which, however, are reproductions of productions it made to third parties, and many of which are duplicative), the FDIC-R has produced more than twice the amount produced by PwC, and is in the process of producing over 1 million more pages of documents. Thus, PwC's reliance on the volume of production required to justify its refusal to produce documents is belied by its own demands.

## PRAYER

The documents and information the FDIC-R seeks from PwC through this Motion to Compel are relevant and probative of the issues, and are also likely to lead to the discovery of

---

[4] This production was the result of the FDIC-R's request that PwC produce all responsive ESI of certain key personnel involved in sales accounting analysis during a very limited timeframe—which resulted in the production of numerous non-duplicative responsive documents that were not captured by PwC as a result of its prior ESI searches.

Motion To Compel and Brief in Support                                                                                  15

admissible evidence. The FDIC-R respectfully prays that this Court enter an order compelling PwC to produce the documents and information addressed herein within 14 days of that Order.

Dated: November 13, 2015.

Respectfully submitted,

**RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.**
Dennis Bailey (4845-171D)
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3234
Facsimile:   (334) 481-0031
Email:         DRB@rsjg.com

/s/ David Mullin
David Mullin (TX Bar No. 14651600)
*pro hac vice*
John M. Brown (TX Bar No. 3142500)
*pro hac vice*
John G. Turner, III (TX Bar No. 20320550)
*pro hac vice*
Robert Bell (TX Bar No. 00787062)
*pro hac vice*
Clint Latham (TX Bar No. 24013009)
*pro hac vice*
Anthony W. Kirkwood (TX Bar No. 24032508)
*pro hac vice*
Richard Biggs (TX Bar No. 24064899)
*pro hac vice*

**MULLIN, HOARD & BROWN, LLP**
500 South Taylor, Suite 800
Amarillo, Texas  79101
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086
Email:   dmullin@mhba.com
            jobrown@mhba.com
            jturner@mhba.com
            rbell@mhba.com
            clatham@mhba.com
            tkirkwood@mhba.com
            rbiggs@mhba.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on November 13, 2015, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing as set forth below:

Drew D. Dropkin (ddropkin@kslaw.com)
Elizabeth V. Tanis (etanis@kslaw.com)
James H. Anderson (anderson@copelandfranco.com)
Jonathan C. Medow (jmedow@mayerbrown.com)
Stanley J. Parzen (sparzen@mayerbrown.com)
Tabor R. Novak, Jr. (tnovak@ball-ball.com)
Andrew P. Campbell (Andy.Campbell@Campbellguin.com)
Caroline Smith Gidiere (Caroline.Gidiere@Campbellguin.com)
Justin Glyien Williams (Justin.Williams@Campbellguin.com)
Nicholas J. DiCarlo (ndicarlo@dcmplaw.com)
Christopher A. Caserta (ccaserta@dcmplaw.com)
C. Edward Dobbs (ced@phrd.com)
Ronald T. Coleman, Jr. (rtc@phrd.com)
Rufus T. Dorsey, IV (rtd@phrd.com)
James N. Gorsline (jgorsline@kslaw.com)
Juanita Passyn Kuhner (jkuyner@kslaw.com)
Bradley J. Lingo (blingo@kslaw.com)
Geoffrey M. Ezgar (gezgar@kslaw.com)
David Tetrick, Jr. (dtetrick@kslaw.com)
Meredith Moss (mmoss@kslaw.com)
Richard T. Marooney, Jr. (rmarooney@kslaw.com)

/s/David Mullin