# Exhibit C

# John Turner

| | |
|---|---|
| **From:** | John Turner |
| **Sent:** | Tuesday, October 07, 2014 5:06 PM |
| **To:** | Medow, Jonathan C. |
| **Cc:** | Dropkin, Drew; LBassett@kslaw.com; McCarty, Justin; Rufus T. Dorsey (RTD@phrd.com) |
| **Subject:** | RE: ESI |
| **Attachments:** | ESI Inventory 2 (00940977).PDF; ESI Inventory 1 (00941070).PDF |

Jon

Attached you will find the information we agreed to produce in our last phone call. With respect to the remaining items, those are still under consideration; however, we believe that at this point we have provided you with more than enough information so that you can make decisions. To that end, when can we expect to receive the revised protocol referenced in your e-mail? As you know the deadline for finalizing an ESI protocol is quickly approaching.

In our last conversation, we indicated that we would provide you with a list of questions with respect to the Crowe/PwC ESI. Here is our list of questions. Feel free to respond in writing to these questions or we can set up a time to talk if that is more convenient.

1. When was the legal hold for Colonial issued? Was a legal hold issued to all PwC and Crowe employees/departments/network systems or just certain identified employees/departments/network systems? If only certain ones, which ones? Was any follow up done to gather documents?
2. Was a document retention/destruction policy in effect prior to the issuance of a legal hold for this matter? If so, were any responsive materials possibly affected by application of the policy (including, but not limited to, mailbox size limits or inbox date limits)? Could a user circumvent those limits by archiving a folder/file or creating a .pst file?
3. How were custodians identified for collection and what custodians have provided documents? Were any custodians subject to a legal hold prior to the Colonial legal hold being issued?
4. What underlying data systems were searched for relevant/discoverable documents (e-mail, archive e-mail, workstation computers, department fileshare folders, user/custodian network folders, network document management and/or network file management programs, billing/timekeeper systems, voicemail, etc)?
5. What underlying data systems were excluded from the collection that may contain relevant/discoverable information?
6. Did PwC and Crowe have a policy in place that defined if a custodian was required to save electronic data to a network drive vs allowed the user to save the data to the local individual workstation?
7. Do your custodians use a virtual/remote desktop or is work done on each individual local workstation? Or both?
8. What is the current state of PwC's and Crowe's ESI? Has it been collected and is it maintained in a database environment?
9. Has the collected ESI been processed for production to include searchable metadata and OCR text?
10. Have search terms been utilized in order to identify potentially relevant documents or a potential production set? If so, are both natives and static images available for production?
11. To the extent relevant/discoverable documents are not located in the collected ESI but are in ESI format, how do PwC and Crowe suggest handling this situation?

1

12. Have any hard copy documents been imaged? Have they been OCRed? Coded? Has any ESI been imaged without prior processing for metadata extraction?

I look forward to hearing back from you soon on the ESI Protocol.

John


**John Turner**
**Mullin Hoard & Brown, LLP**

**From:** Medow, Jonathan C. [mailto:JMedow@mayerbrown.com]
**Sent:** Monday, October 06, 2014 12:19 PM
**To:** John Turner
**Cc:** Dropkin, Drew; LBassett@kslaw.com; McCarty, Justin
**Subject:** ESI

John,

Following up on our last ESI phone call, we had asked for a few items:

1. A list of custodians whose files comprise the "non-forensic" email database.
2. The forensic file "Inventories."
3. Any index that might be available for the "3d party" and "Loan Files" scanned databases.
4. Any information on the location of the files maintained by Pam Vitto and Young Boozer.

I believe you agreed to provide the first item and were considering and looking into the others. Please let us know where you stand.

We had also suggested that you produce examples from various databases. We will try to incorporate that idea into the revised protocol we are in the process of drafting.

Jon Medow



Jonathan C. Medow | **MAYER • BROWN**
312 701 7060 (*Chicago*) | 212 506 2618 (*New York*)

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.