# Exhibit D

MULLIN♦HOARD♦BROWN♦LLP

**MHB**

ATTORNEYS AT LAW

TONY KIRKWOOD
PARTNER

Email: tkirkwood@mhba.com
Direct Dial: (806) 337-1102
Facsimile: (806) 372-5086

October 5, 2015

Meredith Moss                                                              *Via E-Mail*
King & Spalding
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006

   Re: *FDIC as Receiver for Colonial Bank, et al. v. PricewaterhouseCoopers, et al.*
     United States District Court for the Middle District of Alabama

Dear Meredith:

  This letter seeks documents and information that the FDIC-R has been attempting to obtain from PwC for nearly a year. As you know, in September 2014, the FDIC-R proposed a joint ESI Protocol that would govern the collection and production of ESI in this matter. The FDIC-R made available technical personnel to discuss in great detail the sources and availability of ESI inherited from Colonial Bank by the FDIC-R. The FDIC-R requested similar information from PwC. Specifically, on October 7, 2014, the FDIC-R asked PwC the following questions:

1. When was the legal hold for Colonial issued? Was a legal hold issued to all PwC and Crowe employees/departments/network systems or just certain identified employees/departments/network systems? If only certain ones, which ones? Was any follow up done to gather documents?
2. Was a document retention/destruction policy in effect prior to the issuance of a legal hold for this matter? If so, were any responsive materials possibly affected by application of the policy (including, but not limited to, mailbox size limits or inbox date limits)? Could a user circumvent those limits by archiving a folder/file or creating a .pst file?
3. How were custodians identified for collection and what custodians have provided documents? Were any custodians subject to a legal hold prior to the Colonial legal hold being issued?
4. What underlying data systems were searched for relevant/discoverable documents (e-mail, archive e-mail, workstation computers, department fileshare folders, user/custodian network folders, network document management and/or network file management programs, billing/timekeeper systems, voicemail, etc)?
5. What underlying data systems were excluded from the collection that may contain relevant/discoverable information?

October 5, 2015
Page 2

6. Did PwC and Crowe have a policy in place that defined if a custodian was required to save electronic data to a network drive vs allowed the user to save the data to the local individual workstation?
7. Do your custodians use a virtual/remote desktop or is work done on each individual local workstation? Or both?
8. What is the current state of PwC's and Crowe's ESI? Has it been collected and is it maintained in a database environment?
9. Has the collected ESI been processed for production to include searchable metadata and OCR text?
10. Have search terms been utilized in order to identify potentially relevant documents or a potential production set? If so, are both natives and static images available for production?
11. To the extent relevant/discoverable documents are not located in the collected ESI but are in ESI format, how do PwC and Crowe suggest handling this situation?
12. Have any hard copy documents been imaged? Have they been OCRed? Coded? Has any ESI been imaged without prior processing for metadata extraction?

PwC refused to provide this information in the context of an ESI Protocol. In refusing to provide information, PwC focused on the fact that PwC had no idea what the FDIC-R would be requesting, such that it could not formulate responses to basic questions regarding PwC's ESI.

Eventually, the FDIC-R gave up attempting to negotiate an ESI protocol and served document requests on PwC. These requests were met by more than 40 pages of boilerplate objections, coupled with a dump of millions of pages of documents produced in cases and investigations of PwC related to their audits of Colonial Bank absent any index or explanation of what was being produced. In fact, it was only after the FDIC-R made repeated requests for information regarding the documents produced that PwC provided information regarding the location of the audit workpapers in the production. Only after additional requests did PwC produce what it described as a "high-level" index—telling the FDIC-R for the first time that the majority of PwC's production was a reproduction of productions PwC had made to other parties in other matters—much of which was duplicative. In short, the FDIC-R was given very little information regarding PwC's productions or clarity regarding what PwC was or was not producing in response to the FDIC-R's requests. Instead, the FDIC-R was forced to send letter after letter and have call after call in order to obtain basic information regarding the productions.

In an attempt to determine what was actually done by PwC to preserve, locate, and produce responsive documents, the FDIC-R served a Rule 30(b)(6) notice on those topics on June 9, 2015. In response, on July 21, 2015 the FDIC-R received a long letter finally providing some basic information regarding the various issues that had first been raised more than 8 months before in the context of the ESI protocol PwC refused to agree to. Yet the letter remained vague, stating PwC's position that "reasonable" efforts to collect and produce documents had been taken. Rather than continue the months long back and forth, the FDIC-R moved forward with the deposition, serving an amended notice on July 31, 2015, and hoping to obtain greater clarity as to what PwC had done to preserve, collect, and produce documents related to its audits

October 5, 2015
Page 3

of Colonial Bank. However, at that deposition, counsel for PwC directed the witness not to answer questions relating to the scope of the litigation holds put in place by PwC, as well as the actual collection and production efforts taken by PwC, claiming that such information is work product. In short, PwC asks the FDIC-R to "trust but *not* verify" despite PwC's numerous failures to identify and produce relevant documents.

