# Exhibit E

# KING & SPALDING

King & Spalding LLP
1700 Pennsylvania Ave, NW
Washington, D.C. 20006-4707
Tel: (202) 737-0500
Fax: (202) 626-3737
www.kslaw.com

Meredith Moss
(202) 626-2916
mmoss@kslaw.com

October 16, 2015

**VIA E-MAIL**

Tony Kirkwood
Mullin Hoard & Brown, LLP
Amarillo National Plaza Two, Suite 800
500 South Taylor, Lobby Box #213
Amarillo, Texas 79101-2445

      Re:    *FDIC v. PwC and Crowe Horwath*, Case No. 2:12-cv-957-WKW

Dear Mr. Kirkwood:

      This letter responds on behalf of PricewaterhouseCoopers LLP to your letter of October 5, 2015. Your letter recounts some, but certainly not all, of the history of the parties' discussions regarding document discovery in the past year, and in so doing it presents a distorted view of the amount and quality of information that PwC has provided regarding its efforts to produce documents to the FDIC. Rather than recount the content of my numerous prior letters on this topic and the full day of deposition testimony that you took of PwC's 30(b)(6) witness on the 19 document-related topics in your deposition notice, I will stand on the record and address the specific points in your letter.

      1.    <u>Information regarding custodians</u>: You asked about PwC professionals who received a litigation hold notice from PwC's Office of the General Counsel, but who were not included on the list of professionals who charged time to a Colonial-related code that we have provided to the FDIC (the "Timekeeper Summary"). As you know, PwC's OGC issued a number of litigation hold notices related to Colonial between 2009 and late 2011, and those notices covered varying periods of time, with the broadest one covering the period January 1, 1997 to the date on which the notice was sent in 2011 (a fifteen-year period). Also, as I assume you know, PwC has performed tax work for CBG since its bankruptcy filing in 2009, and thus PwC professionals continued to charge time to Colonial-related codes for years after the period of PwC's work that is the subject of this lawsuit. By contrast, the Timekeeper Summary provides information derived from PwC's query of its timekeeping systems, using codes associated with the Colonial engagements (both audit and non-audit services) in the period 2002-2009, which was used to compile a series of charts providing information about professionals who charged time to those codes in that eight-year period. Given these facts, as well as the separation of professionals from PwC throughout the period, some difference between the

October 16, 2015
Page 2

number of people who received a hold notice and the number of people who are listed on the Timekeeper Summary is to be expected. PwC will not provide the names of the individuals who received the hold notices, as PwC has asserted (in this litigation and other litigation) that such information is protected from disclosure by attorney client privilege and work product protection.

You also asked about PwC professionals who charged time to a Colonial engagement and who separated from PwC prior to receiving a hold notice related to Colonial. For the individuals listed in Attachment 3 of my July 21, 2015 letter, we are working to confirm that, as to any of those individuals who separated from PwC prior to receiving a litigation hold notice related to Colonial, any of their non-duplicative ESI that was retained by PwC at the time of their separation was included in our prior production process described in my July 21, 2015 letter and Attachment 3 to that letter. That process is nearly complete, and we have confirmed that the ESI associated with the majority of individuals who fall into this category was included in our prior production process and responsive, non-privileged documents have been produced to the FDIC as a result of that process. For a small number of individuals, we are still working on obtaining this confirmation, and I will provide an update when our work is complete.

2. <u>Withheld documents</u>: Regarding PwC's September 14, 2015 production of documents related to seven custodians whose documents the FDIC requested, in answer to your question PwC has not withheld documents from that production on the basis of attorney client privilege or work product protection. As you know, PwC objects to the production of documents that do not relate to PwC's work for Colonial, and it is not obligated to provide a log of documents, if any, that it did not produce on that basis.

3. <u>Desk files or calendars</u>: Regarding calendars, PwC collected electronic calendar entries maintained by the PwC professionals listed on Attachment 3 to my July 21, 2015 letter, to the extent such entries were available (for example, professionals who separated from PwC prior to any obligation to preserve documents related to this matter, subject to the information above regarding separated employees), and responsive, non-privileged calendar entries related to Colonial identified as a result of those efforts have been produced. We are aware of only one PwC professional who maintained a hard copy calendar (Mr. Westbrook), and those documents were produced to the FDIC on December 9, 2014 (PWC-CBG-TBW02033113 through 2033512).

Regarding desk files, PwC has produced the desk files identified on Exhibit A to my July 21, 2015 letter. As that letter notes, there was no requirement under professional standards or otherwise for PwC professionals to retain hard copy documents outside the audit working papers. But we conducted a reasonable search for such documents maintained by individual professionals or by the engagement team in a collective file. PwC collected such hard copy documents and produced them as described in my July 21, 2015 letter; some, as you note, were associated with individual professionals, but most were stored as part of a collective or "team" file.

4. <u>Review of email folder structures</u>: For the most part, PwC's approach to searching for and producing email maintained by professionals related to PwC's Colonial

October 16, 2015
Page 3

engagements relied on the use of search terms, and not a manual review of a "folder structure," if any, that an individual PwC professional may have used. Manually reviewing folder structures would have been duplicative of, and perhaps less inclusive than, relying on search terms; for example, while some professionals may sort and store their incoming email into folders, very few if any sort and store their "sent" email into folders. Thus, PwC believed that the use of search terms was an appropriate and reasonable approach to identify email responsive to the FDIC's document requests. PwC has provided the FDIC with the search terms it has utilized in its various productions to the FDIC.

