# Exhibit R

Case 2:11-cv-00746-BJR-WC   Document 209-18   Filed 11/13/15   Page 2 of 20
Case 2:13-cv-20000-RDP   Document 475   Filed 11/04/15   Page 1 of 19

FILE
2015 Nov-04  PM 0
U.S. DISTRICT CO
N.D. OF ALAB,

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No.: 2406) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Master File No.: 2:13-CV-20000-RDP<br><br>This document relates to all cases. |

# DISCOVERY ORDER No. 13

This cause is again before the court on the motion by defendant Blue Cross Blue Shield of South Carolina ("BCBS-SC") for reconsideration of the court's previous Discovery Order No. 9, in which BCBS-SC was ordered to produce certain information regarding its efforts to preserve electronically stored information ("ESI") and the destruction of certain back-up tapes. On September 16, 2015, BCBS-SC filed the instant motion for reconsideration (Doc. 424), to which the plaintiffs filed an opposition on September 28, 2015. (Doc. 438). Along with the motion for reconsideration, BCBS-SC submitted 41 documents for *in camera* review by the court, asserting that the documents contain protected attorney-client communications and attorney work product. Having now

carefully considered the motion, and having reviewed the *in camera* materials, the motion for reconsideration is GRANTED to the limited extent explained herein. Otherwise, the motion is DENIED.

I. Relevant Background

This action is a collection of anti-trust actions transferred to the court by the Multi-District Litigation Panel in which two putative classes of plaintiffs, the "Subscribers" and the "Providers," allege that BCBS-SC and various other Blue entities have conspired to restrain competition in the health-insurance market. In Case Management Order No. 1, entered on January 9, 2013, the court required every party to take "reasonable steps to preserve documents and other records, including electronic documents, containing information potentially relevant to the subject matter of this litigation." (Doc. 6, p. 2). In January 2014, the Subscriber and Provider plaintiffs propounded 159 requests for production of documents to the defendants, including BCBS-SC. In July 2014, BCBS-SC discovered that tapes storing internal emails from 2002 to 2010 had been destroyed by BCBS-SC employees. BCBS-SC promptly notified the plaintiffs of the destruction and hired a law firm not otherwise involved in this litigation to conduct an investigation and prepare a report concerning the circumstances of the destruction. The investigating law firm, Alston & Byrd, produced a written report dated April 23, 2015, a copy of which has been provided to the plaintiffs.

2

The plaintiffs filed a motion to compel seeking "an Order compelling BCBS-SC to produce 30(b)(6) witnesses to testify and documents regarding: (1) its preservation plan for potentially relevant evidence in this litigation; (2) custodian interviews regarding preservation of evidence; and (3) its investigation into the spoliation of evidence." (Doc. 387). On September 2, 2015, the court entered Discovery Order No. 9, requiring BCBS-SC to (1) produce Rule 30(b)(6) witnesses with respect to its efforts to preserve relevant evidence and the circumstances of the destruction of the data tapes, and (2) produce to plaintiffs the litigation hold letters and memoranda it circulated to its employees as part of its preservation efforts. The court denied the plaintiffs' request to compel BCBS-SC to produce the report prepared by Alston & Byrd (although BCBS-SC is required to produce to plaintiffs a list of employees and persons interviewed as part of the investigation by Alston & Byrd).

BCBS-SC filed the instant motion for reconsideration asking the court to review *in camera* the litigation-hold letters and memoranda ordered to be produced, and to withdraw certain findings and conclusions reached by the court in connection with Discovery Order No. 9. With the motion for reconsideration, BCBS-SC submitted to the court *in camera* 41 documents bearing proposed redactions sought by BCBS-SC, which have now been reviewed by the court.

3

II. *In Camera* Review

In several different ways, BCBS-SC argues that the court erred in requiring the production of the full, unredacted litigation-hold letters and memoranda because doing so violates BCBS-SC's invocation of attorney-client and work-product privileges with respect to the documents. Plaintiffs, who have not seen the *in camera* documents, contend that the destruction of the tapes on which BCBS-SC's emails were archived[1] amounts to spoliation that has the effect of waiving BCBS-SC's right to invoke the privileges.

