IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE COLONIAL BANCGROUP, INC., as post-confirmation debtor, and KEVIN O'HALLORAN, as plan trustee acting for and on behalf of the debtor, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:11-cv-00746-WKW |
| v. | ) ) | |
| PRICEWATERHOUSECOOPERS LLP, and CROWE HORWATH LLP, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | Case No. 2:12-cv-00957-WKW |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, | ) ) ) | |
| Defendants. | ) | |

**CROWE HORWATH LLP'S REPLY
IN SUPPORT OF ITS MOTION TO FILE
ADDITIONAL SUMMARY JUDGMENT MOTIONS**

In their responses to Crowe Horwath LLP's ("Crowe") motion to file additional summary judgment motions now, neither plaintiff—the Federal Deposit Insurance Corporation ("FDIC") and Colonial BancGroup ("CBG")—disputes that the fact and expert discovery that will occur over the next 10 months will be both exhaustive and expensive. Nor do they dispute that Crowe's proposed motions would, if successful, dispose of the entire case against Crowe and eliminate all

1

of the expense that Crowe would otherwise incur going forward. These practical realities weigh heavily in favor of permitting Crowe to file additional summary judgment motions now, in an effort to achieve a "just, speedy, and inexpensive determination" (Fed. R. Civ. P. 1) of the claims against Crowe.

The motions that Crowe proposes to file raise discrete legal issues that can be resolved now. The FDIC contends that further discovery is needed for Crowe's two arguments against it, but that is not correct. Crowe's limitations argument is based on the unambiguous language of a statute, the parties' tolling agreement, and the Tenth Circuit's recent decision holding that a tolling agreement cannot extend a virtually identical limitations period. Crowe's other argument is based on the no-reliance provisions in Crowe's engagement letters and audit reports, along with a uniform body of law holding that similar provisions in agreements and reports bar liability under RESTATEMENT (SECOND) OF TORTS § 552. In short, Crowe's arguments turn on the legal effect of written terms, whose language is not affected by parol evidence.

CBG does not argue that discovery is needed for the sole argument raised against it—that all of the damages it seeks are consequential damages, which are explicitly barred by Crowe's engagement letters with CBG. Rather, it argues that the Court already rejected the same argument in ruling on Crowe's motion to dismiss. But it is not the same argument. That ruling was based solely on the complaint's allegations. But Crowe's proposed summary judgment motion is based on undisputed evidence and CBG's own initial disclosures, which show that CBG seeks only recovery of purely consequential damages.

Crowe had hoped that the October mediation would succeed, but because it did not it makes sense to permit the filing of Crowe's narrowly focused summary judgment motions now, without prejudice to Crowe's ability to move for summary judgment at the close of discovery if

these motions are not granted. If Crowe is forced to wait to pursue these arguments, it will be forced to incur great expense that might well have been avoided. Crowe's "appetite for mediation" has not "dwindled" (CBG Resp. at 5), but in light of plaintiffs' positions at the October mediation and their unwillingness to seek a pre-trial decision on the threshold question of which one of them owns the claims against Crowe, Crowe's proposed summary judgment motions offer the only prospect for a relatively early resolution of the claims against Crowe.

## ARGUMENT

### I.     The FDIC's Reasons For Opposing Crowe's Motion Are Meritless.

#### A.     Discovery Is Not Relevant To Crowe's Limitations Argument.

Crowe's statute-of-limitations argument against the FDIC is based on the plain language of the FDIC's own statute, which prescribes what the limitations period "shall be" "[n]otwithstanding *any* provision of *any* contract." 12 U.S.C. § 1821(d)(14)(A) (emphasis added). The Tenth Circuit held earlier this year that a virtually identical statute meant that the "limitations periods cannot be tolled by agreement." *National Credit Union Admin. Bd. v. Barclays Cap.*, 785 F.3d 387, 392 (10th Cir. 2015).

The FDIC disagrees with the Tenth Circuit's holding,[1] but it does not argue that Crowe's

---

[1] No court has disagreed with *Barclays* since it was decided; the district court cases the FDIC cites were all issued before the Tenth Circuit's opinion. Moreover, although the FDIC claims that its cases are "at odds" with *Barclays* (FDIC Resp. at 3 n.1), in fact two of the five cases it cites did *not* reach the issue present here *and* stated that the issue was a legal question that may be decided on summary judgment. See *FDIC v. Kime*, 12 F. Supp. 3d 1113, 1120 (S.D. Ind. 2014) ("The Court cautions that it takes no position as to the enforceability of tolling agreements under the Extender Statute. To the extent the Court disagrees with the Tenth Circuit precedents advanced by the Defendants, it disagrees only to the extent that it declines to construe FIRREA's Extender Statute as a statute of repose. Whether the 'Notwithstanding' Clause nevertheless bars tolling agreements presents a distinct legal question that the Court need not address until presented with a motion for summary judgment"); *FDIC v. Baldini*, 2014 WL 2581193, at *6 n.4 (S.D. W.Va. May 6, 2014) ("the court finds it unnecessary to reach the issue of whether the Extender Statute bars tolling agreements as a matter of law," which presents "'a distinct legal

3

argument based on the statutory text requires additional discovery. It does argue that a separate issue discussed in *Barclays*—"that estoppel can bar a defendant's assertion of the limitations period"—requires discovery. FDIC Resp. at 2-3. There is no basis for estoppel here, but if there were it would have to be based on statements or conduct directed *to the FDIC* (and therefore already known to the FDIC)—so additional discovery would not be needed.

Moreover, even if there had been any such statements or conduct, they would be legally irrelevant and insufficient to defeat summary judgment. As Crowe noted—and the FDIC ignores—the tolling agreement here does *not* include a separate promise not to assert a limitations defense, which was the basis for the estoppel part of the *Barclays* decision. (The FDIC did the first draft of the tolling agreement and omitted any such provision. Declaration of Jonathan C. Medow in Support of Crowe Horwath LLP's Motion to File Additional Summary Judgment Motions, Ex. 1.) And discovery can do nothing to change that: the FDIC-Crowe tolling agreement states that it "contains the full and complete agreement of the Parties concerning the subject matter hereof"; that "it may not be altered or amended except in writing executed by the Parties"; and that "no Party has relied upon any statement, representation or warranty of the other Party that is not set forth expressly herein." Dkt. No. 185, Ex. D, Ex. 6 ¶ 10. These provisions bar the FDIC from going "beyond the language of the agreement itself in support of its estoppel claim." FDIC Resp. at 3. See *Alabama Elec. Co-op. v. Bailey's Const.*, 950 So. 2d 280, 289 (Ala. 2006) (holding that promisee was barred "as a matter of law" from alleging promises beyond those contained in contract "[b]ecause the written agreement stated that it was the only agreement between the parties"); *All-Tech Telecom v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir.

---

question that the Court need not address until presented with a motion for summary judgment'") (quoting *Kime*). And a third case the FDIC cites, *FDIC v. Williams*, 60 F. Supp. 3d 1209 (D. Utah 2014), is from within the Tenth Circuit, and thus is no longer good law after *Barclays*.

1999) (Posner, J.) ("A promisee cannot be permitted to use [estoppel] to do an end run around ... the parol evidence rule") (citing *Davis v. University of Montevallo,* 638 So. 2d 754, 758 (Ala.1994), and other cases).

The FDIC's only other argument on the limitations issue is that if Crowe prevails on its limitations argument, the FDIC will seek leave to amend to assert a "breach of contract claim against Crowe based on its blatant violation of the tolling agreement." FDIC Resp. at 3. Among other reasons why such an amendment should not be permitted, this Circuit frowns on motions to amend a complaint to avoid summary judgment, *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008); *Local 472 v. Georgia Power*, 684 F.2d 721, 724-25 (11th Cir. 1982), and in any event, if the FDIC's statute means that the tolling agreement "is unenforceable," *Barclays*, 785 F.3d at 393, there is no basis for the FDIC to sue for breach of that contract. See *Knight v. John Knox Manor, Inc.*, 92 So. 3d 111, 120 (Ala. Civ. App. 2012) (contract provision that violated a federal statue was "unenforceable" and thus could not support a breach-of-contract claim as a matter of law); *Cook v. Brown*, 393 So. 2d 1016, 1018 (Ala. Civ. App. 1981) ("Obviously, if the contract was unenforceable, [the plaintiff] could not have recovered any damages from [the defendant] for its breach").[2]

### B. Discovery Is Not Relevant To Crowe's Argument That Unambiguous Provisions Bar Reliance By Third Parties.

Crowe's other proposed summary judgment argument against the FDIC is that Crowe's engagement letters and reports bar third parties, including Colonial Bank (in whose shoes the FDIC stands), from relying on Crowe's work. The engagement letters stated that the agreement

---

[2] The FDIC does not argue that it would try to amend to sue Crowe for breach of contract with respect to Crowe's engagement letters. The FDIC has disavowed that theory and denied that Colonial Bank was a party to those engagement letters (*e.g.*, Dkt. No. 32 at 25), presumably in an effort to avoid being subject to the letters' provisions limiting Crowe's liability and barring consequential damages, and hence is now estopped from arguing otherwise.

was between Crowe and CBG "*only*" and that "[i]t is not intended that *any other person or organization* rely on the services rendered by Crowe Chizek under this letter." Dkt. No. 185, Ex. D, Ex. 2 at 1 (emphasis added).[3] The engagement letters also said that "federal and state banking regulators" would have "full and timely access" to Crowe's reports and related workpapers. *Id*. at 2. Similarly, Crowe's reports stated that they were furnished "*solely*" for the "information and use of management, the Audit Committee, and the Board of Directors of *Colonial BancGroup, Inc.* and *its* regulatory agencies and [are] *not to be used for any other purpose*." Dkt. No. 185, Ex. D, Ex. 9, cover page (emphasis added).

The FDIC concedes through silence that—contrary to what it told the Court at the motion to dismiss stage—CBG *was* regulated by state banking regulators. FDIC Resp. at 3. But on the apparent theory that a good offense is the best defense, the FDIC charges Crowe with "bending the truth" for supposedly making the "blatantly false" representation that the "sole" and "only" basis for the Court's prior decision on the non-reliance provisions was the Court's mistaken acceptance of the FDIC's statement that CBG was not subject to state banking regulations. *Id*. at 4-5. To the contrary, the brief attached to Crowe's motion states explicitly that the Court had "two reasons" for its prior decision, which are discussed at length in paragraphs labeled "First" and "Second." Dkt. No. 185, Ex. C at 14-15. Among other things, the brief explains that, under Alabama and Illinois law, the separate legal existence of a corporate parent and subsidiary cannot be ignored so as to permit an entity not specified in the contract to sue as a third party and thus evade a no-reliance clause. *Id*. at 15.

---

[3] The engagement letters also provided that they "reflect the entire agreement between us relating to the services covered by this letter"; that "[t]his agreement may not be amended or varied except by a written document signed by both parties"; and that the agreement "replaces and supersedes any other proposals, correspondence, agreements and understandings, whether written or oral, relating to the services covered by this letter." Dkt. No. 185, Ex. D, Ex. 2 at 6.

6

The FDIC also misses the mark in asserting that "further discovery" is relevant to Crowe's argument that the non-reliance provisions quoted above bar the FDIC's claims. FDIC Resp. at 4. First, the FDIC asserts that discovery is relevant on this issue under RESTATEMENT (SECOND) OF TORTS § 552 in order to determine whether Crowe knew that CBG intended to supply Crowe's work to Colonial Bank. *Id*. But the FDIC ignores the § 552 cases cited in Crowe's brief, which hold that provisions similar to those here bar reliance by a third party *as a matter of law*. See *Tredennick v. Bone*, 647 F. Supp. 2d 495, 499, 502 (W.D. Pa. 2007), *aff'd*, 323 F. App'x 103, 105 (3d Cir. 2008); *Bronstein v. GZA GeoEnvironmental*, 665 A.2d 369, 372 (N.H. 1995); *Bily v. Arthur Young & Co.*, 834 P.2d 745, 758 (Cal. 1992). Indeed, in *Ellis v. Grant Thornton LLP*, 530 F.3d 280, 285-86, 289, 292 (4th Cir. 2008), where there was a long trial and judgment for the plaintiff, the auditor actually *met with* the plaintiff and provided him with information about the bank's financial statements, yet the Fourth Circuit reversed, holding as a matter of law that the no-reliance statement on the first page of the auditor's report barred the § 552 claim. *Ellis* makes clear that when, as here, the language of an engagement letter and report limit who may rely, that language controls—it does not matter what other evidence might be found in discovery. In all of these cases, the immutable and dispositive fact is the language of the no-reliance provision; evidence outside of the contract is irrelevant.

Second, the FDIC cites what it admits "'clearly was a mistake'": that one of Crowe's engagement letters with CBG was signed by Young Boozer III on behalf of Colonial Bank instead of CBG. FDIC Resp. at 4 (conceding that "'previous and subsequent engagement letters'" were signed on behalf of CBG). Even apart from the fact that such a mistake is no basis for liability, that engagement letter still provided (like the other engagement letters) that the agreement was between Crowe and CBG "only" and that "[i]t is not intended that any other

7

person or organization rely on the services rendered by Crowe Chizek under this letter." Dkt. No. 23 (case no. 12-cv-957), Ex. B at 1. As already discussed, that provision bars third-party claims as a matter of law.

Third, the FDIC tries to make something of the fact that Crowe's audit plans for Crowe's upcoming work stated that the plans were for the use of CBG and its subsidiaries. FDIC Resp. at 5. That is because Crowe, in performing outsourced internal audit services under CBG's direction, would be performing certain procedures at the subsidiaries' offices, including Colonial Bank's. Informing the subsidiaries of those plans did not create a duty that Crowe owed to the subsidiaries, nor did it mean that the subsidiaries could rely on Crowe's work when the engagement letters and final audit reports said expressly that they could not. See *Ellis*, 530 F.3d at 285-86, 289, 292 (the fact that an auditor met with plaintiff and gave him information about the bank's financial statements did not create a duty under § 552 where "[t]he audit report plainly states that the audit report was *not* intended for use by third parties"; the plaintiff "knew he could not justifiably rely on [the auditor's] statements when the report itself stated otherwise"); *Tredennick*, 323 F. App'x at 104-05 (92% shareholder of company cannot rely on accountant's services to company because "this contract specifically provided that any advice or recommendations 'may not be relied upon by any third party'"). Put differently, the fact that Bank operations were part of Crowe's work for CBG does not alter the provisions in the engagement letters and reports, which expressly limit who may rely on Crowe's work. Indeed, the engagement letters state that they could only be amended by a writing signed by both parties (see p. 6 n.3, *supra*), and it is undisputed that there were no amendments here.

All of the FDIC's arguments are disposed of by the language of the no-reliance provisions in Crowe's engagement letters and reports. Because those provisions are dispositive,

8

the FDIC is simply wrong that further discovery is relevant. Whether those provisions bar the FDIC's claims as a matter of law can be decided now.

Finally, if the Court permits Crowe to file its proposed summary judgment motions now, the FDIC asks that its "deadline for responding be set for after the close of discovery." FDIC Resp. at 2. That would defeat the purpose of Crowe's request to file now, and there is no need for delay for all of the reasons explained above. If the Court permits Crowe to move for summary judgment now, the FDIC should respond expeditiously within the normal time set by the Court.

## II. Whether CBG's Requested Damages Are Barred Because They Are Consequential Damages Also Can And Should Be Resolved Now.

Crowe has one straightforward argument concerning CBG in its proposed summary judgment motion: CBG is seeking only consequential damages, which are expressly barred by the engagement terms to which CBG agreed. Crowe is entitled to enforce this provision, which was one of the conditions of Crowe's agreement to perform the work at issue. *See* Dkt. No. 185, Ex. C at 16-23. CBG does *not* argue that it needs further discovery on the nature of its own damages claims. Nor does CBG explain why the three categories of damages it is seeking are not consequential damages.

Instead, CBG contends that the Court already decided the "same ... argument" when it denied Crowe's motion to dismiss and that the issue cannot be raised until after trial. CBG Resp. at 2-3. (If tried, CBG's claims will be tried to the Court because CBG affirmatively waived a jury. Dkt. No. 185, Ex. D, Ex. 2, Engagement Terms at 3.) The Court has not "already … decided" (CBG Resp. at 3) the issue raised in Crowe's proposed summary judgment motion. The Court denied the motion to dismiss because, "[t]aken as true, the allegations of the Amended Complaint state a claim for direct damages proximately caused by Crowe's alleged breach and negligence." Dkt. No. 72 at 12. *See* Dkt. No. 28 ¶ 175 ("As a direct and proximate result of

9

Crowe's misconduct … [CBG] sustained substantial damage …"); *id*. ¶ 181 ("As a result of Crowe's breach of contract … [CBG] sustained substantial damage …") (Amended Complaint). The Court said that it would "revisit the issue" later, and it did not preclude Crowe from raising it on summary judgment. Dkt. No. 72 at 12.

The issue is ripe to be decided now. On summary judgment, CBG's allegations are not taken as true; now there is *undisputed evidence* showing what CBG's purported damages are and that they are not recoverable. Moreover, CBG has delineated its claimed damages in its initial disclosures, as required by Rule 26; those disclosures confirm that the damages CBG seeks are consequential damages.

The overwhelming bulk of CBG's damages claim is for its downstream transfers of money to Colonial Bank from March 2008 to June 2009, which the Bank later lost. Dkt. No. 185, Ex. D, Ex. 4 at 24-26 (CBG's initial disclosures). CBG's argument is that those transfers are recoverable because CBG's decision to inject hundreds of millions of dollars into the Bank during 2008 and 2009 was the "invariable result" of Crowe's supposedly faulty work. But Crowe has shown through the Bank's own call reports that during the two years immediately prior to that—and in response to the *same* purportedly faulty work by Crowe—CBG did the exact opposite. It pulled more than $900 million *out* of the Bank, destroying any notion that its about-face in 2008 and 2009 was in any way the "invariable result" of anything attributable to Crowe. Dkt. No. 185, Ex. C at 19-20 (Crowe's proposed brief, discussing this evidence). CBG does not even try to rebut this argument in its brief.

CBG seeks only two other categories of damages: fees and expenses allegedly incurred from late 2008 through July 2009 related to the TARP program; and pension expenses that accrued after CBG's 2009 bankruptcy filing. Dkt. No. 185, Ex. D, Ex. 4 at 26-28 (initial

10

disclosures). Neither category was even mentioned in CBG's complaint, so the Court's previous decision could not have addressed them. CBG does not argue that there are any disputed facts concerning these items.

Whether CBG's damages items are consequential damages and whether recovery of them is barred by the engagement terms are pure questions of law. Because those legal issues will not be affected by further discovery, they should be decided now.

## CONCLUSION

For the reasons stated above, Crowe Horwath LLP respectfully requests leave to file summary judgment motions at this time against both the FDIC and CBG without prejudice to Crowe's ability to move for summary judgment at a later date, if necessary, based upon further discovery.

November 17, 2015                                       Respectfully submitted,

                                                                          /s/ James Anderson
Stanley J. Parzen                                       James Anderson (ANDE4440)
Jonathan C. Medow                                       COPELAND FRANCO SCREWS & GILL
Justin A. McCarty                                       444 South Perry Street
MAYER BROWN LLP                                         Montgomery, AL 36104
71 South Wacker Drive                                   P: (334) 834-1180
Chicago, IL 60606-4637                                  Anderson@copelandfranco.com
P: (312) 782-0600
sparzen@mayerbrown.com

*Attorneys for Crowe Horwath LLP*

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 17, 2015, I caused a true and correct copy of the foregoing Crowe Horwath LLP's Reply in Support of its Motion to File Additional Summary Judgment Motions to be served on all counsel of record via the Court's ECF notification system and via email on the counsel identified below:

| | |
|---|---|
| C Edward Dobbs<br>Rufus T. Dorsey, IV<br>Ronald T. Coleman, Jr.<br>Parker, Hudson, Rainer & Dobbs, LLP<br>1500 Marquis Two Tower<br>285 Peachtree Center Avenue, NE<br>Atlanta, GA 30303<br>rtd@phrd.com<br>rtc@phrd.com<br>ced@phrd.com<br>***Attorneys for Colonial BancGroup, Inc.*** | Elizabeth V. Tanis<br>Drew Dropkin<br>David Tetrick, Jr.<br>King & Spalding LLP<br>1180 Peachtree St., NE<br>Atlanta, GA 30309<br>ETanis@KSLAW.com<br>DDropkin@KSLAW.com<br>DTetrick@KSLAW.com<br>***Attorneys for PricewaterhouseCoopers LLP*** |
| Christopher A. Caserta<br>Nicholas J. DiCarlo<br>DiCarlo Caserta McKeighan & Phelps PLC<br>6900 E. Camelback Road, Suite 250<br>Scottsdale, AZ 85251<br>ccaserta@dcmplaw.com<br>ndicarlo@dcmplaw.com<br>***Attorneys for Colonial BancGroup, Inc.*** | Bradley J. Lingo<br>King & Spalding LLP<br>100 N. Tyron Street, Suite 3900<br>Charlotte, NC 28202<br>BLingo@KSLAW.com<br>***Attorney for PricewaterhouseCoopers LLP*** |
| Andrew P. Campbell<br>Caroline Smith Gidiere<br>Justin Glyien Williams<br>Campbell, Guin, Williams, Guy & Gidiere, LLC<br>520 N. 20th Street, Suite 2000<br>Birmingham, AL 35203<br>Andy.Campbell@Campbellguin.com<br>Justin.Williams@Campbellguin.com<br>Caroline.Gidiere@Campbellguin.com<br>***Attorneys for Colonial BancGroup, Inc.*** | Richard T. Marooney, Jr.<br>King & Spalding LLP<br>1185 Avenue of the Americas<br>New York, NY 10036<br>rmarooney@KSLAW.com<br>***Attorney for PricewaterhouseCoopers LLP***<br><br>Tabor R. Novak, Jr.<br>Ball, Ball, Matthews & Novak P.A.<br>RSA Dexter Avenue Building<br>445 Dexter Ave., Suite 9045<br>Montgomery, AL 36104<br>tnovak@ball-ball.com<br>***Attorney for PricewaterhouseCoopers LLP*** |

| | |
|---|---|
| David Mullin<br>John M. Brown<br>John G. Turner, III<br>Robert Bell<br>Clint R. Latham<br>Richard Biggs<br>Mullin, Hoard & Brown, LLP<br>500 South Taylor, Suite 800<br>Amarillo, TX 79101<br>dmullin@mhba.com<br>jmb@mhba.com<br>jturner@mhba.com<br>rbell@mhba.com<br>clatham@mhba.com<br>rbiggs@mhba.com<br>tkirkwood@mhba.com<br>***Attorneys for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*** | Meredith Moss<br>King & Spalding LLP<br>1700 Pennsylvania Avenue, NW, Suite 200<br>Washington, DC 20006<br>MMoss@KSLAW.com<br>***Attorney for PricewaterhouseCoopers LLP***<br><br>Dennis Bailey<br>Rushton, Stakely, Johnston & Garrett, P.A.<br>184 Commerce Street<br>P.O. Box 270<br>Montgomery, AL 36101-0270<br>drb@rushtonstakely.com<br>***Attorney for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank***<br><br>Matthew Jason Ford<br>BAILEY & GLASSER, LLP<br>3000 Riverchase Galleria, Suite 905<br>Birmingham, AL 35244<br>mford@baileyglasser.com<br>***Attorney for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*** |

/s/ James Anderson
An Attorney for Crowe Horwath LLP