IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) CASE NO. 2:11-cv-746-WKW-TFM ) |
| PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, | ) ) ) |
| Defendants. | ) ) |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK, | ) ) ) ) |
| Plaintiff, | ) ) ) CASE NO. 2:12-cv-957-WKW-TFM |
| v. | ) ) |
| PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP | ) ) ) |
| Defendants. | ) |

**O R D E R**

This is a professional negligence action brought by the Federal Deposit Insurance Corporation as Receiver for Colonial Bank, ("FDIC-R") which arises out of a fraud committed against Colonial Bank ("Colonial")[1] that occurred while PriceWaterhouseCoopers LLP ("PWC") and Crowe Horwath LLP ("Crowe") co-

---

[1] The Parties refer to Colonial Bank and Colonial Bank Group ("CBG") throughout the motions and responses. For simplicity sake the court may at times in this Order refer to both Colonial Bank and CBG as "Colonial".

1

defendants, were auditors for Colonial. Before this Court is Plaintiff's Motion to Compel against Defendant PriceWaterhouseCoopers LLP (Doc. 167) to which PWC has responded (Doc. 175), the FDIC has replied (Doc. 179) and PWC has filed a sur-reply (Doc. 184). In its Motion, the FDIC seeks three categories of documents from PWC – (1) Public Company Accounting Oversight Board ("PCAOB") inspections from 2005 til present involving Colonial, Colonial Bank Group ("CBG") and FAS 140, excluding any documents protected by Section 105(b) of the Sarbanes-Oxley Act of 2002; (2) PWC National Office documents concerning sales treatment accounting of financial assets from 2005 forward; (3) PWC internal guidance and training manuals.

On October 21, 2015, this Court held a hearing on this Motion. At the hearing, counsel discussed the concept of sales treatment accounting, known as FAS 140, and explained generally that it seeks to distinguish whether transactions are classified as a "sale or loan". (Tr. 66). Further counsel explained that the PCAOB promulgates the auditing standards known as the Generally Accepted Auditing Standards ("GAAS") and conducts inspections of and disciplinary proceedings against public accounting companies. No orders on proceedings are published unless sanctions are imposed. (Tr. 85-87). Counsel for PWC stated that there are no orders from the PCAOB "against anybody from PWC related to the Colonial audits." (Tr. 87).

The Rules of Civil Procedure provide that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *Fed. R. Civ. P.* 26(b)(1). Relevance, for purposes of discovery, is defined broadly to include any matter that "bears on, or that reasonably could lead to other matter that could bear on, any

2

issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders,* 437 U.S. 340, 351 (1978). When a party withholds discoverable information on the basis of a privilege, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . without revealing information itself privileged or protected." *Fed. R. Civ. P.* 26(b)(5)(A).[2]

The Court will address each category of documents sought in the Motion to Compel below.

### 1. PCAOB Documents

After serving its original document request on PWC, the FDIC agreed to narrow its request as follows:

> The FDIC seeks all "[d]ocuments relating to PCAOB inspections from 2005 through present involving either CBG, Colonial Bank, FAS 140, the detection of fraud, or the obtaining of competent evidential matter to afford a reasonable basis for an opinion regarding the financial statements under an audit. This request does not include materials protected by 15 U.S.C. § 7215(b)(5)(A), as defined in *S.E.C. v. Goldstone*, 301 F.R.D. 593 (D.N.M. 2014).

PWC refused to produce any documents, stating that "PWC will not produce documents relating to any PCAOB inspection of any client." (Doc. 167 at p. 5). Based upon argument of counsel, the Court understands the dispute before it to revolve, in part, around whether the FDIC is entitled to discover the documents requested above with respect to PWC's "other clients."[3]

---

[2] The Court is aware that Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2015. However, because this Motion was filed prior to that date, the Amendments are not technically applicable to the Court's consideration of this Motion. However, no rule of law prevents the Court from referring to the amended rules as guidance for resolution of issues presented in this Motion.
[3] This dispute concerning "other client" information is also applicable to the second category of documents included in this motion – PWC National Office documents.

PWC first argues that the motion to compel is due to be denied because these documents are irrelevant to this case as the audit in issue involves only Colonial.  Further, PWC argues that since "[n]o two audits are alike. Each audit client and each financial statement audit is different" and evidence pertaining to audits performed by PWC for clients other than Colonial is "irrelevant [and] . . . invites confusion and distraction." (Doc. 175 at p. 9).  PWC asks this Court to analogize the instant situation to a medical malpractice situation where the state court denied the request for documents reflecting the doctor-defendant's treatment of other patients because actions in prior medical cases involving different patients with different risks were not relevant.  S*ee Lykes v. Yates*, 77 A.3d 27, 31 (Pa. Super. Ct. 2013); s*ee also, Ex parte Anderson,* 789 So. 2d 190, (Ala. Dec. 22, 2000) (recognizing statutory prohibition on discovery of "other incidents" in physician malpractice cases).  On the other hand, the FDIC cites to several cases in contexts also different from the case at bar where courts ordered production of information pertaining to other clients.  (Doc. 167 at p. 12).  PWC, however, argues that the cases cited by the FDIC in support of production are distinguishable. (Doc. 175 p. 10)

The Court has carefully reviewed all the cases cited by the FDIC in support of its argument that PWC "other client" information is discoverable and finds their applicability to the case at bar limited.  Indeed, none of the cases to which the FDIC points involve the production by an accounting firm of audits related to other clients.  The court has conducted its own independent research and found no cases requiring production by an accounting firm of audits related to other clients where the other audits

involved the application of an accounting standard which was also at issue in the case before that court.[4]

Rather several of the cases cited by the FDIC involve production by non-parties of contractual evidence, the provisions of which were the same as or similar to the contractual issues in the case before the court deciding the discovery dispute. *See Hock Foods, Inc. v. William Blair & Co., L.L.C.,* 2011 WL 884446 at *5-6 (D. Kan. Mar. 11, 2011) (production of non-party sales contracts ordered where agreements "substantially similar" for purpose of determining ambiguity of terms in contract at issue); *Sedona Corp. v. Open Solutions, Inc.,* 249 F.R.D. 19, 24-25 (D. Conn. 2008) (production of non-party software licensing contracts ordered where agreements contained "similar" provisions for purpose of determining meaning of terms); *Sunrich, Inc. v. Pac. Foods of Oregon, Inc.,* 2003 WL 21088528 at *5 (D. Or. Mar. 4, 2003) (production of non-party beverage sales contracts ordered where similar pricing provisions at issue). The Court concludes that these cases are distinct from the case at bar because here the question of relevance turns upon whether PWC complied with professional standards in conducting the Colonial audit.

Other cases cited by the FDIC required production by non-party clients in the insurance context. *See Westport Ins. Corp. v. Wilkes & McHugh, P.A.* 264 F.R.D. 368, 371-73 (W.D. Tenn. 2009) (production of non-party documents related to insurance contracts and claims ordered because relevant to the issue of bad faith); *Parkdale Am.,*

---

[4] The Court recognizes that *Williamson v. PriceWaterhouseCoopers LLP,* 2007 WL 7113002 (N.Y. Sup. Feb. 21, 2007) discussed hereinafter argues for such production in a context where relevancy has been established in a different litigation context from the case at bar.

*L.L.C v. Travelers Cas. & Sur. Co. of Am.,* 2007 WL 3237720 at *4-5 (W.D.N.C. Oct. 30, 2007) (production of non-party documents related to insurance contracts and claims ordered because relevant to the issue of bad faith). However, other courts recognize that "discovery of "evidence of the [insurer's] practices concerning and its treatment of similar claims" is not relevant. *See Southard v. State Farm Fire & Cas. Co.,* 2012 WL 2191651 *2 n. 6 (S.D. Ga. June 14, 2012). Thus, the Court does not find the insurance context persuasive on the question of discovery in the audit situation before it because typically insurance cases involve similar if not identical contracts and courts vary on the issue of whether discovery of how an insurance company handled other claims is permissible.

The Court concludes that the question of whether PCAOB inspections of any other PWC client other than Colonial are "reasonably calculated to lead to the discovery of admissible evidence" *Fed. R. Civ P.* 26 (b)(1) is a close one. The FDIC's showing of relevance of the PCAOB inspection evidence as it pertains to other PWC clients is premised upon the PCAOB publicly released inspection reports which "faulted PWC for its performance in multiple accounting and audit areas similar or identical to those at issue in this case" (Doc. 167 at p. 8). The case law on point is scant.

The Court, however, is persuaded by the two cases provided to the Court by PWC – *Williamson v. PricewaterhouseCoopers LLP,* 2006 WL 6544389, at *3-5 (N.Y. Sup. Nov. 13, 2006) [5] and *Cal. Pub. Employees Retirement Sys. v. Arthur Andersen LLP,* Case

---

[5] The FDIC provides to the Court a later decision in this case, which it argues reverses the holding in *Williamson, supra. See Williamson v. PricewaterhouseCoopers LLP,* 2007 WL 7113002 (N.Y. Sup. Feb.21, 2007). The Court has carefully reviewed this case and concludes that it does not reverse the prior

No. 2:97-cv-1899 PHX-RCB(WKU), Doc. No. 302 at 2-4 (D. Ariz. June 9, 2009) both which dealt with the "other client" issue in the context presented to the Court at this time. In *Williamson,* the New York court refused to order the production of documents relating to eight PWC audit clients other than the client at issue even though those audits involved an accounting standard at issue in that case because the court concluded the other client documents were not relevant. *Id.* at 5. The court explained that "audits are unique and no two are alike," and the audits of unrelated clients "would have little semblance to the PWC audits of the [plaintiff]." *Id.* (internal quotations and citations omitted). Similarly, the Arizona court in the *Arthur Andersen* case refused to order the production of audit documents pertaining to work *Arthur Andersen* performed for another client not a party to that lawsuit on the basis that "[w]hatever might have been done or not done on an unrelated audit is completely irrelevant to the quality of Arthur Andersen's . . . work [for plaintiff]." *Id.* at 2-3. The Court is persuaded that the relevancy of the PWC's "other client" information is tenuous at best. While the Court can conceive of possible circumstances where the relevancy of these documents may be made clear, the Court is not convinced that is the case here.

Having so concluded, the Court however, sees no basis to restrict the dates of the inquiry. Any argument that the time period requested is overly burdensome pursuant to *Fed. R. Civ. P.* 26 (b)(2)(C) has been negated by the limiting of production solely to

---

*Williamson* holding. Rather, the court later in *Williamson* required production of the eight other PWC audit clients' documents because the court found that those documents became relevant for rebuttal purposes when the defendant's expert opinions "appear[ed] to be at odds with the defendant's Audit Manual." *Id.* However, in the case at bar, the Court concludes that information pertaining to PWC's work for other clients has not yet been similarly made relevant to the issues in this case.

7

Colonial. The Court concludes that any work PWC has performed for Colonial within this time period is "reasonably calculated to lead to the discovery of admissible evidence" *Fed. R. Civ P.* 26 (b)(1) because as a defendant in this action PWC's relationship with Colonial and the work it performed for this clients is at relevant to the professional negligence claim and specifically to the question of the duty PWC owed Colonial..

Although the Court has concluded that documents pertaining to PWC's work for other clients need not be produced, the issue still remains whether the PCAOB documents relating solely to PWC's work for Colonial are protected by statutory privilege. The specific privilege at issue is found in the Sarbanes-Oxley Act of 2002 and protects from disclosure "documents and information prepared and received by or specifically for the Board." The parties point to three cases where courts address the parameters and application of this statutory privilege. The cases are as follows: *Silverman v. Motorola, Inc.,* 2010 WL 4659535 (June 29, 2010), *Bennett v. Sprint Nextel Corp.,* 2012 WL 4829312 (Oct. 10, 2012), *Securities and Exchange Commission v. Goldstone,* 301 F.R.D. 593 (Aug. 23, 2014). Counsel for PWC argues that the more expansive interpretation of the privilege as discussed in *Bennett* applies; while counsel for the FDIC argues that the narrower reading of the privilege as set forth in *Silverman* is proper.

After an independent review of the case law, argument and briefs of the parties, the Court concludes that all the cases espouse a reading of the statute based on the plain language of the statute which exempts PwC from producing documents it "prepared . . . specifically for the Board." *Silverman, id.* at *4; *Bennett*, *id.* at *4; *Goldstone, id.* However, the Court is persuaded by the reasoning of *Bennett* which was based upon a

8

review of a number of documents to which it was alleged the privilege applied. Indeed, *Bennett* broadens the privilege somewhat by recognizing that an accounting firm's documents reflecting "communications that discuss confidential questions or comments made by the Board" or an accounting firm's "development of responses to Board inquiries" are also privileged. *Id.* The Court agrees with the *Bennett* rational which holds as follow:

> Because the final version of PCAOB comments and . . . . [PwC's] responses to those comments are all privileged, then it also holds *that any internal . . . [PwC] communications that reveal those comments or the work to develop the responses to the comments, are also privileged.* All of these communications are specifically for the Board because absent the inspection, these documents and communications would not exist.

*Id.* (Emphasis added). However, as in *Bennett,* this Court concludes that those documents which have been "compiled specifically" for PwC by *other entities*, but nevertheless were used to respond the PCAOB's inquiries are *not* privileged. *Id.* (Emphasis added).

The Court recognizes that the *Bennett* rationale potentially leaves room for argument as to the application of the privilege with respect to specific documents relating to work PWC performed for Colonial. Thus, the Court will Order that PwC prepare and produce a privilege log to the FDIC at the time of the production of PCAOP documents which describes the nature of the documents withheld pursuant to Section 105 (b)(5) (A).

2. **PwC National Office Documents and ESI relating to other clients**.

The FDIC in Request for Production 21 seeks documents relating to the proper application of sales treatment accounting for the transfer of financial assets (i.e. FAS

140), or any escalation to the National Office of questions regarding accounting treatment for the transfer of financial assets from 2005 forward.  Further the FDIC requests electronically stored information relating to "other clients."  This request includes any financial statement audit PwC performed for "any other client" during this time period if the audit involved topics similar to those in the FDIC's complaint, specifically FAS 140.  Again the question is whether audit work performed by PwC for clients other than Colonial is "reasonably calculated to lead to the discovery of admissible evidence" *Fed. R. Civ P.* 26 (b)(1).

For the reasons discussed more fully above in Section 1., the Court concludes that the relevancy of documents pertaining to PWC's work for other clients has not been demonstrated clearly at this time.  Further, the Court is mindful that the Federal Rules direct the Court to limit the extent of discovery "when the burden or expense of the proposed discovery outweighs its likely benefit, considering . . . the importance of the discovery in resolving the issues." Fed. R. Civ. Pro. Rule 26 (b) (2) (C) (iii).  Given this directive to weigh the beneficial nature of the documents sought, the Court is persuaded by PWC's arguments that documents related to its work for other clients are protected by PWC's ethical obligations and some States' laws on privilege and that the volumes of documents related to other clients would be unduly burdensome to search for, produce and redact to protect other clients confidentiality. (Doc. 175 at pp 11-13).  Indeed, PWC represents to the Court that for 2002-2009, the time period for which the FDIC is seeking audit documents, "PWC maintains on it servers approximately 139,449 separate, distinct audit work paper databases, containing 8.69 terabytes of data, which works out to billions

of pages of audit working papers." (Doc. 175 at p. 13). Thus, given the tangential relevance of "other client" information when weighed against the burdensomeness of this discovery given PWC's ethical duty to protect confidential client information and the sheer volumes of data concerning unspecified other PWC clients, the Court refuses to order production of this information pertaining to all clients of PWC other than Colonial.

### 3. PWC Internal Manuals and Guidance and Training Materials

The FDIC seeks production of PWC internal manuals, guidance and training manuals. PWC does not offer an objection to producing this information. Rather, PWC represents that it has produced to the FDIC "the complete Table of Contents to its Audit Manual for every year in the period 2002 through 2008 . . . and that it would produce additional relevant sections of the Audit Manual if the FDIC would identify which ones it wanted." PWC further represents that it produced an "index listing 3,438 items related to its Learning and Development courses" and offered to produce those documents selected by the FDIC. (Doc.175 pp. 15-16). Accordingly, the Court concludes that the Motion to Compel is to be denied as Moot as to this category of documents.

Accordingly, it is

ORDERED that the FDIC's Motion to Compel (Doc.167) be and hereby is GRANTED in part and DENIED in part as follows:

> 1. The PCAOB inspection documents from 2005 through present, *excluding* those relating to PWC's clients other than CBG and Colonial Bank, and *excluding* those which were "prepared and received by or specifically for the Board", as interpreted by *Bennett v. Sprint Nextel*

*Corp.*, 2012 WL 4829312 (Oct 10, 2010) as "internal . . . [PWC] communications that reveal . . . [PCAOB] comments or the work to develop the responses to the comments" *shall* be produce by PWC to the FDIC on or before January 5, 2016 at a time and place and in a manner mutually convenient to the parties. PWC is DIRECTED also to prepare and produce with this production a privilege log which describes the nature of the documents withheld pursuant to the Sarbanes-Oxley Act of 2002 Section 105(b)(5)(A).

2. The PWC National Office Documents concerning sales treatment accounting of financial assets from 2005 through present *excluding* those relating to PWC's clients other than CBG and Colonial Bank *shall* be produced by PWC to the FDIC on or before January 5, 2016 at a time and place and in a manner mutually convenient to the parties.

3. The PWC internal audit and guidance and training materials, not previously produced in this litigation, *shall* be produced by PWC to the FDIC on or before January 5, 2016 at a time, place and manner mutually convenient to the parties. The FDIC is DIRECTED to, on or before December 16, 2015, specifically request in writing documents for PWC production based on the indices previously produced by PWC.

DONE this 4th day of December, 2015.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE