IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN )<br><br>        Plaintiff, )<br><br>    v. )<br><br> )<br><br> )<br><br>PRICEWATERHOUSECOOPERS LLP ) and CROWE HORWATH LLP, )<br><br>    Defendants. ) | CASE NO. 2:11-cv-746-WKW-TFM |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK, )<br><br>        Plaintiff, )<br><br>    v. )<br><br>PRICEWATERHOUSECOOPERS LLP ) and CROWE HORWATH LLP )<br><br>    Defendants. | CASE NO. 2:12-cv-957-WKW-TFM |

**O R D E R**

This is professional negligence action brought by the Federal Deposit Insurance

Corporation as Receiver for Colonial Bank ("FDIC-R") which arises out of a fraud

committed against Colonial Bank ("Colonial")[1] that occurred while

PriceWaterhouseCoopers LLP ("PWC") and Crowe Horwath LLP ("Crowe") co-

---

[1]  The parties refer to Colonial Bank and Colonial Bank Group ("CBG") throughout the motions and responses.  For simplicity sake the court may at times in this Order refer to both Colonial Bank and CBG as "Colonial".

defendants were auditors for Colonial.  Crowe performed an internal audit for Colonial and PWC performed an external or independent audit for Colonial.  Before this Court is the Plaintiff's Motion to Compel filed against Defendant Crowe (Doc. 160) to which Crowe has responded (Doc. 166) and the FDIC has replied (Doc. 171).  In its Motion, the FDIC seeks (1) Crowe's External Audit Manual under Generally Accepted Auditing Standards (GAAS) and (2) Crowe's Outsourced Internal Audit Manual.

On October 21, 2015, this Court held a hearing on this Motion.  At the hearing counsel discussed the general differences between the internal and external audits performed for Colonial and the auditing standards known as the Generally Accepted Auditing Standards ("GAAS") promulgated by the Public Company Accounting Oversight Board ("PCAOB").  (Doc. 191 at pp. 4-6; 9-11; 85-87).  The function of the external audit was to review the financial decisions of Colonial taken as a whole and typically was performed at the year's end and in accordance with and certified under GAAS.  (Doc. 191 at pp. 4-5).  The function of the internal audit was to test the "controls" set by the bank over specific transactions.  The internal audits were performed either by in house Colonial employees or by Crowe.  When Crowe was involved in the audit of specific departments or areas of Colonial, an audit plan was first established by Crowe and then approved by Colonial's audit committee.  (Doc. 191 at pp 4-6; 9-11).

The Rules of Civil Procedure provide that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  *Fed. R. Civ. P.* 26(b)(1).  Relevance, for purposes of discovery, is defined broadly to include any matter that "bears on, or that reasonably could lead to other matter that could bear on, any

issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders,* 437 U.S. 340, 351 (1978). When documents requested are proprietary, a party seeking production must show that the materials in question are not only relevant, but "both relevant and necessary". *See Gohler v. Wood.,* 162 F.R.D. 691, 694 (D. Utah 1995); *In the Matter of Mercury Fin. Co. of Ill.,* 1999 WL 495903 at *6 (N.D. Ill. July 12, 1999). Further, when a party withholds discoverable information on the basis of a privilege, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . without revealing information itself privileged or protected." *Fed. R. Civ. P.* 26(b)(5)(A).[2]

1.      **External Audit Manuals under Generally Accepted Auditing Standards (GAAS)**

Crowe objects to producing its GAAS external audit manuals on the grounds that they are irrelevant and proprietary. Specifically, Crowe argues that the Motion to Compel is due to be denied because these manuals are irrelevant since they do not set a standard of care applicable to Crowe's work since Crowe did not perform external audits for Colonial. Further, Crowe argues that the GAAS external audit manuals are proprietary because

> "Crowe invests significant resources into maintaining its GAAS audit manuals and programs, and Crowe takes steps to ensure its GAAS audit manuals are not distributed outside of Crowe. The external distribution of Crowe's GAAS audit manuals would be detrimental to Crowe's business by harming Crowe's ability to compete with other accounting firms."

---

[2]  The Court is aware that Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2015. However, because this Motion was filed prior to that date, the Amendments are not technically applicable to the Court's consideration of this Motion. However, no rule of law prevents the Court from referring to the amended rules as guidance for resolution of issues presented in this Motion.

(Doc. 166 p. 3); Affidavit of Michael Yates Ex. 5 para. 6.   For that reason Crowe argues that these manuals should not be produced unless the FDIC demonstrates they are both "relevant and necessary."  *See Gohler*  162 F.RD. at 694; *In the Matter of Mercury Fin. Co. of Ill.,* 1999 WL 495903 at *6.  Crowe argues the FDIC has failed to make such a showing.

On the other hand, the FDIC argues that the GAAS external manuals are relevant for comparison purposes because the GAAS procedures are the "same or similar" to internal audit procedures since both require the same standard of care, which is that of reasonable prudence.  *Grant Thornton, LLP v. F.D.I.C,* 535 F. Supp. 2d 676, 709 (S.D. W. Va. 2007), *rev'd in part sub nom on other grounds, Ellis v. Grant Thornton LLP,* 530 F.3d 280 (4th Cir. 2008).   (Doc. 160 pp. 6-7, 11-12).   Further, the FDIC argues that Crowe assisted PWC with the "integrated annual audits of . . . {Colonial's} financial statements performed in accordance with PCAOB AS 5" ; and therefore, Crowe was "aware that its internal audit work, as well as work performed under the direction of PWC, would be incorporated into PWC's annual audits and used and relied on by PWC to support its audit opinion."  (Doc.160 at p. 9).  Finally, the FDIC argues that Colonial's Internal Audit Policy required Crowe and other internal auditors to follow standards and procedures similar to those required by GAAS.  (Doc. 160 at p. 7-9; citing Ex.C)

The Court has carefully reviewed the cases cited by each party and concludes that at least since 1998 the trend among courts addressing the general issue of production of accounting audit manuals is in favor of production.  *See Grant Thornton, id*.; *In Official*

*Unsecured Creditors Comm. of Media Vision Tech. v. Jain,* 215 F.R.D. 587, 589 (N.D. Cal. 2003); *In re Mercury Fin. Co. of Illinois,* 1999 WL 495903 at *5 (N.D. Ill, July 12, 1999).  As to the specific question of whether production of Crowe's GAAS manuals are relevant in this case given that Crowe performed internal audit functions and the GAAS does not directly guide or control those functions, the Court did not find a case that directly answers this narrow question.  However for the reasons stated below, the Court concludes that Crowe's GAAS manuals are relevant to the issues in this case and their production is necessary.

It stands to reason that Crowe relied upon some authority or policy in performing the work resulting in the recommendation of an internal audit plan to Colonial's audit committee.   Apparently this recommendation was approved by Colonial and used by Crowe as a plan to perform its internal audit function for Colonial.  (Doc. 191 at p. 6). Since Crowe represents to this Court that "no outsourced internal audit manuals exist" (Doc. 166 at p. 9), the Court has little difficulty concluding that the GAAS documents are at least relevant and necessary for the purposes of analogy; and indeed, may inform on the question of what Crowe thought its duty was to Colonial in developing the audit plan and performing the work agreed upon.  *See Grant Thornton,* 535 F. Supp. 2d at 709 ("Internal manual is relevant evidence of what  . . .  {accounting firm} believes the GAAP and GAAS require and what is necessary to comply with those standards") *rev'd in part sub nom on other grounds, Ellis v. Grant Thornton LLP,* 530 F.3d 280 (4th Cir. 2008).

In reaching this conclusion the Court is mindful of the breadth of relevance for discovery purposes, even where arguably proprietary information is involved.  *See Gohler v. Wood.,* 162 F.R.D. at 694 (Ordering production of accounting audit manuals where trade secrets alleged).  The Court recognizes that Crowe may seek to limit admission of its GAAS audit manuals at trial by motion in limine pursuant to the *Federal Rules of Evidence* and will also presumably have the opportunity to elicit testimony as to Colonial's role in proscribing Crowe's audit duties, so the jury maybe fully informed of roles and relationships of parties when it considers the question of duty.  Accordingly, the Court concludes that Motion to Compel is due to be granted as to these manuals, subject a mutually agreed upon Protective Order which this Court will order filed prior to production.

## 2.    Internally Developed Manuals for Outsourced Internal Audits

The FDIC seeks several categories of production which have been generally referred to as "outsourced internal audit manuals".   Crowe has represented that no "outsourced internal audit manuals" exist.   However, the FDIC points out that the documents sought extend beyond just those referred to as "outsourced internal audit manuals."  Specifically, the FDIC seeks the following:

Request 1(b):  Crowe's policies or procedures related to the auditing of entities that specialize in mortgage lending;

Request 1 (e):  Crowe's policies or procedures for the resolution of difference of professional opinion among members of the staff;

Request 1 (f):  Crowe's internal procedures for identifying and resolving issues relating to appropriate professional standards;

Request 1(m):  Copies of Crowe's internal publications or bulletins relating to the financial service industries from 2002-2009 including but not limited to the Interagency Policy Statement on the Internal Audit Function and Its Outsourcing (OCC 2003-2) and the Interagency Advisory on Mortgage Banking Activities (FIL-15-2003).

The plain language of these requests restated above demonstrates that the documents sought are not limited to "outsourced internal audit manuals".  The Court does not wish to become embroiled in a battle of semantics with the parties.  Accordingly, the Court accepts Crowe's representation that no "outsourced internal audit manuals" exist.  Indeed, the Court relied upon this representation in concluding that the Motion to Compel is due to be granted with respect to Crowe's GAAS manuals.   However, the Court admonishes Crowe to conduct a good faith search for the requested documents which may exist beyond those identified as "outsourced internal audit manuals" and to produce any non-privileged documents.  Accordingly, the Court concludes that the Motion to Compel is due to be granted to the extent that the documents requested in (1)(b), (1)(e), (1)(f), and 1(m) exist beyond what Crowe has specifically identified as "outsourced internal audit manuals".  As with the GAAS manuals, the Court will require the filing of a mutually agreed upon Protective Order prior to production of any documents sought by these requests.

Accordingly, it is

ORDERED that the Motion to Compel (Doc. 160) be GRANTED subject to the direction of the Court as follows:

Crowe shall produce to the FDIC on or before January 12, 2016 at a time and place and in a manner mutually convenient to the parties (1) Crowe's manuals for external audits of a client's financial statements under the GAAS and (2) any non-privileged documents which are responsive to the FDIC's requests stated below—

Request 1(b):  Crowe's policies or procedures related to the auditing of entities that specialize in mortgage lending;

Request 1 (e):  Crowe's policies or procedures for the resolution of difference of professional opinion among members of the staff;

Request 1 (f):  Crowe's internal procedures for identifying and resolving issues relating to appropriate professional standards;

Request 1(m):  Copies of Crowe's internal publications or bulletins relating to the financial service industries from 2002-2009 including but not limited to the Interagency Policy Statement on the Internal Audit Function and Its Outsourcing (OCC 2003-2) and the Interagency Advisory on Mortgage Banking Activities (FIL-15-2003).

It is further

ORDERED that on or before December 23, 2015, the parties shall file with the Court a mutually agreed upon Protective Order, the terms of which will govern the production of this information, its use during trial and its retention, destruction or return following trial.

DONE this 14th day of December, 2015.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE