IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>Defendants. | ) | CASE NO. 2:11-cv-746-WKW |

---

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP<br><br>Defendants. | ) | CASE NO. 2:12-cv-957-WKW |

**ORDER**

This is a professional negligence action brought by the Federal Deposit Insurance Corporation as Receiver for Colonial Bank ("FDIC") which arises out of a fraud committed against Colonial Bank ("Colonial") that occurred while PriceWaterhouseCoopers LLP ("PWC") and Crowe Horwath LLP ("Crowe") co-defendants were auditors for Colonial. Crowe performed an internal audit for Colonial and PWC performed an external or independent audit for Colonial. Before this Court is the Plaintiff's Motion to Compel filed against Defendant PWC (Doc. 209) to which PWC has responded (Doc. 229) and the FDIC has replied (Doc. 266). In its Motion, the FDIC seeks production of (1) transcripts of PWC's experts in *Taylor*, *Bean &*

*Whitaker Plan Trust v. PricewaterhouseCoopers, LLP*, Case No. 13-33964 CA 01 (40), pending in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida ("TBW case"); (2) information regarding the steps taken by PWC to preserve documents in *this* case, including the identity of PWC personnel that received litigation hold notices; (3) documents from Colonial's specific e-mail folders created by custodians in this case; and (4) documents resulting from search terms which the FDIC claims are relevant to issues in this case.

The Rules of Civil Procedure provide that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *Fed. R. Civ. P.* 26(b)(1). Relevance, for purposes of discovery, is defined broadly to include any matter that "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978). Further, when a party withholds discoverable information on the basis of a privilege, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . without revealing information itself privileged or protected." *Fed. R. Civ. P.* 26(b)(5)(A).[1]

**1. Deposition Transcripts**

Plaintiff seeks "transcripts and video recordings of depositions taken by any party in the [TBW case.]"[2] (Doc. 209; Motion to Compel at p. 5). The parties recognize that PWC has produced several depositions from the TBW case. However, PWC objects to producing the transcripts of the experts that it has proffered in Florida on the basis that disclosure at this time is

[1] The Court is aware that Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2015. However, because this Motion was filed prior to that date, the Amendments are not technically applicable to the Court's consideration of this Motion. However, no rule of law prevents the Court from referring to the amended rules as guidance for resolution of issues presented in this Motion.

[2] *Taylor, Bean & Whitaker Plan Trust v. PricewaterhouseCoopers, LLP*, Case No. 13-33964 CA01 (40) is pending in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida and involves "many of the very same issues that are at issue here" – namely, the sufficiency of PWC's audit of Colonial's financial statements. (Doc. 229 at pp. 2-3 PWC's Opposition to the FDIC's Motion to Compel)

at odds with this Court's Scheduling Order as Amended which makes disclosure of Defendant's expert reports not due until June 30, 2016. (Docs. 122 and 241). PWC argues that disclosure of its expert's opinions in the TBW case to Plaintiff at this time gives Plaintiff an unfair advantage of knowing what PWC's experts in this case might say. On the other hand, PWC argues that this disclosure is irrelevant if PWC does not identify the TBW experts as experts in this case. The court disagrees with both of PWC's arguments.

First, the relevance standard is defined broadly to include any matter that "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund*, 437 U.S. at 351 (1978). There is no doubt that PWC's expert opinion deposition testimony in TBW, which the parties agree involve "many of the very same issues that are at issue here" – namely, the sufficiency of PWC's audit of Colonial's financial statements (Doc. 229 at pp. 2-3; PWC's Opposition to the FDIC's Motion to Compel), is relevant to the issues in this case. Thus, PWC's irrelevance argument fails.

Second, PWC's argument as to the Uniform Scheduling Order's prohibition on discovery of expert opinions in this case until the expert reports are due on June 30, 2016, also fails. Indeed, the Court views the discovery of PWC's expert deposition testimony in other cases as *fact discovery* in this case which under the Uniform Scheduling Order as Amended is occurring now and will conclude April 19, 2016. (Doc. 241); *see Parkervision Inc., v. Qualcomm Inc.* 2013 WL 3771226 at pp. 1-2 (M.D. Fla. 2013) ("prior expert deposition transcripts and prior trial testimony transcripts . . . [are] discovery materials [which] fall within the ambit of Rule 26(b)(1) for *general fact discovery*.") (Emphasis added.)

Moreover, the Court recognizes that while courts in other jurisdictions have recognized a "blanket prohibition of discovery of other opinions of an expert is appropriate", the Eleventh Circuit has not taken this position and the "traditional balancing of the probative value to Plaintiffs against the burden placed upon the responding party is the appropriate way to resolving

this issue." *Dering v. Service Experts Alliance, LLC.*, 2007 WL 4299968 at p. 2 (N.D. Ga. 2007). Since the Motion to Compel limits the request for the expert depositions in a single case --TBW, which is related factually to the instant action, the Court concludes that the probative value of the expert deposition testimony sought by the FDIC outweighs any small burden of production to PWC. Accordingly, the Court will order that the Motion to Compel (Doc. 209) be granted as to this issue.

**2. Documents from Colonial's specific e-mail folder from custodians of PWC and the FDIC's request for additional search terms.**

The Court will deal with the e-mail folder and the additional search term requests together, because as the Court sees it, the requests dovetail. First, the FDIC requests that PWC "check whether 16 custodians had a specific Colonial folder in their e-mail boxes. Then, for those that do have such a folder, it asked that PWC produce that folder." (Doc. 209 at p. 14; FDIC's Motion to Compel). PWC objects to this request on the basis that it is duplicative, overbroad and unreasonable. (Doc. 229 at pp. 8-9; PWC's Opposition to FDIC's Motion to Compel). Specifically, PWC responds that conducting a manual review of files which have been part of an electronic search involving specific search terms is duplicative of the work it has already performed. The Court agrees that manual searches of these folders will be duplicative of PWC's previous discovery efforts and the additional discovery directives given by the Court in this order.

Second, the FDIC requests that PWC run a list of an additional 45 search terms to which again PWC responds the request is overbroad, unreasonable and burdensome. Moreover, PWC objects to the additional search terms on the basis that it could generate information pertaining to other clients of PWC, which this Court has previously found irrelevant. (Doc. 232 at p.7).[3] Instead, PWC offers to conduct searches involving the additional search terms "in conjunction

[3] Indeed, the Court sees no reason to alter its prior finding of the irrelevancy of "other client" information now.

with a modifier containing permutations of Colonial's name (e.g., Colonial* or CBG or other permutations)". Indeed, the Court recognizes that adding permutations of Colonial's name will assist in protecting from discovery PWC's "other client" information to which the FDIC is not entitled. The FDIC has rejected this compromise offer.

Given the current position of the parties and the Court's awareness of the discovery which has occurred and is occurring in this case, the Court views these requests through the traditional discovery lens of balancing the probative value of the information against the burden and expense of production. *Fed. R. Civ. Pro.* 26 (b) (1) and 26 (b) (2) (C) (iii); *see also*, *Dering*, 2007 WL 4299968 at p. 2. The Court recognizes that all parties have produced numerous pages of responsive documents; however, the sheer volume of information produced does not demonstrate that other responsive, non-privileged documents do not exist. Moreover, the Court views the documents sought by these requests as relevant, *Fed. R. Civ. Pro.* 26 (b) (1), with the exception of PWC's "other client" information previously defined in this Court's December 4, 2015 Order. (Doc. 232 at p.7).

The Court concludes that PWC must produce the documents generated by the searches involving the additional search terms and following this Court's instructions which are meant to reasonably narrow the production such that responsive, non-privileged documents are produced in the most efficient and economical manner. Thus the Court will order that PWC conduct electronic searches including the 45 additional search terms proposed by the FDIC in conjunction with the modifiers of Colonial's name, including but not limited to Colonial* and CBG.[4] These electronic searches must also include the folders of the16 identified key custodians.[5]

---

4 The Court will leave to the parties the task of constructing the various modifiers of Colonial's name.

5 The Court recognizes that Colonial has represented that previous more limited searches have included 15 of the 16 key custodians whose folders are discussed above. (Doc. 229 p. 9; PWC 's

**3. Litigation Holds and Document Preservation, Collection and Production Information**

The FDIC moves the Court to Order that PWC provide a "sworn affidavit detailing its litigation hold efforts with respect to Colonial matters and directly addressing" the following:

> (1) the names and titles of the persons notified of the litigation holds and the dates of such notifications;[6] (2) the types of documents and files (including ESI) subject to the litigation holds; (3) the specific actions the recipients of the litigation holds were instructed to undertake; and (4) any efforts to enforce the litigation holds.

Also, "the FDIC-R requests that the Court order PWC to include in that declaration information regarding its efforts to preserve, collect, and produce ESI and hard-copy documents in this case, paying particular attention to those questions set forth in Appendix II to the Guidelines to Civil Discovery Practice in the Middle District of Alabama relating to those topics." (Doc. 209 at p. 13; FDIC Motion to Compel). In response PWC recites its efforts to date to comply with all FDIC discovery requests and those concerning litigation holds in particular and argues that the additional discovery requested from PWC is burdensome. The Court disagrees.

The Court has reviewed the July 21, 2015 M. Moss letter to T. Kirkwood filed *under seal* (see Doc. 229, Ex. A)[7] which sets forth in specific detail, PWC's hard-copy and ESI retention policy, among other things, and sets forth in general its litigation hold practice. Furthermore, as recited above, the FDIC has narrowed its request to a "sworn affidavit" covering four specific

---

Opposition to Motion to Compel). The parties are encouraged to reach an agreement as to the handling of the discovery of 16th custodian's files following the letter and the spirit of this Order.

[6] The FDIC admits that PWC has produced the names of 6 of the 8 personnel receiving litigation holds with respect to Colonial matters. (Doc. 266 p. 6 fn. 6; FDIC's Reply brief).

[7] This letter is not the only effort by PWC to comply with the FDIC's requests for litigation hold documents and information pertaining to the retention and production practices of PWC. Indeed, PWC made a 30(b)(6) representative available for a full-day deposition as to these matters and has provided a "Timekeeper Summary" to the FDIC which lists names and other information for over 530 PWC personnel who billed time for work conducted for Colonial from 2002-2009. Additionally, PWC represents that it "took additional steps to confirm that data associated with individuals who separated from PWC prior to receiving a legal hold notice related to Colonial, but whose ESI had been preserved by PWC" was included in PWC's review and production efforts. (See Doc. 229, p. 6; PWC's Opposition to Motion to Compel).

questions as to litigation holds and a single more general question as to "information regarding . . . [PWC's] efforts to preserve, collect and produce ESI and hard-copy documents." The Court concludes that the form of the discovery as requested by the FDIC is narrowly tailored and does not appear overly burdensome. Indeed, the FDIC represents that PWC sent litigation holds with respect to Colonial matters to only 8 of its employees and that 6 of them have been identified. (Doc. 266 p. 6 fn. 6; FDIC's Reply brief).

Furthermore, the Court recognizes that the information sought may assist the FDIC in determining if any potentially discoverable hard-documents or ESI remain. Indeed, in this extremely document intensive case,[8] such a system of double checking production practices to ensure no discoverable documents or ESI remain appears reasonable. Thus, the Court concludes that the litigation hold information and ESI or hard-document retention information, specifically identified above, is relevant. Accordingly, the Court concludes that the probative value of the information sought outweighs the burden and expense of production by PWC. *Fed. R. Civ. Pro.* 26 (b) (1) and 26 (b) (2) (C) (iii); *see also*, *Dering*, 2007 WL 4299968 at p. 2.

Next PWC objects to this discovery on the basis that it is protected by the attorney-client privilege and attorney work product doctrine. PWC argues that the litigation hold notices are privileged because they were prepared by counsel in PWC's Office of General Counsel and the notices contain directions from counsel as to the types of documents subject to the notice and specific actions to be taken. *See, e.g., Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123 (N.D. Ga. 2007) (holding litigation hold documents not discoverable and recognizing that compelling production of litigation holds "could dissuade other businesses from issuing . . . [litigation hold] instructions in the event of litigation.") Further, PWC argues, without some allegation by the FDIC of misconduct or spoliation by PWC during discovery in this case,

---

[8] The parties have represented to the Court that PWC has produced more than 3.9 million pages to the FDIC (Doc. 229 at p. 1; PWC Opposition to Motion to Compel) and the FDIC has produced more than twice as many pages in response. (Doc. 266 at p. 2; FDIC Reply brief).

production of such privileged litigation hold notices is not required. (Doc. 229 at p. 7, PWC Opposition to Motion to Compel). Indeed, the Court recognizes that in general the rule is "unless spoliation is at issue, a litigation hold letter is not discoverable." *Cannata v. Wyndham Worldwide Corp.*, 2011 WL 3495987, *2 (D. Nev. 2011). However, some courts have ordered production of litigation hold information, in spite of an attorney–client privilege or attorney work product doctrine objections, where the litigation holds themselves contained information relevant to specific issues in the case. *See, U.S. ex rel. Barko v. Halliburton Co.,* 74 F. Supp. 3d 183, 190-92 (U.S. Dist. Col. 2014) (ordering production of litigation holds in the face of privilege objections but recognizing "the question is a close one.")

In the case at bar, while the Court concludes that the litigation hold and document retention information is relevant, the Court is mindful of the need to protect attorney-client privileged and attorney work product information. Indeed, the Court sees the production of the requested information via sworn affidavit as a means to strike a balance in this case between the FDIC's right to the production of relevant information without abrogating PWC's asserted attorney-client privileges or creating work product objections. The court will address each of the FDIC's five specific requests below in the context of this balancing approach.

First, the "names and titles of the persons notified of the litigation holds and the dates of such notifications" is in no way subject to an assertion of attorney work product or a claim of attorney-client privilege since 6 of the 8 PWC employees receiving these holds have already been identified. Second, "the types of documents and files (including ESI) subject to the litigation holds" is non-privileged categorical information which may lead to the discovery of admissible evidence in this case[9]. Third, as for information pertaining to "the specific actions the recipients of the litigation holds were instructed to undertake" and fourth, as for information pertaining to "any efforts to enforce the litigation holds", the Court recognizes that this

[9] The Court offers no opinion as to whether specific documents in this category of information may or may not be privileged.

information may include specific communications from counsel to PWC personnel. The Court will direct PWC to provide this information via "sworn affidavit" in a manner, which does not invoke the work product doctrine or violate the attorney-client privilege OR to make a specific legal and factual a showing, in accordance with *U.S. ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d at 190-92 as to any work product objection or attorney-client privilege claim with respect to specific communications from counsel to PWC personnel.

Finally, the court will address the FDIC's fifth request "that the Court order PWC to include in that declaration information regarding its efforts to preserve, collect and produce ESI and hard-copy documents in this case, paying particular attention to those questions set forth in Appendix II to the Guidelines to Civil Discovery Practice in the Middle District of Alabama relating to those topics." The Court concludes that the July 21, 2015 M. Moss letter to T. Kirkwood filed under seal (see Doc. 229, Ex. A) provides most, if not all, of this requested information. However, the Court will direct PWC to review this letter and to provide to the FDIC in the sworn affidavit any additional, non-duplicative, information concerning its collection, retention and production methods in this case, including but not limited to updating information concerning efforts occurring from July 21, 2015 to the date of the affidavit.

Accordingly, it is ORDERED that the Motion to Compel (Doc. 209) is GRANTED subject to the specific DIRECTIONS of the Court as follows:

A) PWC is ORDERED and DIRECTED to provide to the FDIC within five (5) days of this Order, the deposition transcripts of the PWC experts in the TBW litigation;

B) PWC is ORDERED and DIRECTED to conduct the requested electronic searches, including but not limited to the e-mail files of the 16 identified Colonial key custodians, utilizing the 45 additional search terms proposed by the FDIC in conjunction with the modifiers of Colonial's name, including but not limited to Colonial* and CBG. Further PWC is ORDERED and DIRECTED to make available

to the FDIC on or before February 12, 2016 at a mutually convenient time and in a mutually convenient manner non-privileged documents resulting from the specified search.

C) PWC is ORDERED and DIRECTED to provide to the FDIC and to file with the Court on or before February 12, 2016 a *sworn affidavit which states the following* : (1) the names and titles of the persons notified of the litigation holds and the dates of such notifications; (2) the types of documents and files (including ESI subject to litigation holds; (3) the specific actions the recipients of the litigation holds were instructed to undertake and any efforts to enforce litigation holds -- *in such a manner* as to not invoke the work product doctrine or violate the attorney-client privilege OR to make a specific factual and legal a showing, in accordance with *U.S. ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d at 190-92 as to any work product objection or attorney-client privilege with respect to specific communications from counsel to PWC personnel; 4) any additional information, not duplicative of that information contained in the July 21, 2015 M. Moss letter to T. Kirkwood filed under seal (*see* Doc. 229, Ex. A), concerning its collection, retention and production methods in this case, including but not limited to updating information concerning efforts occurring from July 21, 2015 to the date of the affidavit.

D) All parties are DIRECTED to use make good faith efforts to resolve any future discovery disagreements between the parties without the intervention of the Court.

DONE this 22nd day of January, 2016.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE