IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>Defendants. | CASE NO. 2:11-cv-746-BJR |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP<br><br>Defendants. | CASE NO. 2:12-cv-957- BJR |

**ORDER**

This consolidated action is a professional negligence action brought by the Federal Deposit Insurance Corporation as Receiver for Colonial Bank ("FDIC-R"), which arises out of a fraud committed against Colonial Bank ("Colonial") that occurred while PriceWaterhouseCoopers LLP ("PWC") and Crowe Horwath LLP ("Crowe") co-defendants, were auditors for Colonial. This action is one of numerous cases brought by the FDIC-R as receiver for the failed Colonial Bank. Before this Court is Defendant PWC's

Motion to Compel Documents and Testimony over which Plaintiff's Assert Privilege (Doc. 350-Redacted), Plaintiff FDIC-R's Opposition to this Motion (Doc. 373), The Colonial BancGroup and Kevin O'Halloran's Opposition to this Motion (Doc. 377) and Defendant PWC's Reply (Doc. 388-1 (Redacted) and 388 Ex. A (Sealed)). In its Motion PWC asks this Court (1) to Order that the 21 documents over which the FDIC asserted privilege at the deposition of David Byrne, Colonial's former General Counsel, and any other attorney communications relating to purchase accounting for COLB and AOT transactions are not protected by the attorney-client privilege or the work-product doctrine and (2) to grant PWC an additional three hours to examine Byrne concerning purchase accounting including the documents withheld on the basis of privilege.

At Byrne's March 28, 2016 deposition, the FDIC's counsel "clawed back" documents which PWC sought to introduce, pursuant to the protective order in this case, and the FDIC's counsel further instructed Byrne not to answer questions based on the attorney-client privilege. These "clawed-back documents consist of 21 documents on the subject of COLB and AOT sale/purchase accounting or legal lending limits, including letters from the law firms of Akerman Senterfitt and Capell & Howard, a memorandum from the law firm of Miller, Hamilton, Snyder and Odom LLC, a letter from Mr. Byrne to Sarah Moore, and a series of emails." (Doc. 350 p.7, PWC Motion to Compel). The FDIC argues that these documents are protected from disclosure by the attorney-client privilege and the work-product doctrine. PWC, however, argues that the attorney-client privilege has been waived because attorney opinions concerning purchase accounting were produced to PWC by Colonial during the audit process and because Plaintiffs have placed Colonials'

attorney-client communications at issue in this litigation. Further PWC argues that these documents are not protected by the work-product doctrine because they were not "*prepared in anticipation of litigation*". Fed. R. Civ. P. 26(b)(3)(A) (Emphasis added).

### I. Attorney–Client Privilege

The attorney-client privilege "protects the disclosures that a client makes to his attorney, in confidence, for the purpose of securing legal advice or assistance." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994) *modified on other grounds*, 30 F.3d 1347 (11th Cir. 1994) (citations omitted). Although the privilege serves the important interest of encouraging clients to confide in their counsel, the Eleventh Circuit has recognized that because it is "an obstacle to the investigation of the truth," it is not without exceptions. *Id.* citing *Garner v. Wolfinbarger*, 430 F. 2d 1093, 1101 (5th Cir. 1970). In applying the *Garner* doctrine, the Eleventh Circuit held "shareholders suing their corporation may discover communications otherwise protected by the attorney-client privilege upon a showing of good cause." *Id.* However, to be entitled to the privilege, in the first instance, Plaintiffs "must prove [that] the communication was '(1) intended to remain confidential[;] *and* (2) under the circumstances was *reasonably* expected and understood to be confidential." *Harvey v. Standard Ins. Co.*, 275 F.R.D. 629, 631 (M.D. Ala. 2011) (quoting *United States v. Bell*, 776 F.2d 965, 971 (11th Cir. 1985) (emphasis in original).

In the instant action, the Court is asked to consider the application of the attorney-client privilege to documents which were created during Colonial's relationship with its independent auditor, PWC and outside counsel -- all of whom were involved in resolving

issues related to purchase accounting. The parties have pointed to no Eleventh Circuit or district court cases within this Circuit which deal with the specific facts at issue here, and the Court has found no such case. However, district courts within the Fifth Circuit have concluded that "[d]isclosure of privileged information directly to a client's independent auditor . . . destroys confidentiality." *SEC v. Brady*, 238 F.R.D. 429, 439 (N.D. Tex. 2006). Moreover, "[W]aiver of an attorney-client communication waives the privilege as to *all other communications relating to the same subject matter.*" *Id.* at 442. (Emphasis added) (Citations omitted).

The Court has independently reviewed the record and concludes that the evidence demonstrates Colonial disclosed to PWC documents and information during PWC's audits, specifically including the Akerman Senterfitt and Capell & Howard opinion letters. Further, the transmission e-mails clearly indicate these letters were intended to be used by PWC in evaluating Colonial's sales accounting methods. Indeed, the fact that PWC counsel already possessed these documents at the time of Byrne's deposition demonstrated that Colonial did not maintain their confidentiality with respect to PWC. Moreover, other documents in the record clearly establish a collaboration between Colonial, its attorneys and PWC in communications provided to regulators on the questions of accounting treatment under FAS 140, or sales accounting. Accordingly, the Court concludes Colonial, and thus the FDIC-R, which stands in Colonials shoes, has waived for the purposes of this case any claim of attorney-client privilege for documents which it provided to PWC during the course of PWC and Colonial's work related to purchase accounting practices.

The Court recognizes that this conclusion leaves open the question of whether working drafts or written communications of counsel, which were never provided to PWC by Colonial, but which relate to purchase accounting practices, maybe protected by the attorney-client privilege. Following the reasoning utilized concerning the final attorney opinion letters and communications disclosed to PWC by Colonial, the Court concludes that preliminary drafts, working documents, or written communications of counsel which have not been disclosed to third-parties remain privileged. *See, In re Mentor Corp. ObTape Tansobturator Sling Prods. Liab. Litig.*, 632 F. Supp. 2d 1370, 1382- 83 (M.D. Ga. 2009). Thus, for the Court to order disclosure of any documents underlying the opinion letters, PWC must provide evidence that these documents have been disclosed to third parties. *Id.*

Because the Court has determined that Colonial has waived the attorney-client privilege for documents which it provided to PWC during the course of PWC and Colonial's work related to purchase accounting practices, the Court need not address PWC's claim that Colonial has waived the privilege by placing those communications at issue in this case. *See Cox,* 17 F.3d at 1417 quoting *Conklin v. Turner*, 883 F. 2d 431, 434 (5th Cir. 1989) ("[T]he attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information *would be manifestly unfair* to the opposing party.") (Emphasis in original). Now, the Court will next address the FDIC-R's contention that the work-product doctrine protects these documents.

## II. Work-Product Doctrine

Plaintiffs claim that documents prepared by counsel related to purchase accounting are protected by the work-product doctrine. The work-product doctrine protects only those "documents and tangible things that are prepared *in anticipation* of litigation or for trial by or for any other party or its representative." Fed. R. Civ. P.26(b)(3)(A) (emphasis added). "[T]he mere fact that litigation does not eventually ensue does not, by itself, cloak materials with work product immunity." *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co, Inc.*, 967 F. 2d 980, 984 (4th Cir. 1992) (quotation marks and citation omitted). Instead, "[t] he document must be prepared *because* of the prospect of litigation." *Id.* However, even where the work-product doctrine applies, it can be overcome if the material is otherwise discoverable, and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

Plaintiff specifically argues that documents which it identifies as "Protected Materials" and were prepared on or after March 31, 2008 "arising from the OCC's [Office of the Comptroller of the Currency] inquiry into Colonial's FAS 140 accounting treatment of the COLB and AOT transactions" are protected by the work-product doctrine. (Doc. 373 p. 22, FDIC's Opposition). Plaintiff argues that this investigation by a governmental agency, even though not a traditional civil suit, satisfies the "prepared in anticipation of litigation" requirement of Rule 26(b)(3)(A). *See In re Trasylol Prods. Liab. Litig.*, No. 08-1928 –MDL, 2009 WL 2575659, at * 5 (S.D. Fla. Aug. 12, 2009) (citations omitted) ("This is because investigation by a governmental agency often represents 'more than a remote

possibility of future litigation and provides reasonable grounds for anticipating litigation.'")

PWC argues, however, that even if the work-product doctrine applies, it can overcome that protection because it has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Specifically, PWC argues that the "documents are the only contemporaneous record of what Colonial's management was being told in connection with the purchases treatment of COLB and AOT transactions and Colonial's compliance with legal lending limits." (Doc. 350 pp. 16-17, PWC Motion to Compel). The Court agrees. Indeed, the Court understands that one of the ultimate questions in this case to be decided is who had the duty to determine whether COLB and AOT transactions were loans or purchases for purposes of applying FAS 140 accounting practices. Certainly, in order for PWC to present a defense in this case, the need for information concerning that issue is "substantial". Furthermore, the Court can envision no other method for PWC to obtain this information or its "substantial equivalent", which has not previously been provided to it, other than to obtain it from the FDIC now. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Accordingly, the Court concludes that the work-product doctrine does not protect this information from disclosure to PWC in this case.

Accordingly, it is

ORDERED that PWC's Motion to Compel Documents and Testimony Over Which Plaintiffs Assert Privilege (Doc. 350) be GRANTED in part and DENIED in part as follows:

(A) PWC's Motion to Compel (Doc. 350) is GRANTED to the extent set out below:

(1) The deposition of David Byrne shall be reconvened at a time and place mutually agreed upon by all parties. The duration of the deposition shall be limited to two (2) hours. PWC shall bear the costs associated with resuming Byrne's deposition. The deposition shall be limited in scope as follows:

(a) to testimony concerning the 21 documents over which the FDIC asserted a privilege at the March 28, 2016 deposition of David Byrne, but for which privilege has been waived by providing the documents to PWC, or third-parties, during the course of PWC and Colonial's work related to purchase accounting practices

(b) to testimony concerning the final opinion letters of outside counsel, including Capell & Howard, Akerman Senterfitt, and any others for which privilege has been waived by providing the documents to PWC, or third parties, during the course of PWC and Colonial's work related to purchase accounting practices.

(c) to testimony concerning any preliminary drafts, working documents, or written communications of counsel for which the privilege has been waived by providing the documents to PWC, or third parties, during the course of PWC and Colonial's work related to purchase accounting practices.

(B) PWC's Motion to Compel (Doc. 350) is DENIED in all other respects.

(C) To the extent that this Order leaves open any room for determining whether specific documents are privileged, the Party asserting the privilege shall provide that document to the Court for *in camera* review no later than two weeks prior to the date of Byrne's reconvened deposition.

DONE this 24th day of June, 2016.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE