IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>Defendants. | ORDER DENYING CROWE'S SUMMARY JUDGMENT MOTION AS TO THE STATUTE OF LIMITATIONS DEFENSE AGAINST THE FDIC AND STRIKING AS MOOT CROWE'S MOTION TO COMPEL<br><br>CASE NO. 2:11-cv-746-BJR |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP<br><br>Defendants. | CASE NO. 2:12-cv-957-BJR |

## I. INTRODUCTION

Defendant Crowe Horwarth LLP ("Crowe") moves this Court for summary judgment against Plaintiff the Federal Deposit Insurance Corporation ("FDIC"). Dkt. No. 222. The FDIC opposes the motion. Dkt. No. 296. Having reviewed the motion, the opposition thereto, the record of the case, as well as the relevant legal authority, the Court will DENY the motion as to

Crowe's statute of limitations defense and hold in abeyance the remainder of the motion pending oral argument before the Court. The reasoning for the Court's decision follows.

## II. BACKGROUND

Between 2002 and 2009, Colonial BancGroup, Inc. ("CBG") and its wholly-owned banking subsidiary, Colonial Bank ("Colonial"), were involved in "one of the largest and longest-lasting frauds in the history of the U.S. banking industry." Dkt. No. 285 at ¶ 1. The fraud was centered in Colonial's mortgage warehouse lending division, through which a few Colonial employees together with a Colonial customer, Taylor Bean & Whitaker Mortgage ("TBW"), illegally siphoned more than $1.5 billion out of Colonial and CBG. *Id*. at ¶¶ 1, 4, and 15. The fraud was ultimately discovered in August 2009 when federal enforcement authorities raided the offices of Colonial and TBW. *Id*. at ¶ 1. Thereafter, Colonial failed and was taken over by the FDIC and CBG filed for bankruptcy. *Id*. at ¶ 15.

Defendants Crowe and PricewaterhouseCoopers LLP ("PWC") served as CBG's auditors at the time of the fraudulent scheme. Crowe provided the internal audit while PWC provided the external audit. The FDIC, as the receiver for Colonial, instituted this lawsuit against Crowe and PWC, alleging that as CBG's auditors, they should have uncovered the fraud. CBG, collectively with its Chapter 11 Trustee, Kevin O'Halloran, filed a parallel suit—*Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 2:11-cv-746—alleging similar claims against Crowe and PWC. The lawsuits were consolidated on September 24, 2014. (Dkt. No. 85).

Relevant to this order, the FDIC brought three claims against Crowe: (1) professional negligence, (2) gross negligence, and (3) negligent misrepresentation. Crowe argues that each of these claims must be dismissed as a matter of law because they are untimely under the applicable federal statute of limitations.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the evidence shows that "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Lamar v. Wells Fargo Bank*, 597 Fed. Appx. 555, 556 (11th Cir. 2014) (quoting *Alvarez v. Poyal Atlantic Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). The movant always bears the initial burden of informing the district court of the basis for its motion, and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *Lamar*, 597 Fed. Appx. at 556-557 (citing *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir.1991)). The movant also may carry its burden by showing the court that there is an absence of evidence to support the nonmoving party's case. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). When that burden has been met, the burden shifts to the nonmovant to demonstrate that there is a genuine issue of material fact, which precludes summary judgment. *Lamar*, 597 Fed. Appx. at 557 (citing *Clark*, 929 F.2d at 608).

## IV. DISCUSSION

Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the statute of limitations for tort claims brought by the FDIC as receiver is the longer of three years from the date of the FDIC's appointment as receiver or the applicable state law period. 12 U.S.C. § 1821(d)(14)(A)-(B). Because this section of FIRREA extends the time in which the FDIC may file a claim beyond the period set by state law, courts commonly refer to it as the "Extender Statute." *FDIC v. Arthur*, 2015 WL 898065, *3 (D. Maryland March 2, 2015) (citing *O'Melveny & Meyers v. FDIC*, 512 U.S. 79, 86 (1994)). In this case, the parties agree that because tort claims in Alabama must be brought within two years of the injury, Ala. Code § 6-2-38(*l*), the Extender Statute's three-year period applies here. The FDIC was appointed receiver for

Colonial on August 14, 2009, thus the statute of limitations was set to expire on August 14, 2012.

However, on August 9, 2012, recognizing the impending August 14, 2012 statute of limitations, Crowe and the FDIC entered into a tolling agreement (the Tolling Agreement). *See* Dkt. No. 223-1, Ex. 6. The purpose of the Tolling Agreement was to allow the parties to "continue discussions [] regarding whether the FDIC Claims (and/or any claims or counterclaims that Crowe might have against the FDIC) should be brought or otherwise resolved[.]" Therefore, Crowe and the FDIC agreed "to toll and suspend all timing defenses and statute of limitations." Specifically, the parties agreed that "[a]ny and all statutes of limitations or repose that would have otherwise expired or lapsed at any time [between August 9, 2012] and October 10, 2012 (the "Termination Date") shall be tolled, suspended, and not expire or lapse until after the Termination Date." *Id*. at ¶ 1. The parties further agreed that the time between August 9, 2012 and the Termination Date "shall not be included in the calculation of the time" for "any timing defense, and any statutory, common law, equitable, or contractual time period of limitations or repose of claims and any defenses related to, or predicated upon, the passage of time, including, without limitation, the defense of laches, with respect to the FDIC Claims and/or any claims or counterclaims that Crowe might have against the FDIC." *Id*. at ¶¶ 1-2. Thereafter, Crowe and the FDIC extended the Tolling Agreement to October 31, 2012. *See* Dkt. No. 223-1, Ex. 7.

Thus, pursuant to the Tolling Agreement, the parties agreed to suspend the limitations period under the Extender Statute until October 31, 2012, the date on which the FDIC ultimately filed this lawsuit. Nevertheless, Crowe now claims that the FDIC did not timely file this lawsuit, arguing that the Tolling Agreement is invalid because the Extender Statute prohibits contractual

circumvention of its limitations period. In making this argument, Crowe relies on the opening clause of the Extender Statute:

> "*Notwithstanding any provision of any contract*, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—
> …
>
> (ii) in the case of any tort claim [], the longer of—
>
> (I) the 3-year period beginning on the date the claim accrues; or
>
> (II) the period applicable under State law."

12 U.S.C. § 1821(d)(14) (emphasis added). Relying on a case from the Tenth Circuit, *National Credit Union Admin. Bd. v. Barclays Cap*., 785 F.3d 387 (10th Cir. 2015), Crowe argues that the phrase "[n]otwithstanding any provision of any contract," amounts to an express statement that the Extender Statute's limitations period cannot be tolled by agreement.

*Barclays* involved tolling agreements between the National Credit Union Administration ("NCUA")—the federal agency that regulates federally insured credit unions—and Barclays Capital, Inc. ("Barclays"). NCUA and Barclays had entered into the tolling agreements so that the parties could continue settlement negotiations as the limitations period approached. They agreed to "exclude all time that passed during the settlement negotiations when 'calculating any statute of limitations, period of repose or any defense related to those period or dates that might be applicable to any Potential Claim that the NCUA may have against Barclays.'" *Id*. at 390. Barclays also made a separate promise that it would not "argue or assert" in any future litigation a statute of limitations defense that included the time passed in the settlement negotiations.

Ultimately the NCUA filed suit against Barclays and Barclays moved to dismiss the complaint arguing that the claims were untimely because the tolling agreements were unenforceable in light of the Extender Statute's opening clause "[n]otwithstanding any

provisions of any contract…[.]" The district court agreed, dismissing the complaint and the NCUA appealed.

On appeal, the Tenth Circuit noted that federal statute of limitations are often tolled by agreement. *Id*. at 392. However, the Tenth Circuit stated, "the text of the statute can override this general rule and prohibit tolling by agreement." *Id*. The Court then concluded that the opening clause of the Extender Statute does just that—it expressly states that the limitations period cannot be tolled by agreement. Therefore, the Tenth Circuit concluded, "[b]ecause the Extender Statute cannot be tolled by agreement, contractual provisions purporting to toll that statute are ineffective." *Id*.

The Tenth Circuit's analysis did not end there, however. The Court determined that because Barclays gave an "*additional* promise *not to assert* a statute of limitations defense in litigation that counted time agreed to be excluded" and the NCUA "relied upon the tolling promises by Barclays in continuing settlement negotiations rather than breaking off negotiations and suing within the limitations period," Barclays was estopped from raising a statute of limitations defense. *Id*. at 393 (emphasis in original).

Crowe argues that the "Tenth Circuit's first holding [in *Barclays*] is directly on point"—the express language of the Extender Statute cannot be tolled by agreement. Dkt. No. 223 at 10. As such, Crowe argues, the statute of limitations expired on August 14, 2012, and the FDIC's claims, "not filed until October 31, 2012, 'are outside the statutory period and therefore untimely.'" *Id*. at 10-11 (quoting *Barclays*, 785 F.3d at 395). Crowe argues that Barclays' second holding, that Barclays was estopped from asserting the statute of limitations defense, is not relevant to this case because the Tolling Agreement between Crowe and the FDIC does not have a separate promise not to assert a limitations defense.

The FDIC counters that it has relied on tolling agreements with respect to the Extender Statute for over twenty-five years, and until the *Barclays* decision, no court has ever held that the Extender Statute cannot not be tolled by agreement. Dkt. No. 296 (citing *FDIC v. Williams*, 60 F. Supp. 3d 1209, 1214 (D. Utah 2014) ("On its face, [the Extender Statute] does not prevent parties from contracting to 'toll' or temporarily suspend the statute of limitations, and no court in the nearly quarter century since the enactment of FIRREA in 1989, with the exception of the [*Barclays*] court, has concluded otherwise.")). The FDIC notes that the Barclays court "dispensed with this twenty-five year history in a single paragraph" that contained no analysis or citation to legal authority. *Id*. at 9. The FDIC points out that it "is telling that not a single court outside the Tenth Circuit has adopted" *Barclays'* interpretation of the Extender Statute. *Id*. at 10.

This Court agrees with the FDIC. The Extender Statute's opening phrase "[n]otwithstanding any provision of any contract" is a modifying phrase that modifies the clause that follows it—namely "the applicable statute of limitations…shall be." Thus, the unambiguous meaning of this phrase is that parties may not enter into a contract to change the applicable statute of limitations. However, a tolling agreement does not *change* the statute of limitations, it merely *suspends* it. This, of course, is consistent with the long-accepted principle that "tolling" denotes a suspension of—rather than a change to—the statute of limitations until some later event permits the statute to continue running. *FDIC v. Coleman*, 2015 WL 476234, *8 (D. Idaho Feb. 5, 2015) (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 561 (1974)), *accord Socop-Gonzales v. INS*, 272 F.3d 1176, 1195 (9th Cir. 2001).

Moreover, the overwhelming weight of authority does not support Crowe's interpretation of the Extender Statute. To the contrary, numerous courts have held that parties may willingly toll the Statute's limitations period. *See, e.g., FDIC v. Arthur*, 2015 WL 898065, *4 (D. Md.

March 2, 2015) (concluding that a tolling agreement was enforceable "even given the express language of the Extender Statute"); *FDIC v. Williams*, 60 F. Supp. 3d 1209, 12 14 (D. Utah 2014) (holding that the Extender Statute does not prohibit parties from agreeing to toll the limitations period); *FDIC v. Jones*, 2014 WL 4699511, *5 (D. Nev. Sept. 19, 2014) (concluding that the Extender Statute may be tolled by agreement); *FDIC v. Coleman*, 2015 WL 476234 (D. Idaho Feb.5, 2015) (rejecting argument that the express language of the Extender Statute voided a tolling agreement). Indeed, the only case since *Barclays* to adopt the Tenth Circuit's reasoning is *National Credit Union Admin. Bd. v. UBS Securities, LLC*, 2015 WL 3407863 (D. Kan. May 27, 2015), a district court case in the Tenth Circuit that is bound by *Barclays'* holding.

Moreover, this Court finds that allowing the parties to toll the Extender Statute's limitation period is consistent with the objective of FIRREA. When Congress enacted FIRREA, it did so "in the face of a national banking crisis, with the intent of maximizing the recovery of assets that the federal receivers (FDIC, RTC) held in the failed banks they inherited." *RTC Commercial Assets Trust 1995–NP3–1 v. Phoenix Bond & Indem. Co*., 169 F.3d 448, 456 (7th Cir. 1999). As Senator Donald W. Riegle, Jr., the sponsor of FIRREA, stated on the floor of the Senate at the time of FIRREA's enactment:

> [The statute of limitations provisions] are of the utmost importance. Extending these limitations periods will significantly increase the amount of money that can be recovered by the Federal Government through litigation, and help ensure the accountability of the persons responsible for the massive losses the Government has suffered through the failures of insured institutions. The provisions should be construed to maximize potential recoveries by the Federal Government by preserving *to the greatest extent permissible by law* claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods.

135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (emphasis added). Here, the Tolling Agreement gave the FDIC more time to investigate the claims it inherited from Colonial and to determine

whether it intended to pursue those claims—both outcomes that are consistent with the purpose of FIRREA.

The Court also finds that principles of equity bar Crowe from asserting a statute of limitations defense. Crowe voluntarily entered into the Tolling Agreement with the FDIC and even agreed to extend the tolling period by another twenty-one days. The stated purpose of the Agreement was to give the parties further opportunity to attempt to amicably resolve the FDIC's potential claims against Crowe. To that end, Crowe promised that it would not include the time elapsed during the tolling period in any time-based defense. Dkt. No. 223-1, Ex. 6 at ¶ 1 ("The Tolling Period shall not be included in the calculation of the time under any Statute of Limitations, as defined below."). It is reasonable to infer that this promise induced the FDIC to delay filing suit. Thus, even if this Court were to determine that the Tolling Agreement is not enforceable under the Extender Statute, the doctrine of equitable estoppel still precludes Crowe from asserting that the FDIC's claims are time-barred.

## V. CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES Crowe's motion for summary judgment [Dkt. 222] with respect to its claim that the FDIC's claims were not timely filed. The remaining issues are held in abeyance pending oral argument before the Court. In addition, because this Court concludes that the Tolling Agreement between Crowe and the FDIC is enforceable, Crowe's motion to compel documents from the FDIC pertaining to the FDIC's

reliance on the Tolling Agreement is moot. Therefore, the Court HEREBY STRIKES Crowe's motion to compel [Dkt. No. 362].

Dated this 29th day of July, 2016.

Barbara Jacobs Rothstein
U.S. District Court Judge