IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN,

Plaintiff,

v.

PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,

Defendants.

CASE NO. 2:11-cv-746-BJR

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,

Plaintiff,

v.

PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP

Defendants.

CASE NO. 2:12-cv-957-BJR

**ORDER DENYING DEFENDANT CROWE'S MOTION FOR SUMMARY JUDGMENT AS TO THE FDIC'S CLAIMS**

## I. INTRODUCTION

Defendant Crowe Horwarth LLP ("Crowe") moves for summary judgment against the Federal Deposit Insurance Corporation, as Receiver for Colonial Bank ("FDIC"). Dkt. No. 223

("Mot."). The FDIC opposes the motion. Dkt. No. 296 ("FDIC's Opp."). The Court heard argument on August 10, 2016. Having reviewed the motion and opposition thereto, the record of the case, as well as the relevant legal authority, the Court will DENY the motion.[1] The reasoning for the Court's decision follows.

## II. BACKGROUND[2]

Colonial Bank ("Colonial") was a wholly owned subsidiary of Colonial BancGroup, Inc. ("CBG").[3] Beginning in 2002, the director of Colonial's Mortgage Warehouse Lending Division ("MWLD"), and at least one other MWLD employee, conspired with the MWLD's largest customer, Taylor Bean & Whitaker Mortgage ("TBW"), to illegally siphon more than $1.8 billion out of Colonial. The fraud went undetected until 2009 when CBG applied for federal funds under the federal Troubled Asset Relief Program ("TARP") and TARP investigators discovered the fraud. The Alabama State Banking Department closed Colonial on August 14, 2009 and named the FDIC as its receiver. CBG filed for bankruptcy on August 25, 2009.

As a publicly held banking company, CBG was subject to the Sarbanes-Oxley Act of 2002 ("SOX") and other federal regulations designed to ensure that a public company's financial reporting is materially accurate and that internal controls over that financial reporting are operating effectively. *See, e.g.*, *Interagency Guidelines Establishing Standards for Safety and Soundness*, 12 C.F.R. Pt. 364, App. A., Pt. II.B. For instance, federal banking regulations required CBG to have an internal audit system that provided for, among other things, adequate

[1] Crowe moves for summary judgment as to the FDIC's claims on two grounds. First, Crowe alleges that the claims are time-barred, and second, Crowe alleges that the claims are contractually barred. This Court rejected Crowe's statute of limitations argument in an order dated July 29, 2016. *See* Dkt. No. 442. As such, this order will only address Crowe's allegation that the FDIC's claims are contractually barred. In addition, in this instant motion, Crowe also moved for summary judgment as to Colonial BancGroup, Inc.'s ("CBG") claims. This Court granted in part and denied in part Crowe's motion as to CBG's claims in an order dated August 24, 2016. *See* Dkt. No. 450.

[2] For the sake of simplicity, this section is limited to the factual background relevant to the FDIC's claims against Crowe.

[3] The allegations in this section are drawn from the FDIC's Second Amended Complaint at Dkt. No. 53 unless otherwise indicated. This citation is to CASE NO. 2:12-cv-957-BJR, which was consolidated with the instant case.

monitoring of the system of internal controls, adequate testing and review of information systems, and adequate documentation of tests and findings and any recommendations for corrective actions. *Id*. CBG had the option to either perform these internal audit services itself or outsource the audit services to a vendor. *See, e.g.*, *Interagency Policy Statement on the Internal Audit Function and its Outsourcing*, PR-24-2003 (March 17, 2003). To that end, CBG entered into an outsourcing arrangement with Crowe to provide the internal audit services for CBG.

The scope of Crowe's and CBG's obligations with respect to Crowe's internal audit services were detailed in substantially identical engagement letters executed annually by Crowe and CBG. *See, e.g*. Dkt. No. 223-1, the April 15, 2008 Engagement Letter ("Engagement Letter"). Relevant to this order, the engagement letters state that the parties' agreement is between CBG and Crowe "only," and no other third party may rely on the services that Crowe provides pursuant to the agreement. *Id*. at 1. In addition, the cover sheet of each audit report Crowe produced pursuant to the engagement letters stated that the report was "furnished solely for the information and use of management, the Audit Committee, the Board of Directors of [CBG], and its regulatory agencies[.]." Dkt. No. 223-1, the Colonial BancGroup, Inc. Internal Audit Report Mortgage Warehouse Lending 2008-2009 (the "2008-2009 Audit Report").

The FDIC, suing in Colonial's shoes as its receiver, alleges three claims against Crowe: professional negligence, negligent misrepresentation, and gross negligence. The FDIC claims that Crowe should have discovered the fraud "no later than December 31, 2007," which allegedly would have prevented a majority of Colonial's losses. Dkt. No. 53 at ¶ 77.[4] Crowe counters that the FDIC's claims are barred because the engagement letters expressly prohibit third parties—such a Colonial—from relying on Crowe's audit work. Thus, Crowe filed the instant motion for summary judgment on the FDIC's claims.

[4] This citation is to CASE NO. 2:12-cv-957-BJR, which was consolidated with the instant case.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence shows that "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Lamar v. Wells Fargo Bank*, 597 Fed. Appx. 555, 556 (11th Cir. 2014) (quoting *Alvarez v. Poyal Atlantic Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)); *Novella v. Westchester County*, 661 F.3d 128, 139 (7th Cir. 2011) (quoting *O&G Indus. Inc. v. Nat'l R.R. Passenger Corp*., 537 F.3d 153, 159 (2d Cir. 2008)). Crowe, as the moving party, "bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. V. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Ortiz v. John O. Butler Co*., 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115, 117 (1997).

## IV. DISCUSSION

### A. The Parties' Arguments

Crowe moves for summary judgment on the FDIC's claims, arguing that the claims are expressly barred by the agreement between Crowe and CBG. As discussed above, the agreement between Crowe and CBG provides:

> This Agreement is between [CBG] and Crowe [] only. It is not intended that any other person or organization rely on the services rendered by Crowe [] under this letter.

Engagement Letter at 1. The parties refer to this as "the no-reliance provision." Crowe argues that this provision prohibits Colonial from relying on Crowe's audit work, and because the FDIC is suing in Colonial's stead, the FDIC's claims are likewise prohibited.

In addition, the cover sheet of each audit report Crowe furnished pursuant to the engagement letters states:

> This report has been prepared by Crowe [] in accordance with the terms of our engagement letter, … and furnished solely for the information and use of management, the Audit Committee, the Board of Directors of [CBG] and its regulatory agencies and is not to be used for any other purpose.

Dkt. No. 223-1, the 2008-2009 Audit Report. Crowe relies on this provision as further evidence that Colonial was barred from relying on the audits. Crowe charges that in Alabama (whose law the parties agree governs the FDIC's tort claims), "accountants retain control over their liability exposure" to third parties suing in negligence, *id*. (quoting *Boykin v. Arthur Andersen & Co*., 639 So. 2d 504, 510 (Ala. 1994)), and it is well settled that an accountant and its client may "agree between themselves as to who will be permitted to rely" on the accountant's work. *Id*. (quoting *Colonial Bank v. Ridley & Schweigert*, 551 So. 2d 390, 393, 395 (Ala. 1989)). As such, Crowe argues, courts routinely bar third party negligence claims when the agreement between the accountant and the client bars such parties from relying on the accountant's work. Similarly, courts bar third party negligence claims when an accountant's audit report expressly states that third parties cannot rely on the audit. Here, Crowe argues, because "the unambiguous terms of [the] engagement letters and [audit] reports do not permit Colonial or the FDIC, standing in Colonial's shoes, to rely on Crowe's work," the FDIC's tort claims are barred as a matter of law. Mot. at 16.

The FDIC counters as follows. First, the FDIC argues that under Alabama law an accountant may be liable for negligently supplying false or inaccurate information to a third party if the party: (i) relies on the information, (ii) suffers a loss due to the reliance, and (iii) is "one of a limited group of persons for whose benefit and guidance [the accountant] intends to supply the information or knows that the recipient intends to supply it[.]" FDIC's Opp. at 19 (quoting Restatement (Second) of Torts § 552(2) (1997)). Therefore, the FDIC argues, an accountant's liability to a third party is "fixed by the accountant's particular *knowledge* at the

moment the audit is published." *Id*. at 20 (quoting *Boykin v. Arthur Anderson & Co*., 639 So. 2d 504, 510 (Ala. 1994)) (emphasis added). The FDIC claims that in this case "[t]he evidence leaves no doubt that, when Crowe published its audits, it knew that Colonial []—not just CBG—would be receiving its reports and that Colonial []—not just CBG—would be relying on those reports." *Id*. Therefore, the FDIC argues, it has standing to assert negligence claims against Crowe. *Id*. At the very least, the FDIC contends, there is a dispute of material fact that precludes summary judgment on this issue.

In the alternative, the FDIC argues that even if this Court were to determine that the no-reliance provision in the agreement between CBG and Crowe could bar Colonial from relying on Crowe's audit work, Crowe waived its right to enforce the no-reliance provision.

### 1. The No-Reliance Provision Is Unambiguous

As discussed above, Crowe argues that the no-reliance provision in the engagement letters clearly and unambiguously prohibited Colonial from relying on Crowe's audit work, and therefore, the FDIC's negligence claims are contractually barred. The FDIC, in turn, does not allege that the no-reliance provision is ambiguous; rather, the FDIC points this Court to evidence in the record that it claims demonstrates that CBG and Crowe actually intended for Colonial to rely on the audit work. The problem with the FDIC's argument is that it runs directly afoul of Illinois law, which unequivocally prohibits a court from considering evidence extrinsic to an unambiguous contract.[5] Under Illinois law, courts must "initially look[] to the language of the contract alone," and if the language "is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of [extrinsic] evidence." *Air Safety v. Teachers Realty*, 706 N.E.2d 882, 884 (Ill. 1999); *see also In re Marriage of Lyman*, 27 N.E.3d 126, 148 (Ill. App. Ct. 2005) (stating that Illinois follows the "four corners" rule); *Cary v. Richards Bldg.*

[5] The engagement letters contain an Illinois choice of law provision.

*Supply*, 856 N.E.2d 24, 27 (Ill. App. Ct. 2006) ("the subjective intentions are irrelevant" when the agreement is unambiguous). The Court has reviewed the engagement letter. There is good reason that the FDIC does not contend that the no-reliance provision is ambiguous: it is not. The no-reliance provision clearly states the parties' intention that only CBG rely on Crowe's audit work.

### 2. A Dispute of Material Fact Exists as to Whether Crowe Waived the No-Reliance Provision

Nevertheless, this Court's analysis cannot end at the determination that the no-reliance provision is unambiguous, as Crowe suggests. This is because under both Alabama and Illinois law, a party who engages in a pattern of practice that is inconsistent with the terms of a contract may be deemed to have waived its right to enforce those terms.[6] The Alabama Supreme Court "has long recognized that a party to a contract can waive a contractual provision beneficial to that party." *Ex parte Celtic Life Ins. Co*., 834 So. 2d 766, 768-769 (Ala. 2002); *see also Industrial Mach., Inc. v. Creative Displays, Inc*., 344 So.2d 743, 746 (Ala. 1977) *overruled on other grounds, Drummond Co. v. Walter Indus., Inc*., 962 So.2d 753 (Ala.2006) (noting that "waiver of contract provisions may be implied from act and circumstances surrounding the performance of the contract"). Likewise, under Illinois law, a contracting party may waive provisions beneficial to it by conduct or actions indicating that "compliance with a particular provision will not be required." *Barker v. Leonard*, 635 N.E.2d 846, 848 (1994); *see also City of Chicago v. Chicago Title & Trust Co*., 563 N.E.2d 65, 70 (1990) (noting that a party accepting late payments may waive its right to timely payments unless it gives a definite and written notice of the intention to require strict compliance).

[6] Given that the Court must look to the parties' actions that occurred beyond the scope of the parties' agreement, it is not readily apparent whether Illinois or Alabama law governs this issue. However, it is not necessary for the Court to resolve this issue as Illinois and Alabama law are in accord on this issue.

"Waiver is defined as the voluntary surrender or relinquishment of some known right, benefit, or advantage," *Ex parte Cowley*, 43 So.3d 1197, 1199 (Ala. 2009), and "a party's intention to waive a right is to be ascertained from the external acts manifesting the waiver." *Id.*; *In re Nitz*, 317 Ill.App.3d 119, 130 (Ill. App. Ct. 2000) (party claiming waiver must demonstrate a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights). "This intention to waive a right may be found where one's course of conduct indicates the same or is inconsistent with any other intention." *Ex parte Cowley*, 43 So. 3d at 1199; *In re Nitz*, 317 Ill.App.3d at 130.

Here, a dispute of material fact exists as to whether Crowe waived its right to enforce the no-reliance provision of the agreement between CBG and Crowe. For instance, the FDIC points to the audit plans that expressly state that the plans were provided to Colonial for its "information and use" as a subsidiary of CBG. FDIC's Opp., Ex. 10 at cover sheet. In addition, the audit plans contained two different definitions of "legal risk," one definition relates to the Federal Reserve Board and the other to the Office of the Comptroller of the Currency. *Id*. at Ex. 11 at 7. This is significant because the Federal Reserve Board regulated CBG, while the Office of the Comptroller of the Currency regulated Colonial, thereby indicating that the audit plans were meant to be used by both CBG and Colonial. What is more, CBG and Colonial shared an audit committee. *See*, *e.g*., Ex. 14 at 5. Therefore, when Crowe states in the footer of the audit reports that the report is "furnished solely for the information and use of management, the Audit Committee, and the Board of Directors of Colonial BancGroup, Inc.," a jury could reasonably conclude that Crowe was referring to Colonial's audit committee. Dkt. No. 223-1, the 2008-2009 Audit Report.

The Court also finds it significant that Colonial was a wholly owned subsidiary of CBG and was, in fact, CBG's only asset of any significance. FDIC presents significant evidence in the form of deposition testimony to suggest that the parties treated CBG and Colonial as one entity. *See, e.g*., Excerpts from the Deposition of Thomas H. Tynes, FDIC's Opp., Ex. 1 at 186:23-26 (testifying that when he was acting as the internal audit liaison, he was acting on behalf of both Colonial and CBG), 242:21-243:5 (testifying that it was common for people who dealt with and worked for CBG to understand a reference to CBG to include Colonial). This is further substantiated by the fact that the April 17, 2007 engagement letter was signed by "Colonial Bank, N.A." not CBG and Crowe accepted the signature without objection. *See* FDIC's Opp., Ex. 6 at 6. In addition, throughout the course of the parties' relationship, Crowe appears to refer to CBG and Colonial interchangeably. For instance, the engagement letter defines "the Bank" as CBG, but the Executive Summaries in the 2006-2007 and 2008-2009 Internal Audit Reports refer to Colonial as "the Bank." *Id*. at Exs. 7 and 8.

The Court concludes that the FDIC has presented sufficient evidence such that a reasonable jury could conclude that Crowe knowingly provided Colonial with its audit work with the intent that Colonial would rely on it, and thereby waived its right to enforce the no-reliance provision in the agreement between CBG and Crowe.

**3. If the Jury Finds Waiver, Then Liability Could Follow**

If a jury concludes that Crowe waived its right to enforce the no-reliance provision, then Crowe could be potentially liable to the FDIC standing in Colonial's shoes for negligence. Alabama has adopted the standard for determining professional liability as set forth in the Restatement (Second) of Torts § 552 (1977).[7] *Boykin v. Arthur Anderson & Co.*, 639 So. 2d 504, 509-510 (Ala. 1994), *overruled on other grounds by Altrust Fin. Servs. v. Adams*, 76 So. 3d 228

[7] The parties agree that Alabama law governs the FDIC's tort claims against Crowe.

(Ala. 2011). Under this standard, an accountant may be liable for negligently supplying false or incorrect information if a plaintiff justifiably relied on the information, and in so doing, suffered a loss. *Id*. However, in order to have standing, the plaintiff must also be: (a) "[a] person or one of a limited group of persons for whose benefit and guidance [the accountant] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." *Id*. at 510 (quoting Restatement (Second) of Torts § 522(2) (1997)). It is for the jury to decide whether Colonial meets these criteria.

As the Alabama Supreme Court succinctly stated: "Basic principles of justice require that an accounting firm be held liable for its intentional or negligent dissemination of inaccurate financial reports to specifically foreseen and limited groups of third parties for whose benefit and guidance the accounting firm supplied the information." *Id*. Accordingly, under Alabama law, an accountant's potential liability to a third party "is fixed by the accountant['s] particular knowledge at the moment the audit is published[.]" *Id*. (quoting *Monco Agency*, 911 F.2d at 1059). Therefore, if a jury finds that Crowe waived its right to enforce the no-reliance provision in the agreement between it and CBG by knowingly providing its audit work to Colonial, then Crowe could be potentially liable for negligently providing false information to Colonial pursuant to § 552 of the Restatement (Second) of Torts under Alabama law. Because the Court concludes that a reasonably jury could reach this conclusion, a dispute of material fact exists and summary judgment on this issue must be denied.

## V. CONCLUSION

For the foregoing reasons, Crowe's motion for summary judgment [dkt. no. 223] as to the FDIC's negligence claims is HEREBY DENIED.

Dated this 9th day of September, 2016.

Barbara Jacobs Rothstein
U.S. District Court Judge