IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>Defendants. | ) | ORDER SETTING ASIDE AUGUST 1, 2016 ORDER<br><br>CASE NO. 2:11-cv-746-BJR |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP<br><br>Defendants. | ) | CASE NO. 2:12-cv-957-BJR |

## I. INTRODUCTION

The Federal Deposit Insurance Corporation as Receiver for Colonial Bank (the "FDIC") objects to Magistrate Judge Terry F. Moorer's August 1, 2016 Order (the "Order")[1] regarding eleven documents containing attorney-client communications. Dkt. No. 448. In the Order, Judge

[1] Dkt. No. 445

Moorer concluded that the FDIC had waived attorney-client privilege with respect to the eleven documents by putting the protected information "at issue" in this case. PWC filed a response to the FDIC's objections. Dkt. No. 451. Having reviewed the Order, the FDIC's objections, PWC's response, the FDIC's reply thereto, the record of this case, and the relevant legal authority, the Court will SET ASIDE the August 1, 2016 Order. The reasoning for the Court's decision is set forth below.

## II. BACKGROUND

The Order in question arose out of a dispute between the FDIC and PWC regarding whether the FDIC waived the attorney-client privilege as to certain attorney-client communications between Colonial Bank ("Colonial") and its in-house and outside attorneys relating to the proper accounting for certain COLB transactions that occurred under the umbrella of Colonial's Mortgage Warehouse Lending Division.[2] The dispute began at the deposition of David Byrne, Colonial's former general counsel, when PWC's attorneys attempted to question Mr. Byrne about 21 documents. The FDIC asserted attorney-client privilege and clawed back the documents pursuant to the Amended Protective Order in this case. PWC then filed a motion to compel the documents, arguing that the FDIC had waived the attorney-client privilege through both "subject matter" waiver and "at issue" waiver. Magistrate Judge Moorer found that there was no privilege as to ten of the documents that the parties agreed Colonial had disclosed to third parties during PWC's audits.

However, the parties also agreed that eleven of the documents had never been disclosed to third parties during PWC's audits. The parties disagreed as to the implication of Magistrate Judge's ruling as to these eleven documents; accordingly, PWC moved to clarify the prior

---

[2] The Alabama State Banking Department closed Colonial on August 14, 2009 and named the FDIC as its receiver. The FDIC brings this lawsuit standing in the shoes of Colonial.

ruling.[3] After reviewing the eleven documents *in camera*, Magistrate Judge Moorer concluded in the August 1, 2016 Order that the FDIC had waived the attorney-client privilege with respect to the eleven documents by putting the protected information at issue in this case. Order at 9-10.

## III. DISCUSSION

### A. Standard of Review

"Federal Rule of Civil Procedure 72(a) provides that a district court must set aside a magistrate judge's order only if the ruling was 'clearly erroneous or contrary to law.'" *Auburn Univ. v. Int'l Bus. Machines, Corp*., 2011 WL 5190821, at *1 (M.D. Ala. Nov. 1, 2011). "A magistrate judge's order is clearly erroneous when the reviewing court is left 'with the definite and firm conviction that a mistake has been committed.'" *Hope For Families & Community Serv., Inc. v. Warren*, 2009 WL 174970, at *3 (M.D. Ala. Jan. 26, 2009) (quoting *Rowlin v. Ala. Dep't of Pub. Safety*, 200 F.R.D. 459, 460 (M.D.Ala.2001)).

### B. The *Hearn v. Rhay* Three-Prong Test

As an initial matter, the FDIC argues that the August 1, 2016 Order is contrary to law because it improperly applied the three-prong test from *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) to find that the FDIC has put its attorney-client communications "at issue"—and thereby waived the attorney-client privilege—as to the eleven disputed documents. The FDIC argues that not only has the Eleventh Circuit not adopted the *Hearn* test, numerous courts have criticized the use of the *Hearn* test for disputes regarding "at issue" waiver of attorney-client privilege. *See* Dkt. No. 448 at 5 (*citing Ex parte State Farm Fire & Cas. Co*., 794 So. 2d 368, 374 (Ala. 2001) ("The liberal *Hearn* test has been criticized by many jurisdictions . . . ."); *In re Cty. Of Erie*, 546 F.3d 222, 229 (2d. Cir. 2008) (finding that "the *Hearn* test cuts too broadly")).

---

[3] The FDIC argues that PWC's motion for clarification was actually a motion for reconsideration. However, the proper characterization of PWC's motion does not affect the outcome of the instant motion.

PWC counters that the *Hearn* test is "recognized as the correct legal standard for determining at-issue waiver in the Eleventh Circuit," arguing that on "two separate occasions, the Eleventh Circuit" has "relied on the *Hearn* court's analysis" to resolve an "at-issue" waiver dispute. Dkt. No. 451 at 8 (*citing Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1418 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *GAB Bus. Servs., Inc. v. Syndicate* 627, 807 F.2d 755, 762 n.11 (11th Cir. 1987)).

It is not necessary for this Court to determine whether the *Hearn* three-prong test is the correct standard to apply in this case because, for the reasons discussed below, this Court, even applying the more liberal *Hearn* standard, concludes that the FDIC has not waived its attorney-client privilege with respect to the eleven documents.

**C. The FDIC Did Not Waive Attorney-Client Privilege with Respect to the Eleven Disputed Documents**

As discussed above, the Magistrate Judge applied the three-prong *Hearn* test to determine that the FDIC placed the relevant attorney-client communications at issue. This test instructs that a court should find waiver when the: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to defense." *Hearn*, 68 F.R.D. at 581.

**1. The FDIC did not assert the privilege as a result of an affirmative act on its part**

The Magistrate Judge concluded that the FDIC satisfied *Hearn's* first prong, stating: "[u]nder the first prong, it is clear that Colonial/FDIC-R has 'acted in a manner which resulted in the assertion of the privilege.' . . . . the eleven disputed documents were not provided by Colonial

to PWC or any other third parties during the time period when Colonial was endeavoring to answer the question of which transactions qualified for sales accounting treatment. Additionally, the eleven disputed documents were 'clawed back' on the basis of privilege by FDIC-R during the deposition of Mr. David Byrne, in house counsel for Colonial." Order at 9-10. Thus, according to the Magistrate Judge, the FDIC's mere assertion of the attorney-client privilege was sufficient to satisfy the "affirmative act" requirement under *Hearn*.

This Court respectfully disagrees with the Magistrate Judge. The mere assertion of attorney-client privilege cannot be sufficient to satisfy the first prong of the *Hearn* test. If it were sufficient, then *any* time a party asserted attorney-client privilege, the first prong of *Hearn* would be met. This cannot be the case. Indeed, it is clear that the *Hearn* court envisioned that something more than just asserting privilege is required to satisfy the "affirmative act" requirement. In *Hearn*, the plaintiff, an inmate in a correctional facility in Eastern Washington, brought a civil rights action against various prison officials complaining of his confinement in the mental health unit at the facility. 68 F.R.D. at 576. He claimed that the mental health unit was "a euphemism" for "punitive isolation" where prisoners were kept in filth without access to adequate heat or hygienic materials, among other things. *Id*. at 577. The defendants asserted in their answer that they had acted in good faith and that the decisions they made regarding plaintiff's confinement were protected by qualified immunity. *Id*. at 578. In order to counter this defense, plaintiff sought discovery of legal advice rendered to defendants by the Washington Attorney General insofar as such advice related to plaintiff's confinement and tended to prove defendant's bad faith. *Id*. The defendants asserted attorney-client privilege as to the legal communication between them and the Attorney General. The court determined that the defendants waived the privilege by *placing the legal advice at issue* when they *affirmatively plead the defense of qualified immunity*.

*Id*. at 582. "[T]hrough this affirmative act [the defendants] placed the protected information at issue, for the legal advice they received is germane to the qualified immunity defense they raised[.]" *Id*.

This, of course, is consistent the Eleventh Circuit's decision in *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1418-19 (11th Cir.) *modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994). In *Cox*, the Eleventh Circuit stated:

> The great weight of authority holds that attorney-client privilege is waived when a litigant places information protected by it in issue **through some affirmative act for his own benefit**, and to allow the privilege to protect against disclosure of such information *would be manifestly unfair* to the opposing party.

17 F.3d 1418 (quoting *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989)) (bolding not in original). The *Cox* Court went on to identify three sets of circumstances where courts have found at-issue waiver: "(1) when a client testifies concerning portions of the attorney-client communication; (2) when a client places the attorney-client relationship directly at issue; and (3) when a client asserts reliance on an attorney's advice as an element of a claim or defense." *Id*. at 1418 (quoting *Sedco In'l S.A. v. Cory*, 638 F.2d 1201, 1206 (8th Cir.) *cert. denied*, 459 U.S. 1017 (1982)), s*ee also Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 447 (S.D. Fla. 1980) (quoting *Hearn*, 68 F.R.D. at 581) ("[a]ll of these established exceptions to the rules of privilege have a common denominator, in each instance, the party asserting the privilege *placed* information protected by *it in issue through some affirmative act* for his own benefit[.]") (emphasis added).

In *Cox*, the Eleventh Circuit determined that the defendant waived its privilege because it "affirmatively assert[ed] that it believed that [the activity for which it was being sued] was legal." 17 F.3d at 1419. Therefore, the Court concluded, the defendant, "[h]aving gone beyond

mere denial, [and] affirmatively [] assert[ing] good faith, [] injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege." *Id.*

PWC tacitly concedes that the Magistrate Judge erred by "focus[ing] on the affirmative act of asserting the privilege itself" in determining that the FDIC's actions satisfied the first prong of the *Hearn* test. Dkt. No. 451 at 10, n.5. Nevertheless, PWC argues that "it is clear that the first *Hearn* factor is satisfied in this case by the FDIC's filing of this lawsuit." *Id.* In making this argument, PWC mischaracterizes the nature of the FDIC's claims against it. PWC would have this Court find that because the FDIC alleges that PWC provided bad accounting services to Colonial, the FDIC placed the relevant legal communications at issue. In support of this argument, PWC claims that the "FDIC's claims against [it] rely in large part on [the FDIC's] contention that the COLB transactions should not have been accounted for as sales under FAS 140." Dkt. No. 451. However, PWC argues, "contrary to what the FDIC tries to suggest, it was Colonial, not PWC, that made the sale-accounting determination for the COLB transactions." *Id.* "To arrive at its determination," PWC claims, "Colonial relied upon legal advice regarding the propriety of sale-accounting treatment that it received from [legal counsel]." *Id.* at 4. According to PWC, "Colonial then provided some (but not all) of these materials [setting forth the legal advice] to PWC in connection with the audits. PWC reviewed the supplied materials and concluded that Colonial's determination was reasonable." *Id.* (internal quotation omitted). Therefore, PWC argues, "[g]iven that Colonial's determination that sale accounting was proper in direct conflict with the FDIC's current claim that sale accounting was improper," PWC is entitled to "explore Colonial's own initial sale-accounting determination." *Id.*

PWC's argument turns the law of privilege on its head. None of the FDIC's claims against PWC—professional negligence, gross negligence, breach of contract, and wantonness—

rely in any way on the legal advice Colonial may have received. Colonial's good faith, knowledge of the law, state of mind, or reliance on an attorney's advice is not an element of any of the FDIC's claims against PWC. Nor are the attorney communications relevant to PWC's defense against these claims. PWC claims that it concluded that the COLB transactions qualified for sale accounting under FAS 140 based on Colonial's representation to it. In order to substantiate this claim, PWC needs only the information that Colonial or Colonial's legal counsel actually disclosed to PWC during the audit process, which, of course, PWC already has. PWC does not need to know the legal basis behind Colonial's alleged determination. Therefore, the Court concludes that the first prong of *Hearn* is not satisfied under the circumstances of this case.

### 2. The FDIC did not, through an affirmative act, put the protected information at issue by making it relevant to the case

The Magistrate Judge concluded that the second *Hearn* prong was satisfied because the eleven disputed documents "related to the question of PWC's responsibility as auditor for Colonial and Colonial's actions in response to PWC's inquiries and advice concerning sales accounting." Order at 10. Once again, this Court respectfully disagrees with the Magistrate Judge's conclusion. Protected information does not become "at issue" for purposes of waiver simply because the information "relate[s] to" an issue in the case; rather, the protected information becomes "at issue" only if the privilege-holder's affirmative act makes the information relevant to the case. So, for instance, in *Hearn*, the protected information became relevant because the defendants intended to rely on it to support their affirmative defense of qualified immunity. 68 F.R.D. at 581-83 (noting that defendants' assertion of the affirmative defense of good faith immunity put the legal advice defendants received directly in issue).

Indeed, the Eleventh Circuit has cited *Hearn* exactly twice, and in both cases, it required a showing of reliance on the protected information in order to establish at issue waiver. *See Cox* 17 F.3d at 1419 (affirming the district court's finding of waiver because "it would be inequitable to allow [defendant] to present evidence tending to show that it intended to comply with the law, while allowing it to cloak in privilege those documents tending to show it might have known its actions did not conform to the law"); *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987) (litigant "waives its attorney-client privilege when it injects into this litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct"). Likewise, federal courts within the Eleventh Circuit have similarly held that the advice of counsel is placed at issue only "where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Gaurantee Ins. Co. v. Heffernan Ins. Brokers, Inc*., 300 F.R.D. 590, 595 (S.D. Fla. 2014) (quoting *Rhone-Poulenc Rorer, Inc. v. Home Idemnity Co*., 32 F.3d 851, 863 (3d Cir. 1994) (stating that "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged); *see also Chick-fil-A v. ExxonMobil Corp*., 2009 WL 3763032 (S.D. Fla. No. 10, 2009) (declining to find waiver because the defendant did not rely on any privileged information); *Jackson v. Dean*, 2013 WL 3863889, *4 (S.D. Ga. July 25, 2013) (finding waiver where defendants "intent[ed] to rely on the testimony of [the attorney] while defending against Plaintiffs' allegations"). Therefore, this Court concludes that the second *Hearn* prong is not satisfied because PWC has not demonstrated either that the FDIC intends to rely on the protected information to support its claims or that PWC needs access to the protected information to establish its defense to the FDIC's claims.

**3. Upholding the privilege will not deny PWC access to information vital to its defense**

The Magistrate Judge concluded, without analysis, that the disputed documents "may be 'vital' to PWC's defense against the FDIC-R's claims" and therefore, "allowing the privilege to protect against disclosure 'would be manifestly unfair' to PWC in this case." Order at 10 (citing *Hearn*, 68 F.R.D. at 581 and *Cox*, 17 F.3d at 1417). The problem is that under *Hearn*, it is not enough that the information simply "may be" vital, it *must* be vital to PWC's defense in order to support waiver. For instance, in *Hearn*, the court determined that the privilege information was vital to plaintiff's case because "the content of [the] defendant's [*sic*] communications with their attorney is inextricably merged with the elements of plaintiff's case and defendants' affirmative defenses. These communications are not incidental to the case; they inhere in the controversy itself, and to deny access to them would preclude the court from a fair and just determination of the issues." *Hearn* 68, F.R.D. at 582. Indeed, the Eleventh Circuit noted in *Cox* that a "[c]ourt cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant." 17 F.3d at 1418 (quoting *Remington Arms Co. v. Liberty Mut. Ins. Co*., 142 F.R.D. 408, 415 (D. Del. 1992)).

In the end, what Colonial's legal counsel may have said to Colonial is not relevant to PWC's defenses against the FDIC's claims. PWC wants to argue that: (1) Colonial told PWC that the sale accounting was proper, and (2) PWC relied on Colonial's representation. PWC already has in its possession what it needs to make this argument—the documents Colonial and Colonial's attorney disclosed to PWC during the audit process. Colonial's privileged attorney-client communications are not "vital"—nor even relevant—to establishing what PWC relied on during the auditing process.

## IV. CONCLUSION

Based on the foregoing reasons, the Court HEREBY: (1) SETS ASIDE the Order dated August 1, 2016 [Dkt. No. 445]; (2) DENIES PWC's Motion to Clarify Order Regarding Privileged Documents [Dkt. No. 431]; and (3) ORDERS PWC to return the eleven privileged documents pursuant to the parties' Amended Protective Order [Dkt. No. 105].

Dated this 17th day of September, 2016.

Barbara Jacobs Rothstein
U.S. District Court Judge