UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN, <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, <br><br> Defendants. <br> _____ <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank, <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, <br><br> Defendants. | Case No. 2:11-cv-00746-BJR (LEAD CASE) <br><br> **REDACTED** <br><br><br><br><br><br> Case No. 2:12-cv-00957-BJR <br><br> **REDACTED** |

**PLAINTIFF FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK'S OPPOSITION TO CBG'S MOTION TO EXCLUDE CERTAIN EXPERT OPINIONS AND TESTIMONY OF THE FDIC-R'S EXPERTS JONATHAN WALKER AND KENNETH J. MALEK**

The Colonial BancGroup, Inc. as post-confirmation debtor, and Kevin O'Halloran, as plan trustee acting for and on behalf of BancGroup (collectively "CBG") have moved to exclude certain opinions and testimony of Jonathon Walker ("Walker") and Kenneth Malek ("Malek"), contending that "they are not qualified to render those opinions, [sic] irrelevant to the issues in this case and because they are unsupported and unreliable and would not assist the trier of fact." *See* Motion of the Colonial BancGroup, Inc., and Kevin O'Halloran, as plan trustee, to Exclude Certain Expert Opinions and Testimony of the FDIC-R's Experts Jonathan Walker and Kenneth J. Malek (Doc. No. 529) ("Motion") at p. 1.  CBG misconstrues the point of both rebuttal reports, which is to rebut a defense expert's critique of the expert report issued by Malek and highlight certain failures in the defense expert's analysis.  It is not to attack CBG's own damages expert or offer regulatory or corporate governance opinions.  The Motion fails to provide the Court with the context in which the complained of sections of the rebuttal reports arise and that context shows that Walker's and Malek's rebuttal opinions are relevant, reliable, and will assist the trier of fact in understanding Malek's opinions and the defense expert's critiques of those opinions.

## I.   BACKGROUND

The Federal Deposit Insurance Corporation as receiver for Colonial Bank ("FDIC-R") retained Malek as its damages expert.  CBG retained Laureen Ryan ("Ryan") as its damages expert.  Pricewaterhouse Coopers LLP ("PwC") and Crowe Horwath LLP ("Crowe") (collectively, "Defendants") submitted expert reports relating to damages, including the reports of Kenneth M. Lehn ("Lehn") and Christopher M. James ("James").  The Defendants' reports addressed the damages claimed by both the FDIC-R and CBG and specifically criticized certain sections of the Malek report.  As a result, Malek prepared a rebuttal report addressing the defense experts' critique of his opinions.  The FDIC-R also retained Walker to provide a rebuttal report

2

as to those criticisms.  The Defendants have not filed any motion to exclude or limit the reports or testimony of either Malek or Walker.  Instead, CBG seeks to exclude any opinions or testimony from Walker or Malek that  *See* Motion at 12.  In doing so, CBG mistakenly asserts that such testimony requires a regulatory or corporate governance expert as opposed to a damages expert.  Contrary to CBG's position, it is entirely appropriate for the FDIC-R's damages expert, Malek, as well as its rebuttal expert, Walker, to address the flaws in Lehn's damages analysis as part of their damages rebuttal in defense of Malek's opening opinion.

## II.  STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY

To determine whether expert testimony may be admitted, the Court is required to engage in the "rigorous three-part inquiry" of whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated by *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993))).  "There are thus three discrete inquiries: qualifications, relevance, and reliability."  *Nelson v. Whirlpool Corp.*, Civil Action No. 09-0520-WS-B, 2011 WL 1827451, at *1 (S.D. Ala. May 12, 2011).  Furthermore, a court may exclude expert testimony even if it is relevant where "its probative value is substantially outweighed by a danger

3

of . . . confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999). Under the applicable law, speculative expert testimony is not admissible. Federal Rule of Evidence 702 requires that expert testimony be "based on sufficient facts or data" and "the product of reliable principles and methods that are reliably applied to the facts of the case." Fed. R. Evid. 702(b) and advisory committee's note (2000 amends.).

### III. ARGUMENT

CBG initially asserts that it is seeking to exclude those portions of the rebuttal reports and related testimony that ███████████████████████████████████████████████████████████████████████████████████████████████████ Motion at 1-2. CBG then attempts to narrow this broad and vague request by asking that the Court ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Motion at 12.[1] As discussed below, when considered in context,



4

this testimony is relevant because it is an important factor that the defense expert failed to consider in his critique of Malek's damages opinions. In addition, this testimony does not require a regulatory or corporate governance expert because the testimony complained of merely reiterates what this Court has already stated in a previous order, yet explains why the point is important in the context of the damages analysis.

### A. Malek and Walker opine that Lehn's opinions are speculative and that he failed to consider relevant information when criticizing Malek's expert report.

Lehn criticized Malek's expert report and opinions on a variety of grounds. Only one of those criticisms is relevant to the Motion— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Motion at 2. In response, both Malek and Walker addressed the flaws in Lehn's position, including the speculative nature of his opinion and his failure to consider factors critical to reaching that opinion. For example, Malek and Walker criticize Lehn because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ What CBG attacks, however, are not these flaws in Lehn's critique. Instead, CBG attacks Malek and Walker's brief discussion of the source of strength doctrine— already recognized by this Court—in the context of addressing these flaws. It is thus important to outline the positions taken by the parties' experts in this case to understand the context in which the complained-of topics are discussed.

5

   *1. Malek's Original Report*

The FDIC-R's damages are based on the claim that, if PwC and Crowe had properly performed their audits, the fraud would have been discovered and additional losses from that time forward would have been avoided. The additional losses constitute the FDIC-R's damages. Malek's methodology in determining those amounts is straightforward. He calculated Colonial Bank's losses resulting from the fraud at various points in time when PwC and Crowe should have discovered the fraud and compared those figures to his calculation of the losses when Colonial Bank was closed. The difference between the two represents the FDIC-R's damages for each timeframe involved. For example, Mr. Malek opined that, as of March 7, 2006, Colonial Bank had incurred losses due to the fraud of $539,282,350, whereas the losses due to the fraud at bank closure were $2,374,754,413. The difference between these two numbers ($1,835,472,063) represents the FDIC-R's damages should the jury determine that PwC and Crowe should have discovered the fraud on March 7, 2006.[2]

   *2. Lehn's Opinion*



   *3. Malek's Rebuttal Opinion*

---

[2] Malek also made various adjustments to the damage calculation by subtracting recoveries made by the FDIC-R and the income derived from the TBW relationship. The result is that the total damage amount, including prejudgment interest, using the March 7, 2006 date, was $1,461,609,839.

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████  As noted in the rebuttal report, CBG received more than $648.7 million from Colonial Bank from 2003 through 2006 and more than $682.5 million in 2007 and 2008, which far exceeds the amount of the alleged offset from capital contributions downstreamed by CBG to Colonial Bank. *See* Ex. B at 13-14.  Furthermore, given the massive dividends received by CBG from Colonial Bank, if the fraud had been discovered in 2008 and Colonial Bank had become undercapitalized, CBG would have come under regulatory pressure to recapitalize Colonial Bank given that it had $100 million on its books at that time.  *Id.* at 16.  It is in relation to these rebuttal arguments that Malek mentioned the source of strength doctrine.  In short, Malek demonstrates that ███████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████

    4. *Walker's Rebuttal Opinion*

█████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████  *See* Walker Rebuttal, Ex. D at p. 2-3, ¶3. Walker explained that it is ██████████████████████████████

7

███████████████████████████████████████████████████████████

███████████████████████████████████ *Id.* at p. 4, ¶8.  Walker then discussed the fact that, according to Lehn, ████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████ *Id.* at 4-5, ¶9.  Finally, Walker opined that, even if "damages are based on PwC discovering the fraud in 2008 or 2009, there is no sound reason to assume that CBG's capital contributions would be zero." *Id.* at p. 5, ¶10.  In support of this position he contrasted the lack of sound reason to assume there would be no capital contributions with ██████████████████████████████████████ Walker, like Malek, demonstrated that Lehn's critique of Malek's opinions failed to consider relevant issues and was premised on faulty and speculative assumptions.

   **B.**  **Malek and Walker are qualified to testify regarding damages and to rebut Lehn's *damages* opinions.  They are not offering a regulatory or corporate governance opinion.**

   As discussed above, Malek is the FDIC-R's *damages* expert and no party has challenged his qualifications in that regard.  Similarly, Walker was retained to rebut criticisms leveled against Malek's *damages* analysis by defendants' experts and, like Malek, his qualifications in that regard have not been questioned.  There is good reason for this.  Both Walker and Malek have extensive education, experience, and credentials in their fields.  Malek is a Certified Public Accountant with more than 30 years of experience assisting companies in a broad range of economic matters, including experience advising community banks on capitalization issues in the context of potential acquisitions.  *See* Ex. E, Curriculum Vitae of Malek; Ex. C, Malek depo. at 240:19-241:20.  He has assisted companies undergoing transactions, disputes, transition, underperformance, and distress, and has been engaged as an expert in a number of cases to

8

conduct financial, economic and accounting investigations. *Id.* He has been a speaker on numerous occasions, addressing damages related topics, and has been an expert in 62 court cases that resulted in the issuance of an expert report, deposition testimony, or trial testimony. *Id.* Walker received his Ph.D. in economics from the Massachusetts Institute of Technology, a Doctoral Fellowship from the American Economic Association, and has extensive experience publishing, consulting, and testifying as to damages. *See* Ex. F, Curriculum Vitae of Walker. The only challenge to their testimony in this case has come from CBG's motion, which, challenges a very narrow part of their rebuttal reports—███████████████████████

███████████████████████████████████████████████████████

███████████████████████████

  CBG argues that Walker and Malek should be precluded from mentioning the source of strength doctrine because they are not regulatory or corporate governance experts. While both have pertinent experience, the fact is that they do not need to be regulatory or corporate governance experts to opine on these topics given the context in which they have been raised.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████

  In rebuttal, Malek and Walker have simply stated that ███████████████

███████████████████████████████████████████████████████

████████ Malek and Walker are stating that, when an expert creates a hypothetical damages scenario, the expert is required to consider all appropriate adjustments to damages that may occur in that scenario—████████████████ It does not require any regulatory or corporate

9

governance expertise to make this argument. Instead, this is an explanation of *damages* and how such damages should be computed—a topic on which no party has disputed Malek or Walker's qualifications.

Furthermore, ███████████████████████████████████████████████

████████████████████████████████████████ In discussing the source of strength doctrine, both Malek and Walker explained why this topic was discussed. When asked by counsel for CBG whether he was suggesting that "CBG would have been under significantly [sic] regulatory pressure to recapitalize the bank or that the board of directors of Colonial would have recapitalized the bank," Malek made clear that he was "not reaching an opinion whether the board of directors would have actually recapitalized the bank" in the event that the fraud had been discovered. *See* Ex. C, Malek depo., at 294:5-296:24. Instead, he was providing the reasons he did not include an offset in his damages calculations based on capital contributions in 2008 and 2009, one of which involved his opinion that there would be significant regulatory pressure to recapitalize the bank under the source of strength doctrine. *Id.* This is not a novel proposition. In fact, this Court has already made this point, stating that:

> As a bank holding company, CBG is required to serve as a source of strength to Colonial. [citations omitted]. As such, it was entirely foreseeable that CBG would downstream funds to Colonial when Colonial began to struggle financially. In fact, it was required to do so. . . . the fraud was able to continue for years, ultimately—indeed inevitably—leading to Colonial's financial struggle, thereby triggering CBG's obligation to stabilize its subsidiary by downstreaming funds to it.

*See* Order Granting in Part and Denying in Part Defendant Crowe's Motion for Summary Judgment regarding Plaintiff Colonial BancGroup's Alleged Damages (Doc. 450) at 12-13. But this point is a necessary component of the rebuttal to Lehn's critique of Malek's damages theory.

Walker also explained his reference to the source of strength doctrine at his deposition. When asked whether his ████████████████████████████████████████

10

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████ And it's not based exclusively on the source of strength doctrine but also on my general knowledge about the fact that banks are highly regulated entities. And it's implausible to me, having worked at the Federal Reserve Bank of Boston and written my dissertation about the banking industry, that's something that's going to happen." *See* Ex. A, Walker depo. at 142:1-25. Walker also testified that he had seen this topic addressed in an Order from this Court. *Id.* This is not a novel proposition and highlights that Lehn's opinion is based on a speculative foundation. Moreover, the fact that this Court has recognized that the source of strength doctrine was applicable to CBG as Colonial Bank's parent corporation shows that Malek and Walker do not have to be regulatory or corporate governance experts in order to criticize Lehn's failure to consider it.

**C. Malek and Walker made clear that they are not rebutting Ryan's report.**

Although CBG claims that Walker and Malek used their rebuttal reports "as [an] opportunity to criticize BancGroup's damages and the *initial* report of BancGroup's damages expert, Laureen Ryan," this is simply not the case. *See* Motion at 1. ████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████ Malek and Walker respond to this criticism by addressing the flaws in Lehn's report described above. Both Malek and Walker made clear that they were not providing an opinion as to Ryan's report or opinions.

For example, Malek's rebuttal report clearly stated that it was limited to responding to the criticisms against his initial report by the experts retained by PwC and Crowe. *See* Ex. B at pp.

11

2-4. Malek also made clear in his deposition that he was not rebutting Ryan's opinions and was not opining that CBG would have recapitalized Colonial Bank. *See* Ex. C at 294:15-296:24; 312:7-22. Similarly, Walker's rebuttal report specifically states that his report is "limited to an explanation of why five specific criticisms that Dr. Lehn and Dr. James raised regarding Mr. Malek's report are invalid and why any opinions based on those criticisms are incorrect." *See* Ex. D at p. 2, ¶2. Accordingly, neither Malek nor Walker criticized the opinions of Ryan, CBG's expert.

## CONCLUSION

For all of these reasons, the FDIC-R respectfully requests that the Court deny CBG's Motion to Exclude Certain Expert Opinions and Testimony of the FDIC-R's Experts Jonathan Walker and Kenneth J. Malek.

Dated: November 29, 2016.

Respectfully submitted,

*/s/ Grace L. Kipp*

**SPOTSWOOD SANSOM & SANSBURY LLC**
Robert K. Spotswood (SPO 001)
Michael T. Sansbury (SAN 054)
Grace L. Kipp (LON 049)
Mary G. Menge (MEN 014)
One Federal Place
1819 Fifth Avenue North, Suite 1050
Birmingham, Alabama 35203
Telephone:    (205) 986-3620
Facsimile:    (205) 986-3639
Email: rks@spotswoodllc.com
       msansbury@spotswoodllc.com
       gkipp@spotswoodllc.com
       mmenge@spotswoodllc.com

**MULLIN HOARD & BROWN, LLP**
David Mullin (TX Bar No. 14651600) *PHV*
John M. Brown (TX Bar No. 3142500) *PHV*
John G. Turner, III (TX Bar No. 20320550) *PHV*
Robert Bell (TX Bar No. 00787062) *PHV*
Clint Latham (TX Bar No. 24013009) *PHV*
Anthony W. Kirkwood (TX Bar No. 24032508) *PHV*
Richard Biggs (TX Bar No. 24064899) *PHV*
500 South Taylor, Suite 800
Amarillo, Texas 79101
Telephone: (806) 372-5050
Facsimile: (806) 372-5086
Email: dmullin@mhba.com
       jobrown@mhba.com
       jturner@mhba.com
       rbell@mhba.com
       clatham@mhba.com
       tkirkwood@mhab.com
       rbiggs@mhba.com

**RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.**
Dennis Bailey (ASB-4845-171D)
J. Evans Bailey (ASB-9995-J61B)
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270

Telephone: (334) 206-3234  
Facsimile: (334) 481-0031  
Email: DRB@rsjg.com

*Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Colonial Bank*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on November 29, 2016, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing.

*/s/ John G. Turner, III*
OF COUNSEL