**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,**<br><br>**Defendants.** | **Case No. 2:11-cv-00746-BJR**<br>**LEAD CASE** |
| **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR COLONIAL BANK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,**<br><br>**Defendants.** | **Case No. 2:12-cv-00957-BJR** |

**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S ANSWERS AND DEFENSES TO THE FDIC'S THIRD AMENDED COMPLAINT**

Defendant PricewaterhouseCoopers LLP ("PwC") submits the following Answer, including Defenses, to Plaintiff's Third Amended Complaint (the "TAC"), which the Federal Deposit Insurance Corporation, as Receiver for Colonial Bank ("Plaintiff"), has filed against Defendant PwC and Defendant Crowe Horwath LLP ("Crowe").

The TAC contains a number of captions and headings. To the extent those captions and headings contain allegations against PwC, PwC denies the same.

1. PwC admits the allegations in the first sentence of paragraph 1. PwC further admits that, subsequent to serving as the auditor for Colonial BancGroup, Inc. ("CBG"), PwC learned that there was a collusive fraud involving employees at Colonial Bank and Taylor Bean & Whitaker ("TBW") that was concealed from PwC and others, but denies that Plaintiff has accurately described the fraud and therefore denies the remaining allegations in paragraph 1.

2. PwC denies the allegations in paragraph 2 that relate to PwC and denies that the FDIC is entitled to any damages based on the conduct of PwC. PwC further states that it served as the auditor for CBG not Colonial Bank. PwC admits that Crowe provided outsourced internal audit services to CBG but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 2 and therefore denies those allegations.

3. PwC denies the allegations in paragraph 3 that relate to PwC, except PwC admits that it was never aware that many hundreds of millions of dollars of Colonial Bank assets did not exist, had been sold to others, or were worthless, and admits that PwC issued unqualified opinions, but denies that paragraph 3 accurately alleges the content of those opinions. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 3 and therefore denies those allegations.

4. PwC denies the allegations in paragraph 4.

5. PwC admits that FAS 140 contains certain criteria for a transaction to qualify as a sale, but denies that paragraph 5 accurately describes those criteria. PwC further admits that it concurred in CBG's and Colonial Bank's conclusion that the COLB transactions qualified as sales pursuant to FAS 140. To the extent not expressly admitted herein, PwC denies the allegations in paragraph 5.

6. PwC denies the allegations in paragraph 6.

7. PwC denies the allegations in paragraph 7.

8. PwC denies the allegations in paragraph 8.

9. PwC denies the allegations in paragraph 9.

10. PwC denies the allegations in paragraph 10 to the extent they relate to PwC, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 10 and therefore denies those allegations.

11. PwC admits the allegations in the first sentence of paragraph 11. PwC further admits that 12 U.S.C. § 1821(d) grants the FDIC certain powers and duties as Receiver for Colonial Bank. PwC denies that Plaintiff has any claim against it and denies the remaining allegations in paragraph 11.

12. PwC admits the allegations in paragraph 12, except PwC denies the allegations to the extent that they suggest that PwC has partners in every state in the United States.

13. PwC admits that Crowe is an Indiana limited liability partnership; that its national office is in Illinois; and that it has partners in several states. To the extent not expressly admitted herein, PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 13 and therefore denies those allegations.

14. PwC does not contest subject matter jurisdiction or venue in this Court with respect to the claims that Plaintiff purports to assert against PwC in the TAC, but PwC denies that the TAC states a claim against PwC as to which relief can be granted.

15. PwC admits that Colonial Bank was headquartered in Montgomery, Alabama; that Colonial Bank was a wholly-owned subsidiary of CBG; and that Colonial Bank's mortgage warehouse lending division ("MWLD") was based in Orlando, Florida. Without a specified time

period, PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 15 and therefore denies those allegations.

16. PwC admits that the MWLD provided short-term, secured funding to mortgage origination companies. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 16 and therefore denies those allegations.

17. PwC admits that the MWLD assets fell into three categories: (1) loans, which consisted mainly of mortgage warehouse lines of credit; (2) mortgage loans held for sale (including COLB); and (3) securities purchased under agreement to resell (including AOT). PwC admits that TBW was the MWLD's largest customer. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of paragraph 17 and therefore denies those allegations. PwC denies the remaining allegations in paragraph 17.

18. PwC denies the allegations in paragraph 18, except PwC admits that Colonial Bank purchased from TBW and others participation interests in individual mortgage loans; that the terms of those transactions required that committed takeout investors be in place; and that Colonial Bank's customer was required, upon request by Colonial Bank, to repurchase the loan if the mortgage loans did not meet certain requirements under the controlling agreement.

19. PwC denies the allegations in paragraph 19, except PwC admits that the AOT product was introduced in 2004; that TBW was Colonial Bank's only customer with an AOT facility; that the terms of those transactions required that committed takeout investors be in place; and that TBW was required, upon request by Colonial Bank, to repurchase the interest in the security if, among other things, a takeout investor did not purchase it. PwC further states that Colonial Bank purchased participation interests in securities backed by pools of mortgage loans.

20. PwC admits that, at various times, Lee Farkas served as TBW's Chairman; that, at various times, Desiree Brown served as TBW's treasurer; that Catherine Kissick served as the director of the MWLD; and that, at various times, Teresa Kelly served as an operations supervisor in the MWLD and reported to Kissick. PwC further admits that, subsequent to serving as CBG's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others. Except as expressly admitted herein, PwC denies the allegations in paragraph 20.

21. PwC admits that, subsequent to serving as CBG's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, but PwC denies that Plaintiff has accurately described the fraud and therefore denies the remaining allegations in paragraph 21.

22. PwC denies the allegations in paragraph 22, except PwC admits that Farkas was convicted of various crimes committed in the course of TBW and Colonial Bank's collusive fraud and that Brown, Kissick, Kelly and others at TBW pleaded guilty to various crimes for their roles in this collusive fraud.

23. PwC admits that, subsequent to serving as CBG's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, but denies that Plaintiff has accurately described the fraud and therefore denies the remaining allegations in paragraph 23.

24. PwC admits that Colonial Bank had policies and procedures in place related to the approval for overdrafts, but denies the allegations in paragraph 24 to the extent they are incomplete, inconsistent with, or take out of context the provisions of those policies and procedures. PwC further admits that subsequent to serving as CBG's auditor, PwC learned that

TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, but denies that Plaintiff has accurately described the fraud and therefore denies the remaining allegations of paragraph 24.

25. PwC admits that, subsequent to serving as CBG's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud that was concealed from PwC and others, and that in late 2003, Colonial Bank, through at least Kissick and Kelly, moved the fraud to TBW's COLB facility and implemented what they referred to as "Plan B." PwC denies that Plaintiff has accurately described the fraud in the remaining allegations of paragraph 25, and therefore denies those allegations.

26. PwC denies that under the AOT facility Colonial Bank purchased interests in pools of loans from TBW, and states that under the AOT facility Colonial Bank purchased interests in securities from TBW that were backed by pools of loans. PwC admits that, subsequent to serving as CBG's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud, and that in late 2004, Colonial Bank, through at least Kissick and Kelly, moved the fraud from TBW's COLB facility to TBW's AOT facility, but PwC denies that Plaintiff has accurately described the fraud in the remaining allegations of paragraph 26, and therefore denies those allegations.

27. PwC admits that, subsequent to serving as CBG's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others, had committed a collusive fraud, and that Colonial Bank, through at least Kissick and Kelly, falsified Colonial Bank records and took other steps to conceal this collusive fraud from PwC and others, but PwC denies that Plaintiff has accurately described the fraud in the remaining allegations of paragraph 27, and therefore denies those allegations.

28. PwC admits that, subsequent to serving as CBG's auditor, PwC learned that, in 2009, TBW and its subsidiary, Ocala Funding, had obtained good quality mortgage loans (not Plan B loans) from Colonial Bank, sold or pledged those loans to multiple third parties, and failed to pay Colonial Bank for them as promised. Except as expressly admitted herein, PwC denies the allegations in paragraph 28.

28(a). PwC denies the allegations in subparagraph (a) of paragraph 28.

28(b). PwC denies the allegations in subparagraph (b) of paragraph 28, except PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations that relate to Crowe and therefore denies those allegations.

28(c). PwC denies the allegations in subparagraph (c) of paragraph 28.

28(d). PwC admits that, subsequent to serving as CBG's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Kissick, Kelly, Brown and others, had committed a collusive fraud, and that, in or before July 2008, Colonial Bank, through at least Kissick, stopped making Plan B advances to TBW in connection with this collusive fraud although Colonial Bank, through at least Kissick, continued to conceal this collusive fraud. PwC denies that the Plaintiff has accurately described the fraud in the remaining allegations of paragraph 28(d) and therefore denies those allegations.

28(e). PwC admits that, subsequent to serving as CBG's auditor, PwC learned that TBW and Colonial Bank, through Farkas, Kissick, Kelly, Brown and others, had committed a collusive fraud and that, in or before July 2008, Colonial Bank, through at least Kissick, stopped making Plan B advances on TBW's AOT facility in connection with this collusive fraud. PwC further states that Kissick and Kelly did not participate in the new double-and triple-pledging fraud that

later occurred, denies that Plaintiff has accurately described the double- and triple-pledging fraud, and therefore denies the remaining allegations of paragraph 28(e).

28(f). PwC denies the allegations in subparagraph (f) of paragraph 28.

28(g). PwC denies that Plaintiff has accurately described the course of events in paragraph 28(g) and denies that plaintiff has accurately described the double- and triple-pledging stage of the fraud; therefore, PwC denies the allegations in paragraph 28(g). PwC further states that the double- and triple-pledging stage of the fraud was not a continuation, part or “phase” of the collusive fraud committed together by TBW and Colonial Bank, through Farkas, Brown, Kissick, Kelly and others.

29. PwC denies that it served as Colonial Bank’s external auditor and states that it served as CBG’s external auditor under engagement agreements with CBG. PwC admits that the engagement agreements for PwC’s audits of CBG’s year-end financial statements set forth PwC’s obligations to CBG and CBG’s obligations to PwC, but PwC denies the allegations in the second sentence of paragraph 29 to the extent they are incomplete, inconsistent with, or take out of context the language contained in the engagement agreement. PwC admits that CBG was a single-bank holding company. PwC further admits that, at the conclusion of each audit, PwC issued a report. Except as expressly admitted herein, PwC denies the allegations in paragraph 29.

30. PwC denies the allegations in paragraph 30.

31. PwC admits that its audits of CBG’s financial statements for the periods ending December 31, 2004, December 31, 2005, December 31, 2006, December 31, 2007, and December 31, 2008 were “integrated audits” in accordance with PCAOB Auditing Standards; that the PCAOB required that integrated audits be conducted in accordance with PCAOB

Auditing Standards; that the PCAOB Auditing Standards adopted Generally Accepted Auditing Standards as they existed on April 16, 2003, subject to amendment or supplementation by the PCAOB; and that there are ten GAAS standards. Except as specifically admitted herein, PwC denies the allegations in paragraph 31.

32. PwC admits that GAAS and AS contain some of the language set forth in paragraph 32, but denies the allegations in paragraph 32 to the extent they are incomplete, inconsistent with, or take out of context the relevant provisions of GAAS and AS.

33. PwC admits that GAAS and AS contain some of the language set forth in paragraph 33, but denies the allegations in paragraph 33 to the extent they are incomplete, inconsistent with, or take out of context the relevant provisions of GAAS or AS.

34. PwC admits that GAAS and AS contain some of the language set forth in paragraph 34, but denies the allegations in paragraph 34 to the extent they are incomplete, inconsistent with, or take out of context the relevant provisions of GAAS or AS.

35. PwC denies the allegations in paragraph 35.

36. PwC admits that in 2002, PwC learned that Fannie Mae had ended its relationship with TBW. PwC denies the remaining allegations in paragraph 36.

37. PwC denies the allegations in paragraph 37.

38. PwC denies the allegations in paragraph 38.

39. PwC admits that, by year-end 2007, home prices were falling and the rate of defaults on subprime mortgages had increased, but denies this occurred “throughout” 2007 and denies the remaining allegations in paragraph 39.

40. PwC denies the allegations in paragraph 40.

41. PwC denies the allegations in paragraph 41.

42. PwC admits the allegations in the first and third sentences of paragraph 42, except PwC denies that PwC, as opposed to others, was required to test the effectiveness of internal controls on which PwC intended to rely in order to limit the substantive audit procedures that it performed, and denies the remaining allegations in paragraph 42.

43. PwC admits that CBG engaged Crowe to provide certain outsourced internal audit services. PwC further admits that, in connection with PwC's audits of CBG's financial statements for the period ending December 31, 2007 (the "2007 Audit"): PwC complied with PCAOB standards, including AS No. 5; PwC used Crowe's work, among other things, for identifying key controls; PwC planned to use certain walkthroughs performed by Crowe of lower risk audit areas; and, in the planning process, PwC anticipated that Crowe would submit its planned testing approach/method for each key control to PwC for PwC's review. PwC further admits that a walkthrough could consist of the actions described in footnote 3 of paragraph 43. Except as expressly admitted herein, PwC denies the allegations in paragraph 43.

44. PwC admits that Treasury was a significant process. PwC further admits that, at December 31, 2007, CBG's balance of AOT participation interests was $1,549,664,315. Except as expressly admitted herein, PwC denies the allegations in paragraph 44.

45. PwC denies the allegations in paragraph 45, except PwC admits that the internal controls over financial reporting for the Treasury process were effective.

46. PwC denies the allegations in paragraph 46.

47. PwC denies the allegations in paragraph 47, except PwC admits that one of the substantive audit procedures PwC performed was confirming with TBW its AOT balance at December 31, 2007.

48. PwC denies the allegations in paragraph 48.

49. PwC denies the allegations in paragraph 49.

50. PwC denies the allegations in paragraph 50 except PwC admits that, as part of the 2007 Audit, PwC generally considered reconciliation to be a key control; that the reconciliation control was operating effectively; and that PwC selected, among others, the Securities Purchased Under Agreements to Resell account (which included AOT) for reconciliation testing.

51. PwC denies the allegations in paragraph 51.

52. PwC denies the allegations in paragraph 52, except PwC admits that, as part of the 2007 Audit, it obtained and relied on a report prepared and provided to PwC by Colonial Bank that contained a list of 107 AOT trades totaling over $584 million and that the report showed those trades having settled in January 2008.

53. PwC denies the allegations in paragraph 53.

54. PwC denies the allegations in paragraph 54, including footnote 4, except PwC admits that it received a response from TBW to an audit confirmation request regarding TBW's mortgage warehouse line, which stated that TBW's mortgage warehouse line as of December 31, 2007, was $105,723,893.39 and that the CB Portion of the mortgage warehouse line was $6,556,987.17.

55. PwC denies the allegations in paragraph 55.

56. PwC admits that, as part of the 2007 Audit, it obtained an aging report of COLB loans held for sale as of December 31, 2007 (the "Aging Report"); that the Aging Report showed $165,963,174 of COLB loans with advance dates prior to July 1, 2007; that Kissick represented that 99.6% of such loans were TBW-originated loans (which was corroborated by the Aging Report); and that Kissick represented that these loans had not yet been sold due to some type of documentation issue, but that the loans were quality, A-paper, performing loans. PwC further

admits that, as part of the 2007 Audit, it believed it had access to Crowe's workpapers. Except as expressly admitted herein, PwC denies the allegations in paragraph 56.

57. PwC denies the allegations in paragraph 57.

58. PwC denies the allegations in paragraph 58.

59. PwC admits that GAAP contain some of the language set forth in paragraph 59, but denies the allegations in paragraph 59 to the extent they are incomplete, inconsistent with, or take out of context the relevant provisions of GAAP. PwC denies the remaining allegations in paragraph 59.

60. PwC denies the allegations in paragraph 60.

61. PwC admits that PwC sent a letter to Sheila Moody dated November 14, 2002, and that the letter contained the quoted language, but denies the allegations in paragraph 61 to the extent they are incomplete, inconsistent with, or take out of context the quoted statements. PwC denies the remaining allegations in paragraph 61.

62. PwC denies the allegations in paragraph 62.

63. PwC admits that Gary Westbrook sent an email containing the quoted language, but denies the allegations in paragraph 63 to the extent they are incomplete, inconsistent with or take out of context the quoted statements. PwC also admits Frank Gaetano was consulted in 2008 but denies the remaining allegations of paragraph 63.

64. PwC denies the allegations in paragraph 64.

65. PwC admits that some of Mr. Gaetano's e-mail correspondence contains the language quoted in paragraph 65, but denies the allegations in paragraph 65 to the extent they are incomplete, inconsistent with, or take out of context the quoted statements and denies the remaining allegations in paragraph 65.

66. PwC admits that then-SEC Deputy Chief Accountant Scott A. Taub gave a speech at the 2003 AICPA SEC conference and that his statements included the language set forth in paragraph 66, but denies the allegations in paragraph 66 to the extent they are incomplete, inconsistent with, or take out of context the quoted statements and denies the remaining allegations in paragraph 66.

67. PwC denies the allegations in paragraph 67.

68. PwC admits that CBG and Colonial Bank made the representation quoted in the last sentence of paragraph 68, denies the allegations in the last sentence to the extent they imply that the representation was made by PwC, and denies the remaining allegations in paragraph 68.

69. PwC denies the allegations in paragraph 69.

70. PwC admits that Mr. Gaetano's performance review contains some of the language set forth in paragraph 70, but denies the allegations in paragraph 70 to the extent they are incomplete, inconsistent with, or take out of context the quoted statements and denies the remainder of the allegations in paragraph 70.

71. PwC admits that Mr. Gaetano's emails contain some of the language set forth in paragraph 71, but denies the allegations in paragraph 71 to the extent they are incomplete, inconsistent with, or take out of context the quoted statements and denies the remainder of the allegations in paragraph 71.

72. PwC denies the allegations in paragraph 72.

73. PwC admits that Crowe entered into various engagement agreements with CBG, and that those engagement agreements set forth Crowe's and CBG's duties and responsibilities. Except as expressly admitted herein, because this paragraph lacks a specified time period, PwC

lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 73 and therefore denies those allegations.

74. PwC admits that Crowe is a member of the AICPA and that it provided outsourced internal audit services to CBG under CBG's direction and control. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 74 and therefore denies those allegations.

75. PwC admits that Crowe provided outsourced internal audit services to CBG under CBG's direction and control. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 75 and therefore denies those allegations.

76. PwC admits that Crowe had an engagement letter with CBG, but PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 76 and therefore denies those allegations.

77. PwC denies the allegations in paragraph 77, except PwC admits that CBG's 2007 Form 10-K shows total mortgage warehouse assets in the amount of $3,324,769,000, which would comprise close to 13% of the total assets shown on such balance sheet.

78. PwC denies the allegations in paragraph 78, except PwC admits that CBG's 2006 Form 10-K shows that securities purchased under agreements to resell were $605,937,000 at December 31, 2006; admits that CBG's 2007 Form 10-K shows that the mortgage warehouse securities purchased under agreements to resell were $1,549,664,000 at December 31, 2007; admits that, for the AOT product, the ProMerit system did not contain details on individual loans that were in the pools backing the securities in which Colonial Bank purchased an interest; and

lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second, third, and sixth sentences of paragraph 61 and therefore denies those allegations.

79. PwC denies the allegations in the second sentence of paragraph 79, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 79 and therefore denies those allegations.

80. PwC admits that Crowe prepared a document titled "Financial Statement/Internal Controls Map," which identified Securities Purchased Under Agreement to Resell as significant. PwC denies the remaining allegations in paragraph 80, except PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second and third sentences of paragraph 80 and therefore denies those allegations.

81. PwC denies the allegations in the first sentence of paragraph 81, except PwC admits that Crowe did identify risk factors and internal controls for SOX 404 testing of controls for secondary market lending operations. PwC denies the allegations in the second and third sentences of paragraph 81. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in the fourth and fifth sentences of paragraph 81 and therefore denies those allegations.

82. PwC denies the allegations in paragraph 82.

83. PwC admits that Colonial Bank's ProMerit system was able to generate pipeline reports; that those reports could provide loan-level details for individual mortgage loans that secured warehouse lines of credit or were purchased as COLB loans held for sale; and that those reports did not reflect loan level detail for the loan pools backing the securities in which Colonial Bank purchased an interest. PwC denies the allegations in paragraph 83, including those in footnote 5, to the extent they state or suggest that, with respect to AOT transactions, Colonial

Bank purchased interests in loan pools as opposed to interests in securities. Except as expressly admitted herein, PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 83, including those in footnote 5, and therefore denies those allegations.

84. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 84 and therefore denies those allegations, and PwC denies the allegations in the second sentence of paragraph 84.

85. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 85 and therefore denies those allegations.

86. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 86 and therefore denies those allegations.

87. PwC admits that Pam Vitto was hired as a full-time Senior Risk Officer in Montgomery and that her responsibilities included auditing controls in MWLD, including controls over AOT. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 87 and therefore denies those allegations.

88. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 88 and therefore denies those allegations.

89. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 89 and therefore denies those allegations.

90. PwC admits that, in 2006, Crowe tested aged loans and key controls. Except as expressly admitted herein, PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 90 and therefore denies those allegations.

91. PwC denies the allegations in the last sentence of paragraph 91, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 91 and therefore denies those allegations.

92. PwC denies the allegations in the last sentence of paragraph 92, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 92 and therefore denies those allegations.

93. PwC denies that "Colonial's AOTs were a separate class of MWLD transactions." PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 93 and therefore denies those allegations.

94. PwC admits that Crowe's Internal Audit Reports in 2005, 2006, 2007, and 2008 for Colonial Bank's MWLD and Treasury operations did not communicate risks or control issues expressly mentioning AOT, denies the allegations in the second sentence of paragraph 94, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 94 and therefore denies those allegations.

95. PwC admits that the FDIC and Crowe entered into a tolling agreement (the "Crowe Tolling Agreement") and that they entered into an agreement modifying the Tolling Agreement. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 95 and therefore denies those allegations.

96. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 96 and therefore denies those allegations.

97. PwC admits the allegations in the first sentence of paragraph 97. PwC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 97 and therefore denies those allegations.

98. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 98 and therefore denies those allegations.

99. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 98 and therefore denies those allegations.

100. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 100 and therefore denies those allegations.

101. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 101 and therefore denies those allegations.

102. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 102 and therefore denies those allegations.

103. PwC admits the allegations in paragraph 103.

104. PwC admits that the PwC Tolling Agreement contains the language quoted in paragraph 104, but denies the allegations in paragraph 104 to the extent they are incomplete, inconsistent with, or take out of context the relevant provisions of the PwC Tolling Agreement.

105. PwC admits the allegations in the first sentence of paragraph 105. PwC denies the remaining allegations in paragraph 105.

106. PwC admits that the PwC Tolling Agreement contains the language quoted in paragraph 106, but denies the allegations in paragraph 106 to the extent they are incomplete, inconsistent with, or take out of context the relevant provisions of the tolling agreement. PwC denies the remaining allegations in paragraph 106.

107. PwC admits that the PwC Tolling Agreement contains the language quoted in paragraph 107, but denies the allegations in paragraph 107 to the extent they are incomplete, inconsistent with, or take out of context the relevant provisions of the tolling agreement. PwC

admits that it agreed not to challenge the FDIC's authority to enter into the tolling agreement. PwC denies the remaining allegations in paragraph 107.

108. PwC denies the allegations in paragraph 108.

109. PwC denies the allegations in paragraph 109.

110. PwC denies the allegations in paragraph 110.

111. PwC denies the allegations in paragraph 111 that relate to PwC. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 111 that relate to Crowe and therefore denies those allegations.

112. PwC incorporates by reference its answers to paragraphs 1 through 111 as if fully set forth herein.

113. PwC denies the allegations in paragraph 113.

114. PwC denies the allegations in paragraph 114.

115. PwC denies the allegations in paragraph 115.

116. PwC denies the allegations in paragraph 116.

117. PwC denies the allegations in paragraph 117.

118. PwC denies the allegations in paragraph 118.

119. PwC incorporates by reference its answers to paragraphs 1 through 118 as if fully set forth herein.

120. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 120 and therefore denies those allegations.

121. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 121 and therefore denies those allegations.

122. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 122 and therefore denies those allegations.

123. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 123 and therefore denies those allegations.

124. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 124 and therefore denies those allegations.

125. PwC incorporates by reference its answers to paragraphs 1 through 124 as if fully set forth herein.

126. PwC denies the allegations in paragraph 126 that relate to PwC. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 126 that relate to Crowe and therefore denies those allegations.

127. PwC denies the allegations in paragraph 127 that relate to PwC. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 127 that relate to Crowe and therefore denies those allegations.

128. PwC incorporates by reference its answers to paragraphs 1 through 127 as if fully set forth herein.

129. PwC denies the allegations in paragraph 129, except PwC admits that it entered into engagement agreements with CBG and that the engagement agreements set forth PwC's obligations to CBG and CBG's obligations to PwC.

130. PwC denies the allegations in paragraph 130, except PwC admits that it entered into engagement agreements with CBG and that the engagement agreements set forth PwC's obligations to CBG and CBG's obligations to PwC.

131. PwC denies the allegations in paragraph 131.

132. PwC denies the allegations in paragraph 132.

133. PwC incorporates by reference its answers to paragraphs 1 through 132 as if fully set forth herein.

134. PwC denies the allegations in paragraph 134.

135. PwC denies the allegations in paragraph 135.

136. PwC incorporates by reference its answers to paragraphs 1 through 134 as if fully set forth herein.

137. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 137 and therefore denies those allegations.

138. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 138 and therefore denies those allegations.

139. PwC incorporates by reference its answers to paragraphs 1 through 139 as if fully set forth herein.

140. PwC denies the allegations in paragraph 140.

141. PwC incorporates by reference its answers to paragraphs 1 through 140 as if fully set forth herein.

142. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 142 and therefore denies those allegations.

143. PwC lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 143 and therefore denies those allegations.

144. PwC incorporates by reference its answers to paragraphs 1 through 143 as if fully set forth herein.

145. PwC admits that the FDIC and PwC entered into the PwC Tolling Agreement and that PwC has not asserted any defenses based on the time included in the Tolling Period contained in the PwC Tolling Agreement. PwC denies the allegations in paragraph 145 to the extent that they suggest that PwC has or will breach the PwC Tolling Agreement. PwC further states that the FDIC has conceded that PwC is entitled to summary judgment on Count IX.

146. PwC denies the allegations in paragraph 146. PwC further states that the FDIC has conceded that PwC is entitled to summary judgment on Count IX.

With respect to the unnumbered paragraph on page 87 of the TAC titled "Prayer For Relief" and beginning with the words "For these reasons," PwC denies that Plaintiff is entitled to any relief.

Each specific allegation in the TAC (including but not limited to any allegations that may be made in, or implied by, the headings and captions and footnotes used in the TAC) that PwC has not specifically admitted or otherwise responded to herein is hereby denied.

## AFFIRMATIVE DEFENSES

PwC will rely upon all defenses lawfully available to it (whether under the law of the state of Alabama or the law of the state of Florida, if the Court determines Florida law were to apply[1]) at the time of trial and reserves the right to amend its Answer and Affirmative Defenses, if necessary, as additional facts become known. PwC asserts the defenses below without assuming the burden of proof where it otherwise rests with Plaintiff.

In setting forth its defenses, PwC does not admit any of the allegations drawn from the

[1] The parties have been negotiating a stipulation regarding the application of Florida law that has not yet been finalized. In an abundance of caution, PwC continues to assert defenses based on Florida law.

TAC or that Plaintiff can carry its burden of proving the claims it asserts against PwC. PwC pleads the following affirmative defenses.

FIRST DEFENSE

Plaintiff has failed, in whole or in part, to state a claim upon which relief can be granted against PwC.

SECOND DEFENSE

Plaintiff is not the real party in interest to claims against PwC.

THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, because the claims are owned by other persons or entities.

FOURTH DEFENSE

Plaintiff lacks standing to bring claims against PwC.

FIFTH DEFENSE

Plaintiff's claims against PwC are barred, in whole or in part, by the doctrine of waiver.

SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by laches.

NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the failure to mitigate any alleged damages.

TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the statute of limitations.

ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff must rely in whole or in part on the illegal or immoral acts or transactions to which Colonial Bank was a party (*see Hinkle v. Railway Express Agency*, 242 So. 2d 417, 421 (Ala. 1942)).

THIRTEENTH DEFENSE

The damages complained of by Plaintiff were the result of superseding and/or intervening actions of others and, thus, were not proximately caused by the actions or omissions of PwC.

FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of contributory negligence.

FIFTEENTH DEFENSE

Plaintiff's claims are barred by the doctrine of ratification.

SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Colonial Bank fraudulently induced PwC to PwC's detriment.

SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by fraud.

EIGHTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Colonial Bank assumed the risk of its injuries.

NINETEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by offset.

TWENTIETH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of judicial estoppel.

TWENTY-FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent they are or become barred by the doctrine of collateral estoppel (issue preclusion).

TWENTY-SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent they are or become barred by the doctrine of *res judicata* (claim preclusion).

TWENTY-THIRD DEFENSE

Plaintiff is not entitled to have its claims tried to a jury to the extent that the right to a jury trial has been waived in the engagement letters between PwC and CBG.

TWENTY-FOURTH DEFENSE

PwC reserves the right to amend its answer and defenses during the pendency of this action.

TWENTY-FIFTH DEFENSE

Plaintiff's claim for punitive damages is barred in that Plaintiff is unable to prove, by clear and convincing evidence, that Defendant engaged in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to

indicate a wanton disregard for the rights of others. The policies of punishment and deterrence are not applicable in light of the nature of the case and the conduct at issue.

TWENTY-SIXTH DEFENSE

Plaintiff's claim for punitive damages is barred to the extent that it is predicated upon lawful conduct by PwC.

TWENTY-SEVENTH DEFENSE

Plaintiff's claim for punitive damages is barred to the extent that it is based upon conduct unrelated to Plaintiff's alleged harm.

TWENTY-EIGHTH DEFENSE

Any award of punitive damages is subject to the requirements and limitations of Alabama state law, including, but not limited to, Alabama Code § 6-11-21 (2013). The constitutional limitations of Alabama law may also limit an award of punitive damages such that the following factors are to be considered: (1) the reprehensibility of the defendant's conduct; (2) the relationship of a punitive damages award to the harm that actually occurred from the defendant's conduct; (3) the defendant's profit from its misconduct; (4) the defendant's financial position; (5) the costs of litigation; (6) whether the defendant has been subject to criminal sanctions for similar conduct; and (7) whether the defendant has been involved in other civil actions arising out of the same conduct. *Green Oil Co. v. Hornsby*, 539 So. 2d 218, 223 (Ala. 1989); *cf. Hammond v. City of Gadsden*, 493 So. 2d 1374, 1379 (Ala. 1986). To the extent that these factors are inconsistent with the federal Due Process Clause, they are not to be considered. *McClain v. Metabolife Int'l, Inc.*, 259 F. Supp. 2d 1225, 1236 (N.D. Ala. 2003). A punitive damages award in excess of a 1:1 ratio to compensatory damages is presumptively excessive according to the United States Supreme Court. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 507,

128 S. Ct. 2605, 2929 (2008); *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 411, 123 S. Ct. 1513, 1517 (2003). To the extent Alabama Statutes or law permits otherwise, they are unconstitutional on their face and as applied.

TWENTY-NINTH DEFENSE

Any award of punitive damages in this case is not sustainable under the due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, § 6 of the Alabama Constitution, the common law and public policies of the State of Alabama and under applicable court rules and statutes because the standards and procedures to award such damages, as applied in this action,

1. are excessively vague and ambiguous;
2. are not adequate;
3. are not sufficiently objective and specific for the finder of fact to determine whether to award punitive damages and, if so, on the amount;
4. do not provide for clear and consistent appellate review;
5. do not provide sufficiently objective and specific guidance to trial or appellate courts;
6. do not provide a meaningful opportunity to challenge such awards to ensure they are awarded on a rational basis and are not excessive;
7. do not provide for constitutionally reasonable limits on punitive damages;
8. do not ensure that there is a rational relationship between any punitive damage award and the wrongfulness of the alleged conduct and/or the compensatory damages awarded;
9. do not ensure that there is a rational relationship between the extent of punitive damages under Alabama law and legitimate interests to be advanced by the State of Alabama;
10. improperly allow punitive damages for vicarious liability;
11. improperly exceed comparable maximums for criminal fines or for conduct that does not meet the burden of proof applicable to criminal sanctions for equal culpability; and

12. could permit the award of multiple punitive damages for the same act or omission.

THIRTIETH DEFENSE

Any award of punitive damages is subject to the requirements and limitations of Florida state law, including, but not limited to, Florida Statutes § 768.73 (2013). The Due Process Clause and the Excessive Punishments Clause of the Florida Constitution (Article I §§ 9 and 17) also limit an award of punitive damages so that (1) the manifest weight of the evidence does not render the amount of punitive damages assessed out of all reasonable proportion to the malice, outrage or wantonness of the tortious conduct; (2) the award bears some relationship to the defendant's ability to pay and does not result in economic castigation, bankruptcy, or financial destruction of the defendant; and (3) a reasonable relationship exists between the compensatory and punitive amounts awarded. A punitive damages award in excess of a 1:1 ratio to compensatory damages is presumptively excessive according to the United States Supreme Court. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 507, 128 S. Ct. 2605, 2929 (2008); *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 411, 123 S. Ct. 1513, 1517 (2003). To the extent Florida Statutes or law permits otherwise, they are unconstitutional on their face and as applied.

THIRTY-FIRST DEFENSE

Any award of punitive damages in this case is not sustainable under the due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, § 9 of the Florida Constitution, the common law and public policies of the State of Florida and under applicable court rules and statutes because the standards and procedures to award such damages, as applied in this action,

1. are excessively vague and ambiguous;
2. are not adequate;

3. are not sufficiently objective and specific for the finder of fact to determine whether to award punitive damages and, if so, the amount;

4. do not provide for clear and consistent appellate review;

5. do not provide sufficiently objective and specific guidance to trial or appellate courts;

6. do not provide a meaningful opportunity to challenge such awards to ensure they are awarded on a rational basis and are not excessive;

7. do not provide for constitutionally reasonable limits on punitive damages;

8. do not ensure that there is a rational relationship between any punitive damage award and the wrongfulness of the alleged conduct and/or the compensatory damages awarded;

9. do not ensure that there is a rational relationship between the extent of punitive damages under Florida law and legitimate interests to be advanced by the State of Florida;

10. improperly allow punitive damages for vicarious liability;

11. improperly exceed comparable maximums for criminal fines or for conduct that does not meet the burden of proof applicable to criminal sanctions for equal culpability; and

12. could permit the award of multiple punitive damages for the same act or omission.

THIRTY-SECOND DEFENSE

Plaintiff's claim for punitive damages is barred because Plaintiff is unable to prove, by clear and convincing evidence, any intentional misconduct or gross negligence as defined in Florida Statutes § 768.72(2) (2013) or conduct attributable to the corporate defendant under § 768.72(3) (2013).

THIRTY-THIRD DEFENSE

A claim for harm that is exclusively pecuniary, as here, cannot serve as the basis for an award of punitive damages. An award of punitive damages in a case involving economic injury is impermissible under the due process analysis of *State Farm Mutual Auto Ins. Co. v. Campbell*,

538 U.S. 408, 123 S. Ct. 1513 (2003), in that the nature of the harm caused is a factor relating to reprehensibility and an award based on economic harm is unreasonable and violates due process.

THIRTY-FOURTH DEFENSE

Any award of punitive damages will be in derogation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which prohibits a state from imposing a punishment on a tortfeasor that violates due process, and the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments. *BMW of North America v. Gore*, 517 U.S. 559, 562, 116 S. Ct. 1589, 1592 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433-34, 121 S. Ct. 1678, 1684 (2001). An award of punitive damages would not survive scrutiny under any of the three guideposts established for assessing the reasonableness of an economic damages award: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 409-11, 123 S. Ct. 1513, 1516-17 (2003); *Gore*, 517 U.S. at 575, 116 S. Ct. at 1598.

THIRTY-FIFTH DEFENSE

Any award of punitive damages will not survive scrutiny under the specific factors set by the Supreme Court for determining the reprehensibility of a defendant's conduct: (1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or

deceit, or mere accident. *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521 (2003).

THIRTY-SIXTH DEFENSE

To the extent any award of punitive damages will be based on (1) lawful conduct in other states or (2) unlawful conduct in other states which either (a) does not have an impact on the forum state's citizens or (b) does not have a nexus to the harm allegedly suffered by Plaintiff, such award will violate federalism principles and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Philip Morris USA v. Williams*, 549 U.S. 346, 535-54,127 S. Ct. 1057, 1063 (2007).

THIRTY-SEVENTH DEFENSE

Additionally, Plaintiff's claim for punitive damages is barred because any award of punitive damages will violate Defendant's rights under the following constitutional provisions:

1. the Commerce Clause of Article I, § 8 of the United States Constitution;
2. the Contracts Clause of Article I, § 10 of the United States Constitution;
3. the prohibition against ex post facto laws embodied in Article I, § 10 of the United States Constitution;
4. the Free Speech Clause of the First Amendment of the United States Constitution.
5. the Takings Clause of the Fifth Amendment of the United States Constitution;
6. the Right to a Trial by Jury of the Seventh Amendment of the United States Constitution;
7. the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and
8. any counterpart provision of the Florida or Alabama state constitutions.

THIRTY-EIGHTH DEFENSE

Plaintiff's claims for punitive damages are barred by due process under the United States, Florida, and Alabama Constitutions to the extent Plaintiff seeks to impose punishment for harm allegedly caused to nonparties.

THIRTY-NINTH DEFENSE

Plaintiff's claims for punitive damages are barred absent the safeguards guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the comparable provisions of the Florida and Alabama Constitutions in that these claims invoke or authorize proceedings and remedies which, though nominally civil, are in reality so punitive in purpose and effect that they transform the relief that Plaintiff seeks into a criminal penalty.

FORTIETH DEFENSE

Plaintiff's claims for punitive damages cannot be sustained because an award of punitive damages exceeding the limits authorized by the criminal laws or other comparable laws of Florida and Alabama would violate PwC's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and the comparable provisions of the Florida and Alabama Constitutions and would be improper under the law and public policies of the State of Florida or the State of Alabama.

**WHEREFORE**, PwC prays that the Plaintiff take and be awarded nothing from or against PwC by way of Plaintiff's TAC; that judgment be entered against Plaintiff and in favor of PwC; that PwC be awarded its costs and attorneys' fees; and that PwC be awarded all other relief just and proper in the premises.

Respectfully submitted, this 20th day of December, 2016.

/s/ *Richard T. Marooney*
Richard T. Marooney
(New York Bar No. 2678100) *pro hac vice*
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, NY 10036-2601
Telephone: (212) 556-2242
Email: rmarooney@kslaw.com

-and-

Elizabeth V. Tanis
(Georgia Bar No. 697415) *pro hac vice*
Drew D. Dropkin
(Georgia Bar No. 231031) *pro hac vice*
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Email: etanis@kslaw.com
ddropkin@kslaw.com

-and-

Philip S. Beck
(Illinois Bar No. 147168 ) *pro hac vice*
Mark L. Levine
(Illinois Bar No. 6201501) *pro hac vice*
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
Courthouse Place, Suite 300
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4400
Email: philip.beck@bartlit-beck.com
mark.levine@bartlit-beck.com

-and-

Tabor Robert Novak, Jr.
(Alabama Bar No. ASB-9503-V72T)
**BALL BALL MATTHEWS & NOVAK PA**
P.O. Box 2148
Montgomery, AL 36102-2148
Telephone: (334) 387-7680
Fax: (334) 387-3222
Email: tnovak@ball-ball.com

**ATTORNEYS FOR DEFENDANT PRICEWATERHOUSECOOPERS LLP**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2016, a true and exact copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all counsel of record:

Rufus T. Dorsey, IV
Ronald T. Coleman, Jr.
C Edward Dobbs
PARKER, HUDSON, RAINER & DOBBS, LLP
285 Peachtree Center Avenue, NE
1500 Marquis Two Tower
Atlanta, GA 30303
rtd@phrd.com
rtc@phrd.com
ced@phrd.com
*Attorneys for Plaintiffs*

Jonathan C. Medow
Stanley J. Parzen
Justin A. McCarty
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
jmedow@mayerbrown.com
sparzen@mayerbrown.com
jmccarty@mayerbrown.com
*Attorneys for Defendant Crowe Horwath, LLP*

Christopher A. Caserta
Nicholas J. DiCarlo
DICARLO CASERTA MCKEIGHAN PLC
6900 E. Camelback Road, Suite 250
Scottsdale, AZ 85251
ccaserta@dcmplaw.com
ndicarlo@dcmplaw.com
*Attorneys for Plaintiffs*

James Harold Anderson
COPELAND, FRANCO, SCREWS & GILL, P.A.
P.O. Box 347
Montgomery, AL 36101-0347
anderson@copelandfranco.com
*Attorney for Defendant Crowe Horwath, LLP*

Andrew P. Campbell
Justin G. Williams
Caroline Smith Gidiere
Stephen D. Wadsworth
CAMPBELL GUIN WILLIAMS GUY & GIDIERE
520 N. 20th Street, Suite 2000
Birmingham, AL 35203
Andy.Campbell@Campbellguin.com
Justin.Williams@Campbellguin.com
Caroline.Gidiere@Campbellguin.com
Stephen.Wadsworth@Campbellguin.com
*Attorneys for Plaintiffs*

Robert K. Spotswood
Michael T. Sansbury
Grace L. Kipp
SPOTSWOOD SANSOM & SANSBURY LLC
1819 Fifth Avenue North, Suite 1050
Birmingham, AL 35203
rks@spotswoodllc.com
msansbury@spotswoodllc.com
gkipp@spotswoodllc.com
*Attorneys for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*

David Mullin
John M. Brown
John G. Turner, III
Robert Bell
Clint R. Latham
Richard Biggs
Anthony W. Kirkwood
MULLIN, HOARD & BROWN, LLP
500 South Taylor, Suite 800
Amarillo, TX 79101
dmullin@mhba.com
jmb@mhba.com
jturner@mhba.com
rbell@mhba.com
clatham@mhba.com
rbiggs@mhba.com
tkirkwood@mhba.com
*Attorneys for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*

Dennis Bailey
J. Evans Bailey
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
P.O. Box 270
Montgomery, AL 36101-0270
drb@rushtonstakely.com
ebailey@rushtonstakely.com
*Attorneys for the Federal Deposit Insurance Corporation as Receiver of Colonial Bank*

/s/ *Richard T. Marooney*
Richard T. Marooney