IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN<br><br>Plaintiff,<br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>Defendants. | ) | ORDER ON MOTION FOR A SEPARATE NON-JURY TRIAL OF PLAINTIFFS' CLAIMS AGAINST CROWE AND TO DEFER RULINGS ON CERTAIN PENDING MOTIONS<br><br>CASE NO. 2:11-cv-746-BJR |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP<br><br>Defendants. | ) | CASE NO. 2:12-cv-957-BJR |

## I. INTRODUCTION

Plaintiff Federal Deposit Insurance Corporation as Receiver for Colonial Bank (the "FDIC") and Defendant Crowe Horwath LLP ("Crowe") jointly filed a motion requesting that this Court bifurcate the claims of the FDIC and Plaintiff, The Colonial BancGroup, Inc. and Kevin O'Halloran , as plan trustee (collectively, "CBG"), against Crowe from Plaintiffs' claims

against Defendant PricewaterhouseCoopers, LLP ("PWC") and hold separate non-jury trials as to the claims against Crowe and the claims against PWC. Dkt. No. 612. Defendant PWC opposed the motion and Plaintiff CBG took no position on the motion. Dkt. No. 614. Having reviewed the motion, the opposition thereto, as well as additional submissions by the parties (discussed below), the record of the case, and the relevant legal authorities, the Court grants the motion to bifurcate Plaintiffs' claims against Crowe and PWC and to conduct separate non-jury trials on those claims, except to the extent that Plaintiffs' claims against PWC arising out of the 2006-2007 audit years will be tried before a jury. The reasoning for the Court's decision follows.

## II. BACKGROUND

The Court heard oral argument on Crowe's and the FDIC's joint motion on December 21, 2016. During the hearing, PWC indicated that it was considering filing a motion to strike Plaintiffs' jury demands with respect to some of the claims against PWC. Thereafter, in a Minute Order dated December 21, 2016, the Court instructed PWC to file a motion by January 13, 2017 if it intended to bring such a motion. PWC filed its motion and after briefing on the issue was complete, this Court granted the motion, striking the FDIC's and CBG's jury demands as to their claims against PWC arising out of the 2002-2005 and 2008 audit years based on jury waiver provisions in the engagement letters between PWC and CBG covering those years. Plaintiffs' claims against PWC arising out of the 2006-2007 audit years are not subject to a jury waiver; therefore, those claims will go to a jury.

In light of this decision, on February 15, 2017, the Court held a status conference to discuss the structure of the up-coming trials in these cases. Prior to the status conference, the FDIC, CBG, and PWC each submitted statements in which they set forth what they considered to be the best structure for the trials. Dkt. Nos. 643-645. After considering these submissions and

the arguments of counsel at the hearing, the Court ruled from the bench that it will conduct the trials in these cases as follows: First, Plaintiffs' claims against PWC that arise out of the audit years 2002-2005 and 2008 will be tried to this Court without a jury. The trial will commence on September 25, 2017. Next, Plaintiffs' claims against Crowe will be tried to this Court without a jury. This trial will commence on November 6, 2016. Lastly, Plaintiffs' claims against PWC that arise out of the audit years 2006-2007 will be tried to a jury. That trial is set to begin on January 8, 2018. This order sets forth the basis for the Court's decision.

## III. DISCUSSION

### A. Standard for Bifurcation under Rule 42(b)

Under Rule 42(b) of the Federal Rules of Civil Procedure, a court may order a separate trial of "one or more … claims" for "convenience, to avoid prejudice, or to expedite and economize" the litigation before it. Fed. R. Civ. P. 42(b); *see also Gilbert v. State Farm Mutual Automobile Insurance Company*, 311 F.R.D. 685, 686 (M.D. Fla. 2015). The decision to bifurcate claims is committed to the sound discretion of the trial court. *Harrington v. Cleburne Cty. Bd. of Educ*., 251 F.3d 935, 938 (11th Cir. 2001). Courts generally consider the following three factors in determining whether bifurcation is warranted: (1) whether significant resources would be saved by bifurcation, (2) whether bifurcation will increase juror comprehension, and (3) whether bifurcation will lead to repeat presentations of the same evidence and witnesses. *Baratta v. Homeland Housewares*, LLC, 2008 WL 10989539, *4 (S.D. Fla. October 28, 2008) (*quoting WeddingChannel.Com Inc. v. The Knot, Inc*., 2004 WL 2984305, *1 (S.D.N.Y. 2004)). The party requesting bifurcation has the burden to show that it is warranted in that particular case. *Bitpay, Inc. v. Massachusetts Bay Insurance Co*., 315 F.R.D. 698, 699 (N.D. Ga. March 17, 2016).

### B. Bifurcating Plaintiffs' Claims against Defendants Is Warranted in This Litigation

The FDIC and Crowe argue that bifurcating Plaintiffs' claims against the Defendants is appropriate in this litigation for several reasons. First, they contend that each of them will be subject to prejudice if the claims against PWC and Crowe are tried together. To that end, Crowe argues that although both PWC and Crowe were retained as auditors for CBG, their specific duties to CBG (and the regulations that governed those duties) differed. Crowe argues that if Plaintiffs' claims against Crowe and PWC are tried together, there is a significant risk that this distinction will be lost on the trier of fact. *See* Dkt. No. 612 at 6.

The FDIC argues that it will be prejudiced if it is forced to try its claims against PWC and Crowe together because a significant portion of its case against PWC does not pertain to Crowe. For example, the FDIC alleges, Plaintiffs contend that PWC did not properly account for certain financial asset transfers in CBG's financial disclosures. The FDIC claims that "35-40% of the evidence presented in Plaintiffs' cases will relate to this issue; therefore, "approximately two dozen witnesses" and "7 to 8 trial days" will be devoted to an issue that has nothing to do with Crowe. *Id*. at 3-4.[1] The FDIC argues that this will be prejudicial to its case against Crowe because the jury may "infer that Crowe's role was not that essential based on the additional time spent on the claims against PWC." *Id*. at 4.

Next, both the FDIC and Crowe point out that currently pending before this Court is Crowe's motion to strike the FDIC's jury demand on its claims against Crowe. Crowe contends that the FDIC is bound by a jury waiver provision contained in each of its engagement letters with CBG; the FDIC disagrees. However, the FDIC has agreed drop its opposition to Crowe's

---

[1] The FDIC also points out that its claims against PWC are based on six audit years, compared to its claims against Crowe, which are based on four audit years. The FDIC also brought an intentional misconduct claim against PWC and is seeking punitive damages, while has only brought negligence claims against Crowe.

motion to strike the FDIC's jury demand if this Court bifurcates Plaintiffs' claims against PWC and Crowe and tries them separately. Lastly, the FDIC and Crowe argue that bifurcating the claims against Crowe and PWC will expedite the road to trial (at least as to PWC) because this Court will be able to defer ruling on several pending motions until after the PWC trial.

PWC opposes bifurcation. It notes that Plaintiffs' claims against PWC and Crowe arise out of a common nucleus of operative facts. Indeed, PWC argues, "almost *every* issue that would be relevant in a trial against Crowe will be relevant in a trial against PWC" and, as a result, a substantial number of witnesses would have to give duplicative testimony if the claims were bifurcated into separate trials. Dkt. No. 614 at 5 (emphasis in original), *see also* 3-4 (listing 26 witnesses that it claims would be required to testify at both trials).

PWC also argues that the evidence regarding Crowe's audit work is "inextricably entwined with Plaintiffs' claims against PWC." *Id*. at 7. For instance, PWC argues, evidence of Crowe's negligence and whether Crowe acted as CBG's agent could "inure to PWC's benefit." *Id*. Therefore, PWC claims, an "unitary trial is thus necessary not only to avoid duplicative testimony about Crowe's performance, but also to minimize the chance of inconsistent verdicts on Crowe's relationship with CBG and the quality of Crowe's work." *Id*. at 8.

These cases involve a complex and long-running fraud that ensnared numerous financial, governmental, and accounting institutions. Unraveling the fraud and properly assigning liability requires, at a minimum, a basic understanding of financial and accounting principles and regulations. Indeed, the parties have disclosed twenty-four expert witnesses that they believe are necessary to establish their various claims and defenses. The Court has also had the opportunity to preview several of the issues that are implicated in these cases through the multiple rounds of summary judgment the parties have briefed to-date. Given the complexity of these cases, the

Court concludes that it will be much more efficient for the issues to be tried to the Court without a jury. The FDIC is willing to waive its right to a jury trial with respect to Crowe's claims if this Court bifurcates Plaintiffs' claims against the Defendants. Therefore, in the interest of judicial efficiency, the Court will grant the motion to bifurcate so that the majority of Plaintiffs' claims will be tried to the Court.

Moreover, not only does the Court find it more efficient for these cases to be tried to the Court without a jury, but doing so eliminates Crowe's concern that a jury might not be able to differentiate between Crowe's and PWC's distinct accounting duties to CBG.

Lastly, and importantly, the parties recently filed over thirty substantive motions in these cases. Assuming that the Court is able to resolve these motions at a pace of one motion every two weeks—surely an overly optimistic assumption given that these cases are just two of approximately 200 the Court currently has on its docket—these cases would be ready for trial in fifteen months, at the earliest. However, by bifurcating Plaintiffs' claims against Crowe and PWC, the Court no longer has to resolve the vast majority of the pending motion, thereby making it possible to set trial dates in seven, nine, and twelve months, respectively . The Court finds this in accordance with Federal Rule of Civil Procedure 1 which instructs federal courts to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1

## V. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Crowe's and the FDIC's joint Motion for a Separate Non-Jury Trial of Plaintiffs' Claims against Crowe and to Defer Rulings on Certain Pending Motions (Dkt. No. 612).

Dated this 17th day of February, 2017.

Barbara Jacobs Rothstein
U.S. District Court Judge