IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>Defendants. | ORDER DENYING FDIC'S REQUEST TO VACATE MARCH 17, 2017 ORDER GRANTING PWC'S MOTION FOR ADDITIONAL DISCOVERY REGARDING BANK OF AMERICA SETTLEMENT ALLOCATION<br><br>CASE NO. 2:11-cv-746-BJR |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP<br><br>Defendants. | CASE NO. 2:12-cv-957-BJR |

## I. INTRODUCTION

On March 17, 2017, the Honorable Magistrate Judge Terry F. Moorer granted Defendant PriceWaterhouseCoopers LLP's ("PWC") motion for additional discovery

regarding how Plaintiff Federal Deposit Insurance Corporation as Receiver for Colonial Bank ("FDIC") allocated settlement proceeds from Bank of America, N.A. (hereinafter, the "March 17, 2017 Order"). Dkt. No. 653. The FDIC timely filed objections to the March 17, 2017 Order pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure, requesting that this Court vacate the Order. Dkt. No. 655. PWC opposes the FDIC's objections. Having reviewed the March 17, 2017 Order, the FDIC's objections to the Order, PWC's opposition thereto, the record of this case, and the relevant legal authority, the Court will deny the FDIC's request to vacate the March 17, 2017 Order. The reasoning for the Court's decision follows.[1]

## II. BACKGROUND

Colonial Bank ("Colonial") was placed into receivership with the FDIC by Alabama state banking authorities in August 2009. Prior to being placed into receivership, Colonial was the victim of a massive, long-running fraud perpetrated by Taylor, Bean & Whitaker ("TBW"), one of Colonial's customers. Defendants PWC and Crowe were the external and internal auditors, respectively, for Colonial's parent company, Plaintiff Colonial BancGroup, Inc. ("CBG"), during the years of the TBW fraud. PWC and Crowe failed to uncover the fraud; thereby, the FDIC alleges, breaching the duties that they owed to Colonial. PWC and Crowe defend against the lawsuit, arguing among other defenses, that they did not owe a duty to Colonial.

### A. The Bank of America Global Settlement

This lawsuit is just one of multiple lawsuits initiated by the FDIC as part of the "legal fallout" from the mortgage-backed securities collapse and the resulting "financial calamity" that

---

[1] Defendant Crowe Horwath LLP ("Crowe") is not a party to this motion. Nevertheless, Crowe submitted a brief response, joining in the opposition filed by PWC. See Dkt. No. 659.

contributed to the Great Recession. *Federal Deposit Insurance Corporation v. Credit Suisse Securities*, 2016 WL 1047380, *1 (M.D. Ala. March 10, 2016). On August 21, 2014, as part of a global settlement of $16.65 billion, the FDIC settled twenty of those lawsuits, fourteen of which involved lawsuits against Bank of America, N.A and its related entities ("BOA"). *Id*. at *2. BOA's contribution to the global settlement was $1.031 billion. *Id*. The settlement resolved two categories of disputes in the fourteen lawsuits between the FDIC and BOA. The first category involved residential mortgage-backed securities ("RMBS") claims asserted against BOA by the FDIC. The second category pertained to claims related to transactions between Ocala Funding (TBW's subsidiary) and Colonial that involved 4,808 mortgages. The FDIC claimed that BOA allowed these mortgages to be "double-pledged," leaving Colonial's financial position in the mortgages unprotected. The FDIC had sought to recover $898.8 million from BOA for the Ocala fraud.

The Department of Justice ("DOJ") negotiated the $1.031 billion settlement with BOA on behalf of the FDIC. The settlement agreement is publically available. *Credit Suisse*, 2016 WL 1047380 at *2. The agreement calls for a lump sum payment of $1.031 billion, but does not specify how the lump sum would be allotted among the RMBS claims for each of the fourteen receiverships the FDIC represented against BOA, nor what portion of the lump sum would cover the Ocala fraud claims in the FDIC's case against BOA involving Colonial.

**B. Defendants' Discovery Requests to the FDIC regarding the BOA Settlement**

PWC argues that it has a right to know what portion of the $1.031 billion lump payment was allotted to the Ocala fraud claims. This is because, PWC argues, the FDIC has sued it for the same Ocala fraud; therefore, the portion of the FDIC's recovery from BOA attributable to losses from the Ocala fraud must be deducted, dollar-for-dollar, from the damages the FDIC seeks from

PWC. To that end, PWC served document requests on the FDIC in which it requested "[d]ocuments sufficient to show the amount of the $1.031 billion settlement with [BOA] … that has been or will be allocated to the FDIC as receiver for Colonial Bank." Dkt. No. 324 at 4. In response, the FDIC-R produced two journal entries that showed that $363.7 million of the $1.031 billion settlement was allotted to the Ocala fraud claims. Dkt. No. 324, Ex. C.

**C. The FDIC'S March 23, 2016 Motion for a Protective Order**

PWC was not content with the FDIC's response to its document requests. It argued that that it is not required to simply accept the FDIC's allocation of the $1.031 billion settlement; rather, it is entitled to delve into the "how and why" of the allocation. The FDIC disagreed and, on March 23, 2016, moved Magistrate Judge Moorer for a protective order.

**1. The *Credit Suisse* Decision**

In opposing the FDIC's motion for a protective order, PWC relied on Judge Watkins' recent decision in *Federal Deposit Insurance Corporation v. Credit Suisse Securities*, 2016 WL 1047380, *1 (M.D. Ala. March 10, 2016). *Credit Suisse* was a case that the FDIC brought on behalf of Colonial against various financial institutions who were underwriters of five residential mortgage-backed securities Colonial purchased prior to its failure. The defendants in that case also wanted to know how "much of the [BOA $1.031 billion settlement] should be allocated to the [Credit Suisse] action …, and thus, what satisfaction [the FDIC] has already received for its claims in this case." *Id*. at *2. The defendants also moved the court "to compel [the FDIC-R] to provide a description of the settlement allocation and the methodology behind it." *Id*.

The FDIC countered that while the "amount of the overall settlement that the FDIC-R allocated to the claims in [the] case" is relevant to the setoff issue, the "how and why" of the

reached settlement amount is not relevant because there is no basis under Alabama law for a joint tortfeasor to "second-guess the amount of a partial settlement." *Id*. at *4 -*5.

In reaching his decision, Judge Watkins noted that there is no "on-point authority under Alabama law," addressing the issue before the court. *Id*. at * 5. However, he did not find the lack of Alabama authority "surprising" given the unique circumstances of the issue before him. *Id*. "The [global settlement] … involves the FDIC in its capacity as receiver for twenty-six failed federally insured banks and the FDIC-R's pursuit of federal- and state-law claims arising from alleged misrepresentations in the offering documents for numerous residential mortgage-backed securities purchased by the failed banks. It resolves fourteen individual lawsuits commenced by the FDIC as receiver, three class actions, two actions commenced by Bank of America against the FDIC-R, and a Freedom of Information Act lawsuit brought on behalf of Bank of America against the FDIC in its corporate capacity. Alabama case law arising out of car wrecks or bridge failures hardly addresses, other than in very general terms, the highly complex and multifaceted issues at play here." *Id*.

Judge Watkins went on to hold that under the unique circumstances of the case before him, "the methodology underlying the amount of the $1.031 billion the FDIC-R allocated to settle the claims in this action against [BOA] is discoverable to an extent." *Id*. at * 6. To that end, Judge Watkins ordered:

> The FDIC-R will be required to provide Defendants and the court a summary of the techniques, methods, and formulas by which the FDIC-R allocated the [global] Settlement proceeds among the various lawsuits. The FDIC-R will not be required, however, to divulge the settlement amounts for claims other than those related to the instant lawsuit. Whether ultimately evidence of the methodology can be considered in determining the amount of a set off in the event of a plaintiff's verdict is not an issue that needs to be resolved today. For now, and solely for purposes of discovery, the court will not require Defendants to view the allocated dollar figure in a vacuum. On this unique record where it is averred that the FDIC-R allocated the $1.013 billion to different lawsuits based upon its own internal procedures,

> Defendants may conduct relatively compact discovery to shed light on how the FDIC-R arrived at the dollar figure it allocated to the claims in this lawsuit.

*Id*.

The FDIC argued in defense of its March 23, 2016 motion for a protective order before Magistrate Judge Moorer that Judge Watkins' reasoning for allowing discovery in *Credit Suisse* is not applicable to this case. The FDIC argued that in reaching his decision, Judge Watkins "expressly noted the 'unique record' wherein 'the FDIC-R allocated the $1.013 billion to different lawsuits based upon its own internal procedures' and determined that the [Credit Suisse] Defendants were entitled to 'relatively compact discovery to shed light on how the FDIC-R arrived at the dollar figure it allocated to the claims' in that lawsuit. In this case, conversely, the FDIC-R did not employ 'internal procedures' to 'allocate' settlement proceeds among various cases, but rather valued the claims and defenses at issue in the Ocala Litigation, through privileged communications, and reached a settlement with Bank of America based on that privileged valuation." Dkt. No. 324 at 7.

### D. PWC's Federal Rule 30(b)(6) Notice to the FDIC

On March 23, 2016, the same day the FDIC moved for a protective order, PWC served a notice of Rule 30(b)(6) deposition on the FDIC. Topic 8 in the Rule 30(b)(6) Notice is relevant to this motion. It states:

> [Provide] [t]he allocation to the FDIC-R of the proceeds of the $1.031 billion Settlement and Release Agreement dated August 20, 2014, between and among the FDIC as receiver for numerous receiverships and various Bank of America entities, including, by not limited to:
>
> a. The amount of the $1.031 billion settlement proceeds, if any, that were distributed to any person or entity other than an FDIC receivership (e.g. the Department of Justice, outside counsel to the FDIC);

> b. The techniques, methods, and formulas by which $363.7 million of the $1,031 billion settlement proceeds was allocated to the Ocala Funding-related lawsuits that were filed in the U.S. District Court for the District of Columbia; and
>
> c. The techniques, methods, and formulas by which the claims asserted against the FDIC in Bank of America, N.A., v. FDIC, Case No. 1:10-cv-01681-BJR (D.D.C.), Bank of America, N.A. v. FDIC, Case No. 1:13-cv-01119-BJR (D.D.C.), and Hunton & Williams v. FDIC, Case No. 1:13-cv-01123-BJR (D.D.C.), and the settlement thereof, were factored into the allocation of $363.7 million of the $1.031 billion settlement proceeds to the Ocala Funding-related lawsuits.

Dkt. No. 437 at 6-7.

On April 18, 2016, the FDIC filed a second motion for a protective order, this time seeking to quash the Rule 30(b)(6) Notice. Dkt. No. 360.

### E. The June 14, 2016 Order Denying the FDIC's Requests for a Protective Order

On June 14, 2016, Magistrate Judge Moorer denied the FDIC's March 23 and April 18, 2016 motions for a protective order. He found the *Credit Suisse* decision controlling and ordered the FDIC to provide PWC with "a summary of the techniques, methods, and formulas by with the FDIC-R allocated the proceeds of the FDIC's global settlement with Bank of America for 1.031 billion dollars between the Colonial receivership actions [] and the other RMBS actions not involving the Colonial receivership [] and a summary of the techniques, methods, and formulas by which it allocated [the settlement proceeds] to the Colonial-related RMBS cases and $363.7 million to the Ocala Funding claims." Dkt. No. 411 at 4-5.

Thereafter, on June 24, 2016, the FDIC served its written response to Magistrate Judge Moorer's June 14 Order. In it, the FDIC maintained that it had not "allocated" the $1.031 billion settlement between the RMBS and the Ocala Funding claims; rather, it determined that it would settle the RMBS claims for a certain amount and that it would settle the Ocala Funding claims

for another amount. The sum of these two figures, plus the amount retained by the Department of Justice equaled the total settlement amount of $1.031 billion. Dkt. No. 437, Ex. B at 1. The FDIC further stated that it balanced the costs and risks associated with litigation in determining what amount it was willing to accept to settle the claims. *Id*.

Once again, PWC was dissatisfied with the FDIC's response, arguing that the FDIC's June 24, 2016 response to Magistrate Judge Moorer's June 14, 2016 Order was inadequate and contradicted the FDIC's prior representations regarding the BOA settlement. To that end, on July 18, 2016, PWC filed a motion for "additional discovery" from the FDIC. Dkt. No. 437. Specifically, PWC sought an order: "(a) permitting PWC to examine an FDIC 30(b)(6) witness on the previously noticed Topic 8, which PWC had held in abeyance pending receipt of written information from the FDIC [pursuant to the June 14, 2016 Order], and (b) compelling the FDIC to produce to PWC any non-privileged communications between the FDIC (or DOJ) and BOA in connection with the global settlement that reflect or refer to settlement offers, settlement demands, or agreed settlement amounts for the RMBS claims alone, the Ocala Funding claim alone, or the RMBA claims and Ocala Funding claim combined." *Id*. at 2.

The FDIC objected to the motion, arguing once again that under Alabama law, any discovery beyond the actual amount of any potential setoff is irrelevant and, therefore, not discoverable under Federal Rule 26(b). Dkt. No. 441 at 5-6. The FDIC also argued that the information sought by PWC was either already in PWC's possession, did not exist, or was privileged.

### F. The March 17, 2017 Order Granting PWC's Request for Additional Discovery from the FDIC on the BOA Settlement Allocation

On March 17, 2017, Magistrate Judge Moorer granted PWC's motion for additional discovery on how the FDIC allocated the BOA settlement. In doing so, he once again rejected

the FDIC's argument that PWC is seeking irrelevant information, concluding that the FDIC's relevancy argument "goes to admissibility of the information rather than to whether it is discoverable in the first place." Dkt. No. 653 at 3 (citing Fed. R. Civ. Pro. 26(b)(1) ("[D]iscovery need not be admissible in evidence to be discoverable.")). Next, Magistrate Judge Moorer dismissed as "wholly conclusory," the FDIC's claim that the requested information is already in PWC's possession, does not exist, or is privileged. *Id*. at 4. He ordered that the FDIC make available a witness to provide Rule 30(b)(6) testimony and produce documents in accordance with the terms of Topic 8 set forth in Section II.D. above. *Id*. at 5. The FDIC timely filed objections, which PWC opposed. The matter is now ripe for this Court's review.

## III. DISCUSSION

### A. Standard of Review

A district court may set aside a magistrate judge's order on a non-dispositive matter pursuant to Federal Rule 72(a) "only if the ruling was 'clearly erroneous or contrary to law.'" *Auburn Univ. v. Int'l Bus. Machines, Corp*., 2011 WL 5190821 at *1 (M.D. Ala. Nov. 1, 2011). Clear error exists when the reviewing court is left "with the definite and firm conviction that a mistake has been committed." *Blevins v. Aksut*, 2015 WL 2097984 at *1 (S.D. Ala. April 29, 2015) (internal quotation marks omitted).

### B. Analysis

The FDIC argues that the March 17, 2017 Order was "clearly erroneous" because it (1) failed to address the threshold question of relevancy before compelling the requested discovery and (2) compels the FDIC to produce information outside its possession, custody, or control.[2] The Court will address each argument below.

---

[2] The FDIC also claims that the March 17, 2017 Order was clearly erroneous because it compels the discovery even though PWC's motion was procedurally improper. The FDIC contends that PWC should have brought its motion as

**1. Whether the requested information is relevant**

As discussed above, the FDIC moved to block PWC from seeking discovery regarding the details of the FDIC's settlement with BOA beyond the actual dollar amount of settlement, arguing that such information is not relevant to any claim or defense in this lawsuit. The FDIC claims that PWC requested the discovery so that PWC can determine whether the setoff is "appropriate" or "proper" or "right." Dkt. No. 437 at 1, 2, 4, 5. However, the FDIC argues, Alabama is a joint-and-several-liability state wherein joint tortfeasors are each liable for the total amount of any judgment and a non-settling defendant cannot challenge the amount of any settlement the plaintiff may reach with a co-defendant. Indeed, the FDIC argues, "in Alabama, a plaintiff could settle with one defendant for $1 and the other co-defendant(s) would be liable for the remainder of any judgment with no right to challenge the amount of the settlement." Dkt. No. 655 at 4. It follows then, the FDIC argues, that PWC cannot raise as a "defense" that the FDIC's settlement with BOA was too low. Therefore, any information beyond the actual settlement amount the FDIC received (*i.e.*, the setoff amount) is irrelevant and undiscoverable.

PWC counters that the FDIC has mischaracterized its request. PWC claims that it does not seek the information so that it can challenge the amount of the BOA settlement; rather, it seeks the discovery so that it can determine "what BOA *actually paid* the FDIC for the [Ocala fraud] losses." Dkt. No. 657 at 2 (emphasis in original). PWC charges that had the FDIC received a specified sum from BOA for settling the Ocala fraud claims, this discovery would be unnecessary. However, because the FDIC unilaterally determined how much of the BOA lump sum payment should be allotted toward the Ocala fraud, PWC is entitled to test the FDIC's

---

a motion to compel pursuant to Federal Rule 37. PWC argues that it was merely seeking to compel a more complete response by the FDIC to the March 17, 2017 Order and, thus, a motion pursuant to Rule 37 was not necessary. In the end, the Court finds that the FDIC has not demonstrated that it was prejudiced by any alleged deficiency in PWC's motion. Accordingly, the alleged deficiency is not a basis on which the Court will vacate the March 17 Order.

methodology. In other words, PWC argues, it is entitled to "whatever responsive documents are in the FDIC's possession, custody, or control, and to depose under oath a suitable witness who can explain how the FDIC arrived at its $363.7 million allocation." *Id*. at 6.

This Court concludes that discovery related to the limited question of how the FDIC determined what portion of the $1.031 billion lump settlement would be applied to the Ocala fraud claims is relevant and thus discoverable. The Court agrees with PWC that under the unique circumstances of the BOA settlement—one in which a lump sum settlement was meant to resolve multiple claims—a joint tortfeasor is entitled to explore how a plaintiff chose to allocate the settlement among the multiple claims. *See Credit Suisse*, 2016 WL 1047380, at *6 (allowing limited discovery into the methodology used for allocation, but reserving for another day the question of whether such evidence "can be considered in determining the amount of a set off"). The FDIC claims that the allocation was predetermined prior to the BOA settlement because it valued the outstanding claims, determined how much it was willing to take in settlement for each claim, and settled accordingly. If this is indeed the case, then the Rule 30(b)(6) deposition should be short. However, PWC is not required to simply take the FDIC's word at face value; it is entitled to explore the issue through limited discovery. Therefore, this Court finds that the March 17, 2017 Order to allow additional discovery is not "clearly erroneous or contrary to law." *Auburn Univ. v. Int'l Bus. Machines, Corp*., 2011 WL 5190821 at *1 (M.D. Ala. Nov. 1, 2011).

Nevertheless, this Court will not allow PWC to go on a fishing expedition. To that end, the Rule 30(b)(6) deposition must be strictly limited to testimony and any non-privileged documents relating to how the FDIC determined that it would attribute $363.7 million of the $1.031 billion lump settlement to the Ocala fraud claims.

**2. The FDIC Is Required to Produce Non-Privileged DOJ Documents**

Next, the FDIC argues that Magistrate Judge Moorer erred to the extent that he ordered the FDIC to produce documents that are in the DOJ's possession, custody, or control. Under Federal Rule 34(a)(1), a party may only be required to produce documents that are "in [its] possession, custody or control." Fed. R. Civ. P. 34(a)(1). Documents are in the "possession, custody, or control" of a party if "the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand." *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995). The FDIC claims that it is a separate federal agency from the DOJ and, therefore, has "neither the authority nor the ability to produce DOJ documents not in its possession." Dkt. No. 655 at 9.

PWC argues that to the extent documents within the DOJ's possession are under the FDIC's control, the FDIC is required to produce them. PWC argues that in the Eleventh Circuit, control is "broadly construed" for discovery purposes "as 'the legal right to obtain the documents requested upon demand.'" Dkt. No. 657 at 9 (quoting *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016)). PWC claims that it included the DOJ documents in its Rule 30(b)(6) Notice because the FDIC represented that the DOJ negotiated the global settlement with BOA on the FDIC's behalf. Thus, PWC argues, the DOJ was acting as the FDIC's agent or attorney and that relationship, in and of itself, establishes that the FDIC has a right to obtain the documents in the DOJ's possession.

The Court agrees with PWC. If, indeed, the DOJ negotiated the settlement with BOA on behalf of the FDIC, it acted as the FDIC's attorney. Therefore, any non-privileged or otherwise protected documents between the DOJ and BOA that relate to the settlement of the claims between BOA and the FDIC—as to the Colonial receivership only—are under the FDIC's

control for discovery purposes in this litigation and must be produced. *See In re ANR Advance Transp. Co., Inc*., 302 B.R. 607, 614 (E.D. Wis. 2003) (The majority rule is that, with narrow exceptions, upon termination of the attorney-client relationship and where no claim for unpaid legal fees is outstanding, the client is presumed to be entitled to full access to the attorney's file on a matter where the attorney represented the client."); Restatement (Third) of Law Governing Lawyers § 46(2) (2000) ("On request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse."). Accordingly, the March 17, 2017 Order is not "clearly erroneous or contrary to law" with respect to the ordered document production.

## IV. CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES the FDIC's motion [Dkt. No. 655] requesting that this Court vacate the March 17, 2017 order.

Dated this 1st day of May, 2017.

Barbara Jacobs Rothstein
U.S. District Court Judge