IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE COLONIAL BANCGROUP, INC., as post-confirmation debtor, and KEVIN O'HALLORAN, as plan trustee acting for and on behalf of the debtor,<br><br>Plaintiffs,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>Defendants. | ) | Case No. 2:11-cv-00746-BJR<br><br>LEAD CASE |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>Defendants. | ) | Case No. 2:12-cv-00957-BJR |

**DEFENDANT CROWE HORWATH LLP'S RESPONSE TO PLAINTIFF FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK'S MOTION REGARDING THE USE OF CERTAIN EVIDENCE AT TRIAL**

## INTRODUCTION

A central issue in this case—as framed by the Federal Deposit Insurance Corporation as Receiver for Colonial Bank ("FDIC-R")—is whether Crowe Horwath LLP ("Crowe") was negligent by failing to detect fraud while performing outsourced internal audit services for Colonial BancGroup, Inc. ("CBG"). Remarkably, the FDIC-R now argues that evidence that the fraud was "hard to find" is somehow irrelevant to negligence. By seeking to exclude this evidence, the FDIC-R is arguing that: [redacted] In addition to seeking to exclude testimony from federal banking regulators, the FDIC-R seeks to exclude testimony of a former Bank employee in a compliance function and a forensic examiner from a Big Four accounting firm.

The FDIC-R's attempt to blindfold the Court to the substantial evidence that the fraud was hard to find—and indeed, actively concealed from Crowe—is without merit. All of this evidence supports Crowe's affirmative defenses of contributory negligence, assumption of risk, and *in pari delicto*, among others, which Crowe has shown are viable for trial. *See* Dkt. 573 (Crowe's Opp. to FDIC-R and CBG's Mot. for Summary Judgment). But beyond that, this evidence is also independently relevant to the FDIC-R's underlying negligence claims. The FDIC-R's motion to exclude this evidence should be denied in its entirety.

[redacted]

[redacted] In seeking to exclude this critical evidence, the FDIC-R ignores the prior holding of this Court expressly finding that this precise type of evidence is "extremely relevant" to negligence claims against professionals. *See, e.g.*, *Seafirst Corp. v. Jenkins*, 644 F. Supp. 1160, 1162-63 (W.D. Wash. 1986) (Rothstein, J.).

## ARGUMENT

### I. The FDIC-R's Claims Are Subject To Crowe's Affirmative Defenses, But Even If The Court Grants The FDIC-R's Motion For Summary Judgment, The Same Evidence Would Still Be Relevant To The Core Elements Of The FDIC-R's Claims.

In a not-so-subtle attempt to influence the Court's ruling on its pending motion for partial summary judgment regarding Crowe's affirmative defenses,[1] the FDIC-R argues that granting its motion for partial summary judgment would purportedly eliminate the need to consider 1,200 pages of designated deposition testimony. FDIC-R MIL at 4. But as Crowe previously explained, the FDIC-R's motion for partial summary judgment never made sense in the first place given that this same "evidence will come in anyway because it is extremely relevant to Plaintiffs' claims (even apart from any defenses)." Dkt. 573 at 26.

#### A. Testimony From Federal Banking Regulators Is Directly Relevant To The FDIC-R's Underlying Negligence Claims.

In Exhibit A to its motion *in limine*, the FDIC-R seeks to exclude testimony from four federal banking regulators—Brent Spencer (OCC), Marianne Lester (FDIC), Rusty Thompson

[1] The Court has already stated that it would rule on the FDIC-R's summary judgment motion. Dkt. 641. The FDIC-R's motion *in limine* is unnecessary in light of the Court's forthcoming ruling.

(OCC), and Timothy Rich (FDIC). This testimony is directly relevant to the FDIC-R's negligence claims in at least two key respects. [redacted]

[redacted]

[redacted]

Other courts have reached the same conclusion, including one recently where the FDIC-R was represented by the same counsel as represents it here. *See Seafirst Corp. v. Jenkins*, 1986 WL 566, at *3 (D.D.C. July 18, 1986) (adopting this Court's finding that "reports of examination by the national bank examiners are extremely relevant"); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 586-87 (E.D.N.Y. 1979) (holding that regulators' evaluation of a bank's financial condition "will constitute ***critical evidence***" "in defending the actions against [auditors] for negligently conducting their audits") (emphasis added); *FDIC-R v. Ching*, Case No. 13-CV-1710, Doc. 225 at 3 (E.D. Cal. Oct. 28, 2016) (denying motion *in limine* to exclude evidence of regulator conduct because "[i]t appears that reports of examination issued by the FDIC-C are relevant to whether defendants exercised due care in maintaining the Bank's capitalization at an adequate level") (FDIC-R represented by Mr. Heftman) (Ex. 2).

The FDIC-R also ignores Judge Kessler's holding in *Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37 (D.D.C. 2015). There, in connection with this very case, Crowe sought production of OCC examination reports "to respond to … plaintiffs' arguments that the fraud was easy to catch and that the accountants were negligent in not doing so." *Id.* at 41. Judge Kessler agreed that Crowe's requests for OCC reports were "all relevant." *Id.* at 42. As Judge Kessler explained, "[w]hile the OCC has no responsibility for auditing

banks, it has an enormous amount of responsibility for the supervision and monitoring of banks." *Id.* at 41. [redacted] As a result, evidence related to federal banking regulators is relevant not only to Crowe's affirmative defenses, but to the FDIC-R's underlying negligence claims as well.

The FDIC-R's reliance on *Grant Thornton, LLP v. FDIC*, 535 F. Supp. 2d 676 (S.D. W. Va. 2007), is misplaced. FDIC-R MIL at 5-6. In that case, the court discussed regulator conduct in the context of an intervening and superseding cause affirmative defense. *Grant Thornton*, 535 F. Supp. 2d at 720. The court did not exclude evidence of regulator conduct as it related to the FDIC-R's underlying claims. To the contrary, the court heard extensive testimony from regulators. For example, OCC examiner Mark Blair testified at trial about how the OCC "didn't find the fraud" despite having fifteen "good examiners" taking a "hard look" at the bank. Ex. 3 (*Grant Thornton*, Blair Trial Tr.) at 131-32. He further testified that fraud is "harder" to catch where more people at the bank are involved, more documents are forged, and the fraudsters are better at forging documents. *Id.* at 138. Likewise, Christopher Hoffman, an FDIC examiner who had reviewed Grant Thornton's work papers, testified via video deposition that Grant Thornton's work papers had "looked fine." Ex. 4 (*Grant Thornton*, Hoffman Dep. Tr.) at 34.

Notably, the FDIC-R has itself ***affirmatively designated*** substantial deposition testimony from OCC examiners Brent Spencer and Rusty Thompson as to PwC, and from Mr. Spencer as to Crowe. *See* Ex. 5 (FDIC-R Designations). The parties even negotiated a specific provision in a scheduling order to facilitate the admission of Mr. Spencer's deposition testimony. *See* Dkt. 660 (Order Regarding Pretrial Procedures) at Ex. A ¶ 3(b). Apparently, the FDIC-R believes that if testimony from federal banking regulators is useful to its case, it should come in, but if the

testimony is unhelpful, it should be excluded. The FDIC-R cannot have it both ways. That the FDIC-R itself seeks to admit testimony from federal banking regulators is only further confirmation that the testimony is directly relevant to the FDIC-R's negligence claims.

**B. Sarah Roland's Testimony Is Directly Relevant To The FDIC-R's Underlying Negligence Claims.**

In Exhibit A to its motion *in limine*, the FDIC-R also seeks to exclude testimony from Sarah Roland, an in-house risk control analyst at Colonial Bank. Ms. Roland worked in the Mortgage Warehouse Lending Division full-time and monitored the Division for compliance with its procedures on a daily basis. [redacted]

[redacted]

[redacted]

### C. David Hoffman's Testimony Is Also Directly Relevant To The FDIC-R's Underlying Negligence Claims.

Finally, in Exhibit A to its motion *in limine*, the FDIC-R seeks to exclude testimony from David Hoffman, formerly with Ernst & Young LLP ("EY").[2] [redacted] This evidence is certainly relevant to whether or not properly performed internal audit services should have uncovered the fraud.

[2] It is worth nothing that it was CBG who insisted on taking Mr. Hoffman's deposition. CBG even sought agreement from the parties to depose Mr. Hoffman *after* the close of fact discovery.

## II. Evidence That The Fraud Was "Hard To Find" Is Extremely Relevant.

The FDIC-R also argues that the Court should exclude evidence that the fraud was "hard to find" in order to "excuse" Crowe's purported negligence. FDIC-R MIL at 2, 5. There are at least two threshold problems with the FDIC-R's argument. First, Crowe is not seeking to introduce evidence that the fraud was hard to find in order to "excuse" negligence. To the contrary, as explained above, whether the fraud was hard (or easy) to find is directly relevant to whether Crowe was negligent in the first place. *See Colonial BancGroup*, 110 F. Supp. 3d at 41-42 (holding that OCC examination reports were "all relevant" to refuting the FDIC-R's claims that the fraud was "easy to catch" and that Crowe was "negligent in not doing so"). Again, this evidence is independently relevant beyond Crowe's affirmative defenses.

Second, the FDIC-R's argument is overbroad and ill-defined. Presumably, the FDIC-R is not challenging ***all*** evidence that the fraud was hard to find. [redacted]

Evidence that the fraud was "hard to find" is relevant to the question of whether Crowe was negligent in not finding the fraud, but at a minimum, the FDIC-R has opened the door for Crowe to rebut its assertions that the fraud was easy to find. [redacted]

[redacted]

[redacted] The FDIC-R does not attempt to (and cannot) argue that this evidence that the fraud was "hard to catch" is irrelevant.

Rather, the FDIC-R's motion appears to target a more limited subset of evidence that the fraud was "hard to find"—whether "other" entities, including federal banking regulators, also failed to discover the fraud. FDIC-R MIL at 5, 11. The FDIC-R argues that these other entities "were serving in different roles, performing different services, and were subject to different guidelines and regulations." *Id.* at 5. The FDIC-R is certainly free to try to raise distinctions

related to the roles and services provided by various entities, but even if these distinctions had any legal validity, that goes to the weight of the evidence, not its admissibility. Likewise, to the extent the FDIC-R is claiming that regulators were not competent to assess the quality of Crowe's work because they were not auditors themselves (even if it were true), or were relying on Crowe in some fashion, that too goes to weight, not admissibility.

But the FDIC-R's arguments about the role or competency of regulators are not based in the facts. The FDIC-R argues at length that banking regulators and auditors serve different functions and that the work of regulators is purportedly irrelevant. FDIC-R MIL at 11-12. But regulators' different role makes their failure to discern the fraud no less relevant, as Judge Kessler held in rejecting this very argument: "[w]hile the OCC has no responsibility for auditing banks, it has an ***enormous amount*** of responsibility for the supervision and monitoring of banks." *Colonial BancGroup*, 110 F. Supp. 3d at 41 (emphasis added). Given this responsibility and authority, whether regulators also failed to detect the fraud is "extremely relevant" and "critical evidence." *Seafirst*, 644 F. Supp. at 1160; *Franklin Nat'l Bank*, 478 F. Supp. at 586-87; *see also Seafirst*, 1986 WL 566, at *3; *FDIC-R v. Ching*, Doc. 225 at 3.

Judge Kessler's holding is important in another way as well. As Judge Kessler recognized, regulators have an enormous amount of responsibility for supervising and monitoring banks—this includes their internal audit functions. The *Interagency Policy Statement on the Internal Audit Function and its Outsourcing* (March 17, 2003) issued by the FDIC and other federal regulators explains that "federal banking agencies' long standing examination policies call for examiners to review an institution's internal audit function and recommend improvements, if needed." Ex. 14 (Interagency Policy Statement) at 1. Examiners have "full and timely access to an institution's internal audit resources, including personnel, workpapers,

risk assessments, work plans, programs, reports, and budgets." *Id.* at 10. Examiners "assess the ***quality*** and scope of an institution's internal audit function, regardless of whether it is performed by the institution's employees or by an outsourcing vendor," as well as "the competence of the institution's internal audit staff and management." *Id.* at 10-11 (emphasis added); *accord* Ex. 15 (OCC Handbook, Internal and External Audits, April 2003) at 49-50 (explaining that examiners' review "includes work papers for outsourced internal audit work performed by independent third parties," that those reviews "may not be waived during any supervisory cycle," and that examiners review workpapers and other documents in order to "substantiate conclusions about the quality and reliability of a bank's overall audit program").

[redacted]

[redacted]

[redacted] Although federal banking regulators are not auditors, they are no less qualified by their background and experience to evaluate the internal audit function as they are required to do.[3] Their findings constitute relevant evidence—making it more or less probable than it would be without the evidence (Fed. R. Evid. 401(a))—of whether (1) Crowe's work was deficient or (2) whether that work disclosed that Crowe should have discovered the fraud. Indeed, had regulators identified significant deficiencies in Crowe's work, it is not hard to imagine that the FDIC-R would be seeking to use those findings as evidence against Crowe.

**CONCLUSION**

For the foregoing reasons, the FDIC-R's Motion Regarding The Use Of Certain Evidence At Trial should be denied in its entirety.

[3] Unlike other standards, the IIA standards that governed CBG's internal audit function are not overly complex. In essence, they required that CBG have an internal audit function and that the function be performed with due care. There is no suggestion by any party that the federal banking regulators that reviewed Crowe's work were not qualified to evaluate that work for compliance with these general IIA standards.

Respectfully submitted,

/s/ Stanley J. Parzen

**MAYER BROWN LLP**
Stanley J. Parzen
Jonathan C. Medow
Justin A. McCarty
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600
Email: sparzen@mayerbrown.com
jmedow@mayerbrown.com
jmccarty@maybrown.com

**MAYER BROWN LLP**
Mark W. Ryan
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3338
Email: mryan@mayerbrown.com

**COPELAND, FRANCO, SCREWS & GILL, PA**
Robert D. Segall
Post Office Box 347
Montgomery, AL 36101-0347
Telephone: (334) 834-1180
segall@coperlandranco.com

*Attorneys for Defendant Crowe Horwath LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2017, I caused a redacted version of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record as of that date, and an unredacted version was filed with the Clerk of Court under seal and served on counsel of record for the parties by electronic mail.

/s/ Justin A. McCarty
*An Attorney for Defendant Crowe Horwath LLP*