**IN THE UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

**THE COLONIAL BANCGROUP, INC. and KEVIN O'HALLORAN,**

**Plaintiffs,**

**v.**

**PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,**

**Defendants.**

**Case No. 2:11-cv-00746-BJR**
**LEAD CASE**

---

**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR COLONIAL BANK,**

**Plaintiff,**

**v.**

**PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,**

**Defendants.**

**Case No. 2:12-cv-00957-BJR**

**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S**
**OPPOSITION TO THE FDIC'S MOTION REGARDING**
**THE USE OF CERTAIN EVIDENCE AT TRIAL**

## TABLE OF CONTENTS


ARGUMENT .......... 2

I. The FDIC Mischaracterizes PwC's Responsibilities .......... 2

II. Evidence That Bank Employees Lied to or Withheld Critical Information from PwC and Other Evidence Supporting PwC's Affirmative Defenses Should Not Be Excluded .......... 4

A. PwC's Affirmative Defenses Apply Fully Against the FDIC .......... 4

B. Excluding Relevant Evidence of Bank Misconduct Would Not Save Meaningful Time .......... 9

III. Evidence That the Collusive Fraud Was Difficult to Find and That Others Better Positioned Than PwC Failed to Detect It Should Not Be Excluded .......... 10

A. The Auditing Standards Applicable to This Case Recognize That Fraud May Be Difficult to Find .......... 10

B. The Failure of Others to Find the Well-Concealed Fraud Is Relevant Evidence .......... 11

C. Excluding Relevant Evidence of How Difficult the Fraud Was to Discover Would Not Save Meaningful Time .......... 13

CONCLUSION .......... 13

Having taken advantage of receivership laws allowing it to bring suit on behalf of Colonial Bank (the "Bank"), the FDIC seeks blanket immunity from the affirmative defenses PwC could otherwise have asserted against the Bank. Worse yet, the FDIC dresses up what is essentially a renewed plea for summary judgment as a motion to exclude highly relevant evidence that goes to the heart of the issues this Court is empowered to decide and that will be relevant in any event to plaintiff BancGroup's claims. *See C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) (discussing the impropriety of using a motion in limine as a back door to summary judgment).

On the eve of a long-awaited trial, the FDIC asks the Court to disregard completely the copious evidence that Bank employees were aware of numerous warning signs of the fraud but withheld this information from PwC. The evidence is relevant even under Plaintiffs' characterization of contributory negligence. The FDIC also asks the Court to ignore the evidence that multiple other entities better positioned than PwC to find fraud also did not discover it—including Ernst & Young ("EY"), which specifically investigated mortgage warehouse lending transactions with TBW in the summer of 2009. This evidence shows how difficult the collusive fraud was to find and is relevant to assessing PwC's inability to uncover the fraud and evaluating causation.

The evidence the FDIC seeks to exclude would neither appreciably impact the length of trial nor render the matter too "complex[]" for this experienced Court. Indeed, because this is a bench trial, the Court should evaluate what evidence is relevant and how much weight it deserves in the context of the record that will be developed at trial. *See, e.g.*, *In re Matter of Taira Lynn Ltd.*, No. 13-CV-0318, 2016 WL 8234829, at *1 (S.D. Ala. Feb. 10, 2016) ("The rationale underlying pre-trial motions in limine does not apply in a bench trial, where it is presumed the

judge will disregard inadmissible evidence . . . .” (internal quotation marks omitted)). The FDIC’s motion therefore should be denied.

## ARGUMENT

### I. The FDIC Mischaracterizes PwC’s Responsibilities

The FDIC, purporting to rely on the auditing standards, argues that “PwC had a duty to detect fraud.” (Dkt. 683, 7/26/2017 FDIC Mot. at 6-10.) But the FDIC ignores what those standards actually say. PwC’s responsibility was to obtain “reasonable assurance” that BancGroup’s financial statements were not materially misstated, whether due to error or fraud. (Ex. 1, AU § 110.02.) “Absolute assurance is not attainable,” the standards explain, “because of the nature of audit evidence and the characteristics of fraud.” (Ex. 2, AU § 230.10.) Simply asserting that “PwC had a duty to detect fraud” fails to recognize that even “a properly planned and performed audit may not detect a material misstatement resulting from fraud.” (Ex. 3, Excerpts from AU § 316.12); *see DeLollis v. Friedberg, Smith & Co., P.C.*, 933 F. Supp. 2d 354, 363 (D. Conn. 2013) (“[F]raudulent acts may lead even a properly executed audit to fail to detect a material misstatement.”), *aff’d*, 600 F. App’x 792 (2d Cir. 2015). PwC’s opinion that BancGroup’s financial statements were fairly stated in all material respects “does not constitute a guarantee.” (Ex. 2, AU § 230.13.) PwC, in short, “is not an insurer” against bank fraud. *Id.*

Bank management, not PwC, was responsible for designing and implementing controls to prevent and detect fraud. (Ex. 4, Excerpts from AS 2 ¶ 25.) As the FDIC’s own Manual of Examination Policies emphasizes, “The primary responsibility to prevent fraud and insider abuse rests with the board of directors and senior management.” (Ex. 5, Excerpts from FDIC Manual of Examination Policies § 10.1 at 1 (found in subsection titled “Bank Management is Responsible for Preventing and Detecting Fraud and Insider Abuse”).) “To properly execute their fiduciary duties,” the FDIC’s manual continues, “management *must* implement internal

controls and other safeguards to prevent fraud and theft whether internally or externally perpetrated." (*Id.* (emphasis added).)

The FDIC selectively quotes from a newspaper interview PwC's then-chairman gave more than 10 years ago, with an ellipsis at the end: [redacted] (FDIC Mot. at 9.) The FDIC's ellipsis is no accident. It is a misleading attempt to make Mr. Nally's statement seem "unequivocal." (*Id.* at 9 n.2.) The rest of the quote provides the proper context: [redacted] (Ex. H to FDIC Mot. [Dkt. 683-10 at 16].) As the full quote makes clear, the key is [redacted] to obtain reasonable assurance that a client's financial statements are not materially misstated.

The FDIC's mischaracterizations do not end there. Selectively quoting from Wes Kelly's deposition in a different case, the FDIC asserts: [redacted] (FDIC Mot. at 9 n.2.) Not true. The beginning of Kelly's quote, concealed once again by ellipsis, refutes the FDIC's claim: [redacted] (Ex. J to FDIC Mot. [Dkt. 683-12] 45:1-8.) Kelly's full response, thus, is perfectly consistent with the applicable auditing standards. So too is Gary Westbrook's statement that [redacted] (FDIC Mot. at 9 n.2.) PwC was hired to audit BancGroup's financial

statements and to form an opinion as to whether they were fairly stated in all material respects, (Ex. 1, AU § 110.03), not to conduct a forensic investigation or [redacted] (Ex. 6, 12/3/2015 Hicks Dep.187:2-188:20.)

In contrast, BancGroup did hire EY to perform a forensic investigation in 2009. (Ex. 7, 10/18/2016 Hoffman Dep. 28:25-29:20.) Unlike a financial statement audit, which considers all the Bank's myriad operations, a forensic investigation is typically "much more detailed" and "focused on a specific account or stream of revenue." (*Id.* at 89:7-16, 95:16-20; *see also* Ex. 8, 8/29/2016 Excerpts from Johnigan Rep. ¶¶ 295-99.) [redacted] (*See* Ex. 9, 8/5/2009 Preliminary Report of Counsel to the CNB Audit Committee Concerning SIGTARP Subpoena Investigation at 1 ("Preliminary Report").) The investigation was particularly "designed to spot places where Colonial Bank could have been funneling money to [TBW and other MWLD customers] that these customers weren't otherwise entitled to." (Ex. 7, Hoffman Dep. 134:8-15.) Despite this focus, EY did not find the fraud. (*Id.* at 100:24-101:3.)

## II. Evidence That Bank Employees Lied to or Withheld Critical Information from PwC and Other Evidence Supporting PwC's Affirmative Defenses Should Not Be Excluded

### A. PwC's Affirmative Defenses Apply Fully Against the FDIC

Alabama law does not allow the FDIC, having stepped into the Bank's shoes and sued PwC for billions of dollars, to avoid the defenses PwC could have asserted against the Bank. (*See* Dkt. 558, 11/29/2016 PwC Opp. to Pls.' MSJ re Affirmative Defenses ("PwC Opp.") at 37-50.) These defenses include *in pari delicto* and the *Hinkle* rule. Cathie Kissick and Teresa Kelly were employees of the Bank. In their capacity as Bank employees, Kissick and Kelly conspired with TBW to commit a clandestine fraud. They lied repeatedly to PwC, falsified documents to

make fake transactions look real, and overrode controls PwC relied on to perform its work. (*See* Ex. 10, 1/19/2016 Kissick Dep. 134:14-21, 135:17-21, 148:18-25, 254:25-255:10; Ex. 11, 3/1/2016 Kelly Dep. 289:24-291:25, 497:2-9.) Kissick and Kelly were convicted of felony conspiracy to commit bank, wire, and securities fraud and sentenced to prison time. Their guilty pleas included the representation that they [redacted] from PwC. (*E.g.*, Ex. 10, Kissick Dep. 1032:19-1033:5.)

Despite participating in this fraud for several years, [redacted] (*See id.* at 358:5-24; Ex. 11, Kelly Dep. 312:23-313:24.) The evidence shows Kissick participated in the fraud because she believed TBW would fail otherwise, and that the failure of the Bank's largest customer would have been catastrophic for Colonial Bank: [redacted] (Ex. 12, 1/15/2008 Email from Cathie Kissick to Kamal Hosein re "Things.") Under Alabama law, her actions (and Kelly's) are imputed to the Bank,[1] which the FDIC now represents. (*See* PwC Opp. at 30-32.)

The FDIC cannot pick and choose when it stands in the shoes of the Bank. For example, the FDIC seeks punitive damages against PwC based on the FAS 140 accounting issue. What the FDIC neglects to mention, however, is that the Bank had the duty, in the first instance, to analyze and reach a conclusion whether its assets qualified as purchases or secured borrowings under FAS 140. The decision to treat the COLB assets as purchases was the Bank's alone. Only after the Bank reached that conclusion did PwC review it and agree it was proper (as did various regulators and others). (*See* Ex. 8, Excerpts from Johnigan Rep. ¶ 546.) The FDIC, standing in

[1] As agents of BancGroup, the actions of Kissick and Kelly are also imputed to the Bank's holding company. (*See* PwC Opp. at 34 n.21.)

the Bank's shoes, must bear responsibility for the Bank's own accounting decisions, which the FDIC now claims were erroneous.

The same principle applies with respect to contributory negligence. The thrust of this defense is not, as the FDIC suggests, that "certain Colonial Bank personnel also failed to find the fraud." (FDIC Mot. at 2.) Rather, it is that Bank (and BancGroup) employees—other than the fraudsters—found or knew about numerous warning signs and yet did not tell PwC about them or take appropriate steps in response that would have led to the fraud's discovery. PwC's controls-based audit depended on these employees reporting such issues because they were best situated to uncover the fraud.

The MWLD's Compliance/Risk Control group, for example, "was responsible for protecting the division from fraud." (Ex. 13, 1/28/2016 Bryant Dep. 249:20-250:2.) Yet the group's members, including Sarah Roland and Cherie Fite, found a host of irregularities with TBW that were never communicated to PwC. They knew, for instance, that [redacted] and that TBW was "always so generic in their responses in regards to aged loans," yet MWLD staff "always accepted it as 'better than nothing.'" (Ex. 14, 12/5/2003 Email from Cathie Kissick cc Sarah Roland re "Aged loan info"; Ex. 15, 11/12/2008 Email from Sarah Roland re "TBW Paydowns"; Ex. 16, 1/13/2009 Email from Cherie Fite re "TBW AGED LOANS.") Roland believed that Kissick was engaging in "questionable behavior" and "lying" when it came to TBW. (Ex. 17, 2/18/2004 Reflections on Class Ethical Discussion by Sarah Roland.) Similarly, Pam Vitto, whose full-time job was auditing the MWLD, raised concerns at the time about

"possible fraud" with certain TBW loans. (Ex. 18, 9/16/2008 Email from Pam Vitto re "TBW.") PwC was never told about any of these issues and is entitled to offer this evidence at trial.

Failure to report these warning signs to PwC was not limited to the Bank's lower-level employees. [redacted] (PwC Opp. at 8, 12-13, 19.) Nobody notified PwC. [redacted] (*Id.* at 9-10, 18.) He never informed PwC.

The consequences of these failures were not lost on the Bank's employees. Mary Lou Bathen, assistant treasurer for the Bank and BancGroup, testified: "I think Pam [Vitto] found a lot of things and raised flags, and I don't know if they were always looked at as carefully as maybe they should." (Ex. 19, 3/29/2016 Bathen Dep. 226:17-20.) She included herself, Kamal Hosein (treasurer), and Sarah Moore (chief financial officer) among those who had failed to pay close enough attention to Vitto's findings. (*Id.* at 226:21-227:5.) Moore, for her part, agreed that [redacted] (Ex. 20, Moore Dep. 138:8-13.) [redacted] (*Id.* at 137:17-20.) Bathen's negligence in this regard was critical because, as Moore explained, [redacted] (*Id.* at 138:11-13.) And when asked about her 2008-09 investigation of TBW's failure to provide purchase advices, Roland agreed that "more should have been done." (Ex. 21, 10/15/2015 Roland Dep.)

The FDIC asks the Court to exclude all this evidence as "irrelevant" because, it claims, "the FDIC-R is protected, as a matter of law, from all such imputation-based defenses." (FDIC Mot. at 4.) But as explained in PwC's brief opposing summary judgment, Alabama law does not shield the FDIC from defenses that PwC could have asserted against the Bank. (PwC Opp. at 37-50.) In fact, the FDIC has admitted that for its argument to prevail, the Court must create an exception to Alabama's longstanding rule "that receivers do not 'stand in any more favored position than the bank [they] represent[].'" (Dkt. 593, 12/13/2016 FDIC Reply Supporting MSJ re Affirmative Defenses ("FDIC Reply") at 3-4 (quoting *Day v. Farmers' & Merchants' Bank of Hartselle*, 157 So. 439, 443 (Ala. 1934)).)

The FDIC does not—because it cannot—even try to claim that this case fits within *Day*'s narrow exception for fraudulent conveyances. (FDIC Reply at 4.) Nor does the FDIC attempt to distinguish the Seventh Circuit's reasoning in *Knauer v. Jonathon Roberts Financial Group, Inc.*, 348 F.3d 230, 236 (7th Cir. 2003), which held that Indiana's identical fraudulent conveyance exception applies only where the receiver is "seeking to recover the diverted funds from the beneficiaries of the diversions." The exception does not apply where, as here, the receiver seeks "tort damages from entities that derived no benefit from the [fraud], but that were allegedly partly to blame for [its] occurrence." *Id.*[2]

Alabama law contains no exception just for "innocent receivers." (FDIC Reply at 3.) Because the FDIC must assume the burdens along with the benefits of representing the Bank, this Court should reject the FDIC's invitation to rewrite Alabama law. *Cf. FDIC v. Hanson*, No.

---

[2] In its reply supporting summary judgment, the FDIC cites a handful of new cases, none of which applies Alabama law. *See* FDIC Reply at 4 n.5. One of these cases even supports PwC's position. *See Myatt v. RHBT Fin. Corp.*, 635 S.E.2d 545, 548 (S.C. Ct. App. 2006) (relying on *Knauer* to hold that *in pari delicto* barred the receiver's claim for tort damages).

13-CV-0671, 2013 WL 12074983, at *6 (W.D. Wash. Dec. 10, 2013) (rejecting the FDIC's argument "that Defendants cannot assert this [imputation-based] defense against the FDIC-R because only City Bank, and not the FDIC-R, engaged in the complained-of behavior").[3]

### B. Excluding Relevant Evidence of Bank Misconduct Would Not Save Meaningful Time

Even assuming the FDIC could sue PwC while being shielded from PwC's affirmative defenses, much of the same evidence of Bank misconduct would still be admitted in the bench trial because BancGroup is not so shielded. Many of the Bank employees who failed to notify PwC of warning signs were also employees of BancGroup. (*E.g.*, Ex. 22, 3/11/2016 Hosein Dep. 18:11-18.) Those who were not technically BancGroup employees acted as agents of the holding company. (PwC Opp. at 34 n.21.) BancGroup itself agrees that some of the evidence of Bank or BancGroup negligence will be admitted, arguing only that such evidence should be limited to misconduct that "interfered with [PwC's] ability to carry out the audits properly and detect BancGroup's true financial condition." (Dkt. 679, 7/26/2017 BancGroup Mot. at 2-3.) Thus, even if the Court took the unprecedented step of adopting the audit interference rule, most of the evidence would still be admitted because it includes numerous examples of Bank or BancGroup employees interfering with PwC's financial statement audits by not disclosing the warning signs they found. (*See supra* pp. 6-7; *see also* PwC Opp. at 27 n.15.)

What is more, the FDIC's claim of "tremendous" time savings by excluding this relevant evidence is largely illusory, even if it were not already coming in with respect to the BancGroup claim. (FDIC Mot. at 4-5.) The savings, per the FDIC, would amount to four witnesses. (*Id.* at 4.) Even if correct, that would eliminate just four out of 35 witnesses whose deposition

[3] Whether an actor is the "sole proximate cause" of an injury is a question for this Court as the finder of fact. (FDIC Mot. at 4.) So too is whether an actor's conduct falls within the scope of his or her agency. (PwC Opp. at 30-32, 50-51.)

testimony has been designated—26 by Plaintiffs alone. Any time savings would therefore be minimal, while the prejudice to PwC would be substantial.

## III. Evidence That the Collusive Fraud Was Difficult to Find and That Others Better Positioned Than PwC Failed to Detect It Should Not Be Excluded

### A. The Auditing Standards Applicable to This Case Recognize That Fraud May Be Difficult to Find

Ignoring once again what the applicable auditing standards actually say, the FDIC asks that the Court disregard evidence of the fraud's nature (i.e., that it was "hard to find"). (FDIC Mot. at 5-11.) This argument has no merit. The auditing standards expressly acknowledge that the type of fraud perpetrated by TBW and certain employees of the Bank's MWLD may be especially difficult to uncover. As the standards explain, "a properly planned and performed audit may not detect a material misstatement" when the fraud includes "(a) concealment through collusion among management, employees, or third parties; (b) withheld, misrepresented, or falsified documentation; and (c) the ability of management to override or instruct others to override what otherwise appears to be effective controls." (Ex. 2, AU § 230.12.)

All three characteristics were present here: The fraud involved collusion between the Bank and one of its customers, certain Bank employees lied repeatedly to or withheld information from PwC, and members of management, including Kissick, were able to override controls that she and others manipulated to appear effective. That the fraud was collusive made it particularly difficult to uncover because, as the standards recognize, "[c]ollusion may cause the auditor who has *properly performed the audit* to conclude that evidence provided is persuasive when it is, in fact, false." (Ex. 3, Excerpts from AU § 316.10 (emphasis added).)

### B. The Failure of Others to Find the Well-Concealed Fraud Is Relevant Evidence

The fact that other entities were examining TBW or the MWLD and did not detect the fraud underscores the difficulty of uncovering a fraud when all three characteristics are present. Take EY, for example. [redacted] (*See* Ex. 23, 4/21/2009 EY Engagement Letter (Apr. 21, 2009).) Specifically, EY was looking for evidence that the Bank had been fraudulently "funneling money to [TBW and other MWLD customers] that these customers weren't otherwise entitled to." (Ex. 7, Hoffman Dep. 134:8-15.) [redacted] (Ex. 9, Preliminary Report at 2.) In total, EY spent thousands of hours—and was paid nearly $1.5 million—trying to uncover any evidence of illicit activity. (Ex. 7, Hoffman Dep. 203:25-204:21.) EY found none.

In fact, two days after the FBI had raided TBW and the Bank, Waller Lansden, the firm that had engaged EY on BancGroup's behalf, issued its preliminary report containing EY's findings. As the report states, EY [redacted] (Ex. 9, Preliminary Report at 3.) Accordingly, there was [redacted]

[redacted] (*Id.* at 4.)[4]

To be clear, PwC does not contend that the mere failure of EY—or the Bank's regulators or Crowe or Pam Vitto or the Compliance/Risk Control group—to find the fraud is an affirmative defense.[5] Rather, it is relevant evidence that the TBW fraud was of the type the auditing standards recognize as especially difficult to detect: a collusive fraud in which key players in Bank management either lied to or withheld critical information from PwC. This evidence, thus, is probative of the key issue of whether PwC's conduct satisfied its professional duties under those same standards and whether the FDIC can prove that a properly performed audit would have detected the fraud. *See Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 41-42 (D.D.C. 2015) (holding, in connection with this case, that regulator examination reports PwC had requested were "all relevant" to rebut "plaintiffs' arguments that the fraud was easy to catch and that the accountants were negligent in not doing so").

The same is true with respect to the conduct of banking regulators. The FDIC spends several pages characterizing PwC as a "public watchdog" whose duty it is to ferret out fraud. (FDIC Mot. at 6-8.) The irony, of course, is that the FDIC actually is a public institution whose mission is to "maintain stability and public confidence in the nation's financial system." (Ex. 25, FDIC 2015-2019 Strategic Plan: Mission, Vision, and Values, https://www.fdic.gov/about/

---

[4] Waller Lansden's final report [redacted] (*see* Ex. 24, Observations as of August 16, 2009), but that was only after [redacted]

[5] The FDIC's reliance on *Grant Thornton, LLP v. FDIC*, 535 F. Supp. 2d 676, 722 (S.D. W. Va. 2007), *rev'd on other grounds sub nom. Ellis v. Grant Thornton LLP*, 530 F.3d 280 (4th Cir. 2008), is therefore misplaced. Unlike the defendant there, PwC is not raising an affirmative defense "based upon pre-receivership actions of regulators." *Id.*

strategic/strategic/mission.html (accessed Feb. 22, 2016).) The FDIC is supposed to do so by "examining and supervising financial institutions for safety and soundness and consumer protection." *Id.* Although FDIC examiners are required "to be alert for irregular or unusual activity and to fully investigate the circumstances surrounding the activity," including "any attempts by outsiders to defraud financial institutions," the FDIC never noticed the fraud while examining the MWLD. (Ex. 5, Excerpts from FDIC Manual of Examination Policies § 9.1 at 1.) Nor did the Office of the Comptroller of the Currency (the "OCC"), which is responsible [redacted] (Ex. 26, 11/17/2015 Spencer Dep. 9:9-15, 66:11-18, 86:14-87:20, 116:10-15.)

### C. Excluding Relevant Evidence of How Difficult the Fraud Was to Discover Would Not Save Meaningful Time

The FDIC's assertion that "[a]llowing such evidence would greatly increase both the complexity and the length of the trial" greatly overstates the matter. (FDIC Mot. at 11.) Any time saved would be negligible. Of the 35 witnesses whose deposition testimony the parties have designated, PwC designated only one witness from EY and just two from the FDIC. Only two OCC witnesses have been designated—both by Plaintiffs.

The FDIC's complaints about William Isaac are equally unpersuasive. (FDIC Mot. at 11.) PwC does not intend to call Isaac. He is listed only as a "may call" witness.

## CONCLUSION

For the reasons stated above, the Court should deny the FDIC's motion to exclude relevant evidence from the bench trial.

Respectfully submitted, this 4th day of August, 2017.

/s/ *Mark L. Levine*

Philip S. Beck
(Illinois Bar No. 147168) *pro hac vice*
Mark L. Levine
(Illinois Bar No. 6201501) *pro hac vice*
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
Courthouse Place, Suite 300
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4400
Email: philip.beck@bartlit-beck.com
mark.levine@bartlit-beck.com

-and-

Meredith Moss
(Washington, DC Bar No. 484108) *pro hac vice*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone: (202) 626-2916
Email: mmoss@kslaw.com

-and-

Tabor Robert Novak, Jr.
(Alabama Bar No. ASB-9503-V72T)
**BALL BALL MATTHEWS & NOVAK PA**
P.O. Box 2148
Montgomery, AL 36102-2148
Telephone: (334) 387-7680
Email: tnovak@ball-ball.com

**ATTORNEYS FOR DEFENDANT PRICEWATERHOUSECOOPERS LLP**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2017, a true and exact copy of the foregoing was electronically served by transmission of Notice of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing.

/s/ *Mark L. Levine*
Mark L. Levine