**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION**

**THE COLONIAL BANCGROUP, INC. and KEVIN O'HALLORAN,**

**Plaintiffs,**

**v.**

**PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,**

**Defendants.**

**Case No. 2:11-cv-00746-BJR LEAD CASE**

---

**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR COLONIAL BANK,**

**Plaintiff,**

**v.**

**PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,**

**Defendants.**

**Case No. 2:12-cv-00957-BJR**

**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION FOR SUMMARY JUDGMENT AGAINST CBG ON CBG'S CLAIMS ARISING OUT OF THE 2007 AUDIT**

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 5

I. The Court's ruling that CBG was *in pari delicto* is a complete bar to all of CBG's claims. ........ 5

II. Issue preclusion bars CBG from relitigating any issue already decided by the Court, including CBG's contributory negligence and contract nonperformance. ........ 7

III. The Court's order shows that no reasonable jury could find for CBG on the 2007 claims. ........ 10

CONCLUSION ........ 13

## INTRODUCTION

The Colonial BancGroup, Inc., represented by Kevin O'Halloran as Plan Trustee ("CBG"), brought negligence and contract claims against PricewaterhouseCoopers LLP ("PwC") based on PwC's 2007 and 2008 year-end audits. Over the course of a four-week bench trial on CBG's 2008 claims, the parties fully litigated PwC's affirmative defenses against CBG. In detailed factual findings and conclusions of law, this Court held that CBG's misconduct barred its claims against PwC on several grounds. *See* Order on the Liability Phase of the PwC Bench Trial, ECF No. 798, at 53-57, 62-91 (Dec. 28, 2017) ("Liability Order").

The Court's various rulings not only cover CBG's claims related to PwC's 2008 audit—the Court's findings fully resolve CBG's remaining claims regarding PwC's 2007 audit. For at least three independent reasons, the Court should not hold a separate jury trial on CBG's 2007 claims.

First, the Court's ruling that CBG stands *in pari delicto* with PwC, and therefore cannot sue for damages, applies equally to *all* of CBG's claims. Equitable defenses like *in pari delicto* are decided—as to both the facts and the law—by a court, not a jury. The factual findings supporting the Court's *in pari delicto* ruling date back to 2002 and, thus, conclusively bar CBG's entire suit and obviate the need for a separate jury trial.

Second, ordinary principles of issue preclusion bar CBG from relitigating any issue the Court has already decided—even issues that could have been tried to a jury in the first instance. CBG thus has no right to relitigate the Court's findings that CBG interfered with PwC's audits and did not perform its contractual obligations. The Court's findings on those issues were also based on CBG misconduct that occurred as early as 2002 and, therefore, those findings apply equally to CBG's 2007 claims. CBG, which contractually waived any right to a jury over its 2008 claims, never objected to the Court's conducting the bench trial before any jury trial. CBG

has forfeited any claim that issue preclusion would violate its Seventh Amendment rights.

Third, even if a jury trial were otherwise available, PwC would be entitled to summary judgment on CBG's 2007 claims. Following a four-week bench trial, the parties' lengthy post-trial submissions, and the Court's detailed order, it is clear that no reasonable jury could find in CBG's favor on its 2007 claims.[1]

**BACKGROUND**

CBG asserted contract and negligence claims relating to PwC's 2007 and 2008 year-end audits, and the FDIC brought claims relating to PwC's 2002-2008 year-end audits. The engagement letters governing the 2002-2005 and 2008 audits contained enforceable jury waivers. Therefore, the Court struck CBG's and the FDIC's jury demands for the claims arising out of those audits. *See* Order Granting PwC's Mot. to Strike Pls.' Jury Demands, ECF No. 640, at 2, 9 (Feb. 7, 2017). Without objection from CBG, the Court determined that it would hold a bench trial on those claims first, before holding a jury trial on any remaining claims. *See* Order Regarding Structure of Trial, ECF No. 648, at 1-2 (Feb. 16, 2017).

The Court later bifurcated the bench trial into a liability phase and a damages phase. *See* Order Regarding Mots. *in Limine*, Objs. to Trial Exs., and Bifurcation of PwC Trial as to Damages, ECF No. 736, at 5 (Sept. 1, 2017). Accordingly, a bench trial was held from September 18 through October 13, 2017, regarding PwC's liability on CBG's claims arising out of the 2008 audit and the FDIC's claims arising out of the 2002-2005 and 2008 audits. Liability

[1] PwC is entitled to summary judgment on CBG's 2007 claims for the additional reason that CBG cannot prove damages relating to the 2007 audit. That issue has been fully briefed and is ripe for decision. *See* PwC's Mot. for Sum. J. as to CBG's Claims, ECF No. 534 (Oct. 31, 2016); CBG's Response to PwC's Mot. for Sum. J. as to CBG's Claims, ECF No. 559 (Nov. 29, 2016); PwC's Reply in Supp. of Its Mot. for Sum. J. as to CBG's Claims, ECF No. 595 (Dec. 13, 2016); *see also* Order Regarding Pending Motions, ECF No. 641, at 2 (Feb. 9, 2017) (deferring consideration of this issue).

Order at 4, 6 n.2. Following that trial, the Court ruled against CBG on its 2008 claims on multiple grounds.

**In pari delicto *and the* Hinkle *rule.*** The Court held that PwC's affirmative defenses of *in pari delicto* and the *Hinkle* rule barred CBG's 2008 negligence claim. *Id.* at 63-79, 91. As the Court recognized, CBG did "not dispute that if Ms. Kissick's and Ms. Kelly's fraudulent conduct [were] imputed to CBG, then CBG would be equally complicit in the fraud and barred from recovering damages from PwC" under "both *in pari delicto* and the *Hinkle* rule." *Id.* at 64. Consequently, "the only question" the Court needed to address for those defenses was "whether Ms. Kissick's and Ms. Kelly's conduct [could] be imputed to Colonial and, by extension, to CBG." *Id.*

As to imputation, the Court first determined that Ms. Kissick's and Ms. Kelly's conduct was attributable to Colonial Bank because they did not "wholly abandon[] Colonial's interests" when they participated in the fraud. *Id.* at 67, 71. "[N]either Ms. Kissick nor Ms. Kelly participated in the fraud with the intent to harm Colonial." *Id.* at 71. On the contrary, they "initially participated in the sweeping [in 2002-2003] in an attempt to help Colonial's largest customer, and later developed the COLB Plan B and AOT Plan B in the hope that TBW would be able to recover and repay Colonial." *Id.*

Next, the Court determined that Ms. Kissick's and Ms. Kelly's conduct was imputed to CBG for two independently sufficient reasons. The Court found that all of Colonial's activities could be imputed to CBG because "CBG exercised sufficient control over Colonial to deem the bank an alter ego of CBG." *Id.* at 78. Alternatively, the court found that Ms. Kissick and Ms. Kelly "were CBG's agents" because "CBG officers directed Ms. Kissick in the performance of her job" and "Ms. Kelly was a sub-agent of Ms. Kissick." *Id.* at 78-79.

***Contributory negligence.*** The Court held that CBG's 2008 negligence claim was also barred by PwC's affirmative defense of contributory negligence, as limited by the audit interference rule. *Id.* at 79-91. The Court determined that the test for audit interference was not "whether PwC could have done additional audit work to discover the TBW fraud," but rather "whether CBG's negligence 'contributed to [PwC's] failure to perform [its] contract and to report the truth.'" *Id.* at 90.

Applying that test, the Court found numerous instances of "negligent and wrongful conduct" by CBG that "contributed to PwC's failure" to uncover the fraud. *Id.* at 90-91. For one thing, "[n]umerous MWLD [*i.e.*, Mortgage Warehouse Lending Division] employees knew about the [fraudulent] sweeping in 2002 and 2003" but did not tell PwC, which "affected PwC's audit procedures in every audit going forward." *Id.* at 81-84, 89. MWLD employees were also "instructed not to volunteer any information to PwC's auditors," including in emails sent in 2005 and 2007. *Id.* at 88. Moreover, "[b]oth [CBG's Treasurer] Mr. Hosein and [CBG's Assistant Treasurer] Ms. Bathen knew in 2007-2009 that serious anomalies existed with respect to TBW-related transactions" but did not tell PwC. *Id.* at 90. For example, in 2007, "Mr. Hosein used the AOT Facility to 'hide' aged mortgages" from regulators, and Ms. Bathen was "stymied" from obtaining AOT loan-level data by Ms. Kissick, who told her "let's not dig too much." *Id.* at 87. All of this misconduct by CBG contributed to PwC's failure to detect the TBW fraud and therefore constituted audit interference. *Id.* at 90-91.

***CBG's failure to perform its contractual obligations.*** Finally, the Court held that CBG's 2008 contract claim failed because CBG could not establish that it had "performed its own obligations under the Engagement Letters." *Id.* at 56. The undisputed evidence of CBG's negligence and wrongdoing meant (among other things) that CBG had failed to notify PwC of

any known, suspected, or alleged fraud and of any deficiencies in the design or operation of CBG's internal controls. *Id.* at 54, 56-57.

After issuing its Liability Order, the Court held a status conference on January 22, 2018. At that conference, CBG asked the Court to schedule a jury trial on CBG's claims arising out of the 2007 audit. PwC, however, explained that the Court's findings and conclusions should also defeat CBG's 2007 claims, making a jury trial an unnecessary waste of judicial resources. The Court ordered PwC to file a motion addressing "the applicability of the Court's rulings . . . to CBG's 2007 claim." Order on Briefing Schedule, ECF No. 801, at 1 (Jan. 26, 2018).

## ARGUMENT

### I. The Court's ruling that CBG was *in pari delicto* is a complete bar to all of CBG's claims.

As discussed above, the Court has already determined that CBG's negligence claim arising out of the 2008 audit is barred by *in pari delicto*. Liability Order at 79. The Court's ruling on *in pari delicto* applies with equal force to CBG's negligence and contract claims arising out of the 2007 audit.

The Court upheld PwC's *in pari delicto* defense based on Ms. Kissick's and Ms. Kelly's conduct going as far back as 2002. *See id.* at 67-71 (discussing Ms. Kissick's and Ms. Kelly's conduct and motives "from the time the fraud began in 2002" until it was discovered in 2009). Moreover, the Court has previously held, consistent with Alabama law, that *in pari delicto* "applies to both contract and tort actions." Order Granting in Part CBG's Mot. for Partial Sum. J. on Defs.' Aff. Defenses, ECF No. 747, at 17 (Sept. 12, 2017); *see also Robinson v. Boohaker, Schillaci & Co.*, 767 So. 2d 1092, 1095 (Ala. 2000) ("A court will not interfere where the parties [to a contract] are *in pari delicto*, or in equal or mutual fault, but will leave them where they have placed themselves."). *In pari delicto* is therefore a complete bar to CBG's 2007 claims.

The Seventh Amendment poses no obstacle to this Court's entering judgment on all of CBG's claims. The right to a jury trial *only* covers claims and defenses that are "legal" rather than "equitable." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42 (1989). The Constitution grants plaintiffs "no right to a jury trial on questions of fact related" to an "equitable defense." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1347 (11th Cir. 2017) (holding that plaintiff had no Seventh Amendment right to a jury trial on equitable defense that plaintiff's claim was subject to an arbitration agreement); *see also Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature."); *Smith v. World Ins. Co.*, 38 F.3d 1456, 1462 (8th Cir. 1994) ("[T]he determination of equitable defenses . . . is a matter for the court to decide, not the jury."); *Ford v. Citizens & S. Nat'l Bank, Cartersville*, 928 F.2d 1118, 1121-22 (11th Cir. 1991).

As CBG has admitted (and this Court has held), *in pari delicto* is an equitable defense. *See* CBG's Mot. for Partial Sum. J. on Defs.' Aff. Defenses, ECF No. 524, at 26 (Oct. 31, 2016); Order Granting in Part FDIC's Mot. for Partial Sum. J. on Defs.' Aff. Defenses, ECF No. 720, at 8 (Aug. 18, 2017); *see also, e.g.*, *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006) (citing Black's Law Dictionary 794 (7th ed. 1999)); Tilley's Alabama Equity § 2.2, *Equitable doctrine of in pari delicto*. CBG thus has no right to a jury trial on PwC's defense of *in pari delicto*, regardless of audit year. *Burch*, 861 F.3d at 1347.[2]

---

[2] The subsidiary question of whether Colonial Bank was an alter ego of CBG is also an equitable matter for the Court. *See, e.g.*, *Hill v. Fairfield Nursing & Rehab. Ctr., LLC*, 134 So. 3d 396, 411 & n.12 (Ala. 2013) (explaining that whether two entities are alter egos is not "a matter for determination by a jury" but rather "a matter of equity, properly decided by a judge").

Even if the Court were to hold a jury trial on CBG's 2007 claims, it would not submit the equitable defense of *in pari delicto* to the jury for ultimate resolution. As the Court observed at the recent status hearing:

> [I]f it is correct -- and I think it very well may be, but I'm cautious about saying anything that, without briefing -- but if [*in pari delicto*] is an equitable defense and it's going to go to the Court anyway regardless of whether there's a jury trial, I've already ruled on it. I mean, the facts aren't going to change from 2007 to 2008 as between CBG and Colonial and those things.
>
> If it's an equitable defense, then -- and if I've already ruled on it -- that would make a huge difference as to whether we have a jury trial; right?

Ex. A, 1/22/18 Hr'g Tr. 26:9-19. The Court's observation was correct. Because *in pari delicto* is a matter for the Court, and because the Court has already decided it in PwC's favor, there is no need for a jury trial on CBG's 2007 claims.

## II. Issue preclusion bars CBG from relitigating any issue already decided by the Court, including CBG's contributory negligence and contract nonperformance.

The Court, alternatively, should dispose of CBG's 2007 claims on the separate ground of issue preclusion. Issue preclusion bars CBG from relitigating before a jury *any* issue that the Court has already decided—even those that, unlike *in pari delicto*, could have been tried to a jury in the first instance. That includes PwC's contributory negligence defense and CBG's nonperformance of its contractual obligations.

"By precluding parties from contesting matters that they have had a full and fair opportunity to litigate," issue preclusion "protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (internal quotation marks and brackets omitted). Issue preclusion is often applied to prevent a party from relitigating issues that were resolved by the judgment in a *prior*

action. But issue preclusion can also apply, as it does here, "within the context of a *single* case or cause of action." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1180 n.6 (11th Cir. 2013) (emphasis added). In either setting, "the analysis remains the same": the court asks whether the same issue was actually litigated and necessarily decided in the earlier proceeding and whether the party against whom preclusion is being asserted had a full and fair opportunity to litigate the issue. *Id.*; *see also* 18 Fed. Prac. & Proc. § 4418 (when a court decides "part of a single claim on the merits, but . . . leave[s] the way open for further action on the balance of the claim," "[c]ommon issues that have been resolved in the first disposition are precluded in reaching the second disposition").

In light of those principles, CBG is precluded from relitigating, in connection with the 2007 claims, any issue the Court has already resolved against it in connection with the 2008 claims, including whether CBG interfered with PwC's audits and failed to perform its contractual obligations. The Court's rulings on those issues did not hinge on CBG misconduct during the 2008 audit year alone. To the contrary, the Court based its rulings on, among other things, CBG employees' failure to tell PwC about the fraudulent sweeping in 2002 and 2003; a corporate culture that discouraged CBG employees over the years from cooperating openly and honestly with PwC; Mr. Hosein's use of the AOT facility to hide aged mortgages from regulators in 2007; and Ms. Bathen's failure to tell PwC in 2007 that Ms. Kissick was refusing to provide AOT loan-level data and that she had advised Ms. Bathen to "not dig too much." Liability Order at 81-84, 87-88. There can be no question that CBG had a full and fair opportunity to litigate those issues over the course of the four-week bench trial. And resolution of those issues was "a necessary part of the [Court's] determination" that CBG could not prevail on its claims arising out of the 2008 audit. *Baloco*, 767 F.3d at 1251.

Giving preclusive effect to the Court's rulings in the Liability Order would not infringe CBG's Seventh Amendment rights. First, CBG forfeited any argument that *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), required the Court to hold a jury trial first by failing to object when the Court made its scheduling decision. Although CBG initially suggested that the jury trial be held first to promote "judicial economy," CBG never argued that the Seventh Amendment required a different order. Notice of BancGroup's Position on Bifurcation of Trial and Resetting of Trial Date, ECF No. 645, at 3 (Feb. 14, 2017). CBG's counsel all along emphasized CBG's "high degree of flexibility" and represented that "what makes it most expeditious and advances the issue for the Court is what we want to do." Ex. B, 12/21/16 Hr'g Tr. 37:23-38:2, 42:22; *see also id.* at 39:2-4 (offering to do "what works for the Court"). CBG did not object—on Seventh Amendment grounds or otherwise—either when the Court announced orally that the bench trial would go first, *see* Ex. C, 2/15/17 Hr'g Tr. at 4:14-15, 22:2-3, or when the Court entered its written order confirming that plan, *see* Order Regarding Structure of Trial, ECF No. 648 (Feb. 16, 2017). A party, like CBG, that fails to object to a bench trial being held before a jury trial has no right to complain when the findings from the bench trial are given preclusive effect. *See Dranchak v. Akzo Nobel Inc.*, 88 F.3d 457, 462 (7th Cir. 1996) (party who did "not ask the [district] judge to withhold decision" on a claim tried to the court until after a related claim could be decided by a jury forfeited the right to object to the judge's findings being given preclusive effect).

Second, CBG would have no ground for complaint even if it had objected to the Court's choice of schedule. *Beacon Theatres* only established a "general prudential rule" that when legal claims and equitable claims are joined in a single action, the legal claims should ordinarily be tried to a jury before the equitable claims are tried to the court. *Parklane Hosiery Co. v. Shore*,

439 U.S. 322, 334 (1979) (discussing *Beacon Theatres*, 359 U.S. at 510). That prudential rule does not apply when a case is split between a bench trial and a jury trial because of "a contractual [jury] waiver" that applies to some, but not all, of the plaintiff's claims. *Okura & Co. (Am.) v. Careau Grp.*, 783 F. Supp. 482, 491 n.3 (C.D. Cal. 1991); *see also Wechsler v. Hunt Health Sys., Ltd.*, 285 F. Supp. 2d 343, 349 (S.D.N.Y. 2003) (*Beacon Theatres* did not apply where "jury and non-jury phases" were "split according to a jury waiver provision"). Where a party has agreed that certain claims should be decided by a court, the Seventh Amendment does not entitle that party to join those claims with others and insist that the common issues be tried first to a jury, thereby depriving the opposing party of "the benefit of its bargain." *Okura*, 783 F. Supp. at 491 n.3. In such circumstances, the order of trial rests with the sound discretion of the district court.

The parties have fully litigated CBG's interference with PwC's audits and CBG's failure to live up to its contractual obligations, based on conduct beginning in 2002-2003. There is no reason to conduct a separate jury trial where ordinary principles of issue preclusion bar CBG's 2007 claims.

## III. The Court's order shows that no reasonable jury could find for CBG on the 2007 claims.

PwC is also entitled to summary judgment on CBG's 2007 claims because the undisputed facts establish that CBG's misconduct interfered with PwC's 2007 audit and that CBG failed to live up to its contractual obligations. Indeed, the evidence presented at the bench trial and recounted in the Court's order demonstrates that no reasonable jury could find in CBG's favor. *See* Fed. R. Civ. P. 56(a); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.").

First, as the Court's order describes in detail, CBG improperly interfered with PwC's audits in a number of ways, including: (i) by failing to tell PwC about the fraudulent sweeping that occurred in 2002-2003 and which CBG had a duty to disclose to PwC "in each successive audit," including 2007; (ii) by adopting so-called "auditor rules" (which were in place in 2007) that explicitly "discouraged [CBG employees] from cooperating openly and honestly with PwC"; (iii) by failing to tell PwC that the AOT facility was being used to "hide" aged mortgages from regulators in 2007; and (iv) by failing to tell PwC that Ms. Kissick was refusing to provide AOT loan-level data in 2007 while instructing Ms. Bathen to "not dig too much." Liability Order at 87-89.

This misconduct is established by testimony and written evidence that is uncontroverted. Indeed, the Court found that "there is *no question* that multiple MWLD employees actively hid the fraud from PwC." *Id.* at 88 (emphasis added). In its proposed findings and conclusions, CBG did not deny that this misconduct occurred or that it contributed to PwC's failure to detect the TBW fraud. Instead, CBG made a legal argument: that an audit client's "failure . . . to volunteer information" can never "amount to audit interference" because it does not "impede [the auditor's] ability to design and perform its audits" or prevent the auditor from "ask[ing] the right questions." *Id.* at 90, 99; *see* CBG's Proposed Findings of Fact and Conclusions of Law, ECF No. 784, at 81-84, 98-101 (Oct. 21, 2017) ("CBG's Proposed Findings and Conclusions").

The Court, however, held that CBG's argument "misconstrue[d] the audit interference standard." Liability Order at 90. As the Court explained: "The test is not whether PwC could have done additional audit work to discover the TBW fraud," but whether "CBG's negligent and wrongful conduct contributed to PwC's failure to report the truth," which it plainly did. *Id.* at 90-91. No reasonable jury, presented with the undisputed evidence of CBG's misconduct and

instructed on the legal standard as determined by the Court, could fail to find that CBG interfered with PwC's 2007 audit. PwC is therefore entitled to summary judgment on CBG's 2007 negligence claim.

Second, the same undisputed evidence makes clear that CBG did not perform its contractual obligations under the 2007 engagement letter. *See id.* at 54, 56-57. Like the other engagement letters, the 2007 letter required CBG to inform PwC of any known, alleged, or suspected fraud and of any deficiencies in CBG's internal controls. *See* Ex. D, 2007 Engagement Letter (Trial Ex. A-6) at 3-4; *see also* Ex. E, Trial Tr. 2161:1-2163:5 (Beville) (agreeing that all of the engagement letters were "essentially the same" with respect to these points and that if officers of CBG "were aware of possible or suspected fraud," they "should have told PwC"). Just as CBG has never seriously denied that the misconduct described above occurred, it also has not denied that such misconduct violated its contractual obligations to notify PwC concerning possible fraud and deficiencies in internal controls. Indeed, Lewis Beville, CBG's former president and CEO, directly admitted during the liability phase that CBG's management "did not meet its responsibility" to identify and control the risk of fraud at the bank, as CBG was required to do under the 2007 engagement letter. Ex. E, Trial Tr. 2191:3-8. CBG's proposed findings and conclusions did not so much as mention those obligations, much less assert that CBG had fulfilled them. *See* CBG's Proposed Findings and Conclusions at 144-46. Because no reasonable jury could find that CBG performed its obligations under the 2007 engagement letter, PwC is entitled to summary judgment on CBG's 2007 contract claim.

## CONCLUSION

The Court should hold that its ruling on *in pari delicto*, an equitable defense on which CBG has no right to a jury trial, is dispositive with respect to CBG's claims arising out of the 2007 audit. In the alternative, the Court should hold that CBG's 2007 claims fail because issue preclusion bars CBG from relitigating matters that the Court has already resolved against it. In the further alternative, the Court should hold that PwC is entitled to summary judgment on CBG's 2007 claims because no reasonable jury could dispute the Court's findings that CBG did not perform its contractual obligations and interfered with PwC's audits.

Respectfully submitted this 9th day of February, 2018.

_/s/ Mark L. Levine_

Philip S. Beck
(Illinois Bar No. 147168) *pro hac vice*
Mark L. Levine
(Illinois Bar No. 6201501) *pro hac vice*
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
Courthouse Place, Suite 300
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4400
Email: philip.beck@bartlit-beck.com
mark.levine@bartlit-beck.com

-and-

Meredith Moss
(Washington, DC Bar No. 484108) *pro hac vice*
Paul Alessio Mezzina
(Washington, DC Bar No. 999325) *pro hac vice*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone: (202) 626-2916
Email: mmoss@kslaw.com
pmezzina@kslaw.com

-and-

Tabor Robert Novak, Jr.
(Alabama Bar No. ASB-9503-V72T)
**BALL BALL MATTHEWS & NOVAK PA**
P.O. Box 2148
Montgomery, AL 36102-2148
Telephone: (334) 387-7680
Email: tnovak@ball-ball.com

**ATTORNEYS FOR DEFENDANT PRICEWATERHOUSECOOPERS LLP**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2018, a true and exact copy of the foregoing was electronically served by transmission of Notice of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing.

/s/ *Mark L. Levine*
Mark L. Levine