IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>Defendants. | CASE NO. 2:11-cv-746-BJR |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP<br><br>Defendants. | CASE NO. 2:12-cv-957-BJR |

---

**ORDER DENYING DEFENDANT CROWE'S SECOND MOTION FOR SUMMARY JUDGMENT ON THE FDIC'S CLAIMS**

---

## I. INTRODUCTION

Before the Court is Defendant Crowe Horwath LLP's ("Crowe") Second Motion for Summary Judgment on the FDIC's Claims. Dkt. No. 537.[1] Plaintiff the Federal Deposit Insurance Corporation ("FDIC") opposes the motion. Dkt. No. 567. Having reviewed motion, the opposition thereto, the record of the case, and the relevant legal authorities, the Court will deny the motion. The reasoning for the Court's decision is set forth below.

## II. BACKGROUND

The factual background of this case has been set forth many times by this Court and will not be repeated in detail here. For purposes of this motion, it is sufficient to say that this case arises out of a massive bank fraud centered in Colonial Bank ("Colonial") that lasted many years and caused billions of dollars in damages before it was finally discovered. Colonial was the wholly owned subsidiary of Plaintiff Colonial BancGroup, Inc. ("CBG"). CBG retained Crowe to act as its internal auditor, which Crowe did throughout the years that Colonial was victimized by the fraud. The terms of the agreement between CBG and Crowe were set forth in substantially identical engagement letters executed annually by them. *See, e.g.*, Dkt. No. 223, Ex. 1. Among other provisions, the engagement letters contained a "no-reliance" provision that provided that the agreement was between Crowe and CBG "only" and that no other party was entitled to rely on the services that Crowe provided pursuant to the agreement. *Id*. at 1.

The fraud was eventually discovered by federal authorities and the Alabama State Banking Authority closed Colonial and appointed the FDIC as the Receiver for Colonial. The

---

[1] Crowe also filed a "Motion to Rule that the FDIC Is Bound by the Engagement Letters' Terms and to Strike the FDIC's Jury Demand." Dkt. No. 479. Per a Minute Entry dated February 17, 2017 [Dkt. No. 650], the motion was stricken from the record with the understanding that this Court would consider the pleadings associated with the "Motion to Rule" when resolving the instant summary judgment motion. Thus, the Court has reviewed Dkt. Nos. 479, 541, and 544 in addition to the pleadings related to the instant motion.

FDIC brings claims against Crowe for professional negligence, negligence misrepresentation, and gross negligence for failing to discover the fraud through its audit work. Crowe previously sought summary judgment on the FDIC's claims, arguing that the claims are barred by the no-reliance provisions in the engagement letters. In an order dated September 9, 2016, this Court determined that the no-reliance provisions clearly and unambiguously prohibited Colonial from relying on Crowe's audit work. Dkt. No. 453 at 6. Nevertheless, this Court determined that a material dispute of fact existed as to whether Crowe, through its actions, voluntarily waived the no-reliance provisions and, therefore, the Court denied Crowe's motion for summary judgment. *Id*. at 9.

With the instant motion, Crowe argues that the FDIC's damages are barred by a "no-consequential damages" provision in the engagement letter. Crowe contends that if the FDIC is permitted to rely on the work it performed pursuant to the engagement letters, then the FDIC must also be bound by the terms of the engagement letters, specifically the no-consequential damages clause. Crowe claims that the FDIC seeks to recover only consequential damages; therefore Crowe argues, it is entitled to summary judgment on all of the FDIC's claims.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence shows that "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Lamar v. Wells Fargo Bank*, 597 Fed. Appx. 555, 556 (11th Cir. 2014) (quoting *Alvarez v. Poyal Atlantic Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)). Crowe, as the moving party, "bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. V. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## IV. DISCUSSION

At stated above, Crowe argues that it is entitled to summary judgment on the FDIC's claims as a matter of law. Crowe contends that if the FDIC is permitted to rely on its audit work despite the engagement letters' no-reliance provision, then the FDIC must also be bound by all of the terms set forth in the engagement letters.[2] Specifically, Crowe points out that the engagement letters contain a provision that bars recovery of "any" consequential damages. *See* Dkt. No. 223, Ex. 1, Engagement Terms at 2. According to Crowe, the FDIC's damages are barred by this provision because: (1) all of the FDIC's alleged damages are based on transactions that Colonial—a third party to the engagement letters—had with other entities, "which makes [the damages] consequential [] as a matter of law", and (2) it was not foreseeable at the time that CBG and Crowe entered into the engagement letters that Crowe would be responsible for Colonial's damages because the engagement letters prohibited third parties such as Colonial from relying on Crowe's work. Dkt. No. 537 at 4.

Crowe's argument is dependent on this Court holding that the FDIC is bound by the terms of the engagement letters. Crowe argues that if the FDIC relied on Crowe's audit work, particularly its audit reports that specifically stated that the reports were "prepared by Crowe [] in accordance with the terms of our engagement letter," then the FDIC also agreed to be bound by the terms of the engagement letters, which bar consequential damages.

Crowe's argument would have merit if the FDIC was suing Crowe for breach of contract, but it is not. The FDIC's claims are based in tort. Indeed, it is precisely because the FDIC is not a party to the contract, neither as a signatory nor as a third-party beneficiary, that the FDIC must bring tort claims against Crowe. That Crowe may have voluntarily waived its right to block the

[2] For purposes of this motion, the parties and the Court are assuming that the facts will bear out waiver of the no-reliance provision by Crowe.

FDIC's tort claims through Crowe's own affirmative conduct does not mean that the FDIC becomes a party to the engagement letters. It simply means that Crowe may not prevent the FDIC from seeking recovery against Crowe through tort for any damage Colonial suffered because it relied on Crowe's audit work. Therefore, the terms of the engagement letter—specifically the no consequential damages provision—do not apply to the FDIC's tort claims.

Nevertheless, Crowe argues that a no-reliance provision in a contract can bar the negligence claims of a non-signatory of the contract, citing to *Zanaty Realty, Inc. v. Williams*, 935 So. 2d 1163 (Ala. 2005). Crowe's reliance on *Zanaty* is misplaced. The plaintiff in that case purchased a home without inspecting it prior to closing and, after moving into the house, discovered significant problems with it. *Id*. at 1166. Plaintiff instituted an action against several entities associated with the home purchase, including the agency that performed a home appraisal before the sale for the bank financing plaintiff's mortgage. Plaintiff argued that the agency negligently appraised the home. A jury returned a verdict in favor of plaintiff against the appraiser. The appraiser appealed, arguing that it was entitled to a judgement as a matter of law because the appraisal report specifically stated that only the financing bank was entitled to rely on the report. Therefore, the appraiser argued, because plaintiff was not within the "limited group of third parties for whose benefit and guidance" the appraisal was supplied, the appraiser owed no duty to plaintiff. *Id*. at 1168. The Alabama Supreme Court agreed and held that the no reliance provision in the appraisal report barred plaintiff's negligence claim.

However, there is an important distinction between *Zanaty* and the instant case. Unlike the instant case where this Court has already held that a question of fact exists as to whether Crowe *voluntarily waived* its no-reliance provision, there was no allegation in *Zanaty* that the appraiser waived its no-reliance provision. Indeed, the plaintiff in *Zanaty* "never read or saw a

copy of [] [the] appraisal or appraisal summary," therefore, the *Zanaty* court concluded, it was not foreseeable that the plaintiff would rely on the appraisal to ensure the condition of the home. *Id*. at 1166, 1168. Thus, *Zanaty* is inapplicable to the case at hand.

Next Crowe argues that contract terms can be foisted onto a non-signatory to a contract through the non-signatory's actions, and that the FDIC accepted the terms of the engagement letter when it chose to rely on Crowe's work. However, the cases Crowe relies on for this proposition are distinguishable due to one salient fact—unlike the FDIC, the plaintiffs in each of the cases cited by Crowe were suing for breach of contract. *See*, *e.g.*, *Southern Energy Homes, Inc. v. Ard*, 772 So.2d 1131 (Ala. 2000) (holding that an arbitration clause in an express warranty could be enforced against a plaintiff bringing claim for a breach of the express warranty); *Rush v. Atomic Elec. Co*., 384 So.2d 1067 (Ala. 1980) (holding that a non-signatory is bound by the terms of a contract when it accepted the benefits of the contract and sued for breach of the contract); *Ex parte Rush*, 730 So. 2d 1175, 1178 (Ala. 1999) (holding that non-signatory parties were bound by the contract because they, among other things, "made a claim under, and substantially benefited from, the contract"); *Ex parte Dyess*, 709 So. 2d 447, 450-51 (Ala. 1997) (rejecting non-signatory's attempt to avoid mandatory arbitration clause in an insurance policy because he was an intended third-party beneficiary who sought "to benefit from the policy"); *Saia Food Distribs. v. SecurityLink*, 902 So .2d 46, 49 n.5 (Ala. 2004) (court rejected plaintiffs' attempt to avoid a limitation of liability clause while also asserting breach of contract and tort claims against defendant who claimed it was a non-party to the contract).

Likewise, *TSG Water Resources, Inc. v. D'Alba & Donovan Certified Public Accountants, P.C.* is also distinguishable. 260 Fed. Appx. 191 (11th Cir. 2007) (applying Georgia law). *TGS Water* involved breach of contract and tort claims brought by a corporation

and the corporation's investors against the accountant that audited the corporation, as well the corporation's former CEO. The accountant and the corporation had a service agreement ("engagement letter") between them; the investors were not parties to the engagement letter. The engagement letter contained an exculpatory clause that limited damages to direct damages unless the injury resulted from willful or fraudulent conduct. *See* Dkt. No. 567, Ex. 78 at 28.

The accountant moved for summary judgment against both the corporation and the investors. The district court granted summary judgment as a matter of law in favor of the accountant on all of the investors' claims. *Id*. at 23-27, 34. With respect to the investors' breach of fiduciary duty claim, the court held that the accountant owed the investors no duty because the investors were "all third parties to the [engagement letters] between [the corporation] and the [accountant], and [the accountant] had no relationship with them, professional or otherwise." *Id*. at 24. The court granted summary judgment on the investors' professional negligence claim because the investors "did not justifiably rely, if they relied at all, on [the accountant's] audit report." *Id*. at 26. The court granted summary judgment on the ordinary/gross negligence claims because the investors could not demonstrate a causal connection between their injuries and the accountant's conduct. *Id*. Lastly, the court determined that investors were not intended third-party beneficiaries to the engagement letters, thus their breach of contract claims failed as a matter of law. *Id*. at 29. Important here, the district court's ruling was not based on the exculpatory clause in the engagement letters.

After the summary judgment ruling, the only claims that survived for trial were the corporation's professional negligence, ordinary/gross negligence, and breach of contract claims. *Id*. at 34. The matter proceeded to trial and the jury reached a verdict in favor of the corporation. *TSG Water*, 260 Fed. Appx. at 194-95. The accountant moved for judgment as a matter of law

and the district court found that the exculpatory language contained in the engagement letter was valid and barred the corporation's remaining claims. *Id*. at 195. The district court entered judgment in favor of the accountant and the corporation appealed, arguing that the district court erred in determining that the exculpatory clause barred its claims. *Id*. Reviewing the matter *de novo*, the Eleventh Circuit affirmed the district court's ruling that the exculpatory clause barred the corporation's claims.

This Court does not find the *TSG Water* decision to be persuasive authority. Although the language of the Eleventh Circuit decision seems inclusive of the investors' claims, reviewing the lower court's prior summary judgment ruling as set forth above makes it clear that the investors' tort and contract claims had been dismissed before the matter went to trial. *See* Dkt. No. 567, Ex. 78 at 23-27, 34 (granting summary judgment in favor of accountant on the investors' breach of fiduciary duty, professional negligence, ordinary/gross negligence, negligent retention/supervision, and contract claims as a matter of law). Thus, when the accountant moved for judgment as a matter of law after trial, it only moved as to the *corporation's* claims, and when the district court determined that the exculpatory language barred the professional negligence, ordinary/gross negligence, and breach of contract claims, it only made the determination with respect to the *corporation's* claims. Therefore, on appeal, with respect to the exculpatory clause, the Eleventh Circuit only addressed the exculpatory clause with respect to the corporation's—*i.e.*, a signatory to the engagement letter that contained the exculpatory clause—claims. *Id*. The sole issue was whether the exculpatory clause violated public policy. The Eleventh Circuit found it did not and unsurprisingly went on to dismiss the corporation's claims. As might be expected, the Court determined that the corporation was bound by the terms

of the contract it signed, an inevitable result given that the corporation was a party to the contract.

Thus, the Eleventh Circuit did not address the relevant issue to this motion, namely, whether the terms of a contract can impact the tort claims of a non-signatory to the contract. The only issue before the Eleventh Circuit with respect to the exculpatory clause was whether it was unenforceable under Georgia law because it violated public policy. *Id*. at 204. The Eleventh Circuit determined the exculpatory clause did not violate public policy and consequentially determined the corporation's claims were barred. There was no discussion whatsoever of what impact an exculpatory clause has, if any, on the tort claims of a non-party to the contract.

Lastly, Crowe relies on an unpublished decision from the Superior Court of Massachusetts that applied a limitation-of-liability provision to the president and sole shareholder of a corporation even though he did not personally sign the corporation's engagement letters with an auditor. Dkt. No. 479 at 4 (*citing Rohtstein Corp. v. KPMG, LLP*, 2007 WL 4416840, at *1 (Mass. Super. Dec. 10, 2007)). Simply put, this Court is not persuaded by this non-binding authority. The *Rohtstein* court suggests that because "the engagement letters, and the services provided by [defendant] to the [plaintiff corporation] under them, form the basis of [the non-signatory plaintiff's] claim," the non-signatory plaintiff's claim "is subject to the terms of the contract, including the limitation of liability clauses." *Id*. at *3. However, the court reached this decision because the plaintiffs' claims were based solely on the engagement letters, noting that "[n]othing in the complaint, or in anything else before the Court, identifies anything other than the contracts between [defendant] and [plaintiff corporation] that would give rise to a duty on the part of [defendant] to [the non-signatory plaintiff]. *Id*.

That is not the case here where the FDIC clearly has its own, *non-contractual*, causes of action against Crowe. Here, the FDIC brings claims pursuant to the Restatement (Second) of *Torts* § 552 (1977), which creates a duty on the part of Crowe that is independent of its engagement letters with CBG.[3] Accordingly, unlike *Rohtstein*, this is not a case where the FDIC is using the contract between CBG and Crowe as both a sword and a shield—bringing suit under the contract while avoiding the contract's provisions. The FDIC is seeking to vindicate its own, non-contractual rights against Crowe based on Crowe's professional duties under the Restatement. Therefore, the FDIC is not bound by the terms of the engagement letters between CBG and Crowe and the no-consequential damages provision is inapplicable to the FDIC's claims based in tort.

---

[3] Alabama has adopted the rule of the Restatement (Second) of Torts § 552 (1977), which provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> > (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> >
> > (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
>
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Boykin v. Arthur Andersen & Co.*, 639 So.2d 504 (Ala. 1994) *overruled on other grounds by Altrust Fin. Servs, Inc. v. Adams*, 76 So. 3d 228 (Ala. 2011).

## V. CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES Crowe's Second Motion for Summary Judgment on the FDIC's Claims [Dkt. No. 537].[4]

Dated this 27th day of March, 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge

[4] The remaining issues raised by Crowe in the motion have been resolved by prior orders. *See* Dkt. Nos. 615 and 677