IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP INC., and KEVIN O'HALLORAN<br><br>Plaintiff,<br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>Defendants. | ORDER DENYING MOTION TO INTERVENE<br><br>CASE NO. 2:11-cv-746-BJR |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP<br><br>Defendants. | CASE NO. 2:12-cv-957-BJR |

## I. INTRODUCTION

On February 12, 2018, MILFAM LLC, Alimco Financial Corporation, Broadbill Partners II LP, Black Rhino LP, TAR Holdings LLC, and JDSI LLC (collectively the "Movants") filed a motion to intervene in this litigation. Dkt. No. 806. Movants sought leave to intervene as of right pursuant to Rule 24(a) of the Federal Rules of Civil

Procedure or, alternatively, by permissive intervention pursuant to Rule 24(b). Plaintiff The Colonial BancGroup, Inc. and Kevin O'Halloran, as Plan Trustee for The Colonial BancGroup, Inc. (collectively, "CBC") and Defendants PricewaterhouseCoopers LLP ("PWC") and Crowe Horwath LLP ("Crowe") opposed the motion. Dkt. Nos. 814, 816, 818. On March 19, 2018, this Court denied the motion from the bench. *See* Minute Entry dated March 19, 2018. The following sets forth the reasons for the Court's decision.

## II. BACKGROUND

This litigation stems from a massive fraud that was conducted through Colonial Bank ("Colonial") from 2002 until the fraud was discovered in August of 2009. Plaintiff CBG was Colonial's parent company and Defendants PWC and Crowe acted as CBG's external and internal auditors, respectively, during the years that Colonial was victimized by the fraud. Once the fraud was uncovered, Colonial was placed into receivership with the Federal Deposit Insurance Corporation ("FDIC") and CBG entered bankruptcy less than a month later. Thereafter, in 2011 and 2012, respectively, CBG and the FDIC each filed a lawsuit against PWC and Crowe for audit malpractice.

The lawsuits were consolidated for pre-trial matters and the cases proceeded through discovery and several rounds of dispositive motions. Ultimately, a four-week bench trial on CBG's and the FDIC's claims against PWC was held in September and October 2017.[1] In an order dated December 28, 2017, this Court concluded, among other

[1] The claims against PWC and Crowe were bifurcated for trial such that a separate bench trial was scheduled for the claims against each Defendant. The trials were also bifurcated as to liability and damages. In addition, the FDIC brings claims based on the 2002-2005 and 2008 audit years, while CBG's claims are based on the 2007-2008 audit years. Through motion practice and stipulation, it was determined that the Plaintiffs' claims based on the 2007 audit year must be tried by a jury. Thus, a separate jury trial was scheduled for those claims.

determinations, that CBG's claims against PWC are barred by the imputation-based defenses of *in pari delicto*, the *Hinkle* rule, and the audit interference rule. Dkt. No. 798. As such, CBG's claims against PWC based on the 2008 audit year were dismissed.[2] However, this Court ruled in favor of the FDIC on some of its claims against PWC and the damages portion of the PWC bench trial was scheduled to begin on March 19, 2018.

As indicated above, on February 12, 2018 Movants filed the instant motion seeking leave to intervene in this litigation. Dkt. No. 806. Movants claim that they "make up the ***vast majority*** of creditors of CBG's bankruptcy estate" and, thus, any recovery by CBG against PWC and/or Crowe will eventually trickle down to them through the CBG bankruptcy estate. Dkt. No. 806 at 2, fn. 1 (emphasis in original).[3] Movants argued that up until this Court's December 28, 2017 ruling that CBG's claims against PWC are barred by the imputation-based defenses, they believed CBG was adequately representing their interests in this litigation as creditors of the CBG bankruptcy estate.

However, Movants claimed that the December 28, 2017 decision, coupled with PWC's announcement at a January 22, 2018 status conference that it intended to move to dismiss CBG's remaining claims based on the 2007 audit year as barred by the conclusions in the December 28, 2017 Order, "notified Movants, for the first time, that

---

2 As stated *supra* in footnote 1, CBG's claims based on the 2007 audit year were not part of the bench trial held in September and October 2017.

3 Creditors claim that they "consist of the majority of creditors of [CBG]" who are the holders of "(i) approximately 82.7% in face amount of the 7.875% Trust Preferred Securities issue pursuant to that certain Indenture dated as of March 26, 2003 [] between CBG and U.S. Bank N.A. as Trustee and that certain Amended and Restated Declaration of Trust dated as of March 26, 2003 between CBG and U.S. Bank N.A. and with a maturity date in 2033; and (ii) approximately 73.8% in face amount of the 8.875% subordinated notes issued pursuant to that certain Indenture dated as of March 1, 2008 [] between CBG and The Bank of New York Mellow Trust Company, N.A., as successor in interest to The Bank of New York Trust Company, N.A., as trustee, with a maturity date in 2038." Dkt. No. 806 at 2.

their interests were not being adequately protected by the current parties to this litigation." Dkt. No. 806 at 3. According to Movants, this realization was bolstered when, on February 9, 2018, CBG and Crowe filed a joint motion to dismiss without prejudice CBG's claims against Crowe.[4] The Movants argued that in light of these three events—the December 28, 2017 Order, PWC's representation at the January 22, 2018 status conference, and the joint dismissal motion filed by CBG and Crowe on February 9, 2018—"it is [now] clear that [CBG] potentially cannot, ***and now it appears will not***, protect Movants' interests." Dkt. No. 806 at 5 (emphasis in original). Therefore, the Movants sought leave to intervene in this litigation as a matter of right pursuant to Rule 24(a) to protect their rights, or alternatively, to permissively intervene pursuant to Rule 24(b).

## III. DISCUSSION

### A. Legal Standard

"Rule 24 provides two avenues for a nonparty to intervene in a lawsuit; intervention as of right and intervention with permission by the court." *In re Bayshore Ford Trucks Sale, Inc*., 471 F.3d 1233, 1246 (11th Cir. 2006). To intervene as a matter of right pursuant to Rule 24(a), a party "must show that it has an interest in the subject matter of the suit, that its ability to protect that interest may be impaired by the

[4] Per the terms of the dismissal, CBG may refiled the claims in the event this Court's December 28, 2017 decision is reversed or vacated with respect to its application of the *in pari delicto* doctrine, the *Hinkle* rule, and/or the audit interference rule. Movants originally objected to the joint dismissal motion, but have since withdrawn their objection. Dkt. Nos. 807, 828-829. This Court granted the motion to dismiss on March 12, 2018. Dkt. No. 832.

disposition of the suit, and the existing parties in the suit cannot adequately protect that interest." *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc*., 425 F.3d 1308, 1311 (11th Cir. 2005) (quoting *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002)); see also, *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc*., 272 Fed. Appx. 817, 819 (11th Cir. 2008) (citing *Davis v. Butts*, 290 F.3d 1297, 1300 (11th Cir. 2002)) (A party may intervene in an action as a matter of right under Rule 24(a) if it establishes that: (1) the application to intervene is timely; (2) the party has an interest relating to the property or transaction which is the subject of the action; (3) the party is situated so that disposition of the action, as a practical matter, may impede or impair its ability to protect that interest; and (4) the party's interest is represented inadequately by the existing parties to the suit). Even if the nonparty lacks a right to intervene under Rule 24(a), it may still be permitted to intervene in the court's discretion under Rule 24(b). *Bayshore*, 471 F.3d at 1246.

However, a motion to intervene must be timely, whether it proceeds under Rule 24(a) or Rule 24(b). *Defenders of Wildlife v. Bureau of Ocean Energy Management*, 2010 WL 5139101, *1 (S.D. Ala. December 9, 2010) (citing *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007)). "If [a motion to intervene] is untimely, intervention must be denied." *NAACP v. New York*, 413 U.S. 345, 365 (1973); *Brown ex rel. O'Neill v. Bush*, 194 Fed. Appx. 879, 882 (11th Cir. 2006) ("Under both Fed.R.Civ.P. 24(a) and 24(b), a party must show that its application to intervene was timely."). Thus, this Court's analysis must start with whether the Creditors' motion is timely and if the motion is untimely, the Court's analysis need go no further.

Whether a motion to intervene is "timely" is "determined from all [] circumstances." *NAACP*, 413 U.S. at 366. Courts in the Eleventh Circuit pay particular attention to the following four factors: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Angel Flight*, 272 Fed. Appx at 819 (citing *United States v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir. 1983)).

**B. The Creditors' Motion to Intervene Is Not Timely**

As stated above, Movants argue that they first discovered that their interests are not being adequately represented by CBG in this lawsuit when this Court issued the December 28, 2017 Order barring CBG's damages against PWC pursuant to the *in pari delicto* doctrine, the *Hinkle* Rule, and the audit interference rule. According to Movants, up until this Court's decision, they felt that their interests were sufficiently aligned with CBG's such that CBG could adequately represent their interests. However, Movants argue, they realized that their interests were not aligned with CBG's when this Court concluded that the bad acts of CBG's and Colonial's employees are imputable to CBG, thereby barring CBG's claims pursuant to the imputation-based defenses of *in pari delicto*, the *Hinkle* rule, and the audit interference rule. Movants assert that as CBG's

creditors, they had no relationship with CBG's and Colonial's employees and, as such, those employees' bad acts cannot be imputed to bar the Movants' claims.

Movants' argument makes little sense. First, it directly contradicts Movants' insistence that by intervening in this litigation they "do not seek to assert any new claims or theories of recovery." Dkt. No. 806 at 7. Yet, by arguing that their claims are distinct from CBG's, they are necessarily attempting to assert new claims and new legal theories of recovery. Second, even if they were not attempting to assert new claims on their own behalf, but somehow contend that they can get around the imputation defenses by reasserting CBG's claims, Movants are far too late in raising this argument. This is because Movants have been aware, or at a minimum should have been aware, of the possibility that this Court would impute the bad acts of CBG's and Colonial's employees to CBG and thereby dismiss CBG's claims at least *six years* ago when PWC moved to dismiss CBG's complaint based, in part, on the *in pari delicto* doctrine. *See* Dkt. No. 26. It certainly became a very real possibility that this Court might adopt the imputation-based defenses when it denied CBG's motion for summary judgment on these defenses *five months* before the Movants sought to intervene in this litigation. Finally, Movants waited *four months* after the PWC bench trial and another *six weeks* after this Court issued the December 28, 2017 Order adopting the imputation-based defenses to file the motion to intervene. Under these circumstances, the Movants' motion was not timely filed.

Moreover this Court finds that PWC and Crowe would have been unfairly prejudiced if the Movants had been allowed to intervene in the litigation. Movants'

injection in this litigation would have required discovery and motion practice to be reopened—sixteen months after the close of discovery in this case. Issues that parties would have had to address include, but are not limited to, whether Movants have standing to bring claims on behalf of CBG, including whether the claims are direct or derivative in nature, whether Movants are parties to or intended third-party beneficiaries of the engagement letters between CBG and its auditors, and whether Movants' claims are barred by the CBG's bankruptcy Plan. Moreover, injecting Movants into this litigation would have required PWC to re-litigate the claims against it after it had already successfully defeated those claims through a four-week bench trial. Likewise, Crowe would have been forced to adapt its trial strategy to accommodate the new plaintiffs. It would have been unfair and prejudicial to force PWC and Crowe to expend the time and resources on discovery and motion practice with respect to a party that sat quietly on the sidelines until it was adversely affected by a decision of the Court, particularly when the basis for the adverse decision was known six years earlier.

Conversely, Movants suffered no unfair prejudice from the denial of their motion to intervene. The CBG Plan Trustee represented and continues to represent the interests of CBG's estate, as he is required to do under the terms of CBG's Chapter 11 Liquidation

Plan. If Creditors have complaints with how the Plan Trustee is discharging his duties, those complaints should be addressed to the Bankruptcy Court, not this Court.[5]

Nor is this Court persuaded by the cases Movants cite in favor of their motion to intervene, as each is readily distinguishable from the instant litigation. For instance, Movants cite *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) in which the Fifth Circuit overturned the district court's denial of intervention. *Id*. at 266-267. The Fifth Circuit determined that the motion to intervene was timely even though it had been brought after the district court granted partial summary judgment and entered a consent order resolving the case. However, as the Fifth Circuit noted, *Stallworth* had the "unusual circumstance" of the plaintiffs in that case specifically objecting when the defendant requested permission from the district court to notify the would-be interveners of their potential interest before the district court reached summary judgment. *Id*. 260-261. The district court denied the defendant's request and the would-be interveners were not notified of their potential interest. Thereafter, the district court entered the consent decree, which almost immediately impacted the would-be interveners' jobs and they filed a motion to intervene three weeks later. *Id*. at 261. The Fifth Circuit reversed the district court's denial of the motion to intervene based, in part, on the "unusual circumstance" of the case, noting:

> [P]laintiffs' opposition to [defendant's] request that it be permitted to notify the [would be interveners] of the pendency and potential impact of this action, when coupled with the district court's endorsement of their objection, constitutes an unusual circumstance which tilts the scales toward a finding

[5] Indeed, Creditors did file a motion with the Bankruptcy Court. Dkt. No. 808, Ex. 2. The parties resolved the issue before the Bankruptcy Court reached a decision on the merits of the motion.

> that the [would be interveners'] application was timely. Since the plaintiff urged the district court to make it more difficult for the [interveners] to acquire information about the suit early on, we do not think they should now be heard to complain that the [interveners] should have known about it or appreciated its significance sooner.

*Id*. at 267. Such an "unusual circumstance" is not present in this case.

Likewise, Movants' reliance on *In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017) is misplaced. *Brewer* was before the D.C. Circuit on interlocutory appeal of this Court's decision to deny a petition for class certification because the named class representative no longer adequately represented the class. *Id*. at 866. While on appeal, the class representative settled his individual claims against the defendant and he filed a stipulated motion of dismissal. *Id*. at 867. That same day, three other members of the proposed class filed a motion to intervene in order to continue pursuing the petition for interlocutory review, which the D.C. Circuit granted. In allowing intervention, the Circuit Court noted that the interveners filed their motion on the same day that the original class representative filed his stipulation of dismissal; it further noted that the defendant did "not meaningfully oppose [the] intervention." *Id*. at 872. Neither circumstances exist here. As stated earlier, the Movants knew or should have known for at least six years that this Court might adopt PWC's imputation-based defenses, and indeed, waited six weeks after this Court did so to file the motion to intervene. Moreover, unlike the defendant in *Brewer*, here, CBG, PWC, and Crowe each vigorously oppose the Movants' proposed intervention.

Lastly, the Movants cite to *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316 (7th Cir. 1995) in which the Seventh Circuit reversed a district court's denial of a motion to

intervene filed after the plaintiff moved for default judgment against the defendant. The district court had held that the interveners should have filed their motion as soon as they learned of the legal action. The Seventh Circuit disagreed, clarifying that the interveners only needed to bring the motion when they had reason to know that their interests were not being adequately protected. The Seventh Circuit concluded that the interveners did not have reason to suspect that their interests were not being protected by the defendant (their employer) until they discovered it was not appropriately participating in the lawsuit. *Id*. at 322. Here, the Trustee has aggressively pursued the interests of bankruptcy estate for at least six years. Although the Movants were aware of the possible legal pitfalls of CBG's case, they were willing during those six years to sit on the sidelines and allow the Trustee to pursue recovery against the auditors. That the Trustee was ultimately unsuccessful as to CBG's claims against PWC does not mean the Movants can now step in and try to do better.[6]

Because this Court concludes that the Movants' motion to intervene is untimely, the motion is denied. *NAACP v. New York*, 413 U.S. at 365 ("If [a motion to intervene] is untimely, intervention must be denied.").

[6] In the Court's opinion, the Trustee diligently and zealously pursued the interests of CBG's bankruptcy estate in this case. The fact that the legal determinations went against CBG does not diminish the quality or adequacy of the Trustee's pursuit of those interests.

## IV. CONCLUSION

For the foregoing reasons, the Movants' motion to intervene [Dkt. No. 806] is HEREBY DENIED.

Dated this 4th day of June, 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge