IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **THE COLONIAL BANCGROUP, INC.** and **KEVIN O'HALLORAN**, <br><br>     Plaintiffs, <br><br> v. <br><br> **PRICEWATERHOUSECOOPERS LLP** and **CROWE HORWATH LLP**, <br><br>     Defendants. <br> _____ <br><br> **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR COLONIAL BANK**, <br><br>     Plaintiff, <br><br> v. <br><br> **PRICEWATERHOUSECOOPERS LLP** and **CROWE HORWATH LLP**, <br><br>     Defendants. | **Case No. 2:11-cv-00746-BJR** <br> **LEAD CASE** <br><br><br><br><br><br><br><br> **Case No. 2:12-cv-00957-BJR** |

**PRICEWATERHOUSECOOPERS LLP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT TO BIND THE FDIC TO THE COURT'S
<u>RULINGS ON SHIPPED-NOT-PAID DAMAGES</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

PROCEDURAL HISTORY.......................................................................................................... 2

      A.      The FDIC acquiesced in and encouraged the Court's trial schedule ...................... 2

      B.      The Court found PwC not liable for the Shipped Not Paid damages ..................... 3

      C.      The Court awarded the FDIC its entire demand at the damages trial ..................... 5

ARGUMENT .................................................................................................................................. 6

    I.     Issue Preclusion Binds the FDIC to the Court's Ruling on Shipped Not Paid Claims ..................................................................................................................... 6

      A.      The Court's intervening cause ruling applies equally to the FDIC's 2006, 2007, and FAS-140 claims................................................................................ 7

      B.      The FDIC has no Seventh Amendment right to avoid issue preclusion ............... 10

CONCLUSION ............................................................................................................................. 14

## INTRODUCTION

This Court has already awarded the FDIC $625 million—the full amount the FDIC sought during the damages trial. Yet the FDIC now demands *another* several-weeks-long trial, this time with a Montgomery jury, solely to relitigate whether Bank of America's ("BOA's") misconduct "constitute[s] an intervening cause" of the Shipped Not Paid damages. Order on the Liability Phase of the PwC Bench Trial, ECF No. 798, at 52 (Dec. 28, 2017) ("Liability Order"). The FDIC's other claimed losses from PwC's 2006-07 audits are already included in the Court's award. And the FDIC admitted at the recent hearing that its *only* basis for another trial is to ask a jury to countermand this Court's Shipped Not Paid findings. Ex. 1, 8/24/18 Hr'g Tr. 38-43.

Collateral estoppel exists precisely for such situations—to prevent litigants from wasting scarce judicial resources (and pursuing unfair advantage) by serially trying issues they have lost. This Court found without reservation that "BOA's misconduct was not foreseeable to PwC," and it therefore held without qualification that "PwC is not liable for these damages." Liability Order at 52. Because the Shipped Not Paid fraud occurred in 2009 (after PwC's last audit), BOA's misconduct breaks the causal chain for the Shipped Not Paid Damages, regardless of audit year or theory of liability. The FDIC has no right to a second bite of that apple.

FAS-140 does not provide an independent basis for the FDIC to recover Shipped Not Paid damages because the FAS-140 chain of causation is fundamentally the same as that for the FDIC's claims based on deficient audits. Both the FAS-140 and deficient-audit theories of liability rest on the assertion that reasonable auditing and accounting would have stopped the fraud, which (allegedly) would have prevented the Shipped Not Paid damages. The Court's intervening-cause finding applies identically to both theories. Regardless of whether PwC might have foreseen that a "fraud [might] continue" to grow absent lending limits, "[i]t was not foreseeable that a reputable non-fraudster third party would become complicit." *Id.*

1

The Seventh Amendment provides no obstacle to issue preclusion. The Supreme Court has squarely held that "an equitable determination [in a bench trial] can have collateral-estoppel effect in a subsequent legal action and that . . . estoppel does not violate the Seventh Amendment." *Parklane Hosiery Co.. Inc. v. Shore*, 439 U.S. 322, 335 (1979). The FDIC forfeited its (incorrect) argument that the Seventh Amendment bars preclusion in a subsequent jury trial by failing to raise *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), at the time the Court bifurcated the proceedings. Far from objecting, the FDIC's litigating positions *encouraged* the Court to prioritize the FDIC's 2003 claims against PwC because those claims involved a "larger amount of damages." Ex. 2, 12/21/2016 Hr'g Tr. at 15. The FDIC cannot sit by silently, accept the favorable aspects of this Court's rulings, but then ask a jury to contradict the findings it does not like. The Court should enter judgment because issue preclusion prevents wasting judicial resources through repetitive trials.

## PROCEDURAL HISTORY

### A. The FDIC acquiesced in and encouraged the Court's trial schedule

After suing both Crowe Horwath LLP and PwC in the same complaint, the FDIC was the party that first prompted the Court to consider multiple trials. The FDIC bargained for bifurcation of its claims against PwC and Crowe, agreeing to waive its claimed jury trial right against Crowe only if the Court separated the two defendants' trials. *See* Motion for A Separate Non-Jury Trial of Plaintiffs' Claims Against Crowe at 2-3, ECF No. 612 (Dec. 15, 2016).

The Court in response informed the parties that "there's every reason for thinking that [a] bench trial would come first," before any "jury trial," but the Court wanted to discuss whether there were reasons for a different order. Ex. 2, 12/21/2016 Hr'g Tr. at 6. The Court also expressed its "instincts . . . that it should ultimately be the Court that decides which [trial] comes first." *Id.* at 19. The FDIC did not tell the Court that a jury trial must precede a bench trial to

2

avoid issue preclusion, or that the Seventh Amendment had any bearing on the order of trials. Instead, the FDIC asked the Court to prioritize the PwC trial because that proceeding involved "a larger amount of damages." *Id*. at 15.

On February 7, 2017, after issuing an "order granting PWC's motion to strike Plaintiffs' jury demands," the Court informed the parties that the "Court anticipates bifurcating PWC's jury and bench trials." Ex. 3, Feb. 7, 2017 Email from Heather Reed to Counsel. The Court asked the parties to "be prepared to discuss whether the bench trial on Crowe's and PWC's claims should also be bifurcated, and if so, in what order the trials should be conducted." *Id.*

Instead of answering the Court's question regarding the preferred order of PwC's trials, the FDIC quarreled with the Court's premise. The FDIC asked the Court again for "a single trial" against PwC, on the ground that "requiring the FDIC-R to pay for two trials is prejudicial." FDIC Statement Regarding the Structure of Trial at 1, ECF 647 (Feb. 14, 2017) ("FDIC Statement"). Thus, as far as the Court knew, the FDIC wanted its 2003 claims prioritized to have its quickest shot at "a larger amount of damages." Ex. 2, 12/21/2016 Hr'g Tr. at 15.

The FDIC never objected—on Seventh Amendment grounds or otherwise—when the Court proposed to first hold "two bench trials" and to "start out with PwC." Ex. 4, 2/15/2017 Hr'g Tr. at 5. Thus, through multiple rounds of briefs on trial structure, and through two full Court hearings, the FDIC not once asserted that the Court could not bifurcate the bench and jury claims because of issue preclusion or *Beacon Theatres*. And the FDIC never argued that the Seventh Amendment required the jury trial be given precedence if bifurcated.

### B.   The Court found PwC not liable for the Shipped Not Paid damages

After holding a bench trial on liability, without objection from the FDIC, this Court issued extensive and considered findings. The Court found that Colonial Bank's Custodial Agreement and Bailee Letter meant BOA "was not to transfer the [COLB] loans . . . until BOA

3

received payment." Liability Order at 42. "[W]hen BOA did receive payment . . . BOA was required to send the money to Colonial." *Id*. For a time, BOA "complied with its obligations" and indeed BOA "was complying with its custodial duties when PWC last performed audit work for CBG." *Id.* at 42-43. Yet (as the FDIC had claimed in prior litigation before the Court) BOA in 2009—after PwC's audit—"violated its custodial duties to Colonial" by "improperly transferring . . . 4800 Shipped Not Paid loans for which Colonial was never paid." *Id.* at 43-44.

The Court agreed with the FDIC's prior litigating positions, finding that the FDIC's alleged "Shipped Not Paid" damages were not attributable to the fraud involving Ms. Kissick and Ms. Kelly. Instead, the Court explained that "Mr. Farkas devised a new fraud, the 'Shipped Not Paid' fraud, that did not depend on the cooperation of Ms. Kissick and the other Colonial insiders." *Id.* at 42. The Court explicitly rejected the FDIC's argument that "Ms. Kissick was at least aware of the [Shipped Not Paid] fraud." *Id.* at 44-45.

Applying Alabama law for intervening cause, the Court found "that BOA's breach was not foreseeable and therefore was an intervening cause that defeats FDIC's claim as to the Shipped Not Paid damages." *Id.* at 47. The Court found that "PWC had no reason to believe that a reputable bank would abdicate its duties and execute demonstrably false documents stripping Colonial of its ownership rights in the mortgages." *Id.* at 48-49. And although the Court found that "[i]t is foreseeable that an auditor's negligence in failing to discover fraud will allow that fraud to continue," it "was not foreseeable that a reputable non-fraudster third party would become complicit in that fraud and violate its independent obligations to Colonial." *Id.* at 52.

The Court's ruling was conclusive and applies to *all* of the FDIC's claims. The Court therefore held without limitation that "PwC is not liable for these damages." *Id.*

4

### C. The Court awarded the FDIC its entire demand at the damages trial

After a damages trial, this Court awarded the FDIC $625 million, which equaled the FDIC's entire damages request at that proceeding. *See* Order on the Damages Phase of the PWC Bench Trial, ECF 875 (July 2, 2018).

Because the FDIC's damages for 2006 and 2007 are included in the FDIC's claimed losses for earlier audit years, the Court's 2003 liability finding and damages ruling gave the FDIC everything it could possibly ask for (other than Shipped Not Paid losses), regardless of audit year or the FDIC's theory of liability. For each relevant claim year, Mr. Malek measured the FDIC's claimed damages by calculating fraud losses at bank close, subtracting out the fraud losses already accrued at start dates for each audit (when Mr. Malek estimated the fraud allegedly would have been uncovered), and subtracting certain estimated income. Ex. 5, Malek Expert Report at 29-30; Ex. 6, Trial Tr. at 3366-68 (FDIC Damages Opening); *id.* at 3463-64 (direct); *id.* at 3561 (cross). Because the Bank's cumulative fraud losses generally rose over time (meaning the preexisting fraud losses generally increased for each progressive start year), the FDIC's damages claims for later years are smaller than (and subsumed within) the damages this Court awarded for the 2003 audit year. *See* Ex. 5, Malek Expert Report at 31, Figure F.

The FDIC recently admitted that its only reason for seeking a jury trial in Alabama is to obtain the Shipped Not Paid damages this Court ruled were not compensable. Ex. 1, 8/24/18 Hr'g Tr. 38-42. Thus, the FDIC acknowledges that it cannot obtain any further recovery for later claim years if the Shipped Not Paid damages are excluded. If this motion is granted, there would be no reason to hold a jury trial in Montgomery that could last at least a month and impose significant burdens on the Court, the parties, the witnesses, and of course the jurors.

**ARGUMENT**

**I.     Issue Preclusion Binds the FDIC to the Court's Ruling on Shipped Not Paid Claims**

The FDIC has no right to relitigate—and is indeed *barred* from retrying—*any* issue that the Court has already decided. "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate," issue preclusion "protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (internal quotation marks and brackets omitted).

Collateral estoppel most frequently prevents a party from retrying issues that were resolved by a judgment in a prior action. But issue preclusion (or direct estoppel) also applies, as here, "within the context of a *single* case." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1180 n.6 (11th Cir. 2013) (emphasis added). In either setting, "the analysis . . . remains the same." *Id.*; *see also* 18 Fed. Prac. & Proc. § 4418 (when a court decides "part of a single claim on the merits, but . . . leave[s] the way open for further action" then "[c]ommon issues that have been resolved in the first disposition are precluded in reaching the second disposition").

Issue preclusion "bars relitigation of an issue of fact or law" when four criteria are met:

> (1) the issue at stake is identical to the one involved in the prior [trial];
> (2) the issue was actually litigated in the prior [trial];
> (3) the determination of the issue in the prior suit was a necessary part of the [decision] . . . ; and
> (4) . . . the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Baloco*, 767 F.3d at 1251. This Court's factual finding that "BOA's misconduct was not foreseeable to PwC," and its holding that "PWC is not liable for these damages," Liability Order at 52, each satisfy these criteria. The Court should deny the FDIC a second trial on those issues.

6

The FDIC cannot dispute (and has thus far not tried to dispute) that three of the criteria for issue preclusion are met. First, the parties litigated intervening cause in the bench trial on liability. In fact, it was the FDIC that pressed the Court to decide that question during the liability phase of the trial. Ex. 7, 9/13/2017 Hr'g Tr. at 16-18. Second, the Court's findings were necessary parts of the Court's decision and eliminated a substantial portion of the FDIC's damages. Third, the FDIC had a full and fair opportunity to litigate the issue. The FDIC devoted dozens of paragraphs in its Proposed Findings on liability to the Shipped Not Paid damages and whether Bank of America was an intervening cause of them. *See* FDIC Proposed Findings ¶¶ 155-58, 351-81, ECF No. 785 (Oct. 21, 2017).

The only obstacles the FDIC has suggested bar preclusion are (1) its assertion that FAS-140 claims make the issues different from the Court-found facts and (2) the FDIC's jury trial right for its 2006 and 2007 audit-year claims. Yet (as the Court must have implicitly found to deny the FDIC's claim for Shipped Not Paid damages) there are no meaningful differences in the causal chain for the FAS-140 claims. And the FDIC's failure even to *request* that a jury trial precede the bench trial, let alone *object* to the Court's scheduling on Seventh Amendment grounds as required, dooms the FDIC's argument.

### A.   The Court's intervening cause ruling applies equally to the FDIC's 2006, 2007, and FAS-140 claims

This Court emphasized in its intervening-cause ruling that *all* of BOA's misconduct in 2009 postdated PwC's last audit opinion (dated March 2, 2009, for the 2008 audit). Liability Order at 43 (citing Ex. 5, Malek Report at 16, 38 (reporting that the Shipped Not Paid "phase of the fraud began in April of 2009"); Trial Ex. P3126, Brown Dep. at 361:24-364:6); *see also* Trial Ex. A69 at 82. "In other words," as this Court found, "BOA was complying with its custodial duties when PWC last performed audit work for CBG." Liability Order at 43.

7

Because BOA's breaches occurred *after* the last of PwC's audit opinions, the Court's finding that BOA's misconduct was "not foreseeable to PwC" breaks the causal chain for every one of PwC's audits, including those in 2006 and 2007. The Court determined that BOA's misconduct "constitute[s] an intervening cause" for audits spanning the entire relevant period—the 2002-2005 and 2008 audit years. *Id.* at 52. If PwC could not foresee BOA's misconduct in 2008, PwC *a fortiori* could not foresee such breaches in the two years prior.

As this Court found, the growth of the fraud in 2009 to include the Shipped Not Paid losses was most naturally and directly caused by BOA's misconduct. BOA caused that harm by shipping mortgage documents that Colonial Bank *at least* held as collateral (if the Bank did not actually own the 99% interest), in violation of the Bank's rights. *See also* FDIC Response to PwC Partial Motion to Dismiss Third Amended Complaint at 13, ECF 328 (Mar. 28, 2016) (arguing that "at the very least" the Bank would have "had a perfected security interest" for COLB mortgages in the Bank's custody, which protected its rights). The Court's finding that PwC could not have foreseen BOA's misconduct breaks the causal chain for the Shipped Not Paid damages on all of the FDIC claims.

The FDIC's alternative FAS-140 theory of liability does not foreclose preclusion because the FDIC's theory of causation is materially identical for all of its theories of liability. As the FDIC argued in closing, both the FAS-140 and deficient-audit causal chains rely on the assertion that PwC could have stopped the fraud if it had acted properly:

> [A]s the evidence shows, if PwC had done a proper PCAOB audit they **would have found the fraud**. We have gone through that on our board. There's no doubt if they had gone to the vault to look at loans they would have found the fraud. Then finally, the independent basis for liability here is PwC's false sales accounting for what were actually loan transactions allowed this fraud to grow into the billions. If PwC had not said that loans were sales, **this would have stopped back in 2003**.

8

Ex. 6, Trial Tr. 3193:16-24 (emphasis added). The FDIC repeatedly used parallel descriptions of its proof of causation, arguing both that a proper PwC audit "would have discovered the fraud" and that had PwC applied satisfactory FAS-140 accounting "the fraud would have been stopped." FDIC Proposed Findings ¶¶ 343, 350; *see also* Ex. 6, Trial Tr. 3209:18-3210:2 (arguing loan accounting "would have stopped the fraud").



The overlapping causal chains allowed the Court to rule on intervening cause while simultaneously refraining from reaching a decision on the FDIC's FAS-140 theory of liability. The Court found that "BOA's misconduct was *not foreseeable to PwC*," Liability Order at 52 (emphasis added), without limiting that finding to what PwC's auditors could have foreseen when implementing fraud-prevention procedures. The Court's explanation applied identically to what PwC could have foreseen when making sales-accounting determinations, barring all theories of liability without modification. Even if it could be "foreseeable that an auditor's negligence in [sales accounting] will allow a fraud to continue," it is "not foreseeable that a reputable non-fraudster third party would become complicit" in a fraud initially allowed to grow by FAS-140 accounting. *Id*.

9

When the Court asked the parties during the liability trial in fall 2017 whether the Court could avoid deciding the FAS-140 question, Ex. 6, Trial Tr. 3344-46, the FDIC never argued that sales-accounting provided a different or independent basis for avoiding intervening cause from the BOA misconduct. After trial, the FDIC fully set forth its positions on FAS-140, Shipped Not Paid damages, and intervening cause in its 96-page Proposed Findings. *See* FDIC Proposed Findings ¶¶ 351-382, ECF No. 785 (Oct. 21, 2017). The FDIC never asserted that the intervening cause analysis would be different for FAS-140. Instead, the FDIC argued (in parallel with its deficient-audit arguments) that "once PwC negligently facilitated the violation of the lending limits, all of the losses that occurred as a result of Colonial lending TBW funds in excess of the lending limits, including the 'Shipped not paid' losses, were a foreseeable result of PwC's negligence." *Id.* ¶ 382. The Court could only refrain from deciding the FAS-140 question because the Court's ruling that "BOA's misconduct was not foreseeable to PwC," Liability Order at 52, foreclosed the Shipped Not Paid damages regardless of the FDIC's theory of liability. The FDIC's acquiescence shows that the issues are the same and that issue preclusion applies.

## B. The FDIC has no Seventh Amendment right to avoid issue preclusion

The FDIC's jury trial right for the 2006 and 2007 audit years provides no basis for reopening issues the Court decided. The U.S. Supreme Court has held that "an equitable determination can have collateral-estoppel effect in a subsequent [jury tried] legal action and that . . . estoppel does not violate the Seventh Amendment." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 335 (1979). The same rule applies in the course of a single case with multiple phases. Even if "schedul[ing] [a] bench trial before [a] jury trial . . . may have been debatable . . . once the bench trial took place, the court's findings bound any later proceeding." *Frontline Processing Corp. v. First State Bank of Eldorado*, 389 F. App'x. 748, 752 (9th Cir. 2010).

10

The FDIC, to be sure, retains (and has never waived) a Seventh Amendment right to have a jury decide any issues that remain for its audit-year 2006 and 2007 claims. However, there is nothing that remains open to justify a multi-week jury trial in Montgomery.

The FDIC forfeited any argument against issue preclusion when it failed to object (on Seventh Amendment grounds or otherwise) to the Court's proposal to hold the PwC bench trial first. The Court repeatedly informed the parties of its belief that "the bench trial would come first." Ex. 2, 12/21/2016 Hr'g Tr. at 6. And the Court specifically asked for the parties to take positions on "what order the [proposed bifurcated trials against PwC] should be conducted." Ex. 3, Feb. 7, 2017 Email from Heather Reed to Counsel. The only position the FDIC *ever* took on the order of trials was that PwC's trial should precede Crowe's because of the "larger amount of damages against PWC." Ex. 2, 12/21/2016 Hr'g Tr. at 15.

PwC raised the fact that "holding a combined bench trial would streamline the subsequent jury trial and could potentially eliminate any need for such a trial." PwC's Response to the FDIC's Statement Regarding Trial Structure at 2, ECF No. 644 (Feb. 14, 2017). Yet the FDIC not once claimed the Court *could not* bifurcate the trials or that the Seventh Amendment required the jury trial to go first to avoid issue preclusion. Nor did the FDIC object to the Court's proposal to first hold "two bench trials" and "start out with PwC." Ex. 4, 2/15/2017 Hr'g Tr. at 5.

After previously arguing that "requiring the FDIC-R to pay for two trials is prejudicial," FDIC Statement at 1, the FDIC now wants a second trial so that a jury can second guess the Court's intervening cause ruling. But that is not a choice the FDIC can make now. Because of the preclusive effects of any trial, the FDIC was required to choose at the time of bifurcation whether it wanted the jury's verdict or the Court's decision first. And the FDIC was required to raise the Seventh Amendment if the Constitution had any bearing on the schedule. The FDIC

instead acquiesced to the Court's plan, likely because the bench trial offered the "larger amount of damages." The Seventh Amendment does not require, or even permit, the FDIC to get a do-over on that decision after a bench trial in which the Court awarded the FDIC $625.3 million.

A party that fails to object to a bench trial before a jury trial has no right to complain when adverse findings are given preclusive effect. *See Dranchak v. Akzo Nobel Inc.*, 88 F.3d 457, 462 (7th Cir. 1996) (party who did "not ask the [district] judge to withhold decision" on a claim tried to the court until after a related jury verdict forfeited the right to object to the judge's findings being given preclusive effect); *Frontline Processing Corp.*, 389 F. App'x at 752 (holding that "once the bench trial took place, the court's findings bound the later [jury trial]"). If the FDIC "wished to protect its right to a jury trial on [a common issue], it was imperative that it object on that ground at the time of bifurcation." *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1797, 2014 WL 982848, at *8, *11-12 (E.D. Pa. Mar. 13, 2014).

PwC cannot be forced serially to defend against the same arguments and claims simply because the FDIC wanted its shot at the largest amount of damages first or because the FDIC concluded (as it might have) that it would be more likely to prevail on the Shipped Not Paid question in a bench trial. The FDIC "should not be permitted to silently take part in a bench trial and then demand a do-over on Seventh Amendment grounds after losing." *Id.*

*Beacon Theatres* does not hold that bench-tried findings cannot preclude a jury's consideration of overlapping issues. Just the opposite—the entire "premise" of *Beacon Theatres* is that holding a bench trial before a jury trial *does* result in issue preclusion. *Parklane Hosiery*, 439 U.S. at 333-34. *Beacon Theatres* holds only that the Seventh Amendment sometimes allows a party to avoid preclusion by insisting that a jury trial precede a bench trial. *See* 359 U.S. at 564 (the Seventh Amendment regulates "the sequence of the trial"). The FDIC did not so insist.

Moreover, even had the FDIC objected—which it did not—the Court would still have had discretion to prioritize the bench trial. *Beacon Theatres* only established a "general prudential rule" that legal claims ordinarily should be tried to a jury before equitable claims are tried to a court. *Parklane Hosiery*, 439 U.S. at 334 (discussing *Beacon Theatres*, 359 U.S. at 510). That prudential rule does not apply when a case is split because of "a contractual [jury] waiver" that applies to some, but not all, of the plaintiff's claims. *Okura & Co. (Am.) v. Careau Grp.*, 783 F. Supp. 482, 491 n.3 (C.D. Cal. 1991); *see also Wechsler v. Hunt Health Sys., Ltd.*, 285 F. Supp. 2d 343, 349 (S.D.N.Y. 2003) (*Beacon Theatres* did not apply where "jury and non-jury phases" were "split according to a jury waiver provision").

Where contracting parties have agreed that certain claims should be decided by a court, the litigants' rights (to bench and jury trials respectively) are in equipoise. As such, where one party's ox may be gored through preclusion regardless of the trial order, the Seventh Amendment does not force the court to deprive the party with an enforceable jury waiver "the benefit of its bargain." *Okura*, 783 F. Supp. at 491 n.3. In circumstances like these, had the FDIC raised the issue, the order of trial would have rested with the court's discretion.

Regardless, PwC is aware of no case where a party, having failed to raise a Seventh Amendment objection *before* a bench trial, was allowed to invoke the Constitution *afterward* to avoid preclusion. That is not a right that the Seventh Amendment provides. Certain cases, to be sure, reverse preclusive findings as remedies for a court's mistake, when a proper objection was made. *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 551-52 (1990); *Burns v. Lawther*, 53 F.3d 1237, 1239-40, 1242 (11th Cir. 1995). But there can be no scheduling error without an objection. And the FDIC did not even *ask* the Court to schedule a jury trial first, let alone inform the Court that the Seventh Amendment *required* that order. The FDIC is bound by the Court's rulings.

## CONCLUSION

The Court should grant PwC summary judgment on the FDIC's claims for shipped not paid damages stemming from the 2006 and 2007 audit years.

Respectfully submitted this 14th day of September, 2018.

/*s*/ *Mark L. Levine*

Philip S. Beck
(Illinois Bar No. 147168) *pro hac vice*
Mark L. Levine
(Illinois Bar No. 6201501) *pro hac vice*
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
Courthouse Place, Suite 300
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4400
Email: philip.beck@bartlit-beck.com
         mark.levine@bartlit-beck.com

-and-

Jameson R. Jones
(Colorado Bar No. 42135) *pro hac vice*
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
1801 Wewatta, Suite 1200
Denver, CO 80220
Telephone: (303) 592-3123
Email: jameson.jones@bartlit-beck.com

-and-

Tabor Robert Novak, Jr.
(Alabama Bar No. ASB-9503-V72T)
**BALL BALL MATTHEWS & NOVAK PA**
P.O. Box 2148
Montgomery, AL 36102-2148
Telephone: (334) 387-7680
Email: tnovak@ball-ball.com

**ATTORNEYS FOR DEFENDANT PRICEWATERHOUSECOOPERS LLP**

## CERTIFICATE OF SERVICE

  I hereby certify that on September 14, 2018, a true and exact copy of the foregoing was electronically served by transmission of Notice of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing.

                /s/ *Mark L. Levine*
                Mark L. Levine