# Exhibit 1

```
             UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF ALABAMA


COLONIAL BANCGROUP,         :
INC.,                       :        Docket No. 2:11-CV-746
        Plaintiff,          :
                            :            Washington, D.C.
                            :         Friday, August 24, 2018
                            :               10:30 a.m.
FDIC as RECEIVER FOR        :
COLONIAL BANK               :
                            :
        vs.                 :
                            :
PRICEWATERHOUSE COOPERS,    :
LLP,                        :
                            :
        Defendant.          :
----------------------------x




            TRANSCRIPT OF STATUS CONFERENCE
     BEFORE THE HONORABLE BARBARA JACOBS ROTHSTEIN
              UNITED STATES DISTRICT JUDGE




APPEARANCES:

For the Plaintiff:     RONALD T. COLEMAN, JR., Esquire
                       RUFUS T. DORSEY, IV, Esquire
                       Parker Hudson Rainer & Dobbs
                       303 Peachtree Street, N.E.
                       Suite 3600
                       Atlanta, GA 30308

                       NICHOLAS J. DICARLO, Esquire
                       DiCarlo Caserta McKeighan
                       & Phelps, PLC
                       6900 E. Camelback Rd.
                       Suite 250
                       Scottsdale, AZ  85251
```

1  credibility.

2       We agree and we're not arguing that Kissick and Kelly's
3  conduct provides no fact disputes because we do think Your
4  Honor had to evaluate credibility with respect to whether their
5  conduct could be imputed and that was a factual issue.  But
6  there are plenty of issues raised in our briefs on which there
7  is no dispute and we think this Court should enter judgment.

8            THE COURT:  Thank you.

9            MR. COLEMAN:  May I briefly address two issues, Your
10 Honor?

11           THE COURT:  Sure, go ahead.

12           MR. COLEMAN:  The first issue is to apologize for my
13 error, apologize to the Court.  We made a mistake on that and
14 it was inadvertent and I apologize.

15           THE COURT:  There are a lot of documents in this case
16 understand.

17           MR. COLEMAN:  There are, Your Honor, we shouldn't
18 have made that, but that doesn't change the fact that the mix
19 and the context of the evidence will be very different and the
20 fact that the Court never ruled that any single instance
21 constitute audit interference sufficient to bar our claim.  And
22 even if it did or were to hold that, Your Honor, it would still
23 have to be decided in the context of PwC's audit procedures for
24 2007 which because that's a different audit year.  And that
25 balance would have to be made and there would have to be a

1  determination of whether the specific conduct relevant to 2007
2  impeded the audit.  And that is a different issue because both
3  of the PwC evidence of their audit and the evidence that
4  otherwise won't come in.
5      I also want to address the fact that the statement that we
6  never disputed that in pari delicto would apply if Kissick and
7  Kelly's conduct was imputed.  For the record, we absolutely do
8  dispute that.  There was no cite, I think in PwC's proposed
9  findings and conclusions to any admission that we made of that.
10 We absolutely do dispute that.
11          THE COURT:  I got that message.
12          MR. COLEMAN:  Thank you, Your Honor.
13          THE COURT:  Okay, the second part of this hearing I
14 was hoping to hear from the FDIC.  They also are maintaining
15 that a jury trial is necessary.  Who is going to address that
16 in terms of what is it exactly that you think you need in a
17 jury trial?
18          MR. SORENSEN:  Yes, Your Honor, Steven Sorensen for
19 the FDIC.  I guess I thought the issue you want to address was
20 the set off issue, but I will address the jury issue.  There's
21 no motion pending against, with respect to our 2006 and 2007
22 audit claims.
23          THE COURT:  You want a jury trial?
24          MR. SORENSEN:  Yes, we do want a jury trial.
25          THE COURT:  Why?

1            MR. SORENSEN:  Excuse me?

2            THE COURT:  What is it you think is up for grabs in a
3   jury trial?

4            MR. SORENSEN:  We have additional damages, Your
5   Honor.  The FDIC has not been made whole, there are additional
6   damages.

7            THE COURT:  You're talking about the shipped not paid
8   damages?

9            MR. SORENSEN:  Yes.

10           THE COURT:  Isn't there a finding already by the
11  Court that the issue on shipped not paid occurred in 2008?

12           MR. SORENSEN:  There is a finding, obviously the
13  Court made a finding with respect to BofA in the liability
14  phase.  But the issues that come up in 2006 and 7 are
15  different.  First of all, we have the right to have every issue
16  tried for 2006 and 7 including causation.  So sort of at the
17  outset we have the right to try that case.

18           THE COURT:  All right, well then I think what you
19  need is some briefing on that because causation is actually
20  going to be the issue you want and also the FAS 140 issue I
21  assume you also want?

22           MR. SORENSEN:  Yes, there are two different issues.
23  The FAS 140 sort of got touched on here a little bit, but it's
24  a different analysis.  Obviously for us there's no issue of
25  equitable versus legal defenses.  The only issue is there a

1  different, is there with respect to FAS 140 it's a different
2  theory of causation and it is, different theory of causation a
3  different analysis of 2006 and 7 than what was considered here
4  in the bench trial.
5          THE COURT:  Well, you're going to have to brief all
6  of that.
7          MR. SORENSEN:  Okay, I guess Your Honor we would ask
8  for, I mean right now as your order stands we're entitled to a
9  jury trial on 2006 and 7.  We would ask for a date and would
10 ask sometime, I'm just going to ask sometime in the first
11 quarter until there's -- if there's going to be a motion by PwC
12 they would have to bring it. They could have brought a motion.
13 But as it stands now, we are entitled to a jury trial on 2006
14 and 7.
15         THE COURT:  May not have brought a motion because
16 maybe it didn't occur to them that you really wanted a jury
17 trial.  I must say counsel that, so you're seeking another 400
18 million dollars, right.  You're seeking the shipped not paid
19 damages.  And are you going after punitive damages too?
20         MR. SORENSEN:  Well, Your Honor, under your liability
21 ruling you found that the wantonness claim was covered by 2008.
22         THE COURT:  Right, I can't do that.  So it's just the
23 shipped not paid damages that you're going for?  I'm trying to
24 figure this out.
25         MR. SORENSEN:  Yes, yes, it is, Your Honor.  It is

1  shipped not paid, what people have called shipped not paid.  I
2  think of it more as the COLB damages because in your bench
3  trial it was all about AOT.  Your Honor awarded full damages on
4  what was the AOT damages at the end.  These would be COLB.
5           THE COURT:  Let's try to use the same term.
6           MR. SORENSEN:  Sure.
7           THE COURT:  Are you talking about the Bank of America
8  damages that resulted from the Bank of America whatever we call
9  it mistake, whatever.  That's what you're looking for?
10          MR. SORENSEN:  Yes.  We're talking about, these were
11 the COLB loans that got shipped to Bank of America.  Yes,
12 people called them shipped not paid.
13          THE COURT:  I assume that you guys have at least
14 considered the possibility of going back to -- who was doing
15 your settlement before, the person?
16          MR. SORENSEN: The mediation?
17          THE COURT:  Yes.
18          MR. SORENSEN:  Judge Phillips was.
19          THE COURT:  Have you thought about going back to
20 Judge Phillips?
21          MR. SORENSEN:  Your Honor, the party's principal to
22 principal have had discussions and that was actually as it
23 turns out wasn't fruitful, but it was I think more productive
24 than the mediation.  So the principals I think there hasn't
25 been discussion, as far as I know recently, but if there's

1  going to be we think principal to principal would be the way to
2  do it.
3           THE COURT:  Well, you do it whatever way you think is
4  most fruitful.  But the idea that -- you've got your full
5  damages except for those shipped not paid.  I'll call it
6  shipped not paid, my shorthand for it.  You've got your full
7  damages except for shipped not paid, 625 million dollars,
8  right, now you want another 400 million.  So we know the
9  punitive damages are right.  So it's simply a matter of
10 questioning.  I still don't understand what would be different
11 in 2006, 2007 about the shipped not paid damages if they
12 occurred in 2008?
13          MR. SORENSEN:  What would be different is what you
14 heard from CBG when this gets briefed you'll hear one version,
15 the same argument from us which is we never waived our right to
16 have 2006 and 2007 all triable issues heard by the jury
17 including causation.  So that would be the first argument you
18 are going to hear from us.
19          THE COURT:  Causation about what?
20          MR. SORENSEN:  Well causation -- we obviously had two
21 theories of liability.  One was PwC's failure to find the
22 fraud.  The second was FAS 140, which Your Honor based the
23 liability ruling on failure to find the fraud and conduct
24 audits.
25          THE COURT:  Okay, you're going to have to brief and

1  explain to me, the only difference we're talking about is the
2  shipped not paid 400 million which occurred in 2008. So I
3  still don't understand what you're doing, what you're claiming
4  in 2006, 2007. What damages didn't you get in 2006, 2007?
5          MR. SORENSEN: Well it would be the shipped not paid
6  or the COLB loans that ultimately were lost. So in the
7  liability phase we went back to 2004 and made a claim for all
8  subsequent damages. And then Your Honor as part of the ruling
9  said okay AOT is in, but shipped not paid is out because when
10 you looked at 2008 and maybe 2005, certainly 2008, Your Honor
11 ruled it was not foreseeable to PwC in 2008 that BofA would not
12 send money back.
13         THE COURT: This goes back to FAS 140. You say this
14 much, I understand. You're saying this much credit would not
15 have been given to one person if FAS 140 were properly applied.
16         MR. SORENSEN: Exactly.
17         THE COURT: If they had all been loans there would be
18 a limit and we wouldn't even have the 400 million expense, is
19 that what you're saying?
20         MR. SORENSEN: Exactly. So if you look at the 2006,
21 audit. Thank you for getting to the point, which is when the
22 2006 audit ended in March of 2007 at that point if PwC had
23 gotten the FAS 140 right everything would have stopped. There
24 would have been no more lending to TBW. The relationship would
25 have ended.

1            THE COURT:  Of course they would have reached their
2  loans for one borrower.
3            MR. SORENSEN:  Yes, it would have been far in excess
4  of it, so they would have had to reduce it and everything would
5  have shut down at that point.  So we were prepared to respond
6  to any motion that's filed, but it will require briefing.
7            THE COURT:  Am I going to get a motion about who
8  wants to respond?
9            MR. LEVINE:  Yes, Your Honor, we will.
10           THE COURT:  How could I have doubted that.
11           MR. LEVINE:  One thing I want to note about this
12  theory about trying to get a second bite at the shipped not
13  paid damages is actually the conduct of Bank of America
14  occurred in 2009 even later than 2008. The foreseeability that
15  was relevant there was the foreseeability of Bank of America
16  engaging in this misconduct.  Because Bank of America's actions
17  were the intervening cause and Bank of America's actions are
18  the intervening cause to the dispute about the 2003 audit or
19  the 2008 audit just as much as the 2006 or 2007 audit.  Bank of
20  America's actions occurred in '09 and damages and the shipped
21  not paid damages were in 2009.  We'll address that in our
22  motion.
23           THE COURT:  Yes, I understand that.
24           MR. LEVINE:  Yes.
25           THE COURT:  And that was exactly where I was going

CERTIFICATE

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the stenographic notes provided to me by the United States District Court, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____     _____
/s/ Crystal M. Pilgrim, RPR, FCRR    Date: September 6, 2018