IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN, <br><br> Plaintiffs, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP, <br><br> Defendants. | Case No. 2:11-cv-00746-BJR |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK, <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS, LLP and CROWE HORWATH, LLP, <br><br> Defendants. | Case No. 2:12-cv-00957-BJR |

**ORDER DENYING FDIC'S MOTION FOR RECONSIDERATION**

### I.  INTRODUCTION

The Federal Deposit Insurance Corporation ("FDIC") moves this Court to reconsider its determination that the FDIC is not entitled to prejudgment interest under Alabama law. Dkt. No. 882. PricewaterhouseCoopers, LLP ("PWC") opposes the motion. Dkt. No. 888. Having reviewed the motion, the opposition thereto, the record of the case, and the relevant legal

authorities, the Court denies the motion. The reasoning for the Court's decision is set forth below.

## II. BACKGROUND

At one time, Colonial Bank ("Colonial") was the 27th largest bank in the United States. However, in August 2009 federal banking authorities discovered that Colonial was the victim of a massive bank fraud spearheaded by Colonial's largest customer, Taylor, Bean & Whitaker Mortgage Corporation and certain of Colonial's employees. Thereafter, the Alabama State Banking Department closed Colonial and appointed the FDIC the bank's receiver. Colonial's parent company, The Colonial BancGroup, Inc. ("CBG"), filed for Chapter 11 bankruptcy protection shortly thereafter.

PWC and Crowe Horwath, LLP ("Crowe") were Colonial's and CBG's auditors during the years that Colonial was victimized by the fraud, yet neither auditor detected it. In October 2012, the FDIC, standing in the shoes of Colonial as its receiver, sued PWC and Crowe for professional negligence and breach of contract. CBG also filed suit against the auditors, alleging substantially similar claims. The FDIC and CBG each claimed damages in excess of a billion dollars; the FDIC also sought prejudgment interest on its alleged damages. The lawsuits were consolidated and reassigned to this district court judge in May 2016.

The parties proceeded through discovery and several rounds of dispositive motions. One such motion was PWC's motion for summary judgment on the FDIC's request for prejudgment interest on its damages. Dkt. No. 535. PWC argued that the FDIC was not entitled to prejudgment interest because its damages were neither certain nor reasonably capable of being made certain, a prerequisite for awarding prejudgment interest under Alabama law. This Court agreed with PWC and dismissed the claim for prejudgment interest. Dkt. No. 677.

It is this decision that is the subject of the FDIC's instant motion for reconsideration. Notably, the FDIC did not move for reconsideration at the time the decision issued; rather, it waited to move for reconsideration until after this matter proceeded to a three-week bench trial and the Court granted judgment in favor of the FDIC to the tune of $625.3 million.[1, 2]

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) gives federal courts the authority to revise decisions that adjudicate fewer than all of the claims in an action, so long as it is done before judgment is entered. Fed. R. Civ. P 54(b); *Giraldo v. Drummond Co.*, 2013 WL 3873987, at *2, n. 3 (N.D. Ala. July 25, 2013) *aff'd sub nom. Doe v. Drummond Co.*, 782 F.3d 576 (11th Cir. 2015)) ("A district court's authority to revise interlocutory orders comes from Federal Rule of Civil Procedure 54(b)").

However, "[i]n the interest of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Gougler v. Sirius Products*, Inc., 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005). As such, courts in this Circuit generally do not entertain motions for reconsideration on grounds that were raised previously or that could have been timely raised before issuance of the order from which relief is sought. *McGuire v. Murphy*, 285 F. Supp. 3d 1272, 1278 (M.D. Ala. 2018); *see also*, *Rossi v.*

---

[1] The bench trial on the FDIC's and CBG's claims against PWC was held September 18 through October 13, 2017. At the conclusion of the liability phase of the trial, this Court granted judgment to the FDIC on its professional malpractice claim, but denied the FDIC's gross negligence and breach of contract claims. This Court also denied CBG's professional negligence and breach of contract claims. More specifically, this Court concluded that PWC breached its professional obligations to CBG, but that CBG was barred by the *in pari delicto* doctrine, the *Hinkle* rule, and/or the audit interference rule from recovering damages caused by PWC's breach. Likewise, this Court concluded that PWC breached its contract with CBG, but CBG also failed to meet its obligations under the contract and, thus, could not maintain a breach of contract claim against the auditor.

[2] Given that this Court awarded the FDIC $625.3 million in damages and that prejudgment interest in Alabama accrues at a rate of 6% annually from the date of injury, if this Court were to reverse course and award prejudgment interest, the FDIC could be entitled to in excess of $500 million in interest. *Fletcher v. Tuscaloosa Federal Savings & Loan Ass'n*, 314 So.2d 51 (1975) (where no written contract controls the interest rate, the legal rate of prejudgment interest is 6% per annum).

*Troy State University*, 330 F. Supp. 2d 1240, 1249 (M.D. Ala. 2002) (stating that "[a]dditional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration").

Nevertheless, "[a] court may grant relief from a nonfinal order upon a showing of good cause, such as a change in circumstances justifying relief, an intervening change in the law, a clear error on the part of the court, circumstances similar to those justifying relief from final judgments under Rules 59(e) or 60 of the Federal Rules of Civil Procedure, or other reasons demonstrating that relief is necessary to rectify clear error, prevent injustice, or ensure the efficient disposition of the case." *McGuire*, 285 F. Supp. 3d at 1278.

Importantly, a motion for reconsideration is not a substitute for an appeal. *See Jacobs v. Tempur–Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (holding that "absent a manifest error of law or fact," the remedy for an unfavorable ruling was to appeal).

## IV.     DISCUSSION

The FDIC asserts that reversal of this Court's summary judgment determination is warranted because the decision is premised on "meritless 'disputes' regarding the calculations" of the FDIC's damages that PWC raised on summary judgment but "abandoned at trial." Dkt. No. 882 at 1. According to the FDIC, maintaining the summary judgment determination would be inequitable in light of the trial record. In the alternative, the FDIC argues that at a minimum it is entitled to prejudgment interest on the portion of its damages that PWC conceded at trial.

### 1.     Whether Maintaining the Summary Judgment Decision Is Inequitable in Light of the Trial Record

Under Alabama law, "an award of prejudgment interest is proper only if compensatory damages are certain or capable of being made certain." *Braswell v. Conagra, Inc.*, 936 F.2d 1169, 1177 (11th Cir. 1991) (applying Alabama law). The FDIC contends that, with this standard

in mind, PWC manufactured disputes regarding the FDIC's damages calculation methodology during summary judgment in order to convince this Court that the FDIC's damages did not satisfy Alabama's "certainty" standard, yet abandoned the purported disputes at trial. Dkt. No. 882 at 3. The FDIC argues that "[c]ontrary to PWC's summary judgment filings," the trial record establishes that the FDIC's damages "methodology and calculations were never in dispute" and equity requires that this Court reverse the summary judgment decision accordingly. *Id*. at 4.

PWC counters that it did not "abandon" its disputes with the FDIC's damages calculation methodology; rather, it relied on this Court's summary judgment decision and "refrain[ed] from eliciting testimony [at trial] … on a topic that was no longer at issue" in this case. Dkt. No. 888 at 3-4. The Court agrees with PWC. PWC did not "wholly abandon" the disputes it had regarding the FDIC's damages calculation methodology; rather, PWC had no reason to present evidence on such disputes during the trial because the Court's summary judgment decision removed the issue from the case. *See* Dkt. No. 677 at 29 (dismissing FDIC's claim for prejudgment interest). "Once a district judge issues a [] summary judgment order removing certain claims from a case, *the parties have a right to rely on the ruling* by forbearing from introducing any evidence or cross-examining witnesses in regard to those claims." *Alberty-Velez v. Corporacion De Puerto Rico Para La Difusion Publica*, 242 F.3d 418, 424-425 (1st Cir. 2001) (quoting *Leddy v. Standard Drywall, Inc*., 875 F.2d 383, 386 (2d Cir. 1989) (emphasis in original), *see also*, *Chapman v. Al Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) (quoting *United States v. Hardage*, 982 F.2d 1436 (10th Cir. 1992) ("One who loses on summary judgment cannot give a retroactive effect to a trial verdict, using it in an effort to create a genuine issue of material fact at the time the court was considering the motion for summary judgment."). Thus, PWC's decision to refrain from presenting such evidence at trial was based on this Court's summary judgment decision and

it would be manifestly unjust to reverse the summary judgment decision due to the lack of evidence in the trial record.

The FDIC's argument that PWC abandoned its disputes with the FDIC's damages calculation methodology seems to be premised on the mistaken view that this Court determined at summary judgment that a question of fact existed regarding the certainty of the FDIC's damages and, therefore, preserved the issue for trial. That is not the case. Instead, this Court painstakingly reviewed the hundreds of pages of exhibits (including deposition testimony, expert reports, and accounting spreadsheets) that the parties submitted in support of their respective summary judgment pleadings. After reviewing each of these exhibits and well as considering the parties' arguments regard the same, this Court concluded that the FDIC's damages did not meet Alabama's "certainty" standard for awarding prejudgment interest. The Court's decision did not depend on evidence "*that would be raised at trial*" as the FDIC suggests in its motion for reconsideration. Dkt. No. 890 at 2 (emphasis in original). The decision was based on the evidence presented by the parties at summary judgment.

Moreover, having listened to hours upon hours of witness testimony as well as having reviewed thousands of pages of trial exhibits, this Court remains convinced that the FDIC's damages are not "capable of being ascertained with 'ease and certainty' or by 'a simple mathematical computation'" as is required by Alabama law before prejudgment interest can be awarded. *Ballard v. Lee A. McWilliams Construction, Inc.*, 2018 WL 670459, *2 (Ala. Civ. App. Feb. 2, 2018) (quoting *Lapeyrouse Grain Corp. v. Tallant*, 439 So.2d 105, 112 (Ala. 1983)). The FDIC's expert, Kenneth Malek, testified at length about the extent of his team's effort to calculate the FDIC's damages (his team has spent in excess of 9,000 hours at the cost of more than $4.5 million). This is precisely the type of extensive accounting that defeats a claim for

prejudgment interest. *See Roe v. Baggett Transp. Co.*, 326 F.2d 298, 300-01 & nn.2, 5 (5th Cir. 1963) (affirming denial of prejudgment interest under Alabama law where damages quantification required extensive accounting with respect to hundreds of distinct shipments of goods, resulting in 115-page special master report); *Martin v. Tolson*, 562 So.2d 217, 220 (Ala. 1990) (no prejudgment interest due, in part, to extensive accounting required to determine value of partnership interest). In addition, although PWC did not attempt to challenge the number of "judgment calls and estimates" included in Malek's calculations, Malek, himself, repeatedly pointed them out during his testimony. *See*, *e.g.*, Tr. 3416:21-17:3 (testifying that he gave PWC a five-day grace period "because you can't stop fraud on a dime in my experience"); Tr. 3470:21-25 (testifying that he could have "done the calculation in a manner that would have resulted in larger damages"); Tr. 3544:7-14 (testifying that he exercised judgment in assigning a cash-out date to various transfers because he "wanted to be conservative"); Tr. 3692:18-23 (testifying that he exercised judgment as to the blue mortgages). Malek's trial testimony that his judgments reduced the FDIC's damages does not undermine the fact that uncertainties prevented the FDIC's claimed damages from being sufficiently certain for prejudgment interest under Alabama law.

Therefore, this Court concludes that it is not inequitable to let the summary judgment decision stand in light of the trial record.

### 2. Whether the FDIC Is Entitled to Prejudgment Interest on the Portion of the Damages PWC Conceded at Trial

This Court bifurcated the liability and damages portions of the PWC bench trial; the damages portion of the trial did not proceed until this Court issued the liability decision. In other words, the parties had the benefit of knowing the liability findings before beginning the damages phase of the trial. Based on the liability findings, PWC chose not to contest that it owed $307

million of the $625.3 million the FDIC sought and instead limited its dispute to the remaining $318 million. Dkt. No. 850 at 2, ¶ 4 ("For purposes of [the] damages phase only, PWC accepts that, given the Court's liability findings, it is responsible for [the FDIC's] fraud-related losses in excess of $300 million."). The FDIC now argues that because PWC did not contest the $307 million, those damages are "liquidated" and thus subject to prejudgment interest.

The parties do not dispute that Alabama law allows for prejudgment interest on liquidated damages. *See Miller and Company, Inc. v. McCowen*, 531 So.2d 888, 889 (Ala. 1988) (quoting C. Gamble, *Alabama Law of Damages*, § 8-7 (2d. ed. 1988)) ("All liquidated damages … bear interest from the time the party becomes liable and bound to pay them."). The Alabama Supreme Court has further clarified that liquidated damages include "a specific sum of money … expressly stipulated [to] by the parties … as the amount of damages to be recovered…." *United States Fidelity & Guaranty Co. v. German Auto, Inc*. 591 So.2d 841, 843 (Ala. 1991). However, the FDIC does not cite and this Court is not aware of any Alabama case that has awarded prejudgment interest on an unchallenged portion of *unliquidated* damages. To the contrary, in *German Auto*, the Alabama Supreme Court denied prejudgment interest on unliquidated damages even when the defendant admitted it owed a signification portion of the unliquidated damages. *German Auto* involved an insurance claim for losses based on property damage and business interruption due to a fire. 591 So.2d at 841. The property owner and insurer reached a settlement on the property damage claim but could not agree on an amount for plaintiff's business interruption claim. They agreed to submit the matter to arbitration, and in doing so, each submitted an analysis of what they believed the business interruption claim was worth. *Id*. at 843. Importantly, the insurer conceded that the claim was worth at least $218,000. *Id*. The arbitrator eventually awarded $287,308 to the plaintiff. *Id*. at 842. The plaintiff then filed a claim in

- 8 -

Alabama state court for prejudgment interest on that amount, which the court granted. The insurer appealed and the Alabama Supreme Court reversed the award of prejudgment interest. The Alabama Supreme Court noted that five separate analyses of the business interruption claim were performed as part of the arbitration with results ranging from $218,000 to $529,933, demonstrating "the difficulty and complexity involved in determining the amount due the plaintiff on its business interruption claim." *Id*. at 843. Therefore, the Court concluded, the loss "represented 'unliquidated' damages until the arbitrator made the final determination" and, consequently, no prejudgment interest was due. *Id*. Notably, the Alabama Supreme Court did not award prejudgment interest on the portion of the unliquidated damages the insurer conceded to—*i.e*., the $218,000.

In light of the Alabama Supreme Court's holding in *German Auto*, and the fact that the FDIC can point to no case applying Alabama law in which a court has awarded prejudgment interest on an uncontested portion of unliquidated damages, the Court declines to do so here.

## V.   CONCLUSION

For the foregoing reasons, the Court DENIES the FDIC's Motion for Reconsideration of Order Granting Summary Judgment on Prejudgment Interest.

Dated this 26th day of November, 2018.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge