IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THE COLONIAL BANCGROUP, INC.
and KEVIN O'HALLORAN,

    **Plaintiffs,**

v.

**PRICEWATERHOUSECOOPERS LLP**
**and CROWE HORWATH LLP,**

    **Defendants.**
_____

**FEDERAL DEPOSIT INSURANCE**
**CORPORATION, AS RECEIVER FOR**
**COLONIAL BANK,**

    **Plaintiff,**

v.

**PRICEWATERHOUSECOOPERS LLP**
**and CROWE HORWATH LLP,**

    **Defendants.**

**Case No. 2:11-cv-00746-BJR**
**LEAD CASE**

**Case No. 2:12-cv-00957-BJR**

**FILED UNDER SEAL -**
**PUBLIC VERSION**

**PRICEWATERHOUSECOOPERS LLP'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT ON THE SHIPPED NOT PAID DAMAGES**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

UNDISPUTED FACTS ........................................................................................................ 4

      A.    Bank of America owed Colonial Bank significant duties as custodial
           agent ........................................................................................................... 4

      B.    Bank of America egregiously breached its obligations to Colonial
           Bank ........................................................................................................... 5

      C.    PwC had no reason to foresee Bank of America's blatant wrongdoing ........... 8

ARGUMENT ....................................................................................................................... 9

  I.    The FDIC Does Not Dispute the Relevant Facts Related to Intervening Cause .......... 9

  II.    No Reasonable Factfinder Could Charge PwC with Foreseeing Bank of
      America's Misconduct ................................................................................. 10

      A.    Where a defendant lacks notice of potential third-party wrongdoing,
           such conduct breaks the causal chain as a matter of law .............................. 10

      B.    PwC had no reason to suspect Bank of America would abdicate its
           duties ........................................................................................................ 13

  III.    Bank of America's Misconduct Breaks the Causal Chain Regardless of the
      FDIC's Theory of Liability ........................................................................... 15

      A.    The intervening cause standard is the same for all theories of liability .......... 15

      B.    The FDIC has no grounds for asserting the Shipped Not Paid fraud was
           a foreseeable result of Colonial Bank's sales accounting .............................. 18

  IV.    This Court's Summary Judgment Order Issued Before Two Trials Does Not
      Prevent Judgment Now ................................................................................ 20

      A.    The Court's Liability Order shows no fact disputes exist ............................... 20

      B.    Ms. Kissick's alleged knowledge of double pledging is irrelevant ................. 22

CONCLUSION ................................................................................................................... 23

## INTRODUCTION

After two bench trials, this Court awarded the FDIC $625 million—every penny the FDIC claimed Colonial Bank lost from fraudulent transactions executed by Taylor Bean and Whitaker ("TBW"). *See* Order on the Damages Phase of the PwC Bench Trial, ECF No. 875 (July 2, 2018) ("Damages Order"). This Court's liability order sustained the FDIC's claims against PwC for the losses caused with the help of Colonial insiders but rejected the FDIC's request for the Shipped Not Paid damages because Bank of America directly caused those harms. Order on the Liability Phase of the PwC Bench Trial at 42-53, ECF No. 798 (Dec. 28, 2017) ("Liability Order"). The Court found that Bank of America's misconduct—perpetrated after all of PwC's audits were complete and without the assistance of any Colonial Bank employees— was an "intervening cause" because Bank of America's wrongdoing was "not foreseeable to PwC." *Id.* at 52. Now, despite the absence of any disputed facts, the FDIC demands a weeks-long jury trial in Montgomery to pursue again the same Shipped Not Paid losses that this Court already concluded were directly caused by Bank of America in 2009.

Issue preclusion should bar the FDIC from relitigating this Court's findings. *See* Mot. to Bind the FDIC to the Court's Rulings, ECF No. 885 (Sept. 14, 2018). But separate and apart from any preclusion, summary judgment on the Shipped Not Paid damages is also warranted because Bank of America's misconduct intervened as a matter of law.

The FDIC has argued that the foreseeability of Bank of America's improper conduct is somehow different for its sales-accounting (FAS-140) theory of liability than for its other theories of negligence. The FDIC is wrong. Intervening cause turns on the foreseeability of the improper conduct by the third party—here, Bank of America—not the nature of the claimed negligence. It is "settled law in Alabama that even if one negligently creates a dangerous condition, he or she is not responsible for injury that results from the intervention of another

cause, if *at the time* of the original negligence, *the intervening cause cannot reasonably be foreseen*." *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009) (emphasis added; quotation omitted).

There is no disputed fact as to the Shipped Not Paid damages. Indeed, the FDIC cannot identify any different facts related to Bank of America's wrongdoing for its FAS-140 theory than the FDIC already presented during the first bench trial. The FDIC's argument instead distills to an assertion that FAS-140 claims are *exempt* from intervening cause because *all* damages above lending limits are foreseeable. But that is not how intervening cause works. If any distinctions could be drawn between the FDIC's liability theories, Bank of America's misconduct would be *more unforeseeable* when PwC audited Colonial Bank's sales accounting.

Regardless of the FDIC's theory of liability, the Shipped Not Paid damages are barred as a matter of law because the FDIC's own admissions establish that Bank of America committed "gross negligence and/or willful misconduct" and because no evidence exists to charge PwC with foreseeing (in the FDIC's words) "conscious and voluntary acts and omissions" that were "likely to result in grave injury to Colonial." Ex. 1, FDIC Mem. in Opp'n to BOA's Mot. to Dismiss at 19 (Trial Ex. D-2762). This Court thus wrote that "PWC had *no reason* to believe that a reputable bank would abdicate its duties and execute demonstrably false documents stripping Colonial of its ownership rights." Liability Order at 48 (emphasis added).

Before presiding over two trials, this Court denied Crowe's summary judgment motion (which PwC joined) on the ground that "foreseeability is a question of fact, and a reasonable trier of fact could adopt either PWC's or FDIC's framing." *Id.* at 47. But this Court now "know[s] a lot" more than it did. Ex. 2, Jan. 9, 2019 H'rg. Tr. 62:1-10. For example, the FDIC conceded that the Court could admit the FDIC's prior pleadings only on the eve of trial. FDIC Opp'n to PwC's Bench Brief on Shipped Not Paid Damages at 1, ECF No. 754 (Sept. 26, 2017). Further, trial

2

proved the FDIC has "*no evidence* to contradict" its admission that Bank of America "violated its custodial duties to Colonial by improperly transferring the 4800 Shipped Not Paid loans for which Colonial was never paid." Liability Order at 43-44 (emphasis added). And this Court thereafter resolved the parties' legal dispute by explaining that "a third party's wrongful conduct" is foreseeable only "when the defendant was on notice" of likely wrongdoing. *Id.* at 48. Finally, this Court ruled that Bank of America's conduct "more closely resemble[s] cases where Alabama courts have held that a third party's improper act was not foreseeable," citing cases that found intervening cause as a matter of law. *Id.* at 49-50. Summary judgment is now warranted.

Lacking disputed facts related to intervening cause, the FDIC appeals to sympathy, arguing that the issue "really comes down to who is going to be stuck with that $400 million loss; is it going to be [the FDIC] or PwC?" Ex. 2, Jan. 9, 2019 H'rg. Tr. 35:17-18. Even leaving aside the FDIC's irreconcilable conflict with Alabama law, its position rings hollow. After this Court denied Bank of America's motion to dismiss, *Bank of Am., N.A. v. FDIC*, 908 F. Supp. 2d 60, 95 (D.D.C. 2012), the FDIC had a claim against the bank for the entire $900 million Shipped Not Paid loss. The FDIC, for whatever reason, chose to settle with one of the largest banks the FDIC regulates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. PwC does not question the FDIC's exercise of discretion to settle ▮▮▮▮▮▮▮. But the FDIC cannot use the deficit that the FDIC itself chose to create in its recoveries to charge PwC for losses most directly caused by Bank of America. So the answer to the question of who should bear the loss is this: Since the loss was caused by Bank of America's gross misconduct, and since PwC could not foresee that misconduct, the loss should be borne by Bank of America. If the FDIC has any shortfall because it decided to settle ▮▮▮▮▮▮▮, that "loss" should be made up by Bank of America and the other banks who pay premiums to the FDIC to insure against such events.

## UNDISPUTED FACTS

As this Court well knows, the FDIC's liability case against PwC focused on fictitious "Plan B" assets that TBW's Lee Farkas convinced Colonial Bank's Cathie Kissick and Theresa Kelly to exchange for real Colonial Bank money. Liability Order at 16-19. Months after Ms. Kissick stopped providing new Plan B AOT funding to TBW in mid-2008, Mr. Farkas launched a new and different fraudulent scheme that (1) had nothing to do with phony or worthless loans and (2) did not involve Ms. Kissick and the other Colonial insiders but instead required the cooperation of a new wrongdoer—Bank of America.

No dispute exists over any of the facts related to Bank of America's role in the Shipped Not Paid fraud. Each is fully established by (among other things) the FDIC's own admissions in litigation before this Court. *See id.* at 44; *Williams v. Union Carbide Corp.*, 790 F.2d 552, 556 (6th Cir. 1986) ("Pleadings in a prior case may be used as evidentiary admissions. . . . As party admissions, the allegations [in a pleading] would also be available as substantive evidence under Federal Rule of Evidence 801(d)(2)."). Because the FDIC has "offered no evidence to contradict its previous claims," Liability Order at 44, and because there is no such contradictory evidence, the following facts are established for the purposes of this motion.

### A.    Bank of America owed Colonial Bank significant duties as custodial agent

In 2008, Colonial entered into a Custodial Agreement with LaSalle Bank (which Bank of America purchased). Ex. 3, Custodial Agreement (Trial Ex. D-1558). Bank of America thereby agreed to hold mortgages in trust as "agent and bailee" for Colonial. *Id.* ¶ 2. Bank of America was required to exercise "reasonable care in the custody and preservation of the Collateral in its possession" and to release the mortgages only with "prior approval" of Colonial. *Id.* ¶¶ 4(D) & 7(A); Ex. 4, FDIC BOA Answer and Counterclaims at 40 (¶¶ 24, 27) (Trial Ex. D-2759).

4

Colonial transmitted mortgages to Bank of America's custody pursuant to a Bailee Letter. Ex. 5, Bailee Letter at 1 (Trial Ex. D-2937). That letter required Bank of America to "hold in trust, as bailee for Colonial" the notes and other loan documents and to "remit the Takeout Amount" to Colonial "immediately" once any Ocala investor had agreed to purchase the mortgages. *Id.* Bank of America "in any event" was obligated "within forty-five (45) days after the date of delivery of [any] Bailee Letter to either (A) remit the Takeout Amount to Colonial or ([B]) return the Note(s) and any related Loan Documents to Colonial." *Id.* The FDIC's damages expert confirmed that the contracts "established Bank of America as the agent and bailee of Colonial," and Bank of America agreed to hold the loans "in trust as Colonial's bailee" pending resale. Expert Damages Report of Kenneth K. Malek dated July 20, 2016 ("Malek Report") ECF No. 535, Ex. 4 at 39 ¶ 6. This Court agreed with the FDIC, writing that Bank of America "acted as custodian and bailee . . . for both Colonial and TBW." *Bank of Am.*, 908 F. Supp. 2d at 70.

Colonial Bank's contracts thus prohibited Bank of America from transferring any Colonial mortgages to a third party until Colonial received payment. Ex. 4, FDIC BOA Answer and Counterclaims at 39 (¶ 22) (Trial Ex. D-2759). The whole purpose of this custodial arrangement was to ensure that Colonial's interest in the mortgages (whether owned or held as collateral) was protected. Ex. 6, Trial Tr. 2324:20-2324:23 (Bathen).

### B.    Bank of America egregiously breached its obligations to Colonial Bank

Colonial's custodial arrangement at first functioned as promised. As the FDIC alleged, for a time Bank of America "ensured that Colonial received payment for its Participated Mortgage Loans before pledging them." Ex. 4, FDIC BOA Answer and Counterclaims at 43 (¶ 42) (Trial Ex. D-2759). This Court explained that "the parties agree that BOA was complying with its custodial duties when PwC last performed audit work for CBG." Liability Order at 43.

5

After PwC's last audit,[1] Bank of America changed course. Between June 2, 2009, and August 4, 2009, Colonial transmitted to BOA 4,808 mortgage loans pursuant to the Custodial Agreement. Ex. 4, FDIC BOA Answer and Counterclaims at 42 (¶ 36) (Trial Ex. D-2759). As opposed to the Plan B or junk mortgages that Colonial purchased, these 4,808 mortgages were real and had substantial value. The FDIC alleged these mortgages were worth approximately $898,873,958. *Id.* (¶ 37); *see also* Malek Report at 41-42.

Instead of ensuring that Colonial Bank received payment, Bank of America shipped the mortgages to Freddie Mac without remuneration to Colonial. Ex. 4, FDIC BOA Answer and Counterclaims at 42-45 (¶¶ 37-39, 43, 46) (Trial Ex. D-2759). In doing so, Bank of America signed false documents indicating that it had the right to send the mortgages to Freddie Mac and that Colonial had no ownership interest in them. *Id.* at 44 (¶ 44).

Further, even though Colonial's Bailee Letter required Bank of America "not to honor any requests or instructions from [TBW] relating to any Notes," Ex. 5, Bailee Letter at 1 (Trial Ex. D-2937), Bank of America violated Colonial's rights by following TBW's instructions to send the payments to others, Malek Report at 41; Expert Damages Rebuttal Report of Kenneth J. Malek dated September 12, 2016 ("Malek Rebuttal Report") ECF No. 535, Ex. 9 at 29-31. Mr. Malek tied Bank of America's actions "to send the funds elsewhere, not to Colonial," directly to the damages that the FDIC wants a jury to award. Malek Report at 41. He explained that "[t]he absence of payment to Colonial is the basis for the Shipped Not Paid damages." *Id.*

---

[1] PwC signed its last audit on March 2, 2009. *See* Ex. 7, CBG 2008 Form 10-K, at 79 (Trial Ex. A-69). The FDIC's expert confirmed the Shipped Not Paid fraud "began in April of 2009" and the damages "began accruing in May 2009." Malek Report at 16, 38; Liability Order at 43.

Bank of America's misconduct (depicted below in a demonstrative PwC used in the liability trial) only came to light when Colonial closed in August 2009. Ex. 4, FDIC BOA Answer and Counterclaims at 45 (¶ 48) (Trial Ex. D-2759). By that time, Bank of America had allowed TBW to divert the funds received from Freddie Mac, in blatant violation of Bank of America's obligations. *Id.* at 44-45 (¶¶ 44-49). Colonial thus lost custody of the mortgages and was never repaid the money it had advanced.



Further, the FDIC itself has admitted Bank of America's misconduct was egregious. The FDIC pleaded that Bank of America "abdicated its duties" and "executed demonstrably false documents" that "strip[ped] Colonial of its ownership rights." *Id.* at 37, 44-45 (¶¶ 5, 45-46).

Bank of America thereafter asked this very Court to dismiss the FDIC's counterclaims based on an exculpatory clause in the contract. *See* Ex. 1, FDIC Mem. in Opp'n to BOA's Mot. to Dismiss at 2 (Trial Ex. D-2762). The FDIC countered that Bank of America's "conscious and voluntary acts and omissions *likely* to result in grave injury to Colonial" fell outside the exculpatory clause because such conduct manifestly constituted "bad faith breach, gross negligence, and willful misconduct." *Id.* at 16, 19. This Court accepted those arguments, holding

that "[w]hatever" the exculpatory clause meant, "the term 'malfeasance' is certainly broad enough to include the [FDIC's] allegations." *Bank of Am. NA*, 908 F. Supp. 2d at 95. Because the FDIC has no evidence to contradict its admissions, it is undisputed that Bank of America engaged in serious misconduct and that misconduct directly caused the Shipped Not Paid losses.

### C.   PwC had no reason to foresee Bank of America's blatant wrongdoing

There is no evidence in the extensive trial record, or produced in discovery in this case, that PwC had any reason to foresee that Bank of America would commit (in the FDIC's words) "bad faith breach, gross negligence, and willful misconduct." Ex. 1, FDIC Mem. in Opp'n to BOA's Mot. to Dismiss at 16 (Trial Ex. D-2762). To the contrary, the only evidence is that Bank of America's wrongdoing could not have been foreseen.

Mary Lou Bathen, Colonial Bank's long-time Treasurer and Assistant Treasurer, knew of the Custodial Agreement and testified that the entire purpose of having Bank of America serve as Colonial's custodian was to protect Colonial's ownership interests in the mortgages and to avoid the risk that those assets might be double-pledged. Ex. 6, Trial Tr. 2323:10-2324:23 (Bathen). Ms. Bathen was not aware of any history of Bank of America improperly diverting payments to other parties when acting as custodian. *Id.* at 2325:3-5. She thus never expected Bank of America to violate its custodial obligations, and the possibility of such a flagrant breach of duty was so remote that it never even occurred to her. *Id.* at 2324:24-2325:2; 2325:6-21.

As opposed to the fraud committed with the help of Colonial insiders, the FDIC has no grounds for asserting PwC could have discovered Bank of America's misconduct. Not only did the relevant wrongdoing occur after PwC's audits, the Shipped Not Paid fraud did not depend upon any assistance from the audit client's (Colonial Bank's) employees. Liability Order at 42. PwC could not have foreseen Bank of America would assist in TBW's fraud against Colonial.

## ARGUMENT

In Alabama, proximate cause "hinges on foreseeability and is intertwined, analytically, with the concept of intervening cause." *Springer v. Jefferson Cty.*, 595 So. 2d 1381, 1384 (Ala. 1992). As the Alabama Supreme Court has explained, "[t]he proximate cause of an injury is that cause which, in the natural and probable sequence of events, and *without the intervention or coming in of some new or independent cause*, produces the injury." *Ala. Power Co. v. Moore*, 899 So. 2d 975, 979 (Ala. 2004) (emphasis added; quotation omitted). If an "unforeseeable" independent act intervenes to cause damage, it "breaks the chain of causation" and "supersedes the original act, which thus is no longer the proximate cause of the injury." *Id.*

## I.    The FDIC Does Not Dispute the Relevant Facts Related to Intervening Cause

As this Court noted at a recent hearing, the FDIC disputes none of the relevant facts related to intervening cause. Ex. 2, Jan. 9, 2019 Hr'g Tr. 51:8-18. The FDIC has no evidence to dispute its prior admissions that Bank of America "abdicated its duties" to Colonial and "strip[ped] Colonial of its ownership rights" in the mortgages. Ex. 4, FDIC BOA Answer and Counterclaims at 37 (¶ 5) (Trial Ex. 2759). Further, the FDIC agrees that Bank of America's breaches occurred after PwC's last year-end audit, since Bank of America was performing its duties as required. *Id.* at 43 (¶ 42); Malek Report at 16, 38. Finally, there is no dispute that Bank of America's malfeasance proximately "caused a $900 million loss to Colonial." Ex. 1, FDIC Mem. in Opp'n to BOA's Mot. to Dismiss at 2 (Trial Ex. D-2762).

As this Court noted, the FDIC appears only to dispute the governing legal standard and "the conclusion" of foreseeability, especially for its FAS-140 theory. Ex. 2, Jan. 9, 2019 Hr'g Tr. 51:8-18. The only question for this motion is thus whether a reasonable jury could find that PwC should have foreseen that Bank of America would breach its custodial obligations.

II.     **No Reasonable Factfinder Could Charge PwC with Foreseeing Bank of America's Misconduct**

The facts in this case lead inescapably to the conclusion that this Court reached—that PwC could not have foreseen Bank of America's misconduct. Alabama law explains that the "[f]oreseeability" of a third party's intervening misconduct "must be based on the *probability* that harm will occur, rather than the bare *possibility*." *Ala. Power*, 899 So. 2d at 979 (emphasis in original; quotation omitted). Here, it was indisputably unforeseeable—and certainly not probable—that Bank of America would transfer the Shipped Not Paid mortgages without payment. No rational jury could find otherwise.

A.     **Where a defendant lacks notice of potential third-party wrongdoing, such conduct breaks the causal chain as a matter of law**

As this Court has explained, Alabama courts generally hold as a matter of law that a third party's wrongdoing is *not* foreseeable—and therefore *is* an intervening cause—unless the defendant had specific reasons to anticipate the third party's wrongful conduct. Liability Order at 48-50. For example, where a truck owner left his keys in the ignition of his unlocked truck, and a thief stole the truck and caused a car accident, the Alabama Supreme Court affirmed summary judgment, holding the intervening theft unforeseeable. *Vines v. Plantation Motor Lodge*, 336 So. 2d 1338, 1339-40 (Ala. 1976). The court reached that conclusion even though "[t]he location from which the truck was stolen is an area containing many stores and bars [and] auto theft is a high incident crime of which an alarming number occur when keys are left in the vehicle." *Id.* at 1339. In addition, "a substantial proportion of stolen vehicles are involved in accidents, frequently after high-speed chases through cities, and often result in damage to property and person of innocent victims." *Id*. Thus, substantial evidence that a theft and resulting harm was *possible* was insufficient to make the theft sufficiently *probable* to submit the claim to a jury.

Likewise, where a bouncer negligently ejected a patron, who was then punched in the groin by a security guard in the parking lot outside the bar, the Alabama Supreme Court held that the assault was a legally unforeseeable intervening cause of the patron's injuries. It reasoned that "[n]o evidence at trial indicated that [the security guard] had a propensity for violence, or that similar altercations had previously occurred[,]" or that the bar "had ever received a complaint about [the guard] or about any other security guard." *Ex parte Wild Wild W. Soc. Club, Inc.*, 806 So. 2d 1235, 1241 (Ala. 2001). "The bare chance that an ejected bar patron might be attacked by a security guard [was] not sufficient to impose liability on the operator of the bar." *Id.*

And where a man was electrocuted after intentionally cutting a cable supporting an electrical utility pole, the Alabama Supreme Court held that conduct was an intervening cause of his injuries because the power company "could not reasonably have foreseen the kind of harm that resulted from the intentional destruction of its equipment, the breaking of the guy grip being no more than a 'bare possibility.'" *Ala. Power*, 899 So. 2d at 980; *see also, e.g.*, *Morguson v. 3M Co.*, 857 So. 2d 796, 801 (Ala. 2003) (negligent conduct of surgical team that failed to follow prescribed safety procedures was an unforeseeable intervening cause of patient's death).[2]

By contrast, where Alabama courts have found that the foreseeability of a third party's improper act was properly submitted to a jury, the defendant had a strong reason to expect that the third party would engage in wrongful conduct. *See, e.g.*, *City of Birmingham v. Benson*, 631

---

[2] Numerous other Alabama cases have held that various intervening causes were unforeseeable as a matter of law. *E.g. City of Mobile v. Havard*, 268 So. 2d 805, 810 (Ala. 1972) (an overloaded soybean truck with faulty brakes severed the chain of causation for negligent maintenance of fire equipment); *Morgan v. City of Tuscaloosa*, 108 So. 2d 342, 345 (Ala. 1959) (the defendant's acts were "nothing more than a remote cause of the accident"—"[i]t clearly appears that after the condition had been created, an independent agency produced the injury"); *Gilmore v. Shell Oil Co.*, 613 So. 2d 1272, 1277-78 (Ala. 1993) (suicide was intervening cause as a matter of law).

So. 2d 902, 907 (Ala. 1993) (bar patron's assault was foreseeable where officer knew patron was behaving aggressively and officer said he "would not intervene in any altercation" outside the bar); *Thetford v. City of Clanton*, 605 So. 2d 835, 840-41 (Ala. 1992) (husband's beating of wife was foreseeable where hotel knew wife was hiding from husband and that he had recently beaten her); *Springer*, 595 So. 2d at 1384-85 (driver's negligence was foreseeable where county knew about multiple highly similar accidents on the same road); *see also* Liability Order at 48.

The FDIC argued at a recent hearing that "[f]oreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence could have been anticipated." *Benson*, 631 So. 2d at 907 (quoting *Thetford v. City of Clanton*, 605 So. 2d 835, 840 (Ala. 1992)); Ex. 2, Jan. 9, 2019 Hrg. Tr. 27:19-28:2. But the FDIC quoted that very sentence from *Thetford* and *Benson* in its proposed findings. FDIC Proposed Findings ¶ 358, ECF No. 785 (Oct. 21, 2017). And this Court rejected the FDIC's interpretation of Alabama law by explaining that "a third party's wrongful conduct" is generally "foreseeable only when the defendant was on notice that the third party would behave improperly." Liability Order at 48 (distinguishing *Thetford* and *Benson*). A *legal* argument this Court already rejected cannot be the basis for holding a jury trial.

In any event, the FDIC's interpretation of Alabama law is wrong. The question of intervening cause *presupposes* that a defendant has negligently created "a dangerous condition" that foreseeably could cause harm. *Prill*, 23 So. 3d at 6. But a defendant is still "not responsible for injury that results from the intervention of another cause . . . [that] cannot reasonably be foreseen." *Id.* Thus, it is insufficient that PwC could have foreseen some harm from negligent audits or accounting. *Thetford* and *Benson* in context mean only that a defendant who anticipates *a third party* will probably cause harm need not foresee the precise nature of it to be liable.

12

**B.      PwC had no reason to suspect Bank of America would abdicate its duties**

Applying this standard, summary judgment on the Shipped Not Paid damages is warranted because (as the Court has explained) Bank of America's undisputed misconduct "more closely resemble[s] cases where Alabama courts have held that a third party's improper act was not foreseeable" as a matter of law. Liability Order at 49-50 (citing *Morguson*, 857 So. 2d at 800-01; *Ex parte Wild Wild West Social Club, Inc.*, 806 So. 2d at 1241; *Vines*, 336 So. 2d at 1339-40). Indeed, this Court held that "PWC had *no reason* to believe that a reputable bank would abdicate its duties and execute demonstrably false documents stripping Colonial of its ownership rights in the mortgages." Liability Order at 48-49 (emphasis added).

Not one shred of evidence shows PwC had any reason to anticipate that a reputable bank would breach its duties as Bank of America did. In addition, PwC could not have performed *any* audit procedures to discover the Shipped Not Paid fraud because the misconduct occurred *after* PwC's audits and did not require the assistance of Ms. Kissick. PwC therefore had no notice (and it was thus not foreseeable) that Bank of America would stop performing its custodial function and would repeatedly violate its duties. No reasonable trier of fact could find otherwise.

The FDIC's own admissions about the egregiousness of Bank of America's breaches are conclusive evidence that PwC could not have foreseen the Shipped Not Paid fraud. The FDIC asked this very Court *not* to dismiss its claims because Bank of America's wrongdoing rose to the level of "gross negligence, and willful misconduct." Ex. 1, FDIC Mem. in Opp'n to BOA's Motion to Dismiss at 16 (Trial Ex. D-2762). The FDIC's argument now that PwC should have foreseen that Bank of America would (in its own words) "commit[] conscious and voluntary acts and omissions *likely* to result in grave injury to Colonial," *id*. at 19, is meritless.

In addition, the FDIC has admitted that Bank of America's breaches were contrary to expectations because "[n]o reasonable person could have thought that pledging and selling Colonial's loans, without first remitting payment to Colonial, and executing false Form 996Es . . . , 'reasonably carried out the purpose' of the Custodial Agreement and Bailee Letters." *Id.* at 18. And Ms. Bathen (Colonial's Treasurer) testified that she was unaware of any history of Bank of America breaching its duties. Ex. 6, Trial Tr. 2324:24-2325:8.

Regardless of whether PwC could have foreseen fraud committed by TBW, no rational jury could find that Bank of America, a previously innocent third party with no known history of fraud, would probably breach its custodial obligations. That is true especially when such duties were imposed for the very purpose of *protecting* Colonial. *Id.* at 2323:10-2324:23 (Bathen).

The simple fact is that Lee Farkas and TBW could not have caused the Shipped Not Paid damages if Bank of America had not breached its own independent duties owed to Colonial. *Cf. Morguson*, 857 So. 2d at 801 (it "may have been foreseeable" that medical technician would misassemble a device, but it was "clearly not foreseeable" that technician would ignore a safety checklist and misrepresent to others that he had followed it). Indeed, the Court recently (and correctly) observed that Colonial would not have suffered the Shipped Not Paid losses if Bank of America had fulfilled its obligations. Ex. 2, Jan. 9, 2019 Hr'g. Tr. 22:25-24:1; 19:18-20:14.

From PwC's perspective at the time, Bank of America's breach was significantly less probable than the risk that a thief would steal an unlocked car with its keys left in the ignition (as in *Vines*), or that a security guard outside a bar would strike an ejected patron (as in *Wild Wild West*). No reasonable factfinder could disagree with this Court and find that PwC should have foreseen such egregious conduct. This Court should grant summary judgment.

14

### III.    Bank of America's Misconduct Breaks the Causal Chain Regardless of the FDIC's Theory of Liability

The FDIC has recently argued (in an attempt to avoid the preclusion that must follow this Court's Shipped Not Paid ruling) that the question of foreseeability is different for its FAS-140 liability theory. The FDIC goes so far as to claim a "wholly different . . . causation analysis." FDIC Opp'n to PwC's Estoppel Motion at 11, ECF No. 889 (Oct. 5, 2018). The FDIC is wrong, both because the intervening cause standard is the same for all theories of liability and because the FDIC's different theories raise overlapping causal chains. In addition, even if the FDIC were right that the intervening cause inquiry depended on the theory of negligence at issue (it is not), the Shipped Not Paid losses would be *more unforeseeable* as it relates to FAS-140, which has nothing whatsoever to do with fraud detection.

### A.    The intervening cause standard is the same for all theories of liability

The FDIC's attempt to argue that the jury must decide different intervening-cause issues for its FAS-140 theory ignores that Alabama law focuses on the foreseeability of *the third-party's* conduct to the defendant at the time—it does not differ for any particular liability theory. *Prill*, 23 So. 3d at 6. If Bank of America's misconduct was not foreseeable to PwC when its auditors were conducting their audits, it was also not foreseeable when they were at the very same time considering Colonial's sales-accounting.[3] FAS-140 thus cannot save the FDIC from summary judgment based on the undisputed facts concerning Bank of America's misconduct.

---

[3] Because the issues are the same and apply without modification, this Court's ruling from the liability trial should preclude any claim for the Shipped Not Paid damages, regardless of the FDIC's theories of liability. *See* PwC Mot. for Partial Summ. J. to Bind the FDIC to the Court's Rulings on Shipped Not Paid Damages, ECF No. 885 (Sept. 14, 2018).

Even if the standards for intervening cause would be different if the FDIC offered an alternative causation analysis (which they would not be), the FDIC still cannot materially distinguish its FAS-140 causal chain from that related to its deficient-fraud-procedures theory. Both of the FDIC's theories require proof that PwC's alleged negligence failed to uncover the fraud, allowing the fraud to grow, which ultimately led to Bank of America shipping real mortgages to third parties without paying Colonial the money it was owed.

These overlapping causal chains are depicted in the chart that PwC used in briefing related to collateral estoppel:



At a recent hearing, the FDIC (for the first time) attempted to provide an alternative FAS-140 causal chain to the one depicted above. The FDIC attempted to frame the foreseeability inquiry as Colonial becoming overexposed to TBW by $2 billion and then sustaining losses "when TBW could not repay" the Bank for the Shipped Not Paid mortgages. Ex. 2, Jan. 9, 2019 Hr'g. Tr. 18:14. The FDIC's so-called "causation analysis" slide was as follows:

16



This Court, however, immediately recognized that the FDIC left "a crucial step"

completely "out of [its] causation" chain. *Id.* at 19:21-20:14. As the Court explained:

> So what you have done here is gone to TBW cannot repay, which
> is a crucial step in the way you set up the causation. The fact of
> that matter is -- I think we all agree -- is that the mortgages that
> were involved in the shipped-not-paid batch of mortgages had
> value, right? These were not like -- these were not like the
> fictitious --
>
>     MR. MULLIN:  True.  Real mortgages, yes.
> . . .
> THE COURT:  The fact that TBW couldn't repay those mortgages
> only became relevant because Bank of America had released those
> mortgages without getting the money. If they had kept those
> mortgages the way they were supposed to, until they were paid for
> -- you left that step out of your causation.

*Id.* As the Court recognized, the FDIC never provided an alternative causal chain; it simply

asked the Court to ignore Bank of America's role in it.

17

The FDIC's entire argument distills to a request that the Court (or a Montgomery jury) ignore the utter unforeseeability of Bank of America's malfeasance. As the FDIC argued in its proposed findings, it believes "all of the losses that occurred as a result of Colonial lending TBW funds in excess of the lending limits, including the 'Shipped not paid' losses, were a foreseeable result of PwC's negligence." FDIC Proposed Findings ¶ 382, ECF No. 785 (Oct. 21, 2017). But that is not how intervening cause works in Alabama. "However negligent a party may have been in some particular, he is accountable only to those who are injured as a proximate result of such negligence. Where some independent agency intervenes and is the immediate cause of the injury, the party guilty of the prior negligence is not liable." *Havard*, 268 So. 2d at 810.

In this case, under any of the FDIC's theories of liability, Bank of America's misconduct was an unforeseeable "independent agency," thereby constituting the "immediate cause" of the Shipped Not Paid damages. Because there are no fact disputes sufficient to submit the Shipped Not Paid damages to a jury, summary judgment is appropriate.

**B.      The FDIC has no grounds for asserting the Shipped Not Paid fraud was a foreseeable result of Colonial Bank's sales accounting**

As discussed above, the FDIC is wrong to assert that the intervening cause analysis differs depending on whether the alleged negligence by PwC was in failing to discover the fraud or in accepting Colonial Bank's accounting for mortgage transfers as purchases rather than loans to TBW. The FDIC has cited no authority, and has given no coherent explanation, for its contention that the foreseeability of a third party's later misconduct somehow depends on the nature of the defendant's alleged negligence.

But even assuming that the question of intervening cause could somehow change depending on the basis for finding PwC liable, that would not help the FDIC. When the liability

issue was PwC's failure to discover the fraud, the FDIC tried to argue that there was a single fraud with different phases and that PwC should have anticipated that Farkas would adapt the fraud as events unfolded. This Court properly rejected that argument, explaining that the question was not whether PwC could foresee that Farkas would continue to commit bad acts. Rather, the question was whether it was "foreseeable that a reputable non-fraudster third party" like Bank of America, with no history of misconduct, "would become complicit in [a] fraud and violate its independent obligations to Colonial." Liability Order at 52.

Bank of America's misconduct is even more remote from the FAS-140 issue. Whether Colonial should have accounted for the transfer of mortgages as purchases or loans had utterly nothing to do with Bank of America's later misconduct. The sales accounting standards that Colonial Bank applied, the application of which PwC was charged with auditing, turn on a purchaser's control over the asset—not the possibility of fraud being committed. *See* Ex. 8, FAS-140 Rule at 9 (Trial Ex. A-264) (any "transfer of financial assets . . . in which the transferor surrenders control over those financial assets *shall* be accounted for as a sale") (emphasis added).

The mortgages held by Bank of America were real mortgages whose value was unaffected by Farkas' fraud. If Bank of America had discharged its responsibilities, Colonial would not have lost a penny on these mortgages regardless of how they were treated for sales accounting purposes. It is preposterous to suppose that an auditor would say to himself: "The proper sales accounting treatment for these transactions is a complicated issue, but I believe the client is justified in treating them as purchases rather than loans because Colonial retains control over the mortgages. But I foresee that, if the mortgages are accounted for as purchases, down the road Bank of America will wrongfully release almost a billion dollars of perfectly legitimate mortgages to a third party without making sure Colonial was paid for them."

Thus, to the extent there can be degrees of unforeseeability depending on the FDIC's theory of liability, Bank of America's misconduct would be even more unforeseeable at the time of the FAS-140 analysis than at the time PwC's auditors did not uncover the collusive fraud. The FDIC's FAS-140 theory thus cannot preclude summary judgment.

## IV.     This Court's Summary Judgment Order Issued Before Two Trials Does Not Prevent Judgment Now

Approximately one-and-one-half years ago, this Court denied summary judgment on the Shipped Not Paid damages, writing that "[t]he question of foreseeability becomes a legal question only when 'the facts of the cause are not conflicting, and where there can be no reasonable difference of opinion as to the conclusion to be reached upon them." Order Regarding Motions for Partial Summary Judgment Against the FDIC by PwC and Crowe at 19, ECF No. 677 (July 14, 2017). Before hearing weeks of evidence, this Court denied summary judgment on the Shipped Not Paid damages. *Id.* The Court's ruling, however, poses no obstacle to judgment at this time.

### A.     The Court's Liability Order shows no fact disputes exist

As the Court noted at a recent hearing, the Court now "know[s] a lot" about this case, having held "not one, but two trials" and having issued "a lot of rulings." Ex. 2, Jan. 9, 2019 Hr'g Tr. 62:1-10. Most importantly, PwC has established (and this Court is now aware) that "there is *no evidence* that PWC was aware of BOA's propensity for violating custodial agreements, that PWC was aware of similar bailee violations, or that PWC had received previous complaints about BOA." Liability Order at 50 (emphasis added). In addition, the FDIC only conceded just before trial that the Court could admit the FDIC's prior pleadings. FDIC Opp'n to PwC's Bench Brief on Shipped Not Paid Damages at 1, Dkt. 754 (Sept. 26, 2017). And new evidence of foreseeability was admitted at trial, as Ms. Bathen's testimony (that the possibility of

Bank of America abdicating its duties was so remote it had never occurred to her either) was not available when this Court initially denied summary judgment. *See* Ex. 6, Trial Tr. 2324:24-2325:21. The crucible of trial thus established that the parties' disputes on intervening cause were not factual quarrels but only arguments over the law or how to frame the issue.

This Court's Liability Order repeatedly emphasized that the parties agreed on (or at least did not dispute) each of the important facts related to the Shipped Not Paid fraud:

- "[T]he parties agree that BOA was complying with its custodial duties when PWC last performed audit work for CBG." Liability Order at 43.

- "[T]he parties also agree that beginning in April 2009, when Ocala purchased the mortgage loans, instead of sending the funds to Colonial as was required under the Custodial Agreement and Bailee Letter, BOA sent the money to TBW or other third parties." *Id.*

- The Court cited Mr. Malek's report that "[t]he absence of payment to Colonial [for the Shipped Not Paid loans] is the basis for the Shipped Not Paid damages." *Id.* (quoting Malek Report at 41) (alteration in original).

- "In [other] litigation, the FDIC claimed that BOA had violated its custodial duties to Colonial by improperly transferring the 4800 Shipped Not Paid loans for which Colonial was never paid. Specifically, the FDIC asserted that BOA 'abdicated its duties' to Colonial and 'strip[ped] Colonial of its ownership rights in the [Shipped Not Paid] mortgages." Liability Order at 43-44 (alteration in original, citation omitted).

- "In the instant trial, the FDIC offered no evidence to contradict its previous claims that BOA breached its custodial duties to Colonial. Therefore, the Court accepts as an evidentiary admission that BOA breached its custodial duties to Colonial." *Id.* at 44.

- "[T]he simple fact is that without the intervening breaches by BOA, this part of the fraud could not have taken place." *Id.* at 53.

Thus, despite recognizing that the Court had previously concluded that "a reasonable trier of fact could adopt either PWC's or the FDIC's framing," Liability Order at 47, the Court's language made clear that Bank of America's breaches were not legally foreseeable.

**B.      Ms. Kissick's alleged knowledge of double pledging is irrelevant**

This Court, at most, resolved only one disputed fact in its section on intervening cause, finding that Ms. Kissick did not suspect that Lee Farkas was double pledging loans. Liability Order at 44-45. But any fact dispute on Ms. Kissick's state of mind cannot preclude summary judgment as to the foreseeability *to PwC* of Bank of America's conduct.

Not one part of this Court's finding that Bank of America's actions were unforeseeable to PwC turned on Ms. Kissick's mental state. Instead, the Court explained as a *legal* matter that "Alabama courts have generally found a third party's wrongful conduct to be foreseeable only when the defendant was on notice that the third party would behave improperly." Liability Order at 48. Because there is no evidence that *PwC* had notice that Bank of America would behave improperly, summary judgment is appropriate regardless of what Ms. Kissick suspected.

But even if Ms. Kissick's state of mind were relevant, the FDIC has no evidence that Ms. Kissick knew about the Shipped Not Paid fraud. Ms. Kissick testified that she had no idea Farkas was double pledging loans. Ex. 9, Kissick Dep. (Trial Ex. D-3075) at 567:25-569:12; 822:21-823:22; 825:20-25. Ms. Kelly's "impression" that Ms. Kissick was "willfully blind to TBW's double-pledging," Ex. 10, T. Kelly Dep. (Trial Ex. D-3071) at 191:7-9, 191:12-13, should not be admissible evidence because (as this Court noted) the testimony is pure "speculation." Liability Order at 46; *see also* Fed. R. Evid. 602. Regardless, the FDIC's speculative arguments based on vague testimony cannot contradict the FDIC's clear admissions that Bank of America's conduct was "unknown to anyone at Colonial," Ex. 4, FDIC BOA Answer and Counterclaims at 44-45 (¶ 46) (Trial Ex. D-2759), and that any suggestion that "Colonial or its employees played any role in the multiple pledging of loans" would be "disingenuous," Ex. 1, FDIC Mem. in Opp'n to BOA's Mot. to Dismiss at 4 (Trial Ex. D-2762). Summary judgment is warranted.

## CONCLUSION

The FDIC at the most recent hearing argued that intervening cause all "really comes down to who is going to be stuck with that $400 million loss; is it going to be [the FDIC] or PwC." Ex. 2, Jan. 9, 2019 Hr'g Tr. 35:17-18. The FDIC has previously sought the Court's sympathy along the same lines, arguing that the FDIC is "the public," acting as "the champion of the depositors" and to "vindicate the public interest," Ex. 6, Trial Tr. 5:23-25, falsely suggesting that any recovery in this case will benefit taxpayers.

In fact, the FDIC Deposit Insurance Fund is funded by premiums paid by banks such as Bank of America. *See* FDIC, Deposit Insurance Fund, www.fdic.gov/deposit/insurance ("The DIF is funded mainly through quarterly assessments on insured banks . . . .") (last accessed Jan. 28, 2019); *see also* 12 U.S.C. § 1817. When banks fail for whatever reason, the FDIC pays claims out of the billions of dollars it collects from insured banks as premiums. And when the FDIC's reserves reach a certain level, the premiums banks pay are reduced.[4]

The only reason the FDIC would need to dip into premiums for the Shipped Not Paid damages is the FDIC's own decision to settle with one of its regulated banks ███████████. The FDIC had a claim against Bank of America for the entire $900 million Shipped Not Paid loss ██████████████████████████████████████████████████████████
███████████████████████████████. *See* Sealed Order Clarifying May 1, 2017 Order Denying the FDIC's Request to Vacate, ECF No. 673 (June 7, 2017).

---

[4] Ex. 11, American Banker's Association, *FDIC Rapidly Recapitalizing* (describing the $9.98 billion in assessments for 2015, the "rapid recapitalization of the DIF," and likely decreasing assessments because "[t]he banking industry is profitable and better capitalized than at any other point in history"); FDIC, Recent Changes to Assessments, https://www.fdic.gov/deposit/ insurance/assessments/changesassessments.html.

23

Now, having settled ▮▮▮▮▮▮▮▮ with one of its biggest constituents, the FDIC seeks to recover the remainder from PwC, which had nothing whatsoever to do with the Shipped Not Paid fraud and which is not even charged with negligently failing to discover it. Moreover, although the Court found that PwC did not act wantonly, Liability Order at 62, this Court allowed the FDIC's counterclaims against Bank of America in part because that bank's misconduct rose to the level of "malfeasance." *Bank of America, NA v. FDIC*, 908 F. Supp. 2d 60, 95 (D.D.C. 2012). It would be especially inappropriate to ignore the intervening wrongdoing here because Bank of America would likely benefit from such a ruling (with any recovery leading to lower premiums).

The upshot of intervening cause—in Alabama and elsewhere—is that plaintiffs cannot settle claims against one party who constitutes the direct cause of harm for forty cents on the dollar and then seek the balance from a party legally disconnected from the injury. The FDIC, of course, had the "authority to settle for less than the total amount," as it could still do with PwC. Ex. 2, Jan. 9, 2019 Hr'g Tr. 36:12-15. But the FDIC does not have authority to shift the Shipped Not Paid losses to PwC because the FDIC settled with Bank of America ▮▮▮▮▮▮▮▮.

The FDIC has not identified a single disputed fact as it relates to the Shipped Not Paid damages because there is none. Summary judgment is thus appropriate because no reasonable jury could disagree with this Court's ruling and find that Bank of America's conduct—which indisputably caused the Shipped Not Paid Damages—was foreseeable at any time to PwC.

If this Court grants PwC's motion, there should be no need for a jury trial because the FDIC has assured the Court that the FDIC is "not trying to re-try the $625 million [already awarded], we're going after the $400 million." *Id.* at 53:6-7. For the Court's convenience, attached to this brief as Appendix 1 is a chart outlining the likely scope of any jury trial, depending on how this Court rules on the pending motions.

24

Respectfully submitted this 28th day of January, 2019.

/s/ *Mark L. Levine*

Philip S. Beck
(Illinois Bar No. 147168) *pro hac vice*
Mark L. Levine
(Illinois Bar No. 6201501) *pro hac vice*
Christopher D. Landgraff
(Illinois Bar No. 6225411) *pro hac vice*
Nicolas L. Martinez
(Illinois Bar No. 6324299) *pro hac vice*
**BARTLIT BECK LLP**
Courthouse Place, Suite 300
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4400
Email: philip.beck@bartlit-beck.com
          mark.levine@bartlit-beck.com

-and-

Jameson R. Jones
(Colorado Bar No. 42135) *pro hac vice*
**BARTLIT BECK LLP**
1801 Wewatta, Suite 1200
Denver, CO 80220
Telephone: (303) 592-3123
Email: jameson.jones@bartlit-beck.com

-and-

Tabor Robert Novak, Jr.
(Alabama Bar No. ASB-9503-V72T)
**BALL BALL MATTHEWS & NOVAK PA**
P.O. Box 2148
Montgomery, AL 36102-2148
Telephone: (334) 387-7680
Email: tnovak@ball-ball.com

**ATTORNEYS FOR DEFENDANT**
**PRICEWATERHOUSECOOPERS LLP**

25

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2019, a true and exact copy of the foregoing was electronically served by transmission of Notice of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing.


*/s/ Mark L. Levine*
Mark L. Levine