At this point, and despite the lack of information and cooperation provided by PwC, the FDIC-R has identified the following documents and information responsive to the FDIC-R's requests for production. Depositions have already begun, numerous depositions are scheduled in the near future, and it is critical that we resolve these issues promptly. To the extent that PwC disagrees with the production of any of the documents or information, please state the grounds so these matters can be put to the Court promptly.

1) **Information regarding Custodians:** At the conclusion of the September 2, 2015 Rule 30(b)(6) deposition, the FDIC-R requested certain information that PwC agreed to provide but has thus far failed to do so. Notably, this was information that the FDIC-R first requested on October 7, 2015, nearly a year ago.

   a. The FDIC-R requested that you identify those persons who received litigation holds relating to Colonial Bank that were not on the list of personnel who billed time to Colonial Bank engagements so that the FDIC-R may determine whether there are additional custodians that should be addressed with respect to ESI. Please provide us with this information by October 16.

   b. The FDIC-R requested that you identify any personnel who billed time to the Colonial engagements, but who left PwC prior to receiving a litigation hold related to the Colonial matters and for any such individuals, to determine whether they were subject to any other litigation hold such that their ESI would have been preserved. Please provide us with this information by October 16.

2) **Withheld documents:** On August 5, 2015, the FDIC-R requested that PwC produce e-mails from Frank Gaetano, Jeff Naumann, Russ Mallett, Jason Leitner, Woody Wallace, and Thomas Pirolo dated between April 1, 2008 through May 31, 2008. On August 10, 2015, you indicated that PwC was willing to produce such documents after a "reasonable search and review process," and, on September 14, 2015, you produced documents, stating that PwC was producing responsive, non-privileged, non-duplicative documents. To the extent that PwC has withheld any documents on the basis of privilege, PwC must identify those documents, state the basis for withholding them, and furnish a privilege log. Please provide us with information regarding any documents withheld during the collection of such documents by October 16. In addition, to the extent that PwC has withheld any documents based on its own relevance review—for example, by withholding material related to other audit clients that was consulted in connection with the Colonial engagement—please identify those documents and the basis for withholding them as well.

October 5, 2015
Page 4

Finally, we previously discussed PwC withholding or redacting documents on the basis of the attorney-client privilege or work product protection of Colonial Bank. Given that the FDIC-R holds the rights to any such privilege, please ensure that all such documents have been produced to the FDIC-R in unredacted form. Please confirm that you have done so by October 16.

3) **Desk files or Calendars:** Please confirm that PwC has produced desk files and calendars in response to our requests for production. In reviewing the production index you attached to your July 21, 2015 letter, the collection of desk files is mentioned on pages 14 and 15. While certain custodians are identified, there is also a listing of "miscellaneous" desk files. I have also come across calendaring requests in PwC's e-mail production, but do not know the custodians from which calendars, whether electronic or paper, were collected. Please identify the custodians from whom desk files or calendars were collected and produced by October 16, as well as the location of such documents in PwC's productions. To the extent that the electronic calendars of James Wesley Kelly, Gary Westbrook, Woody Wallace, Jeffrey Naumann, Frank Gaetano, Russell Mallett, Thomas Pirolo, Kim Jackson, Philip Rivers, Jason Roos, Luke Wegner, Kevin Young, Jeff Brown, Patrick Cox, Justin Clark, and Christopher Gerdau have not been produced, please do so no later than October 16, 2015.

4) **Review of e-mail folder structures:** Please confirm that the e-mail folder structures of key custodians from which ESI was collected were reviewed to determine whether any folders or subfolders relating to Colonial Bank were created by the custodians. Based on the available information, it does not appear this step was taken by PwC. Please confirm that you have reviewed the e-mail folder structures of the following personnel: James Wesley Kelly, Gary Westbrook, Woody Wallace, Jeffrey Naumann, Frank Gaetano, Russell Mallett, Thomas Pirolo, Kim Jackson, Philip Rivers, Jason Roos, Luke Wegner, Kevin Young, Jeff Brown, Patrick Cox, Justin Clark, and Christopher Gerdau. Given the upcoming depositions, please confirm by October 16, 2015 that the review has been completed and, to the extent the users created any folders or subfolders for Colonial Bank, that the contents of those folders are produced no later than October 20, 2015.

5) **The FDIC-R's ESI Search terms:** On July 6, 2015, the FDIC-R provided you with a list of search terms to run against PwC's ESI. You advised that the search terms resulted in 80,889 hits, which would require a production of 231,753 documents when families of those documents are included. You further advised that PwC objects to having to review and produce that volume of documents and sought to narrow the universe of documents by adding a search modifier of "(Colonial* OR CBG OR CNB OR CSB).

The FDIC-R cannot agree to these limitations. The search terms provided are intended to capture ESI relating to specific issues in this case, such as FAS 140. By limiting the search to those documents that specifically include a reference to Colonial Bank or its holding company, numerous key documents addressing these issues involved would likely be lost. This is illustrated by PwC's September 14, 2015 production of responsive documents relating to Frank Gaetano and others that had not been captured by prior searches. Ultimately, given the importance of this case and the amount of damages involved, this is not a large universe of documents. Notably, while PwC complains that it has already produced approximately 3.9

October 5, 2015
Page 5

million pages of documents (the vast majority of which are reproductions of productions it made to third-parties, and many of which are duplicative), the FDIC-R has produced more than twice that amount, and is in the process of producing more than 1 million more. Thus, PwC's complaint regarding the volume of production requested is belied by its own demands.

In any event, the vast majority of the FDIC-R's search terms resulted in low hit counts. In fact, 42 of the 45 search inquiries resulted in a total hit count, with families, of less than 50,000 documents. Thus, there is no undue burden with respect to those terms and there is no reason to delay production. Please produce the document returned by these 42 terms no later than October 16.

As to the three remaining search terms, "off balance sheet," "call /2 option," and "sale* accounting," these searches address key issues in this case, including PwC's advice to Colonial Bank regarding the accounting treatment to be applied to the Mortgage Warehouse Lending Division portfolio. Please advise whether PwC intends to stand by its objections to these search terms or, in the alternative, a time-frame for production, by October 16.

6) **Documents relating to the detection of fraud:** As you are aware, the FDIC-R has been requesting documents relating to the detection of fraud for 6 months. Throughout that time, I specifically noted that there was a great deal of press about Chairman Dennis Nally's speeches on this topic and the drafting of a 200-page staff audit manual regarding the detection of fraud and asked that you locate those materials. This was addressed in detail in my August 7, 2105 letter to you on the subject. On August 21, 2015, you advised that you were in the process of conducting a "reasonable search" for such documents (but again provide no information as to what that reasonable search consists of). Since that time, you have produced indexes relating to training materials, and specific training documents requested from the first index provided addressing PwC's Audit Tools and Tips, but have not provided other materials relating to the detection of fraud. With respect to the draft staff audit manual regarding the detection of fraud, please advise me as to whether you have confirmed that no such manual exists. Please provide me with a time-frame for production of documents relating to the detection of fraud by October 16.

7) **Deposition transcripts:** I have not received any response to my inquiry as to whether PwC intends to continue producing deposition transcripts from the TBW litigation in response to the FDIC-R's request for production 36. PwC had been producing deposition transcripts from the TBW litigation, but stopped providing those transcripts in September 2015. Only after I specifically asked for certain deposition transcripts, and nearly a month after my first inquiry, did you alert me that PwC was reconsidering whether it would produce transcripts to the FDIC-R. Although you ultimately agreed to provide two transcripts that I had specifically requested, you sent them by U.S. Mail the day before Wes Kelly's deposition. Please confirm that PwC intends to continue producing deposition transcripts in response to the FDIC-R's document requests. If not, please let me know immediately so that a motion to compel can be filed. If PwC will continue producing such deposition transcripts, please produce by October 16 any transcripts PwC has received but not yet produced to the FDIC-R. Going forward, PwC should be producing any such deposition transcripts to the FDIC-R within 2 business days of

October 5, 2015
Page 6

receipt by your law firm using electronic mail (and not the U.S. Mail). Please confirm that you will do so by October 16.

        8)     **Additional Search Terms:**  In addition to the search terms listed above, the FDIC-R requests that you run an additional search of ESI from a limited number of custodians during the August 1, 2009 through August 31, 2009 time-frame. The custodians are James Wesley Kelly, Gary Westbrook, Woody Wallace, Jeffrey Naumann, Frank Gaetano, Russell Mallett, Thomas Pirolo, Kim Jackson, Philip Rivers, Jason Roos, Luke Wegner, Kevin Young, Jeff Brown, Patrick Cox, Justin Clark, and Christopher Gerdau. The search terms the FDIC-R requests are "FBI", "receiver", "receivership", "clos* /5 (bank or colonial)", "raid", "FDIC", "federal deposit", "fail*" "bancgroup," "Chapter 11," "bankruptcy," "Farkas," "TBW," or "Taylor Bean." Please provide us with a hit count on these searches by October 16, as well as any objections to the production of documents resulting from these terms, and a proposed date for production of such documents.

        Should you have any questions, please do not hesitate to contact me.

        Respectfully,

        Tony Kirkwood