    5. <u>The FDIC's ESI search terms</u>:  PwC continues to believe that it has conducted a reasonable search for documents responsive to the FDIC's document requests, subject to the objections it has lodged.  In particular, as detailed in Attachment 3 to my July 21, 2015 letter, PwC has already utilized nearly 130 broad search terms in connection with producing ESI from over 100 custodians.  The FDIC requested that PwC run an additional 45 search terms, which yielded a universe of over 231,000 documents (with families) that contained one or more of those terms.  Given the substantial volume of documents already produced, PwC believed that the FDIC's request for all those documents is unreasonably burdensome, and PwC proposed that the requested terms be run in conjunction with additional terms designed to focus on documents related to PwC's Colonial engagements.  This approach is consistent with what the FDIC agreed to during pre-suit discovery.  The FDIC rejected this proposal.

    As a threshold matter, your letter inaccurately states that removing three of the 45 terms would yield a universe of less than 50,000 documents to review for responsiveness and privilege; this is inaccurate.  The total of 231,000 documents (with families) that hit on the 45 requested terms is a deduplicated total; that is, if more than one search term is contained in a single document, that document is only counted once in the total.  Thus, removing those three terms – which you do not agree to do – would actually result in over 163,000 documents that would need to be reviewed prior to production.  This remains an unreasonably burdensome request.

    I reiterate my offer to utilize the FDIC's new 45 terms in conjunction with search terms designed to capture documents related to PwC's Colonial engagements (Colonial* OR CBG OR CNB OR CSB).  As you know, that modifier reduces the number of documents that would need to be reviewed to just over 35,000 documents, which PwC is willing to do.  If you would like to revisit your rejection of that proposal, please let me know.

    6. <u>Documents relating to the detection of fraud</u>:  PwC continues to object to the FDIC's overbroad requests for documents "relating to the detection of fraud."  Your letter fails to note that PwC has already produced many documents related to this topic, including audit workpapers associated with PwC's audits of Colonial's financial statements for the period 2002-2009, as well as materials from PwC's Audit Manual and other training materials that relate to this subject.  The premise of your continued demands and your August 7, 2015 letter seems to be press reports that purport to describe certain public statements made by PwC professionals and the views of some reporters regarding those statements.  This is not a principled basis on which to demand that PwC produce additional documents; it is, instead, a fishing expedition.  Nonetheless, with respect to the "200-page staff audit manual" that you reference in your letter, we have assumed that you are referring to a statement made by a reporter in an article published

October 16, 2015
Page 4

in the *Washington Post*. That statement referred to a "200-page staff manual," *not* a "staff *audit* manual." PwC has performed a diligent search for such a manual, and has not located anything fitting that description from that time period. Your August 7 letter also references a number of public speeches and public advertisements published on behalf of PwC; such materials are public, and thus equally available to the FDIC and PwC, and PwC will not assume the burden to search for things that you can locate yourself. As a result of our search efforts, we have obtained copies of certain documents associated with PwC's "Stand and Be Counted" initiative, and we are preparing those for production and should be able to produce them next week.

       7.     <u>Deposition transcripts</u>: PwC has produced the transcripts of fact witness depositions that were taken during the *TBW v. PwC* case pending in Florida. At your request, we also produced the transcripts of two experts proffered by the plaintiff in that case, even though expert discovery in the FDIC's case against PwC case has not yet started. You appear to be demanding that PwC produce the deposition transcripts of experts it proffered in the *TBW* case well in advance of the time that the Court has ordered expert disclosures to be made in this case. PwC will not produce the deposition transcripts of its experts in the *TBW* case at this time, as any such disclosure of expert opinions that PwC may or may not offer in this case is premature. PwC has produced to the FDIC all of the deposition transcripts of fact witnesses that have been taken in the *TBW* case.

       8.     <u>Additional search terms</u>: You have requested that PwC run the following search terms on the ESI collected from certain identified custodians for the period August 1, 2009 through August 31, 2009: "FBI," "receiver," "receivership," "clos* /5 (bank or Colonial)," "raid," "FDIC," "federal deposit," "fail*," "bancgroup," "Chapter 11," "bankruptcy," "Farkas," "TBW," or "Taylor Bean." First, as detailed in my letter of July 21, 2015, PwC has already run the terms "Farkas," "TBW," and "Taylor /2 Bean" on the collection of ESI detailed in Attachment 3 to that letter, and has produced documents identified as a result of that search to the FDIC. We will not duplicate this effort. PwC is willing to perform the search requested on the remaining terms for ESI previously collected and associated with the custodians listed in your letter who are listed in Attachment 3 to my July 21, 2015 letter, on the condition that the FDIC agrees to run these same terms, for the same period, through the ESI that the FDIC has previously collected, to the extent they have not been previously done so. Please let me know if you agree to this proposal.

      If you would like to discuss anything in this letter, please let me know. I continue to find that our discussions by phone are a far more efficient and effective way to address issues and questions related to document discovery, and your lengthy letters do little to foster that productive dialogue.

                                               Sincerely,

                                               Meredith Moss

cc:     David Mullin
         John Turner

October 16, 2015
Page 5

      Rufus Dorsey
      Nick DiCarlo
      Stanley Parzen
      Justin McCarty