From reviewing the materials submitted *in camera*, several observations can be made. The 41 documents consist of emails with attachments sent by Tim Thames in the BCBS-SC Law Department. On various dates, emails were sent to employees of BCBS-SC with one of two attachments being entitled either "Legal Hold and Document Preservation Memorandum"[2] or "Legal Hold and ESI Preservation Memorandum." For example, *in camera* document 1 consists of a

---

[1] As was true in Discovery Order No. 9, the court should not be read as attaching any particular meaning or significance to the word "archived." It is not intended to imply that the destroyed tapes were "archival" tapes as opposed to "disaster-recovery tapes," as asserted by BCBS-SC. The word implies only that the tapes stored data about and the contents of old emails from 2002 to 2010.

[2] The "Legal Hold and Document Preservation Memorandum" documents were submitted *in camera* as documents 1, 3, 5, 7, 9, 12, 13, 19, 21, 24, 27, 29, 30, 34, 38, and 39. The remaining documents through 41 were "Legal Hold and ESI Preservation Memorandum" documents.

4

short cover email[3] to which was attached the "Legal Hold and Document Preservation Memorandum," both dated November 5, 2012. Similarly, *in camera* document 2 is a short cover email to which is attached the "Legal Hold and ESI Preservation Memorandum," also both dated November 5, 2012. Similar emails with attachments were sent out on multiple dates from November 27, 2012, to August 26, 2015.

Considered separately, the "Legal Hold and Document Preservation Memorandum" and the "Legal Hold and ESI Preservation Memorandum" each respectively follow a standard format. For convenience, the court will refer to the "Legal Hold and Document Preservation Memorandum" as the "Document Hold," and the "Legal Hold and ESI Preservation Memorandum" as the "ESI Hold." The Document Hold format consists of six sections designated by roman numerals, as follows: "I. Purpose," "II. Suspension of Document Retention Policies," "III. Email and Electronic Data," "IV. Voicemail," "V. Documents to be Maintained," and "VI. Questions Regarding the Information Contained in this Document Retention Memorandum." Throughout the materials submitted *in camera*, defendant BCBS-SC proposes that sections "I. Purpose" and "V. Documents to be Maintained" be redacted prior to production to the plaintiffs because they contain either or both attorney-client privileged information or

---

[3] Other than the list of recipients to whom the email and attachment were sent, the cover email contains no substantive information.

5

attorney work product.[4] The ESI Hold format consists of only four roman-numbered sections: "I. Purpose," "II. Suspension of Document Retention Policies," "III. Document Categories," and "IV. Questions Regarding the Information Contained in this Document Retention Memorandum." Similar to the Document Hold, BCBS-SC proposes to redact sections "I. Purpose" and "III. Document Categories."

All forty-one of the document preservation holds were issued to other BCBS-SC employees through email from Tim Thames, who is identified as an "Electronic Discovery Specialist" in the BCBS-SC Law Department. It is not clear whether Thames is a lawyer, but copies of the emails were distributed to Meredith Manning, identified as "Senior Deputy General Counsel," and Anne Marie Hanson, the "Regulatory and Compliance Counsel."

A reminder of the scope of the evidence-destruction dispute[5] involved helps

---

[4] Other minor redactions are proposed for portions of text found in other sections of the Document Hold, but those redactions do not implicate the court's spoliation analysis.

[5] The motion for reconsideration asserts the court has improperly and prematurely determined that "spoliation" has occurred. The term "spoliation" refers only to the neutral fact that evidence has been lost or destroyed; it does not imply that such loss or destruction was in bad faith or is due to be sanctioned. "Spoliation refers to the destruction or material alteration of evidence or *to the failure to preserve property for another to use as evidence in pending or reasonably foreseeable litigation*." Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (italics added). Whether such loss or destruction of evidence is sanctionable is a separate determination based on additional necessary findings (not yet made in this case) related to the importance of the evidence, the culpability of the party responsible for the loss, and the prejudice to other parties. The court has not made any determination regarding sanctions, and the use of the term "spoliation" is intended to refer, in a neutral fashion, only to the loss of the TAO backup tapes, without implying any fault. Not admitting fault, BCBS-SC admits the *loss* of the tapes.

illuminate the court's reasoning. Plaintiffs contend and BCBS-SC admits that digital recording tapes of the defendant's TAO email system were destroyed *after* the court's January 2013 preservation Order was entered. These tapes stored back-ups of all of the defendant's emails from 2002 to 2010. Except to the extent they are reflected on the "snapshot"[6] of the TAO email system taken on June 25, 2010, these emails cannot now be recovered. Further, plaintiffs argue that they must discover how BCBS-SC went about preserving the TAO system back-up tapes in order to determine or attempt to prove that BCBS-SC acted in bad faith for purposes of sanctions for spoliation. Part of this discovery consists of the litigation holds themselves—what they preserved, how they preserved it, and to whom the preservation instructions were communicated. Having now reviewed the 41 documents constituting the litigation holds, the court is satisfied that some but not all of the proposed redactions are appropriate and will not prevent the plaintiffs from pursuing these objectives.

As explained above, the two main redactions in each document proposed by the defendant are redactions of the section describing the "Purpose" of the litigation hold and those sections identifying the "Documents to be Maintained" or

---

[6] The court disagrees with BCBS-SC that the so-called "snapshot" adequately preserved its emails and, thus, no spoliation occurred. Defendant admits that the "snapshot," taken on June 25, 2010, did not capture emails that had been deleted from the TAO system before the "snapshot" was taken. The "snapshot" only preserved the TAO email system as it existed on the date it was taken, whereas the back-up tapes would contain copies of all emails from 2002 to 2010.

7

the "Document Categories" as they appear respectively in the Document Hold and the ESI Hold. Although the court does not withdraw from its previous rationale that instructions communicated by an employer to its employees (even if drafted by an attorney) are not attorney-client communications, but are simply managerial instruction and direction, it is not necessary to decide that issue here with respect to the redacted "Purpose" sections of the Document Holds and ESI Holds. These sections simply are not relevant to the spoliation or evidence-destruction issue. The section of each litigation hold entitled "Purpose" reveals nothing about the distribution, scope, or limits of the hold. It is nothing more than a bland, innocuous, concise, and superficial description of the litigation precipitating the need for preservation. While the court doubts that it is either attorney-client privileged or work product, it simply is not necessary to decide that question because the redacted materials in section of the holds entitled "Purpose" are irrelevant to the narrow spoliation question before the court.

The same is not necessarily true of the sections identified, respectively, as "Documents to be Maintained" and "Document Categories," in the Document Holds and the ESI Holds. The purpose of this immediate production issue before the court is to enable the plaintiffs to assess the culpability of BCBS-SC in the loss of the TAO email tapes. The redactions of the "Document Categories" section in the ESI Holds do not prevent that assessment. In each of the ESI Holds,

8

unredacted, is the direction, "Please suspend all data deletion and/or automated purge functionality for the following employees, including e-mail accounts in both TAO and Exchange." (See, e.g. Documents 2, 4, and 6, submitted *in camera*). Attached to the various ESI Holds issued over time were lists of employees whose emails were required to be preserved. This instruction in the ESI Holds directly addressed the particular issue before the court, and that is the effectiveness of the steps taken to preserve the TAO email backup tapes. There is no issue about the destruction of anything other than the TAO email backup tapes. Regardless of the specific categories of documents described in section "III. Document Categories" in the ESI Holds, the preservation of emails in the TAO was explicitly instructed. The actual categories of documents described in the redacted section "Document Categories" provide no insight into how the TAO tapes were destroyed or the contents of the emails on the tapes. The proposed redaction of the "Document Categories" section in the ESI Holds, therefore, does not prevent the plaintiffs from understanding the scope and effect of the ESI Holds with respect to the TAO backup tapes. The instruction given in the ESI Holds was to preserve the email accounts of particular people, not documents or types of documents.

The document categories described in the Document Holds are different, however. An unredacted portion of the Document Holds, section "III. Emails and Electronic Data," explicitly advised employees:

> You must keep any and all emails and electronic data that is related to or fall within one or more of the document categories described in **Section V** below. If you are unsure whether an *email* or electronic data should be kept, do not delete it. This includes *emails* and electronic data on PDAs and/or laptop computers.

(See, e.g. Documents 1, 3, and 5, submitted *in camera*) (italics added for emphasis, bolding in original). The scope of the preservation instruction to employees cannot be understood without also knowing the categories of documents described in section "V. Documents to be Maintained" of the various Document Holds. The effectiveness of the preservation instruction for emails, at least in part, turned on whether the documents described in that section of the Document Holds comprehensively covered all of the categories of documents potentially relevant to the issues in these MDL cases. Unless section V of the Document Hold is unredacted, the reference in section III to preserving emails "that relate to or fall within one or more categories described in **Section V**" is meaningless.

The court continues to believe that, as to the production of the Document Holds (distinct from the ESI Holds), without redaction of section "V. Documents to be Maintained," neither the attorney-client privilege nor the work-product privilege is implicated. The purpose of the attorney-client privilege is to shield communications between client and counsel, and that communication must be within the context of the attorney-client relationship. A communication made for a

10

purpose other than to seek or give legal advice is not privileged, and the mere fact that a lawyer is used to make the non-legal communication does not make it privileged. A lawyer communicating strictly business information or advice does not invest the communication with the privilege. While a corporate client certainly has the right to have privileged communications with counsel for the purpose of seeking legal advice, once the corporation receives the advice and formulates managerial instructions and directions based upon it, the *managerial* instructions to its employees are not privileged communications, any more so than the multitude of business and operational instructions given by management to employees everyday.

In this case, Tim Thames, under the authority of the BCBS-SC Law Department, communicated the Document Holds to various BCBS-SC employees responsible for preserving documents and "emails and electronic data." Whether or not Thames is a lawyer (which is not clear from the materials before the court), these emails from Thames are correctly seen as managerial directions and instructions, not legal advice. The client in this circumstance was BCBS-SC, and communications between BCBS-SC (in the form of its decision-making management) and its lawyers undoubtedly is privileged. But when BCBS-SC turned around and instructed its own employees to perform or refrain from performing ordinary business activities (even if on the basis of the legal advice it

11

received), such communications are not communications between a lawyer and client. These are internal, managerial communications. To see them otherwise is to allow corporations to shield their ordinary managerial directions to employees behind the attorney-client privilege simply by running the directions through a lawyer.

Likewise, the court does not believe that the work-product protection for litigation materials shields the "Documents to be Maintained" section of the Document Holds. Although it may be true that the Document Holds were created precisely because of this litigation, the court continues to believe that litigation holds are not the type of "documents prepared in anticipation of litigation" that the protection was created to shield. As explained earlier, litigation holds are communications to parties and their employees intended to fulfill an inherent obligation[7] existing in all litigation, i.e. to preserve from loss or destruction evidence that bears on the merits of the controversy. Litigation holds are not intended to analyze the claims, defenses, and merits of the controversy; they are

---

[7] In any event, it cannot be doubted in this case that BCBS-SC had a duty to preserve the TAO email tapes. It appears to be undisputed that the tapes were destroyed *after* this litigation was filed and after the court had entered its January 2013 order requiring the preservation of evidence. The duty to preserve evidence accrues when a party can "reasonably anticipate" that the evidence is needed in litigation. See Flury v. Daimler Chrysler, 427 F.3d 939 (11th Cir. 2005); Silvestri v. General Motors Corp., 271 F.3d 583 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidenced may be relevant to anticipated litigation."), citing Kronish v. United States, 150 F.3d 122, 126 (2nd Cir. 1998); Micron Technology, Inc., v. Rambus, Inc., 645 F.3d 1341 (Fed. Cir. 2011)

12

not intended to advance or facilitate the party's or attorney's need to prepare for the litigation; and they are not themselves substantive evidence related to the merits of the case. Adversarial litigation cannot function if the parties carelessly or intentionally dispose of crucial evidence. Therefore, the duty to preserve evidence is something ancillary to, but also essential to, the resolution of the substantive issues in litigation. Because it is a duty inherent in litigation, it must always be subject to supervision and inquiry by the court. Whether a party has fulfilled the duty of preservation cannot be hidden behind a claim of work-product. A party may not, for example, intentionally direct its employees to destroy evidence and then shield that direction from inquiry by the court by claiming that the direction is something "prepared in anticipation of litigation." Cf. Micron Technologies, Inc., v. Rambus, Inc., 645 F.3d 1311 (Fed. Cir. 2011) (A party who intentionally destroyed evidence in anticipation of litigation may not invoke attorney-client privilege to shield the evidence of its bad faith). The court is not suggesting that BCBS-SC has done that, but it does demonstrate why the work-product protection must yield to legitimate questions concerning the effectiveness of a party's efforts to comply with the duty of preservation. The potential culpability of the party failing to preserve evidence is central to any remedy arising from spoliation, see Flury v. Daimler Chrysler, 427 F.3d 939, 944 (11th Cir. 2005) (spoliation sanction requires showing of bad faith); Silvestri v. General Motors Corp., 271 F.3d 583

13

(4th Cir. 2001), and this necessarily means that the court must remain free to inquire into the facts of the alleged culpability.

Even if one can regard the redacted "Documents to be Maintained" section of the Document Holds in this case as work product prepared in anticipation of litigation, it is not "opinion" work product, but only "factual" work product for which the plaintiffs have made the requisite showing of need and hardship. See Fed. R. Civ. P. 26(b)(3)(A)(i) and (ii). It is clear to the court that the listing of categories of documents for preservation is factual in nature and does not reveal the opinions, conclusions, strategies, or mental operations of either BCBS-SC or its attorneys. The description of the categories of documents is part of the facts underlying BCBS-SC's preservation efforts—the issue in dispute on this limited discovery question; they are the very factual heart of BCBS-SC's preservation effort. It cannot be doubted, moreover, that the plaintiffs need this information in order to attempt to show that the evidence destruction is or may be sanctionable, and they cannot obtain elsewhere the substantial equivalent of the documents identified for preservation in the litigation holds. Put plainly, the only way the plaintiffs or this court can know what documents BCBS-SC instructed its employees to preserve, and thus to assess the good or bad faith of its preservation efforts, is by looking at the Document Holds it issued. Therefore, even if the "Documents to be Maintained" section of the various Document Holds *is* work

14

product, the plaintiffs have made the necessary showing for production of it.

Thus, with respect to the Document Holds (*in camera* documents 1, 3, 5, 7, 9, 12, 13, 19, 21, 24, 27, 29, 30, 34, 38, and 39), the motion for reconsideration is DENIED, and defendant BCBS-SC is DIRECTED to produce the documents without redaction of section "V. Documents to be Maintained" in each document.

III. Other Finding and Conclusions

In addition to submitting the Document Holds and ESI Holds to the court for *in camera* review, BCBS-SC's motion for reconsideration also asks the court to withdraw and reconsider certain conclusions or findings BCBS-SC believes the court expressed in its earlier Discovery Order No. 9. The court will address these concerns in turn.

*A. Statements Regarding Attorney-Client Privilege And Work Product Protection*

BCBS-SC takes issue with the court's basic premise that there is a distinction between communications between BCBS-SC and its counsel and between BCBS-SC and its own employees, and that the latter are not covered by the attorney-client privilege. The court has addressed this hereinabove and can add nothing to that discussion. The court continues to hold that litigation/preservation holds and memoranda (at least in this case) issued by a corporate party to its employees for the purpose of giving instruction and direction concerning documents and records to be preserved by those employees, even where that

15

instruction arises from legal advice from counsel, are not shielded by the attorney-client privilege. The privilege attaches to communications between a client and its counsel, not to the client's subsequent communication of instructions to its employees. The court also rejects the assertion that the work-product protection applies under the facts in this case. The document categories described in the "Documents to be Maintained" section of the Document Holds are, at best, factual work product for which plaintiffs have made the necessary showing of need and hardship for production.[8]

## B. Inaccessibility of Destroyed Tapes

BCBS-SC contends the court erred in finding that no evidence was presented to show that the destroyed tapes were "inaccessible." Defendant asserts that because the tapes were inaccessible, their destruction was not spoliation. It bases this argument on the Alston & Byrd report's characterization of the tapes as "for disaster recovery." However the tapes are denominated, the court's only finding

---

[8] To be clear, and as expressed in the above text, the court does not withdraw from its previous conclusion that the work-product protection does not apply to ancillary documents unrelated to the merits of litigation. The original rationale for the work-product protection now incorporated in Rule 26(b)(3) was articulated by the Supreme Court in Hickman v. Taylor, 329 U.S. 495 (1947), where the Court explained that documents created by counsel (or a party) to assist in the investigation, preparation, and presentation of litigation must be shielded from discovery by an adverse party in order to give counsel the "space" to marshal evidence and develop strategies for resolution of the litigation. The Court explained that, unless counsel could be assured that his "work product" would be protected from discovery by his adversary, counsel would have no incentive, indeed, would have a disincentive, to carefully and thoroughly work up and prepare his case. This, the Court said, would cause a deterioration in the quality of litigation and result in poorer resolutions of disputes. Thus, the focus of the rationale was on the ability to prepare to litigate the *merits* of a case, not the ancillary issues related to discovery sanctions and evidence preservation, which exist as necessarily inherent parts of the process.

on this point is that BCBS-SC presented no evidence that the tapes could not be read or utilized to reconstruct emails in the TAO system. As used by the court, "inaccessible" means that the tapes were useless, that they could not be "opened" or "read" for content actually stored on them. There is no evidence that, if the tapes had not been destroyed, BCBS-SC would have been unable to retrieve actual content from the tapes. While the Alston & Byrd report stated that "[r]estoration and adaption of TAO email from the back-up tapes to a usable format was costly, time intensive, and burdensome," it did not conclude that the tapes were worthless as a source of evidence or "inaccessible" in the sense that they simply could not be read for content.

### C. "Primary Motivating Purpose" Test for Work Product

BCBS-SC also contends that the court has applied the wrong legal test for determining whether a document such as a litigation hold is considered work product. The court used the "primary motivating purpose" test articulated in United States v. Davis, 636 F.2d 1028, 1040 (5th Cir., Unit A, 1981),[9] while defendant argues that proper test in the Eleventh Circuit is the "because of litigation" test. In fact, it appears the Eleventh Circuit has never formally adopted *any* test for assessing the scope of the work product privilege. See Regions

---

[9] "It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. [Citations omitted]. We conclude that litigation need not necessarily be imminent, as some courts have suggested, ... as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." Davis at 1040.

17

Financial Corp. v. United States, 2008 WL 2139008, at *3 (N.D. Ala. May 8, 2008). The undersigned continues to adhere to the "primary motivating purpose" test in the context of the traditional work product protection because it best articulates the brightline at which the application of the protection must yield to the truth-seeking function of litigation. Like privileges, the work product protection limits the truth-seeking function of litigation by putting out of reach certain categories of evidence. For that reason, privileges must be strictly confined to their proper scope and limits, and the same is true of the work product protection. It is necessary to limit its application to its proper justification or else it tends to swallow all documents and overwhelm the truth-seeking function. Only those documents *truly* created for use in litigation should be shielded, and documents *primarily* created for some other purpose (business transactions, management direction, record-keeping, archiving) should not be shielded lest more and more crucial evidence is lost to the truth-seeking process. The "primary motivating purpose" test focuses on the original reasons and purpose for the creation of a document rather than the *post hoc* characterization of the document after litigation commences. This better serves the original Hickman v. Taylor rationale for the existence of the protection without unduly shielding documentary evidence not originally intended to assist in the finding of the truth at the heart of the controversy.

In any event, in this case, the court has found that the production requirement of Rule 26(b)(3)(A) have been met by the plaintiffs, even if the Document Holds are work product.

IV. Conclusion

For these reasons, the defendant's motion for reconsideration (Doc. 424) is GRANTED IN PART and DENIED IN PART, as set out hereinabove.

DONE this 4th day of November, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE